David A. Tilem (SBN 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street, Suite 201
Glendale, California 91206
Tel: 888-257-7648 * 818-507-6000
Fax:(818) 507-6800
DavidTilem@TilemLaw.com

Proposed Attorneys for Debtor-
         in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Case No. **2:22-bk-10994-BB** |
| | ) |
| | ) Chapter 11 |
| | ) |
| | ) |
| | ) **DECLARATION OF JACQUELINE** |
| | ) **DUVIVIER IN SUPPORT OF FIRST DAY** |
| | ) **MOTIONS INCLUDING MOTION TO** |
| **BETTER 4 YOU BREAKFAST, INC.,** | ) **LIMIT NOTICE, MOTION FOR USE OF** |
| | ) **CASH COLLATERAL, MOTION FOR** |
| | ) **AUTHORIZATION TO PAY PRIORITY** |
| | ) **WAGE CLAIMS AND BENEFITS** |
| | ) |
| | ) Date: **TO BE SET BY COURT** |
| | ) Time: |
| | ) CtRm: 1539 |
|                 Debtor. | )      255 East Temple Street |
| _____ | )      Los Angeles, CA 90012 |

I, Jacqueline Duvivier hereby declare and state as follows:

    1.   This statement is based on my personal knowledge or on
the books and records of Better 4 You Breakfast, Inc. ("B4YB" or
"Debtor").  If asked to do so, I would testify to the statements
set forth below.

    2.   I am one of the founders and a principal of B4YB.  I
currently serve as Treasurer and Chief Business Officer.  In that
role I manage all financial aspects of the Debtor's day to day

1   operations, including overseeing receivables and payables, capital

2   expenditures, financing and cash flow.  While I am not an

3   accountant, I also oversee and supervise the maintenance of B4YB's

4   books and records.

5       3.    The books and records of B4YB are maintained and updated

6   on a daily basis by a staff of 4 individuals who enter data into

7   the company bookkeeping software as it is received from original

8   documents such as invoices, bank statements and payroll records.

9   These records are then used in the regular course of business by

10  B4YB to compute and then pay amounts due and owing for goods and

11  services.  B4YB uses QuickBooks accounting software and has used

12  the same accounting software since 2011.  The books and records

13  maintained by B4YB are used to prepare financial statements, credit

14  applications and tax returns.  Managers rely on the books and

15  records to operate on a daily basis, as well as to prepare

16  forecasts for the business.

17      4.    This Declaration is submitted in support of various

18  urgent motions filed by B4YB including a request to limit the

19  number of notices which must be given of Court proceedings, a

20  request to pay what I understand to be "priority" pre-filing

21  payroll and a request to use "cash collateral".  This Declaration

22  is also intended to provide the Court with basic background

23  information about B4YB and its operations.

24              **ABOUT BETTER 4 YOU BREAKFAST, INC.**

25      5.    B4YB is a California corporation formed in 2011.  It has

26  4 shareholders holding common stock and one shareholder holding

27  both Series A Preferred and Series B Preferred stock.  Those

28  holding common stock are Fernando Castillo (my ex-husband with

1  666,667 shares), Jason Roberts (666,667 shares), Howard Rosenberg

2  (129,666 shares) and myself (666,667 shares).  The series A

3  preferred shares (3,369,600) and series B preferred shares

4  (263,644) are held by Capital Stone Equity Fund 1, LP, a Delaware

5  Limited Partnership ("CapStone").

6      6.    Members of the Board of Directors include Jason Roberts,

7  Fernando Castillo, me and two representatives of CapStone.

8      7.    Fernando Castillo serves as President.  Jason Roberts is

9  the Secretary and I serve as the Treasurer.  B4YB has approximately

10  550 employees.

11     8.    B4YB is a food service company.  It prepares, packages

12  and delivers pre-packaged meals to institutional clients including

13  schools, nursing homes, board and care facilities and others in

14  California and the Las Vegas area.  The company has approximately

15  400 clients for whom it produces and delivers approximately 100,000

16  meals/day including breakfast, lunch and dinner meals as well as

17  snacks.

18     9.    B4YB has two wholly owned subsidiaries: Balance Foods,

19  LLC ("Balance Foods") which manufactures and packages snack foods

20  which are sold to B4YB and included in some of the meals prepared

21  and sold by B4YB.  Moreno Bros Distributing, LLC ("Moreno Bros")

22  which provides logistical support and services to deliver B4YB

23  meals and snacks as well as bread and tortilla products to clients.

24  Both Balance Foods and Moreno Bros employ approximately 20

25  additional employees.

26     10.   B4YB is based in the City of Commerce where the meals are

27  assembled.  They are then distributed to clients through leased

28  warehouses in Los Angeles, San Francisco, Las Vegas and the

1   California Central Valley.

2      11.  Debtor operates on a July 1 to June 30 fiscal year.  For

3 the year ending 2019, gross sales were in excess of $33.3 million.

4 Sales the following year ending June 30, 2020 were $47.9 million,

5 and sales increased to $48.2 million in the following year ending

6 June 30, 2021.  This fiscal year (through December 31, 2021) net

7 income is at $3.4 million on sales of $31.6 million which is an

8 annual rate of $64 million.  Copies of Profit and Loss statements

9 for the years 2020-2021 and 2021-2022 YTD are attached as Exhibits

10 "A-1" through "A-2".

11      12.  The business is somewhat seasonal.  The strongest months

12 are September and October.  The weakest months are June, July and

13 December.

14                **B4YB'S FINANCIAL PROBLEMS**

15      13.  From 2014 until February 2021, B4YB employed a full time

16 Chief Financial Officer.   Starting in February 2021 B4YB became

17 aware that he was having personal problems.  B4YB management did

18 not become aware of the full extent or the impact of those problems

19 on job performance until shortly before the employee was placed on

20 leave.  These problems manifested themselves in accounting

21 irregularities and cash flow issues.  B4YB has since engaged in an

22 internal audit to correct the books and records.

23      14.  B4YB has also just hired James Wong of Armory Consulting

24 Co. (together "Armory") to serve as its CRO.  Armory was selected

25 because of its prior experience with the food service business

26 including involvement in a bankruptcy case of a former competition.

27 An application to employ Armory has been filed along with the other

28 motions supported by this Declaration.  Armory is working through

the B4YB books and records to ensure that they accurately reflect operations.

15.   The actions of Debtor's former CFO triggered covenant defaults under B4YB's financing agreements with Bank Leumi USA ("Leumi").  Until November, 2021 Leumi provided B4YB with a credit facility consisting of a line of credit of $12.5 million and a term loan of $6.75 million.  True and correct copies of the loan documents including copies of the loan agreements, the promissory notes, various guarantees, security agreements and UCC Financing Statements are attached here to as Exhibits "B-1" through "B-7".

16.   On November 5, 2021, Leumi transmitted a Notice of Default letter which identified various alleged defaults and announced that, as of November 8, 2021, Leumi would charge interest at the default rate specified in the loan agreements.  A true and correct copy of that letter is attached as Exhibit "C".

17.   On November 26, 2021, Leumi transmitted a second Notice of Default asserting that the credit line had matured on November 16, 2021 and would not be renewed.  Leumi demanded immediate payment of $16,531,695.41.  A true and correct copy of that letter is attached as Exhibit "D".

18.   On December 10, 2021, Leumi transmitted a third Notice advising that Leumi would no longer honor Debtor's checks and would apply B4YB funds held in Leumi accounts in partial satisfaction of Debtor's obligations to Leumi.  In effect, this action would have resulted in the immediate cessation of Debtor's business operations including the payment of payroll and related tax obligations. Leumi further announced that it had employed a financial consultant who would immediately undertake an evaluation of the Debtor's

1   financial situation.  A true and correct copy of that letter is

2   attached as Exhibit "E".

3       19.  It is important to note that the items of default

4   identified by Leumi in its November 5 letter did not include any

5   failure to make a payment when due.  The Notice of November 26

6   similarly did not specify any failure to make a payment when due,

7   noting only that the credit line had matured and was immediately

8   all due and payable.

9       20.  On January 3, 2022 Leumi filed a Complaint (Exhibit "F")

10  in Los Angeles Superior Court asserting claims for breach of

11  contract, common counts, breach of guaranty and seeking a permanent

12  injunction.  That action is now pending as case number 22STCV00052.

13      21.  On January 4, 2022 Leumi filed an Ex Parte Application

14  seeking a Temporary Restraining Order compelling B4YB to turn over

15  all assets to Leumi (Exhibit "G") and then moved for appointment of

16  a Receiver to liquidate B4YB and its subsidiaries.  The matter was

17  heard on a preliminary basis on January 5, 2022 and continued for

18  further hearing until late January, 2022.  The matter was scheduled

19  to be heard again on the morning of February 24, 2022.

20      22.  Efforts to reach a workout agreement with Leumi continued

21  until the very last minute.  B4YB file its Chapter 11 petition only

22  minutes before the hearing on February 24, 2022 when it became

23  clear that negotiations would be unsuccessful.

24      23.  I believe that if that hearing been allowed to proceed,

25  the motion for a Receiver would have been granted and B4YB would be

26  effectively out of business because Leumi was demanding that all

27  cash immediately be diverted to pay its claims.  In part, my view

28  is based on the fact that the Superior Court granted that relief to

1  Leumi with respect to B4YB's subsidiaries.  This would have left

2  other creditors holding more than $8 million in claims unpaid,

3  would have resulted in the sudden loss of about 550 jobs in 3

4  States, would have resulted in the loss of millions of dollars in

5  food products, and would have left 400 or so clients of B4YB

6  scrambling to find other sources to replace the 100,000 meals per

7  day which are manufactured and delivered by B4YB which are used to

8  feed tens of thousands of low income children, elderly, sick and

9  disabled persons.

10                        **THE NOTICE MOTION**

11      24.  B4YB has approximately 550 employees and approximately

12  230 trade creditors most of whom hold unsecured claims.  Several

13  may be entitled to liens under the Perishable Agricultural

14  Commodities Act ("PACA"), but those have not yet been identified

15  and their claims have not been examined.  As a result, they are

16  grouped together with creditors holding unsecured claims.

17      25.  As of February 25, 2022 (the day after the "Petition

18  Date"), the employees were collectively owed a total of

19  $1,107,933.99 in priority wages and benefits, and an additional

20  $157,121.67 in non-priority wages and benefits.  As of the same

21  date, February 25, 2022, trade creditors were owed approximately

22  $7,256,000, of which some modest portion is secured by PACA liens.[1]

23  The claims range in size from more than $800,000 to less than $100.

24      26.  In addition to Leumi, B4YB has approximately 50 creditors

25  asserting non-PACA liens of various types, almost all with respect

26  to specific pieces of machinery, equipment or vehicles.

27

28      [1]    The precise amount of PACA claims has not been computed due
to lack of time, but it is believed to be less than $250,000.

1  Approximately 6, including the California Employment Development

2  Department ("EDD") have "blanket" liens on all assets of the

3  estate.  The identity of these lienholders and the estimated

4  amounts of their claims appear on Bankruptcy Schedule D, a copy of

5  which is attached hereto as Exhibit "H-2".

6      27.  The amount owed to the EDD is approximately $425,000.

7  This obligation resulted from the same "issues" with Debtor's CFO.

8      28.  B4YB also is the sole source of income to its

9  subsidiaries which have another 20 or so employees and another 30

10  trade creditors.  As of February 25, 2022, the employees were

11  collectively owed a total of $63,482.83 in wages and benefits.  As

12  of the same date, February 25, 2022, trade creditors are believed

13  to be owed more than $200,000.

14      29.  In summary, B4YB has between 750 and 1,000 direct and

15  indirect employees and creditors.  All direct creditors (those not

16  creditors exclusively of one of the subsidiaries) are listed on

17  Debtor's schedules filed with the Petition in this case.  True and

18  correct copies of Schedules D, E and F are attached as Exhibits "H-

19  1" through "H-3".

20  **THE PAYROLL MOTION**

21      30.  As indicated above, B4YB employs about 550 individuals in

22  California, Nevada and Arizona.  Some are hourly, others are

23  salaried.

24      31.  As of the petition date, all wages and associated federal

25  taxes which were due and payable had been paid.  Since the most

26  recent payroll dates, however, additional wages have accrued.  It

27  is these wages which are the subject of Debtor's motion.

28      32.  B4YB utilizes the services of Paycom to administer its

1  payroll process.

2      33.   B4YB has two payrolls.  Salaried employees are paid semi-

3  monthly on the 15th and last days of each month.  Hourly employees

4  are paid semi-monthly on the 10th and 25th of each month

5      34.   The typical semi-monthly payroll amount for salaried

6  employees is $155,200 (not including employer taxes).  The typical

7  semi-monthly payroll amount for hourly employees is $680,000 (not

8  including employer taxes).

9      35.   Attached hereto as Exhibit "I" is a spreadsheet which

10  sets forth the accrued and unpaid wages and benefits of each

11  employee of B4YB.  To protect employee privacy, the spreadsheet

12  does not include employee names or other identifying information,

13  but lists employees by employee numbers.  If necessary, those

14  employee numbers can be cross-referenced with employee names.

15      36.   Amounts owed to individual employees include both wages

16  and benefits (such as vacation and PTO time).  Employees owed more

17  than $13,650 are separately identified.  B4YB is not proposing to

18  pay, at this time, more than $13,650 to any single employee but

19  does anticipate paying any remaining sums in full as part of any

20  reorganization plan.

21      37.   B4YB recognizes that it cannot pay any payroll unless the

22  Court also approves Debtor's cash collateral motion.

23              **CASH COLLATERAL MOTION**

24      38.   B4YB has increased its business volume year over year for

25  at least the last 3-1/2 fiscal years.  But for Covid and this

26  disruption with its CFO, B4YB was on a path to generate more than

27  $5 million/month ($64 million/year).

28      39.   B4YB utilizes a fleet of 72 vehicles, some owned, but

1    many leased.

2        40.    Attached as Exhibit "J" is a cash flow projection which

3    shows anticipated revenues and expenditures over the next 13 weeks

4    from Monday, February 28, 2022 through June 5, 2022.

5        41.    B4YB does not anticipate any loss of business as a result

6    of this Chapter 11 petition.    All of its clients are under

7    contracts for at least 12 months or more.

8        42.    Nor does B4YB anticipate any deterioration in its

9    collections.    Historically B4YB collected nearly all receivables as

10   B4YB clients are generally institutional or governmental in nature.

11   In short, there is no reason to suspect that filing this petition

12   will result in any deterioration in Debtor's business.

13       43.    Further, while there may be unanticipated "bumps in the

14   road" and minor cash flow disruptions, I believe that B4YB can

15   operate at its current level without additional funding.    What B4YB

16   will not be able to do is take on more clients, expand into

17   additional market areas (as was hoped), increase its fleet of

18   vehicles, increase its workforce or make sizeable payments to its

19   creditors.    Allowing the use of cash collateral will permit B4YB

20   to continue its growth curve and propose a meaningful Plan to repay

21   all claims in full.

22       44.    If B4YB is not permitted to use cash collateral on a

23   going basis, the harm to the estate and its creditors is obvious.

24   B4YB will need to immediately cease operations leaving about 550

25   people unemployed, 400 clients scrambling for alternative sources

26   of food for tens of thousands of low income children, sick, elderly

27   or disabled adults, nearly 230 non-employee creditors with no

28   / / /

1 | recovery and a total of more than $8 million in unpaid wage, tax
2 | and trade claims.
3 |     I declare, under penalty of perjury under the laws of the
4 | United States of America, that the foregoing is true and correct
5 | and that this Declaration was signed on February 28, 2022 at City
6 | of Commerce, California.

Jacqueline Duvivier

**EXHIBIT A-1**

000012

# Better 4 You Breakfast, Inc.
## Balance Sheet
### As of June 30, 2021

|  | Total |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Bank Accounts** | |
| 106-10 Leumi - Operating Account 9801 | 378,556.60 |
| 107-10 Leumi - Transportation Account 7300 | 1.49 |
| 108-10 Leumi - Payroll Account 1919 | 2,250.79 |
| 109-10 Main Checking - California Credit Union | 77.51 |
| 118-11 Sunwest - Checking #3348 | 9,927.05 |
| 200-10 Barter Exchange | 284,680.50 |
| 200-12 Barter Exchange - San Francisco | 4,316.89 |
| 205-10 EastWest - Certificate of Deposit | 489.93 |
| **Total Bank Accounts** | $ 680,300.76 |
| **Accounts Receivable** | |
| 300-11 Accounts Receivable (A/R) - Los Angeles | 6,027,653.62 |
| **Total Accounts Receivable** | $ 6,027,653.62 |
| **Other Current Assets** | |
| 1851-01 Investments - Moreno Bros, LLC | 595,000.00 |
| 202-10 Investments | 170,658.00 |
| 500-11 Prepaid Expenses - Los Angeles | 360,243.45 |
| 501-10 Due to/from Balance Foods | 2,918,536.04 |
| 600-10 Prepaid Income Taxes | 7,182.71 |
| 603-10 Intercompany - Moreno Bros LLC | 174,261.95 |
| 640-11 Prepaid Transportation - Los Angeles | 31,736.18 |
| 660-11 Employee Cash Advances - Los Angeles | 4,026.51 |
| 680-11 Commodity Exchange - Los Angeles | 288,454.04 |
| 691-10 Undeposited Funds | 4,635.00 |
| 717-11 Inventory - Food - Los Angeles | 2,070,930.44 |
| 726-10 Investment in Balance Foods - Wholly Owned Sub | 990,763.60 |
| **Total Other Current Assets** | $ 7,616,427.92 |
| **Total Current Assets** | $ 14,324,382.30 |
| **Fixed Assets** | |
| 155-11 Accumulated Depreciation Machinery & Equip | (5,572,709.89) |
| 182-11 Machinery & Equipment - Los Angeles | 11,883,501.87 |
| 183-12 Machinery & Equipment - San Francisco | 3,905,751.23 |
| 183-14 Machinery & Equipment - Las Vegas | 197,602.14 |
| 184-13 Machinery & Equipment - Phoenix | 67,559.04 |
| 300-13 Leasehold Improvements - Phoenix | 36,344.64 |
| 302-11 Leasehold Improvements - Los Angeles | 3,844,655.07 |
| 303-12 Leasehold Improvements - San Francisco | 668,481.52 |
| **Total Fixed Assets** | $ 15,031,185.62 |
| **Other Assets** | |
| 702-11 Start-up Costs - Los Angeles | 21,921.26 |
| 725-10 Security Deposits | 22,695.88 |
| 725-11 Security Deposits - Los Angeles | 150,247.00 |
| 725-12 Security Deposits - San Francisco | 59,545.21 |
| 725-13 725-13 Security Deposits - Phoenix | 1,838.50 |
| 731-10 Intangible Asset - Breakfast Menu Develop | 243,102.25 |
| 735-10 Intangible Asset - Lunch Menu Develop | 624,248.78 |
| 743-10 Intangible Asset - Logistics Develop | 40,057.95 |
| 751-11 Accumulated Amortization Start-up - Los Angeles | (21,921.26) |
| 755-11 Loan Fees (Amortized) - Los Angeles | 257,087.97 |
| **Total Other Assets** | $ 1,398,823.54 |
| **TOTAL ASSETS** | $ 30,754,391.46 |

**LIABILITIES AND EQUITY**

**Liabilities**

**Current Liabilities**

**Accounts Payable**

| | |
|---|---:|
| 101-10 Accounts Payable (A/P) | 86,660.86 |
| 765-11 Accounts Payable (A/P) - Los Angeles | 3,751,599.42 |
| **Total Accounts Payable** | **$ 3,838,260.28** |

**Credit Cards**

| | |
|---|---:|
| 302-10 AMEX - Rewards Card - 01006 | 3,099.70 |
| 311-10 AMEX - Credit Card 91003 | 78,144.69 |
| 331-10 Capital One - Credit Card | 26,651.71 |
| 340-10 Leumi Bank - Credit Card-3692 | 492,869.34 |
| **Total Credit Cards** | **$ 600,765.44** |

**Other Current Liabilities**

| | |
|---|---:|
| 503-11 Accrued Expenses - Los Angeles | 354,463.81 |
| 523-10 Accrued Workers' Comp Liability | 83.08 |
| 555-11 Sales Tax Payable - Los Angeles | 7,654.98 |
| 599-10 Payroll Taxes Payable | 872,047.24 |
| 600-11 Payroll Clearing - Los Angeles | 1,087.32 |
| 723-10 Bank Leumi - Line of Credit | 10,935,010.59 |
| 750-11 Suspense - Los Angeles | 9,074.65 |
| **Total Other Current Liabilities** | **$ 12,179,421.67** |
| **Total Current Liabilities** | **$ 16,618,447.39** |

**Long-Term Liabilities**

| | |
|---|---:|
| 800-11 Deferred Income Tax Liability - Los Angeles | 705,987.00 |
| 810-10 Bank Leumi - Term Loan | 5,409,740.03 |
| 815-11 Notes Payable - SBA Sunwest PPP Loan | 149,900.00 |
| 860-10 Loan Payable - Capital Stone Bridge Loan | 655,448.85 |
| **Total Long-Term Liabilities** | **$ 6,921,075.88** |
| **Total Liabilities** | **$ 23,539,523.27** |

**Equity**

| | |
|---|---:|
| 117-10 Retained Earnings | (789,594.22) |
| 310-11 Capital - Capital Stone Holdings - Los Angeles | 4,369,600.00 |
| 320-10 Common Stock | 16,000.00 |
| Net Income | 3,618,862.41 |
| **Total Equity** | **$ 7,214,868.19** |
| **TOTAL LIABILITIES AND EQUITY** | **$ 30,754,391.46** |

# Better 4 You Breakfast, Inc.
## Profit and Loss
### July 2020 - June 2021

| Income | Total |
|---|---|
| 130-11 Senior Meals - Los Angeles | 11,251,441.84 |
| 130-14 Senior Meals - Las Vegas | 8,914.60 |
| 132-11 Breakfast Sales - Los Angeles | 10,116,935.68 |
| 133-12 Breakfast Sales - San Francisco | 1,616,231.87 |
| 134-13 Breakfast Sales - Phoenix | 31,657.90 |
| 134-14 Breakfast Sales - Nevada | 790,833.92 |
| 136-11 Lunch Sales - Los Angeles | 17,106,001.71 |
| 137-12 Lunch Sales - San Francisco | 2,747,107.57 |
| 138-13 Lunch Sales - Phoenix | 120,861.95 |
| 138-14 Lunch Sales - Nevada | 1,981,840.58 |
| 141-11 Dinner Sales - Los Angeles | 749,189.52 |
| 142-12 Dinner Sales - San Francisco | 26,564.00 |
| 143-13 Dinner Sales - Phoenix | 12,455.50 |
| 143-14 Dinner Sales - Nevada | 8,984.95 |
| 145-11 Snack Sales - Los Angeles | 56,764.98 |
| 146-12 Snack Sales - San Francisco | 61,702.55 |
| 147-13 Snack Sales - Phoenix | 7,937.25 |
| 147-14 Snack Sales - Nevada | 42,430.50 |
| 149-11 Catering Revenue - Los Angeles | 32,317.07 |
| 150-11 Sales Discounts - Breakfast - Los Angeles | (42,981.65) |
| 150-12 Sales Discounts - Breakfast - San Francisco | (3,345.26) |
| 150-13 Sales Discounts - Breakfast - Phoenix | (437.75) |
| 150-14 Sales Discounts - Breakfast - Nevada | (501.65) |
| 151-11 Sales Discounts - Lunch - Los Angeles | (178,446.41) |
| 151-12 Sales Discounts - Lunch - San Francisco | (18,229.25) |
| 151-13 Sales Discounts - Lunch - Phoenix | (414.70) |
| 151-14 Sales Discounts - Lunch - Nevada | (7,443.06) |
| 153-11 Billable Expense Reimbursements - Los Angeles | 768,994.74 |
| 153-12 Billable Expense Reimbursements - San Francisco | 38,939.95 |
| 157-11 Sales - Equipment Los Angeles | 12,464.00 |
| 157-14 Sales - Equipment Nevada | 1,053.00 |
| 158-11 Meal Pack - Los Angeles | 872,484.00 |
| 179-10 Uncategorized Income | (152.44) |
| **Total Income** | **$ 48,212,157.46** |

| Cost of Goods Sold | |
|---|---|
| 186-11 Cost of Meals Sold - Los Angeles | 7,638,137.76 |
| 187-12 Cost of Meals Sold - San Francisco | 1,119,716.87 |
| 188-13 Cost of Meals Sold - Phoenix | 64,415.78 |

| | |
|---|---:|
| **188-14 Cost of Meals Sold - Las Vegas** | 569,938.64 |
| **192-11 Cost Of Meals - Milk - Los Angeles** | 2,791,217.10 |
| **192-14 Cost Of Meals - Milk - Las Vegas** | 237,536.04 |
| **193-12 Cost of Meals - Milk - San Francisco** | 385,665.56 |
| **194-13 Cost of Meals - Milk - Phoenix** | 8,845.41 |
| **196-11 Cost of Meals - Fruit/Produce - Los Angeles** | 4,511,912.73 |
| **196-14 Cost of Meals - Fruit/Produce - Las Vegas** | 160,586.37 |
| **197-12 Cost of Meals - Fruit/Produce - San Francisco** | 442,243.11 |
| **198-13 Cost of Meals - Fruit/Produce - Phoenix** | 21,376.26 |
| **400-11 Kitchen Labor - COS - Los Angeles** | 2,886,283.91 |
| **400-12 Kitchen Labor - COS - San Francisco** | 359,364.44 |
| **400-13 Kitchen Labor - COS - Phoenix** | 212.78 |
| **410-11 Kitchen Labor Payroll Tax - Los Angeles** | 228,982.99 |
| **410-12 Kitchen Labor Payroll Tax - San Francisco** | 30,322.16 |
| **410-13 Kitchen Labor Payroll Tax - Phoenix** | 19.95 |
| **420-11 Distribution Costs - Freight/Delivery - Los Angeles** | 187,531.25 |
| **420-12 Distribution Costs - Freight/Delivery - San Francisco** | 97,300.00 |
| **420-14 Distribution Costs - Freight/Delivery - Nevada** | 7,277.40 |
| **421-11 Quality Control Labor - COS - Los Angeles** | 1,046,739.18 |
| **421-12 Quality Control Labor - COS - San Francisco** | 44,402.30 |
| **422-11 Quality Control Labor Payroll Tax - Los Angeles** | 84,780.61 |
| **422-12 Quality Control Labor Payroll Taxes - San Francisco** | 3,580.63 |
| **423-11 Warehouse Labor - Los Angeles** | 455,849.64 |
| **423-12 Warehouse Labor - San Francisco** | 68,090.66 |
| **424-11 Warehouse Labor Payroll Taxes - Los Angeles** | 36,081.29 |
| **424-12 Warehouse Labor Payroll Taxes - San Francisco** | 6,791.46 |
| **430-11 Packaging Costs - COS - Los Angeles** | 1,362,912.44 |
| **430-12 Packaging Costs - COS - San Francisco** | 169,719.71 |
| **430-13 Packaging Costs - COS - Phoenix** | 9,297.88 |
| **430-14 Packaging Costs - COS - Nevada** | 105,849.66 |
| **900-11 Cost of Meals - Pizza - Los Angeles** | 1,598.70 |
| **907-11 Cost of Food - Catering LA** | (1.38) |
| **911-11 Cost of Meals - Other (Non Fishbowl Expenses) - Los Angeles** | 202,327.84 |
| **911-14 Cost of Meals - Other (Non Fishbowl Expenses) - Las Vegas** | 5,145.98 |
| **912-12 Cost of Meals - Other (Non Fishbowl Expenses) - San Francisco** | 12,631.66 |
| **913-13 Cost of Meals - Other (Non Fishbowl Expenses) - Phoenix** | 747.00 |
| **Total Cost of Goods Sold** | **$  25,365,431.77** |
| **Gross Profit** | **$  22,846,725.69** |

**Expenses**

| | |
|---|---:|
| **110-13 Server Labor - Phoenix** | 9,538.29 |
| **111-11 Server Labor Payroll Tax - Los Angeles** | 124,367.75 |
| **111-12 Server Labor Payroll Tax - San Francisco** | 3,693.69 |
| **111-13 Server Labor Payroll Tax - Phoenix** | 956.19 |
| **112-11 Truck Rental - Los Angeles** | 2,079,215.79 |
| **112-12 Truck Rental - San Francisco** | 519,802.76 |
| **112-13 Truck Rental - Phoenix** | 39,298.39 |

| | |
|---|---:|
| **112-14 Truck Rental - Las Vegas** | 235,268.90 |
| **113-11 Transportation Fuel - Los Angeles** | 364,146.33 |
| **113-12 Transportation Fuel - San Francisco** | 100,004.61 |
| **113-13 Transportation Fuel - Phoenix** | 7,041.10 |
| **113-14 Transportation Fuel-Las Vegas** | 18,988.11 |
| **114-10 Transportation Labor** | 2,370,445.42 |
| **114-12 Transportation Labor - San Francisco** | 571,578.23 |
| **114-13 Transportation Labor - Phoenix** | 29,324.78 |
| **114-14 Transportation Labor - Nevada** | 83,370.56 |
| **115-10 Transportation Labor Payroll Tax** | 1,235.41 |
| **115-11 Transportation Labor Payroll Tax - Los Angeles** | 163,178.62 |
| **115-12 Transportation Labor Payroll Tax - San Francisco** | 48,871.02 |
| **115-13 Transportation Labor Payroll Tax - Phoenix** | 1,849.30 |
| **115-14 Transportation Labor Payroll Tax - Nevada** | 8,551.58 |
| **116-11 Advertising & Marketing - Los Angeles** | 33,333.70 |
| **116-14 Advertising & Marketing - Las Vegas** | 3,929.29 |
| **180-11 Commissions & Fees - Los Angeles** | 423.00 |
| **5010-01 Administrative Labor Payroll Taxes - Los Angeles** | 243,578.89 |
| **5010-02 Administrative Labor Payroll Taxes - San Francisco** | 23,116.26 |
| **5010-03 Administrative Labor Payroll Taxes - Phoenix** | 8,609.74 |
| **510-11 Maintenance Labor - Los Angeles** | 99,528.67 |
| **511-12 Maintenance Labor - San Francisco** | 135.20 |
| **512-11 Maintenance Labor Payroll Taxes - Los Angeles** | 5,482.80 |
| **512-12 Maintenance Labor Payroll Taxes - San Francisco** | 9.05 |
| **513-11 Accounting Department Wages - Los Angeles** | 459,006.66 |
| **513-13 Accounting Department Wages - Phoenix** | 6,250.00 |
| **514-11 Administrative Department Wages - Los Angeles** | 1,723,367.44 |
| **514-12 Administrative Department Wages - San Francisco** | 273,248.02 |
| **514-13 Administrative Department Wages - Phoenix** | 110,000.16 |
| **516-11 Nutrition Department Wages - Los Angeles** | 147,285.15 |
| **517-11 Purchasing Wages - Los Angeles** | 232,857.88 |
| **518-11 Record Department Wages - Los Angeles** | 50,729.49 |
| **519-11 Sales Department Wages - Los Angeles** | 686,716.68 |
| **690-11 Bank Charges - Los Angeles** | 58,299.89 |
| **710-11 Consultants - Los Angeles** | 37,750.00 |
| **712-11 Insurance - Los Angeles** | 1,645,840.49 |
| **740-11 Legal & Professional Fees - Los Angeles** | 122,193.71 |
| **741-11 Meals and Entertainment - Los Angeles** | 6,109.25 |
| **741-12 Meals and Entertainment - San Francisco** | 636.90 |
| **741-14 Meals and Entertainment - Las Vegas** | 2,161.71 |
| **742-11 Auto Expense - Los Angeles** | 12,309.08 |
| **742-12 Auto Expense - San Francisco** | 5,907.89 |
| **742-14  Auto Expense - Las Vegas** | 646.38 |
| **760-11 Office / Computer Supplies - Los Angeles** | 311,714.11 |
| **760-12 Office / Computer Supplies - San Francisco** | 47,992.30 |
| **760-13 Office / Computer Supplies - Phoenix** | 6,459.03 |
| **760-14 Office / Computer Supplies - Las Vegas** | 13,629.20 |

| | |
|---|---:|
| 772-11 Rent - Facility - Los Angeles | 686,736.50 |
| 772-12 Rent - Facility - San Francisco | 406,982.84 |
| 772-13 Rent - Facility - Phoenix | 67,707.92 |
| 772-14 Rent - Facility - Las Vegas | 40,610.08 |
| 773-11 Rent - Equipment/Other - Los Angeles | 170,017.46 |
| 773-12 Rent - Equipment/Other - San Francisco | 11,246.42 |
| 774-11 Repair & Maintenance - Los Angeles | 654,816.04 |
| 774-12 Repair & Maintenance - San Francisco | 94,476.67 |
| 774-13 Repair & Maintenance - Phoenix | 8,076.36 |
| 774-14 Repair & Maintenance - Las Vegas | 13,913.89 |
| 775-11 Equipment Repair & Maintenance - Los Angeles | 29,268.58 |
| 775-12 Equipment Repair & Maintenance - San Francisco | 3,924.72 |
| 775-13 Equipment Repair & Maintenance - Phoenix | 2,070.00 |
| 776-11 Other Tax & License - Los Angeles | 39,361.51 |
| 776-12 Other Tax & License - San Francisco | 1,631.00 |
| 776-13 Other Tax & License - Phoenix | 604.00 |
| 776-14 Other Tax & License - Las Vegas | 50.00 |
| 777-11 Travel - Los Angeles | 13,116.59 |
| 777-12 Travel - San Francisco | 1,887.14 |
| 777-13 Travel - Phoenix | 1,455.03 |
| 777-14 Travel - Las Vegas | 20,032.63 |
| 778-11 Telephone - Los Angeles | 135,511.09 |
| 778-12 Telephone - San Francisco | 5,649.91 |
| 778-13 Telephone - Phoenix | 2,128.45 |
| 778-14 Telephone - Nevada | 751.64 |
| 780-11 Utilities (Other) - Los Angeles | 778,948.39 |
| 780-12 Utilities (Other) - San Francisco | 164,971.36 |
| 780-13 Utilities (Other) - Phoenix | 6,905.99 |
| 780-14 Utilities (Other) - Las Vegas | 2,436.81 |
| 920-11 Server Labor - Los Angeles | 1,538,611.45 |
| 921-12 Server Labor - San Francisco | 33,505.66 |
| 951-10 Allocated New Market RD Expense | (1,115,557.00) |
| 952-00 Allocated COGS New Market RD Expense | (650,000.00) |
| **Total Expenses** | **$   16,331,833.98** |
| **Net Operating Income** | **$     6,514,891.71** |
| **Other Income** | |
| 190-13 Other Income - AZ | 5,365.14 |
| **Total Other Income** | **$          5,365.14** |
| **Other Expenses** | |
| 140-11 Depreciation - Los Angeles | 1,445,244.00 |
| 170-11 Bad Debt Expense - LA | 22,300.32 |
| 190-10 Other Income/Expense | (5,495.86) |
| 190-11 Other Income/Expense - Los Angeles | (1,949,024.75) |
| 190-12 Other Income/Expense - San Francisco | (1,610.38) |
| 200-11 Provision For Taxes - Los Angeles | 646,809.00 |
| 730-11 Interest Expense - Los Angeles | 977,615.11 |
| 955-10 New Market RD Expense | 1,765,557.00 |

| | | |
|---|---|---|
| **Total Other Expenses** | $ | 2,901,394.44 |
| **Net Other Income** | $ | (2,896,029.30) |
| **Net Income** | $ | 3,618,862.41 |

# EXHIBIT A-2

**Better 4 You Breakfast, Inc.**
**Profit and Loss**
July 1, 2021 - December 31, 2021

| | Jul 2021 | Aug 2021 | Sep 2021 | Oct 2021 | Nov 2021 | Dec 2021 | Total |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| **130-11 Senior Meals - Los Angeles** | 1,135,330.70 | 157,891.43 | 643,700.58 | 1,258,066.59 | 636,775.90 | 666,485.11 | 4,498,250.31 |
| **130-12 Senior Meals - San Francisco** | | | 258.94 | 11,060.77 | 2,889.94 | | 14,209.65 |
| **132-11 Breakfast Sales - Los Angeles** | 727,661.71 | 929,711.92 | 824,561.49 | 1,131,432.62 | 965,141.86 | 1,106,483.11 | 5,684,992.71 |
| **133-12 Breakfast Sales - San Francisco** | 99,227.66 | 118,629.00 | 103,549.12 | 293,618.15 | 261,452.25 | 177,140.96 | 1,053,617.14 |
| **134-14 Breakfast Sales - Nevada** | 112,853.43 | 34,725.99 | 4,533.83 | 228,000.53 | 120,763.88 | 99,445.22 | 600,322.88 |
| **136-11 Lunch Sales - Los Angeles** | 1,303,855.05 | 1,681,956.31 | 1,604,276.42 | 2,537,428.35 | 2,075,298.67 | 2,565,844.81 | 11,768,659.61 |
| **137-12 Lunch Sales - San Francisco** | 181,554.14 | 199,663.58 | 224,583.60 | 1,049,498.36 | 798,512.51 | 657,392.53 | 3,111,204.72 |
| **138-14 Lunch Sales - Nevada** | 151,002.43 | 99,943.40 | 194,824.44 | 883,069.50 | 538,203.78 | 763,961.75 | 2,631,005.30 |
| **141-11 Dinner Sales - Los Angeles** | 46,838.93 | 48,009.79 | 64,254.23 | 219,142.85 | 89,685.95 | 220,308.12 | 688,239.87 |
| **142-12 Dinner Sales - San Francisco** | | 3,921.33 | 8,141.33 | 25,731.48 | 57,473.80 | 43,469.08 | 138,737.02 |
| **145-11 Snack Sales - Los Angeles** | 8,014.80 | 9,217.63 | 26,839.47 | 63,883.67 | 77,978.21 | 83,074.53 | 269,008.31 |
| **146-12 Snack Sales - San Francisco** | 5,474.10 | 7,110.99 | 10,505.79 | 44,953.74 | 29,891.61 | 33,129.06 | 131,065.29 |
| **147-14 Snack Sales - Nevada** | 6,673.02 | 156.62 | 680.44 | 20,649.97 | 15,536.53 | 11,490.00 | 55,186.58 |
| **149-11 Catering Revenue - Los Angeles** | 45.00 | 126.50 | | 313.10 | 1,175.00 | | 1,659.60 |
| **150-11 Sales Discounts - Breakfast - Los Angeles** | -12,592.66 | -586.71 | -454.30 | -29.97 | | | -13,663.64 |
| **150-12 Sales Discounts - Breakfast - San Francisco** | -48.75 | -80.85 | | -227.61 | -210.00 | | -567.21 |
| **150-14 Sales Discounts - Breakfast - Nevada** | | | | -102.50 | | | -102.50 |
| **151-11 Sales Discounts - Lunch - Los Angeles** | -25,139.94 | -35,454.91 | -8,496.83 | -15,862.00 | -11,573.61 | -13,612.56 | -110,139.85 |
| **151-12 Sales Discounts - Lunch - San Francisco** | -7.95 | -439.53 | -1,099.49 | -3,684.69 | -379.09 | -430.17 | -6,040.92 |
| **151-14 Sales Discounts - Lunch - Nevada** | -394.08 | -149.87 | -6,506.72 | -18,646.52 | -11,532.36 | -15,043.55 | -52,273.10 |
| **152-11 Trade Discounts - Los Angeles** | | | | | | | 0.00 |
| **152-12 Trade Discounts - San Francisco** | | | | | | -374.13 | -374.13 |
| **153-11 Billable Expense Reimbursements - Los Angeles** | 48,682.49 | 95,424.55 | 91,254.60 | 234,002.48 | 213,070.23 | 349,911.25 | 1,032,345.60 |
| **153-12 Billable Expense Reimbursements - San Francisco** | 5,698.84 | 4,039.73 | 2,541.93 | 28,815.81 | 24,394.58 | 29,136.20 | 94,627.09 |
| **158-11 Meal Pack - Los Angeles** | 7,228.60 | 0.01 | | 909.99 | | | 8,138.60 |
| **178-10 Unapplied Cash Payment Income** | -8,745.03 | -39,475.93 | 20,474.68 | 0.00 | 1,944.02 | 23,834.30 | -1,967.96 |
| **179-10 Uncategorized Income** | | | | | | | 0.00 |
| **Total Income** | $ 3,793,212.49 | $ 3,314,340.98 | $ 3,808,423.55 | $ 7,992,024.67 | $ 5,886,493.66 | $ 6,801,645.62 | $ 31,596,140.97 |
| **Cost of Goods Sold** | | | | | | | |
| **186-11 Cost of Meals Sold - Los Angeles** | 473,110.82 | 646,314.85 | 626,653.60 | 1,776,092.42 | 395,157.26 | 2,459,854.95 | 6,377,183.90 |
| **187-12 Cost of Meals Sold - San Francisco** | 16.55 | 7,429.85 | 3,503.67 | 2,238.71 | 9,861.74 | | 23,050.52 |
| **192-11 Cost Of Meals - Milk - Los Angeles** | 299,744.99 | 229,321.50 | 189,684.50 | 294,592.04 | 346,685.56 | 47,047.01 | 1,407,075.60 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 192-14 Cost Of Meals - Milk - Las Vegas | 4,715.53 | 8,458.22 | 51,092.62 | 19,146.06 | 41,354.42 | 89,640.81 | 214,407.66 |
| 193-12 Cost of Meals - Milk - San Francisco | 26,528.87 | 16,085.95 | 52,523.68 | 73,560.25 | 110,417.70 | 35,814.89 | 314,931.34 |
| 196-11 Cost of Meals - Fruit/Produce - Los Angeles | 146,667.60 | 195,856.65 | 184,943.15 | 524,155.55 | 360,295.65 | 308,271.50 | 1,720,190.10 |
| 196-14 Cost of Meals - Fruit/Produce - Las Vegas | | | | 22,283.32 | 2,677.90 | 14,842.10 | 39,803.32 |
| 197-12 Cost of Meals - Fruit/Produce - San Francisco | 23,634.50 | 24,950.50 | 36,795.00 | 65,588.00 | 75,881.00 | 60,836.00 | 287,685.00 |
| 400-11 Kitchen Labor - COS - Los Angeles | 209,471.74 | 303,779.22 | 387,801.79 | 386,305.90 | 319,679.20 | 290,017.02 | 1,897,054.87 |
| 400-12 Kitchen Labor - COS - San Francisco | 18,002.46 | 54,800.43 | 57,296.61 | 53,547.42 | 46,525.68 | 39,691.97 | 269,864.57 |
| 400-14 Kitchen Labor - COS - Las Vegas | | | | | | | 0.00 |
| 410-11 Kitchen Labor Payroll Tax - Los Angeles | 14,679.96 | 25,910.40 | 34,345.63 | 32,763.43 | 27,316.04 | 29,186.89 | 164,202.35 |
| 410-12 Kitchen Labor Payroll Tax - San Francisco | 1,553.45 | 4,317.50 | 4,440.93 | 4,378.12 | 3,332.12 | 3,755.69 | 21,777.81 |
| 420-11 Distribution Costs - Freight/Delivery - Los Angeles | 11,322.00 | 10,360.01 | 38,478.79 | 35,798.30 | 43,112.30 | | 139,071.40 |
| 420-12 Distribution Costs - Freight/Delivery - San Francisco | 8,050.00 | 10,350.00 | 11,500.00 | 33,950.00 | 31,200.00 | 23,095.00 | 118,145.00 |
| 420-14 Distribution Costs - Freight/Delivery - Nevada | 1,892.00 | | 3,482.25 | 1,881.80 | 1,753.45 | | 9,009.50 |
| 421-11 Quality Control Labor - COS - Los Angeles | 106,097.72 | 127,173.16 | 144,980.12 | 129,009.87 | 117,321.64 | 89,325.62 | 713,908.13 |
| 421-12 Quality Control Labor - COS - San Francisco | 2,921.81 | 7,027.83 | 9,646.93 | 11,270.55 | 10,597.17 | 11,312.93 | 52,777.22 |
| 422-11 Quality Control Labor Payroll Tax - Los Angeles | 4,965.18 | 6,591.16 | 7,222.09 | 6,752.03 | 6,057.96 | 6,600.14 | 38,188.56 |
| 422-12 Quality Control Labor Payroll Taxes - San Francisco | 211.19 | 753.62 | 1,127.78 | 1,225.93 | 939.43 | 1,220.53 | 5,478.48 |
| 423-11 Warehouse Labor - Los Angeles | 32,160.09 | 42,624.31 | 48,803.28 | 53,805.44 | 48,837.73 | 45,852.99 | 272,083.84 |
| 423-12 Warehouse Labor - San Francisco | 8,936.56 | 14,001.86 | 16,135.97 | 14,641.24 | 10,642.14 | 11,144.33 | 75,502.10 |
| 424-11 Warehouse Labor Payroll Taxes - Los Angeles | 2,392.61 | 3,342.32 | 3,772.01 | 4,150.65 | 4,087.07 | 4,995.77 | 22,740.43 |
| 424-12 Warehouse Labor Payroll Taxes - San Francisco | 735.89 | 1,081.46 | 1,438.04 | 1,308.78 | 837.02 | 1,103.65 | 6,504.84 |
| 430-11 Packaging Costs - COS - Los Angeles | 196,112.95 | 216,847.21 | 188,479.26 | 134,282.75 | -443,971.82 | 818,820.73 | 1,110,571.08 |
| 430-12 Packaging Costs - COS - San Francisco | | -151.86 | | 537.91 | 9,433.40 | 475.03 | 10,294.48 |
| 430-13 Packaging Costs - COS - Phoenix | | | | | | | 0.00 |
| 430-14 Packaging Costs - COS - Nevada | | | | | 47.51 | | 47.51 |
| 900-11 Cost of Meals - Pizza - Los Angeles | 825.40 | | 56.70 | 7,280.58 | | 5,352.77 | 13,515.45 |
| 901-12 Cost of Meals - Pizza - San Francisco | | | | | | 2,420.00 | 2,420.00 |
| 907-11 Cost of Food - Catering LA | | 1.75 | 72.93 | | | | 74.68 |
| 911-11 Cost of Meals - Other (Non Fishbowl Expenses) - Los Angeles | 9,337.72 | 5,566.62 | 14,460.00 | 11,171.03 | 11,347.35 | 1,057.95 | 52,940.67 |
| 911-14 Cost of Meals - Other (Non Fishbowl Expenses) - Las Vegas | | 1,136.14 | 51.75 | 116.83 | 41.12 | 56.18 | 1,402.02 |
| 912-12 Cost of Meals - Other (Non Fishbowl Expenses) - San Francisco | 342.58 | 99.00 | 667.03 | | | -93.27 | 1,015.34 |
| **Total Cost of Goods Sold** | $ 1,604,430.17 | $ 1,964,029.66 | $ 2,119,456.11 | $ 3,701,834.91 | $ 1,591,467.74 | $ 4,401,699.18 | $ 15,382,917.77 |
| **Gross Profit** | $ 2,188,782.32 | $ 1,350,311.32 | $ 1,688,967.44 | $ 4,290,189.76 | $ 4,295,025.92 | $ 2,399,946.44 | $ 16,213,223.20 |
| Expenses | | | | | | | 0.00 |
| 111-11 Server Labor Payroll Tax - Los Angeles | 9,524.06 | 21,414.14 | 34,395.63 | 32,085.22 | 28,028.92 | 25,326.56 | 150,774.53 |
| 111-12 Server Labor Payroll Tax - San Francisco | 178.68 | 1,485.62 | 2,505.23 | 1,919.80 | 1,650.75 | 1,570.78 | 9,310.86 |
| 112-11 Truck Rental - Los Angeles | 260,541.75 | 106,800.67 | 32,376.91 | 443,352.23 | 216,329.61 | 266,048.52 | 1,325,449.69 |
| 112-12 Truck Rental - San Francisco | 49,334.53 | 102,353.04 | 85,696.90 | 63,671.84 | 55,079.60 | 36,226.28 | 392,362.19 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **112-14 Truck Rental - Las Vegas** | 6,754.68 | 6,454.81 | 11,421.81 | 44,910.50 | 51,098.06 | 38,614.72 | 159,254.58 |
| **113-11 Transportation Fuel - Los Angeles** | 44,441.06 | 51,216.77 | 67,048.73 | 69,995.99 | 49,823.35 | 71,685.87 | 354,211.77 |
| **113-12 Transportation Fuel - San Francisco** | 13,103.66 | 15,738.72 | 25,587.14 | 27,596.20 | 18,432.44 | 25,088.24 | 125,546.40 |
| **113-14 Transportation Fuel-Las Vegas** | 1,557.89 | 2,025.13 | 6,061.88 | 17,937.71 | 4,220.80 | 5,468.77 | 37,272.18 |
| **114-10 Transportation Labor** | 158,699.82 | 265,811.11 | 294,741.33 | 284,576.87 | 237,975.58 | 216,263.77 | 1,458,068.48 |
| **114-12 Transportation Labor - San Francisco** | 50,046.97 | 105,324.93 | 97,286.06 | 91,110.24 | 71,364.54 | 68,605.59 | 483,738.33 |
| **114-14 Transportation Labor - Nevada** | 4,038.65 | 18,730.23 | 15,652.92 | 17,919.27 | 15,201.23 | 13,400.94 | 84,943.24 |
| **115-10 Transportation Labor Payroll Tax** | 494.17 | 494.16 | 494.17 | 520.89 | 1,169.00 | 1,557.06 | 4,729.45 |
| **115-11 Transportation Labor Payroll Tax - Los Angeles** | 11,815.13 | 21,131.85 | 24,421.33 | 23,036.56 | 17,823.39 | 18,338.34 | 116,566.60 |
| **115-12 Transportation Labor Payroll Tax - San Francisco** | 4,207.74 | 9,068.46 | 8,263.21 | 6,889.36 | 5,370.71 | 6,054.48 | 39,853.96 |
| **115-14 Transportation Labor Payroll Tax - Nevada** | 430.13 | 2,016.64 | 1,615.41 | 1,744.04 | 1,669.46 | 1,478.91 | 8,954.59 |
| **116-10 Advertising & Marketing** | 1,000.00 | | | | | | 1,000.00 |
| **116-11 Advertising & Marketing - Los Angeles** | 4,661.33 | 3,969.99 | 6,215.55 | 416.95 | 3,556.95 | 10,912.33 | 29,733.10 |
| **180-12 Commissions & Fees - San Francisco** | | | | 809.00 | | | 809.00 |
| **5010-01 Administrative Labor Payroll Taxes - Los Angeles** | 20,533.97 | 19,959.20 | 18,332.11 | 18,446.37 | 19,167.03 | 29,100.25 | 125,538.93 |
| **5010-02 Administrative Labor Payroll Taxes - San Francisco** | 377.48 | 599.56 | 799.03 | 795.66 | 586.43 | 854.53 | 4,012.69 |
| **5010-03 Administrative Labor Payroll Taxes - Phoenix** | 1,063.15 | 455.02 | 1,107.95 | 1,107.94 | 1,107.95 | 1,296.24 | 6,138.25 |
| **510-11 Maintenance Labor - Los Angeles** | 16,396.34 | 14,908.74 | 12,071.48 | 12,309.59 | 11,326.98 | 8,974.91 | 75,988.04 |
| **512-11 Maintenance Labor Payroll Taxes - Los Angeles** | 654.43 | 1,054.46 | 902.07 | 920.28 | 845.12 | 876.20 | 5,252.56 |
| **513-11 Accounting Department Wages - Los Angeles** | 35,915.26 | 37,415.04 | 36,915.24 | 37,415.06 | 36,915.24 | 44,331.70 | 228,907.54 |
| **513-13 Accounting Department Wages - Phoenix** | 9,375.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 6,250.00 | 40,625.00 |
| **514-11 Administrative Department Wages - Los Angeles** | 185,646.70 | 201,045.00 | 185,556.58 | 145,745.27 | 171,492.82 | 200,609.15 | 1,090,095.52 |
| **514-12 Administrative Department Wages - San Francisco** | 3,181.68 | 5,232.19 | 10,225.31 | 10,181.06 | 4,819.94 | 5,064.32 | 38,704.50 |
| **514-13 Administrative Department Wages - Phoenix** | 9,166.68 | 9,166.68 | 9,166.68 | 9,166.68 | 9,166.68 | 9,166.68 | 55,000.08 |
| **516-11 Nutrition Department Wages - Los Angeles** | 12,324.18 | 12,004.96 | 12,324.18 | 12,324.18 | 11,047.30 | 12,324.18 | 72,348.98 |
| **517-11 Purchasing Wages - Los Angeles** | 10,416.68 | 10,416.84 | 10,416.68 | 10,416.68 | 10,416.68 | 10,416.68 | 62,500.24 |
| **519-11 Sales Department Wages - Los Angeles** | 56,519.10 | 47,907.89 | 48,128.54 | 56,960.40 | 64,887.07 | 72,813.74 | 347,216.74 |
| **690-11 Bank Charges - Los Angeles** | 2,646.41 | 3,535.79 | 6,227.42 | 14,455.34 | 4,651.01 | 18,531.23 | 50,047.20 |
| **710-11 Consultants - Los Angeles** | 6,250.00 | 5,019.95 | 5,379.15 | 2,968.95 | 8,722.49 | 5,579.14 | 33,919.68 |
| **712-11 Insurance - Los Angeles** | 198,473.00 | 208,954.65 | 150,582.32 | 264,543.14 | 98,015.58 | 159,238.06 | 1,079,806.75 |
| **740-11 Legal & Professional Fees - Los Angeles** | 12,130.99 | 39.99 | 11,498.95 | 10,029.99 | 28,218.85 | 41,733.90 | 103,652.67 |
| **740-12 Legal & Professional Fees - San Francisco** | | | | | 7.73 | | 7.73 |
| **741-11 Meals and Entertainment - Los Angeles** | 228.42 | 938.87 | -200.64 | 1,624.23 | 163.27 | 300.80 | 3,054.95 |
| **741-12 Meals and Entertainment - San Francisco** | 207.79 | | | | | 50.81 | 258.60 |
| **741-14 Meals and Entertainment - Las Vegas** | 251.43 | 205.33 | 65.60 | | 31.93 | | 554.29 |
| **742-11 Auto Expense - Los Angeles** | 1,023.81 | 767.90 | 1,051.62 | 1,256.48 | 1,096.52 | 2,542.62 | 7,738.95 |
| **742-12 Auto Expense - San Francisco** | 2,362.30 | 437.29 | 1,052.80 | 2,282.87 | 333.41 | 666.85 | 7,135.52 |
| **742-14  Auto Expense - Las Vegas** | 37.00 | 101.00 | 19.00 | | | | 157.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **760-10 Office / Computer Supplies** | | | | | | 725.00 | 725.00 |
| **760-11 Office / Computer Supplies - Los Angeles** | 26,606.82 | 31,418.43 | 10,709.64 | 21,791.76 | 17,636.05 | 9,807.90 | 117,970.60 |
| **760-12 Office / Computer Supplies - San Francisco** | 11,331.48 | 16,144.16 | 9,810.25 | 2,579.32 | 9,507.78 | 15,096.71 | 64,469.70 |
| **760-14 Office / Computer Supplies - Las Vegas** | 5,630.07 | 4,455.56 | 4,092.44 | 1,794.86 | 1,132.33 | | 17,105.26 |
| **770-11 Other Supplies - Los Angeles** | 875.00 | | | | | | 875.00 |
| **772-11 Rent - Facility - Los Angeles** | 66,343.50 | 66,343.50 | 66,343.50 | 66,343.50 | 70,489.75 | 68,002.00 | 403,865.75 |
| **772-12 Rent - Facility - San Francisco** | 33,930.91 | 35,299.98 | 35,299.98 | 35,299.98 | 35,299.98 | 35,299.98 | 210,430.81 |
| **772-14 Rent - Facility - Las Vegas** | 7,275.92 | 7,275.92 | 7,275.92 | 7,275.92 | 7,275.92 | 7,275.92 | 43,655.52 |
| **773-11 Rent - Equipment/Other - Los Angeles** | 72,536.03 | 83,928.37 | 73,840.84 | 84,366.76 | 71,719.41 | 22,792.04 | 409,183.45 |
| **773-12 Rent - Equipment/Other - San Francisco** | 2,310.01 | 710.94 | 710.94 | 2,406.69 | 710.94 | 710.94 | 7,560.46 |
| **773-14 Rent -Equipment/Other - Las Vegas** | 1,625.63 | 4,931.07 | 3,251.26 | 41,312.00 | 9,420.00 | | 60,539.96 |
| **774-10 Repair & Maintenance** | | | | | | | 0.00 |
| **774-11 Repair & Maintenance - Los Angeles** | 57,724.69 | 40,670.24 | 44,035.49 | 72,073.60 | 35,668.99 | 56,937.34 | 307,110.35 |
| **774-12 Repair & Maintenance - San Francisco** | 8,261.55 | 7,263.02 | 3,779.37 | 4,009.70 | 6,492.95 | 8,384.57 | 38,191.16 |
| **774-14 Repair & Maintenance - Las Vegas** | 414.00 | 2,507.40 | 7,311.16 | 3,944.15 | 1,235.05 | 125.63 | 15,537.39 |
| **775-11 Equipment Repair & Maintenance - Los Angeles** | 3,096.10 | | 1,816.96 | 1,861.32 | 4,570.17 | 314.18 | 11,658.73 |
| **775-12 Equipment Repair & Maintenance - San Francisco** | 700.00 | | | | 477.27 | | 1,177.27 |
| **775-13 Equipment Repair & Maintenance - Phoenix** | 1,230.00 | | | | | | 1,230.00 |
| **776-11 Other Tax & License - Los Angeles** | 5,871.28 | 4,351.37 | 175.97 | 182.11 | 955.97 | 3,865.53 | 15,402.23 |
| **776-12 Other Tax & License - San Francisco** | 1,179.61 | 155.75 | | | 329.00 | | 1,664.36 |
| **777-11 Travel - Los Angeles** | 1,657.32 | -146.30 | 2,673.24 | 3,019.99 | 5,863.67 | 6,614.72 | 19,682.64 |
| **777-12 Travel - San Francisco** | 909.04 | 1,065.70 | 173.12 | 462.30 | 522.21 | 977.77 | 4,110.14 |
| **777-14 Travel - Las Vegas** | 3,149.60 | 2,396.29 | 2,076.72 | | | | 7,622.61 |
| **778-11 Telephone - Los Angeles** | 14,657.37 | 8,419.24 | 8,179.14 | 18,669.33 | 5,559.36 | 10,002.31 | 65,486.75 |
| **778-12 Telephone - San Francisco** | | | | | | | 0.00 |
| **778-14 Telephone - Nevada** | 180.41 | 210.41 | | 631.23 | | 180.41 | 1,202.46 |
| **780-11 Utilities (Other) - Los Angeles** | 66,046.98 | 89,697.58 | 540.00 | 185,232.00 | 1,940.21 | 80,635.90 | 424,092.67 |
| **780-12 Utilities (Other) - San Francisco** | 12,763.32 | 21,649.69 | 7,781.78 | 23,612.56 | 16,753.81 | | 82,561.16 |
| **780-14 Utilities (Other) - Las Vegas** | 1,338.50 | 1,468.19 | 88.16 | 4,645.38 | 31.24 | | 7,571.47 |
| **783-10 Unapplied Cash Bill Payment Expense** | 1,369.07 | -35,299.98 | 808.88 | 34,491.10 | -35,299.98 | 2,851.42 | -31,079.49 |
| **920-11 Server Labor - Los Angeles** | 93,902.38 | 206,290.98 | 344,617.36 | 333,898.54 | 296,313.11 | 262,958.73 | 1,537,981.10 |
| **921-12 Server Labor - San Francisco** | 1,760.00 | 13,857.60 | 23,214.08 | 18,630.24 | 16,653.28 | 15,308.80 | 89,424.00 |
| **Total Expenses** | $ 1,710,688.64 | $ 1,935,517.73 | $ 1,900,262.48 | $ 2,716,227.18 | $ 1,849,322.89 | $ 2,046,230.95 | $ 12,158,249.87 |
| **Net Operating Income** | $ 478,093.68 | -$ 585,206.41 | -$ 211,295.04 | $ 1,573,962.58 | $ 2,445,703.03 | $ 353,715.49 | $ 4,054,973.33 |
| **Other Expenses** | | | | | | | 0.00 |
| **130-11 Amortization - Los Angeles** | 8,447.17 | 8,447.17 | 8,447.17 | 8,447.17 | 8,447.17 | 8,447.17 | 50,683.02 |
| **140-11 Depreciation - Los Angeles** | 1,246.04 | 2,822.53 | 4,503.57 | 6,073.78 | 7,866.86 | 8,455.79 | 30,968.57 |
| **140-12 Depreciation - San Francisco** | 128.33 | 201.01 | 520.90 | 520.90 | 520.90 | 520.90 | 2,412.94 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **170-11 Bad Debt Expense - LA** | | 108.00 | 538.95 | 38,393.57 | -23,305.65 | | 15,734.87 |
| **190-11 Other Income/Expense - Los Angeles** | -61.83 | -7,109.04 | | 9,000.00 | | | 1,829.13 |
| **730-11 Interest Expense - Los Angeles** | 38,713.49 | 19,412.25 | 103,248.75 | 144,526.65 | 144,462.73 | 91,514.31 | 541,878.18 |
| **Total Other Expenses** | $ 48,473.20 | $ 23,881.92 | $ 117,259.34 | $ 206,962.07 | $ 137,992.01 | $ 108,938.17 | $ 643,506.71 |
| **Net Other Income** | -$ 48,473.20 | -$ 23,881.92 | -$ 117,259.34 | -$ 206,962.07 | -$ 137,992.01 | -$ 108,938.17 | -$ 643,506.71 |
| **Net Income** | $ 429,620.48 | -$ 609,088.33 | -$ 328,554.38 | $ 1,367,000.51 | $ 2,307,711.02 | $ 244,777.32 | $ 3,411,466.62 |

Friday, Feb 25, 2022 04:45:21 PM GMT-8 - Cash Basis

**EXHIBIT B-1**



## TERM NOTE
### (Multiple Draw)

$6,750,000

Los Angeles, California
August 16, 2019

    **FOR VALUE RECEIVED**, Better 4 You Breakfast, Inc., a corporation organized under the laws of the State of California, with its principal place of business at 20715 Avalon Blvd., Carson, CA 90746 (the "**Borrower**"), promises to pay to the order of **BANK LEUMI USA** (the "**Bank**") on or prior to August 16, 2024 (the "**Term Loan Maturity Date**") in lawful money and in immediately available funds, at its offices at 555 W. 5th Street, Suite 3300, Los Angeles, CA or at such other place as the holder hereof may designate, the principal sum of SIX MILLION SEVEN HUNDRED FIFTY THOUSAND and 00/100 Dollars ($6,750,000) (the "**Maximum Facility Amount**") or such lesser amount as may be advanced and be outstanding to or for the benefit of Borrower hereunder, together with interest accruing thereon from the date advanced until paid in full, as set forth herein (the "**Term Loan**").

    1.    **Advances**.  Borrower may from time to time prior to the Conversion Date borrow hereunder advances up to the Maximum Facility Amount, subject to the terms and conditions of this Term Note (this "**Note**") and the other Loan Documents (as defined herein) (the "**Facility**").  Advances hereunder once repaid may not be re-borrowed.  On the Conversion Date, the then-outstanding principal amount of advances hereunder shall convert to an amortizing term loan payable as set forth below.  The "**Conversion Date**" shall mean December 31, 2019.

    2.    **Advance Procedures**.  If permitted by Bank, a request for advance may be made by facsimile or electronic mail, with such confirmation or verification (if any) in writing or otherwise as Bank may require in its discretion from time to time.  Further, Borrower hereby agrees to indemnify and hold Bank harmless from and against any and all damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees and expenses) which may arise or be created by the acceptance of such facsimile and electronic requests or by the making of such advances.  Bank shall have no obligation to determine whether any person requesting an advance is or has been authorized by Borrower to do so.  Bank will enter on its books and records, which entry when made will be presumed correct absent manifest error, the date and amount of each advance, as well as the date and amount of each payment made by Borrower.  Each borrowing hereunder shall be in a minimum amount of $25,000 or if less than $25,000 shall be the remaining amount available under this Note then such lesser amount.  Every time Borrower requests an advance from Bank prior to the Conversion Date, Borrower shall be deemed to automatically represent and warrant that all of the representations and warranties set forth in Section A.5 of the Letter Agreement (as defined below) are true and correct in all material respects as of the date of such request and that no Event of Default (or default which with the passage of time would result in an Event of Default) has occurred and is continuing.  Furthermore, Bank shall be under no obligation to provide any advances prior to the Conversion Date unless Borrower provides purchase orders or invoices in detail reasonably satisfactory to Bank that support Borrower's advance requests (and, without limiting the foregoing, in the case of the advances made as of the date hereof, a detailed sources and uses spreadsheet showing to which entity the proceeds of advances hereunder should be wired as of such date).

    3.    **Interest Rate**.  Amounts outstanding under this Note shall bear interest until paid in full at a rate per annum ("**Fixed Rate**") which is at all times equal to four and one-quarter percent (4.25%).  Interest hereunder will be calculated based on the actual number of days that principal is outstanding over a year of 360 days.

### 4.    **Payments**.

**4.1    Interest and Principal Payments**.  Borrower shall pay accrued interest in arrears on the unpaid principal balance of this Note on the first (1st) day of each month during the term hereof, beginning with the payment due on September 1, 2019, and at maturity, whether by acceleration of this Note or otherwise, until paid in full.

Principal shall be due and payable in equal monthly installments commencing on January 1, 2020 based on the principal amount of Term Loans outstanding on such date and based on straight line amortization of such amount for sixty months beginning on January 1, 2020, and continuing on the first (1st) day of each month thereafter, and a final installment equal to all then-outstanding principal on the Term Loan Maturity Date.  Any outstanding principal and accrued interest shall be due and payable in full on the Term Loan Maturity Date.

**4.2    Manner of Payment**.  All payments by Borrower on account of principal, interest or fees hereunder shall be made in lawful money of the United States of America, in immediately available funds.  If any payment under this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing interest in connection with such payment.  Borrower authorizes (but shall not require) Bank to debit any account maintained by Borrower with Bank, at any date on which a payment is due under this Note, in an amount equal to any unpaid portion of such payment.  If any payment of principal or interest becomes due on a day on which Bank is closed (as required or permitted by law or otherwise), such payment shall be made not later than the next succeeding Business Day except as may be otherwise provided herein, and such extension shall be included in computing interest in connection with such payment.  Each payment made on this Note (or received by Bank with respect to any other indebtedness owed by Borrower to Bank, or any affiliate thereof), shall be applied by Bank to amounts due under this Note (or with respect to any such other indebtedness) in such order or manner as Bank, in its discretion, elects, regardless of any instructions from Borrower to the contrary.  Bank or any holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights.  For the purposes hereof, "**Business Day**" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in Los Angeles, California.

**4.3    Late Payments; Default Rate**.  If Borrower fails to make any payment of principal, interest or other amount coming due pursuant to the provisions of this Note within ten (10) calendar days of the date due and payable, Borrower also shall pay to Bank a late charge equal to the greater of five percent (5%) of the amount of such payment or $100.00 (the "**Late Charge**").  Such ten (10) day period shall not be construed in any way to extend the due date of any such payment.  Upon maturity, whether by acceleration, demand or otherwise and, at Bank's option, upon the occurrence of any Event of Default (as hereinafter defined) and during the continuance thereof, amounts outstanding under this Note shall bear interest at a rate per annum (based on the actual number of days that principal is outstanding over a year of 360 days) which shall be six percent (6%) in excess of the interest rate otherwise in effect from time to time under this Note but not more than the maximum rate allowed by law (the "**Default Rate**"); provided, however, if the Default Rate is less than ten percent (10%), then, upon entry of judgment on this Note, the applicable rate of interest shall be the higher of (a) the Default Rate and (b) the statutory rate applicable to judgments in the State of California.  The Default Rate shall continue to apply whether or not judgment shall be entered on this Note.  Both the Late Charge and the Default Rate are imposed as liquidated damages for the purpose of defraying Bank's expenses incident to the handling of delinquent payments, but are in addition to, and not in lieu of, Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any fees and expenses of any agents or attorneys which Bank may employ.  In addition, the Default Rate reflects the increased credit risk to Bank of

2

carrying a loan that is in default. Borrower agrees that the Late Charge and Default Rate are reasonable forecasts of just compensation for anticipated and actual harm incurred by Bank, and that the actual harm incurred by Bank cannot be estimated with certainty and without difficulty.

**4.4    Prepayments**. The indebtedness evidenced by this Note may be prepaid in whole or in part at any time without penalty. Notwithstanding the foregoing, and without limitation thereof, any voluntary prepayment of advances hereunder shall be in a minimum principal amount of $250,000, in each case upon no less than three (3) Business Days prior written notice to Bank, provided that on each prepayment Borrower shall pay accrued interest on the principal amount so prepaid through the date of such prepayment.

**4.5    Increased Costs; Yield Protection**. On written demand, together with written evidence of the justification therefor, Borrower agrees to pay Bank all direct costs incurred, any losses suffered or payments made by Bank as a result of any Change in Law (hereinafter defined), imposing any reserve, deposit, allocation of capital or similar requirement (including without limitation, Regulation D of the Board of Governors of the Federal Reserve System) on Bank, its holding company or any of their respective assets relative to this Note. "**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

**5.    Security; Right of Setoff; Deposit Accounts**. This Note is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Borrower or any third party has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Borrower to Bank.

Borrower hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments due to Bank (a) to set off against, and to appropriate and apply to the payment of, Borrower's obligations and liabilities under this Note (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any and all amounts owing by Bank to Borrower (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced) and (b) pending any such action, to the extent necessary, to hold such amounts as collateral to secure such obligations and liabilities and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposits so held as Bank, may reasonably determine. Borrower hereby grants to Bank a security interest in all deposits and accounts maintained with Bank, together with all other personal property of Borrower (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to Bank or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered, to secure the payment of all obligations and liabilities of Borrower to Bank under this Note. Every such security interest and right of setoff may be exercised without demand upon or notice to Borrower.

3

Without limitation of the foregoing, Borrower hereby grants to Bank a lien on and security interest in any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Borrower and maintained in an account at Bank, which may have a related account at a bank which is a member of the Federal Reserve System. Borrower authorizes Bank to serve as its bailee and agent with respect to the aforementioned book entry Treasury bills and other book entry securities and to take such action and to execute and deliver such documents on behalf of Borrower as Bank deems necessary or desirable in order to perfect Bank's security interest therein. Borrower hereby gives notice to Bank, in Bank's capacity as bailee and agent, of Bank's security interest in the aforementioned book entry Treasury bills and other book entry securities. Bank may at any time and from time to time, without notice, transfer into its own name or that of its nominee any of the foregoing property of Borrower.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Borrower hereunder.

6.     **Other Loan Documents**. This Note is issued in connection with a letter agreement dated as of even date herewith (the "**Letter Agreement**"; capitalized terms used herein not otherwise defined herein shall have the meaning set forth in the Letter Agreement) between Borrower and Bank, and certain other agreements and documents executed and/or delivered in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time, collectively, including this Note, the "**Loan Documents**"), and is secured by the collateral (if any) described in the Loan Documents and by such other collateral as previously may have been or may in the future be granted to Bank to secure this Note. The holder of this Note is entitled to the benefits of the Loan Documents and may enforce the agreements of Borrower contained in the Loan Documents and exercise the remedies provided for by, or otherwise available in respect of, the Loan Documents, all in accordance with, and subject to the restrictions contained in, the terms of the Loan Documents.

7.     **Default; Remedies**.

7.1     **Events of Default**. The occurrence of any of the following, with respect to Borrower, any guarantor of this Note, any pledgor of equity in support of this Note, or any person or entity providing collateral support for the indebtedness and other obligations evidenced by this Note (each, a "**Credit Party**"), shall constitute an "**Event of Default**" under this Note: (a) the failure to pay within five (5) days of written notice from Bank to Borrower (which, notwithstanding anything to the contrary contained in any Loan Document, may be via e-mail) any principal, interest, fee, charge, indemnity or other indebtedness owing hereunder or under any other Loan Document; (b) the death or incapacity of any Credit Party (or any member or partner of any Credit Party which is a partnership) that is (1) a natural person holding either directly or indirectly a 20% interest in the Borrower or (2) Robert Douglas Spiro Jr.; (c) the failure to furnish Bank with any requested information or failing to permit inspection of books or records by Bank or any of its agents, in each case within ten (10) days of Bank's request therefor; (d) any financial statement or certificate furnished to Bank in connection with, or any representation or warranty made by any Credit Party to Bank in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Credit Party to Bank, proves to be incorrect, false, erroneous or misleading in any material respect when furnished or made; (e) any Credit Party (other than a natural person) dissolves, liquidates or otherwise ceases doing business as a going concern; (f) any "change of control" not permitted under the Loan Documents; (g) the commencement of a foreclosure proceeding against any Credit Party; (h) any default in the performance or observance of any covenant or agreement contained herein, in the Line of Credit Note of even date herewith or in Section A.6.1, Section A.6.2 or Section A.6.3 of the Letter Agreement; (i) any default in the performance or observance of any covenant or agreement contained in any Loan Document (other than as set forth in any other provision of

4

this Section 7.1) and such default continues for fifteen (15) days after the earlier of (1) knowledge of any Credit Party of such default and (2) written notice by Bank to Borrower of such default; (j) any default with respect to any other Material Indebtedness of any Credit Party owed to any person or entity other than Bank (including any such indebtedness in the nature of a lease) or default in the performance or observance of the terms of any instrument pursuant to which such Material Indebtedness was created or is secured, the effect of which default is to cause or permit any holder of any such indebtedness to cause the same to become due prior to its stated maturity (and whether or not such default is waived by the holder thereof) (as used herein, "**Material Indebtedness**" shall mean indebtedness for borrowed money in excess of $250,000 in the aggregate); (k) there exists or occurs any event or condition with respect to, or any change in the financial condition or affairs of, any Credit Party which in the reasonable opinion of Bank (or any subsequent holder hereof) materially impairs or adversely affects, or could reasonably be expected to materially impair or adversely affect, the prospect of payment or performance by such Credit Party of its obligations owed to Bank hereunder or under any other Loan Document; (l) the making of an assignment for the benefit of creditors, or the appointment of a trustee, receiver or liquidator for any Credit Party or for any of his, its or their property, or the commencement of any proceedings by any Credit Party under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute (including, if such Credit Party is a partnership, its dissolution pursuant to any agreement or statute), or the commencement of any such proceedings without the consent of such Credit Party; (m) the sending of notice of an intended bulk sale; (n) the entry of any judgment or any attachment, levy or execution against any Credit Party's properties in excess of $250,000.00 which shall not be released, discharged, dismissed, stayed or fully bonded for a period of thirty (30) days or more after its entry; (o) the revocation or attempted revocation, in whole or in part, of this Note or any other Loan Document by Borrower or any other Credit Party; (p) the issuance of a warrant of distraint or assertion of a lien for unpaid taxes against any Credit Party in excess of $50,000.00 or that are not paid in full within 30 days after the creation thereof; (q) any sale, transfer or other disposition of all or a substantial or material portion of the assets of any Credit Party; or (r) Borrower or any other Credit Party is convicted of a felony for any criminal act.

7.2    **Remedies**.  Upon the occurrence of an Event of Default: (a) Bank shall be under no further obligation to make advances hereunder or under any other Loan Document; (b) if an Event of Default specified in clause (l) of the definition of "Event of Default" above shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, shall be immediately due and payable without demand or notice of any kind; (c) if any other Event of Default shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, at Bank's option without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) all other debts or obligations of Borrower to Bank or holder hereof (other than any liabilities or obligations, whether direct or contingent, now existing or hereafter arising, that Borrower, RDS or any Guarantor may have in respect of indebtedness owed by 20715 Avalon LLC to Bank), whether due or not due and whether direct or contingent and howsoever evidenced, shall, at the option of Bank or holder hereof, shall also become due and payable immediately without demand or notice; (e) this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (f) Bank may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law, including all rights and remedies of a secured creditor under the Uniform Commercial Code as adopted and enacted and in effect from time to time in the applicable jurisdiction and all other applicable law.

4840-7087-2992v3/104763-0009

000031

8.    **Miscellaneous**.

8.1    **Anti-Money Laundering/International Trade Law Compliance**.  Borrower represents and warrants to Bank, as of the date of this Note,  the date of each advance of proceeds under the Term Loan, the date of any renewal, extension or modification of the Term Loan, and at all times until the Term Loan has been terminated and all amounts thereunder have been indefeasibly paid in full, that: (a) no Covered Entity  (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (b) the proceeds of the Term Loan will not be used to fund any operations in, finance any investments or activities in, or, make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay the Term Loan are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity  engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws.  Borrower covenants and agrees that it shall immediately notify Bank in writing upon the occurrence of a Reportable Compliance Event.

As used herein: "**Anti-Terrorism Laws**" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering or bribery, all as amended, supplemented or replaced from time to time; "**Compliance Authority**" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department/Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "**Covered Entity**" means Borrower, its affiliates and subsidiaries, all Credit Parties and other guarantors, pledgors of collateral, all owners of the foregoing, and all brokers or other agents of Borrower acting in any capacity in connection with the Term Loan; "**Reportable Compliance Event**" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self-discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "**Sanctioned Country**" means a country subject to a sanctions program maintained by any Compliance Authority; and "**Sanctioned Person**" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority.

8.2    **Indemnity**.  Borrower agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower), whether in connection with or arising out of or relating to (a) the matters referred to in this Note or in the other Loan Documents or the use of any advance hereunder, (b) any breach of a representation, warranty or covenant by Borrower or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority in any

6

000032

way related to the Obligations or the Loan Documents or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination of this Note, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Borrower may participate at its expense in the defense of any such action or claim.

     **8.3**    **Information**.  So long as this Note shall remain outstanding, and without limitation of any provision of any Loan Document, Borrower agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Borrower as Bank may reasonably request from time to time and (b) at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from its records and books of account, visit its properties and discuss its affairs, finances and accounts with any of its officers, directors or independent accountants.

     **8.4**    **Notices**.  All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Note must be in writing (except as may be agreed otherwise above with respect to borrowing requests) delivered to each party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and, with respect to any notice to Bank, such notice should be sent to the attention of: Thomas Belli, with a copy of any notices pursuant to Section 8.1 to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

     **8.5**    **No Waiver**.  No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

     **8.6**    **Costs and Expenses**.  Borrower shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Note and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Borrower or any other person or entity.

7

**8.7    Amendments, Modifications, Etc**. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Note for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Borrower (which may be sent by electronic mail).

**8.8    Successors and Assigns**. This Note and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Borrower and its legal representatives, successors and assigns; provided, however, that Borrower may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole discretion. Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents. In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Borrower or its business, or any collateral pledged to secure the obligations evidenced hereby.

**8.9    Certain Taxes**. The principal of and the interest on the obligations due under this Note, and any other amounts owed hereunder or under any other Loan Document for fees, costs, or otherwise, are payable in lawful money of the United States of America without deduction for or on account of any present or future tax, duty or other charge levied or imposed on this Note or other Loan Document or the proceeds hereof or the holder hereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature. If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made. Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax. Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

**8.10    Severability**. The provisions of this Note are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Note in any jurisdiction.

**8.11    Limitation of Liability**. To the fullest extent permitted by applicable law, Borrower shall not assert, and hereby waives any claim against Bank, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Note, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof.

**8.12    Reserved**.

**8.13    GOVERNING LAW. THIS NOTE WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL**

8

RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE. NOTWITHSTANDING THE FOREGOING, THE LAWS OF THE JURISDICTION IN WHICH ANY COLLATERAL FOR THIS NOTE IS LOCATED SHALL APPLY TO THE CREATION AND PERFECTION OF THE SECURITY INTERESTS THEREIN AND TO THE EXERCISE OF REMEDIES BY BANK THAT PERTAIN TO OR CONCERN SUCH COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FORECLOSURE OF ANY SECURITY INTERESTS AND LIENS GRANTED IN SUCH COLLATERAL.

8.14    VENUE; JURISDICTION.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OR IN ANY STATE OR FEDERAL COURT IN THE STATE OF CALIFORNIA, AND BORROWER AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND BORROWER FURTHER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING,  BETWEEN BORROWER AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. BORROWER DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON BORROWER AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 8.4 ABOVE (OR SUCH OTHER NEW NOTICE ADDRESS ESTABLISHED BY BORROWER HEREUNDER) BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY BORROWER AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF.  NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTIONS.

8.15    USA PATRIOT Act Notice.  Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Borrower and any other Credit Party, which information includes the name, address, tax identification number and other information regarding Borrower and such Credit Party that will allow Bank to identify Borrower and such Credit Party in accordance with the Patriot Act.  In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

8.16    Further Assurances; Corrections of Defects.  Borrower intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of any of the Loan Documents, or in the execution or acknowledgement thereof, and Borrower will execute, or re-execute, acknowledge and deliver such further instruments and

9

do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of the Loan Documents, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the obligations evidenced by the Loan Documents.

**8.17** **WAIVER OF JURY TRIAL.** **BORROWER (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS NOTE, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, OR ANY OTHER LOAN DOCUMENT, (ii) ANY TRANSACTION CONTEMPLATED IN THIS NOTE OR ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS NOTE, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFOR OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO BORROWER THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY BORROWER IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.**

**8.18** **JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.** **IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.,* ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER.  PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.  BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON.  BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES FOLLOW]

10

Borrower acknowledges that he, she or it has read and understood all the provisions of this Note, including the sections "Waiver of Jury Trial" and "Judicial Reference in the Event of Jury Trial Waiver Unenforceability" and has been advised by counsel as necessary or appropriate.

**IN WITNESS WHEREOF,** the undersigned has executed this Term Note as of the date first written above.

**BORROWER**:

**BETTER 4 YOU BREAKFAST, INC.**

By: _____
    Name: Fernando Castillo
    Title: President, Chief Executive Officer

*Signature Page to Term Note*

**EXHIBIT B-2**

000038



## LINE OF CREDIT NOTE

$12,500,000                                                        Los Angeles, California
                                                                   August 16, 2019

· **FOR VALUE RECEIVED**, Better 4 You Breakfast, Inc., a corporation organized under the laws of the State of California, with its principal place of business at 20715 Avalon Blvd., Carson, CA 90746 (the "**Borrower**"), promises to pay to the order of **BANK LEUMI USA** (the "**Bank**"), in lawful money and in immediately available funds, at its offices at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, or at such other place as the holder hereof may designate, the principal sum of TWELVE MILLION FIVE HUNDRED THOUSAND and 00/100 Dollars ($12,500,000), or such lesser amount as may be advanced and be outstanding to or for the benefit of Borrower hereunder, together with interest accruing thereon from the date advanced until paid in full, as set forth herein.

1.      **Line of Credit Advances**.  Borrower may from time to time prior to the earlier of demand or the Maturity Date, borrow, partially or wholly repay, and re-borrow hereunder, advances up to the Maximum Line of Credit Amount, subject to the terms and conditions of this Line of Credit Note ("**Note**") and the other Loan Documents (as defined herein) ("**Line of Credit**").  The "**Maturity Date**" shall mean the earlier of (i) August 16, 2021 and (ii) the acceleration of the maturity of the amounts due hereunder upon an Event of Default (as defined herein), or such later date as may be designated by Bank in its sole discretion by written notice to Borrower.  Borrower acknowledges and agrees that in no event will Bank be under any obligation to extend or renew the Line of Credit or this Note beyond the Maturity Date.  The "**Maximum Line of Credit Amount**" shall mean the lesser of $12,500,000 and the Borrowing Base.  In no event shall the aggregate unpaid principal amount of advances under this Note exceed, as of any date of determination, the Maximum Line of Credit Amount.  In the event of any such occurrence, the amount of such excess shall be immediately due and payable without necessity of demand, and whether or not any Event of Default shall have occurred hereunder.  This Note and all advances hereunder may be made subject to certain Borrowing Base provisions set forth in the Loan Documents (which provisions shall be deemed to be incorporated herein and made a part hereof), including without limitation the terms of any such Loan Documents limiting the maximum permitted amount of advances hereunder, and providing for certain mandatory prepayments with respect thereto.

2.      **Advance Procedures**.  If permitted by Bank, a request for advance may be made by facsimile or electronic mail, with such confirmation or verification (if any) in writing or otherwise as Bank may require in its discretion from time to time.  Further, Borrower hereby agrees to indemnify and hold Bank harmless from and against any and all damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees and expenses) which may arise or be created by the acceptance of such facsimile and electronic requests or by the making of such advances.  Bank shall have no obligation to determine whether any person requesting an advance is or has been authorized by Borrower to do so.  Bank will enter on its books and records, which entry when made will be presumed correct absent manifest error, the date and amount of each advance, as well as the date and amount of each payment made by Borrower.  Without limitation of the foregoing, each drawing paid by Bank under any letter of credit issued under the Line of Credit shall in Bank's discretion be deemed an advance under the Line of Credit.  Each borrowing of advances under the Line of Credit shall be in an amount equal to or greater than $25,000.  Every time Borrower requests an advance from Bank, Borrower shall be deemed to automatically represent and warrant that all of the representations and warranties set forth in Section A.5 of the Letter Agreement (as defined below) are true and correct in all material respects as of the date of

such request and that no Event of Default (or default which with the passage of time would result in an Event of Default) has occurred and is continuing.

3.    **Interest Rate**.

3.1    **Interest Rate - Definitions**.  For purposes hereof, the following terms shall have the following meanings:

"**Business Day**" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in Los Angeles, California and on which dealings in U.S. dollar deposits are carried on in London, England.

"**Interest Period**" shall mean, as to any advance hereunder bearing interest at the LIBO Rate (Reserve Adjusted) Option, (a) in the case of any such advance made from the date of this Note but prior to September 1, 2019, the period from the date of the first disbursement of an advance hereunder and September 1, 2019 and (b) in the case of any other such advance, the period of one (1) month, with each such Interest Period commencing on the last day of the immediately preceding Interest Period; provided that (i) if an Interest Period would end on a day which is not a Business Day, such Interest Period shall end on the next succeeding Business Day unless such day falls in the next succeeding calendar month in which case the Interest Period shall end on the next preceding Business Day, (ii) the final Interest Period shall commence on the last day of the immediately preceding Interest Period, and end on the Maturity Date, and (iii) any Interest Period that begins on the last Business Day of a calendar month (or a day for which there is no numerically corresponding day in the last calendar month of such Interest Period) shall end on the last Business Day of the last calendar month of such Interest Period.

"**LIBO Rate (Reserve Adjusted)**" shall mean, with respect to any advance relative to any Interest Period the interest rate per annum determined by Bank by *dividing* (a) the rate quoted by the ICE Benchmark Administration Limited as its "LIBOR" rate for U.S. dollar deposits at or about 11:00 a.m., London time, on the second Business Day prior to the commencement of the Interest Period (or, if Bank adopts generally in its business a different rate quoting system or service for obtaining the rate of interest commonly known as "LIBOR" for U.S. dollar deposits, then upon giving prompt notice thereof to Borrower, such alternative rate quoting system or service shall be utilized for determining "LIBOR" in lieu of the rate quoted by the ICE Benchmark Administration Limited); provided, however, that if such rate cannot be determined by Bank as provided in the preceding clause (a) for any reason, as determined by Bank in its reasonable judgment, then a comparable replacement rate determined by Bank at such time (which determination shall be conclusive absent manifest error) by (b) a number equal to 1.00 *minus* the LIBOR Reserve Percentage.  For purposes of any advances made prior to September 1, 2019, the LIBO Rate (Reserve Adjusted) will be deemed to be 2.17213%.

"**LIBOR Reserve Percentage**" shall mean the percentage (expressed as a decimal, rounded upward to the next 1/100th of 1%) in effect on such day (whether or not applicable to Bank) under regulations issued from time to time by the Federal Reserve System Board for determining the maximum reserve requirement (including any emergency, supplemental or other marginal reserve requirement) with respect to Eurocurrency funding (currently referred to as "Eurocurrency Liabilities" in Regulation D of the Federal Reserve System Board).

"**Wall Street Journal Prime Rate**" or "**Prime Rate**" shall mean the rate of interest designated as the "Prime Rate" which appears in each publication of The Wall Street Journal under the designation entitled "Money Rates."  This rate of interest fluctuates and is subject to change without prior notice.  If and when the Wall Street Journal Prime Rate changes, the rate of interest on this Note will automatically change effective on the date of any such change, without notice to Borrower.  In the event that the Wall

2

Street Journal Prime Rate cannot be ascertained from publication of The Wall Street Journal, the rate of interest which shall be used in substitution thereof and until such time as the Wall Street Journal Prime Rate can be ascertained by reference to The Wall Street Journal shall be a rate equal to the average of the prime rate of interest announced from time to time by three (3) New York banks selected by Bank in its sole and absolute discretion.

      **3.2**    **Rate of Interest**.  Amounts outstanding under this Note shall bear interest at the following rate or rates per annum as may be selected by Borrower from time to time in accordance herewith (each, an "**Option**"):

      (i)    "**Prime Rate Option**" means, with respect to any applicable advances, a fluctuating rate of interest per annum which shall be equal to 0.75% below the Wall Street Journal Prime Rate in effect from time to time.  There are no required minimum interest periods for advances bearing interest at the Wall Street Journal Prime Rate.

      (ii)    "**LIBO Rate (Reserve Adjusted) Option**" means, with respect to any applicable advances, a fluctuating rate per annum determined by Bank to be equal to 2.0% above the LIBO Rate (Reserve Adjusted) in effect on the first day of the applicable Interest Period.

      Notwithstanding the foregoing, in no event shall the interest rate applicable to advances hereunder (a) to which the Prime Rate Option applies be less than 2.0% per annum and (b) to which the LIBO Rate (Reserved Adjusted) Option applies be less than 2.0% per annum.

      The LIBO Rate (Reserve Adjusted) shall be adjusted with respect to any advance to which the LIBO Rate (Reserve Adjusted) Option applies, as applicable, on and as of the effective date of any change in the LIBOR Reserve Percentage. Upon Borrower's request, Bank shall give notice to Borrower of the LIBO Rate (Reserve Adjusted) as determined or adjusted for each Interest Period in accordance herewith, which determination or adjustment shall be conclusive absent manifest error.

      In the event Bank shall have determined that (i) by reason of circumstances affecting the LIBO Rate (Reserve Adjusted) adequate and reasonable means do not exist for ascertaining the LIBO Rate (Reserve Adjusted) for any Interest Period with respect to a requested advance or conversion hereunder and such circumstances are unlikely to be temporary or (ii) the circumstances set forth in clause (i) have not arisen but the supervisor for the administrator of LIBOR or a governmental authority having jurisdiction over the Bank has made a public statement identifying a specific date after which LIBOR shall no longer be used for determining interest rates for loans, then upon notice by Bank to Borrower of the foregoing, (1) the Prime Rate Option shall apply and (2) Bank and Borrower shall endeavor to establish an alternate rate of interest to LIBOR that gives due consideration to the then-prevailing market convention for determining a rate of interest for loans in the United States in Dollars at a rate based upon the applicable rate at such time, and Bank and Borrower shall enter into a mutually acceptable amendment to this Note to reflect such alternate rate of interest and such other related changes to this Note as may be applicable (the "**Alternate Rate**"). Notwithstanding the foregoing, if the Alternate Rate established pursuant to this paragraph (without giving effect to the applicable margin or any alternative spread that may have been agreed upon over Bank's cost of funds) shall be less than zero, such rate shall be deemed to be zero for all purposes of this Agreement.

      If, after the date of this Note, Bank shall reasonably determine that any Change in Law (as defined below) shall make it impossible or unlawful for Bank to make, fund or maintain LIBO Rate (Reserve Adjusted)-based advances, then Bank shall notify Borrower. From the date of such notice until Bank notifies Borrower that the circumstances giving rise to such determination no longer apply, then (i) any obligation of Bank contained herein or in any agreement of Bank to make available LIBO Rate

3

(Reserve Adjusted)-based advances shall immediately be suspended, and (ii) any such LIBO Rate (Reserve Adjusted)-based advances then outstanding shall instead bear interest, at Bank's option, at the Alternate Rate or based on the Prime Rate Option, such change taking effect either (x) on the last day of the then current Interest Period if Bank may lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances to such day, or (y) immediately if Bank may not lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances.  Upon the occurrence of any of the foregoing events, Borrower shall pay to Bank immediately upon demand such amounts as may be necessary to compensate Bank for any fines, fees, charges, penalties or other costs incurred or payable by Bank as a result thereof and which are attributable to any LIBO Rate (Reserve Adjusted)-based advances made available to Borrower hereunder, and any reasonable allocation made by Bank among its operations shall be conclusive and binding upon Borrower.

Interest hereunder will be calculated based on the actual number of days that principal is outstanding over a year of 360 days.  In no event will the rate of interest hereunder exceed the maximum rate allowed by law.

**3.3    Interest Rate Elections**.  Subject to the terms and conditions of this Note, including limitations with respect to Interest Periods and notice requirements: (i) at the end of any Interest Period applicable to any advance under the LIBO Rate (Reserve Adjusted) Option, Borrower may renew the LIBO Rate (Reserve Adjusted) Option applicable to such advance or convert such advance to the Prime Rate Option; (ii) at any time any of the advances under this Note bear interest under the Prime Rate Option, Borrower may convert all or a portion of such advances so that such advances bear interest at the LIBO Rate (Reserve Adjusted) from the beginning of the next Interest Period; and (iii) at the time any advance is made hereunder, Borrower may choose to have all thereof bear interest under the Prime Rate Option or the LIBO Rate (Reserve Adjusted) Option; provided that, during any period in which any Event of Default (as hereinafter defined) has occurred and is continuing, any advances bearing interest based on the LIBO Rate (Reserve Adjusted) shall, at Bank's sole discretion, be converted at the end of the applicable Interest Period to the Prime Rate Option and the LIBO Rate (Reserve Adjusted) Option will not be available to Borrower with respect to any new advances (or with respect to the conversion or renewal of any existing advances) until such Event of Default has been cured by Borrower or waived by Bank.  Borrower shall notify Bank of each election of an Option, each conversion from one Option to another, the amount of the advances then outstanding to be allocated to each Option and where relevant the Interest Periods therefor.  In the case of electing or converting to the LIBO Rate (Reserve Adjusted) Option, such notice shall be given prior to 11:00 a.m. New York time on a Business Day at least three (3) Business Days prior to the commencement of the applicable Interest Period, or at a later time if Bank, in its sole discretion, accepts Borrower's notice and quotes a rate for such requested advance (or conversion) under the LIBO Rate (Reserve Adjusted) Option.  Each such notice shall specify: (a) the Option selected by Borrower, (b) the principal amount subject thereto, and (c) the date of the requested advance (or conversion), which may only be at the beginning of the subsequent Interest Period.  If no notice of election, conversion or renewal is timely received by Bank with respect to any advance (or expiring Interest Period), Borrower shall be deemed to have elected the Prime Rate Option.  Any such election shall be promptly confirmed in writing by such method as Bank may require.

**4.    Payments**.

**4.1    Interest and Principal Payments**.  Borrower shall pay accrued interest in arrears on the unpaid principal balance of this Note on (a) the first (1st) day of each month during the term hereof, beginning with the payment due on September 1, 2019 and (b) for all advances, at maturity, whether by acceleration of this Note or otherwise, and after maturity, on demand until paid in full.  Notwithstanding anything herein to the contrary, the outstanding principal balance of advances under the Line of Credit and any accrued but unpaid interest thereon shall be due and payable on the Maturity Date.

**4.2**    **Manner of Payment**. All payments by Borrower on account of principal, interest or fees hereunder shall be made in lawful money of the United States of America, in immediately available funds. If any payment under this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing interest in connection with such payment. Borrower authorizes (but shall not require) Bank to debit any account maintained by Borrower with Bank, at any date on which a payment is due under this Note, in an amount equal to any unpaid portion of such payment. If any payment of principal or interest becomes due on a day on which Bank is closed (as required or permitted by law or otherwise), such payment shall be made not later than the next succeeding Business Day except as may be otherwise provided herein, and such extension shall be included in computing interest in connection with such payment. Each payment made on this Note (or received by Bank with respect to any other indebtedness owed by Borrower to Bank, or any affiliate thereof), shall be applied by Bank to amounts due under this Note (or with respect to any such other indebtedness) in such order or manner as Bank, in its discretion, elects, regardless of any instructions from Borrower to the contrary. Bank or any holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights.

**4.3**    **Late Payments; Default Rate**. If Borrower fails to make any payment of principal, interest or other amount coming due pursuant to the provisions of this Note within ten (10) calendar days of the date due and payable, Borrower also shall pay to Bank a late charge equal to the greater of five percent (5%) of the amount of such payment or $100.00 (the "**Late Charge**"). Such ten (10) day period shall not be construed in any way to extend the due date of any such payment. Upon maturity, whether by acceleration, demand or otherwise and, at Bank's option, upon the occurrence of any Event of Default (as hereinafter defined) and during the continuance thereof, amounts outstanding under this Note shall bear interest at a rate per annum (based on the actual number of days that principal is outstanding over a year of 360 days) which shall be six percent (6%) in excess of the interest rate otherwise in effect from time to time under this Note but not more than the maximum rate allowed by law (the "**Default Rate**"); provided, however, if the Default Rate is less than ten percent (10%), then, upon entry of judgment on this Note, the applicable rate of interest shall be the higher of (a) the Default Rate and (b) the statutory rate applicable to judgments in the State of California. The Default Rate shall continue to apply whether or not judgment shall be entered on this Note. Both the Late Charge and the Default Rate are imposed as liquidated damages for the purpose of defraying Bank's expenses incident to the handling of delinquent payments, but are in addition to, and not in lieu of, Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any fees and expenses of any agents or attorneys which Bank may employ. In addition, the Default Rate reflects the increased credit risk to Bank of carrying a loan that is in default. Borrower agrees that the Late Charge and Default Rate are reasonable forecasts of just compensation for anticipated and actual harm incurred by Bank, and that the actual harm incurred by Bank cannot be estimated with certainty and without difficulty.

**4.4**    **Prepayments**. The indebtedness evidenced by this Note may be prepaid in whole or in part at any time and from time to time, subject, however to payment of any break funding indemnification amounts owing pursuant to Section 4.5 hereof.

**4.5**    **Increased Costs; Yield Protection**. On written demand, together with written evidence of the justification therefor, Borrower agrees to pay Bank all direct costs incurred, any losses suffered or payments made by Bank as a result of any Change in Law (hereinafter defined), imposing any reserve, deposit, allocation of capital or similar requirement (including without limitation, Regulation D of the Board of Governors of the Federal Reserve System) on Bank, its holding company or any of their respective assets relative to the Line of Credit. "**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation,

5

implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

**4.6    Break Funding Indemnification**.  Borrower agrees to indemnify Bank against any liabilities, losses or expenses (including, without limitation, loss of margin, any loss or expense sustained or incurred in liquidating or employing deposits from third parties, and any loss or expense incurred in connection with funds acquired to effect, fund or maintain any advance (or any part thereof) bearing interest based on the LIBO Rate (Reserve Adjusted) which Bank sustains or incurs as a consequence of either (i) Borrower's failure to make a payment on the due date thereof, (ii) Borrower's revocation (expressly, by later inconsistent notices or otherwise) in whole or in part of any notice given to Bank to request, convert, renew or prepay any advance bearing interest based on the LIBO Rate (Reserve Adjusted), or (iii) Borrower's payment or prepayment (whether voluntary, after acceleration of the maturity of this Note or otherwise) or conversion of any advance bearing interest based on the LIBO Rate (Reserve Adjusted) on a day other than the last day of the applicable Interest Period.  A notice as to any amounts payable pursuant to this paragraph given to Borrower by Bank shall, in the absence of manifest error, be conclusive and shall be payable upon demand. Borrower's indemnification obligations hereunder shall survive the payment in full of the advances and all other amounts payable hereunder.

**5.    Security; Right of Setoff; Deposit Accounts**.  This Note is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Borrower or any third party has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Borrower to Bank.

Borrower hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments due to Bank (a) to set off against, and to appropriate and apply to the payment of, Borrower's obligations and liabilities under this Note (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any and all amounts owing by Bank to Borrower (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced) and (b) pending any such action, to the extent necessary, to hold such amounts as collateral to secure such obligations and liabilities and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposits so held as Bank, may reasonably determine. Borrower hereby grants to Bank a security interest in all deposits and accounts maintained with Bank, together with all other personal property of Borrower (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to Bank or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered, to secure the payment of all obligations and liabilities of Borrower to Bank under this Note.  Every such security interest and right of setoff may be exercised without demand upon or notice to Borrower.

Without limitation of the foregoing, Borrower hereby grants to Bank a lien on and security interest in any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Borrower and maintained in an account at Bank, which may have a related account at a bank which is a

6

member of the Federal Reserve System. Borrower authorizes Bank to serve as its bailee and agent with respect to the aforementioned book entry Treasury bills and other book entry securities and to take such action and to execute and deliver such documents on behalf of Borrower as Bank deems necessary or desirable in order to perfect Bank's security interest therein. Borrower hereby gives notice to Bank, in Bank's capacity as bailee and agent, of Bank's security interest in the aforementioned book entry Treasury bills and other book entry securities. Bank may at any time and from time to time, without notice, transfer into its own name or that of its nominee any of the foregoing property of Borrower.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Borrower hereunder.

**6.    Other Loan Documents**. This Note is issued in connection with a letter agreement dated as of even date herewith (the "**Letter Agreement**"; capitalized terms used herein not otherwise defined herein shall have the meaning set forth in the Letter Agreement) between Borrower and Bank, and certain other agreements and documents executed and/or delivered in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time, collectively, including this Note, the "**Loan Documents**"), and is secured by the collateral (if any) described in the Loan Documents and by such other collateral as previously may have been or may in the future be granted to Bank to secure this Note. The holder of this Note is entitled to the benefits of the Loan Documents and may enforce the agreements of Borrower contained in the Loan Documents and exercise the remedies provided for by, or otherwise available in respect of, the Loan Documents, all in accordance with, and subject to the restrictions contained in, the terms of the Loan Documents.

**7.    Default; Remedies**.

**7.1    Events of Default**. The occurrence of any of the following, with respect to Borrower, any guarantor of this Note, any pledgor of equity in support of this Note, or any person or entity providing collateral support for the indebtedness and other obligations evidenced by this Note (each, a "**Credit Party**"), shall constitute an "**Event of Default**" under this Note: (a) the failure to pay within five (5) days of written notice from Bank to Borrower (which, notwithstanding anything to the contrary contained in any Loan Document, may be via e-mail) any principal, interest, fee, charge, indemnity or other indebtedness owing hereunder or under any other Loan Document; (b) the death or incapacity of any Credit Party (or any member or partner of any Credit Party which is a partnership) that is (1) a natural person holding either directly or indirectly a 20% interest in the Borrower or (2) Robert Douglas Spiro Jr.; (c) the failure to furnish Bank with any requested information or failing to permit inspection of books or records by Bank or any of its agents, in each case within ten (10) days of Bank's request therefor; (d) any financial statement or certificate furnished to Bank in connection with, or any representation or warranty made by any Credit Party to Bank in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Credit Party to Bank, proves to be incorrect, false, erroneous or misleading in any material respect when furnished or made; (e) any Credit Party (other than a natural person) dissolves, liquidates or otherwise ceases doing business as a going concern; (f) any "change of control" not permitted under the Loan Documents; (g) the commencement of a foreclosure proceeding against any Credit Party; (h) any default in the performance or observance of any covenant or agreement contained herein, in the Term Note (Multiple Draw) of even date herewith or in Section A.6.1, Section A.6.2 or Section A.6.3 of the Letter Agreement; (i) any default in the performance or observance of any covenant or agreement contained in any Loan Document (other than as set forth in any other provision of this Section 7.1) and such default continues for fifteen (15) days after the earlier of (1) knowledge of any Credit Party of such default and (2) written notice by Bank to Borrower of such default; (j) any default with respect to any other Material Indebtedness of any Credit Party owed to any person or

7

entity other than Bank (including any such indebtedness in the nature of a lease) or default in the performance or observance of the terms of any instrument pursuant to which such Material Indebtedness was created or is secured, the effect of which default is to cause or permit any holder of any such indebtedness to cause the same to become due prior to its stated maturity (and whether or not such default is waived by the holder thereof) (as used herein, "**Material Indebtedness**" shall mean indebtedness for borrowed money in excess of $250,000 in the aggregate); (k) there exists or occurs any event or condition with respect to, or any change in the financial condition or affairs of, any Credit Party which in the reasonable opinion of Bank (or any subsequent holder hereof) materially impairs or adversely affects, or could reasonably be expected to materially impair or adversely affect, the prospect of payment or performance by such Credit Party of its obligations owed to Bank hereunder or under any other Loan Document; (l) the making of an assignment for the benefit of creditors, or the appointment of a trustee, receiver or liquidator for any Credit Party or for any of his, its or their property, or the commencement of any proceedings by any Credit Party under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute (including, if such Credit Party is a partnership, its dissolution pursuant to any agreement or statute), or the commencement of any such proceedings without the consent of such Credit Party; (m) the sending of notice of an intended bulk sale; (n) the entry of any judgment or any attachment, levy or execution against any Credit Party's properties in excess of $250,000.00 which shall not be released, discharged, dismissed, stayed or fully bonded for a period of thirty (30) days or more after its entry; (o) the revocation or attempted revocation, in whole or in part, of this Note or any other Loan Document by Borrower or any other Credit Party; (p) the issuance of a warrant of distraint or assertion of a lien for unpaid taxes against any Credit Party in excess of $50,000.00 or that are not paid in full within 30 days after the creation thereof; (q) any sale, transfer or other disposition of all or a substantial or material portion of the assets of any Credit Party; or (r) Borrower or any other Credit Party is convicted of a felony for any criminal act.

      **7.2**    **Remedies**.  Upon the occurrence of an Event of Default: (a) Bank shall be under no further obligation to make advances hereunder or under any other Loan Document; (b) if an Event of Default specified in clause (l) of the definition of "Event of Default" above shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, shall be immediately due and payable without demand or notice of any kind; (c) if any other Event of Default shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, at Bank's option without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) all other debts or obligations of Borrower to Bank or holder hereof (other than any liabilities or obligations, whether direct or contingent, now existing or hereafter arising, that Borrower, RDS or any Guarantor may have in respect of indebtedness owed by 20715 Avalon LLC to Bank), whether due or not due and whether direct or contingent and howsoever evidenced, shall, at the option of Bank or holder hereof, shall also become due and payable immediately without demand or notice; (e) this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (f) Bank may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law, including all rights and remedies of a secured creditor under the Uniform Commercial Code as adopted and enacted and in effect from time to time in the applicable jurisdiction and all other applicable law.

      **8.**    **Miscellaneous**.

      **8.1**    **Anti-Money Laundering/International Trade Law Compliance**.  Borrower represents and warrants to Bank, as of the date of this Note,  the date of each advance of proceeds under the Line of Credit, the date of any renewal, extension or modification of the Line of Credit, and at all times until the Line of Credit has been terminated and all amounts thereunder have been indefeasibly paid in full, that:

8

(a) no Covered Entity (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (b) the proceeds of the Line of Credit will not be used to fund any operations in, finance any investments in or activities in, or, make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay the Line of Credit are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws. Borrower covenants and agrees that it shall immediately notify Bank in writing upon the occurrence of a Reportable Compliance Event.

As used herein: "**Anti-Terrorism Laws**" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering or bribery, all as amended, supplemented or replaced from time to time; "**Compliance Authority**" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department/Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "**Covered Entity**" means Borrower, its affiliates and subsidiaries, all Credit Parties and other guarantors, pledgors of collateral, all owners of the foregoing, and all brokers or other agents of Borrower acting in any capacity in connection with the Line of Credit; "**Reportable Compliance Event**" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self-discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "**Sanctioned Country**" means a country subject to a sanctions program maintained by any Compliance Authority; and "**Sanctioned Person**" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority.

8.2     **Indemnity**. Borrower agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower), whether in connection with or arising out of or relating to (a) the matters referred to in this Note or in the other Loan Documents or the use of any advance hereunder, (b) any breach of a representation, warranty or covenant by Borrower or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority in any way related to the Obligations or the Loan Documents or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination of this Note, payment of

any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Borrower may participate at its expense in the defense of any such action or claim.

**8.3** **Information**. So long as this Note shall remain outstanding, and without limitation of any provision of any Loan Document, Borrower agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Borrower as Bank may reasonably request from time to time and (b) at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from its records and books of account, visit its properties and discuss its affairs, finances and accounts with any of its officers, directors or independent accountants.

**8.4** **Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Note must be in writing (except as may be agreed otherwise above with respect to borrowing requests) delivered to each party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and, with respect to any notice to Bank, such notice should be sent to the attention of: Thomas Belli, with a copy of any notices pursuant to Section 8.1 to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

**8.5** **No Waiver**. No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

**8.6** **Costs and Expenses**. Borrower shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Note and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Borrower or any other person or entity.

**8.7** **Amendments, Modifications, Etc**. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Note for the purposes of completing missing

10

000048

content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Borrower (which may be sent by electronic mail).

**8.8**    **Successors and Assigns**. This Note and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Borrower and its legal representatives, successors and assigns; provided, however, that Borrower may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole discretion. Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents. In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Borrower or its business, or any collateral pledged to secure the obligations evidenced hereby.

**8.9**    **Certain Taxes**. The principal of and the interest on the obligations due under this Note, and any other amounts owed hereunder or under any other Loan Document for fees, costs, or otherwise, are payable in lawful money of the United States of America without deduction for or on account of any present or future tax, duty or other charge levied or imposed on this Note or other Loan Document or the proceeds hereof or the holder hereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature. If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made. Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax. Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

**8.10**    **Severability**. The provisions of this Note are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Note in any jurisdiction.

**8.11**    **Limitation of Liability**. To the fullest extent permitted by applicable law, Borrower shall not assert, and hereby waives any claim against Bank, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Note, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof.

**8.12**    **Reserved**.

**8.13**    **GOVERNING LAW.** THIS NOTE WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO

11

CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE. NOTWITHSTANDING THE FOREGOING, THE LAWS OF THE JURISDICTION IN WHICH ANY COLLATERAL FOR THIS NOTE IS LOCATED SHALL APPLY TO THE CREATION AND PERFECTION OF THE SECURITY INTERESTS THEREIN AND TO THE EXERCISE OF REMEDIES BY BANK THAT PERTAIN TO OR CONCERN SUCH COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FORECLOSURE OF ANY SECURITY INTERESTS AND LIENS GRANTED IN SUCH COLLATERAL.

**8.14** **VENUE; JURISDICTION.**  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OR IN ANY STATE OR FEDERAL COURT IN THE STATE OF CALIFORNIA, AND BORROWER AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND BORROWER FURTHER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING,  BETWEEN BORROWER AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. BORROWER DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON BORROWER AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION Error! Reference source not found. ABOVE (OR SUCH OTHER NEW NOTICE ADDRESS ESTABLISHED BY BORROWER HEREUNDER) BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY BORROWER AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTIONS.

**8.15** **USA PATRIOT Act Notice**. Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Borrower and any other Credit Party, which information includes the name, address, tax identification number and other information regarding Borrower and such Credit Party that will allow Bank to identify Borrower and such Credit Party in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

**8.16** **Further Assurances; Corrections of Defects**.  Borrower intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of any of the Loan Documents, or in the execution or acknowledgement thereof, and Borrower will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of the Loan Documents, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting

12

liens, mortgages, security interests and interests to secure the obligations evidenced by the Loan Documents.

**8.17    WAIVER OF JURY TRIAL.  BORROWER (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS NOTE, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, OR ANY OTHER LOAN DOCUMENT, (ii) ANY TRANSACTION CONTEMPLATED IN THIS NOTE OR ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS NOTE, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFOR OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO BORROWER THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY BORROWER IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.**

**8.18    JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.,* ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER.  PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON.  BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES FOLLOW]

Borrower acknowledges that he, she or it has read and understood all the provisions of this Note, including the sections "Waiver of Jury Trial" and "Judicial Reference in the Event of Jury Trial Waiver Unenforceability" and has been advised by counsel as necessary or appropriate.

IN WITNESS WHEREOF, the undersigned has executed this Line of Credit Note as of the date first written above.

BORROWER:

BETTER 4 YOU BREAKFAST, INC.

By: _____

Name: Fernando Castillo
Title: President, Chief Executive Officer

*Signature Page to Line of Credit Note*

**EXHIBIT B-3**

000053



August 16, 2019

Better 4 You Breakfast, Inc.
20715 Avalon Blvd.
Carson, CA 90746
Attention:  Robert Douglas Spiro, Jr.

        Re:    $12,500,000 Line of Credit
                $6,750,000 Term Loan (Multi-Draw)

Ladies and Gentlemen:

       This letter agreement (this "**Letter Agreement**"), together with the other Loan Documents (as defined in Section B below) sets forth the terms of those certain loans and other credit accommodations by Bank Leumi USA ("**Bank**", "**we**" or "**us**") to Better 4 You Breakfast, Inc., a corporation organized under the laws of the State of California ("**Borrower**" or "**you.**")

A.     **Credit Terms**.

1.     **Facilities**.

     1.1     **Line of Credit**.     Bank hereby agrees to make available to Borrower a line of credit ("**Line of Credit**") under which Borrower may request and Bank, subject to the terms and conditions contained herein and in the Line of Credit Note (as defined below), shall make advances to Borrower from time to time up to the earlier to occur of (i) August 16, 2021 and (ii) the acceleration of the maturity of the amounts due hereunder upon an Event of Default (as defined in the applicable Note) (the "**Line of Credit Maturity Date**"), in an amount not to exceed at any time the Maximum Line of Credit Amount, the proceeds of which shall be used for working capital or other general purposes of Borrower, including as set forth in Section A.5.16 hereof.  The "**Maximum Line of Credit Amount**" shall mean $12,500,000.  The Maturity Date may be extended by Bank in its sole discretion by written notice to Borrower.  Borrower's obligation to repay advances under the Line of Credit shall be evidenced by a promissory note in form and content satisfactory to Bank (the "**Line of Credit Note**"), the terms of which are incorporated herein by this reference.

     1.2     **Repayment**.     Subject to the limitations set forth herein and in the Line of Credit Note, Borrower may borrow, repay and re-borrow advances under the Line of Credit until the Line of Credit Maturity Date on the terms and conditions set forth in the Line of Credit Note dated as of even date herewith.  The principal balance outstanding on the Line of Credit, together with all accrued but unpaid interest thereon, shall be due at the Line of Credit Maturity Date, all as more particularly set forth in the Line of Credit Note.

1.3   **Commercial Cards**.     Borrower may request during the term hereof commercial cards from Bank; provided, however the aggregate outstanding amount under such commercial cards shall not exceed $500,000 at any time. The availability of Bank's commercial card program is in Bank's sole discretion, and shall be subject to the additional terms and conditions of the agreements, applications and other documents required by Bank in connection therewith. Borrower shall pay Bank's standard fees in connection with Bank's commercial card program.

1.4   **ACH**.     Borrower may request during the term hereof that Bank originate ACH transactions; provided, however, the aggregate principal amount of pending (uncleared) ACH transactions shall not exceed $500,000 at any time. Each ACH transaction will be originated in Bank's sole discretion, and shall be subject to the additional terms and conditions of the agreements, applications and other documents required by Bank in connection therewith. Borrower shall pay Bank's standard fees in connection with each ACH transaction.

1.5   **Availability**.     Notwithstanding anything to the contrary contained herein, the aggregate outstanding principal amount of advances shall not exceed the Maximum Line of Credit Amount at any time. In addition, availability of advances under the Line of Credit shall be subject to the Borrowing Base, as defined below. At no time shall the advances under the Line of Credit exceed the Borrowing Base in effect at such time, and in such event, Borrower shall immediately repay to Bank and/or provide cash collateral satisfactory to Bank in an amount equal to such excess. As a condition to advances under the Line of Credit, Borrower shall deliver to Bank such periodic reports on its accounts and inventory, together with a certificate showing the calculation of the Borrowing Base, in such form and detail as requested by Bank, and in accordance with Bank's eligibility standards.

"**Borrowing Base**" means, as of any date of determination, an amount equal to the sum of:

(a)     85% of the value, as reasonably determined by Bank, of Eligible Accounts Receivable (defined below) of Borrower; minus

(b)     such reserves as Bank may reasonably deem proper and necessary from time to time based on customary standards and practices of asset-based lenders.

All of the foregoing shall be reasonably determined by Bank upon receipt and review of all reports required hereunder and such other documents and collateral information that Bank may from time to time require.

2

000055

"**Eligible Accounts Receivable**" shall be determined by Bank in its reasonable discretion and in any event will consist solely of accounts (as such term is defined in the Uniform Commercial Code) created in the ordinary course of Borrower's business, upon which Borrower's right to receive payment is absolute and not contingent (other than customary warranty and indemnification provisions) upon the fulfillment of any conditions whatsoever, and in which Bank has a valid first priority perfected security interest and shall in no event include:

(i)     any account which is unpaid 120 days or more after its original invoice date or 90 days or more after its due date under the original terms of sale, whichever occurs first;

(ii)    that portion of any account for which there exists any right of setoff, defense or discount (except regular discounts allowed in the ordinary course of business to promote prompt payment) or for which any defense or counterclaim has been asserted;

(iii)   "Contra" accounts (i.e. offsetting liabilities) to the extent that Borrower both buys from and sells to an entity, the full amount due to that entity as a result of Borrower's buying from that entity; provided that the net value of any such accounts (if positive) may be "Eligible Accounts Receivable";

(iv)    any account which arises from the sale or lease to or performance of services for, or represents an obligation of, an employee, affiliate, partner, member, shareholder, officer, director, parent or subsidiary of Borrower;

(v)     any and all accounts of a debtor (which shall mean for purposes hereof any individual school payor source) when forty percent (40%) or more of the accounts from such debtor owing to Borrower and its subsidiaries are not eligible pursuant to clauses (i), (ii) or (iii) above;

(vi)    that portion of any account from an account debtor (which shall mean for purposes hereof any individual school payor source) which represents the amount by which Borrower's total accounts due from said account debtor exceeds twenty-five percent (25%) of Borrower's total Eligible Accounts Receivable;

(vii)   accounts owed by an account debtor located outside the United States and Canada;

(viii)  any account pursuant to which the account debtor is the United States of America, any state or any department,

3

agency or instrumentality of any of them, unless Borrower assigns its right to payment of such account to Bank pursuant to the Assignment of Claims Act of 1940, as amended (31 U.S.C. Section 3727, et seq. and 41 U.S.C. Section 15, et seq.), or has otherwise complied with other applicable statutes or ordinances to the satisfaction of Bank;

(ix)    any account of an account debtor who has commenced a voluntary case under the federal bankruptcy laws, as now constituted or hereafter amended, or made an assignment for the benefit of creditors, or if a decree or order for relief has been entered by a court having jurisdiction in the premises in respect of the account debtor in an involuntary case under any state or federal bankruptcy laws, as now constituted or hereafter amended, or if any other petition or other application for relief under any state or federal bankruptcy law has been filed against the account debtor, or if the account debtor has failed, suspended business, ceased to be solvent, called a meeting of its creditors, or consented to or suffered a receiver, trustee, liquidator or custodian to be appointed for it or for all or a significant portion of its assets or affairs;

(x)    any account pursuant to which the sale to the account debtor is on a bill-and-hold, guaranteed sale, sale-and-return, sale on approval, consignment or any other repurchase or return basis or is evidenced by chattel paper;

(xi)    any account under which the goods giving rise to such account have not been shipped and delivered to and accepted by the account debtor or the services giving rise to such account have not been performed by Borrower and accepted by the account debtor or the account otherwise does not represent a final sale;

(xii)    any account to the extent that Borrower has made any agreement with any account debtor for any deduction therefrom, except for discounts or allowances made in the ordinary course of business for prompt payment, all of which discounts or allowances are reflected in the calculation of the face value of the invoice related thereto;

(xiii)    any account pursuant to which any return, rejection or repossession of the merchandise has occurred;

4

000057

(xiv)    any account which Bank believes, in its reasonable discretion, that collection of such account is insecure or that such account may not be paid by reason of the account debtor's financial inability to pay; and

(xv)    other accounts deemed ineligible by Bank when Bank reasonably deems the creditworthiness or financial condition of the account debtor, or the industry in which the account debtor is engaged, to be unsatisfactory in any material respect.

In the event of a failure to repay any excess of advances over the Borrowing Base (a "**Borrowing Base Deficiency**") within three (3) Business Days of written demand by Bank, then, at Bank's option, Borrower shall pay an Overadvance Charge equal to $1,000 (the "**Overadvance Charge**") per occurrence. Such Overadvance Charge is in lieu of the Late Charge (but of not Default Interest), if any, set forth and defined in the Line of Credit Note with respect to the failure to make such Borrowing Base Deficiency mandatory repayment. The Overadvance Charge is imposed in addition to, and not in lieu of, Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any Default Interest, fees and expenses. Nothing in this paragraph shall be construed as a waiver of or consent to any default or Event of Default caused by Borrower's failure to repay such Borrowing Base Deficiency.

1.6    **Term Loan.**    Bank hereby agrees, subject to the terms of the Term Note (as defined below) at any time prior to December 31, 2019, to make one more term loans to Borrower in the aggregate principal amount of up to Six Million Seven Hundred Fifty Thousand Dollars ($6,750,000) ("**Term Loan**"), the proceeds of which shall be used for general purposes of Borrower and as set forth in Section A.5.16 hereof. Borrower's obligation to repay the Term Loan shall be evidenced by a promissory note in form and content satisfactory to Bank (the "**Term Note**" and together with the Line of Credit Note, the "**Notes**" and each, a "**Note**"), the terms of which are incorporated herein by this reference.

1.7    **Repayment**.    The principal balance outstanding under the Term Loan and interest due with respect thereto, shall be repaid in accordance with the provisions of the Term Note. Borrower may prepay principal on the Term Loan solely in accordance with the provisions of the Term Note, including the payment of any prepayment premium, fee or indemnity set forth therein.

2.    **Interest**.    The outstanding principal balance of advances under the Line of Credit and the Term Loan shall bear interest at the rates, be computed in accordance with, and be payable on the dates and times as set forth in the

Line of Credit Note and the Term Note, respectively. Overdue amounts shall bear interest at a default rate above the otherwise applicable rate, as more particularly provided in the Notes.

3. **Fees**.

    3.1   **Upfront Fee**.    Borrower shall pay to Bank an upfront fee equal to $48,125, which upfront fee shall be fully-earned and non-refundable upon receipt thereof by Bank and which fee shall be payable on the date hereof.

    3.2   **Unused Line Fee**.    None.

4. **Security**.    As security for the Obligations (as defined below), Borrower shall execute and deliver, or cause to be executed and delivered to Bank, the following, in each case in form and substance satisfactory to Bank.

The term "**Obligations**" shall mean all liabilities, loans, advances, debts, obligations, covenants and duties of any kind or nature owing by Borrower, any Guarantor or any Pledgor to Bank, whether direct or contingent, now existing or hereafter arising and however evidenced and including all principal, interest, reimbursements, indemnities, fees and other charges in connection therewith and any exposure of Borrower, any Guarantor or any Pledgor to Bank under Bank's commercial card program; provided however that notwithstanding anything to the contrary contained herein, "Obligations" shall in no way include any liabilities or obligations, whether direct or contingent, now existing or hereafter arising, that Borrower, RDS (as defined below) or any Guarantor (as defined below) may have in respect of indebtedness owed by 20715 Avalon LLC to Bank.

    4.1   **Unlimited Guaranty**.    One or more unlimited guaranty agreements pursuant to which the due and punctual payment and performance of the Obligations shall be unconditionally guaranteed jointly and severally by Balance Foods, LLC, a California limited liability company ("**Balance**"), Moreno Bros. Distributing, LLC, a California limited liability company ("**Moreno**", together with Balance, each a "**Subsidiary Guarantor**" and collectively, the "**Subsidiary Guarantors**") and Capital Stone Equity Fund I LP, a Delaware limited partnership (the "**Parent Guarantor**"). The revocation or attempted revocation, in whole or in part, of any such guaranty agreement by any Subsidiary Guarantor or the Parent Guarantor shall constitute an Event of Default under this Letter Agreement, the Notes and each other Loan Document.

    4.2   **Limited Guaranty**.    A limited guaranty agreement pursuant to which the due and punctual payment and performance of the Obligations shall be jointly and severally guaranteed in an amount up to and including $5,000,000 by Robert Douglas Spiro Jr., an individual whose primary residence is located in the State of California (the

6

000059

"**Individual Guarantor**") and the Spiro Revocable Family Trust (the "**Trust Guarantor**", and together with the Individual Guarantor, the Subsidiary Guarantors and the Parent Guarantor, collectively, the "**Guarantors**"). The revocation or attempted revocation, in whole or in part, of any such guaranty agreement by the Individual Guarantor or the Trust Guarantor shall constitute an Event of Default under this Letter Agreement, the Notes and each other Loan Document.

4.3    **Security Agreement**.    A security agreement (the "**Security Agreement**") granting Bank a valid and perfected first priority lien on and security interest in all of the assets of Borrower and the Subsidiary Guarantors, wherever located, and in each case whether existing on the closing date or thereafter acquired (collectively, including, without limitation, the Pledged Collateral, the "**Collateral**"); provided that the Collateral shall not include any "**Excluded Property**" as defined in the Security Agreement as of even date herewith. If any portion of the Collateral is located on property owned by a third party, or which is subject to a mortgage in favor of any person other than Bank, Borrower shall obtain and deliver to Bank such landlord, bailee, warehouseman, processor, mortgagee or other applicable waiver with respect to such Collateral as may be required by Bank, in form and content acceptable to Bank (collectively, "**Collateral Access Agreements**").

4.4    **Pledge Agreement**.    One or more pledge agreements granting Bank a valid and perfected first priority lien on and security interest in all of the equity interests in Borrower (collectively, the "**Pledged Collateral**") executed and delivered by each shareholder of Borrower (each, a "**Pledgor**").

Any Pledged Collateral evidenced by physical certificates shall be delivered to Bank, together with a signed, undated blank stock power in form acceptable to Bank. In all other cases, a notification and control agreement executed by the custodian and/or depository bank, as applicable, and in form and content acceptable to Bank, shall also be delivered with respect to the Pledged Collateral, as set forth in the Pledge Agreement.

4.5    **Negative Pledge Agreement.**    A negative pledge agreement providing that Borrower and the Subsidiary Guarantors shall not grant, create or suffer to exist any lien or encumbrance on any of its assets or properties or in any way limit the ability of Borrower or any direct or indirect subsidiary to grant a lien to secure the Obligations (other than in favor of Bank or as expressly permitted by Bank in writing and other than in connection with Excluded Property).

7

4.6   **Subordination.**    A subordination agreement dated as of even date herewith (the "**Subordination Agreement**") pursuant to which all of the debt owed by Borrower to RDS Ventures, LLC (and any assignees or successors thereof) (collectively, "**RDS**") shall be made subordinate to the Obligations owed to Bank under the Loan Documents (the "**RDS Note**", and together with any other subordinated indebtedness permitted under Section A.6.3(l), the "**Subordinated Debt**").

All liens and security interests covering the Collateral shall be on terms and pursuant to such security agreements, pledge agreements, UCC-1 financing statements, deeds of trusts or mortgages, and other documentation reasonably required by, and in form satisfactory to, Bank. Insurance covering all physical Collateral must be maintained in amounts and coverages reasonably acceptable to Bank and in any event in amounts usual and customary for similarly situated companies, and Bank shall be named as mortgagee, lender loss payee, and/or additional named insured, as applicable, with respect to all insurance policies of Borrower and each Subsidiary Guarantor. Borrower shall pay to Bank, immediately upon demand, the amount of all reasonable fees, costs and expenses expended or incurred by Bank (or on behalf of Bank) with respect to any of the Collateral, including without limitation, filing and recording fees and taxes, and costs of field examinations, audits, appraisals, environmental due diligence and/or title insurance.

5.   **Representations**.    To induce Bank to extend the credit accommodations described herein, and upon the making of each advance to Borrower, each of Borrower and each Subsidiary Guarantor represents and warrants to Bank as follows, which representations and warranties shall survive the execution of this letter and shall continue in full force and effect until the full and final payment, and termination, satisfaction and discharge, of all Obligations of Borrower to Bank subject to this letter and the termination of Bank's commitments to lend hereunder:

5.1   **Legal Status**.    Each of Borrower and each of its direct and indirect subsidiaries is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the power and authority to own its assets and to conduct its business as now or proposed to be carried on, and is qualified or licensed to do business (and is in good standing as a foreign corporation, if applicable) in all jurisdictions in which such qualification or licensing is required or in which the failure to so qualify or to be so licensed could have a material adverse effect on Borrower or any of its direct and indirect subsidiaries.

5.2   **Authorization; Enforceability**.    Each of Borrower and each Subsidiary Guarantor has full power and authority to enter into the transactions provided for herein, and this letter, the Notes and each other Loan Document (as defined below) to which it is a party, has been duly authorized,

8

and upon execution and delivery in accordance with the provisions hereof will each constitute the legal, valid and binding obligation of Borrower or the party which executes the same, enforceable in accordance with their respective terms.

5.3    **No Violations; No Conflicts**.    The execution, delivery and performance by Borrower and each Subsidiary Guarantor of each of the Loan Documents to which it is a party does not create, any default or violation by Borrower or such Subsidiary Guarantor, as applicable, of any provision of: (i) any law, rule, regulation, order, decree, judgment, condition or requirement applicable to or imposed upon Borrower any Subsidiary Guarantor by any law, court or other governmental authority; (ii) any contract, obligation, indenture or other instrument to which Borrower or any Subsidiary Guarantor is a party or by which Borrower or any Subsidiary Guarantor may be bound; or (iii) any organizational or governance document of Borrower of any Subsidiary Guarantor. There does not exist any default or violation by Borrower or any Subsidiary Guarantor, as applicable, of any provision of: (i) any law, rule, regulation, order, decree, judgment, condition or requirement applicable to or imposed upon Borrower or any Subsidiary Guarantor by any law, court or other governmental or regulatory authority which could reasonably be expected to cause a Material Adverse Effect (as hereinafter defined); or (ii) any organizational or governance document of Borrower or any Subsidiary Guarantor.

5.4    **Litigation**.    Borrower has not been served with and to the best of Borrower's and any Subsidiary Guarantor's knowledge, there are no threatened, actions, suits, proceedings, claims, or investigations by or before any court or other governmental authority which could reasonably be expected to result in a material adverse change in or material adverse effect on (i) the business, assets, operations or financial condition of Borrower and its direct and indirect subsidiaries, taken as a whole, (ii) the ability of Borrower or any Guarantor to perform its obligations under the Loan Documents to which Borrower or such Guarantor is a party or (iii) any of the Collateral or Bank's security interest therein (a "**Material Adverse Effect**").

5.5    **Financial Statements; No Material Adverse Change**.    The most recent consolidated and consolidating financial statements of Borrower delivered to Bank are true, complete and accurate in all material respects and present fairly in all material respects the consolidated and consolidating financial condition of Borrower and its direct and indirect subsidiaries and the results of Borrower's consolidated and consolidating operations for the period covered thereby, and accurately disclose all of Borrower's and its subsidiaries' assets and liabilities, whether

9

accrued, absolute, contingent or otherwise, all prepared in accordance with generally accepted accounting principles consistently applied, except as expressly noted therein. Since the dates of such financial statements there has been no material adverse change in the consolidated financial condition of Borrower or the financial condition of any Guarantor, nor has Borrower or any Subsidiary Guarantor mortgaged, pledged, granted a lien or security interest in or otherwise encumbered any of its assets or properties, except Permitted Liens.

5.6 **Taxes**. Each of Borrower and its direct and indirect subsidiaries has filed all returns required to be filed by it in connection with any federal, state or local tax or similar duty or charge assessed or imposed upon it, its operations or its property, and all such taxes assessed or imposed upon it, its operations or its property have been either paid or adequate reserve has been made therefor, and neither Borrower nor any Subsidiary Guarantor has any knowledge of any pending material adjustments of its income tax payable with respect to any year.

5.7 **Good Title**. Each of Borrower and each Subsidiary Guarantor has good and marketable title to all of its assets, none of which is subject to any mortgage, indenture, pledge, lien, conditional sale contract, security interest, encumbrance, claim, trust or charge except as referred to in the financial statements delivered to Bank prior to the date hereof or except for Permitted Liens.

5.8 **Accounts**. With respect to the accounts (as such term is defined in the Uniform Commercial Code), (a) each account represented by Borrower to be an Eligible Account Receivable for purposes of this Letter Agreement conforms to the requirements of the definition of an Eligible Account Receivable of the applicable type; (b) all account information listed on schedules delivered to Bank will be true and correct, subject to immaterial variance; and (c) Bank, its assigns, or agents shall have the right at any time and at Borrower's expense to inspect, examine, and audit Borrower's records and to confirm with account debtors the accuracy of such accounts.

5.9 **Permits, Franchises**. Each of Borrower and its direct and indirect subsidiaries possesses all permits, memberships, franchises, contracts and licenses required and all trademark rights, trade name rights, patent rights, copyrights and fictitious name rights reasonably necessary to enable it to conduct the business in which it is now engaged.

5.10 **Other Obligations**. None of Borrower nor any of its direct or indirect subsidiaries is in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation.

10

5.11    **No Event of Default**.    There is no event which is, or with notice or a lapse of time or both would be, a default or an Event of Default under this Letter Agreement or any other Loan Document.

5.12    **Compliance with Environmental Laws**.    None of Borrower nor any of its direct or indirect subsidiaries uses, stores, manufactures, generates, transports to or from, or disposes of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives, or related material on or in connection with any property or the business of Borrower or any of its direct or indirect subsidiaries on any property, and will not permit any lessee on any property to do so, except as have been disclosed in writing to Bank, and which are in full and complete compliance with any and all applicable federal, state and local laws, regulations, ordinances and rules. ("Toxic Substances," "Hazardous Materials," and "Hazardous Waste" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under any applicable federal, state or local law, regulation, ordinance or rule, or which are otherwise classified as hazardous or toxic under any of the foregoing applicable laws.)

5.13    **No ERISA Plan**.    Borrower does not, and its direct or indirect subsidiaries do not, maintain a plan under the Employee Retirement Income Security Act of 1974 other than in strict compliance therewith.

5.14    **Organizational Structure**.    Set forth on Schedule A.5.13 hereof is a complete and correct organizational structure chart of Borrower and its direct and indirect subsidiaries as of the date hereof, together with, for each entity listed thereon, (a) each person or entity holding ownership interests in such entity and (b) the percentage ownership interests held.

5.15    **Perfection Information**.    The information certificate delivered as of the date of this Agreement (the "**Information Certificate**") is true and correct in all material respects on the date hereof, and any updates thereto delivered after the date hereof are true and correct in all material respects on the date thereof, and Borrower will provide Bank prompt notice of any material change thereto.

Borrower has not, and its direct or indirect subsidiaries have not, in the past five years changed its legal name or been known by any other name, been party to a merger, consolidation or other change in structure, changed or had its registration number in its state of organization changed, except as may be set forth in the Information Certificate.

11

5.16    **Use of Proceeds**.      No proceeds of the Line of Credit or the Term Loan will be used to purchase or carry any Margin Stock (as defined in Regulation U of the Board of Governors of the US Federal Reserve System (or any successor thereto) as in effect from time to time) or to extend credit to others for the purpose of purchasing or carrying any Margin Stock. The proceeds of Line of Credit and the Term Loan will be used for general corporate purposes of the Borrower, including on the date of this Letter Agreement for the payment in full of all outstanding indebtedness owed by Borrower to JPMorgan Chase Bank, N.A. and the payment in full of all operating leases in existence on the date of this Letter Agreement, except as disclosed on Schedule 1 hereto.

5.17    **Full Disclosure**.      Without limitation of any other representation set forth herein, all information in the loan application, financial statements, certificates, or other documents and all other written information prepared and delivered by or on behalf of Borrower or any of its direct or indirect subsidiaries to Bank in obtaining the credit accommodations described in this Letter Agreement (as defined herein) is correct and complete in all material respects, and there are no omissions therefrom that result in such information being incomplete, incorrect or misleading in any material adverse respect as of the date thereof.

Each of Borrower and each Subsidiary Guarantor further warrants, represents and covenants that:

5.18    **Prohibited Person Compliance**.      Neither Borrower, any Subsidiary Guarantor, any of their direct or indirect subsidiaries, or any of their respective affiliates is or will be a person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (d) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Neither Borrower, any Subsidiary Guarantor, any of their direct or indirect subsidiaries, or any of their respective affiliates will knowingly (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Borrower shall

12

000065

deliver (from time to time) to Bank any such certification or other evidence as may be requested by Bank in its sole and absolute discretion, confirming each such representation.

5.19 **Foreign Corrupt Practices Act.**  Neither Borrower nor any of its direct or indirect subsidiaries, nor to the knowledge of Borrower or any Subsidiary Guarantor, any agent or other person acting on behalf of the Borrower or any of its direct or indirect subsidiaries, has (a) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (b) made any unlawful payment to foreign or domestic government officials or employees or to any foreign or domestic political parties or campaigns from corporate funds, (c) failed to disclose fully any contribution made by Borrower or any of its direct or indirect subsidiaries (or made by any person acting on its behalf of which Borrower or any Subsidiary Guarantor is aware) which is in violation of law, or (d) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("**FCPA**").  Each of Borrower and each Subsidiary Guarantor shall cause any agent or other person acting on its behalf to comply with the FCPA, including maintaining and complying with all policies and procedures to ensure compliance with this act.

When any of the foregoing representations and warranties are based upon the knowledge of Borrower or a Subsidiary Guarantor, such knowledge shall be based upon the actual knowledge of Robert Douglas Spiro, Jr. or senior management of Borrower or any of the Subsidiary Guarantors, in each case of the date such representation and warranty is made, and without any independent duty to investigate or inquire.

6. **Covenants**.  Each of Borrower and each Subsidiary Guarantor covenants and agrees that, until the Line of Credit is terminated and all commitments to lend thereunder are terminated, and all Obligations (including, without limitation, the Term Loans) of Borrower to Bank are indefeasibly paid in full, unless Bank waives compliance in writing or otherwise consents in writing:

6.1 **Reporting**.  Borrower shall deliver to Bank, or cause to be delivered to Bank, in form and detail satisfactory to Bank:

(a) Annual Financial Statements.  As soon as practical, but in any event not later than 120 days after and as of the end of each fiscal year, consolidated and consolidating balance sheets and statements of income and retained earnings of Borrower for the preceding fiscal year, together with the comparative financial statements for the corresponding periods of the preceding fiscal year, in the case of such

13

financial statements for the year ended June 30, 2019, prepared on a reviewed basis by independent certified public accountants acceptable to Bank, and in the case of such financial statements for the year ended June 30, 2020 and for each fiscal year thereafter, audited and certified without qualification by independent certified public accountants acceptable to Bank;

(b)  Quarterly Financial
     Statements.

As soon as practical, but in any event not later than 45 days after and as of the end of each fiscal quarter (including the last quarter of Borrower's fiscal year), consolidated and consolidating balance sheets and statements of income and retained earnings of Borrower for such quarter and for the period commencing at the beginning of such fiscal year and ending on the last day of such quarter, together with the comparative financial statements for the corresponding periods of the preceding fiscal year, prepared and duly certified as complete and correct by the chief financial officer, or other duly authorized employee of Borrower reasonably acceptable to Bank (subject to the absence of footnotes and normal year-end adjustments);

(c)  Tax Returns (Parent
     Guarantor).

As soon as practical, but in any event not later than 30 days after filing, federal and state tax returns (including all schedules) and/or extension documentation for each calendar year for Parent Guarantor;

(d)  Financial Statements
     (Individuals).

Not later than 30 days after filing, federal and state income tax returns (including all schedules and/or extension documentation) for such calendar year for the Individual Guarantor, together with personal financial statements (in form reasonably acceptable to Bank);

(e)  Accounts.

As soon as practical, but in any event not later than 15 days after and as of the end of each month, a schedule aging from invoice date all accounts receivable of Borrower and a summary trial balance of all accounts payable of Borrower;

(f)  Borrowing Base
     Certificates.

As soon as practical, but in any event not later than 15 days after and as of the end of each month, a borrowing base certificate in form and substance acceptable to Bank and certified by an authorized officer of Borrower;

14

(g)    Projections.        As soon as practical, but in any event not later than sixty (60) days after and as of the end of each fiscal year, projections for Borrower for the next succeeding fiscal year, on a quarterly basis and for the following fiscal year on an annual basis, including a balance sheet, as at the end of each relevant period and for the period commencing at the beginning of the fiscal year and ending on the last day of such relevant period, such projections and certified by an authorized officer of Borrower as being based on reasonable estimates and assumptions taking into account all material facts and information then known (or then reasonably available to Borrower);

(h)    Compliance Certificates.        Together with each of the items described in clause A.6.1(b) above, a certification, in form and substance reasonably acceptable to Bank, by the chief financial officer or other duly authorized employee of Borrower reasonably acceptable to Bank, as to (i) Borrower's compliance with the financial covenants set forth in Section 0 below for the applicable fiscal period(s) then ended (including detailed calculations necessary to show such compliance), (ii) the occurrence of any defaults under any Loan Document during or with respect to such period(s), and if so, the nature thereof and the corrective measures proposed by Borrower with respect thereto and (iii) there being no updates to the information certificate delivered as of the date hereof (or the most recent updated information certificate delivered after the date hereof) or, if there are any such updates, an updated information certificate and a certification that such certificate is true, correct and complete in all material respects;

(i)    Notices of Default.        Borrower and any Subsidiary Guarantor shall advise Bank immediately upon its becoming aware that a default or Event of Default has occurred under the Loan Documents (defined below);

(j)    Notices of Litigation.        Borrower and any Subsidiary Guarantor shall advise Bank immediately upon its becoming aware of any pending or threatened litigation or other matter described in Section A.5.4 above; and

(k)    Other Information.        Borrower and any Subsidiary Guarantor shall promptly provide such additional information as Bank reasonably requests from time to time.

15

Unless otherwise set forth herein, all financial statements to be delivered pursuant to this Letter Agreement shall be made and prepared in accordance with generally accepted accounting principles in the United States of America in effect from time to time (including principles of consolidation where appropriate) ("**GAAP**"), consistently applied and (where appropriate for interim statements) subject to the absence of footnotes and to normal year-end adjustments. All financial or accounting terms used herein shall (unless otherwise defined herein) have the meanings ascribed to such terms under GAAP, and prepared on a consolidated and consolidating basis. The fiscal year of Borrower is from July 1 to June 30. The fiscal year of each direct or indirect subsidiary of Borrower is from July 1 to June 30.

6.2    **Financial Covenants**. Borrower shall comply with the following financial covenants:

(a)    <u>Minimum Tangible Net Worth</u>.

Borrower shall maintain a Tangible Net Worth of not less than, as of the end of each fiscal quarter, (a) for the quarter ending September 30, 2019, $5,500,000, (b) for the quarter ending December 31, 2019, $6,000,000, (c) for the quarter ending March 31, 2020, $7,000,000 and (d) as of the end of each quarter thereafter, $7,500,000.

As used herein: "**Tangible Net Worth**" shall mean the sum of Borrower's owners' equity, <u>plus</u> Subordinated Debt, <u>less</u> any amounts owing from any subsidiaries, affiliates, employees or other related parties, <u>less</u> goodwill, investments, any write-up in the book value of any asset, inventory or other security appearing on the asset side of the balance sheet and any other assets deemed "intangibles" in accordance with GAAP.

(b)    <u>Minimum EBITDA</u>.

Borrower shall maintain EBITDA of not less than, as of the end of each fiscal quarter set forth below, the amount set forth below that corresponds to the period ending as of the end of such fiscal quarter:

| Trailing Four-Fiscal Quarter Period Ending | Minimum EBITDA |
|---|---|
| September 30, 2019 | $3,300,000 |
| December 31, 2019 | $4,700,000 |
| March 31, 2020 | $5,900,000 |
| June 30, 2020 | $7,000,000 |
| September 30, 2020 | $7,398,000 |
| December 31, 2020 | $7,937,000 |
| March 31, 2021 | $8,818,000 |
| June 30, 2021 and | $9,966,000 |

16

| thereafter | |
|---|---|

"**EBITDA**" means, for any trailing four-fiscal quarter period, consolidated net income of the Borrower and its subsidiaries for such period *plus* (a) without duplication and to the extent deducted in determining consolidated net income for such period, the sum of (i) interest expense for such period, (ii) income tax expense for such period, (iii) all amounts attributable to depreciation and amortization expense for such period, (iv) any extraordinary charges for such period as determined by the Bank in its sole discretion, (v) business optimization expenses and other restructuring charges or reserves (which, for the avoidance of doubt, shall include, without limitation, the effect of inventory optimization programs, facility consolidations, employee retention and severance, systems establishment costs and excess pension charges), in each case as determined by the Bank in its sole discretion, (vi) any proceeds from business interruption insurance received during such period, and (vii) any other non-cash charges for such period (but excluding any non-cash charge in respect of an item that was included in consolidated net income in a prior period and any non-cash charge that relates to the write-down or write-off of inventory), *minus* (b) without duplication and to the extent included in consolidated net income, (i) any interest income, (ii) any extraordinary gains and (iii) any non-cash items of income for such period, all calculated for the Borrower and its Subsidiaries on a consolidated basis in accordance with GAAP.

(c)    Maximum Funded
Debt to EBITDA.    Borrower shall not permit its ratio of Funded Debt to EBITDA, as measured on a rolling four fiscal quarter basis, to exceed (a) for the quarter ending September 30, 2019, 5.0 to 1.0, (b) for the quarter ending December 31, 2019, 3.5 to 1.0, (c) for the quarter ending March 31, 2020, 2.75 to 1.0, (d) for the quarters ending June 30, 2020, September 30, 2020, December 31, 2020 and March 31, 2021, 2.5 to 1.0 and (e) as of the end of each quarter thereafter, 2.0 to 1.0.

As used herein: "**Funded Debt**" shall mean the sum of all Borrower's obligations for borrowed money, indebtedness evidenced by a written obligation to pay money, purchase money indebtedness including conditional sales or other title-retention agreements, indebtedness in respect of capitalized lease obligations

17

and indebtedness in respect of reimbursement obligations, excluding however any Subordinated Debt permitted hereunder.

(d) <u>Minimum Fixed Charge Coverage Ratio</u>.

Borrower shall maintain a Fixed Charge Coverage Ratio, as measured on a rolling four fiscal quarter basis, of not less than (a) for the quarter ending September 30, 2019, 1.1 to 1.0, (b) for the quarter ending December 31, 2019, 1.2 to 1.0, and (c) as of the end of each quarter thereafter, 1.25 to 1.0.

As used herein: "**Fixed Charge Coverage Ratio**" shall mean, for the applicable measurement period, the ratio of (i) Borrower's EBITDA to (ii) the sum of Borrower's principal and interest payments on indebtedness (including capitalized lease obligations) that were paid or otherwise due during the applicable measurement period (as adjusted for prepayments), <u>plus</u> tax expense, <u>plus</u> any dividends and any other distributions on or with respect to any class of Borrower's equity or purchases, redemptions, acquisitions or retirements of any class of Borrower's equity, <u>plus</u> capital expenditures not funded with borrowed money.

Unless otherwise set forth herein, all calculations and determinations with respect to financial matters shall be made and prepared on a consolidated basis in accordance with GAAP , consistently applied and subject to normal year-end adjustments. All financial or accounting terms used herein shall bear the meanings ascribed to them under GAAP.

6.3 **Other Covenants**.

Each of Borrower and its direct and indirect subsidiaries shall comply, or cause compliance, with the following covenants:

(a) <u>Operating Accounts</u>.

Borrower and its direct and indirect subsidiaries shall maintain all of their depository accounts with Bank, into which accounts all proceeds of accounts receivable and other sales and income from customers or clients of Borrower shall be deposited, and from which materially all disbursements shall be made. At the option of Bank, all interest payments, principal payments, reimbursements, and fees will automatically be deducted from Borrower's account(s) maintained with Bank. To the extent not already maintained with Bank, Borrower and each of its subsidiaries shall transfer its primary deposit accounts to Bank on or before September 30, 2019 and all of its deposit accounts to Bank by October 31, 2019. For all accounts (including but not limited to deposit accounts and securities accounts) not maintained

18

with Bank, Borrower shall enter into "springing" control agreements reasonably acceptable to Bank within 30 days of the date of this Agreement (or in the case of new accounts opened after the date of this Agreement, within 30 days of the date of the opening of such account).

(b)    Records; Inspection; Audits.

Each of Borrower and its direct or indirect subsidiaries shall maintain adequate books and records in accordance with GAAP consistently applied, and shall permit Bank, or its agents or other representatives, after prior written notice and at any reasonable time during normal business hours, to inspect, audit and examine such books and records, to make copies of the same and to inspect the properties of Borrower and its direct or indirect subsidiaries; provided however that, Borrower shall only be required to pay for one such inspection, audit or examination per calendar year (unless one or more inspections, audits or examinations occurs during the continuance of an Event of Default, in which case all of such inspections, audits or examinations during the continuance of an Event of Default shall be at Borrower's sole cost and expense).

Without limiting the foregoing, Bank (or its agent, consultant or representative) shall be entitled to perform field examinations and to conduct collateral audits, at Borrower's expense, on at least an annual basis but in any event as often as Bank reasonably deems necessary, in order to verify any or all of the Collateral, and each such field examination and collateral audit must be satisfactory to Bank in its reasonable discretion; provided, however, that Borrower shall only be responsible for the costs and expenses associated with a maximum of two (2) collateral audits performed in any calendar year, except when any default or Event of Default has occurred and is continuing.

(c)    Approvals; Compliance with Law.

Each of Borrower and its direct or indirect subsidiaries shall obtain, preserve and maintain all governmental and other licenses, permits, approvals, rights, privileges and franchises necessary for the ownership of its properties and conduct of its business, and shall comply with the requirements of all governmental laws, rules, regulations and orders applicable to it, its properties and/or its business.

(d)    Taxes.

Each of Borrower and its direct or indirect subsidiaries shall promptly pay and discharge all of its taxes,

19

assessments and other governmental charges prior to the date on which penalties are attached thereto, establish adequate reserves for the payment of taxes and assessments and make all required withholding and other tax deposits. Nothing herein shall be interpreted to require the payment of any tax, assessment or charge so long as its validity is being contested in good faith and by appropriate proceedings diligently conducted, and Borrower or the applicable subsidiary, as the case may be, has established an adequate reserve for any such expense.

(e)    Insurance.

Each of Borrower and its direct or indirect subsidiaries shall maintain and keep in force insurance of the types and in amounts customarily carried in similar lines of business and with respect to similar assets and properties, and shall deliver to Bank from time to time at Bank's request evidence of such insurance, together with a certification or endorsement naming Bank as lender loss payee, additional insured, mortgagee or otherwise as required by Bank.

(f)    Maintenance of Properties.

Each of Borrower and each Guarantor shall keep and maintain the Collateral and all properties useful or necessary to its business in good repair and condition.

(g)    Indebtedness.

Neither Borrower nor any of its direct or indirect subsidiaries shall create, assume, incur, guarantee, endorse (except endorsements in the course of collection), or permit or suffer to exist any indebtedness or other liabilities arising from any borrowing, loan or advance, except: (i) the Obligations in favor of Bank; (ii) open account trade debt (including operating leases) incurred in the ordinary course of business and not past due; (iii) otherwise as disclosed to Bank in writing prior to the date hereof and set forth on Schedule 1 and refinancings thereof on terms not less favorable to Borrower in any material respect or that increase the principal amount of indebtedness thereunder (other than in respect of accrued and unpaid interest and reasonable and customary financing fees), (iv) the RDS Note or any additional advances or loans by RDS to Borrower, so long as subordinated to the Obligations on terms set forth in the RDS Subordination Agreement dated as of even date herewith, (v) Subordinated Indebtedness (other than the RDS Note) owed to any third party only so long as such indebtedness is subject to a subordination agreement in form and substance satisfactory to Bank; and (vi) indebtedness in respect of which liens are

20

permitted under Section A.6.3(h)(iii) in an aggregate principal amount not to exceed $250,000.

(h)     Liens.

Neither Borrower nor any of its subsidiaries shall create, assume, incur, or permit or suffer to exist any mortgage, pledge, encumbrance, charge, or other lien (each of the foregoing, a "**Lien**"; provided, that in no event shall an operating lease entered into in the ordinary course of business or any precautionary UCC filings made pursuant thereto by an applicable lessor or lessee covering only the assets subject to such operating lease be deemed to be a Lien) upon, or security interest in, all or any portion of its property, now owned or hereafter acquired, including without limitation pursuant to any conditional sales or other title retention agreement, except the following (collectively referred to herein as "**Permitted Liens**"): (i) in favor of Bank; (ii) otherwise as disclosed to Bank in writing prior to the date hereof and set forth on Schedule 2 and refinancings thereof on terms not less favorable to Borrower in any material respect or that increase the principal amount of indebtedness thereunder (other than in respect of accrued and unpaid interest and reasonable and customary financing fees); and (iii) capital leases and purchase money security interests in personal property existing or created when such property is leased or acquired, as the case may be, provided that the principal amount of the indebtedness secured by each such security interest does not exceed the purchase price of the related property, does not exceed in the aggregate the amount of such indebtedness permitted hereunder and the amount and the Lien does not extend to any property other than the property so leased or acquired.

For the avoidance of doubt, neither Borrower nor any of its direct or indirect subsidiaries shall create, assume, incur, or permit or suffer to exist any mortgage, pledge, encumbrance, charge, or other lien upon, or security interest in, all or any portion of its property other than Permitted Liens

(i)     Fundamental Changes.

Neither Borrower nor any Subsidiary Guarantor shall liquidate or dissolve; nor convey, sell, transfer, lease, or sell and lease back, all or any substantial portion of its property, assets or business to any other entity; nor merge or consolidate with or into any other entity; nor acquire all or substantially all of the assets or equity of any other entity; nor form or acquire any new subsidiary; nor sell or dispose of any of the equity Borrower holds

21

000074

in any subsidiary; nor dispose of any assets other than in the ordinary course of business consistent with past practice; nor make any material change in the nature of its business as conducted on the date hereof.

(j)    Change of Control.    Borrower shall not permit (i) any change in the equity ownership of any of its direct or indirect subsidiaries that results in Borrower failing to own, directly or indirectly, and free and clear of any lien or other encumbrance (other than in favor of Bank), 100% of the outstanding equity interest in Balance and at least 90% of the outstanding equity in Moreno or (ii) any person or group (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than the Parent Guarantor to become the "beneficial owner" (as defined in Rules 13d-3 and 13d-5 under the Securities Exchange Act of 1934, except that any such Person, entity or group will be deemed to have "beneficial ownership" of all securities that such Person, entity or group has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of more than thirty-five percent (35%) of the voting power of all classes of ownership of Borrower.

(k)    Loans or
Investments.    Borrower and the Subsidiary Guarantors shall not make or suffer to exist any investments in, or loans or advances to, any other entity except (i) advance payments or deposits against purchases made in the ordinary course of the regular business of Borrower and the Subsidiary Guarantors; (ii) direct obligations to the United States of America; (iii) any existing investments in, or existing advances to, any party set forth on Schedule 3; (iv) temporary advances to employees to cover expenses incurred in the ordinary course of Borrower's business consistent with past practice and not in excess of $50,000 outstanding at any one time; or (v) intercompany indebtedness subject to applicable subordination agreements specified in Section A.6.3(l).

(l)    Subordination.    Borrower and, as applicable, each direct or indirect subsidiary of Borrower, shall enter into one or more subordination agreements, satisfactory in form and substance to Bank, subordinating the Subordinated Debt and any indebtedness among Borrower and its direct or indirect subsidiaries to the Obligations; provided that Borrower shall not make any payments in any form (including by way of set-off) on any Subordinated Debt or intercompany debt unless immediately prior to and after giving effect to such payments (i) Borrower is in

22

compliance with the financial covenants set forth in Section A.6.2 hereof; (ii) no default or Event of Default shall have occurred and be continuing; (iii) such payments are permitted under the terms of the applicable subordination agreement; (iv) no prepayments of any Subordinated Debt may be made and (v) in respect of any payments on any Subordinated Debt (other than intercompany debt), Borrower shall have provided a certificate to Bank and to the applicable subordinated creditor signed by a senior officer of Borrower demonstrating that (A) immediately prior to any payment of such Subordinated Debt, Borrower is in compliance with the financial covenants hereunder and (B) after giving effect to any payment of such Subordinated Debt, Borrower is in pro forma compliance with the financial covenants hereunder and certifying that no default or Event of Default exists under the Loan Documents.  As of the date of this Letter Agreement, the only Subordinated Debt of the Borrower is the RDS Note and the only subordination agreement is the RDS Subordination Agreement.

(m)  Redemptions; Distributions.

Borrower shall not declare or pay any dividends or other distributions on or with respect to any class of its equity, or purchase, redeem, acquire or retire any of Borrower's equity interests (i) at any time prior to the delivery of its annual financial statements for the year ended June 30, 2019 and the accompanying review by independent certified public accountants as required by Section A.6.1(a), and (ii) at any time after the delivery of its annual financial statements for the year ended June 30, 2019 and the accompanying review by independent certified public accountants as required by Section A.6.1(a), unless, in the case of this clause (ii), (x) no default or Event of Default is then continuing or would result therefrom (including under the covenants set forth in Section A.6.2 hereof on a pro forma basis after giving effect to such payment based on the most recent quarterly financial statements provided to Bank) and (y) no more than an amount equal to 25% of Borrower's annual net profit (which in the case of the fiscal year beginning July 1, 2019, shall be based on the historical reviewed annual financial statements for the fiscal year ending June 30, 2019, and in the case of each fiscal year thereafter, shall be based on audited annual financial statements for the prior fiscal year) may be expended for such dividends, distributions, purchases, redemptions, acquisitions or retirements in any fiscal year (it being understood and agreed that amounts not so expended in

23

a particular fiscal year may not be carried over to subsequent fiscal years).

(n) **Transactions With Affiliates.**    Neither Borrower nor any Subsidiary Guarantor shall enter into or be a party to any transaction including any purchase, sale, lease or exchange of property, the rendering of any service or the payment of any management, advisory or similar fees, with any affiliate (other than transactions among Borrower and a Subsidiary Guarantor or among Subsidiary Guarantors) unless such transaction is: (i) otherwise permitted by the terms of this Letter Agreement; (ii) in the ordinary course of business; and (iii) on fair and reasonable terms no less favorable to it than those that would have been obtained in a comparable transaction on an arm's length basis from an unrelated person.

(o) **Material Contracts.**    Neither Borrower nor any Subsidiary Guarantor shall amend, supplement or otherwise modify (pursuant to a waiver or otherwise): its articles of incorporation, certificate of designation, operating agreement, bylaws or other organizational document, in each case, in any respect adverse to the interests of Bank, without Bank's prior written consent, not to be unreasonably withheld, conditioned or delayed.

(p) **Burdensome Agreements.**    Except for this Section 6.3 and any comparable covenant contained elsewhere in the Loan Documents, Borrower will not, and will ensure that its direct or indirect subsidiaries will not, enter into, or permit to exist, any contract, agreement or instrument that encumbers or restricts on the ability of any subsidiary to (i) pay dividends or make any other distributions to Borrower, (ii) pay any debt or other obligation owed to Borrower, (iii) make loans or advances to Borrower or (iv) provide a guaranty of the Obligations, or any renewals, refinancings, exchanges, refundings or extension thereof.

(q) **Moreno Equity.**    Borrower shall not permit any portion of the 10% of the outstanding equity in Moreno not owned by Borrower to be sold, pledged, assigned or otherwise transferred to any individual that is not a United States citizen resident in the United States or to an entity that is not incorporated or otherwise organized in a state of the United States without the prior written consent of Bank.

24

000077

B.    **Loan Documents**.  Borrower, each Guarantor, and each Pledgor will execute and/or cause to be delivered to Bank this letter ("**Letter Agreement**"), and, to the extent a signatory thereto, the Line of Credit Note, the Term Note, the guarantee documents referenced in Section A.4.1 and Section A.4.2 hereof, the security and pledge documents referenced in Section A.4.3 and Section A.4.3 hereof, the negative pledge agreement referenced in Section A.4.5. hereof, the subordination agreement for the RDS Note, the Information Certificate, and such other documents, instruments, and agreements (including intellectual property security agreements, control agreements, financing statements and fixture filings) as Bank may reasonably request in connection with the transactions contemplated hereunder or to perfect or protect the liens and security interests granted to Bank in connection herewith (the Letter Agreement, together with the foregoing, collectively, the "**Loan Documents**").  A breach of any of the terms and conditions hereof or under any other Loan Document shall constitute an "Event of Default" hereunder on the terms set forth in the Notes (subject, in the case of a breach or default hereunder, to any explicit notice and or grace periods (if any) set forth in the Notes which may apply to the applicable breach or default hereof).

C.    **Conditions Precedent**.  Prior to funding any portion of the Loans provided in the Loan Documents, Bank shall have received each of the Loan Documents, duly executed and in form and substance satisfactory to Bank, together with such other instruments, documents and items as Bank may reasonably request, all in form and substance satisfactory to Bank, such as: subordination agreement for the RDS Note, Collateral Access Agreements, original stock certificates for all certificated equity and original stock powers in connection therewith, certified resolutions, incumbency certificates or other evidence of authority; opinions of counsel to Borrower, the Pledgors and the Guarantors and evidence of cancellation of all commitments from and evidence of payment in full of all indebtedness to any creditor for borrowed money (other than debt expressly permitted hereunder, together with evidence of termination, satisfaction or discharge of all existing liens with respect thereto); and such other items as may be mutually agreed and set forth in a closing checklist (the "**Closing Checklist**").  Subsequent borrowings under the Notes may only be made in accordance with the terms and conditions set forth therein.

In accordance with the Closing Checklist provided to Borrower in connection with this Letter Agreement and the other Loan Documents, Borrower agrees to deliver to Bank the documents set forth under the heading "Post Closing Deliverables" set forth therein within the time frames set forth therein, and acknowledges and agrees that the failure to so deliver by such date any such item (in form and substance satisfactory to Bank) shall, at the option of Bank, constitute an Event of Default under the Obligations.

With respect to all additional advances hereunder, Borrower shall deliver to Bank a written request for an advance in form reasonably satisfactory to Bank, which shall state the amount and date of the advance, provide evidence satisfactory to Bank that the outstanding principal amount of the advances, including the requested advance, will not exceed the Borrowing Base, certify that all of the representations and warranties of Borrower and the Subsidiary Guarantors are true as of such date, and that no Default or Event of Default shall have occurred on or prior to such date.

D.    **Miscellaneous**.

1.    **Notices**.  All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Letter Agreement must be in writing delivered to Borrower at its address first set forth above, to Bank at its address at 555 W. 5th Street, Suite

25

3300, Los Angeles, CA 90013, Attention: Thomas Belli, with a copy of any notices of default or litigation under <u>Sections A.6.1(i)</u> or <u>A.6.1(j)</u> to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending and to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

2.    **Costs and Expenses**.  Borrower shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Letter Agreement and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of protection and preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Borrower or any other person or entity.

3.    **Entire Agreement**.  This Letter Agreement and the other Loan Documents constitute the entire agreement between Borrower and Bank with respect to each credit subject hereto and supersede all prior negotiations, communications and agreements (written or oral), discussions and correspondence concerning the subject matter hereof.  Borrower and Bank agree that any inconsistency or discrepancy between the provisions of this Letter Agreement and any other documentation evidencing the Obligations of Borrower to Bank shall be resolved in the manner most favorable to Bank.

4.    **Severability**.  The provisions of this Letter Agreement and each other Loan Document are severable and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction or any other provision of any of the Loan Documents in any jurisdiction.

5.    **Limitation of Liability**.  To the fullest extent permitted by applicable law, neither Borrower nor Bank shall assert, and hereby waives any claim against the other, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Letter Agreement, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof; <u>provided</u> <u>however</u> that the foregoing shall in no way limit the indemnification obligations of Borrower set forth in any Loan Document for any special, indirect, consequential or punitive

damages against Bank in any way related to the Loan Documents or the Obligations in connection with any suit or proceeding brought by a party other than Borrower.

6. **Amendments, Modifications, Etc**. No amendment, modification or waiver of any provision of this Letter Agreement nor consent to any departure by Borrower or Subsidiary Guarantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Letter Agreement or any of the other Loan Documents for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Borrower (which may be sent by electronic mail).

7. **No Waiver; Remedies**. No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

8. **Successors and Assigns; Assignments**. This Letter Agreement and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Borrower, Subsidiary Guarantors and their respective legal representatives, successors and assigns; provided, however that Borrower may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole and absolute discretion. Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents. In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, the business of Borrower and its affiliates, or any Collateral.

9. **Counterparts; Electronic Transmission**. This Letter Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Letter Agreement. Delivery of any executed counterpart of this Letter Agreement by electronic transmission shall be effective as delivery of a manually executed counterpart hereof. Each of Borrower and each Subsidiary Guarantor acknowledge that information and documents relating to this Letter Agreement and the credit accommodations provided for herein may be transmitted through electronic means.

10. **Patriot Act**. Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Borrower and each Guarantor, which information includes the name, address, tax identification number and other information regarding Borrower and each Guarantor that will allow Bank to identify Borrower and each Guarantor in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

11. **GOVERNING LAW. THIS LETTER AGREEMENT WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION HEREUNDER WERE DISBURSED FROM THE STATE OF**

4835-1552-0416v3/104763-0009

000080

CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS LETTER AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.   TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS LETTER AGREEMENT.

12.   **VENUE; JURISDICTION.** ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR BORROWER ARISING OUT OF OR RELATING TO THIS LETTER AGREEMENT MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND BORROWER AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND BORROWER FURTHER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS IN ANY SUCH SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. BORROWER DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON BORROWER AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION D.1 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY BORROWER AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTIONS.

13.   **WAIVER OF JURY TRIAL.** EACH OF  BORROWER AND EACH SUBSIDIARY GUARANTOR   (a)   KNOWINGLY,   VOLUNTARILY,   INTENTIONALLY   AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS LETTER AGREEMENT, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, OR ANY OTHER LOAN DOCUMENT, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS LETTER AGREEMENT, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFOR OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO BORROWER OR ANY SUBSIDIARY GUARANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO

28

**TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON. EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S AND SUBSIDIARY GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**

By its signature hereto, each of Borrower and each Subsidiary Guarantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.

Initials of authorized officer of Borrower and each Subsidiary Guarantor:

| FC | FC | FC |
|---|---|---|
| Borrower | Balance | Moreno |

15. **Certain Taxes**.  The principal of and the interest on the Obligations, and any other amounts owed hereunder or under any other Loan Document for fees, costs, or otherwise, are payable in lawful money of the United States of America without deduction for or on account of any present or future tax, duty or other charge levied or imposed on any note or other Loan Document or the proceeds thereof or the holder thereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature, except as required by applicable law or regulation.  If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made.  Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax.  Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

000082

future tax, duty or other charge levied or imposed on any note or other Loan Document or the proceeds thereof or the holder thereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature, except as required by applicable law or regulation. If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made. Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax. Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

16.    **No Third-Party Reliance; Not a Fiduciary, Etc**. The agreements of Bank hereunder are made solely for the benefit of Borrower and the benefit of Bank, as applicable, and may not be relied upon or enforced by any other person. Please note that those matters that are not covered or made clear herein are subject to mutual agreement of the parties.

Borrower hereby acknowledges that Bank is acting pursuant to a contractual relationship on an arm's-length basis, and the parties hereto do not intend that Bank act or be responsible as a fiduciary to Borrower, Borrower's management, stockholders, creditors or any other person. Borrower and Bank hereby expressly disclaim any fiduciary relationship and agree each party is responsible for making its own independent judgments with respect to any transactions entered into between the parties. Borrower also hereby acknowledges that Bank has not advised and is not advising you as to any legal, accounting, regulatory or tax matters, and that Borrower is consulting its own advisors concerning such matters to the extent Borrower deems it appropriate.

17.    **Indemnity**. Borrower agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower), whether in connection with or arising out of or relating to (a) the matters referred to in this Letter Agreement or in the other Loan Documents or the use of any advance hereunder, (b) any breach of a representation, warranty or covenant by Borrower, or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination of this Letter Agreement and any other Loan Documents, payment of any advance hereunder and the

30

assignment of any rights hereunder, or entry of judgment hereon. Borrower may participate at its expense in the defense of any such action or claim.

18.  **Further Assurances; Corrections of Defects**.  Each of Borrower and each Guarantor and each Pledgor intending to be legally bound hereby, agrees to promptly correct any defect, error or omission upon the request of Bank, which may be discovered in the contents of any of the Loan Documents, or in the execution or acknowledgement hereof, and Borrower, each Guarantor and each Pledgor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of the Loan Documents, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the obligations evidenced by the Loan Documents.

19.  **Interpretation**.  In this Letter Agreement, unless Bank and Borrower otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Letter Agreement; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in such Agreement are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any person include that person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Letter Agreement are included for convenience of reference only and shall not constitute a part of this Letter Agreement for any other purpose. If this Letter Agreement is executed by more than one party as Borrower, the obligations of such persons or entities will be joint and several.

[No further text on this page; signatures follow]

31

**BANK LEUMI USA**

By: _____
    Name:
    Title:

By: _____
    Name: Scott Yang
    Title: VP

**BETTER 4 YOU BREAKFAST, INC.**

By: _____
    Name: Fernando Castillo
    Title: President, Chief Executive Officer

[GUARANTOR AND PLEDGOR SIGNATURES CONTINUE NEXT PAGE]

*Signature Page to Letter Agreement*

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

**EACH OF THE UNDERSIGNED, AS GUARANTOR PURSUANT TO THAT CERTAIN UNLIMITED GUARANTY DATED THE DATE HEREOF, HEREBY ACKNOWLEDGES AND CONSENTS TO THE TERMS OF THIS LETTER AGREEMENT AND AGREES TO BE BOUND HEREBY.**

**BALANCE FOODS, LLC**

**By:  Better 4 You Breakfast, Inc.,**
its sole member

By: _____
    Name: Fernando Castillo
    Title: President, Chief Executive Officer

**MORENO BROS. DISTRIBUTING, LLC**

By: _____
    Name: Fernando Castillo
    Title: Manager

**CAPITAL STONE EQUITY FUND I LP**

**By: RDS Ventures, LLC**
its general partner

By: _____
    Name: Robert Douglas Spiro, Jr.
    Title: Manager

*Signature Page to Letter Agreement*

      **EACH OF THE UNDERSIGNED, AS GUARANTOR PURSUANT TO THAT CERTAIN LIMITED GUARANTY DATED THE DATE HEREOF, HEREBY ACKNOWLEDGES AND CONSENTS TO THE TERMS OF THIS LETTER AGREEMENT AND AGREES TO BE BOUND HEREBY.**

Name:  Robert Douglas Spiro, Jr.

**SPIRO REVOCABLE FAMILY TRUST**

By: _____
    Name: Robert Douglas Spiro, Jr.
    Title: Trustee

By: _____
    Name: Diana Castillo Spiro
    Title: Trustee

*Signature Page to Letter Agreement*

000087

**EACH OF THE UNDERSIGNED, AS A PLEDGOR PURSUANT TO THAT CERTAIN PLEDGE AGREEMENT DATED THE DATE HEREOF, HEREBY ACKNOWLEDGES AND CONSENTS TO THE TERMS OF THIS LETTER AGREEMENT AND AGREES TO BE BOUND HEREBY.**

Name: Fernando Castillo

Name: Jacqueline Duvivier

Name: Jason Roberts

*Signature Page to Letter Agreement*

Schedule A.5.13

ORGANIZATIONAL STRUCTURE

**Better 4 You Meals, Inc. - Capitalization Table**    6/30/19

| | | Shares Outstanding | Percentage | Shares Fully-Diluted | Percentage |
|---|---|---|---|---|---|
| **Common** | | | | | |
| | Fernando Castillo | 666,667 | 11.90% | 666,667 | 10.24% |
| | Jacqueline Duvivier Castillo | 666,667 | 11.90% | 666,667 | 10.24% |
| | Jason Roberts | 666,667 | 11.90% | 666,667 | 10.24% |
| | CSEF 1, LP (Warrant Series A) | - | 0.00% | 560,287 | 8.60% |
| | Total Common | 2,000,000 | 35.70% | 2,560,287 | 39.31% |
| **Series A Preferred** | | | | | |
| | CSEF 1, LP | 3,369,600 | 60.15% | 3,369,600 | 51.74% |
| **Series B Preferred** | | | | | |
| | CSEF 1, LP (Warrant) | - | 0.00% | 350,000 | 5.37% |
| | CSEF 1, LP (Up to $3,000,000, $1,000,000 Funded) | 232,355 | 4.15% | 232,355 | 3.57% |
| **Total** | | 5,601,955 | 100% | 6,512,242 | 100% |

| | | | | |
|---|---|---|---|---|
| CSEF 1, LP | | 64.30% | | 69.29% |
| Founders | | 35.70% | | 30.71% |
| Total | | 100% | | 100% |



**Schedule A.5.14**

**Better 4 You Meals – Corporate Structure**
*Fully Diluted*



Schedule 1

SCHEDULED DEBT

N/A

<u>Schedule 2</u>

SCHEDULED LIENS

See attached

2

**Better 4 You Meals**
Schedule 2 (Scheduled Liens)

| Creditor | Debtor | Type | UCC Filing # | UCC | Lapses | Contract # | Cost | Original Term | Initial Lease Date | Calculated Remaining Terms |
|---|---|---|---|---|---|---|---|---|---|---|
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 167535426211 | 7/7/16 | 7/7/21 | 16-7795 | $28,150.00 | 60 | 7/6/16 | 22 |
| Financial Pacific Leasing, Inc. | B4YB, Inc. | Equipment Financing | 167537963491 | 7/7/16 | 7/7/21 | 16-7826 | $73,371.00 | 60 | 7/19/16 | 23 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 167541441598 | 8/15/16 | 8/15/21 | 16-7848 | $60,012.80 | 36 | 8/11/16 | 0 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 167535490939 | 7/22/16 | 7/22/21 | 16-7873 | $51,970.00 | 60 | 7/1/16 | 22 |
| Corporation Service Company | B4YB, Inc. | Equipment Financing | 167545092302 | 9/8/16 | 9/8/21 | 16-7926 | $97,246.23 | 48 | 8/31/16 | 13 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 167556483621 | 11/15/16 | 11/15/21 | 16-8052 | $17,760.01 | 36 | 11/3/16 | 2 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177567439372 | 1/23/17 | 1/23/22 | 17-8187 | $20,982.24 | 48 | 1/19/17 | 17 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177578558467 | 4/4/17 | 4/4/22 | 17-8341 | $8,939.00 | 36 | 3/29/17 | 7 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177580945642 | 4/18/17 | 4/18/22 | 17-8341 | | | | |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177580658300 | 6/26/17 | 6/26/22 | 17-8403 | $49,401.01 | 60 | 4/7/17 | 31 |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177585226760 | 4/17/17 | 4/17/22 | 17-8406 | $33,256.35 | 48 | 5/5/17 | 20 |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177589506351 | 5/12/17 | 5/12/22 | 17-8489 | $132,842.00 | 48 | 6/7/17 | 21 |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177597122900 | 7/20/17 | 7/20/22 | 17-8489 | | | | |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177592333959 | 6/8/17 | 6/8/22 | 17-8536 | $97,432.62 | 48 | 6/12/17 | 21 |
| TCF Equipment Finance | B4YB, Inc. | Equipment Financing | 177587956237 | 5/31/17 | 5/31/22 | 17-8633 | $144,321.74 | 48 | 10/1/17 | 25 |
| TCF Equipment Finance | B4YB, Inc. | Equipment Financing | 177610157914 | 10/11/17 | 10/11/22 | 17-8763 | $48,775.15 | 36 | 9/15/17 | 13 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 187626596737 | 1/9/18 | 1/9/23 | 18-8961 | $22,190.71 | 48 | 12/12/17 | 27 |
| Financial Pacific Leasing, Inc. | B4YB, Inc. | Equipment Financing | 187628379627 | 1/18/18 | 1/18/23 | 18-8982 | $29,340.00 | 60 | 1/17/18 | 41 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 187643320155 | 4/12/18 | 4/12/23 | 18-9147 | $22,805.00 | 36 | 4/11/18 | 19 |
| Hitachi Capital America Corp. | B4YB, Inc. | Equipment Financing | 187655746524 | 6/25/18 | 6/25/23 | 18-9274 | $127,455.00 | 36 | 6/22/18 | 22 |
| Hitachi Capital America Corp. | B4YB, Inc. | Equipment Financing | 187673966568 | 10/4/18 | 10/4/23 | 18-9492 | $82,301.00 | 49 | 9/25/18 | 38.5 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 197705080441 | 4/2/19 | 4/2/24 | 19-10044 | $26,500.77 | 37 | 4/1/19 | 32.5 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 197722761204 | 7/11/19 | 7/11/24 | 19-10180 | $90,384.00 | 60 | 7/10/19 | 58 |
| Corporation Service Company | B4YB, Inc. | Equipment Financing | 197721189005 | 7/3/19 | 7/3/24 | 19-10196 | $184,510.02 | 59 | 6/26/19 | 57.5 |
| Hitachi Capital America Corp. | B4YB, Inc. | Equipment Financing | 197691018971 | 1/8/19 | 1/8/24 | 19-9718 | $66,244.01 | 49 | 12/18/18 | 41 |
| Amur Equipment Finance, Inc. | B4YB, Inc. | Equipment Financing | 197724805912 | 7/24/19 | 7/24/24 | 94535 | $114,817.15 | 60 | 7/16/19 | 59 |
| Amur Equipment Finance, Inc. | B4YB, Inc. | Equipment Financing | 197722183181 | 7/9/19 | 7/9/24 | | $125,689.00 | 58 | 7/2/19 | |
| Axis Capital, Inc. | B4YB, Inc. | Equipment Financing | 157454739752 | 3/13/15 | 3/11/20 | 929020 | $76,000.00 | 61 | 6/23/15 | 11 |
| Crown Credit Company | B4YB, Inc. | Equipment Financing | 157496917554 | 11/16/15 | 11/16/20 | 40372724, 40375826 | $87,000.00 | 60 | 11/1/15 | 14 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177580945642 | 4/18/17 | 4/18/22 | | | | | |
| Financial Pacific Leasing, Inc. | B4YB, Inc. | Equipment Financing | 187632885381 | 2/9/18 | 2/9/23 | | | | | |
| Raymond Leasing Corporation | B4YB, Inc. | Equipment Financing | 187640122697 | 3/26/18 | 3/26/23 | 340831 | | | 3/15/18 | |
| La Colonial Tortilla Products, Inc. | MBros. | All Assets | 187648913249 | 5/15/18 | 5/15/23 | 2019071305 | $125,689.00 | 58 | 7/2/19 | 56 |

Schedule 3

SCHEDULED INVESTMENTS

N/A

3

**EXHIBIT B-4**



## SECURITY AGREEMENT
### (All Assets)

**THIS SECURITY AGREEMENT** (this "**Agreement**") is made and entered into as of this 16th day of August, 2019, by Better 4 You Breakfast, Inc., a California corporation ("**Borrower**"), Balance Foods, LLC, a California limited liability company ("**Balance**") and Moreno Bros. Distributing, LLC, a California limited liability company ("**Moreno**" and together with Borrower and Balance, individually and collectively, jointly and severally, "**Grantor**"), in favor of **BANK LEUMI USA** ("**Bank**"), with an address at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, in consideration of Bank now, heretofore or hereafter (a) extending or agreeing to extend any credit or other financial accommodation to Borrower, or (b) agreeing to any direct or indirect extension, renewal, replacement or modification of, or waiver or forbearance with respect to any such credit or other financial accommodation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.  The term "**Bank**" as used throughout this instrument shall be deemed to include BANK LEUMI USA, all its subsidiaries, and all its agencies, branches and departments wherever located.

1.    **Security Interest**.

   1.1    **Grant of Security Interest**.  As security for the full and prompt payment and performance of any and all Obligations (as hereinafter defined in paragraph 1.3), Grantor, as debtor, hereby assigns, transfers and grants to Bank, as secured party, a continuing lien on and security interest in the Collateral (as hereinafter defined).

   1.2    **Nature of Security Interest and Obligations**.  The foregoing grant is made for the benefit of Bank and/or any others having a participation or other interest in any of the Obligations, in such proportions as Bank shall in its sole discretion determine. It is the true, clear, and express intention of Grantor that the continuing grant of this security interest, and the Collateral covered hereby, remain as security for the full and prompt payment and performance of the Obligations, whether now existing or which may hereinafter be incurred by future advances otherwise and whether or not any of such Obligations is related to a transaction out of which any other Obligations arose, by class, or kind, or whether or not contemplated by the parties at the time of the granting of this security interest. Notice of the continuing grant of this security interest shall not be required to be stated on the face of any document representing any of such Obligations, nor otherwise identified as being secured hereby; and if any of such Obligations shall remain or become that of less than all of the Grantors herein (if more than one), any Grantor not liable therefor hereby expressly hypothecates his, her, its, or their ownership interest in the Collateral to the extent required to satisfy any of said Obligations, without restriction, or limitation.  Any of such Obligations shall be deemed to have been made pursuant to Section 9204(c) of the Uniform Commercial Code of the State of California.

   1.3    **Obligations Secured**.  The term "**Obligations**" shall have the meaning given such term in that certain letter agreement dated as of the date hereof among Grantor, Bank, and the other parties thereto (the "**Letter Agreement**"; capitalized terms used herein but not otherwise defined herein shall have the meaning set forth in the Letter Agreement).

   Notwithstanding anything to the contrary contained in the Loan Documents, with respect to any Grantor that is not Borrower, then, solely with respect to such Grantor, the definition of "**Obligations**" shall specifically exclude any and all Excluded Swap Obligations.  The foregoing limitation of the definition of Obligations shall only be deemed applicable to the obligations of any Grantor that is not Borrower (or solely any particular non-Borrower Grantor(s) if there is more than one Grantor) under the particular Swap (or Swaps), or, if arising under a master agreement governing more than one Swap, the

portion thereof, that constitute Excluded Swap Obligations. As used herein, (i) "**Excluded Swap Obligations**" means, with respect to each Grantor, any obligation to pay or perform under any agreement, contract or transaction that constitutes a Swap if, and to the extent that, all or any portion of this Agreement that relates to the obligations under such Swap is or becomes illegal as to such Grantor under the Commodity Exchange Act (7 U.S.C. §1 et seq.), as amended from time to time, and any successor statute (the "**CEA**"), or any rule, regulation, or order of the Commodity Futures Trading Commission (the "**CFTC**"), by virtue of such Grantor's failure for any reason to qualify as an "eligible contract participant" (as defined in the CEA and regulations promulgated thereunder) on the Eligibility Date for such Swap; (ii) "**Eligibility Date**" means the date on which this Agreement becomes effective with respect to the particular Swap (for the avoidance of doubt, the Eligibility Date shall be the date of the execution of the particular Swap if this Agreement is then in effect, and otherwise it shall be the date of execution and delivery of this Agreement); and (iii) "**Swap**" means any "swap" as defined in Section 1a(47) of the CEA and regulations thereunder between Borrower and Bank, other than (A) a swap entered into on, or subject to the rules of, a board of trade designated as a contract market under Section 5 of the CEA, or (B) a commodity option entered into pursuant to CFTC Regulation 32.3(a).

    **1.4**    **Collateral**. The term "**Collateral**" as used herein means all of Grantor's right, title and interest in the following, wherever located and whether now owned or existing or hereafter acquired or proceeds thereof created and all proceeds thereof:

    All personal property of Grantor, including without limitation all (a) accounts (including, without limitation, health-care-insurance receivables, accounts receivable and credit card receivables), (b) goods, including equipment, machinery, vehicles, rolling stock, furniture and fixtures, (c) chattel paper (whether tangible or electronic), (d) inventory (including raw materials, work in process, or materials used or consumed in Grantor's business, items held for sale or lease or furnished or to be furnished under contracts of service, sale or lease, and goods that are returned, reclaimed or repossessed), (e) general intangibles of every kind and nature, including without limitation licenses, intellectual property, patents, trademarks and copyrights, and payment intangibles, (f) instruments (including promissory notes), (g) documents (including warehouse receipts), (h) deposit accounts and bank accounts of any nature, (i) investment property (including securities entitlements, securities accounts, commodity accounts, and commodity contracts), (j) letters of credit and letter-of-credit rights, (k) supporting obligations, (l) commercial tort claims (if any, as described on Exhibit A hereto, (m) farm products, (n) property now or hereafter in Bank's control or possession (or in transit to or from, or under the custody or control of, Bank or any affiliate thereof), and (o) books and records; and (p) with respect to all of the foregoing, all property relating thereto, including, without limitation, insurance proceeds, all software, computer programs, computer records, books and records, and all additions and accessions thereto, replacements thereof and substitutions therefor, and the products and proceeds thereof (including cash and non-cash proceeds), investments therein, income, rents, profits, benefits thereof or therefrom, including all cash and cash equivalents.

    Notwithstanding the foregoing, Collateral shall not include any "**Excluded Property**", which is defined as any document, contract or agreement to which any Grantor is a party, or any of its rights or interests thereunder, in connection with any equipment financing, operating lease or capital lease permitted under the Loan Documents, if and for so long as the grant of such security interest or the assignment thereof shall constitute or result in a breach or termination pursuant to the terms of, or a default under, or is otherwise prohibited by the terms of any such document, contract or agreement due to an enforceable provision containing a restriction on assignment or the grant of a security interest thereunder (other than to the extent that any such term is rendered ineffective pursuant to Section 9406, 9407, 9408, or 9409 of the UCC (or any successor provision or provisions) or any other applicable law (including bankruptcy or insolvency laws) or principles of equity); provided that the foregoing exclusion

2

shall not apply if such prohibition has been waived by the other party to such document, contract or agreement or the other party to such document, contract or agreement has otherwise consented to the creation of a security interest in such document, contract or agreement; provided, further, that immediately upon the ineffectiveness or lapse or termination of any such provision, the Collateral shall include, and such Grantor shall be deemed to have granted a security interest in, all its rights, title and interests in and to such document, contract or agreement as if such provision had never been in effect; and provided, further, that the foregoing exclusion shall in no way be construed so as to limit, impair or otherwise affect Bank's unconditional continuing security interest in and to all rights, title and interests of the applicable Grantor in or to any accounts receivable, payment obligations or other rights to receive monies due or to become due under any such document, contract or agreement and in any such monies and other proceeds of such document, contract or agreement.  In no event shall accounts receivable, payment obligations or other rights to receive monies from account debtors be deemed Excluded Property.

All terms, unless otherwise defined in this Agreement or in any financing statement, shall have the definitions set forth in the Uniform Commercial Code as adopted and enacted and in effect from time to time in the State of California (the "UCC"); provided that terms used herein which are defined in the UCC on the date hereof shall continue to have the same meaning notwithstanding any replacement or amendment of such statute, except (i) with respect to any modification or amendment to the definition of any category or type of collateral, which modification or amendment will apply automatically to such term as used in this Agreement as of the date thereof, and (ii) as Bank may otherwise determine.

**2.** **Representations, Warranties, Covenants and Agreements regarding Collateral**.

**2.1** **General Representations, Warranties and Covenants**.  Grantor hereby represents, warrants and covenants to Bank that:

(a) Grantor's type of organization, jurisdiction of organization, registration number and chief executive office are as set forth on Exhibit A attached hereto and made a part hereof, and are true and correct on the date hereof, and Grantor will provide Bank at least thirty (30) days prior written notice of any change in any of the foregoing;

(b) Grantor's legal name is exactly as set forth in the preamble to this Agreement, and Grantor has not in the past five years changed its legal name or been known by any other name, been party to a merger, consolidation or other change in structure, changed or had its registration number in its state of organization changed, except as may be set forth on Exhibit A hereto;

(c) the location of all Collateral owned by Grantor is as shown on Exhibit A hereto, and Grantor's records concerning the Collateral are kept only at such location(s);

(d) Grantor will not change the location of the Collateral or Grantor's records concerning the Collateral without Bank's prior written consent;

(e) Grantor is the legal and beneficial owner of the Collateral and has good, marketable and indefeasible title thereto, including the exclusive right to pledge, grant a security interest in, sell, assign or transfer such Collateral;

(f) the Collateral is free from all encumbrances and rights of setoff of any kind except the lien in favor of Bank created by this Agreement and Permitted Liens;

3

000099

(g)     Grantor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein;

(h)     Grantor shall not grant, create, incur or permit to exist any lien on or in any of the Collateral (except Permitted Liens), permit any of the Collateral to be levied upon under any legal process, or sell, assign or dispose of any of the Collateral (except in the ordinary course of business, as permitted under the Loan Documents, or as otherwise permitted in writing by Bank);

(i)     Grantor shall promptly notify Bank of the imposition at any time of any lien or encumbrance upon any of the Collateral, other than as permitted herein;

(j)     Grantor has the power and authority to own the Collateral, to grant the liens and security interests therein to Bank as provided herein, and to enter into and perform this Agreement and any other document or instrument delivered in connection herewith;

(k)     Grantor will not allow any third party to gain control of all or any part of the Collateral, and will not use any portion of the Collateral in any manner inconsistent with this Agreement or with the terms of any policy of insurance thereon;

(l)     Grantor shall cooperate with Bank in perfecting all security interests granted herein and in obtaining such agreements from third parties as Bank deems necessary, proper or convenient in connection with the preservation, perfection or enforcement of any of its rights hereunder;

(m)     Grantor shall keep, in accordance with generally accepted accounting principles consistently applied, accurate and complete records regarding the Collateral, and shall, on Bank's demand, make notations on its books and records showing Bank's security interest;

(n)     Grantor shall, at Grantor's reasonable expense, permit Bank (or its officers, agents, attorneys, or accountants) to examine or inspect the Collateral (wherever located), to obtain valuations or appraisals of the Collateral, and to audit and make extracts from such records or any of Grantor's books, ledgers, financial reports, correspondence or other records relating to the Collateral, and shall further answer promptly all of Bank's written or oral inquiries with respect thereto;

(o)     Grantor shall pay all taxes, assessments and other charges of every nature which may be levied or assessed against the Collateral other than taxes, assessments, fees and charges being contested in good faith by appropriate proceedings being diligently pursued, and for which adequate reserves have been set aside;

(p)     Grantor shall, at any time and from time to time, upon demand by Bank, deliver to Bank, endorsed and, or accompanied by instruments of assignment and transfer, in such form and containing such terms as Bank may request, any and all instruments, documents and/or chattel paper constituting part of the Collateral, as Bank may specify in its demand;

(q)     Grantor will not allow any part of the Collateral to be or become an accession to other goods not covered by this Agreement;

(r)     Grantor shall pay when due all transportation, storage and warehousing charges affecting or arising out of the Collateral;

4

(s)    Grantor shall do, obtain, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as Bank may request to vest in and assure to Bank that its rights hereunder and in or to the Collateral, and the proceeds thereof, including waivers from landlords, warehousemen, and mortgagees, and any other person having an interest in real estate where any Collateral is or is to be attached, installed or located;

(t)    Grantor shall keep the Collateral in good order and repair at all times and immediately notify Bank of any event causing a material loss or decline in value of the Collateral, whether or not covered by insurance, and the amount of such loss or depreciation;

(u)    Grantor will only use or permit the Collateral to be used in accordance with all applicable federal, state, county and municipal laws and regulations;

(v)    Grantor shall abide by, perform and discharge each and every obligation, covenant, condition, duty and agreement in connection with the Collateral contained herein or in any other document evidencing or securing the Obligations; and

(w)    Grantor may not sell, assign or otherwise dispose of any shares of stock or other securities now owned or hereafter acquired by Grantor which are issued by the same issuer and are of the same class as any shares of stock or other securities constituting a part of the Collateral.

**2.2    Insurance**.    In the event of any partial or complete loss or destruction of any of the Collateral by any means, Grantor shall, at its own expense, cause such repairs to be made as Bank may reasonably deems appropriate or at the option of Bank, replace such Collateral with new Collateral having a value equal to the value of the lost or destroyed Collateral prior to such loss or destruction, to the extent such loss or destruction exceeds $250,000 in any fiscal year. Grantor agrees, at its own expense, to keep all insurable Collateral insured against loss or damage by fire, theft, sprinkler leakage or any other risk to which the Collateral may be subject (including without limitation risk of flood if any Collateral is maintained at a location in a flood hazard zone, and such other risks and hazards as Bank may reasonably specify), for the full insurable value thereof, under policies and with insurers reasonably acceptable to Bank, which policies shall contain a standard Lender's Loss Payable Clause issued in favor of Bank under which all losses thereunder shall be payable to Bank as Bank's interests may appear. Grantor's duty to insure as set forth in this Section 2.2 shall be limited to obtaining insurance coverage which is usual and customary for businesses in the same business as Grantor. Such policies shall expressly provide for at least thirty (30) days prior written notice to Bank of any intended cancellation or modification of the policy. Grantor will deliver to Bank on request duplicate copies of policies or certificates of such insurance with evidence of payment of the premium thereon. If Grantor fails to provide proof of said insurance, within five (5) Business Days after request for the same by Bank then, in addition to any other right or remedy that Bank may have and without waiving the consequences of such default, Bank may but need not obtain and maintain said insurance, at the sole expense of Grantor, which expense shall be deemed one of the Obligations and shall be payable to Bank on demand. If an Event of Default has occurred and is continuing, Bank is irrevocably authorized to file claims and shall have the sole right to adjust, settle and collect claims under said insurance by such means, at such times, on such terms and in the name of Bank or Grantor, as Bank may see fit and in the name and on behalf of Grantor to execute releases and endorse checks or drafts payable in respect of any such insurance claims. All sums received by Bank from any such insurance may be applied, in the reasonable discretion of Bank, to repair or replace Collateral and/or applied to reduce the Obligations.

**2.3    Authorization for Disposition of Collateral by Grantor**.    Notwithstanding anything to the contrary contained herein, until the occurrence of an Event of Default or notice from Bank terminating or limiting the right of Grantor to do so, Grantor may sell or lease in the ordinary course of its regular

business inventory constituting a part of the Collateral and may collect, compromise and adjust accounts receivable constituting a part of the Collateral, all on such terms as Grantor may in good faith deem advisable in the ordinary course of its regular business, and may retain all sums so collected.

3.    **Perfection; Further Assurances**.

(a)    Grantor hereby grants Bank the right, and irrevocably authorizes Bank, in Bank's reasonable discretion, to file, in form satisfactory to Bank, one or more financing statements, amendments thereto and continuations thereof (with, or, to the extent permitted by law, without the signature of Grantor) under the UCC naming Grantor as debtor and Bank as secured party and indicating therein, in Bank's sole discretion, that the Collateral is comprised of "all assets" or "all assets of the Debtor whether now existing or hereafter arising or acquired, including all proceeds thereof" or any like description or describing the items of Collateral herein specified, in all jurisdictions in which such filing is deemed by Bank to be necessary or desirable in order to perfect, preserve and protect its security interests in the Collateral. Grantor agrees to provide to Bank from time to time promptly upon request any information requested by Bank so that Bank can take any such action. Grantor hereby ratifies and confirms any of the foregoing actions taken by Bank. If required by Bank, Grantor will execute, file and record any, notices, affidavits or other documents and take all such other actions as Bank may deem appropriate to protect or perfect its security interest in the Collateral or to otherwise accomplish the purposes of this Agreement. Grantor hereby agrees to pay on demand, and/or authorizes Bank to charge its account with the reasonable cost of, any and all preparation, filing, recording and other fees and expenses which Bank deems appropriate in order to protect or perfect its security interest in the Collateral or to otherwise accomplish the purposes of this Agreement, including without limitation the cost of all searches of public records as Bank in its reasonable discretion shall require. Notwithstanding the foregoing, Bank shall have no obligation to comply with any recording, re-recording, filing, re-filing, or other legal requirements necessary to establish or maintain the validity, priority or enforceability of, or Bank's right in or to, the Collateral or any part thereof.

(b)    At the request of Bank, Grantor will, at its own cost and expense, cause such liens and security interests as are governed by laws other than the UCC to be perfected and to continue to be perfected so long as the Obligations or any portion thereof is outstanding and unpaid or any commitment to lend by Bank with respect to the Obligations remains in effect.

(c)    Immediately upon Grantor's receipt of any portion of the Collateral which itself, or the ownership of which, is or becomes evidenced by an agreement, instrument, document or other writing (including but not limited to promissory notes, documents of title, trade acceptances and warehouse receipts), Grantor shall deliver the original thereof to Bank, together with appropriate endorsements or other specific evidence, in form and substance reasonably acceptable to Bank, of the collateral assignment thereof to Bank as security for the Obligations.

(d)    Grantor shall at any time and from time to time, take such steps as Bank may reasonably request for Bank to obtain an acknowledgement, in form and substance satisfactory to Bank, of any bailee or any other person having possession of any of the Collateral that the bailee or such other person holds such Collateral for Bank.

(e)    Grantor further covenants and agrees that, if any Collateral consists of letter of credit rights, electronic chattel paper, deposit accounts or supporting obligations not maintained with Bank or one of its affiliates, or any securities entitlement, securities account, commodities account, commodities contract or other investment property, or otherwise is subject to perfection

6

by "control" (within the appropriate meaning pursuant to the UCC) with a financial intermediary, financial institution or otherwise, Grantor shall take all necessary steps as Bank may reasonably request to achieve and maintain control of such Collateral in Bank's favor. Without limitation of the foregoing, Grantor shall execute, and shall cause any depository institution or securities intermediary upon whose books and records the ownership interest of Grantor in such Collateral appears, to execute such pledge agreements, notification and control agreements or other agreements as Bank deems reasonably necessary in order to perfect, prioritize and protect its security interest in such Collateral, in each case in a form satisfactory to Bank. Grantor shall, upon receipt of notice of termination of any such control agreement entered into between Grantor, Bank and a depository institution or securities intermediary (the "**First Agreement**"), or notice of the closing of any account which is the subject of such First Agreement, cause the possessory Collateral which is the subject of such First Agreement to be moved to another depository institution or securities intermediary subject to a new or amended control agreement, in a form reasonably satisfactory to Bank, executed by Grantor and such other depository institution or securities intermediary, and delivered to Bank no later than ten (10) days before the scheduled termination date of the First Agreement.

(f)     Grantor hereby grants Bank the right, in its sole discretion, at any time, (i) after the occurrence and during the continuance of an Event of Default, to transfer to or register in the name of itself or any of its nominees any of the Collateral, and whether or not so transferred or registered, to receive the income and dividends thereon, including stock dividends and rights to subscribe, and to hold the same as a part of the Collateral and/or apply the same as hereinafter provided; (ii) to exchange any of the Collateral for other property upon any reorganization, recapitalization, or other readjustment and in connection therewith to deposit any of the Collateral with any committee or depositary upon such terms as Bank may determine; (iii) in any bankruptcy or similar proceeding to file a proof of claim for the full amount of the Collateral and to vote such claim for or against any arrangement or with respect to any other matter; and (iv) to contest, pay and/or discharge all liens or encumbrances which are not Permitted Liens; pay or discharge taxes or assessments which are not timely paid, or, during the continuance of an Event of Default, pay or discharge claims, actions or demands against, any of the Collateral and to take all actions and proceedings in its own name or in the name of Grantor or any other appropriate person in order to remove or contest such liens, encumbrances, taxes, assessments, claims, actions or demands; or to refrain from doing any of the foregoing, all without affecting the Obligations and the Collateral and without notice or liability to, or the consent of Grantor except to account for property actually received by Bank.

(g)     If Grantor, as registered holder of any of the Collateral, shall receive any stock certificate, option or right, whether as an addition to, or in substitution or exchange for, any Collateral, or otherwise, Grantor agrees to accept the same as Bank's agent and to hold the same in trust for Bank, and to forthwith deliver the same to Bank in the exact form received, with Grantor's endorsement thereof if requested by Bank, to be held by Bank as part of the Collateral. Grantor hereby assigns to Bank all of Grantor's rights (but none of its obligations) in, to and under all collateral, guarantees, subordinations and other rights and benefits now or hereafter received by Grantor with respect to the Collateral as security for the Obligations and agrees to deliver to Bank, upon demand, all agreements, instruments and or documents evidencing same, endorsed and/or accompanied by instruments of assignment and transfer, in such form and containing such terms as Bank may request for the purposes set forth in this Agreement.

(h)     If Grantor shall at any time, acquire a commercial tort claim, as defined in the UCC, Grantor shall immediately notify Bank in a writing signed by Grantor of the brief details thereof and shall grant to Bank in such writing a security interest therein and in all proceeds

7

thereof, all of which shall be upon and subject to the terms of this Agreement, with such writing to be in form and substance satisfactory to Bank.

(i)    Notwithstanding the possession at any time of any of the Collateral by Bank, whether on its own behalf or on behalf of others, Grantor shall remain liable for the payment in full of the Obligations. Grantor assumes all liability and responsibility for the Collateral, and the obligation of Grantor to pay the Obligations shall in no way be affected or diminished by reason of the fact that any of the Collateral may be lost, destroyed, stolen, damaged or for any other reason whatsoever unavailable to Grantor or that the value of the Collateral shall be diminished.

(j)    **Power of Attorney**. Grantor does hereby make, constitute and appoint any officer or agent of Bank as Grantor's true and lawful attorney-in-fact, with power to file any claim, and or do any and all things and take any other action or proceedings, either in its own name or in the name of Grantor or otherwise, alone or jointly, which Bank may deem reasonably necessary or advisable to carry out the intent of this Agreement, and to endorse the name of Grantor or any of Grantor's officers or agents upon agreements, applications, notes, checks, drafts, money orders, or other instruments of payment or Collateral that may come into the possession of Bank in full or part payment of any amounts owing to Bank or to otherwise perfect a security interest in the Collateral, granting to Grantor's said attorney full power to do any and all things necessary to be done as fully and effectually as Grantor might or could do, including the right to sue for, compromise, settle and release all claims and disputes with respect to, the Collateral and including the right to vote any Collateral consisting of equity or like interests; provided, however, Bank may exercise such powers only upon the occurrence of an Event of Default and any continuation thereof. Grantor hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney is coupled with an interest, and is irrevocable for so long as the Obligations shall remain outstanding and unsatisfied and for so long as Bank has any commitments to lend under the Loan Documents. Grantor acknowledges and agrees that the power of attorney herein granted is for the benefit of Bank and does not require Bank to act for the benefit of Grantor as principal; and the power of attorney herein granted is not intended to make Bank a fiduciary for Grantor. Bank hereby accepts this power of attorney and all powers granted hereunder for the benefit of Bank. Grantor hereby acknowledges, consents and agrees that the power of attorney granted pursuant to this Subsection is irrevocable and coupled with an interest for so long as the Obligations shall remain outstanding and unsatisfied and for so long as Bank has any commitments to lend under the Loan Documents.

In furtherance of the foregoing, Grantor hereby irrevocably authorizes and directs each account debtor to honor any demand by Bank to make payment on any account as directed by Bank, until such time that Bank shall notify such account debtor otherwise. No account debtor shall be required to inquire into Bank's right to make any such demand, or into the application of any amounts paid by such account debtor pursuant to such demand. Grantor further agrees to assist, and not to hinder, delay or impede, Bank in the collection and enforcement of the accounts.

4.    **Events of Default**. The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an "**Event of Default**" under this Agreement. Furthermore, it shall also be an Event of Default hereunder if (a) demand by Bank under any Loan Document evidencing any of the Obligations that has a demand feature shall not be timely paid; (b) commencement of any proceeding, procedure, or remedy supplementary to or in enforcement of any judgment, issuance of any writ or order of attachment or garnishment, or the existence of any other lien against or with respect to any property of Grantor; (c) an uninsured material loss, theft, damage or destruction to any of the Collateral; (d) the entry of any judgment against Grantor in excess of $250,000 (other than to the extent covered by a solvent insurance provider that has acknowledged coverage) remains outstanding or

8

unbonded for longer than 30 days; (e) any lien (other than Permitted Liens) against or the making of any levy, seizure or attachment of or on the Collateral for so long as any Obligations, or any commitments by the Bank to lend, remain outstanding; (f) failure of Bank to have a perfected first priority security interest in any of the Collateral (subject to Permitted Liens) other than if the failure to be so perfected is as a result of Bank failing to file a UCC-1 financing statement or otherwise take the appropriate perfection action (but without limiting in any way the applicability of clause (e) hereof); (g) Bank receives any notice or evidence that Grantor or the Collateral may have directly or indirectly been engaged in any type of activity which, in Bank's reasonable judgment, might result in the loss, theft, damage or destruction of any of the Collateral and such loss, theft, damage or destruction of a portion of the Collateral would reasonably be expected to materially and negatively affect the Collateral or Bank's security interest therein; or (h) the seizure or forfeiture of any of the Collateral by or to any federal, state or local governmental body.

**5.    Remedies.**    During the continuance of any Event of Default: (a) any or all of the Obligations shall, at the option of Bank and notwithstanding any time or credit allowed by any instrument evidencing any Obligation, be immediately due and payable without notice, demand or presentment; (b) Bank may, in its discretion, take possession of the Collateral and, for that purpose, may enter, with the assistance of any persons, any premises where the Collateral or any part thereof may be located, and retain possession of the Collateral at such premises or remove the same therefrom; (c) Grantor shall, at the request of Bank, assemble and /or deliver the Collateral at such places as Bank may designate and cooperate in all other respects with Bank in the exercise of its rights hereunder; (d) if an Event of Default has occurred under Section 7.1(a) of the Line of Credit Note or under Section 7.1(a) of the Term Note, which remains uncured for thirty (30) days, or an Event of Default has occurred under Section 7.1(l) of the Line of Credit Note or under Section 7.1(l) of the Term Note, then the Bank may vote any shares of stock or other securities and exercise all or any powers with respect thereto with the same force and effect as an absolute owner thereof; (e) Bank may sell any of the Collateral or cause the same to be sold in the County of Los Angeles, California, or elsewhere, in one or more sales or parcels, at such price and on such terms as Bank may deem advisable, for cash or on credit, for immediate or future delivery, without assumption of any credit risk, at any public or private sales or other dispositions, without demand of performance (which demand is hereby expressly waived), on at least five (5) days notice to Grantor (if any notice is required by law) of any public sale or the time after which a private sale or other disposition may be made (which notice Grantor acknowledges is reasonable), and in connection therewith may grant options and may impose reasonable conditions thereon, and the purchasers of any of the Collateral so sold shall thereafter hold the same absolutely, free from any claim or right of any kind, including any equity of redemption of Grantor (any such equity being hereby expressly waived and released), and Bank or any of its nominees or agents may buy at any public sale and if the Collateral is of a type sold in a recognized market, or is of a type which is the subject of widely distributed standard price quotations, buy at private sale; (g) Bank shall not be obligated to make any sale of the Collateral regardless of notice of sale having been given; and (f) in addition to and notwithstanding any other rights granted by law or herein (or any limitations contained herein on any such rights), Bank shall have all of the rights and remedies with respect to the Collateral of a secured party under the UCC.  Grantor agrees that any action taken by Bank in accordance with this paragraph shall be deemed to be commercially reasonable.

If in its reasonable discretion Bank deems it desirable, it may remove any Collateral held by it from the place where it may now or hereafter be located to any other place and deal with it there as herein provided.  Bank has no obligation to marshal Collateral or otherwise prepare the Collateral for sale and may specifically disclaim any warranties as to the Collateral, including those of title, merchantability and fitness for a particular purpose.

Following an Event of Default, Bank, at any time, at its option, may apply all of any net cash receipts from the Collateral (whether received on a sale of the Collateral or otherwise) to the payment, in

9

whole or in part, of principal of and/or interest on any or all of the Obligations, whether or not then due, allocating the same as it shall elect, making rebate of interest or discount to the extent required by law and so as not to make the rate of interest charged unlawful with respect to Grantor or Bank. If any Obligations shall be contingent, Bank may retain a sufficient amount of the net cash receipts from the Collateral as additional Collateral to cover the largest aggregate sum which may become due or owing thereunder with prospective interest, costs, expenses and attorneys' fees and shall not be charged with any interest with respect thereto. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all of the Obligations Grantor (including but not limited to Borrower) shall be liable of the deficiency and the fees of any attorneys employed by Bank to collect such deficiency.

6.    **Additional Security; Setoff**. Grantor hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments (i) to set off against, and to appropriate and apply to the payment of any of the Obligations (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any of the Collateral and all amounts owing by Bank to Grantor (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced), and (ii) pending any such action, to the extent necessary, to hold such amounts as Collateral to secure such Obligations and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposit so held as Bank, in its sole discretion, may elect. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of Bank, although Bank may enter such setoff on its books and records at a later time.

Without limitation of the foregoing, the term "Collateral" shall include, and Grantor hereby grants to Bank a lien on and security interest in, any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Grantor and maintained in an account at Bank, which may have a related account at a bank which is a member of the Federal Reserve System. Grantor authorizes Bank to serve as its bailee and agent with respect to the aforementioned book entry Treasury bills and other book entry securities and to take such action and to execute and deliver such documents on behalf of Grantor as Bank deems necessary or desirable in order to perfect Bank's security interest therein. Grantor hereby gives notice to Bank, in Bank's capacity as bailee and agent, of Bank's security interest in the aforementioned book entry Treasury bills and other book entry securities. Bank may at any time and from time to time, without notice, transfer into its own name or that of its nominee any of such Collateral of Grantor.

7.    **Subrogation**. If any of the Collateral is applied on account of any of the Obligations, Grantor shall not have any right of subrogation to Bank's right in any other Collateral held by Bank with respect to the Obligations or any right of contribution from Bank by reason thereof.

8.    **Preservation of Rights**. No delay or omission on Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Bank's action or inaction impair any such right or power. Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Bank may have hereunder or under other agreements, at law or in equity and any and all such rights and remedies may be pursued by Bank simultaneously, separately, or sequentially. Bank may proceed in any order against Grantor or any other obligor of, or any collateral securing, the Obligations.

9.    **Interpretation**. In this Agreement, unless Bank and Grantor otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the

10

word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Agreement; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in such Agreement are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any Person include that Person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender.  Section headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.  If this Agreement is executed by more than one party as Grantor, the obligations of such persons or entities will be joint and several.

   **10.**     **Notices**.  All notices, requests and demands which any party is required or may desire to give must be made in writing delivered to each party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and, with respect to any notice to Bank, such notice should be sent to the attention of: Tom Belli, with a copy of any notices pursuant to Section 3(h) to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending, with a copy to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen.  Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by other means, one day after transmission or shipment.  Without limiting the foregoing, first class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.  No notice to or demand on Grantor will entitle Grantor to any other or further notice or demand in the same, similar or other circumstance.

   **11.**     **Costs and Expenses**.  Grantor shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Agreement and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of the custody, care, collection, repair, storage, preparation for sale, actual or attempted disposition of, protection and preservation of the Collateral (including without limitation insurance premiums and sales commissions), (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under this Agreement or any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to this Agreement, or any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Grantor or any other person or entity.

12.     **Entire Agreement**.  This Agreement constitutes the entire agreement between Grantor and Bank with respect to the subject hereof and supersedes all prior negotiations, communications (written or oral), discussions and correspondence concerning the subject matter hereof.  Grantor and Bank agree that any inconsistency or discrepancy between the provisions of this Agreement and any other documentation evidencing the Obligations of Grantor to Bank and/or between Grantor and Bank, shall be resolved in the manner most favorable to Bank.

13.     **Severability**.  The provisions of this Agreement and each other Loan Document are severable and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction or any other provision of any of the Loan Documents in any jurisdiction.

14.     **Limitation of Liability**.  To the fullest extent permitted by applicable law, neither Grantor nor Bank shall assert, and each hereby waives any claim against the other, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Agreement, any other document evidencing or securing the Obligations, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof; provided however that the foregoing shall in no way limit the indemnification obligations of Grantor set forth in any Loan Document for any special, indirect, consequential or punitive damages against Bank in any way related to the Loan Documents or the Obligations in connection with any suit or proceeding brought by a party other than a Grantor.

15.     **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Agreement or consent to any departure by Grantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  Notwithstanding the foregoing, Bank may modify this Agreement or any other Loan Document for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Grantor (which may be sent by electronic mail).

16.     **No Waiver**.  No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

17.     **Successors and Assigns; Assignments**.  This Agreement and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Grantor and its legal representatives, successors and assigns; provided, however, that Grantor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder, whether in or to the Obligations, the Collateral or otherwise.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Grantor its business, or any Collateral.

18.     **Counterparts; Electronic Transmission**.  This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of

12

which, taken together, shall constitute one and the same Agreement. Delivery of any executed counterpart of this Agreement by electronic transmission shall be effective as delivery of a manually executed counterpart hereof. Grantor acknowledges that information and documents relating to this Agreement and the credit accommodations provided for herein may be transmitted through electronic means.

**19.    Patriot Act**.  Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Grantor, which information includes the name, address, tax identification number and other information regarding Grantor that will allow Bank to identify Grantor  in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

**20.    GOVERNING LAW.  THIS AGREEMENT WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION SECURED HEREUNDER WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY.  IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, GRANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT. NOTWITHSTANDING THE FOREGOING, THE LAWS OF THE JURISDICTION IN WHICH THE COLLATERAL IS LOCATED SHALL APPLY TO THE CREATION AND PERFECTION OF THE SECURITY INTERESTS THEREIN AND TO THE EXERCISE OF REMEDIES BY BANK THAT PERTAIN TO OR CONCERN SUCH COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FORECLOSURE OF ANY SECURITY INTERESTS AND LIENS GRANTED IN SUCH COLLATERAL.**

**21.    VENUE; JURISDICTION.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR GRANTOR ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA AND GRANTOR AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN GRANTOR AND BANK.  GRANTOR WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING BETWEEN BANK AND GRANTOR, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT.  GRANTOR DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON GRANTOR AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 10 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GRANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY GRANTOR AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF.  NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER**

13

MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GRANTOR IN ANY OTHER JURISDICTIONS.

22.  <u>WAIVER OF JURY TRIAL</u>.  GRANTOR (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT GRANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS AGREEMENT, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY COLLATERAL OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO GRANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY GRANTOR IN THIS PARAGRAPH, AND (ii) GRANTOR HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

23.  <u>JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY</u>.  IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GRANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, ET SEQ., ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, GRANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.  GRANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON.  GRANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GRANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GRANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

14

**Grantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.**

**Initials of authorized officer of each Grantor:**

| *Fc* | *Fc* | *Fc* |
|------|------|------|
| **Borrower** | **Balance** | **Moreno** |

    **24.**    **Indemnity**.  Grantor agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Grantor), in connection with or arising out of or relating to the matters referred to in this Agreement or the use of any advance with respect hereto, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by Grantor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Grantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct , as determined by a final and non-appealable decision of a court of competent jurisdiction.    The indemnity agreement contained in this Section shall survive the termination or revocation of this Agreement, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon.  Grantor may participate at its expense in the defense of any such action or claim.

    **25.**    **Further Assurances; Corrections of Defects**.  Grantor intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Agreement or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Grantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Agreement, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations secured hereby.

    **26.**    **Authorization**.  Solely with respect to any Grantor that is not Borrower (such non-Borrower Grantor being referred to in this Section 26 and Section 27 as a "**Guarantor**"), Guarantor hereby authorizes Bank, without notice or demand and without affecting Guarantor's liability hereunder, from time to time to: (a) change or extend the time, or manner, or payment of the Obligations; (b) make further advances under the Loan Documents or increase or decrease the principal amount evidenced ·thereby; (c) change any of the terms, covenants, conditions or provisions of any of the Loan Documents;

(d) transfer, assign or negotiate any of the Loan Documents; (e) take and hold additional security for the payment or the performance of the Obligations, and exchange, enforce, waive and release any such security; (f) release all or part of any security for the Obligations, including the Collateral, whether in accordance with any partial release provision now contained in the Loan Documents or otherwise as Bank may determine in its discretion; (g) apply the security for the Obligations, including the Collateral, to the payment of the Obligations and direct the order or manner of sale thereof as Bank may determine in its discretion; (h) proceed against Borrower or any guarantor of the Obligations without first foreclosing under any security for the Obligations, including the Collateral; (i) accept a conveyance of all or part of the security for the Obligations, including the Collateral, in partial satisfaction of the indebtedness due under the Obligations and proceed against Borrower or any guarantor for the balance then due thereunder; (j) accept one or more substitute properties to replace any portion of the security for the Obligations, including the Collateral; (k) discharge or release any parties liable under the Loan Documents; (l) accept or make compositions or other arrangements or file or refrain from filing a claim in any bankruptcy proceeding of or affecting Borrower or any other guarantor or pledgor or the property of any of them; or (m) credit payments in such manner and order of priority to principal, interest or other obligations as Bank may determine in its discretion.

27.    **Waivers**.  Guarantor hereby waives (a) any right to require Bank to (i) proceed against Borrower or any guarantor of the Obligations, (ii) proceed against or exhaust any security received from Borrower or any guarantor of the Obligations, or (iii) pursue any other remedy in Bank's power whatsoever; (b) any defense arising by reason of the application by Borrower of the proceeds of any borrowing; (c) any defense resulting from the absence, impairment or loss of any right of reimbursement, subrogation, contribution or other right or remedy against Borrower, any other guarantor of the Obligations or any security, whether resulting from an election by Bank to foreclose upon security by nonjudicial sale, or otherwise; (d) any setoff or counterclaim of Borrower or any defense which results from any disability or other defense of Borrower or the cessation or stay of enforcement from any cause whatsoever of the liability of Borrower (including, without limitation, the lack of validity or enforceability of any Loan Document); (e) any right to exoneration of sureties which would otherwise be applicable; (f) all presentments, diligence, demands for performance, notices of nonperformance, notices delivered under any Loan Document, protests, notice of dishonor, and notices of acceptance of this Agreement and of the existence, creation or incurring of new or additional obligations and notices of any public or private foreclosure sale; (g) any appraisement, valuation, stay, extension, moratorium redemption or similar law or similar rights for marshaling; (h) any right to be informed by Bank of the financial condition of Borrower or any  guarantor of the Obligations or any change therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the obligations, and Guarantor agrees that Guarantor has the ability and assumes the responsibility for keeping informed of the financial condition of Borrower and any other guarantors of the Obligations and of other circumstances affecting such nonpayment and nonperformance risks; (i) the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Agreement, and Guarantor agrees that the obligations of Guarantor shall not be affected by any circumstances, whether or not referred to in this Agreement, which might otherwise constitute a legal or equitable discharge of guarantors; (j)  the benefit of or right to assert any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof to the extent permitted by law, and Guarantor agrees that any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also operate to toll the statute of limitations as to Guarantor; (k) Guarantor's or other surety's rights of subrogation, reimbursement, indemnification and contribution and other rights, benefits and defenses, if any, otherwise available to Guarantor pursuant to applicable law, including, without limitation, the rights, benefits or defenses set forth in California Civil Code Sections 2787 to 2855, inclusive, 2899 or 3433, and any rights, benefits or defenses resulting from alteration, impairment or suspension in any respect or by any means of any of Borrower's obligations under the Loan Documents or any of Bank's rights or remedies under the Loan Documents without Guarantor's prior consent; (l)  the right, if any, to the benefit

16

of, or to direct the application of, any security held by Bank, including, without limitation, the security for the Obligations, including the Collateral, and, until all the indebtedness and obligations, payment and performance of which are hereby guarantied, have been paid and performed in full, any right to enforce any remedy which Bank now has or hereafter may have against Borrower, and any right to participate in any security now or hereafter held by Bank; and (m) the right to require Bank to proceed against Borrower, to proceed against the security for the Obligations, including the Collateral, or to proceed against any other security now or hereafter held by Bank or to pursue any other remedy in Bank's power. Without limiting the generality of any of the foregoing, Guarantor hereby waives any right to be reimbursed by Borrower or any guarantor of the Obligations for any payment of the Obligations made directly or indirectly by Guarantor or from any property of Guarantor, whether arising by way of any statutory, contractual or other right of subrogation, contribution, indemnification or otherwise until Bank is repaid in full by Borrower, any guarantor or Guarantor.

Further, in addition to all the other waivers agreed to and made by Guarantor as set forth in this Agreement, by executing this Agreement, Guarantor freely, irrevocably and unconditionally waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things:

(a)     Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

(b)     If Bank forecloses on any real property collateral pledged by Borrower: (i) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(c)     Guarantor waives all rights and defenses arising out of an election of remedies by Bank, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH HEREIN, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419 AND 3605, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

**28.     Termination.** (a) This Agreement, the Lien in favor of Bank created hereunder and all other security interests granted hereby shall automatically terminate with respect to all Obligations and all rights to the Collateral shall automatically revert to Grantor when (i) all commitments to lend under the Letter Agreement and the Notes shall have expired or been terminated, (ii) the principal of and interest on the Line of Credit and the Term Loan and all fees and other Obligations in connection therewith shall

17

have been indefeasibly paid in full in cash, (iii) all other Obligations of any kind owing to Bank shall have been cash collateralized or otherwise secured or supported in a manner satisfactory to Bank in its reasonable discretion, and (iv) all unreimbursed amounts shall have been indefeasibly paid in full in cash, provided, however, that in connection with the termination of this Agreement, Bank may require such indemnities as it shall reasonably deem necessary or appropriate to protect Bank against (x) loss on account of credits previously applied to the Obligations that may subsequently be reversed or revoked, (y) any obligations that may thereafter arise with respect to obligations in respect of cash management services or other bank products and (z) any Obligations that may thereafter arise under Section 11 hereof or Section 17 of the Letter Agreement.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

4827-1571-9840v3/104763-0009

**Grantor acknowledges that he, she or it has read and understood all provisions of this Agreement, including the waiver of jury trial, and has been advised by counsel as necessary and appropriate.**

**IN WITNESS WHEREOF**, Grantor has executed this Security Agreement as of the date first written above.

GRANTOR:

**BETTER 4 YOU BREAKFAST, INC.**

By:  _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**BALANCE FOODS, LLC**

**By:  Better 4 You Breakfast, Inc.,**
its sole member

By:  _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**MORENO BROS. DISTRIBUTING, LLC**

By:  _____
Name: Fernando Castillo
Title: Manager

*Signature Page to Unlimited Guaranty*

<u>Exhibit A</u>

The Information Certificate of even date herewith delivered by Borrower to Bank is hereby incorporated by reference as if set forth herein.

A-1

**EXHIBIT B-5**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**19-7728840925**

**08/19/2019 15:50**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

```
COGENCY GLOBAL INC
1325 J Street, Suite 1550
Sacramento, CA 95814
P6-75981393  LIIZDZ81-5
```

81044120006   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| BETTER 4 YOU BREAKFAST, INC. | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5743 SMITHWAY ST., SUITE 103 | COMMERCE | CA | 90040 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| BANK LEUMI USA | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 350 MADISON AVENUE | NEW YORK | NY | 10017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor of every kind and nature, whether now owned of hereafter acquired and wherever located, and all products and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
| --- | --- | --- | --- | --- |
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
To be filed with the California Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

### UCC Filing Acknowledgement

08/22/2019

Page 1 of 1

COGENCY GLOBAL INC.
1325 J STREET
SUITE 1550
SACRAMENTO CA 95814-3688

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | **$16.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**    File Date: **08/19/2019**    File Time: **15:50**

Filing Number: **19-7728840925**    Lapse Date: **08/19/2024**

Debtor(s):
ORGANIZATION    **BETTER 4 YOU BREAKFAST, INC.**

**5743 SMITHWAY ST., SUITE 103 COMMERCE CA USA 90040**

Secured Party(ies):
ORGANIZATION    **BANK LEUMI USA**

**350 MADISON AVENUE NEW YORK NY USA 10017**

Filing by  the Secretary of State is not conclusive proof  that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information  on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-3516 · HTTPS //UCCCONNECT.SOS.CA.GOV

PROGRAMS  ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM, MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

000119

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**19-7728840804**

**08/19/2019 15:50**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

81044120005    UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

COGENCY GLOBAL INC
1325 J Street, Suite 1550
Sacramento, CA 95814
P6-75981393  L1120281-4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BALANCE FOODS, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5743 SMITHWAY ST., SUITE 103 | COMMERCE | CA | 90040 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BANK LEUMI USA | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 350 MADISON AVENUE | NEW YORK | NY | 10017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor of every kind and nature, whether now owned of hereafter acquired and wherever located, and all products and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
To be filed with the California Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

000120

**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

### UCC Filing Acknowledgement

08/22/2019

Page 1 of 1

COGENCY GLOBAL INC.
1325 J STREET
SUITE 1550
SACRAMENTO CA 95814-3688

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | **$16.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**          File Date: **08/19/2019**          File Time: **15:50**

Filing Number: **19-7728840804**          Lapse Date: **08/19/2024**

Debtor(s):
ORGANIZATION          **BALANCE FOODS, LLC**

**5743 SMITHWAY ST., SUITE 103 COMMERCE CA USA 90040**

Secured Party(ies):
ORGANIZATION          **BANK LEUMI USA**

**350 MADISON AVENUE NEW YORK NY USA 10017**

Filing by   the Secretary of State is not conclusive proof   that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information   on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL.  · SACRAMENTO, CA 95814  · PO BOX 942835  · SACRAMENTO, CA 94235-0001  · (916) 653-3516  · HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS   ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

000121

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**19-7728841057**

**08/19/2019 15:50**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

81044120007   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

COGENCY GLOBAL INC
1325 J Street, Suite 1550
Sacramento, CA 95814
P6-75981393  L1120281-6

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MORENO BROS. DISTRIBUTING, LLC | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5743 SMITHWAY ST., SUITE 103 | COMMERCE | CA | 90040 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BANK LEUMI USA | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 350 MADISON AVENUE | NEW YORK | NY | 10017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor of every kind and nature, whether now owned of hereafter acquired and wherever located, and all products and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
To be filed with the California Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

000122

**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

## UCC Filing Acknowledgement

08/22/2019

Page 1 of 1

COGENCY GLOBAL INC.
1325 J STREET
SUITE 1550
SACRAMENTO CA 95814-3688

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | **$16.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**       File Date: **08/19/2019**       File Time: **15:50**

Filing Number: **19-7728841057**       Lapse Date: **08/19/2024**

Debtor(s):
ORGANIZATION       **MORENO BROS. DISTRIBUTING, LLC**

**5743 SMITHWAY ST., SUITE 103 COMMERCE CA USA 90040**

Secured Party(ies):
ORGANIZATION       **BANK LEUMI USA**

**350 MADISON AVENUE NEW YORK NY USA 10017**

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-3516 · HTTPS //UCCCONNECT.SOS.CA.GOV

PROGRAMS   ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

**EXHIBIT B-6**



# UNLIMITED GUARANTY

**THIS UNLIMITED GUARANTY** (this "**Guaranty**") is made and entered into as of this 16th day of August, 2019, by Balance Foods, LLC, a California limited liability company ("**Balance**"), Moreno Bros. Distributing, LLC, a California limited liability company ("**Moreno**") and Capital Stone Equity Fund I LP, a Delaware limited partnership ("**Capital Stone**" and together with Balance and Moreno, individually and collectively, jointly and severally, the "**Guarantor**") and delivered to **BANK LEUMI USA ("Bank")**, with an address at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, in consideration of Bank previously, now or hereafter (a) extending or agreeing to extend any credit or other financial accommodation to Better 4 You Breakfast, Inc., a California corporation ("**Borrower**"), or (b) agreeing to any direct or indirect extension, renewal, replacement or modification of, or waiver or forbearance with respect to any such credit or other financial accommodation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. The term "**Bank**" as used throughout this instrument shall be deemed to include BANK LEUMI USA, all its subsidiaries and all its agencies, branches and departments wherever located.

1.      Guaranteed Obligations.

        (a)      Guarantor irrevocably, unconditionally and absolutely guarantees to Bank, and becomes surety for the prompt performance and payment when due, whether by acceleration, demand or otherwise, of (i) any and all Obligations (hereafter defined) of Borrower to Bank, in the aggregate at any one time outstanding plus all interest thereon, and (ii) all attorneys' fees, costs and expenses of collection incurred by Bank in enforcing any of such Obligations and/or this Guaranty. This is a guaranty of payment and not of collection. Bank shall not be obligated to make any request or demand upon or to pursue any of its rights against Borrower or any other person who may be liable for the payment of the Obligations, or to pursue any collateral security therefor, as a condition of Guarantor's liability hereunder. If Borrower fails to pay when due or otherwise defaults under any Obligations, Guarantor will pay such Obligations to Bank.

        The term "**Obligations**" shall the meaning given such term in that certain letter agreement dated as of the date hereof among Guarantor, Bank, and the other parties thereto (the "**Letter Agreement**"; capitalized terms used herein but not otherwise defined herein shall have the meaning set forth in the Letter Agreement).

        (b)      Notwithstanding anything to the contrary contained herein, the definition of "Obligations" shall specifically exclude any and all Excluded Swap Obligations. The foregoing limitation of the definition of Obligations shall be deemed applicable only to the obligations of Guarantor (or solely any particular Guarantor(s) if there is more than one Guarantor) under the particular Swap (or Swaps), or, if arising under a master agreement governing more than one Swap, the portion thereof that constitute Excluded Swap Obligations. As used herein, (i) "**Excluded Swap Obligations**" means, with respect to each Guarantor, any obligation to pay or perform under any agreement, contract or transaction that constitutes a Swap if, and to the extent that, all or any portion of this Guaranty that relates to the obligations under such Swap is or becomes illegal as to such Guarantor under the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute (the "**CEA**"), or any rule, regulation, or order of the Commodity Futures Trading Commission (the "**CFTC**"), by virtue of such Guarantor's failure for any reason to qualify as an "eligible contract participant" (as defined in the CEA and regulations promulgated thereunder) on the Eligibility Date for such Swap; (ii) "**Eligibility Date**" means the date on which this Guaranty becomes effective with respect to the particular Swap (for the avoidance of doubt, the Eligibility Date shall be the date of the execution

of the particular Swap if this Guaranty is then in effect, and otherwise it shall be the date of execution and delivery of this Guaranty); and (iii) "**Swap**" means any "swap" as defined in Section 1a(47) of the CEA and regulations thereunder between Borrower and Bank, other than (A) a swap entered into on, or subject to the rules of, a board of trade designated as a contract market under Section 5 of the CEA, or (B) a commodity option entered into pursuant to CFTC Regulation 32.3(a).

2.      **Nature of Guaranty; Revocation**.   This Guaranty is a continuing, absolute and unconditional guaranty of payment and not of collection, and all Obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. Guarantor acknowledges that this Guaranty and Guarantor's obligations under this Guaranty shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any kind or nature whatsoever which might otherwise constitute a defense available to Borrower with respect to any of its Obligations under any of the Loan Documents, to Guarantor with respect to this Guaranty or the obligations of Guarantor hereunder, or to any other person or party with respect to any other obligations or agreements relating to Borrower or Borrower's Obligations to Bank, including, without limitation, fraud in the inducement, failure of consideration, promissory estoppel, expiration of the statute of limitations or laches. The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other party, or whether any of Borrower or any other person is joined in any such action or actions.  All rights, powers and remedies hereunder shall apply to all past, present and future liabilities of Borrower to Bank, including arising under successive transactions continuing, increasing or decreasing any such Obligations or creating new Obligations.  This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at any time or from time to time.  Except as otherwise expressly set forth herein, as to each Guarantor, this Guaranty shall continue until written notice of revocation signed by such Guarantor, or until written notice of the death of such Guarantor (which shall be deemed a notice of revocation hereunder) shall in each case have been actually received by Bank, notwithstanding a revocation by, or the death of, or complete or partial release for any cause, of any one or more of the remainder of the Guarantor(s), or of Borrower or of anyone liable in any manner for the Obligations hereby guaranteed or for the Obligations (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase, decrease or change in personnel, management, shareholders or members of any one or more of the Guarantor(s) which may be corporations, partnerships or other entities.  Except as otherwise expressly set forth herein, written notice as provided herein shall be the only means of revocation or termination of this Guaranty, notwithstanding the fact that for periods of time there may be no outstanding Obligations of Borrower.  No revocation or termination hereof shall affect in any manner the effectiveness and applicability of this Guaranty, or any rights of Bank or the obligations of Guarantor hereunder, with respect to (a) Obligations of Borrower which shall have been created, contracted, assumed or incurred prior to receipt by Bank of written notice of such revocation or termination, (b) all extensions, renewals or modifications of any of the Obligations referred to in (a) above made after receipt by Bank of such written notice or (c) Obligations of Borrower which shall have been created, contracted, assumed or incurred after receipt by Bank of such written notice pursuant to any contract entered into by Bank prior to its receipt of such notice or which are otherwise related to or connected with Obligations of Borrower theretofore arising or transactions theretofore entered into.

Notwithstanding the foregoing, this Guaranty shall automatically terminate with respect to all Obligations when (i) all commitments to lend under the Letter Agreement and the Notes shall have expired or been terminated, (ii) the principal of and interest on the Line of Credit and the Term Loan and all fees and other Obligations in connection therewith shall have been

2

4840-1359-4784v3/104763-0009

indefeasibly paid in full in cash, (iii) all other Obligations of any kind owing to Bank shall have been cash collateralized or otherwise secured or supported in a manner satisfactory to Bank in its reasonable discretion, and (iv) all unreimbursed amounts shall have been indefeasibly paid in full in cash, provided, however, that in connection with the termination of this Agreement, Bank may require such indemnities as it shall reasonably deem necessary or appropriate to protect Bank against (x) loss on account of credits previously applied to the Obligations that may subsequently be reversed or revoked, (y) any obligations that may thereafter arise with respect to obligations in respect of cash management services or other bank products and (z) any Obligations that may thereafter arise under Section 17 of the Letter Agreement.

This Guaranty shall not terminate, supersede, cancel, diminish or modify any prior Guaranty or guaranties given by Guarantor to Bank with respect to Obligations of Borrower unless expressly provided herein. All Obligations guaranteed by Guarantor and all rights of Bank, herein and under such prior Guaranty or guaranties, are cumulative and Bank may exercise its rights singly or collectively, and sequentially or concurrently.

Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor is joined in any such action or actions.

This Guaranty sets forth the entire agreement and understanding of Bank and Guarantor, and Guarantor acknowledges and represents that there exist and have been made absolutely no oral or other agreements, understandings, representations or warranties of any kind or nature (including, without limitation, any agreements or representations concerning renewal, continuation or increase of any of Borrower's Obligations; any obligation of Bank with respect to any other guarantor of, or any collateral securing, any of Borrower's Obligations; or any limitation or condition whatsoever to Bank's rights and Guarantor's obligations hereunder) with respect to this Guaranty or the obligations of Guarantor hereunder, except as specifically and expressly set forth in this Guaranty.

3.    **Authorizations to Bank; Waivers**. Bank may at any time and from time to time (whether or not after revocation or termination of this Guaranty), in its sole discretion and without the consent of, or notice to, Guarantor, without incurring responsibility to Guarantor, without impairing or releasing the obligations of Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

(1)    change the manner, place or terms of payment, or interest rates on, and/or change or extend the time of payment of, renew or alter, any Obligation of Borrower, any security therefor, or any Obligation incurred directly or indirectly in respect thereof, and the Guaranty herein made shall apply to the Obligations of Borrower as so changed, extended, renewed or altered;

(2)    take and hold, and sell, exchange, release, surrender, substitute, realize upon or otherwise deal with in any manner and in any order, and direct the order or manner of sale thereof (including without limitation by non-judicial sale pursuant to governing security documents and applicable law), any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Obligations hereby guaranteed or any other obligations (including any of

3

those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

       (3)    exercise or refrain from exercising any rights against Borrower or others (including Guarantor), or any security or otherwise act or refrain from acting;

       (4)    settle, compromise, discharge or release any Obligation hereby guaranteed, any security therefor or any other obligation (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of Borrower to creditors of Borrower other than Bank and Guarantor;

       (5)    release or substitute any one or more of the endorsers or other guarantors of the Obligations, or any portion thereof, or any other party thereto;

       (6)    apply any sums by whomsoever paid or howsoever realized to any Obligations of Borrower to Bank, in such order as Bank shall determine (and Guarantor hereby waives any provision of law regarding applications of payments which specifies otherwise), regardless of what Obligations of Borrower remain unpaid; and

       (7)    exercise any right or remedy Bank may have with respect to the Obligations or any security for the Obligations, this Guaranty or any other guaranty.

No invalidity, irregularity or unenforceability of all or any part of the Obligations hereby guaranteed or of any security therefor shall affect, impair or be a defense to this Guaranty, and this Guaranty is a primary obligation of Guarantor.

Guarantor waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such Obligations, suit or taking other action by Bank against, and any other notice to, any party liable thereon (including Guarantor).

Guarantor waives any right to require Bank to proceed against Borrower or any other person, or to marshal assets or proceed against or exhaust any collateral security for the Obligations, or to give notice of the terms, time and place of any public or private sale or other disposition of any such collateral security, or to take any other action or pursue any other remedy in Bank's power.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and Guarantor agrees that any payment of any Indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder.

Guarantor absolutely, unconditionally and irrevocably waives any and all rights to assert any defense, setoff, counterclaim or cross-claim of any kind or nature whatsoever with respect to this Guaranty, or the obligations of Guarantor under this Guaranty, or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty, or otherwise with respect to the Obligations of Borrower, in any action or proceeding brought by Bank (or any subsequent holder of this Guaranty) to collect the liabilities of Borrower or any portion thereof, or to enforce the obligations of Guarantor under this Guaranty.

4

**4.**    Additional Waivers.

(a)    Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Until the Obligations are indefeasibly paid in full, Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(b)    To require Bank to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Obligations, disclose information with respect to the Obligations, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(c)    That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(d)    To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer other than the indefeasible payment in full of the Obligations;

(e)    To be discharged if any of the terms, conditions or provisions of the Obligations are altered in any respect;

(f)    To be discharged upon acceptance by Bank of anything in partial satisfaction of the Obligations, and/or if Bank designates the portion of the Obligations to be satisfied;

(g)    To be discharged upon any modification of the Obligations or the release by Bank of Borrower or any other guarantor, endorser or co-signer;

(h)    To require Bank to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Bank's power;

(i)    To receive the benefit of or participate in any and all security for repayment and/or performance of the Obligations;

(j)    To have any security for the Obligations first applied to satisfy or discharge the Obligations;

(k)    That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(l)    To be discharged based upon any failure by Bank to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Obligations, or if

5

recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Bank realizes upon any collateral;

(m)     To be discharged due to the release or discharge of any collateral for any Obligations or guaranty, or relating to the validity, value or enforceability of any collateral;

(n)     Guarantor also waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things: (1) Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) if Bank forecloses on any real property collateral pledged by Borrower: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure; and

(o)     Guarantor also waives all rights and defenses arising out of an election of remedies by Bank, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419 AND 3605, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

**5.     Security; Setoff**. This Guaranty is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Guarantor has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Guarantor to Bank. Bank at all times and from time to time shall have the right to require Guarantor to deliver to Bank as security for the Obligations of Guarantor hereunder, collateral security, original or additional, satisfactory to Bank.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Guarantor hereunder.

**6.     Representations and Warranties; Covenants**. Guarantor hereby represents and warrants to Bank that: (a) this Guaranty and all other documents or agreements at any time hereafter

6

delivered by Guarantor to Bank in connection herewith have been duly authorized, and upon their execution and delivery to Bank will constitute legal, valid and binding agreements and obligations of Guarantor, enforceable in accordance with their respective terms; (b) the consummation of the transactions contemplated by this Guaranty and the fulfillment of the terms hereof will not (i) conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time or both) a default under Guarantor's organizational documents or any contractual obligation of Guarantor; (ii) result in the creation or imposition of any lien or other encumbrance upon any of Guarantor's properties pursuant to the terms of any such contractual obligation or (iii) violate any law, rule or regulation applicable to Guarantor; (c) this Guaranty is executed at Borrower's request in order to induce Bank to extend or maintain the Obligations to Borrower; (d) Bank has made no representation to Guarantor as to the creditworthiness of Borrower or as to the nature or sufficiency of any collateral securing the Obligations or any part thereof; and (e) Guarantor has established adequate means of obtaining from Borrower on a continuing basis financial and other information pertaining to Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that Bank shall have no obligation to disclose to Guarantor any information or material about any of the Borrowers which is acquired by Bank in any manner.

7. **Information**. So long as this Guaranty shall remain in effect, and without limitation of any provision of any other document evidencing or securing the Obligations, Guarantor agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Guarantor as Bank may reasonably request from time to time, and (b) if applicable, at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from his, her or its records and books of account, visit his, her or its properties and discuss his, her or its affairs, finances and accounts with any of his, her or its officers, directors or independent accountants.

8. **Enforceability of Obligations**. No modification, limitation or discharge of the Obligations arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law will affect, modify, limit or discharge Guarantor's liability in any manner whatsoever and this Guaranty will remain and continue in full force and effect and will be enforceable against Guarantor to the same extent and with the same force and effect as if any such proceeding had not been instituted. Guarantor waives all rights and benefits which might accrue to it by reason of any such proceeding and will be liable to the full extent hereunder, irrespective of any modification, limitation or discharge of the liability of Borrower that may result from any such proceeding.

9. **Events of Default; Remedies**. The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an "**Event of Default**" under this Guaranty.

Upon the happening of any Event of Default, and in any such event, and at any time thereafter, Bank may, without notice to Borrower or Guarantor, make the Obligations of Borrower to Bank, whether or not then due, immediately due to and payable hereunder as to Guarantor, and terminate any commitment or obligation to make loan advances, issue letters of credit or extend additional credit accommodations to Borrower, and Bank shall be entitled to enforce the obligations of Guarantor hereunder.

Further, upon the happening of an Event of Default, Bank may immediately or at any time or times thereafter without demand or notice to Borrower or Guarantor and without advertisement, all of

7

which are hereby expressly waived, sell, resell, assign and deliver all or part of any collateral security for the Obligations, at public or private sale, for cash, upon credit or for future delivery, and in connection therewith may grant options. Upon each such sale Bank may purchase the whole or any part of such collateral security, free from any right of redemption, which is hereby waived and released.

In the case of each such sale, or of any proceedings to collect any obligations of Guarantor, Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery, including reasonable attorneys' fees, and after deducting such costs and expenses from the proceeds of sale or collection, Bank may apply any residue to pay any obligations of Guarantor, who shall continue to be liable for any deficiency, with interest.

10.    **Subordination**.  Without limiting Bank's rights under any other agreement, upon the date notice of revocation or termination of this Guaranty is received, or upon the occurrence of an Event of Default hereunder or under any of the Loan Documents, any obligations owed by Borrower to Guarantor in connection with any extension of credit or financial accommodation by Guarantor to or for the account of Borrower are hereby subordinated to the Obligations of Borrower, and any amounts received by Guarantor in connection therewith shall be paid over to Bank on account of the Obligations of Borrower without reducing or affecting in any manner the liability of Guarantor under other provisions of this Guaranty.

11.    **Waiver of Subrogation and Related Rights**.  Guarantor shall not exercise, and hereby expressly waives, any right of subrogation against any Credit Party which it may otherwise have at any time as a result of this Guaranty (whether contractual, under Section 509 of the Bankruptcy Code, or otherwise) until all of the Obligations of Borrower and the other Credit Parties have been indefeasibly paid in full.  If any amount is paid to Guarantor on account of subrogation rights Guarantor may otherwise have as a result of this Guaranty, when the Obligations of Borrower shall not have been paid in full, the amount received by Guarantor shall be held in trust for the benefit of Bank and shall be promptly paid to Bank to be credited and applied to the Obligations of Borrower.  Further, until the Obligations are indefeasibly paid in full and all commitments to lend under the Notes and the Letter Agreement are terminated, Guarantor waives all of Guarantor's rights of reimbursement, indemnification and contribution.

12.    **Repayment or Recovery from Bank**.  If claim is ever made upon Bank for repayment, return, restoration, rescission or other recovery of any amount or amounts received by Bank in payment or on account of any of the Obligations of Borrower or any other obligations of Guarantor hereunder and Bank repays all or part of said amount: (a) because such payment or application of proceeds is or may be avoided, rescinded, invalidated, declared fraudulent, set aside or determined to be void or voidable as a preferential transfer, fraudulent conveyance, impermissible setoff or a diversion of trust funds; or (b) for any other reason, including (without limitation) by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over Bank or any of Bank's assets or (ii) any settlement or compromise of any such claim effected by Bank with any such claimant (including Borrower), then and in such event Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon Guarantor, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of Borrower, and Guarantor shall be and remain liable to Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Bank.  Guarantor hereby agrees to indemnify and to reimburse and hold Bank harmless for the amount so repaid and for all other claims, actions, suits, proceedings, liabilities, losses, costs and expenses of every kind (including, without limitation, the disbursements, expenses and fees of Bank's attorneys) that may be imposed upon, incurred by or asserted against Bank (i) in connection with defending any such claim for repayment and collecting such amount from Guarantor or (ii) otherwise

8

arising out of or related directly or indirectly to this Guaranty (including, without limitation, any action, suit or proceeding between Guarantor and Bank, whether on this Guaranty or otherwise). The provisions of this paragraph shall survive the termination of this Guaranty, and any satisfaction and discharge of Borrower by virtue of any payment or court order or any state or federal law.

**13.     Preservation of Rights**. No delay or omission on Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Bank's action or inaction impair any such right or power. Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Bank may have under any other agreements, at law or in equity. Bank may proceed in any order against Borrower, Guarantor or any other obligor of, or any collateral securing, the Obligations.

**14.     Nature of Guarantor's Obligations**.   Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

**15.     Prohibited Person Compliance**. Guarantor warrants, represents and covenants that neither Guarantor nor any of its affiliates is or will be a person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224 or (d) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Guarantor covenants and agrees that neither Guarantor nor any of its affiliates will knowingly (i) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Guarantor further covenants and agrees to deliver (from time to time) to Bank any such certification or other evidence as may be requested by Bank in its sole and absolute discretion, confirming each such representation.

**16.     Interpretation**. In this Guaranty, unless Bank and Guarantor otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Guaranty; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in this Guaranty are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other

9

subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any Person include that Person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Guaranty are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose. If this Guaranty is executed by more than one party as Guarantor, or if separate guaranties of Borrower's Obligations to Bank are executed by other parties, the obligations of all such persons or entities will be joint and several.

17.    **Notices**.  All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Guaranty must be in writing delivered to each such other party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and with respect to any notice to Bank, a copy to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending, with a copy to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment.  Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.  No notice to or demand on Guarantor will entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

18.    **Costs and Expenses**.  Guarantor shall reimburse Bank immediately upon demand the full amount of all reasonable payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Guaranty and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of protection and preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under this Guaranty, and (c) the prosecution or defense of any action in any way related to the Guaranty, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Guarantor or any other person or entity.

19.    **Entire Agreement**.  This Guaranty constitutes the entire agreement between Guarantor and Bank with respect to the subject hereof and supersedes all prior negotiations, communications and agreements (written or oral), discussions and correspondence concerning the subject matter hereof. Guarantor and Bank agree that any inconsistency or discrepancy between the provisions of this Guaranty and any other documentation evidencing the Obligations of Guarantor to Bank shall be resolved in the manner most favorable to Bank.

20.    **Severability; Waivers**.  The provisions of this Guaranty are severable and if any waiver or other provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction.  Without limiting the foregoing, Guarantor hereby warrants and agrees that each of the

10

waivers set forth herein is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, such waivers are reasonable and not contrary to public policy or law.

**21.**     Limitation of Liability and Limitation of Guaranty.

(a)     To the fullest extent permitted by applicable law, neither Guarantor nor Bank shall assert, and hereby waives any claim against the other, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Guaranty, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof; provided however that the foregoing shall in no way limit the indemnification obligations of Guarantor set forth in any Loan Document for any special, indirect, consequential or punitive damages against Bank in any way related to the Loan Documents or the Obligations in connection with any suit or proceeding brought by a third party.

(b)     Any term or provision of this Guaranty to the contrary notwithstanding, the maximum aggregate amount for which any Guarantor shall be liable hereunder shall not exceed the maximum amount for which such Guarantor can be liable without rendering this Guaranty or any other Loan Document, as it relates to such Guarantor, subject to avoidance under applicable laws relating to fraudulent conveyance or fraudulent transfer (including but not limited to the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) (collectively, "**Fraudulent Transfer Laws**").    Any analysis of the provisions of this Guaranty for purposes of Fraudulent Transfer Laws shall take into account the right of contribution established in Section 21(c) and, for purposes of such analysis, give effect to any discharge of intercompany debt as a result of any payment made under this Guaranty.

(c)     To the extent that any Guarantor shall be required hereunder to pay any portion of any guaranteed Obligation exceeding the greater of (i) the amount of the value actually received by such Guarantor and its subsidiaries from the advances under the Letter Agreement and the other Obligations and (ii) the amount such Guarantor would otherwise have paid if such Guarantor had paid the aggregate amount of the guaranteed Obligations (excluding the amount thereof repaid by Borrower) in the same proportion as such Guarantor's net worth on the date enforcement is sought hereunder bears to the aggregate net worth of all the guarantors of the Obligations on such date, then such Guarantor shall be reimbursed by such other guarantors for the amount of such excess, pro rata, based on the respective net worth of such other guarantors on such date.

11

22.     **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Guaranty for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Guarantor (which may be sent by electronic mail).

23.     **No Waiver; Remedies**.  No failure on the part of Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

24.     **Successors and Assigns; Assignments**.  This Guaranty and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Guarantor and its legal representatives, successors and assigns; provided, however, that Guarantor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole and absolute discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Guarantor, its business or any collateral security provided in connection herewith.

25.     **Counterparts; Electronic Transmission**.  This Guaranty may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Guaranty.  Delivery of any executed counterpart of this Guaranty by electronic transmission shall be effective as delivery of a manually executed counterpart hereof.  Guarantor acknowledges that information and documents relating to this Guaranty and the credit accommodations provided for herein may be transmitted through electronic means.

26.     **Patriot Act**.  Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank may be required to obtain, verify and record information that identifies Guarantor, which information includes the name, address, tax identification number and other information regarding Guarantor that will allow Bank to identify Guarantor in accordance with the Patriot Act.  In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

27.     GOVERNING LAW.  THIS GUARANTY WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION HEREUNDER WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY.  IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF

12

THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY.  NO REFERENCE TO ANY PROVISION OF ANY OTHER STATE'S LAWS WHICH MAY APPEAR HEREIN SHALL BE DEEMED TO SUPERSEDE THE CHOICE OF LAW SET FORTH IN THIS SECTION.

      **28.**    <u>VENUE; JURISDICTION</u>.    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND GUARANTOR AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION, OR PROCEEDING BETWEEN GUARANTOR AND BANK. GUARANTOR FURTHER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, BETWEEN GUARANTOR AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. GUARANTOR DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON GUARANTOR AT ITS NOTICE ADDRESS AS SET FORTH IN <u>SECTION 17</u> HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY GUARANTOR AND SHALL CONSTITUTE "PERSONAL SERVICE" THEREOF.  NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GUARANTOR IN ANY OTHER JURISDICTIONS.

      **29.**    <u>WAIVER OF JURY TRIAL</u>.    GUARANTOR (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT GUARANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS GUARANTY, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS GUARANTY, ANY OF THE OBLIGATIONS, ANY COLLATERAL OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO GUARANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY GUARANTOR IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

      **30.**    <u>JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY</u>.    IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.*, ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST

13

EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN.   GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

**Guarantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.**

**Initials of authorized officer of each Guarantor:**

| _____ | _____ | _____ |
|---|---|---|
| **Capital Stone** | **Balance** | **Moreno** |

*See next pg for initials.*

14

4840-1359-4784v3/104763-0009

000138



| Capital Stone | Balance | Moreno |
| --- | --- | --- |

**31.** **Indemnity**. Guarantor agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Guarantor), whether in connection with or arising out of or relating to (a) the matters referred to in this Guaranty or the use of any advance with respect hereto, (b) any breach of a representation, warranty or covenant by Guarantor or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Guarantor; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination or revocation of this Guaranty, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Guarantor may participate at its expense in the defense of any such action or claim.

**32.** **Further Assurances; Corrections of Defects**. Guarantor, intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Guaranty or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Guarantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Guaranty, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations.

**33.** **Equal Credit Opportunity Act**. If Guarantor is not an "applicant for credit" under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("**ECOA**"), Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

14

000139

**31.    Indemnity**.  Guarantor agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Guarantor), whether in connection with or arising out of or relating to (a) the matters referred to in this Guaranty or the use of any advance with respect hereto, (b) any breach of a representation, warranty or covenant by Guarantor or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction.  The indemnity agreement contained in this Section shall survive the termination or revocation of this Guaranty, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon.  Guarantor may participate at its expense in the defense of any such action or claim.

**32.    Further Assurances; Corrections of Defects**.  Guarantor, intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Guaranty or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Guarantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Guaranty, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations.

**33.    Equal Credit Opportunity Act**.  If Guarantor is not an "applicant for credit" under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("**ECOA**"), Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

15

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the date first written above.

GUARANTOR:

**BALANCE FOODS, LLC**

**By:  Better 4 You Breakfast, Inc.,**
its sole member

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**MORENO BROS. DISTRIBUTING, LLC**

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**CAPITAL STONE EQUITY FUND I LP**

**By: RDS Ventures, LLC**
its general partner

By: _____
Name: Robert Douglas Spiro, Jr.
Title: Manager

*Signature Page to Unlimited Guaranty*

000141

# EXHIBIT B-7



# LIMITED GUARANTY

**THIS LIMITED GUARANTY** (this "**Guaranty**") is made and entered into as of this 16th day of August, 2019, by Robert Douglas Spiro, Jr., an individual residing at 3951 Medford Street, Los Angeles, California 90063 ("**Spiro**") and by the Spiro Revocable Family Trust (the "**Trust**", and jointly and severally with Spiro, collectively, the "**Guarantor**"), and delivered to **BANK LEUMI USA** ("**Bank**"), with an address at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, in consideration of Bank previously, now or hereafter (a) extending or agreeing to extend any credit or other financial accommodation to Better 4 You Breakfast, Inc. ("**Borrower**"), or (b) agreeing to any direct or indirect extension, renewal, replacement or modification of, or waiver or forbearance with respect to any such credit or other financial accommodation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. The term "**Bank**" as used throughout this instrument shall be deemed to include BANK LEUMI USA, all its subsidiaries and all its agencies, branches and departments wherever located.

1.    **Guaranteed Obligations**.

(a)    Guarantor irrevocably, unconditionally and absolutely guarantees to Bank, and becomes surety for the prompt performance and payment when due, whether by acceleration, demand or otherwise, of (i) any and all Obligations (hereafter defined) of Borrower to Bank, in the aggregate at any one time outstanding plus all interest thereon; provided, however, that Guarantor's liability under this clause (i) shall not exceed $5,000,000. This is a guaranty of payment and not of collection. Bank shall not be obligated to make any request or demand upon or to pursue any of its rights against Borrower or any other person who may be liable for the payment of the Obligations, or to pursue any collateral security therefor, as a condition of Guarantor's liability hereunder. If Borrower fails to pay when due or otherwise defaults under any Obligations, Guarantor will pay such Obligations to Bank.

Until the Obligations are indefeasibly paid in full, Guarantor's liability hereunder shall not be reduced in any manner whatsoever by any amounts which Bank may receive as a result of payments made by or on behalf of Borrower or any other party, provided that payments made by Guarantor shall reduce Guarantor's liability hereunder.

The term "**Obligations**" shall the meaning given such term in that certain letter agreement dated as of the date hereof among Guarantor, Bank, and the other parties thereto (the "**Letter Agreement**"; capitalized terms used herein but not otherwise defined herein shall have the meaning set forth in the Letter Agreement).

(b)    Notwithstanding anything to the contrary contained herein, the definition of "Obligations" shall specifically exclude any and all Excluded Swap Obligations. The foregoing limitation of the definition of Obligations shall be deemed applicable only to the obligations of Guarantor (or solely any particular Guarantor(s) if there is more than one Guarantor) under the particular Swap (or Swaps), or, if arising under a master agreement governing more than one Swap, the portion thereof that constitute Excluded Swap Obligations. As used herein, (i) "**Excluded Swap Obligations**" means, with respect to each Guarantor, any obligation to pay or perform under any agreement, contract or transaction that constitutes a Swap if, and to the extent that, all or any portion of this Guaranty that relates to the obligations under such Swap is or becomes illegal as to such Guarantor under the Commodity Exchange Act (7 U.S.C.§1 et seq.), as

amended from time to time, and any successor statute (the "**CEA**"), or any rule, regulation, or order of the Commodity Futures Trading Commission (the "**CFTC**"), by virtue of such Guarantor's failure for any reason to qualify as an "eligible contract participant" (as defined in the CEA and regulations promulgated thereunder) on the Eligibility Date for such Swap; (ii) "**Eligibility Date**" means the date on which this Guaranty becomes effective with respect to the particular Swap (for the avoidance of doubt, the Eligibility Date shall be the date of the execution of the particular Swap if this Guaranty is then in effect, and otherwise it shall be the date of execution and delivery of this Guaranty); and (iii) "**Swap**" means any "swap" as defined in Section 1a(47) of the CEA and regulations thereunder between Borrower and Bank, other than (A) a swap entered into on, or subject to the rules of, a board of trade designated as a contract market under Section 5 of the CEA, or (B) a commodity option entered into pursuant to CFTC Regulation 32.3(a).

    **2.    Nature of Guaranty; Revocation**.    This Guaranty is a continuing, absolute and unconditional guaranty of payment and not of collection, and all Obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. Guarantor acknowledges that this Guaranty and Guarantor's obligations under this Guaranty shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any kind or nature whatsoever which might otherwise constitute a defense available to Borrower with respect to any of its Obligations under any of the Loan Documents, to Guarantor with respect to this Guaranty or the obligations of Guarantor hereunder, or to any other person or party with respect to any other obligations or agreements relating to Borrower or Borrower's Obligations to Bank, including, without limitation, fraud in the inducement, failure of consideration, promissory estoppel, expiration of the statute of limitations or laches. The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other party, or whether any of Borrower or any other person is joined in any such action or actions.  All rights, powers and remedies hereunder shall apply to all past, present and future liabilities of Borrower to Bank, including arising under successive transactions continuing, increasing or decreasing any such Obligations or creating new Obligations.  This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at any time or from time to time.  Except as otherwise expressly set forth herein, as to each Guarantor, this Guaranty shall continue until written notice of revocation signed by such Guarantor, or until written notice of the death of such Guarantor (which shall be deemed a notice of revocation hereunder) shall in each case have been actually received by Bank, notwithstanding a revocation by, or the death of, or complete or partial release for any cause, of any one or more of the remainder of the Guarantor(s), or of Borrower or of anyone liable in any manner for the Obligations hereby guaranteed or for the Obligations (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase, decrease or change in personnel, management, shareholders or members of any one or more of the Guarantor(s) which may be corporations, partnerships or other entities. Except as otherwise expressly set forth herein, written notice as provided herein shall be the only means of revocation or termination of this Guaranty, notwithstanding the fact that for periods of time there may be no outstanding Obligations of Borrower.  No revocation or termination hereof shall affect in any manner the effectiveness and applicability of this Guaranty, or any rights of Bank or the obligations of Guarantor hereunder, with respect to (a) Obligations of Borrower which shall have been created, contracted, assumed or incurred prior to receipt by Bank of written notice of such revocation or termination, (b) all extensions, renewals or modifications of any of the Obligations referred to in (a) above made after receipt by Bank of such written notice or (c) Obligations of Borrower which shall have been created, contracted, assumed or incurred after receipt by Bank of such written notice pursuant to any

2

contract entered into by Bank prior to its receipt of such notice or which are otherwise related to or connected with Obligations of Borrower theretofore arising or transactions theretofore entered into.

Notwithstanding the foregoing, this Guaranty shall automatically terminate with respect to all Obligations when (i) all commitments to lend under the Letter Agreement and the Notes shall have expired or been terminated, (ii) the principal of and interest on the Line of Credit and the Term Loan and all fees and other Obligations in connection therewith shall have been indefeasibly paid in full in cash, (iii) all other Obligations of any kind owing to Bank shall have been cash collateralized or otherwise secured or supported in a manner satisfactory to Bank in its reasonable discretion, and (iv) all unreimbursed amounts shall have been indefeasibly paid in full in cash, provided, however, that in connection with the termination of this Agreement, Bank may require such indemnities as it shall reasonably deem necessary or appropriate to protect Bank against (x) loss on account of credits previously applied to the Obligations that may subsequently be reversed or revoked, (y) any obligations that may thereafter arise with respect to obligations in respect of cash management services or other bank products and (z) any Obligations that may thereafter arise under Section 17 of the Letter Agreement.

This Guaranty shall not terminate, supersede, cancel, diminish or modify any prior Guaranty or guaranties given by Guarantor to Bank with respect to Obligations of Borrower unless expressly provided herein. All Obligations guaranteed by Guarantor and all rights of Bank, herein and under such prior Guaranty or guaranties, are cumulative and Bank may exercise its rights singly or collectively, and sequentially or concurrently.

Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor is joined in any such action or actions.

This Guaranty sets forth the entire agreement and understanding of Bank and Guarantor, and Guarantor acknowledges and represents that there exist and have been made absolutely no oral or other agreements, understandings, representations or warranties of any kind or nature (including, without limitation, any agreements or representations concerning renewal, continuation or increase of any of Borrower's Obligations; any obligation of Bank with respect to any other guarantor of, or any collateral securing, any of Borrower's Obligations; or any limitation or condition whatsoever to Bank's rights and Guarantor's obligations hereunder) with respect to this Guaranty or the obligations of Guarantor hereunder, except as specifically and expressly set forth in this Guaranty.

      **3.**     **Authorizations to Bank; Waivers**. Bank may at any time and from time to time (whether or not after revocation or termination of this Guaranty), in its sole discretion and without the consent of, or notice to, Guarantor, without incurring responsibility to Guarantor, without impairing or releasing the obligations of Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

      (1)     change the manner, place or terms of payment, or interest rates on, and/or change or extend the time of payment of, renew or alter, any Obligation of Borrower, any security therefor, or any Obligation incurred directly or indirectly in respect thereof, and the Guaranty herein made shall apply to the Obligations of Borrower as so changed, extended, renewed or altered;

3

(2)      take and hold, and sell, exchange, release, surrender, substitute, realize upon or otherwise deal with in any manner and in any order, and direct the order or manner of sale thereof (including without limitation by non-judicial sale pursuant to governing security documents and applicable law), any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Obligations hereby guaranteed or any other obligations (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3)      exercise or refrain from exercising any rights against Borrower or others (including Guarantor), or any security or otherwise act or refrain from acting;

(4)      settle, compromise, discharge or release any Obligation hereby guaranteed, any security therefor or any other obligation (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of Borrower to creditors of Borrower other than Bank and Guarantor;

(5)      release or substitute any one or more of the endorsers or other guarantors of the Obligations, or any portion thereof, or any other party thereto;

(6)      apply any sums by whomsoever paid or howsoever realized to any Obligations of Borrower to Bank, in such order as Bank shall determine (and Guarantor hereby waives any provision of law regarding applications of payments which specifies otherwise), regardless of what Obligations of Borrower remain unpaid; and

(7)      exercise any right or remedy Bank may have with respect to the Obligations or any security for the Obligations, this Guaranty or any other guaranty.

No invalidity, irregularity or unenforceability of all or any part of the Obligations hereby guaranteed or of any security therefor shall affect, impair or be a defense to this Guaranty, and this Guaranty is a primary obligation of Guarantor.

Guarantor waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such Obligations, suit or taking other action by Bank against, and any other notice to, any party liable thereon (including Guarantor).

Guarantor waives any right to require Bank to proceed against Borrower or any other person, or to marshal assets or proceed against or exhaust any collateral security for the Obligations, or to give notice of the terms, time and place of any public or private sale or other disposition of any such collateral security, or to take any other action or pursue any other remedy in Bank's power.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and Guarantor agrees that any payment of any Indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder.

Guarantor absolutely, unconditionally and irrevocably waives any and all rights to assert any defense, setoff, counterclaim or cross-claim of any kind or nature whatsoever with respect to this Guaranty, or the obligations of Guarantor under this Guaranty, or the obligations of any other person or

4

party (including, without limitation, Borrower) relating to this Guaranty, or otherwise with respect to the Obligations of Borrower, in any action or proceeding brought by Bank (or any subsequent holder of this Guaranty) to collect the liabilities of Borrower or any portion thereof, or to enforce the obligations of Guarantor under this Guaranty.

4.    **Additional Waivers**.

(a)    Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty.  Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code.  Until the Obligations are indefeasibly paid in full, Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(b)    To require Bank to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Obligations, disclose information with respect to the Obligations, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(c)    That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(d)    To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer other than the indefeasible payment in full of the Obligations;

(e)    To be discharged if any of the terms, conditions or provisions of the Obligations are altered in any respect;

(f)    To be discharged upon acceptance by Bank of anything in partial satisfaction of the Obligations, and/or if Bank designates the portion of the Obligations to be satisfied;

(g)    To be discharged upon any modification of the Obligations or the release by Bank of Borrower or any other guarantor, endorser or co-signer;

(h)    To require Bank to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Bank's power;

(i)    To receive the benefit of or participate in any and all security for repayment and/or performance of the Obligations;

(j)    To have any security for the Obligations first applied to satisfy or discharge the Obligations;

5

(k)    That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(l)    To be discharged based upon any failure by Bank to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Obligations, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Bank realizes upon any collateral;

(m)    To be discharged due to the release or discharge of any collateral for any Obligations or guaranty, or relating to the validity, value or enforceability of any collateral;

(n)    Guarantor also waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things: (1) Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) if Bank forecloses on any real property collateral pledged by Borrower: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure; and

(o)    Guarantor also waives all rights and defenses arising out of an election of remedies by Bank, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419 AND 3605, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

**5.    Security; Setoff.** This Guaranty is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Guarantor has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Guarantor to Bank. Bank at all times and from time to time shall have the right to require Guarantor to deliver to Bank as security for the Obligations of Guarantor hereunder, collateral security, original or additional, satisfactory to Bank.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other

6

dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Guarantor hereunder.

**6.    Representations and Warranties; Covenants**.    Guarantor hereby represents and warrants to Bank that: (a) this Guaranty and all other documents or agreements at any time hereafter delivered by Guarantor to Bank in connection herewith have been duly authorized, and upon their execution and delivery to Bank will constitute legal, valid and binding agreements and obligations of Guarantor, enforceable in accordance with their respective terms; (b) the consummation of the transactions contemplated by this Guaranty and the fulfillment of the terms hereof will not (i) conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time or both) a default under any contractual obligation of Guarantor; (ii) result in the creation or imposition of any lien or other encumbrance upon any of Guarantor's properties pursuant to the terms of any such contractual obligation or (iii) violate any law, rule or regulation applicable to Guarantor; (c) this Guaranty is executed at Borrower's request in order to induce Bank to extend or maintain the Obligations to Borrower; (d) Bank has made no representation to Guarantor as to the creditworthiness of Borrower or as to the nature or sufficiency of any collateral securing the Obligations or any part thereof; and (e) Guarantor has established adequate means of obtaining from Borrower on a continuing basis financial and other information pertaining to Borrower's financial condition.    Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that Bank shall have no obligation to disclose to Guarantor any information or material about any of the Borrowers which is acquired by Bank in any manner.

**7.    Information**.    So long as this Guaranty shall remain in effect, and without limitation of any provision of any other document evidencing or securing the Obligations, Guarantor agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Guarantor as Bank may reasonably request from time to time, and (b) if applicable, at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from his, her or its records and books of account, visit his, her or its properties and discuss his, her or its affairs, finances and accounts with any of his, her or its officers, directors or independent accountants.

**8.    Enforceability of Obligations**.    No modification, limitation or discharge of the Obligations arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law will affect, modify, limit or discharge Guarantor's liability in any manner whatsoever and this Guaranty will remain and continue in full force and effect and will be enforceable against Guarantor to the same extent and with the same force and effect as if any such proceeding had not been instituted.    Guarantor waives all rights and benefits which might accrue to it by reason of any such proceeding and will be liable to the full extent hereunder, irrespective of any modification, limitation or discharge of the liability of Borrower that may result from any such proceeding.

**9.`    Events of Default; Remedies**.    The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an "**Event of Default**" under this Guaranty.

Upon the happening of any Event of Default, and in any such event, and at any time thereafter, Bank may, without notice to Borrower or Guarantor, make the Obligations of Borrower to Bank, whether or not then due, immediately due to and payable hereunder as to Guarantor, and terminate any commitment or obligation to make loan advances, issue letters of credit or extend additional credit

7

4812-6416-2976v2/104763-0009

accommodations to Borrower, and Bank shall be entitled to enforce the obligations of Guarantor hereunder.

Further, upon the happening of an Event of Default, Bank may immediately or at any time or times thereafter without demand or notice to Borrower or Guarantor and without advertisement, all of which are hereby expressly waived, sell, resell, assign and deliver all or part of any collateral security for the Obligations, at public or private sale, for cash, upon credit or for future delivery, and in connection therewith may grant options. Upon each such sale Bank may purchase the whole or any part of such collateral security, free from any right of redemption, which is hereby waived and released.

10. **Subordination**. Without limiting Bank's rights under any other agreement, upon the date notice of revocation or termination of this Guaranty is received, or upon the occurrence of an Event of Default hereunder or under any of the Loan Documents, any obligations owed by Borrower to Guarantor in connection with any extension of credit or financial accommodation by Guarantor to or for the account of Borrower are hereby subordinated to the Obligations of Borrower, and any amounts received by Guarantor in connection therewith shall be paid over to Bank on account of the Obligations of Borrower without reducing or affecting in any manner the liability of Guarantor under other provisions of this Guaranty.

11. **Waiver of Subrogation and Related Rights**. Guarantor shall not exercise, and hereby expressly waives, any right of subrogation against any Credit Party which it may otherwise have at any time as a result of this Guaranty (whether contractual, under Section 509 of the Bankruptcy Code, or otherwise) until all of the Obligations of Borrower and the other Credit Parties have been indefeasibly paid in full. If any amount is paid to Guarantor on account of subrogation rights Guarantor may otherwise have as a result of this Guaranty, when the Obligations of Borrower shall not have been paid in full, the amount received by Guarantor shall be held in trust for the benefit of Bank and shall be promptly paid to Bank to be credited and applied to the Obligations of Borrower. Further, until the Obligations are indefeasibly paid in full and all commitments to lend under the Notes and the Letter Agreement are terminated, Guarantor waives all of Guarantor's rights of reimbursement, indemnification and contribution.

12. **Repayment or Recovery from Bank**. If claim is ever made upon Bank for repayment, return, restoration, rescission or other recovery of any amount or amounts received by Bank in payment or on account of any of the Obligations of Borrower or any other obligations of Guarantor hereunder and Bank repays all or part of said amount: (a) because such payment or application of proceeds is or may be avoided, rescinded, invalidated, declared fraudulent, set aside or determined to be void or voidable as a preferential transfer, fraudulent conveyance, impermissible setoff or a diversion of trust funds; or (b) for any other reason, including (without limitation) by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over Bank or any of Bank's assets or (ii) any settlement or compromise of any such claim effected by Bank with any such claimant (including Borrower), then and in such event Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon Guarantor, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of Borrower, and Guarantor shall be and remain liable to Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Bank, subject in all events to the amount of Guarantor's guaranty as set forth in paragraph 1(a) above. Guarantor hereby agrees to indemnify and to reimburse and hold Bank harmless for the amount so repaid and for all other claims, actions, suits, proceedings, liabilities, losses, costs and expenses of every kind (including, without limitation, the disbursements, expenses and fees of Bank's

8

attorneys) that may be imposed upon, incurred by or asserted against Bank (i) in connection with defending any such claim for repayment and collecting such amount from Guarantor or (ii) otherwise arising out of or related directly or indirectly to this Guaranty (including, without limitation, any action, suit or proceeding between Guarantor and Bank, whether on this Guaranty or otherwise). The provisions of this paragraph shall survive the termination of this Guaranty, and any satisfaction and discharge of Borrower by virtue of any payment or court order or any state or federal law, but in no event shall the provisions of this paragraph expand or increase the amount of Guarantor's guaranty as set forth in paragraph 1(a) above.

13. **Preservation of Rights**. No delay or omission on Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Bank's action or inaction impair any such right or power. Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Bank may have under any other agreements, at law or in equity. Bank may proceed in any order against Borrower, Guarantor or any other obligor of, or any collateral securing, the Obligations.

14. **Nature of Guarantor's Obligations**. Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

15. **Prohibited Person Compliance**. Guarantor warrants, represents and covenants that neither Guarantor nor any of its affiliates is or will be a person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224 or (d) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Guarantor covenants and agrees that neither Guarantor nor any of its affiliates will knowingly (i) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Guarantor further covenants and agrees to deliver (from time to time) to Bank any such certification or other evidence as may be requested by Bank in its sole and absolute discretion, confirming each such representation.

16. **Interpretation**. In this Guaranty, unless Bank and Guarantor otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Guaranty; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in this Guaranty are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the

9

certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any Person include that Person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender.  Section headings in this Guaranty are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.  If this Guaranty is executed by more than one party as Guarantor, or if separate guaranties of Borrower's Obligations to Bank are executed by other parties, the obligations of all such persons or entities will be joint and several.

       **17.**    **Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Guaranty must be in writing delivered to each such other party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and with respect to any notice to Bank, a copy to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending, with a copy to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment.  Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.  No notice to or demand on Guarantor will entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

       **18.**    **Reserved**.

       **19.**    **Entire Agreement**. This Guaranty constitutes the entire agreement between Guarantor and Bank with respect to the subject hereof and supersedes all prior negotiations, communications and agreements (written or oral), discussions and correspondence concerning the subject matter hereof. Guarantor and Bank agree that any inconsistency or discrepancy between the provisions of this Guaranty and any other documentation evidencing the Obligations of Guarantor to Bank shall be resolved in the manner most favorable to Bank.

       **20.**    **Severability; Waivers**. The provisions of this Guaranty are severable and if any waiver or other provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction.  Without limiting the foregoing, Guarantor hereby warrants and agrees that each of the waivers set forth herein is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, such waivers are reasonable and not contrary to public policy or law.

       **21.**    **Limitation of Liability**.

       (a)    To the fullest extent permitted by applicable law, Guarantor shall not assert, and hereby waives any claim against Bank, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this

Guaranty, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof.

(b)    Any term or provision of this Guaranty to the contrary notwithstanding, the maximum aggregate amount for which any Guarantor shall be liable hereunder shall not exceed the maximum amount for which such Guarantor can be liable without rendering this Guaranty or any other Loan Document, as it relates to such Guarantor, subject to avoidance under applicable laws relating to fraudulent conveyance or fraudulent transfer (including but not limited to the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) (collectively, "**Fraudulent Transfer Laws**"). Any analysis of the provisions of this Guaranty for purposes of Fraudulent Transfer Laws shall take into account the right of contribution established in Section 21(c) and, for purposes of such analysis, give effect to any discharge of intercompany debt as a result of any payment made under this Guaranty.

(c)    To the extent that any Guarantor shall be required hereunder to pay any portion of any guaranteed Obligation exceeding the greater of (i) the amount of the value actually received by such Guarantor and its subsidiaries from the advances under the Letter Agreement and the other Obligations and (ii) the amount such Guarantor would otherwise have paid if such Guarantor had paid the aggregate amount of the guaranteed Obligations (excluding the amount thereof repaid by Borrower) in the same proportion as such Guarantor's net worth on the date enforcement is sought hereunder bears to the aggregate net worth of all the guarantors of the Obligations on such date, then such Guarantor shall be reimbursed by such other guarantors for the amount of such excess, pro rata, based on the respective net worth of such other guarantors on such date.

22.    **Amendments, Modifications, Etc**. No amendment, modification or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Guaranty for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Guarantor (which may be sent by electronic mail).

23.    **No Waiver; Remedies**. No failure on the part of Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

24.    **Successors and Assigns; Assignments**. This Guaranty and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Guarantor and its legal representatives, successors and assigns; provided, however, that Guarantor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole and absolute discretion. Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents. In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Guarantor, its business or any collateral security provided in connection herewith.

11

25. **Counterparts; Electronic Transmission**. This Guaranty may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Guaranty. Delivery of any executed counterpart of this Guaranty by electronic transmission shall be effective as delivery of a manually executed counterpart hereof. Guarantor acknowledges that information and documents relating to this Guaranty and the credit accommodations provided for herein may be transmitted through electronic means.

26. **Patriot Act**. Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank may be required to obtain, verify and record information that identifies Guarantor, which information includes the name, address, tax identification number and other information regarding Guarantor that will allow Bank to identify Guarantor in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

27. **GOVERNING LAW. THIS GUARANTY WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION HEREUNDER WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY. NO REFERENCE TO ANY PROVISION OF ANY OTHER STATE'S LAWS WHICH MAY APPEAR HEREIN SHALL BE DEEMED TO SUPERSEDE THE CHOICE OF LAW SET FORTH IN THIS SECTION.**

28. **VENUE; JURISDICTION. ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND GUARANTOR AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION, OR PROCEEDING BETWEEN GUARANTOR AND BANK. GUARANTOR FURTHER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, BETWEEN GUARANTOR AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. GUARANTOR DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON GUARANTOR AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 17 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY GUARANTOR AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER**

12

MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GUARANTOR IN ANY OTHER JURISDICTIONS.

29.  **WAIVER OF JURY TRIAL**. GUARANTOR (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT GUARANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS GUARANTY, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS GUARANTY, ANY OF THE OBLIGATIONS, ANY COLLATERAL OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO GUARANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY GUARANTOR IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

30.  **JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY**. IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.*, ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

13

**30.** **JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.** IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.*, ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

Guarantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.

_____                         _____
**Spiro's initials**                            **Trust signatory's initials**

**31.** **Further Assurances; Corrections of Defects**. Guarantor, intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Guaranty or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Guarantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Guaranty, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations.

**32.** **Equal Credit Opportunity Act**. If Guarantor is not an "applicant for credit" under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("**ECOA**"), Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

13

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the date first written above.

GUARANTOR:

**ROBERT DOUGLAS SPIRO, JR.**

By: _____

**SPIRO REVOCABLE FAMILY TRUST**

By: _____
Name: Robert Douglas Spiro, Jr.
Title: Trustee

By: _____
Name: Diana Castillo Spiro
Title: Trustee

*Signature Page to Limited Guaranty*

## Spousal Consent

I am married to Robert Douglas Spiro, Jr., the Guarantor under the Limited Guaranty (the "**Agreement**") dated as of the date first set forth therein executed by my spouse in favor of Bank Leumi USA (the "**Lender**").  I acknowledge that I have read the Agreement and that I know its contents.  I am aware that the legal, financial and related matters contained in the Agreement are complex, and I acknowledge that I have been advised to have the Agreement reviewed by independent legal counsel and to consult with such counsel regarding the provisions of the Agreement and their impact on me.  I acknowledge that I have had full and adequate opportunity to have the Agreement reviewed by independent legal counsel and to discuss the Agreement with such counsel, and I have either sought such guidance or determined not to do so after reviewing the Agreement carefully.  I am aware that by its provisions my spouse, Robert Douglas Spiro, Jr., agrees to, among other things, guarantee up to $5,000,000 of indebtedness owed by Better 4 You Breakfast, Inc. (the "**Borrower**") to the Lender on the terms set forth in the Agreement, and that such guaranty of such indebtedness includes my community property interest therein. I hereby consent to such guaranty, approve of all of the provisions of the Agreement, and agree that I will take no action at any time to hinder operation of the Agreement or my interest in the above-mentioned loans.

By: _____

Printed Name:  Diana Castillo Spiro

*Spousal Consent to Limited Guaranty*

# EXHIBIT C

DocuSign Envelope ID: 0B2B2344-BB95-4885-B545-E5D305D6B95



November 5, 2021

**VIA ELECTRONIC MAIL**

**BORROWER:**

Better 4 You Breakfast, Inc.
[dspiro@capitalstoneholdings.com and fcastillo@better4youmeals.com]

**GUARANTORS:**

Balance Foods, LLC
[dspiro@capitalstoneholdings.com and fcastillo@better4youmeals.com]

Moreno Bros. Distributing, LLC
[dspiro@capitalstoneholdings.com and fcastillo@better4youmeals.com]

Capital Stone Equity Fund I LP
[dspiro@capitalstoneholdings.com]

Robert Douglas Spiro Jr
[dspiro@capitalstoneholdings.com]

Spiro Revocable Family Trust
[dspiro@capitalstoneholdings.com]

Re:    $12,500,000 Line of Credit ("**Line of Credit**") and $6,750,000 Term Loan (Multi-Draw) ("**Term Loan**", together with the Line of Credit, collectively, the "**Facility**") from Bank Leumi USA ("**Bank**") to Better 4 You Breakfast, Inc. ("**Borrower**" or "**you**")

> *Notice of Default and Reservations of Rights*

Ladies and Gentlemen:

We refer to the above referenced Facility governed by that certain letter agreement dated August 16, 2019, between Bank and Borrower (as amended, restated, supplemented or otherwise modified, the "**Letter Agreement**"), and evidenced by those certain Line of Credit Note in the original principal amount of $12,500,000 and Term Note (Multiple Draw) in the original principal amount of $6,750,000, each dated August 9, 2019 made by Borrower in favor of Bank (each as amended, restated, supplemented or otherwise modified, collectively the "**Note**"), together with all Loan Documents (as defined in the Letter Agreement) executed and delivered to Bank in connection therewith, which evidence, secure, guaranty or relate to the Note and Letter Agreement,.  Capitalized terms are used as defined in the Note or the Letter Agreement, as applicable.

We hereby inform you that Borrower has violated the following covenants under the Letter Agreement, and each such violation constitutes an Event of Default under the applicable Loan Document (collectively, the "**Specified Events of Default**"):

- Borrower has failed to comply with Section A.6.1(a) of the Letter Agreement by failing to provide Bank with Borrower's financial statements corresponding to the fiscal year ended on June 30, 2021, within the time frame set forth in such Section;

- Borrower has failed to comply with Section A.6.1(d) of the Letter Agreement by failing to provide the Individual Guarantor's personal financial statements and state and federal income tax returns for the 2019 and 2020 fiscal years within the time frame set forth in such Section;

- Borrower has failed to comply with Section A.6.2(a) of the Letter Agreement by failing to maintain a Tangible Net Worth of not less than $7,000,000 as of March 31, 2020;

- Borrower has failed to comply with Section A.6.2(b) of the Letter Agreement by failing to maintain an EBITDA of not less than (i) $5,900,000 as of March 31, 2020, (ii) $7,000,000 as of June 30, 2020, (iii) 7,398,000 as of September 30, 2020, (iv) $7,937,000 as of December 31, 2020, and (v) $8,818,000 as of March 31, 2021;

- Borrower has failed to comply with Section A.6.2(c) of the Letter Agreement by failing to maintain a Funded Debt to EBITDA ratio of not more than (i) 2.75 to 1.00 as of March 31, 2020, and (ii) 2.5 to 1.0 as of June 30, 2020 and September 30, 2020; and

- Borrower has failed to comply with Section A.6.3(b) of the Letter Agreement by failing to cooperate with Bank or Bank's agents to complete the ongoing collateral field examination.

This letter confirms that the Bank has not waived the Specified Events of Default, and the Bank expressly reserves all of its rights, powers, privileges and remedies under the Loan Documents, applicable law or otherwise with respect to the Specified Events of Default or any other Event of Default now existing or hereafter arising under the Loan Documents, including without limitation (i) the right to demand immediate full payment of all obligations owing under the Loan Documents, and (ii) the right to repossess and take other action with respect to any or all Collateral. The failure of Bank to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Event of Default (including, without limitation, the Specified Events of Default). Bank may elect to exercise any or all of its rights, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Bank.

In addition, commencing as of November 8, 2021, the Bank shall be charging interest on each Note at the Default Rate, as provided in Section 4.3 of each Note.

The fact that no other facts are noted which constitute, or form the basis of, a default, a default or an Event of Default under the Loan Documents or any notes or instruments referred to therein is not, and shall not be deemed to be, a waiver of any such default, whether now or hereafter existing under the Loan Documents.

The holding of any discussions between or among any or all of Bank, Borrower and/or any guarantor regarding the administration of the Facility or proposals regarding amendments to, or modifications or restructurings of any Loan Document shall not constitute any waiver of any default or Event of Default (including, without limitation, the Specified Event of Default), or an agreement to forbear from the exercise of Bank's rights and remedies under any Loan Document, or applicable law, nor shall it be construed as an undertaking by Bank to continue such discussions or to enter into any such amendments, modifications or restructurings.

000161

Very truly yours,

**BANK LEUMI USA**

By:
*Elsa Burton*

Name: Elsa Burton
Title: Senior Vice President


By:
*Ed Park*

Name: Ed Park
Title: First Vice President

**EXHIBIT D**

Classified: Internal

**BANK LEUMI USA**
555 West 5th Street, Suite 3300
Los Angeles, CA 90013

November 26, 2021

<u>VIA ELECTRONIC MAIL</u>

**Better 4 You Breakfast, Inc.**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
      fcastillo@better4youmeals.com

**Balance Foods, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
      fcastillo@better4youmeals.com

**Moreno Bros. Distributing, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
      fcastillo@better4youmeals.com

**Capital Stone Equity Fund I LP**
620 N. Central Ave. – Suite 400
Glendale, CA 91203
Email: dspiro@capitalstoneholdings.com

**Robert Douglas Spiro, Jr.**
12027 Otsego St.
Valley Village, CA 91607
Email: dspiro@capitalstoneholdings.com

**Spiro Revocable Family Trust**
12027 Otsego St.
Valley Village, CA 91607
Attn: Robert Douglas Spiro, Jr.
    Diane Castillo Spiro,
    As Trustees
Email: dspiro@capitalstoneholdings.com

Classified: Internal

**Fernando Castillo**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: fcastillo@better4youmeals.com

**Jacqueline Duvivier**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jduvivier@better4youmeals.com

**Jason Roberts**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

Re: Notice of Default

Ladies and Gentlemen:

Reference is made to: (a) the certain Letter Agreement, dated as of August 16, 2019 (as amended, restated, supplemented or modified from time to time, the "*Letter Agreement*"), by and between Better 4 You Breakfast, Inc. ("*Borrower*"), Bank Leumi USA ("*Bank Leumi*" or "*Lender*") and the Guarantors and Pledgors party thereto (as defeined therein) (b) that certain Term Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "*Term Note*"), (c) that certain Line of Credit Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "*Line of Credit Note*"), (d) that certain Security Agreement, dated as of August 16, 2019, as amended, restated, supplemented or modified from time to time, the "*Security Agreement*"), between Borrower, Lender, and the Grantors thereto (as defined therein), (e)(i) the Unlimited Guaranty, dated August 16, 2019, by each of Balance Foods, LLC ("*Balance*"), Moreno Bros. Distributing, LLC ("*Moreno*"), and Capital Stone Equity Fund I LP ("*Capital Stone*", together with Balance and Moreno, "*Corporate Guarantors*") in favor of Lender (the "*Corporate Guaranty*"), and (ii) the Limited Guaranty, dated as of August 16, 2019, by each of Robert Douglas Spiro, Jr. ("*Spiro*") the Trustees of the Spiro Revocable Family Trust ("*Spiro Family Trust*") in favor of Lender (the "*Limited Spiro Guaranty*"), (Corporate Guarantors, together with Spiro, and the Spiro Family Trust, each, individually a "*Guarantor*", and collectively, the "*Guarantors*") and (the Corporate Guaranty, together with the Spiro Guaranty, individually a "*Guaranty*" and collectively, the "*Guaranties*"), and (f) the Pledge Agreement, dated as of August 16, 2019, by each of Capital Stone, Fernando Castillo ("*Castillo*"), Jacqueline Duvivier ("*Duvivier*") and Jason Roberts ("*Roberts*", together with Capital Stone, Castillo, and Duvivier, individually a "*Pledgor*", and collectively, "*Pledgors*") in favor of Lender, (the Pledge Agreement, together with the Loan Agreement, the Term Note, the Line of Credit Note, and the Security Agreement, collectively, the "*Loan Documents*"), and (f) the Notice of Default and Reservation of Rights Letter, dated November 5, 2021 (the "*Notice of Default*"), specifying the Events of Default that had occurred and are continuing the "*Existing Specified Events of Default*").  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Letter Agreement.

**PLEASE TAKE NOTICE**, that in addition to the Existing Specified Events of Default set forth in the Notice of Default, which are still continuing, an additional Event of Default has occurred and is continuing due to the failure of  Borrower to to pay all principal, interest and other charges, whether

DocuSign Envelope ID: 39E9CAE6-8485-481A-A04F-15BDF62297BE

Classified: Internal

accrued or accruing thereon, on or before November, 16, 2021, the Line of Credit Maturity Date (the "**Additional Default**", together with the Exisitng Specified Defaults, the "**Specified Defaults**").

## PLEASE TAKE FURTHER NOTICE, that as a result of the occurrence and continuance of the Specified Defaults, all principal, interest and other charges set forth in the Letter Agreement, the Notes, and other Loan Documents (as defined in the Letter Agreement) (the "**Obligations**") are immediately due and payable. As of the date hereof, the aggregate principal amount of the Obligations owing by Borrower to Lender under the Letter Agreement is not less than $16,531,695.41 (exclusive of any accrued and accruing interest, fees, costs and expense).

This letter confirms that Lender has not waived the Specified Defaults and expressly reserves all of its rights, powers, privileges and remedies under the Letter Agreement, the other Loan Documents, applicable law and otherwise with respect to any Default or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or any of the other Loan Documents, including without limitation, (i) the right to demand immediate full payment of all Obligations owing under the Letter Agreement and the other Loan Documents, and (ii) the right to repossess and take other action with respect to any or all Collateral, including the liquidation thereof pursuant to the security interest granted under the Security Agreement and the other Loan Documents. The failure of Lender to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Default or Event of Default (including, without limitation, the Specified Defaults). Lender may elect to exercise any or all of its rights, powers, privileges and remedies, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Lender.

Nothing contained herein, nor any action or inaction on the part of Lender, including without limitation, the making of any loan by Lender, shall be deemed to be a waiver of any rights or remedies available to Lender with respect to the Specified Defaults or any other Default or Event of Default that may exist under the Loan Agreement and other Loan Documents, again regardless of whether Lender is aware of any such Defaults or Events of Default.

Nothing contained in this letter and no delay by Lender in exercising any rights, powers, privileges or remedies under the Letter Agreement, any other Loan Document, or applicable law with respect to the Specified Defaults or any other Default or Event of Default now existing or hereafter arising under the Loan Agreement or any of the other Loan Documents shall be construed as a waiver or modification of such rights, powers, privileges and remedies. This Notice is not, and shall not be deemed to be, a waiver of, or a consent to, any Default, noncompliance, or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or other Loan Documents. This Notice shall not entitle the Borrower, any Guarantor or any Pledgor to any other or further demand, presentment, protest or notice of any kind.

The holding of any discussions between Lender and Borrower regarding the administration of the loans or proposals regarding amendments to, or modifications or restructurings of the Letter Agreement or any other Loan Document shall not constitute any waiver of any Default or Event of Default (including, without limitation, the Specified Defaults), or an agreement to forbear from the exercise of Lender's rights, powers, privileges or remedies under the Letter Agreement or any other Loan Document, or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications or restructurings.

This Notice is without prejudice to, and Lender hereby specifically reserve and by this Notice preserve, all of their rights and remedies.

Classified: Internal

Very truly yours,

**BANK LEUMI USA**

By: *Elsa Burton*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
DEC16C7BA55141B...

Name: Elsa Burton

Title: SVP

By: *Ed Park*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
1D054C361216497...

Name: Ed Park

Title: FVP

cc:    Otterbourg, P.C.
       Attn: Andrew M. Kramer
            David W. Morse

# EXHIBIT E

Classified: Internal

**BANK LEUMI USA**
555 West 5th Street, Suite 3300
Los Angeles, CA 90013

December 10, 2021

<u>VIA ELECTRONIC MAIL</u>

**Better 4 You Breakfast, Inc.**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
    fcastillo@better4youmeals.com

**Balance Foods, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
    fcastillo@better4youmeals.com

**Moreno Bros. Distributing, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
    fcastillo@better4youmeals.com

**Capital Stone Equity Fund I LP**
655 N Central Avenue, 17 Fl.
Glendale, CA 91203
Email: dspiro@capitalstoneholdings.com

**Robert Douglas Spiro, Jr.**
6336 Beeman Avenue
N. Hollywood, California 91606
Email: dspiro@capitalstoneholdings.com

**Spiro Revocable Family Trust**
6336 Beeman Avenue
N. Hollywood, California 91606
Attn: Robert Douglas Spiro, Jr.
    Diane Castillo Spiro,
    As Trustees
Email: dspiro@capitalstoneholdings.com

Classified: Internal

**Fernando Castillo**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: fcastillo@better4youmeals.com

**Jacqueline Duvivier**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

**Jason Roberts**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

Re: <u>Notice of Lender's Exercise of Certain rights</u>

Ladies and Gentlemen:

Reference is made to: (a) the certain Letter Agreement, dated as of August 16, 2019 (as amended, restated, supplemented or modified from time to time, the "***Letter Agreement***"), by and between Better 4 You Breakfast, Inc. ("***Borrower***"), Bank Leumi USA ("***Bank Leumi***" or "***Lender***") and the Guarantors and Pledgors party thereto (as defeined therein) (b) that certain Term Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "***Term Note***"), (c) that certain Line of Credit Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "***Line of Credit Note***"), (d) that certain Security Agreement, dated as of August 16, 2019, as amended, restated, supplemented or modified from time to time, the "***Security Agreement***"), between Borrower, Lender, and the Grantors thereto (as defined therein), (e)(i) the Unlimited Guaranty, dated August 16, 2019, by each of Balance Foods, LLC ("***Balance***"), Moreno Bros. Distributing, LLC ("***Moreno***"), and Capital Stone Equity Fund I LP ("***Capital Stone***", together with Balance and Moreno, "***Corporate Guarantors***") in favor of Lender (the "***Corporate Guaranty***"), and (ii) the Limited Guaranty, dated as of August 16, 2019, by each of Robert Douglas Spiro, Jr. ("***Spiro***") the Trustees of the Spiro Revocable Family Trust ("***Spiro Family Trust***") in favor of Lender (the "***Limited Spiro Guaranty***"), (Corporate Guarantors, together with Spiro, and the Spiro Family Trust, each, individually a "***Guarantor***", and collectively, the "***Guarantors***") and (the Corporate Guaranty, together with the Spiro Guaranty, individually a "***Guaranty***" and collectively, the "***Guaranties***"), and (f) the Pledge Agreement, dated as of August 16, 2021, by each of Capital Stone, Fernando Castillo ("***Castillo***"), Jacqueline Duvivier ("***Duvivier***") and Jason Roberts ("***Roberts***", together with Capital Stone, Castillo, and Duvivier, individually a "***Pledgor***", and collectively, "***Pledgors***") in favor of Lender, (the Pledge Agreement, together with the Loan Agreement, the Term Note, the Line of Credit Note, and the Security Agreement, collectively, the "***Loan Documents***"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Letter Agreement.

We also refer to (a) the Notice of Default and Reservation of Rights Letter, dated November 5, 2021 (the "***Notice of Default***"), specifying the Events of Default that had occurred and are continuing the "***Existing Specified Events of Default***"); and (b) Notice of Default letter dated November 26, 2021 (the "***Additional Default Notice***" and together with the Notice of Default, the "***Default Letters***") specifying additional defaults in addition to the Existing Specified Events of Default set forth in the Notice of Default, (the "***Additional Default***", together with the Exisitng Specified Defaults, the

"**Specified Defaults**").   As a result of the Specified Defaults, all principal, interest and other charges set forth in the Letter Agreement, the Notes, and other Loan Documents (as defined in the Letter Agreement) (the "**Obligations**") are immediately due and payable.  As of the date hereof, the aggregate principal amount of the Obligations owing by Borrower to Lender under the Letter Agreement is not less than $16,485,103.10 (exclusive of any accrued and accruing interest, fees, costs and expense).

**PLEASE TAKE NOTICE**, that as a result of the occurrence and continuance of the Specified Defaults, in accordance with the terms of the Loan Documents, Lender hereby is exercising certain remedies.  Lender will no longer undertake any clearance of checks on the Borrowers behalf and the Lender will apply all of any net cash receipts from the Collateral (whether received on a sale of the Collateral or otherwise) to the payment, in whole or in part, of principal of and/or interest on any or all of the Obligations.

**PLEASE TAKE FURTHER NOTICE**, that in accordance with its rights under Section 2.1(n) of the Security Agreement, Lender's financial consultant, **Paladin Management Group**, will arrive at the Borrower's place of business at 9:00 a.m. to examine and inspect the Collateral (wherever located), to obtain valuations or appraisals of the Collateral, and to audit and make extract from such records or any of Borrower's books, ledgers, financial reports, correspondence or other record relating to the Collateral.  Lender expects that Borrower shall permit Lender's financial consultant access at that time and shall make a representative available to answer promptly all of the Lender's written or oral inquiries with respect thereto.   If Lender's financial consultant is not granted access and/or the Borrower does not cooperate with the Lender's financial consultant, Lender shall provide notice to the Borrower's account debtors that any proceeds owed to the Borrower shall be directed and paid to the Lender.

This letter confirms that Lender has not waived the Specified Defaults and expressly reserves all of its rights, powers, privileges and remedies under the Letter Agreement, the other Loan Documents, applicable law and otherwise with respect to any Default or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or any of the other Loan Documents, including without limitation, (i) the right to demand immediate full payment of all Obligations owing under the Letter Agreement and the other Loan Documents, (ii) to commence any legal or other action to collect any or all of the Obligations owing under the Letter Agreement from the Borrower, the Guarantors or Pledgors, (iii) the right to repossess and take other action with respect to any or all Collateral, including the liquidation thereof pursuant to the security interest granted under the Security Agreement and the other Loan Documents or (iv) take any other enforcement action or otherwise exercise any or all rights and remedies provided for by the Letter Agreement or applicable law.  The failure of Lender to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Default or Event of Default (including, without limitation, the Specified Defaults). Lender may elect to exercise any or all of its rights, powers, privileges and remedies, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Lender.

Nothing contained herein, nor any action or inaction on the part of Lender, including without limitation, the making of any loan by Lender, shall be deemed to be a waiver of any rights or remedies available to Lender with respect to the Specified Defaults or any other Default or Event of Default that may exist under the Loan Agreement and other Loan Documents, again regardless of whether Lender is aware of any such Defaults or Events of Default.

Nothing contained in this letter and no delay by Lender in exercising any rights, powers, privileges or remedies under the Letter Agreement, any other Loan Document, or applicable law with respect to the Specified Defaults or any other Default or Event of Default now existing or hereafter arising under the Loan Agreement or any of the other Loan Documents shall be construed as a waiver or modification of such

6782479.1

000171

Classified: Internal

rights, powers, privileges and remedies. This Notice is not, and shall not be deemed to be, a waiver of, or a consent to, any Default, noncompliance, or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or other Loan Documents. This Notice shall not entitle the Borrower, any Guarantor or any Pledgor to any other or further demand, presentment, protest, or notice of any kind.

The holding of any discussions between Lender and Borrower regarding the administration of the loans or proposals regarding amendments to, or modifications or restructurings of the Letter Agreement or any other Loan Document shall not constitute any waiver of any Default or Event of Default (including, without limitation, the Specified Defaults), or an agreement to forbear from the exercise of Lender's rights, powers, privileges or remedies under the Letter Agreement or any other Loan Document, or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications or restructurings.

This Notice is without prejudice to, and Lender hereby specifically reserve and by this Notice preserve, all of their rights and remedies.

Very truly yours,

**BANK LEUMI USA**

By: _Elsa Burton_

Name: Elsa Burton

Title: SVP

By: _Ed Park_

Name: Ed Park

Title: FVP

cc:    Randy S. Snyder, Esq.
    Law Offices of Randy S. Snyder
    5959 Topanga Canyon Blvd.
    Suite 220
    Woodland Hills, CA  91367
    e-mail: rsnyder@rsslegal.com

    Otterbourg, P.C.
    Attn: Andrew M. Kramer
        David W. Morse

# EXHIBIT F

000173

TOM LALLAS (SBN 66512)
MARK D. HURWITZ (SBN 151159)
LEVY, SMALL & LALLAS
815 Moraga Drive
Los Angeles, CA 90049
Tel: (310) 471-3000
Fax No.: (310) 471-7990
E-mail: tlallas@lsl-la.com
mhurwitz@lsl-la.com

ANDREW KRAMER (NY Bar No. 1871797)
JOHN BOUGIAMAS (NY Bar No. 2517498)
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Tel: (212) 661-9100
Fax No.: (212) 682-6104
E-mail: akramer@otterbourg.com
jbougiamas@otterbourg.com

Attorneys for Plaintiff
Bank Leumi USA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

UNLIMITED JURISDICTION

| | |
|---|---|
| BANK LEUMI USA,<br><br>                    Plaintiff,<br><br>         vs.<br><br>BETTER 4 YOU BREAKFAST, INC.,<br>BALANCE FOODS, LLC, MORENO BROS.<br>DISTRIBUTING, LLC, CAPITAL STONE<br>EQUITY FUND I LP, 20715 AVALON, LLC,<br>ROBERT DOUGLAS SPIRO, JR., DIANA<br>CASTILLO SPIRO, as Trustee of the Spiro<br>Revocable Trust, RDS VENTURES, LLC and<br>DOES 1 THROUGH 50, inclusive,<br><br>                    Defendants. | Case No. _____<br><br>UNLIMITED JURISDICTION<br><br>**VERIFIED COMPLAINT**<br><br>1)  **BREACH OF CONTRACT**<br>2)  **MONEY HAD AND RECEIVED**<br>3)  **CONVERSION**<br>4)  **CLAIM AND DELIVERY**<br>5)  **PERMANENT INJUNCTION**<br>6)  **BREACH OF GUARANTY** |

Plaintiff Bank Leumi USA ("Plaintiff" or "Bank Leumi"), as and for its Verified Complaint against Defendants Better 4 You Breakfast, Inc. ("BFYB"), Balance Foods, LLC ("Balance"), Moreno Bros. Distributing, LLC ("Moreno") and Capital Stone Equity Fund I LP ("Capital Stone", together with BFYB, Balance and Capital Stone, are collectively, the "BFYB Defendants"), 20715 Avalon, LLC ("Avalon"), Robert Douglas Spiro, Jr. ("Spiro"), Diana Castillo Spiro, as trustee of the Spiro Revocable Trust (the "Spiro Trust") and RDS Ventures, LLC ("RDS"), alleges as follows:

## INTRODUCTION

1.      This is an action by a secured lender, Bank Leumi, to obtain possession of, and in the interim, to inspect, secure and preserve, collateral and the proceeds thereof pledged to it by its borrower, Defendant BFYB, and in which the secured lender has a perfected, first-priority lien securing the borrower's outstanding indebtedness to it of in excess of $16.4 million.  In addition, the secured lender seeks money judgments against BFYB and the guarantors of the indebtedness, Defendants Spiro and the Spiro Trust, the controlling shareholders of Defendants BFYB and Avalon, Defendants Balance and Moreno, companies owned by BFYB's chief executive officer ("CEO"), Fernando Castillo ("Castillo") and Defendant Capital Stone.

2.      Defendant BFYB owes Bank Leumi the principal sum of more than $16.4 million (plus accrued and accruing interest, fees, costs and expenses) as a result of financial accommodations made by Bank Leumi to BFYB under a certain letter agreement (the "Letter Agreement").  BFYB's obligations to Bank Leumi are secured by collateral (the "Collateral") that includes, among other things, liens on all of BFYB's assets, including without limitation all of BFYB's accounts receivable and proceeds thereof and BFYB's books and records, and computers.

3.      BFYB has defaulted on its obligations under the Letter Agreement as a result of, among others, the following breaches:

(a)      BFYB failed to pay to Bank Leumi all principal, interest and other charges, whether accrued or accruing thereon, on or before November 16, 2021, the Letter Agreement maturity date;

(b)    Based on projections Bank Leumi received from BFYB in November 2021, the BFYB Defendants projected they would collect proceeds from accounts receivable in the amount of $4,684,697 during the month of December 2021, which the BFYB Defendants were obligated to deposit into their respective accounts at Bank Leumi. Only $808,636 has been deposited into BFYB's account at Bank Leumi, during this same period of time, leaving in excess of $3.876 million unaccounted for.

(c)    It became clear that the BFYB Defendants were diverting customer receipts to other banks -- an express violation of the terms of the Letter Agreement. Bank Leumi obtained evidence that BFYB established a bank account at Sunwest Bank, an institution other than Bank Leumi, and improperly deposited at least $235,000 of accounts receivable proceeds that constitute Bank Leumi's Collateral into the Sunwest Bank account, which BFYB thereafter transferred to the account of CNG Transportation LLC ("CNG"), a company wholly owned by Spiro, at Bank Leumi. The funds were required to be deposited at BFYB's account at Bank Leumi and the failure to do so, and the deposit and transfer elsewhere, constitute conversion of those proceeds;

(d)    Furthermore, although access was originally refused, a meeting was held between Castillo, who is BFYB's CEO, and Allen Soong, a representative of Paladin Management Group (a consultant retained by Bank Leumi) on December 24, 2021. During that meeting, BFYB's CEO acknowledged the BFYB Defendants were receiving cash collections from their customers, which had not been deposited at Bank Leumi, and were paying their unsecured trade vendors and other bills with the proceeds thereof;

(e)    Both before and after the credit facility with Bank Leumi had matured, the BFYB Defendants failed to cooperate with Bank Leumi and its agents to complete a Collateral field examination and refused to permit Bank Leumi and its field examiner, RedRidge Diligence Services ("RedRidge"), to visit and inspect the BFYB Defendants' properties or to review, audit, check and inspect the Collateral and the BFYB Defendants books and records. As is more fully set forth in the report delivered by Red Ridge, the audit information obtained from the BFYB

VERIFIED COMPLAINT
000176

Defendants was deficient could not be completed due to lack of proper information, multiple revisions, and unexplained variances and exceptions.

4.     In short, the BFYB Defendants and their officers and agents, are not only refusing to cooperate with Bank Leumi, but have already misappropriated, and are continuing to misappropriate, Bank Leumi's Collateral.  Accordingly, for the reasons described below, Bank Leumi is entitled to, among other things, (a) possession of its Collateral; (b) a temporary and preliminary injunction, in the main, prohibiting the impairment or disposition of Bank Leumi's Collateral; and (c) money damages against BFYB for breach of the Letter Agreement and against Spiro, the Spiro Trust, Balance and Moreno on their guarantees.

5.     In addition, Defendant Avalon owes Bank Leumi the principal sum of more than $8.5 million (plus accrued and accruing interest, fees, costs and expenses) as a result of loans made by Bank Leumi to Avalon pursuant to a certain loan agreement (the "Avalon Loan Agreement").  Avalon's obligations to Bank Leumi are secured by real property owned by Avalon known as and located at 20715 Avalon Blvd, Carson, CA 90746 (the "Property").  Avalon has entered into a purchase agreement to sell the Property which is expected to close on or around January 20, 2021.  After paying closing costs and the amounts owed to Bank Leumi under the Avalon Loan Agreement, any excess proceeds will be paid to Avalon's owners, including Defendant RDS, which owns 82.50% of Avalon and is a pass through entity. Defendant Spiro owns 85% of RDS and is entitled to receive his pro rata portion of the net proceeds.  In view of BFYB's diversion of Bank Leumi's Collateral, which has been orchestrated by Spiro, and Spiro and the Spiro Trust's guarantee of each of BFYB and Avalon's obligations to Bank Leumi, Bank Leumi seeks to compel Avalon to set aside net proceeds from the sale of the Property (after payment of closing costs and payment to Bank Leumi of the amounts owed to Bank Leumi under the Avalon Loan Agreement) in escrow as additional collateral security for Spiro's obligations to Bank Leumi and to satisfy any judgment Bank Leumi obtains in this action against Spiro and the Spiro Trust.

**BACKGROUND**

**The Parties**

6.      Bank Leumi is an FDIC insured, New York State chartered bank, which does business in the County of Los Angeles, State of California at 555 W. 5th Street, Suite 3300, Los Angeles, California 90013, and that, as relevant here, provides loans and other financial accommodations secured by collateral.

7.      BFYB is a California corporation with an address at 5743 Smithway Street, Suite 103, Commerce, CA 90040.  BFYB is a meal provider providing breakfast, lunch, snack and supper to schools and senior homes throughout Southern California.  Through their interests in Capital Stone Equity Fund I, L.P. and RDS, Defendants Spiro and the Spiro Trust are the majority owners of BFYB.

8.      Balance is a California limited liability company which does business in the County of Los Angeles, State of California at 5743 Smithway Street, Suite 103, Commerce, California 90040.  Balance is snack food manufacturer providing products to BFYB.  Plaintiff is informed and believes that Balance is owned by BFYB's CEO, Castillo.

9.      Moreno is a California limited liability company which does business in the County of Los Angeles, State of California at 5743 Smithway Street, Suite 103, Commerce, California 90040. Moreno is a food distributor providing food products to BFYB.  Plaintiff is informed and believes that Moreno is owned by BFYB's CEO, Castillo.

10.     Capital Stone is a Delaware limited partnership which does business in the County of Los Angeles, State of California at 655 N. Central Avenue, 17th Floor, Glendale, California 91203. Capital Stone is a privately held international investment firm that seeks returns primarily through proprietary transaction sourcing.  Plaintiff is informed and believes that Capital Stone is owned in whole or in part by Spiro.

11.     Avalon is a California limited liability company which does business in the County of Los Angeles, State of California at 3951 Medford Street, Los Angeles, California 90063 whose primary asset is the Property.  Through his interest in RDS, Spiro owns 70% of Avalon.

6799328.2

5

VERIFIED COMPLAINT

000178

12.     Spiro is an individual residing in the County of Los Angeles, State of California at 12027 Otsego Street, Valley Village, California 91607.  Spiro is a principal in Defendants BFYB, Avalon and RDS and is a guarantor of BFYB's and Avalon's obligations to Bank Leumi.

13.     Diana Castillo Spiro is the Trustee of the Spiro Trust having an address in the County of Los Angeles, State of California at 12027 Otsego Street, Valley Village, California 91607.  The Spiro Trust is also a guarantor of BFYB's and Avalon's obligations to Bank Leumi.

14.     RDS is a Delaware limited liability company, which does business in the County of Los Angeles, State of California at 3951 Medford Street, Los Angeles, California 90063, that is 85% owned by Spiro.  RDS owns 82.5% of Avalon.  RDS has guaranteed Avalon's obligations to Bank Leumi.

15.     Plaintiff is presently unaware of the true names and capacities of Defendants Does 1 through 50, inclusive, and therefore sue such Defendants by such fictitious names.  Plaintiffs will seek leave of Court to amend this Complaint when the true names and capacities of said Defendants are ascertained.

16.     Plaintiff is informed and believe, and based upon such information and belief alleges, that each fictitiously named Defendant has in some manner caused or committed the wrongful acts alleged in the Complaint, or is otherwise legally responsible for the damages and matters alleged herein.

17.     Plaintiff is informed and believe, and based upon such information and belief alleges, that at all times material hereto, each Defendant was an agent and/or employee of each of the remaining Defendants, and in doing the acts and things herein alleged, acted within the course and scope of such agency and/or employment.

**The Letter Agreement and other BFYB Loan Documents**

18.     Bank Leumi and BFYB entered into the Letter Agreement dated August 16, 2019, a copy of which is annexed hereto as Exhibit "A," pursuant to which Bank Leumi extended financial accommodations to BFYB through a $12.5 million line of credit and $6.75 million term loan on the terms stated therein.

19.     In addition to the Letter Agreement, the parties executed certain additional loan documents, each dated August 16, 2019 (collectively, the "BFYB Loan Documents").  Copies of the other BFYB Loan Documents relevant hereto, which include the (a) Line of Credit Note, (b) Term Note (Multiple Draws), and (c) Security Agreement, are attached hereto as Exhibits "B", "C" and "D", respectively.

20.     Pursuant to the terms of the Security Agreement (Section 1), as security for payment of all of the obligations of each of the BFYB Defendants to Bank Leumi under the BFYB Loan Documents, each of BFYB, Balance and Moreno granted to Bank Leumi a continuing lien on and security interest in all of the Collateral, which comprises all of BFYB's, Balance's and Moreno's assets, including without limitation, BFYB's, Balance's and Moreno's accounts receivable and proceeds thereof, inventory and cash.  Bank Leumi duly perfected its security interest in the Collateral by filing U.C.C. financing statements with the California Secretary of State, copies of which are collectively annexed hereto as Exhibit "E."

**Relevant Provisions from Letter Agreement and Security Agreement**

21.     Unless otherwise indicated, the term "Bank" in the BFYB Loan Documents is defined to mean Bank Leumi and the terms "Borrower" and "Grantor" are defined to mean Defendant BFYB.

22.     Section 6.3(a) of the Letter Agreement provides, in pertinent part, as follows:

> Borrower and its direct and indirect subsidiaries shall maintain all of their depository accounts with Bank, into which accounts all proceeds of accounts receivable and other sales and income from customers or clients of Borrower shall be deposited, and from which materially all disbursements shall be made.

23.     Section 2.1(n) of the Security Agreement grants Bank Leumi with rights of inspection and provides as follows:

> Grantor shall, at Grantor's reasonable expense, permit Bank (or its officers, agents, attorneys, or accountants) to examine or inspect the Collateral (wherever located) to obtain valuations or appraisals of the Collateral, and to audit and make extracts from such records or any of Grantor's books, ledgers financial reports, correspondence or other records related to the Collateral; and shall further answer promptly all of Bank's written or oral inquiries with respect thereto.

6799328.2

7

24.     Section 4 of the Security Agreement sets forth various matters that constitute events of default including, in pertinent part, as follows:

> The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an **"Event of Default"** under this Agreement. Furthermore, it shall also be an Event of Default hereunder if (a) demand by Bank under any Loan Document evidencing any of the Obligations that has a demand feature shall not be timely paid…(c) an uninsured material loss, theft, damage or destruction to any of the Collateral..(g) Bank receives any notice or evidence that Grantor or the Collateral may have directly or indirectly been engaged in any type of activity which, in Bank's reasonable judgment, might result in the loss, theft, damage or destruction of a portion of the Collateral would reasonably be expected to materially and negatively affect the Collateral or Bank's security interest therein.

25.     Section 5 of the Security Agreement provides:

> Following an Event of Default, Bank, at any time, at its option, may apply all of any net cash receipts from the Collateral (whether received on a sale of the Collateral or otherwise) to the payment, in whole or in part, of principal of and/or interest on any or all of the Obligations, whether or not then due

26.     During the continuance of an Event of Default, Section 6 of the Security Agreement provides as follows:

> Grantor hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments (i) *to set off against, and to appropriate and apply to the payment of any of the Obligations (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any of the Collateral and all amounts owing by Bank to Grantor* (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced), and (ii) pending any such action, to the extent necessary, to hold such amounts as Collateral to secure such Obligations and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposit so held as Bank, in its sole discretion, may elect.  Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of Bank, although Bank may enter such setoff on its books and records at a later time. (Emphasis supplied)

27.     Moreover, Section 3(j) of the Security Agreement provides Bank Leumi with a power of attorney, whereby BFYB "irrevocably authorizes and directs each account debtor to honor any demand by Bank to make payment on any account as directed by Bank, until such time that Bank shall notify such account debtor otherwise" and BFYB "further agrees to assist, and not to hinder, delay or impede, Bank in the collection and enforcement of the accounts."

28.     Under the definition of "Obligations" under the Letter Agreement, BFYB's obligations to Bank Leumi include, among other things, payment of "all principal, interest, reimbursements, indemnities, fees and other charges in connection therewith".

29.     In this respect, under Section 11 of the Security Agreement, the "Costs and Expenses" payable to Bank Leumi include "all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with…(b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under this Agreement or any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to this Agreement of any of the Loan Documents."

**The Debt and Initial Defaults under the BFYB Loan Documents**

30.     Pursuant to the BFYB Loan Documents, Bank Leumi is entitled to conduct an annual field examination, pursuant to which Bank Leumi would examine the detailed activity of BFYB's accounts receivable, inventory, cash and accounts payable.  Bank Leumi engaged a field examiner to conduct its most recent examination in April 2021.  Following conclusion of that examination, in or around September 2021, as a result of certain issues arising from that examination, Bank Leumi engaged RedRidge to initiate a follow-up field examination.

31.     Although BFYB was obligated under the BFYB Loan Documents to continue to cooperate with Bank Leumi and its field examiner, BFYB failed to do so, and RedRidge was not able to complete the examination.  Between September and November 2021, BFYB's Chief Financial Officer ("CFO") failed to respond to repeated information requests from RedRidge leading Bank Leumi to recommend that BFYB retain an interim CFO.  BFYB retained an interim

1    CFO during this period.  However, after only a few days, BFYB fired the interim CFO.

2    Thereafter, BFYB continued to provide incomplete and inaccurate information and never fully

3    responded to RedRidge's inquiries.

4        32.    On December 23, 2021, RedRidge issued a report to Bank Leumi on its findings.

5    RedRidge confirmed that "the exam could not be completed due to lack of proper information,

6    multiple revisions, and unexplained variances and exceptions" as set forth in the report.  A copy

7    of the RedRidge report is attached hereto as Exhibit "F".

8        33.    In particular, RedRidge could not complete its review as result of multiple issues

9    that were not addressed by BFYB, including (a) unsatisfactory cash application tests to confirm

10   that funds that BFYB received are being properly applied per customer specifications, (b)

11   unsatisfactory accounts receivable invoice tests to confirm the accuracy and validity of reported

12   accounts receivable; and (c) lack of explanation for deposits and transfers in between BFYB's

13   payroll and operating accounts.  Moreover, RedRidge also noted the following deficiencies:

14   • **Multiple versions of A/R Aging report**:  BFYB provided multiple versions of its

15   accounts receivable aging reports, which contained numerous inconsistencies and errors, some of

16   which were subsequently revised without explanation.  The examiner noted variances between

17   the aging totals as reflected in the summary agings versus the aging totals in the account

18   receivable agings for the same month, leading the examiner to question the reliability and the

19   quality of the information being provided.  The question of accuracy of BFYB's books is further

20   exacerbated by the fact that BFYB uses as their accounting system QuickBooks, a software

21   which allows a user to change prior period data without leaving any audit trail.

22   • **Availability**: RedRidge could not calculate the net availability under the Letter

23   Agreement due to questions about the invoice dates on the accounts receivable aging and proper

24   cash application regarding the level of cash that remained unapplied as of August 2021.

25   • **Quality of Information and flow**:  Information flow remained slow throughout the exam

26   process and critical information needed to complete the exam was never furnished including, (a)

27   company prepared borrowing base certificates as of August 2021; (b) fiscal year end June 2021

28   financial statements; (c) income statements for the year to date ending August 2021 and the

corresponding prior period ended August 2020; (d) reconciliation of sales per accounts receivable statistics to sales per financial statements; (e) accounts receivable verification test remained open as of the report date; (f) cash application test and invoice test exceptions remained unanswered; (g) reconciliation of accounts payable aging to general ledger and financial statements; (h) discussion about potential PACA vendors and subsequent effects; (i) discussion of the reason for significant increase in revenues from customer "SNR-YWCA of San Gabriel Valley" from $1.1 million in August 2020 to $4.9 million in August 2021 and customer "SNR-County of Los Angeles WDACS" from $307,000 to $1.2 million for the same period; (j) discussion about the reason for significant increase in accounts receivable as of August 2021 at $16.6 million from $12.6 million as of August 2020; (k) discussion about the reason for significant increase in accounts payable as of August 2021 at $6.1 million from $3.4 million as of August 2020; (l) discussion about the increase in amounts due from affiliate by $1 million as of August 2021 to $4.9 million compared to $3.9 million as of August 2020; (m) discussion of reduction in subordinated debt from $700,000 in August 2020 to $245,000 in August2021; (n) discussion about the reason for significant increase in retained earnings as of August 2021 at $12.1 million from $6.8 million as of August 2020; (o) discussion of past due accounts receivable; and (p) explanation of testing exceptions including invoice test, cash application test, and credit memo test.

- **Application of Cash**.  Significant cash application exceptions were noted, with checks from certain customers being noted as received, but the corresponding accounts receivable remained listed as outstanding on the account receivable agings.

- **AR Invoicing**.  Testing of outstanding accounts receivable also proved unsatisfactory, given that the copies of certain invoices reviewed reflected higher invoice balances than the detailed invoices for the same services.

34.    The failure of BFYB to cooperate with the field examiner constituted an event of default under the BFYB Loan Documents.

35.    In addition to this default, BFYB had also failed to comply with other terms and conditions under the BFYB Loan Documents as follows:

(a)     Failure to comply with Section A.6.1(a) of the Letter Agreement by failing to provide Bank with Borrower's financial statements corresponding to the fiscal year ended on June 30, 2021, within the time frame set forth in such Section;

(b)     Failure to comply with Section A.6.1(d) of the Letter Agreement by failing to provide the Individual Guarantors' personal financial statements and state and federal income tax returns for the 2019 and 2020 fiscal years within the time frame set forth in such Section;

(c)     Failure to comply with Section A.6.2(a) of the Letter Agreement by failing to maintain a Tangible Net Worth of not less than $7,000,000 as of March 31, 2020;

(d)     Failure to comply with Section A.6.2(b) of the Letter Agreement by failing to maintain an EBITDA of not less than (i) $5,900,000 as of March 31, 2020, (ii) $7,000,000 as of June 30, 2020, (iii) $7,398,000 as of September 30, 2020, (iv) $7,937,000 as of December 31, 2020, and (v) $8,818,000 as of March 31, 2021; and

(e)     Failure to comply with Section A.6.2(c) of the Letter Agreement by failing to maintain a Funded Debt to EBITDA ratio of not more than (i) 2.75 to 1.00 as of March 31, 2020, and (ii) 2.5 to 1.0 as of June 30, 2020 and September 30, 2020.

36.     As a result of the foregoing events of default (the "Existing Specified Defaults"), by letter dated November 5, 2021 entitled "Notice of Default and Reservations of Rights," Bank Leumi notified BFYB of the Existing Specified Defaults and of Bank Leumi's reservations of rights with respect thereto.  A copy of the November 5, 2021 default letter is attached as Exhibit "G."

37.     In addition to the Existing Specified Events of Default set forth in the Notice of Default, an additional Event of Default occurred after November 5, 2021.  Namely, BFYB failed to pay all principal, interest and other charges, whether accrued or accruing thereon, due and owing to Bank Leumi on or before November 16, 2021, the Line of Credit Maturity Date (the "Additional Default" and, together with the Existing Specified Defaults, the "Specified Defaults").  As a result of the occurrence and continuance of the Specified Defaults, by default letter dated November 26, 2021 entitled "Notice of Default," a copy of which is annexed as

12

Exhibit "H", Bank Leumi provided notice to BFYB that all BFYB Obligations, including principal, interest and other charges set forth in the Letter Agreement, the Notes, and other BFYB Loan Documents became immediately due and payable in the sum of not less than $16,531,695.41.

**BFYB's Refusal to Cooperate with Bank Leumi's Agents**

38.     After BFYB failed to pay the BFYB Obligations, after the maturity date and after due demand, Bank Leumi provided notice to BFYB, in a letter entitled "Notice of Lender's Exercise of Certain rights," in accordance with its rights under Section 2.1(n) of the Security Agreement, on December 10, 2021.  Among other rights, Bank Leumi notified the BYFB Defendants that Bank Leumi's financial consultant, Paladin, would arrive at BFYB's place of business at 9:00 a.m. on December 13, 2021 to examine and inspect the Collateral and that Bank Leumi expected that BFYB would grant Paladin access at that time and make a representative available to answer promptly all of Bank Leumi's written or oral inquiries with respect thereto. A copy of the December 10, 2021 notice letter is annexed hereto as Exhibit "I."

39.     In addition, in the December 10, 2021 notice letter, Bank Leumi provided notice to BFYB that if Paladin was not granted access and/or BFYB did not cooperate, Bank Leumi would provide notice to BFYB's account debtors that any proceeds owed to BFYB shall be directed and paid to Bank Leumi.

40.     When Paladin arrived at BFYB's offices on December 13, 2021, its representative was refused access.  Although Paladin was granted access on Christmas Eve for a short visit with the BYFB Defendants' CEO, Castillo, no additional information has been provided to either Paladin or RedRidge, despite repeated requests.  Notably, during that meeting, BFYB's CEO, Castillo, acknowledged the BFYB Defendants were receiving cash collections from their customers, which had not been deposited at Bank Leumi, and were paying their unsecured trade vendors and other bills with the proceeds thereof.

41.     The BYFB Defendants also stopped providing Bank Leumi with the reporting required under the Loan Documents.  During and since this time, Bank Leumi has suffered a complete failure of any visibility into BFYB's finances or the status of the Collateral.

42.     The lack of visibility concerned Bank Leumi and in particular whether BFYB was diverting proceeds or collections of accounts receivable to bank accounts other than the collection account at Bank Leumi, as Bank Leumi was no longer clearing any checks on BFYB's behalf and thus customers are likely making payments directly to BFYB which BFYB is using for its own benefit in contravention of the BFYB Loan Documents.

43.     To address the concern, Bank Leumi sent an additional Notice to BFYB dated December 16, 2021, a copy of which is annexed as Exhibit "J", providing notice to BFYB as follows:

> As you are aware, and have been previously notified in writing, all cash and non-cash proceeds of accounts receivable and other sales and income from customers or clients constitute Collateral (Section 1.4 of the Security Agreement) and are the property of Bank Leumi, a federally insured banking institution.  Any diversion of collateral proceeds, whether in the form of deposits into a bank account at a bank other than Bank Leumi, or any direction to customers not to remit to the Bank's collection account, are direct violations of Section 6.3(a) of the Letter Agreement and constitute additional Events of Default under Section 4(c) and (g) of the Security Agreement.

**Bank Leumi's Discovery of the Unauthorized Account and Diversion of Proceeds**

44.     On December 6, 2021, the BFYB Defendants provided Bank Leumi with a bare-bones Cash Flow Projection, commencing the week ending on December 12, 2021.  It projected total cash collections of approximately $4.68 million through December 26, 2021.  During this same period, the sum of $808,636 has been deposited in the BFYB Defendants' accounts at Bank Leumi, leaving the sum of in excess of $3.8 million for which the BFYB Defendants have failed to account.  Unfortunately, Bank Leumi's suspicions that BFYB was diverting Collateral, in violation of Bank Leumi's rights thereto, were confirmed.  Shortly after the December 16, 2021 Notice was delivered to the BFYB Defendants and the guarantors, Bank Leumi learned that BFYB had opened an unauthorized bank account at Sunwest Bank ("Unauthorized Account") and was collecting or depositing into that Unauthorized Account payments and proceeds from accounts receivable that BFYB was obligated to remit to Bank Leumi.  On December 13, 2021, BFYB transferred the sum of $235,000 from its account at Sunwest Bank to the account of CNG,

6799328.2

14

a company wholly owned by Defendant Spiro. A copy of the "Fedwire Receive Credit Advice" confirming the transfer of the funds from the Unauthorized Account at Sunwest Bank to the CNG account is attached hereto as Exhibit "K". In accordance with its rights under the BFYB Loan Documents, Bank Leumi placed a hold on approximately $106,000 in funds that remained in CNG's account at Bank Leumi, once Bank Leumi learned of the improper transfer of its Collateral by BFYB.

45.     By email dated December 17, 2021 Bank Leumi's counsel advised BFYB's counsel, Randy Snyder, Esq., that (a) establishment of a bank account at Sunwest Bank is an express violation of the terms of the Letter Agreement between BFYB and Bank Leumi, (b) the accounts receivable proceeds that were improperly deposited by BFYB into its account at Sunwest Bank constitute the proceeds of Bank Leumi's Collateral, and (c) BFYB was obligated to deposit the accounts receivable proceeds into the designated account at Bank Leumi. Moreover, Bank Leumi's counsel advised BFYB's counsel as follows:

> The diversion of proceeds of Bank Leumi's Collateral into an unauthorized bank account, and the subsequent transfer to an affiliated entity constitutes a conversion by [BFYB]. In accordance with the express terms of the Letter Agreement and the other Loan Documents, Bank Leumi has the right to freeze the CNG account. Bank Leumi hereby demands that all remaining proceeds in [BFYB]'s account at Sunwest Bank be transferred to Bank Leumi immediately. Further, [BFYB] is obligated to provide Bank Leumi with a full accounting of all proceeds received in the Sunwest account since its inception.

A copy of the December 17 email exchange is attached as Exhibit "L"

46.     As of December 30, 2021, BFYB owes Bank Leumi the aggregate principal amount of not less than $16,485,103.10 (exclusive of any accrued and accruing interest, fees, costs and expenses), no portion of which has been paid.

**Avalon Loan Documents and Sale of Property**

47.     Bank Leumi and Avalon entered into the Avalon Loan Agreement dated as of April 3, 2019, a copy of which is annexed as Exhibit "M," pursuant to which Bank Leumi extended financial accommodations to Avalon through two Promissory Notes ("Notes"), each

dated as of April 3, 2019 with one note in the original principal amount of $7,150,000 ("Note #1") and the other note in the original principal amount of $1,700,000 ("Note #2"). Copies of the Notes are attached hereto collectively as Exhibit "N".

48.    In connection with the Avalon Loan Agreement, the parties also executed certain additional loan documents, each dated April 3, 2019 (collectively with the Avalon Loan Agreement, the "Avalon Loan Documents") providing Bank Leumi with security interests in the Property. Copies of the Avalon Loan Documents relevant hereto, including the (a) Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, (b) Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits, and (c) Security Agreement, are attached as Exhibits "O", "P" and "Q", respectively.

49.    Avalon defaulted under the Avalon Loan Documents pursuant to Section 5.1 of the Loan Agreement, due to the Avalon's failure (a) to pay all principal, interest and other charges, whether accrued or accruing thereon, on November 1, 2021, the Maturity Date, (b) to complete certain Renovation Improvements to the Property by no later than November 1, 2021, and (c) to cure the Violations (as defined in the Loan Agreement) (the "Avalon Specified Defaults").

50.    By Notice of Default dated November 26, 2021, a copy of which is annexed as Exhibit "R", Bank Leumi notified Avalon of the Avalon Specified Defaults and further advised Avalon that as a result of the occurrence and continuance of the Avalon Specified Defaults, (i) all principal, interest and other charges set forth in the Avalon Loan Agreement, the Notes, and other Avalon Loan Documents  (the "Avalon Obligations") are immediately due and payable, and (ii) effective immediately, Bank Leumi shall charge interest at the Default Rate (as defined in the Notes) on the outstanding principal balance of the Avalon Obligations (calculated in accordance with the provisions of the Notes). As of December 30, 2021, the aggregate principal amount of the Avalon Obligations owing by Avalon to Bank Leumi under the Avalon Loan Documents is not less than $8,563,888.84 (exclusive of any accrued and accruing interest, fees, costs and expenses).

51.    Avalon has entered into a purchase agreement to sell the Property for $14 million. The closing is scheduled to occur on January 20, 2022.  After payment of closing costs and payment to Bank Leumi for the sum of the unpaid Avalon Obligations, it is anticipated that Avalon will distribute the balance of the sale proceeds in the estimated amount of approximately $5 million, to Avalon's owners, including to Spiro who indirectly owns 70% of Avalon through his interests in RDS.

**The Spiro and Spiro Trust Limited Guaranty**

52.    In connection with the BFYB Letter Agreement, and in consideration of and as an inducement for Bank Leumi in making loans or advances and otherwise extending credit and providing financial accommodations to BFYB pursuant to the Letter Agreement, Spiro and the Spiro Trust executed and delivered to Bank Leumi an absolute, unconditional and limited written guaranty of payment and performance with respect to any and all of BFYB's obligations to Bank Leumi (the "Spiro Guaranty").  A copy of the Spiro Guaranty, dated May 16, 2019 is attached hereto as Exhibit "S" and incorporated herein.

53.    The Spiro Guaranty provides that it is a guarantee of the full and prompt payment when due of any and all of BFYB's Obligations (as defined in the Letter Agreement) up to $5 million whether by acceleration, demand or otherwise.  The Spiro Guaranty is a guaranty of payment and not of collection and Bank Leumi is not obligated to make any request or demand upon or to pursue any of its rights against BFYB or any other person who may be liable for the payment of the Obligations, or to pursue any collateral security therefor, as a condition of Spiro and the Spiro Trust's liability.

54.    The Spiro Guaranty provides that Bank Leumi may pursue any of its remedies thereunder upon any of the Obligations without notice to Spiro and the Spiro Trust.

55.    The Spiro Guaranty further provides that Spiro and the Spiro Trust (a) waive personal service of any and all process and consent that such service of process be made by registered mail; and (b) consent to the jurisdiction of this Court in connection with any action concerning enforcement of any of the Spiro Guaranty and that the terms of the Spiro Guaranty will be interpreted in accordance with the laws of California.

6799328.2

17

56.    The Spiro Guaranty remains in full force and effect and no condition giving rise to termination of any of the Spiro Guaranty has occurred.

57.    Although notice to Spiro and the Spiro Trust was not required under the Spiro Guaranty, Spiro and the Spiro Trust have received notice of BFYB's multiple defaults under the Letter Agreement as each are recipients of the November 5, 16 and 27, 2021 letters to BFYB advising of the various "Events of Default" and demanding payment of the Obligations.

58.    To date, BFYB has not cured the various defaults under the Letter Agreement and the Obligations remain outstanding.

**The Balance, Moreno and Capital Stone Guaranty**

59.    In connection with the BFYB Letter Agreement, and in consideration of and as an inducement for Bank Leumi in making loans or advances and otherwise extending credit and providing financial accommodations to BFYB pursuant to the Letter Agreement, Balance, Moreno and Capital Stone (collectively, the "Corporate Guarantors") executed and delivered to Bank Leumi an absolute, unconditional and unlimited written guaranty of payment and performance with respect to any and all of BFYB's obligations to Bank Leumi (the "Corporate Guaranty").  A copy of the Corporate Guaranty, dated August 16, 2019 is attached hereto and incorporated herein as Exhibit "T".

60.    The Corporate Guaranty provides that it is a guarantee of the full and prompt payment when due of any and all of BFYB's Obligations (as defined in the Letter Agreement) whether by acceleration, demand or otherwise.  The Corporate Guaranty is a guaranty of payment and not of collection and Bank Leumi is not obligated to make any request or demand upon or to pursue any of its rights against BFYB or any other person who may be liable for the payment of the Obligations, or to pursue any collateral security therefor, as a condition of Balance's, Moreno's and Capital Stone's liability.

61.    The Corporate Guaranty provides that Bank Leumi may pursue any of its remedies thereunder upon any of the Obligations without notice to the guarantors.

62.    The Corporate Guaranty further provides that Balance, Moreno and Capital Stone (a) waive personal service of any and all process and consent that such service of process be

made by registered mail; and (b) consent to the jurisdiction of this Court in connection with any action concerning enforcement of any of the Corporate Guaranty and that the terms of the Corporate Guaranty will be interpreted in accordance with the laws of California.

63.    The Corporate Guaranty remains in full force and effect and no condition giving rise to termination of the Corporate Guaranty has occurred.

64.    Although notice to Balance, Moreno and Capital Stone was not required under the Corporate Guaranty, each have received notice of BFYB's multiple defaults under the Letter Agreement as each are recipients of the November 5, 16 and 27, 2021 letters to BFYB advising of the various "Events of Default" and demanding payment of the Obligations.

65.    To date, BFYB has not cured the various defaults under the Letter Agreement and the Obligations remain outstanding.

## FIRST CAUSE OF ACTION

(Against BFYB and Does 1 through 50 for Breach of Contract)

66.     Bank Leumi repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.    Bank Leumi has performed its obligations under the Letter Agreement except to the extent excused, waived or discharged by or as a result of BFYB's conduct.

68.    BFYB's actions, as alleged above, demonstrate its multiple breaches under the Letter Agreement.

69.    BFYB has breached the Letter Agreement in at least the following respects, each of which constitutes an "Event of Default" under the Loan Agreement:

(a)    BFYB established an Unauthorized Account at Sunwest Bank, an institution other than Bank Leumi, which is an express violation of the terms of the Letter Agreement;

(b)    BFYB improperly deposited at least $235,000 of proceeds that constitute Bank Leumi's Collateral into its Unauthorized Account at Sunwest Bank rather than deposit those funds at Bank Leumi, thereby converting those proceeds;

(c)      BFYB failed to cooperate with Bank Leumi and its agents to complete the ongoing collateral field examination;

(d)      BFYB refused to permit Bank Leumi and its agents to visit and inspect BFYB's properties or to review, audit, check and inspect the Collateral and BFYB's books and records;

(e)      BFYB failed to pay to Bank Leumi all principal, interest and other charges, whether accrued or accruing thereon, on or before November, 16, 2021, the Letter Agreement maturity date;

(f)      BFYB failed to provide Bank Leumi with BFYB's financial statements corresponding to the fiscal year ended on June 30, 2021; and

(g)      BFYB failed to provide the individual guarantor's personal financial statements and state and federal income tax returns for the 2019 and 2020 fiscal years.

70.      By reason of the foregoing, Bank Leumi has suffered damages of at least $16,400,000 in principal, plus interest, costs and allowable fees and expenses, including without limitation attorney's fees.

## SECOND CAUSE OF ACTION

(Against the BFYB Defendants and Does 1 through 50 for Money Had and Received)

71.      Bank Leumi repeats and realleges the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.      The BFYB Defendants failed to cause payments of accounts receivable to be remitted to Bank Leumi, including by diverting customer receipts to other banks -- an express violation of the terms of the Letter Agreement thereby interfering with Bank Leumi's rights to the Collateral.

73.      As a result, the BFYB Defendants received payments on accounts receivable which they were required to hold in trust for the benefit of Bank Leumi and to immediately deliver such payments to Bank Leumi, as required by the Letter Agreement.

74.     By reason of the foregoing, Bank Leumi is entitled to a money judgment in an amount to be determined at trial for all amounts improperly received by the BFYB Defendants that were required to be delivered to Bank Leumi.

### THIRD CAUSE OF ACTION

(Against the BFYB Defendants and Does 1 through 50 for Claim and Delivery/Turnover)

75.     Bank Leumi repeats each of the allegations set forth in paragraphs 1 through 74 above, as though fully set forth herein.

76.     Pursuant to Section 5 of the Security Agreement, upon the occurrence of an Event of Default, Bank Leumi is entitled to, among other things, (a) enter upon the premises of BFYB where any property in which Bank Leumi has an interest is located and remove such property therefrom, it being the obligation of BFYB to assemble and make available such property for removal by Bank Leumi, (b) sell all or part of any assets of BFYB in which Bank Leumi has a security interest at public or private sale, and (c) exercise any and all rights and remedies of a creditor under the Uniform Commercial Code or other applicable law.

77.     Based upon the Events of Default, Bank Leumi is entitled to immediate possession of the Collateral.

78.     By reason of the foregoing, Bank Leumi is entitled to and demands a judgment directing the BFYB Defendants to immediately surrender to Bank Leumi possession of the Collateral.

### FOURTH CAUSE OF ACTION

(Against the BFYB Defendants, Spiro, the Spiro Trust and Does 1 through 50 for Conversion)

79.     Bank Leumi repeats and realleges the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

80.     The BFYB Defendants, Spiro and the Corporate Guarantors failed to cause payments of accounts to be remitted to Bank Leumi, including by diverting to other banks funds that the BFYB Defendants collected on accounts receivable.

81.     Under the terms of the BFYB Loan Documents, Bank Leumi has the right of possession to the funds collected by the BFYB Defendants on accounts receivable.

82.     By diverting the funds, the BFYB Defendants, Spiro and the Spiro Trust acted in a wrongful act that is inconsistent with Bank Leumi's right to possession of the funds.

83.     By reason of the foregoing, Bank Leumi has been damaged and is entitled to a money judgment in an amount to be determined at trial for all amounts converted by the BFYB Defendants, Spiro and the Spiro Trust that were required to be delivered to Bank Leumi.

84.     In doing the acts and things alleged herein, each of the BFYB Defendants, Spiro and the Spiro Trust have been guilty of malice, oppression and fraud, and as a result thereof, Bank Leumi is entitled to punitive damages from the BFYB Defendants, Spiro and the Spiro Trust in an amount to be determined according to proof at trial.

## FIFTH CAUSE OF ACTION

(Against All Defendants for Permanent Injunction)

85.     Bank Leumi repeats and realleges the allegations contained in paragraphs 1 through 84as if fully set forth herein.

86.     BFYB has violated, and is continuing to violate, Bank Leumi's rights under the BFYB Loan Documents and is actively impairing Bank Leumi's rights with respect to the Collateral, including conversion of payments and proceeds of accounts receivable that are required to be paid to Bank Leumi.

87.     For example, BFYB (a) has interfered with, and is continuing to interfere with, Bank Leumi's rights to the Collateral by failing to cause all payments of accounts receivable to be remitted to Bank Leumi, including by opening an Unauthorized Account at Sunwest Bank and then depositing proceeds into the Unauthorized Account and transferring funds from the Unauthorized Account into an account owned by CNG – a company wholly owned by Spiro - rather than to its designated account at Bank Leumi in contravention of the BFYB Loan Documents; and (b) has refused, and is continuing to refuse, to permit Bank Leumi to enter its premises to inspect BFYB's properties or to review, audit, check and inspect the Collateral and BFYB's books and records, as expressly permitted by the BFYB Loan Documents.

VERIFIED COMPLAINT
000195

1    88.    BFYB has already caused, and is continuing to cause, irreparable injury to Bank

2    Leumi by, among other things, (i) preventing Bank Leumi from monitoring the Collateral

3    including collections of accounts receivable, thereby placing the Collateral at imminent risk of

4    irreparable loss, and (ii) depriving Bank Leumi of any means of ascertaining whether or not

5    BFYB is diverting additional collections on accounts receivable or other Collateral that Bank

6    Leumi is entitled to receive under the BFYB Loan Documents.

7    89.    Bank Leumi has no adequate remedy at law for the injuries currently being

8    sustained.

9    90.    Accordingly, Bank Leumi respectfully requests that the Court issue a permanent

10    injunction: (a) directing and compelling the BFYB Defendants and each of their agents, officers,

11    directors and employees, and all those acting in combination and concert with them, including

12    without limitation all persons and entities named as Defendants herein, to (i) turn over any and

13    all payments and proceeds they have received which were not deposited into the BFYB

14    Defendants' respective accounts at Bank Leumi; (ii) continue to turn over any and all payments

15    and proceeds they receive after the issuance of any preliminary injunction, that constitute and are

16    included in the Collateral, which payments and proceeds the BFYB Defendants are obligated to

17    remit to Bank Leumi; (iii) provide an accounting to the Court regarding all such payments and

18    proceeds received; and (iv) to provide to Bank Leumi for inspection each of the BFYB's

19    Defendants' books and records and to provide to Bank Leumi, and its agents and consultants,

20    access to the BFYB Defendants' offices, including the BFYB Defendants' computers and

21    information stored on computer, hard drive and email; and (b) directing Avalon and its agents,

22    officers, directors and employees, and all those acting in combination and concert with them,

23    including without limitation Spiro and RDS, to hold in escrow a portion of the excess proceeds

24    (after payment of closing costs and payment to Bank Leumi of the amounts owed to Bank Leumi

25    under the Avalon Loan Agreement) from the sale of the Property that would be paid to RDS (as

26    Spiro is an 82.5% owner of RDS).

27    ## SIXTH CAUSE OF ACTION

28    (Against Spiro and Spiro Trust for Breach of Guaranty)

VERIFIED COMPLAINT
000196

91.    Bank Leumi repeats each of the allegations set forth in paragraphs 1 through 90 above as if fully set forth herein.

92.    The BFYB Obligations remain due, owing and unpaid as alleged herein.

93.    Spiro and the Spiro Trust guaranteed payment of the BFYB Obligations but have not paid any amount thereon.

94.    By reason of the foregoing, and pursuant to the terms of the Spiro Guaranty, there is now due and owing from Defendants Spiro and the Spiro Trust to Bank Leumi the principal sum of $5,000,000, plus attorney's fees and expenses.

## <u>SEVENTH CAUSE OF ACTION</u>

### (Against the Corporate Guarantors for Breach of Guaranty)

95.    Bank Leumi repeats each of the allegations set forth in paragraphs 1 through 94 above as if fully set forth herein.

96.    The BFYB Obligations remain due, owing and unpaid as alleged herein.

97.    Balance, Moreno and Capital Stone guaranteed payment of the BFYB Obligations but have not paid any amount thereon.

98.    By reason of the foregoing, and pursuant to the terms of the Corporate Guaranty, there is now due and owing from Defendants Balance, Moreno and Capital Stone to Bank Leumi the principal sum of not less than $16,400,000, plus attorney's fees and expenses..

**WHEREFORE**, Plaintiff Bank Leumi prays for judgment against Defendants BFYB, Avalon, Balance, Moreno, Capital Stone, Spiro, the Spiro Trust, and RDS as follows:

(1)    For damages as against Defendants BFYB, Balance, Moreno and Capital Stone in the sum of $16,400,000 plus damages in such further sums as may be sustained and as are ascertained before final judgment herein;

(2)    For punitive damages as against Defendants BFYB, Balance, Moreno, Capital Stone, Spiro and the Spiro Trust in an amount to be determined according to proof;

(3)    For a permanent injunction (a) directing and compelling the BFYB Defendants and each of their agents, officers, directors and employees, and all those acting in combination and concert with them, including without limitation all persons and entities named

VERIFIED COMPLAINT
000197

as Defendants herein, to turn over to Bank Leumi any payments they receive or have received from accounts receivable that constitute Bank Leumi's Collateral, and to provide an accounting to the Court regarding such payments; and (b) directing and compelling the BFYB Defendants and each of their agents, officers, directors and employees, and all those acting in combination and concert with them, including without limitation all persons and entities named as Defendants herein, to provide to Bank Leumi for inspection BFYB's books and records and to provide to Bank Leumi, and its agents and consultants, access to BFYB's offices, including BFYB's computers and information stored on computer, hard drive and email; and (c) directing Avalon and its agents, officers, directors and employees, and all those acting in combination and concert with them, including without limitation Spiro and RDS, to hold in escrow a portion of the excess proceeds (after payment of closing costs and payment to Bank Leumi of the amounts owed to Bank Leumi under the Avalon Loan Agreement) from the sale of the Property that would be paid to RDS;

(4)    For damages as against Defendants Spiro and the Spiro Trust in the sum of $5,000,000;

(5)    For attorney's fees as may be recoverable by contract or by law;

(6)    For prejudgment interest;

(7)    For costs of suit herein incurred; and

(8)    For such other and further relief as the Court deems proper just, equitable and proper.

Dated:        January 3, 2022            LEVY, SMALL & LALLAS
                                         TOM LALLAS
                                         MARK D. HURWITZ

                                         OTTERBOURG P.C.
                                         ANDREW KRAMER
                                         JOHN BOUGIAMAS

                                         By: _____ *Mark Hurwitz* _____
                                              Mark D. Hurwitz
                                         Attorneys for Plaintiff Bank Leumi USA

6799328.2                            26

# **VERIFICATION**

**CASE TITLE**:        BANK LEUMI USA, V. BETTER 4 YOU BREAKFAST, INC.

I, Ed Park, declare:

`        I am a First Vice President and Senior Relationship Manager of Bank Leumi USA, the Plaintiff in this action, and am authorized to make this verification for and on its behalf.  I am informed and believe and on that ground allege that the matters stated in the foregoing Verified Complaint are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 2, 2022 at Los Angeles, California.

DocuSigned by:

*Ed Park*

1D054C361216497...

ED PARK

VERIFIED COMPLAINT
000200

# EXHIBIT A



August 16, 2019

Better 4 You Breakfast, Inc.
20715 Avalon Blvd.
Carson, CA 90746
Attention: Robert Douglas Spiro, Jr.

    Re:  $12,500,000 Line of Credit
       $6,750,000 Term Loan (Multi-Draw)

Ladies and Gentlemen:

    This letter agreement (this "**Letter Agreement**"), together with the other Loan Documents (as defined in Section B below) sets forth the terms of those certain loans and other credit accommodations by Bank Leumi USA ("**Bank**", "**we**" or "**us**") to Better 4 You Breakfast, Inc., a corporation organized under the laws of the State of California ("**Borrower**" or "**you.**")

A.  **Credit Terms**.

1.  **Facilities**.

    1.1  **Line of Credit**.  Bank hereby agrees to make available to Borrower a line of credit ("**Line of Credit**") under which Borrower may request and Bank, subject to the terms and conditions contained herein and in the Line of Credit Note (as defined below), shall make advances to Borrower from time to time up to the earlier to occur of (i) August 16, 2021 and (ii) the acceleration of the maturity of the amounts due hereunder upon an Event of Default (as defined in the applicable Note) (the "**Line of Credit Maturity Date**"), in an amount not to exceed at any time the Maximum Line of Credit Amount, the proceeds of which shall be used for working capital or other general purposes of Borrower, including as set forth in Section A.5.16 hereof. The "**Maximum Line of Credit Amount**" shall mean $12,500,000. The Maturity Date may be extended by Bank in its sole discretion by written notice to Borrower. Borrower's obligation to repay advances under the Line of Credit shall be evidenced by a promissory note in form and content satisfactory to Bank (the "**Line of Credit Note**"), the terms of which are incorporated herein by this reference.

    1.2  **Repayment**.  Subject to the limitations set forth herein and in the Line of Credit Note, Borrower may borrow, repay and re-borrow advances under the Line of Credit until the Line of Credit Maturity Date on the terms and conditions set forth in the Line of Credit Note dated as of even date herewith. The principal balance outstanding on the Line of Credit, together with all accrued but unpaid interest thereon, shall be due at the Line of Credit Maturity Date, all as more particularly set forth in the Line of Credit Note.

1.3   **Commercial Cards**.   Borrower may request during the term hereof commercial cards from Bank; provided, however the aggregate outstanding amount under such commercial cards shall not exceed $500,000 at any time. The availability of Bank's commercial card program is in Bank's sole discretion, and shall be subject to the additional terms and conditions of the agreements, applications and other documents required by Bank in connection therewith. Borrower shall pay Bank's standard fees in connection with Bank's commercial card program.

1.4   **ACH**.   Borrower may request during the term hereof that Bank originate ACH transactions; provided, however, the aggregate principal amount of pending (uncleared) ACH transactions shall not exceed $500,000 at any time. Each ACH transaction will be originated in Bank's sole discretion, and shall be subject to the additional terms and conditions of the agreements, applications and other documents required by Bank in connection therewith. Borrower shall pay Bank's standard fees in connection with each ACH transaction.

1.5   **Availability**.   Notwithstanding anything to the contrary contained herein, the aggregate outstanding principal amount of advances shall not exceed the Maximum Line of Credit Amount at any time. In addition, availability of advances under the Line of Credit shall be subject to the Borrowing Base, as defined below. At no time shall the advances under the Line of Credit exceed the Borrowing Base in effect at such time, and in such event, Borrower shall immediately repay to Bank and/or provide cash collateral satisfactory to Bank in an amount equal to such excess. As a condition to advances under the Line of Credit, Borrower shall deliver to Bank such periodic reports on its accounts and inventory, together with a certificate showing the calculation of the Borrowing Base, in such form and detail as requested by Bank, and in accordance with Bank's eligibility standards.

"**Borrowing Base**" means, as of any date of determination, an amount equal to the sum of:

(a)   85% of the value, as reasonably determined by Bank, of Eligible Accounts Receivable (defined below) of Borrower; minus

(b)   such reserves as Bank may reasonably deem proper and necessary from time to time based on customary standards and practices of asset-based lenders.

All of the foregoing shall be reasonably determined by Bank upon receipt and review of all reports required hereunder and such other documents and collateral information that Bank may from time to time require.

2

"**Eligible Accounts Receivable**" shall be determined by Bank in its reasonable discretion and in any event will consist solely of accounts (as such term is defined in the Uniform Commercial Code) created in the ordinary course of Borrower's business, upon which Borrower's right to receive payment is absolute and not contingent (other than customary warranty and indemnification provisions) upon the fulfillment of any conditions whatsoever, and in which Bank has a valid first priority perfected security interest and shall in no event include:

(i)     any account which is unpaid 120 days or more after its original invoice date or 90 days or more after its due date under the original terms of sale, whichever occurs first;

(ii)    that portion of any account for which there exists any right of setoff, defense or discount (except regular discounts allowed in the ordinary course of business to promote prompt payment) or for which any defense or counterclaim has been asserted;

(iii)   "Contra" accounts (i.e. offsetting liabilities) to the extent that Borrower both buys from and sells to an entity, the full amount due to that entity as a result of Borrower's buying from that entity; provided that the net value of any such accounts (if positive) may be "Eligible Accounts Receivable";

(iv)    any account which arises from the sale or lease to or performance of services for, or represents an obligation of, an employee, affiliate, partner, member, shareholder, officer, director, parent or subsidiary of Borrower;

(v)     any and all accounts of a debtor (which shall mean for purposes hereof any individual school payor source) when forty percent (40%) or more of the accounts from such debtor owing to Borrower and its subsidiaries are not eligible pursuant to clauses (i), (ii) or (iii) above;

(vi)    that portion of any account from an account debtor (which shall mean for purposes hereof any individual school payor source) which represents the amount by which Borrower's total accounts due from said account debtor exceeds twenty-five percent (25%) of Borrower's total Eligible Accounts Receivable;

(vii)   accounts owed by an account debtor located outside the United States and Canada;

(viii)  any account pursuant to which the account debtor is the United States of America, any state or any department,

3

agency or instrumentality of any of them, unless Borrower assigns its right to payment of such account to Bank pursuant to the Assignment of Claims Act of 1940, as amended (31 U.S.C. Section 3727, et seq. and 41 U.S.C. Section 15, et seq.), or has otherwise complied with other applicable statutes or ordinances to the satisfaction of Bank;

(ix)    any account of an account debtor who has commenced a voluntary case under the federal bankruptcy laws, as now constituted or hereafter amended, or made an assignment for the benefit of creditors, or if a decree or order for relief has been entered by a court having jurisdiction in the premises in respect of the account debtor in an involuntary case under any state or federal bankruptcy laws, as now constituted or hereafter amended, or if any other petition or other application for relief under any state or federal bankruptcy law has been filed against the account debtor, or if the account debtor has failed, suspended business, ceased to be solvent, called a meeting of its creditors, or consented to or suffered a receiver, trustee, liquidator or custodian to be appointed for it or for all or a significant portion of its assets or affairs;

(x)     any account pursuant to which the sale to the account debtor is on a bill-and-hold, guaranteed sale, sale-and-return, sale on approval, consignment or any other repurchase or return basis or is evidenced by chattel paper;

(xi)    any account under which the goods giving rise to such account have not been shipped and delivered to and accepted by the account debtor or the services giving rise to such account have not been performed by Borrower and accepted by the account debtor or the account otherwise does not represent a final sale;

(xii)   any account to the extent that Borrower has made any agreement with any account debtor for any deduction therefrom, except for discounts or allowances made in the ordinary course of business for prompt payment, all of which discounts or allowances are reflected in the calculation of the face value of the invoice related thereto;

(xiii)  any account pursuant to which any return, rejection or repossession of the merchandise has occurred;

4

(xiv)   any account which Bank believes, in its reasonable discretion, that collection of such account is insecure or that such account may not be paid by reason of the account debtor's financial inability to pay; and

(xv)   other accounts deemed ineligible by Bank when Bank reasonably deems the creditworthiness or financial condition of the account debtor, or the industry in which the account debtor is engaged, to be unsatisfactory in any material respect.

In the event of a failure to repay any excess of advances over the Borrowing Base (a "**Borrowing Base Deficiency**") within three (3) Business Days of written demand by Bank, then, at Bank's option, Borrower shall pay an Overadvance Charge equal to $1,000 (the "**Overadvance Charge**") per occurrence. Such Overadvance Charge is in lieu of the Late Charge (but of not Default Interest), if any, set forth and defined in the Line of Credit Note with respect to the failure to make such Borrowing Base Deficiency mandatory repayment. The Overadvance Charge is imposed in addition to, and not in lieu of, Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any Default Interest, fees and expenses. Nothing in this paragraph shall be construed as a waiver of or consent to any default or Event of Default caused by Borrower's failure to repay such Borrowing Base Deficiency.

1.6   **Term Loan.**   Bank hereby agrees, subject to the terms of the Term Note (as defined below) at any time prior to December 31, 2019, to make one more term loans to Borrower in the aggregate principal amount of up to Six Million Seven Hundred Fifty Thousand Dollars ($6,750,000) ("**Term Loan**"), the proceeds of which shall be used for general purposes of Borrower and as set forth in Section A.5.16 hereof. Borrower's obligation to repay the Term Loan shall be evidenced by a promissory note in form and content satisfactory to Bank (the "**Term Note**" and together with the Line of Credit Note, the "**Notes**" and each, a "**Note**"), the terms of which are incorporated herein by this reference.

1.7   **Repayment**.   The principal balance outstanding under the Term Loan and interest due with respect thereto, shall be repaid in accordance with the provisions of the Term Note. Borrower may prepay principal on the Term Loan solely in accordance with the provisions of the Term Note, including the payment of any prepayment premium, fee or indemnity set forth therein.

2.   **Interest**.   The outstanding principal balance of advances under the Line of Credit and the Term Loan shall bear interest at the rates, be computed in accordance with, and be payable on the dates and times as set forth in the

5

4835-1552-0416v3/104763-0009

000206

Line of Credit Note and the Term Note, respectively. Overdue amounts shall bear interest at a default rate above the otherwise applicable rate, as more particularly provided in the Notes.

3.  **Fees**.

3.1  **Upfront Fee**.        Borrower shall pay to Bank an upfront fee equal to $48,125, which upfront fee shall be fully-earned and non-refundable upon receipt thereof by Bank and which fee shall be payable on the date hereof.

3.2  **Unused Line Fee**.    None.

4.  **Security**.           As security for the Obligations (as defined below), Borrower shall execute and deliver, or cause to be executed and delivered to Bank, the following, in each case in form and substance satisfactory to Bank.

The term "**Obligations**" shall mean all liabilities, loans, advances, debts, obligations, covenants and duties of any kind or nature owing by Borrower, any Guarantor or any Pledgor to Bank, whether direct or contingent, now existing or hereafter arising and however evidenced and including all principal, interest, reimbursements, indemnities, fees and other charges in connection therewith and any exposure of Borrower, any Guarantor or any Pledgor to Bank under Bank's commercial card program; provided however that notwithstanding anything to the contrary contained herein, "Obligations" shall in no way include any liabilities or obligations, whether direct or contingent, now existing or hereafter arising, that Borrower, RDS (as defined below) or any Guarantor (as defined below) may have in respect of indebtedness owed by 20715 Avalon LLC to Bank.

4.1  **Unlimited Guaranty**.  One or more unlimited guaranty agreements pursuant to which the due and punctual payment and performance of the Obligations shall be unconditionally guaranteed jointly and severally by Balance Foods, LLC, a California limited liability company ("**Balance**"), Moreno Bros. Distributing, LLC, a California limited liability company ("**Moreno**", together with Balance, each a "**Subsidiary Guarantor**" and collectively, the "**Subsidiary Guarantors**") and Capital Stone Equity Fund I LP, a Delaware limited partnership (the "**Parent Guarantor**"). The revocation or attempted revocation, in whole or in part, of any such guaranty agreement by any Subsidiary Guarantor or the Parent Guarantor shall constitute an Event of Default under this Letter Agreement, the Notes and each other Loan Document.

4.2  **Limited Guaranty**.    A limited guaranty agreement pursuant to which the due and punctual payment and performance of the Obligations shall be jointly and severally guaranteed in an amount up to and including $5,000,000 by Robert Douglas Spiro Jr., an individual whose primary residence is located in the State of California (the

6

"**Individual Guarantor**") and the Spiro Revocable Family Trust (the "**Trust Guarantor**", and together with the Individual Guarantor, the Subsidiary Guarantors and the Parent Guarantor, collectively, the "**Guarantors**"). The revocation or attempted revocation, in whole or in part, of any such guaranty agreement by the Individual Guarantor or the Trust Guarantor shall constitute an Event of Default under this Letter Agreement, the Notes and each other Loan Document.

4.3     **Security Agreement**.     A security agreement (the "**Security Agreement**") granting Bank a valid and perfected first priority lien on and security interest in all of the assets of Borrower and the Subsidiary Guarantors, wherever located, and in each case whether existing on the closing date or thereafter acquired (collectively, including, without limitation, the Pledged Collateral, the "**Collateral**"); provided that the Collateral shall not include any "**Excluded Property**" as defined in the Security Agreement as of even date herewith. If any portion of the Collateral is located on property owned by a third party, or which is subject to a mortgage in favor of any person other than Bank, Borrower shall obtain and deliver to Bank such landlord, bailee, warehouseman, processor, mortgagee or other applicable waiver with respect to such Collateral as may be required by Bank, in form and content acceptable to Bank (collectively, "**Collateral Access Agreements**").

4.4     **Pledge Agreement**.     One or more pledge agreements granting Bank a valid and perfected first priority lien on and security interest in all of the equity interests in Borrower (collectively, the "**Pledged Collateral**") executed and delivered by each shareholder of Borrower (each, a "**Pledgor**").

Any Pledged Collateral evidenced by physical certificates shall be delivered to Bank, together with a signed, undated blank stock power in form acceptable to Bank. In all other cases, a notification and control agreement executed by the custodian and/or depository bank, as applicable, and in form and content acceptable to Bank, shall also be delivered with respect to the Pledged Collateral, as set forth in the Pledge Agreement.

4.5     **Negative Pledge Agreement.**     A negative pledge agreement providing that Borrower and the Subsidiary Guarantors shall not grant, create or suffer to exist any lien or encumbrance on any of its assets or properties or in any way limit the ability of Borrower or any direct or indirect subsidiary to grant a lien to secure the Obligations (other than in favor of Bank or as expressly permitted by Bank in writing and other than in connection with Excluded Property).

7

4.6    **Subordination.**    A subordination agreement dated as of even date herewith (the "**Subordination Agreement**") pursuant to which all of the debt owed by Borrower to RDS Ventures, LLC (and any assignees or successors thereof) (collectively, "**RDS**") shall be made subordinate to the Obligations owed to Bank under the Loan Documents (the "**RDS Note**", and together with any other subordinated indebtedness permitted under Section A.6.3(l), the "**Subordinated Debt**").

All liens and security interests covering the Collateral shall be on terms and pursuant to such security agreements, pledge agreements, UCC-1 financing statements, deeds of trusts or mortgages, and other documentation reasonably required by, and in form satisfactory to, Bank. Insurance covering all physical Collateral must be maintained in amounts and coverages reasonably acceptable to Bank and in any event in amounts usual and customary for similarly situated companies, and Bank shall be named as mortgagee, lender loss payee, and/or additional named insured, as applicable, with respect to all insurance policies of Borrower and each Subsidiary Guarantor. Borrower shall pay to Bank, immediately upon demand, the amount of all reasonable fees, costs and expenses expended or incurred by Bank (or on behalf of Bank) with respect to any of the Collateral, including without limitation, filing and recording fees and taxes, and costs of field examinations, audits, appraisals, environmental due diligence and/or title insurance.

5.    **Representations**.    To induce Bank to extend the credit accommodations described herein, and upon the making of each advance to Borrower, each of Borrower and each Subsidiary Guarantor represents and warrants to Bank as follows, which representations and warranties shall survive the execution of this letter and shall continue in full force and effect until the full and final payment, and termination, satisfaction and discharge, of all Obligations of Borrower to Bank subject to this letter and the termination of Bank's commitments to lend hereunder:

5.1    **Legal Status**.    Each of Borrower and each of its direct and indirect subsidiaries is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the power and authority to own its assets and to conduct its business as now or proposed to be carried on, and is qualified or licensed to do business (and is in good standing as a foreign corporation, if applicable) in all jurisdictions in which such qualification or licensing is required or in which the failure to so qualify or to be so licensed could have a material adverse effect on Borrower or any of its direct and indirect subsidiaries.

5.2    **Authorization; Enforceability**.    Each of Borrower and each Subsidiary Guarantor has full power and authority to enter into the transactions provided for herein, and this letter, the Notes and each other Loan Document (as defined below) to which it is a party, has been duly authorized,

8

and upon execution and delivery in accordance with the provisions hereof will each constitute the legal, valid and binding obligation of Borrower or the party which executes the same, enforceable in accordance with their respective terms.

5.3    **No Violations; No Conflicts**.

The execution, delivery and performance by Borrower and each Subsidiary Guarantor of each of the Loan Documents to which it is a party does not create, any default or violation by Borrower or such Subsidiary Guarantor, as applicable, of any provision of: (i) any law, rule, regulation, order, decree, judgment, condition or requirement applicable to or imposed upon Borrower any Subsidiary Guarantor by any law, court or other governmental authority; (ii) any contract, obligation, indenture or other instrument to which Borrower or any Subsidiary Guarantor is a party or by which Borrower or any Subsidiary Guarantor may be bound; or (iii) any organizational or governance document of Borrower of any Subsidiary Guarantor.  There does not exist any default or violation by Borrower or any Subsidiary Guarantor, as applicable, of any provision of: (i) any law, rule, regulation, order, decree, judgment, condition or requirement applicable to or imposed upon Borrower or any Subsidiary Guarantor by any law, court or other governmental or regulatory authority which could reasonably be expected to cause a Material Adverse Effect (as hereinafter defined); or (ii) any organizational or governance document of Borrower or any Subsidiary Guarantor.

5.4    **Litigation**.

Borrower has not been served with and to the best of Borrower's and any Subsidiary Guarantor's knowledge, there are no threatened, actions, suits, proceedings, claims, or investigations by or before any court or other governmental authority which could reasonably be expected to result in a material adverse change in or material adverse effect on (i) the business, assets, operations or financial condition of Borrower and its direct and indirect subsidiaries, taken as a whole, (ii) the ability of Borrower or any Guarantor to perform its obligations under the Loan Documents to which Borrower or such Guarantor is a party or (iii) any of the Collateral or Bank's security interest therein (a "**Material Adverse Effect**").

5.5    **Financial Statements; No Material Adverse Change**.

The most recent consolidated and consolidating financial statements of Borrower delivered to Bank are true, complete and accurate in all material respects and present fairly in all material respects the consolidated and consolidating financial condition of Borrower and its direct and indirect subsidiaries and the results of Borrower's consolidated and consolidating operations for the period covered thereby, and accurately disclose all of Borrower's and its subsidiaries' assets and liabilities, whether

9

accrued, absolute, contingent or otherwise, all prepared in accordance with generally accepted accounting principles consistently applied, except as expressly noted therein. Since the dates of such financial statements there has been no material adverse change in the consolidated financial condition of Borrower or the financial condition of any Guarantor, nor has Borrower or any Subsidiary Guarantor mortgaged, pledged, granted a lien or security interest in or otherwise encumbered any of its assets or properties, except Permitted Liens.

5.6    **Taxes**.    Each of Borrower and its direct and indirect subsidiaries has filed all returns required to be filed by it in connection with any federal, state or local tax or similar duty or charge assessed or imposed upon it, its operations or its property, and all such taxes assessed or imposed upon it, its operations or its property have been either paid or adequate reserve has been made therefor, and neither Borrower nor any Subsidiary Guarantor has any knowledge of any pending material adjustments of its income tax payable with respect to any year.

5.7    **Good Title**.    Each of Borrower and each Subsidiary Guarantor has good and marketable title to all of its assets, none of which is subject to any mortgage, indenture, pledge, lien, conditional sale contract, security interest, encumbrance, claim, trust or charge except as referred to in the financial statements delivered to Bank prior to the date hereof or except for Permitted Liens.

5.8    **Accounts**.    With respect to the accounts (as such term is defined in the Uniform Commercial Code), (a) each account represented by Borrower to be an Eligible Account Receivable for purposes of this Letter Agreement conforms to the requirements of the definition of an Eligible Account Receivable of the applicable type; (b) all account information listed on schedules delivered to Bank will be true and correct, subject to immaterial variance; and (c) Bank, its assigns, or agents shall have the right at any time and at Borrower's expense to inspect, examine, and audit Borrower's records and to confirm with account debtors the accuracy of such accounts.

5.9    **Permits, Franchises**.    Each of Borrower and its direct and indirect subsidiaries possesses all permits, memberships, franchises, contracts and licenses required and all trademark rights, trade name rights, patent rights, copyrights and fictitious name rights reasonably necessary to enable it to conduct the business in which it is now engaged.

5.10    **Other Obligations**.    None of Borrower nor any of its direct or indirect subsidiaries is in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation.

10

5.11   **No Event of Default**.    There is no event which is, or with notice or a lapse of time or both would be, a default or an Event of Default under this Letter Agreement or any other Loan Document.

5.12   **Compliance with Environmental Laws.**    None of Borrower nor any of its direct or indirect subsidiaries uses, stores, manufactures, generates, transports to or from, or disposes of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives, or related material on or in connection with any property or the business of Borrower or any of its direct or indirect subsidiaries on any property, and will not permit any lessee on any property to do so, except as have been disclosed in writing to Bank, and which are in full and complete compliance with any and all applicable federal, state and local laws, regulations, ordinances and rules. ("Toxic Substances," "Hazardous Materials," and "Hazardous Waste" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under any applicable federal, state or local law, regulation, ordinance or rule, or which are otherwise classified as hazardous or toxic under any of the foregoing applicable laws.)

5.13   **No ERISA Plan**.    Borrower does not, and its direct or indirect subsidiaries do not, maintain a plan under the Employee Retirement Income Security Act of 1974 other than in strict compliance therewith.

5.14   **Organizational Structure**.    Set forth on Schedule A.5.13 hereof is a complete and correct organizational structure chart of Borrower and its direct and indirect subsidiaries as of the date hereof, together with, for each entity listed thereon, (a) each person or entity holding ownership interests in such entity and (b) the percentage ownership interests held.

5.15   **Perfection Information**.    The information certificate delivered as of the date of this Agreement (the "**Information Certificate**") is true and correct in all material respects on the date hereof, and any updates thereto delivered after the date hereof are true and correct in all material respects on the date thereof, and Borrower will provide Bank prompt notice of any material change thereto.

Borrower has not, and its direct or indirect subsidiaries have not, in the past five years changed its legal name or been known by any other name, been party to a merger, consolidation or other change in structure, changed or had its registration number in its state of organization changed, except as may be set forth in the Information Certificate.

11

5.16 **Use of Proceeds**. No proceeds of the Line of Credit or the Term Loan will be used to purchase or carry any Margin Stock (as defined in Regulation U of the Board of Governors of the US Federal Reserve System (or any successor thereto) as in effect from time to time) or to extend credit to others for the purpose of purchasing or carrying any Margin Stock. The proceeds of Line of Credit and the Term Loan will be used for general corporate purposes of the Borrower, including on the date of this Letter Agreement for the payment in full of all outstanding indebtedness owed by Borrower to JPMorgan Chase Bank, N.A. and the payment in full of all operating leases in existence on the date of this Letter Agreement, except as disclosed on Schedule 1 hereto.

5.17 **Full Disclosure**. Without limitation of any other representation set forth herein, all information in the loan application, financial statements, certificates, or other documents and all other written information prepared and delivered by or on behalf of Borrower or any of its direct or indirect subsidiaries to Bank in obtaining the credit accommodations described in this Letter Agreement (as defined herein) is correct and complete in all material respects, and there are no omissions therefrom that result in such information being incomplete, incorrect or misleading in any material adverse respect as of the date thereof.

Each of Borrower and each Subsidiary Guarantor further warrants, represents and covenants that:

5.18 **Prohibited Person Compliance**. Neither Borrower, any Subsidiary Guarantor, any of their direct or indirect subsidiaries, or any of their respective affiliates is or will be a person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (d) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Neither Borrower, any Subsidiary Guarantor, any of their direct or indirect subsidiaries, or any of their respective affiliates will knowingly (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Borrower shall

12

deliver (from time to time) to Bank any such certification or other evidence as may be requested by Bank in its sole and absolute discretion, confirming each such representation.

5.19 **Foreign Corrupt Practices Act.** Neither Borrower nor any of its direct or indirect subsidiaries, nor to the knowledge of Borrower or any Subsidiary Guarantor, any agent or other person acting on behalf of the Borrower or any of its direct or indirect subsidiaries, has (a) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (b) made any unlawful payment to foreign or domestic government officials or employees or to any foreign or domestic political parties or campaigns from corporate funds, (c) failed to disclose fully any contribution made by Borrower or any of its direct or indirect subsidiaries (or made by any person acting on its behalf of which Borrower or any Subsidiary Guarantor is aware) which is in violation of law, or (d) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("**FCPA**"). Each of Borrower and each Subsidiary Guarantor shall cause any agent or other person acting on its behalf to comply with the FCPA, including maintaining and complying with all policies and procedures to ensure compliance with this act.

When any of the foregoing representations and warranties are based upon the knowledge of Borrower or a Subsidiary Guarantor, such knowledge shall be based upon the actual knowledge of Robert Douglas Spiro, Jr. or senior management of Borrower or any of the Subsidiary Guarantors, in each case of the date such representation and warranty is made, and without any independent duty to investigate or inquire.

6. **Covenants.** Each of Borrower and each Subsidiary Guarantor covenants and agrees that, until the Line of Credit is terminated and all commitments to lend thereunder are terminated, and all Obligations (including, without limitation, the Term Loans) of Borrower to Bank are indefeasibly paid in full, unless Bank waives compliance in writing or otherwise consents in writing:

6.1 **Reporting.** Borrower shall deliver to Bank, or cause to be delivered to Bank, in form and detail satisfactory to Bank:

(a) Annual Financial Statements. As soon as practical, but in any event not later than 120 days after and as of the end of each fiscal year, consolidated and consolidating balance sheets and statements of income and retained earnings of Borrower for the preceding fiscal year, together with the comparative financial statements for the corresponding periods of the preceding fiscal year, in the case of such

13

financial statements for the year ended June 30, 2019, prepared on a reviewed basis by independent certified public accountants acceptable to Bank, and in the case of such financial statements for the year ended June 30, 2020 and for each fiscal year thereafter, audited and certified without qualification by independent certified public accountants acceptable to Bank;

(b)    Quarterly Financial Statements.    As soon as practical, but in any event not later than 45 days after and as of the end of each fiscal quarter (including the last quarter of Borrower's fiscal year), consolidated and consolidating balance sheets and statements of income and retained earnings of Borrower for such quarter and for the period commencing at the beginning of such fiscal year and ending on the last day of such quarter, together with the comparative financial statements for the corresponding periods of the preceding fiscal year, prepared and duly certified as complete and correct by the chief financial officer, or other duly authorized employee of Borrower reasonably acceptable to Bank (subject to the absence of footnotes and normal year-end adjustments);

(c)    Tax Returns (Parent Guarantor).    As soon as practical, but in any event not later than 30 days after filing, federal and state tax returns (including all schedules) and/or extension documentation for each calendar year for Parent Guarantor;

(d)    Financial Statements (Individuals).    Not later than 30 days after filing, federal and state income tax returns (including all schedules and/or extension documentation) for such calendar year for the Individual Guarantor, together with personal financial statements (in form reasonably acceptable to Bank);

(e)    Accounts.    As soon as practical, but in any event not later than 15 days after and as of the end of each month, a schedule aging from invoice date all accounts receivable of Borrower and a summary trial balance of all accounts payable of Borrower;

(f)    Borrowing Base Certificates.    As soon as practical, but in any event not later than 15 days after and as of the end of each month, a borrowing base certificate in form and substance acceptable to Bank and certified by an authorized officer of Borrower;

14

(g) Projections.    As soon as practical, but in any event not later than sixty (60) days after and as of the end of each fiscal year, projections for Borrower for the next succeeding fiscal year, on a quarterly basis and for the following fiscal year on an annual basis, including a balance sheet, as at the end of each relevant period and for the period commencing at the beginning of the fiscal year and ending on the last day of such relevant period, such projections and certified by an authorized officer of Borrower as being based on reasonable estimates and assumptions taking into account all material facts and information then known (or then reasonably available to Borrower);

(h) Compliance Certificates.    Together with each of the items described in clause A.6.1(b) above, a certification, in form and substance reasonably acceptable to Bank, by the chief financial officer or other duly authorized employee of Borrower reasonably acceptable to Bank, as to (i) Borrower's compliance with the financial covenants set forth in Section 0 below for the applicable fiscal period(s) then ended (including detailed calculations necessary to show such compliance), (ii) the occurrence of any defaults under any Loan Document during or with respect to such period(s), and if so, the nature thereof and the corrective measures proposed by Borrower with respect thereto and (iii) there being no updates to the information certificate delivered as of the date hereof (or the most recent updated information certificate delivered after the date hereof) or, if there are any such updates, an updated information certificate and a certification that such certificate is true, correct and complete in all material respects;

(i) Notices of Default.    Borrower and any Subsidiary Guarantor shall advise Bank immediately upon its becoming aware that a default or Event of Default has occurred under the Loan Documents (defined below);

(j) Notices of Litigation.    Borrower and any Subsidiary Guarantor shall advise Bank immediately upon its becoming aware of any pending or threatened litigation or other matter described in Section A.5.4 above; and

(k) Other Information.    Borrower and any Subsidiary Guarantor shall promptly provide such additional information as Bank reasonably requests from time to time.

15

Unless otherwise set forth herein, all financial statements to be delivered pursuant to this Letter Agreement shall be made and prepared in accordance with generally accepted accounting principles in the United States of America in effect from time to time (including principles of consolidation where appropriate) ("**GAAP**"), consistently applied and (where appropriate for interim statements) subject to the absence of footnotes and to normal year-end adjustments. All financial or accounting terms used herein shall (unless otherwise defined herein) have the meanings ascribed to such terms under GAAP, and prepared on a consolidated and consolidating basis. The fiscal year of Borrower is from July 1 to June 30. The fiscal year of each direct or indirect subsidiary of Borrower is from July 1 to June 30.

6.2    **Financial Covenants**. Borrower shall comply with the following financial covenants:

(a)    Minimum Tangible Net Worth.

Borrower shall maintain a Tangible Net Worth of not less than, as of the end of each fiscal quarter, (a) for the quarter ending September 30, 2019, $5,500,000, (b) for the quarter ending December 31, 2019, $6,000,000, (c) for the quarter ending March 31, 2020, $7,000,000 and (d) as of the end of each quarter thereafter, $7,500,000.

As used herein: "**Tangible Net Worth**" shall mean the sum of Borrower's owners' equity, plus Subordinated Debt, less any amounts owing from any subsidiaries, affiliates, employees or other related parties, less goodwill, investments, any write-up in the book value of any asset, inventory or other security appearing on the asset side of the balance sheet and any other assets deemed "intangibles" in accordance with GAAP.

(b)    Minimum EBITDA.

Borrower shall maintain EBITDA of not less than, as of the end of each fiscal quarter set forth below, the amount set forth below that corresponds to the period ending as of the end of such fiscal quarter:

| Trailing Four-Fiscal Quarter Period Ending | Minimum EBITDA |
|---|---|
| September 30, 2019 | $3,300,000 |
| December 31, 2019 | $4,700,000 |
| March 31, 2020 | $5,900,000 |
| June 30, 2020 | $7,000,000 |
| September 30, 2020 | $7,398,000 |
| December 31, 2020 | $7,937,000 |
| March 31, 2021 | $8,818,000 |
| June 30, 2021 and | $9,966,000 |

16

| thereafter | |
| --- | --- |

"**EBITDA**" means, for any trailing four-fiscal quarter period, consolidated net income of the Borrower and its subsidiaries for such period *plus* (a) without duplication and to the extent deducted in determining consolidated net income for such period, the sum of (i) interest expense for such period, (ii) income tax expense for such period, (iii) all amounts attributable to depreciation and amortization expense for such period, (iv) any extraordinary charges for such period as determined by the Bank in its sole discretion, (v) business optimization expenses and other restructuring charges or reserves (which, for the avoidance of doubt, shall include, without limitation, the effect of inventory optimization programs, facility consolidations, employee retention and severance, systems establishment costs and excess pension charges), in each case as determined by the Bank in its sole discretion, (vi) any proceeds from business interruption insurance received during such period, and (vii) any other non-cash charges for such period (but excluding any non-cash charge in respect of an item that was included in consolidated net income in a prior period and any non-cash charge that relates to the write-down or write-off of inventory), *minus* (b) without duplication and to the extent included in consolidated net income, (i) any interest income, (ii) any extraordinary gains and (iii) any non-cash items of income for such period, all calculated for the Borrower and its Subsidiaries on a consolidated basis in accordance with GAAP.

(c)    Maximum Funded
Debt to EBITDA.

Borrower shall not permit its ratio of Funded Debt to EBITDA, as measured on a rolling four fiscal quarter basis, to exceed (a) for the quarter ending September 30, 2019, 5.0 to 1.0, (b) for the quarter ending December 31, 2019, 3.5 to 1.0, (c) for the quarter ending March 31, 2020, 2.75 to 1.0, (d) for the quarters ending June 30, 2020, September 30, 2020, December 31, 2020 and March 31, 2021, 2.5 to 1.0 and (e) as of the end of each quarter thereafter, 2.0 to 1.0.

As used herein: "**Funded Debt**" shall mean the sum of all Borrower's obligations for borrowed money, indebtedness evidenced by a written obligation to pay money, purchase money indebtedness including conditional sales or other title-retention agreements, indebtedness in respect of capitalized lease obligations

17

and indebtedness in respect of reimbursement obligations, excluding however any Subordinated Debt permitted hereunder.

(d)    Minimum Fixed Charge Coverage Ratio.    Borrower shall maintain a Fixed Charge Coverage Ratio, as measured on a rolling four fiscal quarter basis, of not less than (a) for the quarter ending September 30, 2019, 1.1 to 1.0, (b) for the quarter ending December 31, 2019, 1.2 to 1.0, and (c) as of the end of each quarter thereafter, 1.25 to 1.0.

As used herein: "**Fixed Charge Coverage Ratio**" shall mean, for the applicable measurement period, the ratio of (i) Borrower's EBITDA to (ii) the sum of Borrower's principal and interest payments on indebtedness (including capitalized lease obligations) that were paid or otherwise due during the applicable measurement period (as adjusted for prepayments), plus tax expense, plus any dividends and any other distributions on or with respect to any class of Borrower's equity or purchases, redemptions, acquisitions or retirements of any class of Borrower's equity, plus capital expenditures not funded with borrowed money.

Unless otherwise set forth herein, all calculations and determinations with respect to financial matters shall be made and prepared on a consolidated basis in accordance with GAAP , consistently applied and subject to normal year-end adjustments. All financial or accounting terms used herein shall bear the meanings ascribed to them under GAAP.

6.3    **Other Covenants**.    Each of Borrower and its direct and indirect subsidiaries shall comply, or cause compliance, with the following covenants:

(a)    Operating Accounts.    Borrower and its direct and indirect subsidiaries shall maintain all of their depository accounts with Bank, into which accounts all proceeds of accounts receivable and other sales and income from customers or clients of Borrower shall be deposited, and from which materially all disbursements shall be made. At the option of Bank, all interest payments, principal payments, reimbursements, and fees will automatically be deducted from Borrower's account(s) maintained with Bank. To the extent not already maintained with Bank, Borrower and each of its subsidiaries shall transfer its primary deposit accounts to Bank on or before September 30, 2019 and all of its deposit accounts to Bank by October 31, 2019. For all accounts (including but not limited to deposit accounts and securities accounts) not maintained

18

with Bank, Borrower shall enter into "springing" control agreements reasonably acceptable to Bank within 30 days of the date of this Agreement (or in the case of new accounts opened after the date of this Agreement, within 30 days of the date of the opening of such account).

(b)  Records; Inspection; Audits.

Each of Borrower and its direct or indirect subsidiaries shall maintain adequate books and records in accordance with GAAP consistently applied, and shall permit Bank, or its agents or other representatives, after prior written notice and at any reasonable time during normal business hours, to inspect, audit and examine such books and records, to make copies of the same and to inspect the properties of Borrower and its direct or indirect subsidiaries; provided however that, Borrower shall only be required to pay for one such inspection, audit or examination per calendar year (unless one or more inspections, audits or examinations occurs during the continuance of an Event of Default, in which case all of such inspections, audits or examinations during the continuance of an Event of Default shall be at Borrower's sole cost and expense).

Without limiting the foregoing, Bank (or its agent, consultant or representative) shall be entitled to perform field examinations and to conduct collateral audits, at Borrower's expense, on at least an annual basis but in any event as often as Bank reasonably deems necessary, in order to verify any or all of the Collateral, and each such field examination and collateral audit must be satisfactory to Bank in its reasonable discretion; provided, however, that Borrower shall only be responsible for the costs and expenses associated with a maximum of two (2) collateral audits performed in any calendar year, except when any default or Event of Default has occurred and is continuing.

(c)  Approvals; Compliance with Law.

Each of Borrower and its direct or indirect subsidiaries shall obtain, preserve and maintain all governmental and other licenses, permits, approvals, rights, privileges and franchises necessary for the ownership of its properties and conduct of its business, and shall comply with the requirements of all governmental laws, rules, regulations and orders applicable to it, its properties and/or its business.

(d)  Taxes.

Each of Borrower and its direct or indirect subsidiaries shall promptly pay and discharge all of its taxes,

19

assessments and other governmental charges prior to the date on which penalties are attached thereto, establish adequate reserves for the payment of taxes and assessments and make all required withholding and other tax deposits. Nothing herein shall be interpreted to require the payment of any tax, assessment or charge so long as its validity is being contested in good faith and by appropriate proceedings diligently conducted, and Borrower or the applicable subsidiary, as the case may be, has established an adequate reserve for any such expense.

(e)    Insurance.    Each of Borrower and its direct or indirect subsidiaries shall maintain and keep in force insurance of the types and in amounts customarily carried in similar lines of business and with respect to similar assets and properties, and shall deliver to Bank from time to time at Bank's request evidence of such insurance, together with a certification or endorsement naming Bank as lender loss payee, additional insured, mortgagee or otherwise as required by Bank.

(f)    Maintenance of Properties.    Each of Borrower and each Guarantor shall keep and maintain the Collateral and all properties useful or necessary to its business in good repair and condition.

(g)    Indebtedness.    Neither Borrower nor any of its direct or indirect subsidiaries shall create, assume, incur, guarantee, endorse (except endorsements in the course of collection), or permit or suffer to exist any indebtedness or other liabilities arising from any borrowing, loan or advance, except: (i) the Obligations in favor of Bank; (ii) open account trade debt (including operating leases) incurred in the ordinary course of business and not past due; (iii) otherwise as disclosed to Bank in writing prior to the date hereof and set forth on Schedule 1 and refinancings thereof on terms not less favorable to Borrower in any material respect or that increase the principal amount of indebtedness thereunder (other than in respect of accrued and unpaid interest and reasonable and customary financing fees), (iv) the RDS Note or any additional advances or loans by RDS to Borrower, so long as subordinated to the Obligations on terms set forth in the RDS Subordination Agreement dated as of even date herewith, (v) Subordinated Indebtedness (other than the RDS Note) owed to any third party only so long as such indebtedness is subject to a subordination agreement in form and substance satisfactory to Bank; and (vi) indebtedness in respect of which liens are

20

permitted under Section A.6.3(h)(iii) in an aggregate principal amount not to exceed $250,000.

(h)    Liens.

Neither Borrower nor any of its subsidiaries shall create, assume, incur, or permit or suffer to exist any mortgage, pledge, encumbrance, charge, or other lien (each of the foregoing, a "**Lien**"; provided, that in no event shall an operating lease entered into in the ordinary course of business or any precautionary UCC filings made pursuant thereto by an applicable lessor or lessee covering only the assets subject to such operating lease be deemed to be a Lien) upon, or security interest in, all or any portion of its property, now owned or hereafter acquired, including without limitation pursuant to any conditional sales or other title retention agreement, except the following (collectively referred to herein as "**Permitted Liens**"): (i) in favor of Bank; (ii) otherwise as disclosed to Bank in writing prior to the date hereof and set forth on Schedule 2 and refinancings thereof on terms not less favorable to Borrower in any material respect or that increase the principal amount of indebtedness thereunder (other than in respect of accrued and unpaid interest and reasonable and customary financing fees); and (iii) capital leases and purchase money security interests in personal property existing or created when such property is leased or acquired, as the case may be, provided that the principal amount of the indebtedness secured by each such security interest does not exceed the purchase price of the related property, does not exceed in the aggregate the amount of such indebtedness permitted hereunder and the amount and the Lien does not extend to any property other than the property so leased or acquired.

For the avoidance of doubt, neither Borrower nor any of its direct or indirect subsidiaries shall create, assume, incur, or permit or suffer to exist any mortgage, pledge, encumbrance, charge, or other lien upon, or security interest in, all or any portion of its property other than Permitted Liens

(i)    Fundamental Changes.

Neither Borrower nor any Subsidiary Guarantor shall liquidate or dissolve; nor convey, sell, transfer, lease, or sell and lease back, all or any substantial portion of its property, assets or business to any other entity; nor merge or consolidate with or into any other entity; nor acquire all or substantially all of the assets or equity of any other entity; nor form or acquire any new subsidiary; nor sell or dispose of any of the equity Borrower holds

21

in any subsidiary; nor dispose of any assets other than in the ordinary course of business consistent with past practice; nor make any material change in the nature of its business as conducted on the date hereof.

(j)  <u>Change of Control.</u>  Borrower shall not permit (i) any change in the equity ownership of any of its direct or indirect subsidiaries that results in Borrower failing to own, directly or indirectly, and free and clear of any lien or other encumbrance (other than in favor of Bank), 100% of the outstanding equity interest in Balance and at least 90% of the outstanding equity in Moreno or (ii) any person or group (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934) other than the Parent Guarantor to become the "beneficial owner" (as defined in Rules 13d-3 and 13d-5 under the Securities Exchange Act of 1934, except that any such Person, entity or group will be deemed to have "beneficial ownership" of all securities that such Person, entity or group has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of more than thirty-five percent (35%) of the voting power of all classes of ownership of Borrower.

(k)  <u>Loans or Investments.</u>  Borrower and the Subsidiary Guarantors shall not make or suffer to exist any investments in, or loans or advances to, any other entity except (i) advance payments or deposits against purchases made in the ordinary course of the regular business of Borrower and the Subsidiary Guarantors; (ii) direct obligations to the United States of America; (iii) any existing investments in, or existing advances to, any party set forth on Schedule 3; (iv) temporary advances to employees to cover expenses incurred in the ordinary course of Borrower's business consistent with past practice and not in excess of $50,000 outstanding at any one time; or (v) intercompany indebtedness subject to applicable subordination agreements specified in <u>Section A.6.3(l)</u>.

(l)  <u>Subordination.</u>  Borrower and, as applicable, each direct or indirect subsidiary of Borrower, shall enter into one or more subordination agreements, satisfactory in form and substance to Bank, subordinating the Subordinated Debt and any indebtedness among Borrower and its direct or indirect subsidiaries to the Obligations; <u>provided</u> that Borrower shall not make any payments in any form (including by way of set-off) on any Subordinated Debt or intercompany debt unless immediately prior to and after giving effect to such payments (i) Borrower is in

22

compliance with the financial covenants set forth in Section A.6.2 hereof; (ii) no default or Event of Default shall have occurred and be continuing; (iii) such payments are permitted under the terms of the applicable subordination agreement; (iv) no prepayments of any Subordinated Debt may be made and (v) in respect of any payments on any Subordinated Debt (other than intercompany debt), Borrower shall have provided a certificate to Bank and to the applicable subordinated creditor signed by a senior officer of Borrower demonstrating that (A) immediately prior to any payment of such Subordinated Debt, Borrower is in compliance with the financial covenants hereunder and (B) after giving effect to any payment of such Subordinated Debt, Borrower is in pro forma compliance with the financial covenants hereunder and certifying that no default or Event of Default exists under the Loan Documents. As of the date of this Letter Agreement, the only Subordinated Debt of the Borrower is the RDS Note and the only subordination agreement is the RDS Subordination Agreement.

(m)    Redemptions; Distributions.

Borrower shall not declare or pay any dividends or other distributions on or with respect to any class of its equity, or purchase, redeem, acquire or retire any of Borrower's equity interests (i) at any time prior to the delivery of its annual financial statements for the year ended June 30, 2019 and the accompanying review by independent certified public accountants as required by Section A.6.1(a), and (ii) at any time after the delivery of its annual financial statements for the year ended June 30, 2019 and the accompanying review by independent certified public accountants as required by Section A.6.1(a), unless, in the case of this clause (ii), (x) no default or Event of Default is then continuing or would result therefrom (including under the covenants set forth in Section A.6.2 hereof on a pro forma basis after giving effect to such payment based on the most recent quarterly financial statements provided to Bank) and (y) no more than an amount equal to 25% of Borrower's annual net profit (which in the case of the fiscal year beginning July 1, 2019, shall be based on the historical reviewed annual financial statements for the fiscal year ending June 30, 2019, and in the case of each fiscal year thereafter, shall be based on audited annual financial statements for the prior fiscal year) may be expended for such dividends, distributions, purchases, redemptions, acquisitions or retirements in any fiscal year (it being understood and agreed that amounts not so expended in

23

a particular fiscal year may not be carried over to subsequent fiscal years).

(n)    <u>Transactions With Affiliates.</u>

Neither Borrower nor any Subsidiary Guarantor shall enter into or be a party to any transaction including any purchase, sale, lease or exchange of property, the rendering of any service or the payment of any management, advisory or similar fees, with any affiliate (other than transactions among Borrower and a Subsidiary Guarantor or among Subsidiary Guarantors) unless such transaction is: (i) otherwise permitted by the terms of this Letter Agreement; (ii) in the ordinary course of business; and (iii) on fair and reasonable terms no less favorable to it than those that would have been obtained in a comparable transaction on an arm's length basis from an unrelated person.

(o)    <u>Material Contracts.</u>

Neither Borrower nor any Subsidiary Guarantor shall amend, supplement or otherwise modify (pursuant to a waiver or otherwise): its articles of incorporation, certificate of designation, operating agreement, bylaws or other organizational document, in each case, in any respect adverse to the interests of Bank, without Bank's prior written consent, not to be unreasonably withheld, conditioned or delayed.

(p)    <u>Burdensome Agreements</u>.

Except for this <u>Section 6.3</u> and any comparable covenant contained elsewhere in the Loan Documents, Borrower will not, and will ensure that its direct or indirect subsidiaries will not, enter into, or permit to exist, any contract, agreement or instrument that encumbers or restricts on the ability of any subsidiary to (i) pay dividends or make any other distributions to Borrower, (ii) pay any debt or other obligation owed to Borrower, (iii) make loans or advances to Borrower or (iv) provide a guaranty of the Obligations, or any renewals, refinancings, exchanges, refundings or extension thereof.

(q)    <u>Moreno Equity.</u>

Borrower shall not permit any portion of the 10% of the outstanding equity in Moreno not owned by Borrower to be sold, pledged, assigned or otherwise transferred to any individual that is not a United States citizen resident in the United States or to an entity that is not incorporated or otherwise organized in a state of the United States without the prior written consent of Bank.

24

B.  **Loan Documents**. Borrower, each Guarantor, and each Pledgor will execute and/or cause to be delivered to Bank this letter ("**Letter Agreement**"), and, to the extent a signatory thereto, the Line of Credit Note, the Term Note, the guarantee documents referenced in Section A.4.1 and Section A.4.2 hereof, the security and pledge documents referenced in Section A.4.3 and Section A.4.3 hereof, the negative pledge agreement referenced in Section A.4.5. hereof, the subordination agreement for the RDS Note, the Information Certificate, and such other documents, instruments, and agreements (including intellectual property security agreements, control agreements, financing statements and fixture filings) as Bank may reasonably request in connection with the transactions contemplated hereunder or to perfect or protect the liens and security interests granted to Bank in connection herewith (the Letter Agreement, together with the foregoing, collectively, the "**Loan Documents**"). A breach of any of the terms and conditions hereof or under any other Loan Document shall constitute an "Event of Default" hereunder on the terms set forth in the Notes (subject, in the case of a breach or default hereunder, to any explicit notice and or grace periods (if any) set forth in the Notes which may apply to the applicable breach or default hereof).

C.  **Conditions Precedent**. Prior to funding any portion of the Loans provided in the Loan Documents, Bank shall have received each of the Loan Documents, duly executed and in form and substance satisfactory to Bank, together with such other instruments, documents and items as Bank may reasonably request, all in form and substance satisfactory to Bank, such as: subordination agreement for the RDS Note, Collateral Access Agreements, original stock certificates for all certificated equity and original stock powers in connection therewith, certified resolutions, incumbency certificates or other evidence of authority; opinions of counsel to Borrower, the Pledgors and the Guarantors and evidence of cancellation of all commitments from and evidence of payment in full of all indebtedness to any creditor for borrowed money (other than debt expressly permitted hereunder, together with evidence of termination, satisfaction or discharge of all existing liens with respect thereto); and such other items as may be mutually agreed and set forth in a closing checklist (the "**Closing Checklist**"). Subsequent borrowings under the Notes may only be made in accordance with the terms and conditions set forth therein.

In accordance with the Closing Checklist provided to Borrower in connection with this Letter Agreement and the other Loan Documents, Borrower agrees to deliver to Bank the documents set forth under the heading "Post Closing Deliverables" set forth therein within the time frames set forth therein, and acknowledges and agrees that the failure to so deliver by such date any such item (in form and substance satisfactory to Bank) shall, at the option of Bank, constitute an Event of Default under the Obligations.

With respect to all additional advances hereunder, Borrower shall deliver to Bank a written request for an advance in form reasonably satisfactory to Bank, which shall state the amount and date of the advance, provide evidence satisfactory to Bank that the outstanding principal amount of the advances, including the requested advance, will not exceed the Borrowing Base, certify that all of the representations and warranties of Borrower and the Subsidiary Guarantors are true as of such date, and that no Default or Event of Default shall have occurred on or prior to such date.

D.  **Miscellaneous**.

1.  **Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Letter Agreement must be in writing delivered to Borrower at its address first set forth above, to Bank at its address at 555 W. 5th Street, Suite

3300, Los Angeles, CA 90013, Attention: Thomas Belli, with a copy of any notices of default or litigation under <u>Sections A.6.1(i)</u> or <u>A.6.1(j)</u> to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending  and to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment.  Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

2.     **Costs and Expenses**.  Borrower shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Letter Agreement and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of protection and preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Borrower or any other person or entity.

3.     **Entire Agreement**.  This Letter Agreement and the other Loan Documents constitute the entire agreement between Borrower and Bank with respect to each credit subject hereto and supersede all prior negotiations, communications and agreements (written or oral), discussions and correspondence concerning the subject matter hereof.  Borrower and Bank agree that any inconsistency or discrepancy between the provisions of this Letter Agreement and any other documentation evidencing the Obligations of Borrower to Bank shall be resolved in the manner most favorable to Bank.

4.     **Severability**.  The provisions of this Letter Agreement and each other Loan Document are severable and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction or any other provision of any of the Loan Documents in any jurisdiction.

5.     **Limitation of Liability**.  To the fullest extent permitted by applicable law, neither Borrower nor Bank shall assert, and hereby waives any claim against the other, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Letter Agreement, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof; <u>provided</u> <u>however</u> that the foregoing shall in no way limit the indemnification obligations of Borrower set forth in any Loan Document for any special, indirect, consequential or punitive

26

damages against Bank in any way related to the Loan Documents or the Obligations in connection with any suit or proceeding brought by a party other than Borrower.

6.  **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Letter Agreement nor consent to any departure by Borrower or Subsidiary Guarantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  Notwithstanding the foregoing, Bank may modify this Letter Agreement or any of the other Loan Documents for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, <u>provided</u> that Bank shall send a copy of any such modification to Borrower (which may be sent by electronic mail).

7.  **No Waiver; Remedies**.  No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

8.  **Successors and Assigns; Assignments**.  This Letter Agreement and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Borrower, Subsidiary Guarantors and their respective legal representatives, successors and assigns; _provided, however_ that Borrower may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole and absolute discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, the business of Borrower and its affiliates, or any Collateral.

9.  **Counterparts; Electronic Transmission**.  This Letter Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Letter Agreement.  Delivery of any executed counterpart of this Letter Agreement by electronic transmission shall be effective as delivery of a manually executed counterpart hereof.  Each of Borrower and each Subsidiary Guarantor acknowledge that information and documents relating to this Letter Agreement and the credit accommodations provided for herein may be transmitted through electronic means.

10.  **Patriot Act**.  Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Borrower and each Guarantor, which information includes the name, address, tax identification number and other information regarding Borrower and each Guarantor that will allow Bank to identify Borrower and each Guarantor in accordance with the Patriot Act.  In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

11.  **GOVERNING LAW**.  **THIS LETTER AGREEMENT WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION HEREUNDER WERE DISBURSED FROM THE STATE OF**

27

CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY.  IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS LETTER AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.   TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS LETTER AGREEMENT.

12.    **VENUE; JURISDICTION**.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR BORROWER ARISING OUT OF OR RELATING TO THIS LETTER AGREEMENT MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND BORROWER AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND BORROWER FURTHER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS IN ANY SUCH SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. BORROWER DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON BORROWER AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION D.1 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY BORROWER AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTIONS.

13.    **WAIVER OF JURY TRIAL**.  EACH OF  BORROWER AND EACH SUBSIDIARY GUARANTOR  (a)  KNOWINGLY,  VOLUNTARILY,  INTENTIONALLY  AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS LETTER AGREEMENT, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, OR ANY OTHER LOAN DOCUMENT, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS LETTER AGREEMENT, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFOR OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO BORROWER OR ANY SUBSIDIARY GUARANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO

28

4835-1552-0416v3/104763-0009

**TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON. EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH EACH OF BORROWER AND EACH SUBSIDIARY GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S AND SUBSIDIARY GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**

By its signature hereto, each of Borrower and each Subsidiary Guarantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.

Initials of authorized officer of Borrower and each Subsidiary Guarantor:

| FC | FC | FC |
|---|---|---|
| Borrower | Balance | Moreno |

15. **Certain Taxes**. The principal of and the interest on the Obligations, and any other amounts owed hereunder or under any other Loan Document for fees, costs, or otherwise, are payable in lawful money of the United States of America without deduction for or on account of any present or future tax, duty or other charge levied or imposed on any note or other Loan Document or the proceeds thereof or the holder thereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature, except as required by applicable law or regulation. If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made. Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax. Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

29

future tax, duty or other charge levied or imposed on any note or other Loan Document or the proceeds thereof or the holder thereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature, except as required by applicable law or regulation. If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made. Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax. Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

16. **No Third-Party Reliance; Not a Fiduciary, Etc.** The agreements of Bank hereunder are made solely for the benefit of Borrower and the benefit of Bank, as applicable, and may not be relied upon or enforced by any other person. Please note that those matters that are not covered or made clear herein are subject to mutual agreement of the parties.

Borrower hereby acknowledges that Bank is acting pursuant to a contractual relationship on an arm's-length basis, and the parties hereto do not intend that Bank act or be responsible as a fiduciary to Borrower, Borrower's management, stockholders, creditors or any other person. Borrower and Bank hereby expressly disclaim any fiduciary relationship and agree each party is responsible for making its own independent judgments with respect to any transactions entered into between the parties. Borrower also hereby acknowledges that Bank has not advised and is not advising you as to any legal, accounting, regulatory or tax matters, and that Borrower is consulting its own advisors concerning such matters to the extent Borrower deems it appropriate.

17. **Indemnity**. Borrower agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower), whether in connection with or arising out of or relating to (a) the matters referred to in this Letter Agreement or in the other Loan Documents or the use of any advance hereunder, (b) any breach of a representation, warranty or covenant by Borrower, or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination of this Letter Agreement and any other Loan Documents, payment of any advance hereunder and the

30

assignment of any rights hereunder, or entry of judgment hereon. Borrower may participate at its expense in the defense of any such action or claim.

18.  **Further Assurances; Corrections of Defects**. Each of Borrower and each Guarantor and each Pledgor intending to be legally bound hereby, agrees to promptly correct any defect, error or omission upon the request of Bank, which may be discovered in the contents of any of the Loan Documents, or in the execution or acknowledgement hereof, and Borrower, each Guarantor and each Pledgor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of the Loan Documents, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the obligations evidenced by the Loan Documents.

19.  **Interpretation**. In this Letter Agreement, unless Bank and Borrower otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Letter Agreement; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in such Agreement are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any person include that person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Letter Agreement are included for convenience of reference only and shall not constitute a part of this Letter Agreement for any other purpose. If this Letter Agreement is executed by more than one party as Borrower, the obligations of such persons or entities will be joint and several.

[No further text on this page; signatures follow]

31

**BANK LEUMI USA**

By: _____
Name:
Title:

By: _____
Name: Scott Wang
Title: VP


**BETTER 4 YOU BREAKFAST, INC.**

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

[GUARANTOR AND PLEDGOR SIGNATURES CONTINUE NEXT PAGE]

*Signature Page to Letter Agreement*

000233

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

**EACH OF THE UNDERSIGNED, AS GUARANTOR PURSUANT TO THAT CERTAIN UNLIMITED GUARANTY DATED THE DATE HEREOF, HEREBY ACKNOWLEDGES AND CONSENTS TO THE TERMS OF THIS LETTER AGREEMENT AND AGREES TO BE BOUND HEREBY.**

**BALANCE FOODS, LLC**

**By:  Better 4 You Breakfast, Inc.,**
its sole member

By: _____
   Name: Fernando Castillo
   Title: President, Chief Executive Officer

**MORENO BROS. DISTRIBUTING, LLC**

By: _____
   Name: Fernando Castillo
   Title: Manager

**CAPITAL STONE EQUITY FUND I LP**

**By: RDS Ventures, LLC**
its general partner

By: _____
   Name: Robert Douglas Spiro, Jr.
   Title: Manager

*Signature Page to Letter Agreement*

 **EACH OF THE UNDERSIGNED, AS GUARANTOR PURSUANT TO THAT CERTAIN LIMITED GUARANTY DATED THE DATE HEREOF, HEREBY ACKNOWLEDGES AND CONSENTS TO THE TERMS OF THIS LETTER AGREEMENT AND AGREES TO BE BOUND HEREBY.**

Name:  Robert Douglas Spiro, Jr.

**SPIRO REVOCABLE FAMILY TRUST**

By: _____
Name: Robert Douglas Spiro, Jr.
Title: Trustee

By: _____
Name: Diana Castillo Spiro
Title: Trustee

*Signature Page to Letter Agreement*

000235

**EACH OF THE UNDERSIGNED, AS  A PLEDGOR PURSUANT TO THAT CERTAIN PLEDGE AGREEMENT DATED THE DATE HEREOF, HEREBY ACKNOWLEDGES AND CONSENTS TO THE TERMS OF THIS LETTER AGREEMENT AND AGREES TO BE BOUND HEREBY.**

Name:  Fernando Castillo

Name:  Jacqueline Duvivier

Name:  Jason Roberts

*Signature Page to Letter Agreement*

Schedule A.5.13

ORGANIZATIONAL STRUCTURE

Better 4 You Meals, Inc. - Capitalization Table                    6/30/19

| | Shares Outstanding | Percentage | Shares Fully-Diluted | Percentage |
|---|---|---|---|---|
| **Common** | | | | |
| Fernando Castillo | 666,667 | 11.90% | 666,667 | 10.24% |
| Jacqueline Duvivier Castillo | 666,667 | 11.90% | 666,667 | 10.24% |
| Jason Roberts | 666,667 | 11.90% | 666,667 | 10.24% |
| CSEF 1, LP (Warrant Series A) | - | 0.00% | 560,287 | 8.60% |
| Total Common | 2,000,000 | 35.70% | 2,560,287 | 39.31% |
| **Series A Preferred** | | | | |
| CSEF 1, LP | 3,369,600 | 60.15% | 3,369,600 | 51.74% |
| **Series B Preferred** | | | | |
| CSEF 1, LP (Warrant) | - | 0.00% | 350,000 | 5.37% |
| CSEF 1, LP (Up to $3,000,000, $1,000,000 Funded) | 232,355 | 4.15% | 232,355 | 3.57% |
| **Total** | **5,601,955** | **100%** | **6,512,242** | **100%** |

| | | | |
|---|---|---|---|
| CSEF 1, LP | | 64.30% | 69.29% |
| Founders | | 35.70% | 30.71% |
| Total | | 100% | 100% |



## Schedule A.5.14

## Better 4 You Meals – Corporate Structure
*Fully Diluted*



<u>Schedule 1</u>

SCHEDULED DEBT

N/A

<u>Schedule 2</u>

SCHEDULED LIENS

See attached

2

**Better 4 You Meals**

Schedule 2 (Scheduled Liens)

| Creditor | Debtor | Type | UCC Filing # | UCC | Lapses | Contract # | Cost | Original Term | Initial Lease Date | Calculated Remaining Terms |
|---|---|---|---|---|---|---|---|---|---|---|
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 167535426211 | 7/7/16 | 7/7/21 | 16-7795 | $28,150.00 | 60 | 7/6/16 | 22 |
| Financial Pacific Leasing, Inc. | B4YB, Inc. | Equipment Financing | 167537963491 | 7/7/16 | 7/7/21 | 16-7826 | $73,371.00 | 60 | 7/19/16 | 23 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 167541441598 | 8/15/16 | 8/15/21 | 16-7848 | $60,012.80 | 36 | 8/11/16 | 0 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 167535490939 | 7/22/16 | 7/22/21 | 16-7873 | $51,970.00 | 60 | 7/1/16 | 22 |
| Corporation Service Company | B4YB, Inc. | Equipment Financing | 167545092302 | 9/8/16 | 9/8/21 | 16-7926 | $97,246.23 | 48 | 8/31/16 | 13 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 167556483621 | 11/15/16 | 11/15/21 | 16-8052 | $17,760.01 | 36 | 11/3/16 | 2 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177567439372 | 1/23/17 | 1/23/22 | 17-8187 | $20,982.24 | 48 | 1/19/17 | 17 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177578558467 | 4/4/17 | 4/4/22 | 17-8341 | $8,939.00 | 36 | 3/29/17 | 7 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177580945642 | 4/18/17 | 4/18/22 | 17-8341 | | | | |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177580658300 | 6/26/17 | 6/26/22 | 17-8403 | $49,401.01 | 60 | 4/7/17 | 31 |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177585226760 | 4/17/17 | 4/17/22 | 17-8406 | $33,256.35 | 48 | 5/5/17 | 20 |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177589506351 | 5/12/17 | 5/12/22 | 17-8489 | $132,842.00 | 48 | 6/7/17 | 21 |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177597122900 | 7/20/17 | 7/20/22 | 17-8489 | | | | |
| Susquehanna Commercial Finance, Inc./BB&T | B4YB, Inc. | Equipment Financing | 177592333959 | 6/8/17 | 6/8/22 | 17-8536 | $97,432.62 | 48 | 6/12/17 | 21 |
| TCF Equipment Finance | B4YB, Inc. | Equipment Financing | 177587956237 | 5/31/17 | 5/31/22 | 17-8633 | $144,321.74 | 48 | 10/1/17 | 25 |
| TCF Equipment Finance | B4YB, Inc. | Equipment Financing | 177610157914 | 10/11/17 | 10/11/22 | 17-8763 | $48,775.15 | 36 | 9/15/17 | 13 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 187626596737 | 1/9/18 | 1/9/23 | 18-8961 | $22,190.71 | 48 | 12/12/17 | 27 |
| Financial Pacific Leasing, Inc. | B4YB, Inc. | Equipment Financing | 187628379627 | 1/18/18 | 1/18/23 | 18-8982 | $29,340.00 | 60 | 1/17/18 | 41 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 187643320155 | 4/12/18 | 4/12/23 | 18-9147 | $22,805.00 | 36 | 4/11/18 | 19 |
| Hitachi Capital America Corp. | B4YB, Inc. | Equipment Financing | 187655746524 | 6/25/18 | 6/25/23 | 18-9274 | $127,455.00 | 36 | 6/22/18 | 22 |
| Hitachi Capital America Corp. | B4YB, Inc. | Equipment Financing | 187673966568 | 10/4/18 | 10/4/23 | 18-9492 | $82,301.00 | 49 | 9/25/18 | 38.5 |
| Alliance Funding Group | B4YB, Inc. | Equipment Financing | 197705080441 | 4/2/19 | 4/2/24 | 19-10044 | $26,500.77 | 37 | 4/1/19 | 32.5 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 197722761204 | 7/11/19 | 7/11/24 | 19-10180 | $90,384.00 | 60 | 7/10/19 | 58 |
| Corporation Service Company | B4YB, Inc. | Equipment Financing | 197721189005 | 7/3/19 | 7/3/24 | 19-10196 | $184,510.02 | 59 | 6/26/19 | 57.5 |
| Hitachi Capital America Corp. | B4YB, Inc. | Equipment Financing | 197691018971 | 1/8/19 | 1/8/24 | 19-9718 | $66,244.01 | 49 | 12/18/18 | 41 |
| Amur Equipment Finance, Inc. | B4YB, Inc. | Equipment Financing | 197724805912 | 7/24/19 | 7/24/24 | 94535 | $114,817.15 | 60 | 7/16/19 | 59 |
| Amur Equipment Finance, Inc. | B4YB, Inc. | Equipment Financing | 197722183181 | 7/9/19 | 7/9/24 | | $125,689.00 | 58 | 7/2/19 | |
| Axis Capital, Inc. | B4YB, Inc. | Equipment Financing | 157454739752 | 3/13/15 | 3/11/20 | 929020 | $76,000.00 | 61 | 6/23/15 | 11 |
| Crown Credit Company | B4YB, Inc. | Equipment Financing | 157496917554 | 11/16/15 | 11/16/20 | 40372724, 40375826 | $87,000.00 | 60 | 11/1/15 | 14 |
| Pawnee Leasing Corporation | B4YB, Inc. | Equipment Financing | 177580945642 | 4/18/17 | 4/18/22 | | | | | |
| Financial Pacific Leasing, Inc. | B4YB, Inc. | Equipment Financing | 187632885381 | 2/9/18 | 2/9/23 | | | | | |
| Raymond Leasing Corporation | B4YB, Inc. | Equipment Financing | 187640122697 | 3/26/18 | 3/26/23 | 340831 | | | 3/15/18 | |
| La Colonial Tortilla Products, Inc. | MBros. | All Assets | 187648913249 | 5/15/18 | 5/15/23 | 2019071305 | $125,689.00 | 58 | 7/2/19 | 56 |

Schedule 3

SCHEDULED INVESTMENTS

N/A

4835-1552-0416v3/104763-0009

000243

# EXHIBIT B



### LINE OF CREDIT NOTE

$12,500,000                                                     Los Angeles, California
                                                                August 16, 2019

    **FOR VALUE RECEIVED**, Better 4 You Breakfast, Inc., a corporation organized under the laws of the State of California, with its principal place of business at 20715 Avalon Blvd., Carson, CA 90746 (the "**Borrower**"), promises to pay to the order of **BANK LEUMI USA** (the "**Bank**"), in lawful money and in immediately available funds, at its offices at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, or at such other place as the holder hereof may designate, the principal sum of TWELVE MILLION FIVE HUNDRED THOUSAND and 00/100 Dollars ($12,500,000), or such lesser amount as may be advanced and be outstanding to or for the benefit of Borrower hereunder, together with interest accruing thereon from the date advanced until paid in full, as set forth herein.

    1.    **Line of Credit Advances**.  Borrower may from time to time prior to the earlier of demand or the Maturity Date, borrow, partially or wholly repay, and re-borrow hereunder, advances up to the Maximum Line of Credit Amount, subject to the terms and conditions of this Line of Credit Note ("**Note**") and the other Loan Documents (as defined herein) ("**Line of Credit**").  The "**Maturity Date**" shall mean the earlier of (i) August 16, 2021 and (ii) the acceleration of the maturity of the amounts due hereunder upon an Event of Default (as defined herein), or such later date as may be designated by Bank in its sole discretion by written notice to Borrower.  Borrower acknowledges and agrees that in no event will Bank be under any obligation to extend or renew the Line of Credit or this Note beyond the Maturity Date.  The "**Maximum Line of Credit Amount**" shall mean the lesser of $12,500,000 and the Borrowing Base.  In no event shall the aggregate unpaid principal amount of advances under this Note exceed, as of any date of determination, the Maximum Line of Credit Amount.  In the event of any such occurrence, the amount of such excess shall be immediately due and payable without necessity of demand, and whether or not any Event of Default shall have occurred hereunder.  This Note and all advances hereunder may be made subject to certain Borrowing Base provisions set forth in the Loan Documents (which provisions shall be deemed to be incorporated herein and made a part hereof), including without limitation the terms of any such Loan Documents limiting the maximum permitted amount of advances hereunder, and providing for certain mandatory prepayments with respect thereto.

    2.    **Advance Procedures**.  If permitted by Bank, a request for advance may be made by facsimile or electronic mail, with such confirmation or verification (if any) in writing or otherwise as Bank may require in its discretion from time to time.  Further, Borrower hereby agrees to indemnify and hold Bank harmless from and against any and all damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees and expenses) which may arise or be created by the acceptance of such facsimile and electronic requests or by the making of such advances.  Bank shall have no obligation to determine whether any person requesting an advance is or has been authorized by Borrower to do so.  Bank will enter on its books and records, which entry when made will be presumed correct absent manifest error, the date and amount of each advance, as well as the date and amount of each payment made by Borrower.  Without limitation of the foregoing, each drawing paid by Bank under any letter of credit issued under the Line of Credit shall in Bank's discretion be deemed an advance under the Line of Credit.  Each borrowing of advances under the Line of Credit shall be in an amount equal to or greater than $25,000.  Every time Borrower requests an advance from Bank, Borrower shall be deemed to automatically represent and warrant that all of the representations and warranties set forth in Section A.5 of the Letter Agreement (as defined below) are true and correct in all material respects as of the date of

such request and that no Event of Default (or default which with the passage of time would result in an Event of Default) has occurred and is continuing.

**3.    Interest Rate.**

**3.1    Interest Rate - Definitions.**  For purposes hereof, the following terms shall have the following meanings:

"**Business Day**" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in Los Angeles, California and on which dealings in U.S. dollar deposits are carried on in London, England.

"**Interest Period**" shall mean, as to any advance hereunder bearing interest at the LIBO Rate (Reserve Adjusted) Option, (a) in the case of any such advance made from the date of this Note but prior to September 1, 2019, the period from the date of the first disbursement of an advance hereunder and September 1, 2019 and (b) in the case of any other such advance, the period of one (1) month, with each such Interest Period commencing on the last day of the immediately preceding Interest Period; provided that (i) if an Interest Period would end on a day which is not a Business Day, such Interest Period shall end on the next succeeding Business Day unless such day falls in the next succeeding calendar month in which case the Interest Period shall end on the next preceding Business Day, (ii) the final Interest Period shall commence on the last day of the immediately preceding Interest Period, and end on the Maturity Date, and (iii) any Interest Period that begins on the last Business Day of a calendar month (or a day for which there is no numerically corresponding day in the last calendar month of such Interest Period) shall end on the last Business Day of the last calendar month of such Interest Period.

"**LIBO Rate (Reserve Adjusted)**" shall mean, with respect to any advance relative to any Interest Period the interest rate per annum determined by Bank by *dividing* (a) the rate quoted by the ICE Benchmark Administration Limited as its "LIBOR" rate for U.S. dollar deposits at or about 11:00 a.m., London time, on the second Business Day prior to the commencement of the Interest Period (or, if Bank adopts generally in its business a different rate quoting system or service for obtaining the rate of interest commonly known as "LIBOR" for U.S. dollar deposits, then upon giving prompt notice thereof to Borrower, such alternative rate quoting system or service shall be utilized for determining "LIBOR" in lieu of the rate quoted by the ICE Benchmark Administration Limited); provided, however, that if such rate cannot be determined by Bank as provided in the preceding clause (a) for any reason, as determined by Bank in its reasonable judgment, then a comparable replacement rate determined by Bank at such time (which determination shall be conclusive absent manifest error) by (b) a number equal to 1.00 *minus* the LIBOR Reserve Percentage.  For purposes of any advances made prior to September 1, 2019, the LIBO Rate (Reserve Adjusted) will be deemed to be 2.17213%.

"**LIBOR Reserve Percentage**" shall mean the percentage (expressed as a decimal, rounded upward to the next 1/100th of 1%) in effect on such day (whether or not applicable to Bank) under regulations issued from time to time by the Federal Reserve System Board for determining the maximum reserve requirement (including any emergency, supplemental or other marginal reserve requirement) with respect to Eurocurrency funding (currently referred to as "Eurocurrency Liabilities" in Regulation D of the Federal Reserve System Board).

"**Wall Street Journal Prime Rate**" or "**Prime Rate**" shall mean the rate of interest designated as the "Prime Rate" which appears in each publication of The Wall Street Journal under the designation entitled "Money Rates."  This rate of interest fluctuates and is subject to change without prior notice.  If and when the Wall Street Journal Prime Rate changes, the rate of interest on this Note will automatically change effective on the date of any such change, without notice to Borrower.  In the event that the Wall

2

Street Journal Prime Rate cannot be ascertained from publication of The Wall Street Journal, the rate of interest which shall be used in substitution thereof and until such time as the Wall Street Journal Prime Rate can be ascertained by reference to The Wall Street Journal shall be a rate equal to the average of the prime rate of interest announced from time to time by three (3) New York banks selected by Bank in its sole and absolute discretion.

    **3.2**    <u>**Rate of Interest**</u>.  Amounts outstanding under this Note shall bear interest at the following rate or rates per annum as may be selected by Borrower from time to time in accordance herewith (each, an "**Option**"):

        (i)    "**Prime Rate Option**" means, with respect to any applicable advances, a fluctuating rate of interest per annum which shall be equal to 0.75% below the Wall Street Journal Prime Rate in effect from time to time.  There are no required minimum interest periods for advances bearing interest at the Wall Street Journal Prime Rate.

        (ii)    "**LIBO Rate (Reserve Adjusted) Option**" means, with respect to any applicable advances, a fluctuating rate per annum determined by Bank to be equal to 2.0% above the LIBO Rate (Reserve Adjusted) in effect on the first day of the applicable Interest Period.

    Notwithstanding the foregoing, in no event shall the interest rate applicable to advances hereunder (a) to which the Prime Rate Option applies be less than 2.0% per annum and (b) to which the LIBO Rate (Reserved Adjusted) Option applies be less than 2.0% per annum.

    The LIBO Rate (Reserve Adjusted) shall be adjusted with respect to any advance to which the LIBO Rate (Reserve Adjusted) Option applies, as applicable, on and as of the effective date of any change in the LIBOR Reserve Percentage. Upon Borrower's request, Bank shall give notice to Borrower of the LIBO Rate (Reserve Adjusted) as determined or adjusted for each Interest Period in accordance herewith, which determination or adjustment shall be conclusive absent manifest error.

    In the event Bank shall have determined that (i) by reason of circumstances affecting the LIBO Rate (Reserve Adjusted) adequate and reasonable means do not exist for ascertaining the LIBO Rate (Reserve Adjusted) for any Interest Period with respect to a requested advance or conversion hereunder and such circumstances are unlikely to be temporary or (ii) the circumstances set forth in clause (i) have not arisen but the supervisor for the administrator of LIBOR or a governmental authority having jurisdiction over the Bank has made a public statement identifying a specific date after which LIBOR shall no longer be used for determining interest rates for loans, then upon notice by Bank to Borrower of the foregoing, (1) the Prime Rate Option shall apply and (2) Bank and Borrower shall endeavor to establish an alternate rate of interest to LIBOR that gives due consideration to the then-prevailing market convention for determining a rate of interest for loans in the United States in Dollars at a rate based upon the applicable rate at such time, and Bank and Borrower shall enter into a mutually acceptable amendment to this Note to reflect such alternate rate of interest and such other related changes to this Note as may be applicable (the "**Alternate Rate**"). Notwithstanding the foregoing, if the Alternate Rate established pursuant to this paragraph (without giving effect to the applicable margin or any alternative spread that may have been agreed upon over Bank's cost of funds) shall be less than zero, such rate shall be deemed to be zero for all purposes of this Agreement.

    If, after the date of this Note, Bank shall reasonably determine that any Change in Law (as defined below) shall make it impossible or unlawful for Bank to make, fund or maintain LIBO Rate (Reserve Adjusted)-based advances, then Bank shall notify Borrower. From the date of such notice until Bank notifies Borrower that the circumstances giving rise to such determination no longer apply, then (i) any obligation of Bank contained herein or in any agreement of Bank to make available LIBO Rate

3

(Reserve Adjusted)-based advances shall immediately be suspended, and (ii) any such LIBO Rate (Reserve Adjusted)-based advances then outstanding shall instead bear interest, at Bank's option, at the Alternate Rate or based on the Prime Rate Option, such change taking effect either (x) on the last day of the then current Interest Period if Bank may lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances to such day, or (y) immediately if Bank may not lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances.  Upon the occurrence of any of the foregoing events, Borrower shall pay to Bank immediately upon demand such amounts as may be necessary to compensate Bank for any fines, fees, charges, penalties or other costs incurred or payable by Bank as a result thereof and which are attributable to any LIBO Rate (Reserve Adjusted)-based advances made available to Borrower hereunder, and any reasonable allocation made by Bank among its operations shall be conclusive and binding upon Borrower.

Interest hereunder will be calculated based on the actual number of days that principal is outstanding over a year of 360 days.  In no event will the rate of interest hereunder exceed the maximum rate allowed by law.

**3.3**     **Interest Rate Elections**.  Subject to the terms and conditions of this Note, including limitations with respect to Interest Periods and notice requirements: (i) at the end of any Interest Period applicable to any advance under the LIBO Rate (Reserve Adjusted) Option, Borrower may renew the LIBO Rate (Reserve Adjusted) Option applicable to such advance or convert such advance to the Prime Rate Option; (ii) at any time any of the advances under this Note bear interest under the Prime Rate Option, Borrower may convert all or a portion of such advances so that such advances bear interest at the LIBO Rate (Reserve Adjusted) from the beginning of the next Interest Period; and (iii) at the time any advance is made hereunder, Borrower may choose to have all thereof bear interest under the Prime Rate Option or the LIBO Rate (Reserve Adjusted) Option; provided that, during any period in which any Event of Default (as hereinafter defined) has occurred and is continuing, any advances bearing interest based on the LIBO Rate (Reserve Adjusted) shall, at Bank's sole discretion, be converted at the end of the applicable Interest Period to the Prime Rate Option and the LIBO Rate (Reserve Adjusted) Option will not be available to Borrower with respect to any new advances (or with respect to the conversion or renewal of any existing advances) until such Event of Default has been cured by Borrower or waived by Bank.  Borrower shall notify Bank of each election of an Option, each conversion from one Option to another, the amount of the advances then outstanding to be allocated to each Option and where relevant the Interest Periods therefor.  In the case of electing or converting to the LIBO Rate (Reserve Adjusted) Option, such notice shall be given prior to 11:00 a.m. New York time on a Business Day at least three (3) Business Days prior to the commencement of the applicable Interest Period, or at a later time if Bank, in its sole discretion, accepts Borrower's notice and quotes a rate for such requested advance (or conversion) under the LIBO Rate (Reserve Adjusted) Option.  Each such notice shall specify: (a) the Option selected by Borrower, (b) the principal amount subject thereto, and (c) the date of the requested advance (or conversion), which may only be at the beginning of the subsequent Interest Period.  If no notice of election, conversion or renewal is timely received by Bank with respect to any advance (or expiring Interest Period), Borrower shall be deemed to have elected the Prime Rate Option.  Any such election shall be promptly confirmed in writing by such method as Bank may require.

**4.**     **Payments**.

**4.1**     **Interest and Principal Payments**.  Borrower shall pay accrued interest in arrears on the unpaid principal balance of this Note on (a) the first (1st) day of each month during the term hereof, beginning with the payment due on September 1, 2019 and (b) for all advances, at maturity, whether by acceleration of this Note or otherwise, and after maturity, on demand until paid in full.  Notwithstanding anything herein to the contrary, the outstanding principal balance of advances under the Line of Credit and any accrued but unpaid interest thereon shall be due and payable on the Maturity Date.

4

**4.2**    **Manner of Payment**. All payments by Borrower on account of principal, interest or fees hereunder shall be made in lawful money of the United States of America, in immediately available funds. If any payment under this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing interest in connection with such payment. Borrower authorizes (but shall not require) Bank to debit any account maintained by Borrower with Bank, at any date on which a payment is due under this Note, in an amount equal to any unpaid portion of such payment. If any payment of principal or interest becomes due on a day on which Bank is closed (as required or permitted by law or otherwise), such payment shall be made not later than the next succeeding Business Day except as may be otherwise provided herein, and such extension shall be included in computing interest in connection with such payment. Each payment made on this Note (or received by Bank with respect to any other indebtedness owed by Borrower to Bank, or any affiliate thereof), shall be applied by Bank to amounts due under this Note (or with respect to any such other indebtedness) in such order or manner as Bank, in its discretion, elects, regardless of any instructions from Borrower to the contrary. Bank or any holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights.

**4.3**    **Late Payments; Default Rate**. If Borrower fails to make any payment of principal, interest or other amount coming due pursuant to the provisions of this Note within ten (10) calendar days of the date due and payable, Borrower also shall pay to Bank a late charge equal to the greater of five percent (5%) of the amount of such payment or $100.00 (the "**Late Charge**"). Such ten (10) day period shall not be construed in any way to extend the due date of any such payment. Upon maturity, whether by acceleration, demand or otherwise and, at Bank's option, upon the occurrence of any Event of Default (as hereinafter defined) and during the continuance thereof, amounts outstanding under this Note shall bear interest at a rate per annum (based on the actual number of days that principal is outstanding over a year of 360 days) which shall be six percent (6%) in excess of the interest rate otherwise in effect from time to time under this Note but not more than the maximum rate allowed by law (the "**Default Rate**"); provided, however, if the Default Rate is less than ten percent (10%), then, upon entry of judgment on this Note, the applicable rate of interest shall be the higher of (a) the Default Rate and (b) the statutory rate applicable to judgments in the State of California. The Default Rate shall continue to apply whether or not judgment shall be entered on this Note. Both the Late Charge and the Default Rate are imposed as liquidated damages for the purpose of defraying Bank's expenses incident to the handling of delinquent payments, but are in addition to, and not in lieu of, Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any fees and expenses of any agents or attorneys which Bank may employ. In addition, the Default Rate reflects the increased credit risk to Bank of carrying a loan that is in default. Borrower agrees that the Late Charge and Default Rate are reasonable forecasts of just compensation for anticipated and actual harm incurred by Bank, and that the actual harm incurred by Bank cannot be estimated with certainty and without difficulty.

**4.4**    **Prepayments**. The indebtedness evidenced by this Note may be prepaid in whole or in part at any time and from time to time, subject, however to payment of any break funding indemnification amounts owing pursuant to Section 4.5 hereof.

**4.5**    **Increased Costs; Yield Protection**. On written demand, together with written evidence of the justification therefor, Borrower agrees to pay Bank all direct costs incurred, any losses suffered or payments made by Bank as a result of any Change in Law (hereinafter defined), imposing any reserve, deposit, allocation of capital or similar requirement (including without limitation, Regulation D of the Board of Governors of the Federal Reserve System) on Bank, its holding company or any of their respective assets relative to the Line of Credit. "**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation,

5

implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

4.6     **Break Funding Indemnification**.    Borrower agrees to indemnify Bank against any liabilities, losses or expenses (including, without limitation, loss of margin, any loss or expense sustained or incurred in liquidating or employing deposits from third parties, and any loss or expense incurred in connection with funds acquired to effect, fund or maintain any advance (or any part thereof) bearing interest based on the LIBO Rate (Reserve Adjusted) which Bank sustains or incurs as a consequence of either (i) Borrower's failure to make a payment on the due date thereof, (ii) Borrower's revocation (expressly, by later inconsistent notices or otherwise) in whole or in part of any notice given to Bank to request, convert, renew or prepay any advance bearing interest based on the LIBO Rate (Reserve Adjusted), or (iii) Borrower's payment or prepayment (whether voluntary, after acceleration of the maturity of this Note or otherwise) or conversion of any advance bearing interest based on the LIBO Rate (Reserve Adjusted) on a day other than the last day of the applicable Interest Period.  A notice as to any amounts payable pursuant to this paragraph given to Borrower by Bank shall, in the absence of manifest error, be conclusive and shall be payable upon demand. Borrower's indemnification obligations hereunder shall survive the payment in full of the advances and all other amounts payable hereunder.

5.     **Security; Right of Setoff; Deposit Accounts**.    This Note is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Borrower or any third party has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Borrower to Bank.

Borrower hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments due to Bank (a) to set off against, and to appropriate and apply to the payment of, Borrower's obligations and liabilities under this Note (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any and all amounts owing by Bank to Borrower (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced) and (b) pending any such action, to the extent necessary, to hold such amounts as collateral to secure such obligations and liabilities and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposits so held as Bank, may reasonably determine. Borrower hereby grants to Bank a security interest in all deposits and accounts maintained with Bank, together with all other personal property of Borrower (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to Bank or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered, to secure the payment of all obligations and liabilities of Borrower to Bank under this Note. Every such security interest and right of setoff may be exercised without demand upon or notice to Borrower.

Without limitation of the foregoing, Borrower hereby grants to Bank a lien on and security interest in any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Borrower and maintained in an account at Bank, which may have a related account at a bank which is a

6

member of the Federal Reserve System.  Borrower authorizes Bank to serve as its bailee and agent with respect to the aforementioned book entry Treasury bills and other book entry securities and to take such action and to execute and deliver such documents on behalf of Borrower as Bank deems necessary or desirable in order to perfect Bank's security interest therein.  Borrower hereby gives notice to Bank, in Bank's capacity as bailee and agent, of Bank's security interest in the aforementioned book entry Treasury bills and other book entry securities.  Bank may at any time and from time to time, without notice, transfer into its own name or that of its nominee any of the foregoing property of Borrower.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Borrower hereunder.

**6.**    **Other Loan Documents**.  This Note is issued in connection with a letter agreement dated as of even date herewith (the "**Letter Agreement**"; capitalized terms used herein not otherwise defined herein shall have the meaning set forth in the Letter Agreement) between Borrower and Bank, and certain other agreements and documents executed and/or delivered in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time, collectively, including this Note, the "**Loan Documents**"), and is secured by the collateral (if any) described in the Loan Documents and by such other collateral as previously may have been or may in the future be granted to Bank to secure this Note.  The holder of this Note is entitled to the benefits of the Loan Documents and may enforce the agreements of Borrower contained in the Loan Documents and exercise the remedies provided for by, or otherwise available in respect of, the Loan Documents, all in accordance with, and subject to the restrictions contained in, the terms of the Loan Documents.

**7.**    **Default; Remedies**.

**7.1**    **Events of Default**.  The occurrence of any of the following, with respect to Borrower, any guarantor of this Note, any pledgor of equity in support of this Note, or any person or entity providing collateral support for the indebtedness and other obligations evidenced by this Note (each, a "**Credit Party**"), shall constitute an "**Event of Default**" under this Note: (a) the failure to pay within five (5) days of written notice from Bank to Borrower (which, notwithstanding anything to the contrary contained in any Loan Document, may be via e-mail) any principal, interest, fee, charge, indemnity or other indebtedness owing hereunder or under any other Loan Document; (b) the death or incapacity of any Credit Party (or any member or partner of any Credit Party which is a partnership) that is (1) a natural person holding either directly or indirectly a 20% interest in the Borrower or (2) Robert Douglas Spiro Jr.; (c) the failure to furnish Bank with any requested information or failing to permit inspection of books or records by Bank or any of its agents, in each case within ten (10) days of Bank's request therefor; (d) any financial statement or certificate furnished to Bank in connection with, or any representation or warranty made by any Credit Party to Bank in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Credit Party to Bank, proves to be incorrect, false, erroneous or misleading in any material respect when furnished or made; (e) any Credit Party (other than a natural person) dissolves, liquidates or otherwise ceases doing business as a going concern; (f) any "change of control" not permitted under the Loan Documents; (g) the commencement of a foreclosure proceeding against any Credit Party; (h) any default in the performance or observance of any covenant or agreement contained herein, in the Term Note (Multiple Draw) of even date herewith or in Section A.6.1, Section A.6.2 or Section A.6.3 of the Letter Agreement; (i) any default in the performance or observance of any covenant or agreement contained in any Loan Document (other than as set forth in any other provision of this Section 7.1) and such default continues for fifteen (15) days after the earlier of (1) knowledge of any Credit Party of such default and (2) written notice by Bank to Borrower of such default; (j) any default with respect to any other Material Indebtedness of any Credit Party owed to any person or

entity other than Bank (including any such indebtedness in the nature of a lease) or default in the performance or observance of the terms of any instrument pursuant to which such Material Indebtedness was created or is secured, the effect of which default is to cause or permit any holder of any such indebtedness to cause the same to become due prior to its stated maturity (and whether or not such default is waived by the holder thereof) (as used herein, "**Material Indebtedness**" shall mean indebtedness for borrowed money in excess of $250,000 in the aggregate); (k) there exists or occurs any event or condition with respect to, or any change in the financial condition or affairs of, any Credit Party which in the reasonable opinion of Bank (or any subsequent holder hereof) materially impairs or adversely affects, or could reasonably be expected to materially impair or adversely affect, the prospect of payment or performance by such Credit Party of its obligations owed to Bank hereunder or under any other Loan Document; (l) the making of an assignment for the benefit of creditors, or the appointment of a trustee, receiver or liquidator for any Credit Party or for any of his, its or their property, or the commencement of any proceedings by any Credit Party under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute (including, if such Credit Party is a partnership, its dissolution pursuant to any agreement or statute), or the commencement of any such proceedings without the consent of such Credit Party; (m) the sending of notice of an intended bulk sale; (n) the entry of any judgment or any attachment, levy or execution against any Credit Party's properties in excess of $250,000.00 which shall not be released, discharged, dismissed, stayed or fully bonded for a period of thirty (30) days or more after its entry; (o) the revocation or attempted revocation, in whole or in part, of this Note or any other Loan Document by Borrower or any other Credit Party; (p) the issuance of a warrant of distraint or assertion of a lien for unpaid taxes against any Credit Party in excess of $50,000.00 or that are not paid in full within 30 days after the creation thereof; (q) any sale, transfer or other disposition of all or a substantial or material portion of the assets of any Credit Party; or (r) Borrower or any other Credit Party is convicted of a felony for any criminal act.

      **7.2**    **Remedies**.  Upon the occurrence of an Event of Default: (a) Bank shall be under no further obligation to make advances hereunder or under any other Loan Document; (b) if an Event of Default specified in clause (l) of the definition of "Event of Default" above shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, shall be immediately due and payable without demand or notice of any kind; (c) if any other Event of Default shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, at Bank's option without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) all other debts or obligations of Borrower to Bank or holder hereof (other than any liabilities or obligations, whether direct or contingent, now existing or hereafter arising, that Borrower, RDS or any Guarantor may have in respect of indebtedness owed by 20715 Avalon LLC to Bank), whether due or not due and whether direct or contingent and howsoever evidenced, shall, at the option of Bank or holder hereof, shall also become due and payable immediately without demand or notice; (e) this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (f) Bank may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law, including all rights and remedies of a secured creditor under the Uniform Commercial Code as adopted and enacted and in effect from time to time in the applicable jurisdiction and all other applicable law.

      **8.**    **Miscellaneous**.

      **8.1**    **Anti-Money Laundering/International Trade Law Compliance**.  Borrower represents and warrants to Bank, as of the date of this Note,  the date of each advance of proceeds under the Line of Credit, the date of any renewal, extension or modification of the Line of Credit, and at all times until the Line of Credit has been terminated and all amounts thereunder have been indefeasibly paid in full, that:

8

(a) no Covered Entity  (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (b) the proceeds of the Line of Credit will not be used to fund any operations in, finance any investments or activities in, or, make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay the Line of Credit are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity  engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws.  Borrower covenants and agrees that it shall immediately notify Bank in writing upon the occurrence of a Reportable Compliance Event.

As used herein: "**Anti-Terrorism Laws**" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering or bribery, all as amended, supplemented or replaced from time to time; "**Compliance Authority**" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department/Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "**Covered Entity**" means Borrower, its affiliates and subsidiaries, all Credit Parties and other guarantors, pledgors of collateral, all owners of the foregoing, and all brokers or other agents of Borrower acting in any capacity in connection with the Line of Credit; "**Reportable Compliance Event**" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self-discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "**Sanctioned Country**" means a country subject to a sanctions program maintained by any Compliance Authority; and "**Sanctioned Person**" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority.

**8.2**    **Indemnity**. Borrower agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower), whether in connection with or arising out of or relating to (a) the matters referred to in this Note or in the other Loan Documents or the use of any advance hereunder, (b) any breach of a representation, warranty or covenant by Borrower or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority in any way related to the Obligations or the Loan Documents or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination of this Note, payment of

any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Borrower may participate at its expense in the defense of any such action or claim.

**8.3**    **Information**.  So long as this Note shall remain outstanding, and without limitation of any provision of any Loan Document, Borrower agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Borrower as Bank may reasonably request from time to time and (b) at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from its records and books of account, visit its properties and discuss its affairs, finances and accounts with any of its officers, directors or independent accountants.

**8.4**    **Notices**.  All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Note must be in writing (except as may be agreed otherwise above with respect to borrowing requests) delivered to each party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and, with respect to any notice to Bank, such notice should be sent to the attention of: Thomas Belli, with a copy of any notices pursuant to Section 8.1 to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending.  Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

**8.5**    **No Waiver**.  No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

**8.6**    **Costs and Expenses**.  Borrower shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Note and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Borrower or any other person or entity.

**8.7**    **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Note for the purposes of completing missing

10

content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Borrower (which may be sent by electronic mail).

**8.8**    **Successors and Assigns**. This Note and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Borrower and its legal representatives, successors and assigns; provided, however, that Borrower may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole discretion. Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents. In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Borrower or its business, or any collateral pledged to secure the obligations evidenced hereby.

**8.9**    **Certain Taxes**. The principal of and the interest on the obligations due under this Note, and any other amounts owed hereunder or under any other Loan Document for fees, costs, or otherwise, are payable in lawful money of the United States of America without deduction for or on account of any present or future tax, duty or other charge levied or imposed on this Note or other Loan Document or the proceeds hereof or the holder hereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature. If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made. Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax. Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

**8.10**    **Severability**. The provisions of this Note are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Note in any jurisdiction.

**8.11**    **Limitation of Liability**. To the fullest extent permitted by applicable law, Borrower shall not assert, and hereby waives any claim against Bank, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Note, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof.

**8.12**    **Reserved**.

**8.13**    **GOVERNING LAW. THIS NOTE WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO**

11

CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE. NOTWITHSTANDING THE FOREGOING, THE LAWS OF THE JURISDICTION IN WHICH ANY COLLATERAL FOR THIS NOTE IS LOCATED SHALL APPLY TO THE CREATION AND PERFECTION OF THE SECURITY INTERESTS THEREIN AND TO THE EXERCISE OF REMEDIES BY BANK THAT PERTAIN TO OR CONCERN SUCH COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FORECLOSURE OF ANY SECURITY INTERESTS AND LIENS GRANTED IN SUCH COLLATERAL.

8.14    VENUE; JURISDICTION.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OR IN ANY STATE OR FEDERAL COURT IN THE STATE OF CALIFORNIA, AND BORROWER AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND BORROWER FURTHER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING,  BETWEEN BORROWER AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. BORROWER DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON BORROWER AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION Error! Reference source not found. ABOVE (OR SUCH OTHER NEW NOTICE ADDRESS ESTABLISHED BY BORROWER HEREUNDER) BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY BORROWER AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTIONS.

8.15    **USA PATRIOT Act Notice**.  Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Borrower and any other Credit Party, which information includes the name, address, tax identification number and other information regarding Borrower and such Credit Party that will allow Bank to identify Borrower and such Credit Party in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

8.16    **Further Assurances; Corrections of Defects**.  Borrower intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of any of the Loan Documents, or in the execution or acknowledgement thereof, and Borrower will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of the Loan Documents, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting

12

liens, mortgages, security interests and interests to secure the obligations evidenced by the Loan Documents.

**8.17    WAIVER OF JURY TRIAL.** BORROWER (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS NOTE, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, OR ANY OTHER LOAN DOCUMENT, (ii) ANY TRANSACTION CONTEMPLATED IN THIS NOTE OR ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS NOTE, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFOR OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO BORROWER THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY BORROWER IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

**8.18    JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.** IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.,* ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER. PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON. BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES FOLLOW]

13

Borrower acknowledges that he, she or it has read and understood all the provisions of this Note, including the sections "Waiver of Jury Trial" and "Judicial Reference in the Event of Jury Trial Waiver Unenforceability" and has been advised by counsel as necessary or appropriate.

IN WITNESS WHEREOF, the undersigned has executed this Line of Credit Note as of the date first written above.

BORROWER:

BETTER 4 YOU BREAKFAST, INC.

By: _____
      Name: Fernando Castillo
      Title: President, Chief Executive Officer

*Signature Page to Line of Credit Note*

# EXHIBIT C



**TERM NOTE**
**(Multiple Draw)**

$6,750,000                                                      Los Angeles, California
                                                                 August 16, 2019

   **FOR VALUE RECEIVED**, Better 4 You Breakfast, Inc., a corporation organized under the laws of the State of California, with its principal place of business at 20715 Avalon Blvd., Carson, CA 90746 (the "**Borrower**"), promises to pay to the order of **BANK LEUMI USA** (the "**Bank**") on or prior to August 16, 2024 (the "**Term Loan Maturity Date**") in lawful money and in immediately available funds, at its offices at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, or at such other place as the holder hereof may designate, the principal sum of SIX MILLION SEVEN HUNDRED FIFTY THOUSAND and 00/100 Dollars ($6,750,000) (the "**Maximum Facility Amount**") or such lesser amount as may be advanced and be outstanding to or for the benefit of Borrower hereunder, together with interest accruing thereon from the date advanced until paid in full, as set forth herein (the "**Term Loan**").

   1. **Advances**.  Borrower may from time to time prior to the Conversion Date borrow hereunder advances up to the Maximum Facility Amount, subject to the terms and conditions of this Term Note (this "**Note**") and the other Loan Documents (as defined herein) (the "**Facility**").  Advances hereunder once repaid may not be re-borrowed.  On the Conversion Date, the then-outstanding principal amount of advances hereunder shall convert to an amortizing term loan payable as set forth below.  The "**Conversion Date**" shall mean December 31, 2019.

   2. **Advance Procedures**.  If permitted by Bank, a request for advance may be made by facsimile or electronic mail, with such confirmation or verification (if any) in writing or otherwise as Bank may require in its discretion from time to time.  Further, Borrower hereby agrees to indemnify and hold Bank harmless from and against any and all damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees and expenses) which may arise or be created by the acceptance of such facsimile and electronic requests or by the making of such advances.  Bank shall have no obligation to determine whether any person requesting an advance is or has been authorized by Borrower to do so.  Bank will enter on its books and records, which entry when made will be presumed correct absent manifest error, the date and amount of each advance, as well as the date and amount of each payment made by Borrower.  Each borrowing hereunder shall be in a minimum amount of $25,000 or if less than $25,000 shall be the remaining amount available under this Note then such lesser amount.  Every time Borrower requests an advance from Bank prior to the Conversion Date, Borrower shall be deemed to automatically represent and warrant that all of the representations and warranties set forth in Section A.5 of the Letter Agreement (as defined below) are true and correct in all material respects as of the date of such request and that no Event of Default (or default which with the passage of time would result in an Event of Default) has occurred and is continuing.  Furthermore, Bank shall be under no obligation to provide any advances prior to the Conversion Date unless Borrower provides purchase orders or invoices in detail reasonably satisfactory to Bank that support Borrower's advance requests (and, without limiting the foregoing, in the case of the advances made as of the date hereof, a detailed sources and uses spreadsheet showing to which entity the proceeds of advances hereunder should be wired as of such date).

   3. **Interest Rate**.  Amounts outstanding under this Note shall bear interest until paid in full at a rate per annum ("**Fixed Rate**") which is at all times equal to four and one-quarter percent (4.25%).  Interest hereunder will be calculated based on the actual number of days that principal is outstanding over a year of 360 days.

4.    **Payments**.

4.1    **Interest and Principal Payments**.  Borrower shall pay accrued interest in arrears on the unpaid principal balance of this Note on the first (1st) day of each month during the term hereof, beginning with the payment due on September 1, 2019, and at maturity, whether by acceleration of this Note or otherwise, until paid in full.

Principal shall be due and payable in equal monthly installments commencing on January 1, 2020 based on the principal amount of Term Loans outstanding on such date and based on straight line amortization of such amount for sixty months beginning on January 1, 2020, and continuing on the first (1st) day of each month thereafter, and a final installment equal to all then-outstanding principal on the Term Loan Maturity Date.  Any outstanding principal and accrued interest shall be due and payable in full on the Term Loan Maturity Date.

4.2    **Manner of Payment**.  All payments by Borrower on account of principal, interest or fees hereunder shall be made in lawful money of the United States of America, in immediately available funds.  If any payment under this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in computing interest in connection with such payment.  Borrower authorizes (but shall not require) Bank to debit any account maintained by Borrower with Bank, at any date on which a payment is due under this Note, in an amount equal to any unpaid portion of such payment.  If any payment of principal or interest becomes due on a day on which Bank is closed (as required or permitted by law or otherwise), such payment shall be made not later than the next succeeding Business Day except as may be otherwise provided herein, and such extension shall be included in computing interest in connection with such payment.  Each payment made on this Note (or received by Bank with respect to any other indebtedness owed by Borrower to Bank, or any affiliate thereof), shall be applied by Bank to amounts due under this Note (or with respect to any such other indebtedness) in such order or manner as Bank, in its discretion, elects, regardless of any instructions from Borrower to the contrary.  Bank or any holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights.  For the purposes hereof, "**Business Day**" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in Los Angeles, California.

4.3    **Late Payments; Default Rate**.  If Borrower fails to make any payment of principal, interest or other amount coming due pursuant to the provisions of this Note within ten (10) calendar days of the date due and payable, Borrower also shall pay to Bank a late charge equal to the greater of five percent (5%) of the amount of such payment or $100.00 (the "**Late Charge**").  Such ten (10) day period shall not be construed in any way to extend the due date of any such payment.  Upon maturity, whether by acceleration, demand or otherwise and, at Bank's option, upon the occurrence of any Event of Default (as hereinafter defined) and during the continuance thereof, amounts outstanding under this Note shall bear interest at a rate per annum (based on the actual number of days that principal is outstanding over a year of 360 days) which shall be six percent (6%) in excess of the interest rate otherwise in effect from time to time under this Note but not more than the maximum rate allowed by law (the "**Default Rate**"); provided, however, if the Default Rate is less than ten percent (10%), then, upon entry of judgment on this Note, the applicable rate of interest shall be the higher of (a) the Default Rate and (b) the statutory rate applicable to judgments in the State of California.  The Default Rate shall continue to apply whether or not judgment shall be entered on this Note.  Both the Late Charge and the Default Rate are imposed as liquidated damages for the purpose of defraying Bank's expenses incident to the handling of delinquent payments, but are in addition to, and not in lieu of, Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any fees and expenses of any agents or attorneys which Bank may employ.  In addition, the Default Rate reflects the increased credit risk to Bank of

2

carrying a loan that is in default. Borrower agrees that the Late Charge and Default Rate are reasonable forecasts of just compensation for anticipated and actual harm incurred by Bank, and that the actual harm incurred by Bank cannot be estimated with certainty and without difficulty.

**4.4** **Prepayments**. The indebtedness evidenced by this Note may be prepaid in whole or in part at any time without penalty. Notwithstanding the foregoing, and without limitation thereof, any voluntary prepayment of advances hereunder shall be in a minimum principal amount of $250,000, in each case upon not less than three (3) Business Days prior written notice to Bank, provided that on each prepayment Borrower shall pay accrued interest on the principal amount so prepaid through the date of such prepayment.

**4.5** **Increased Costs; Yield Protection**. On written demand, together with written evidence of the justification therefor, Borrower agrees to pay Bank all direct costs incurred, any losses suffered or payments made by Bank as a result of any Change in Law (hereinafter defined), imposing any reserve, deposit, allocation of capital or similar requirement (including without limitation, Regulation D of the Board of Governors of the Federal Reserve System) on Bank, its holding company or any of their respective assets relative to this Note. "**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by Bank for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities, in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

**5.** **Security; Right of Setoff; Deposit Accounts**. This Note is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Borrower or any third party has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Borrower to Bank.

Borrower hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments due to Bank (a) to set off against, and to appropriate and apply to the payment of, Borrower's obligations and liabilities under this Note (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any and all amounts owing by Bank to Borrower (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced) and (b) pending any such action, to the extent necessary, to hold such amounts as collateral to secure such obligations and liabilities and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposits so held as Bank, may reasonably determine. Borrower hereby grants to Bank a security interest in all deposits and accounts maintained with Bank, together with all other personal property of Borrower (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to Bank or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered, to secure the payment of all obligations and liabilities of Borrower to Bank under this Note. Every such security interest and right of setoff may be exercised without demand upon or notice to Borrower.

3

Without limitation of the foregoing, Borrower hereby grants to Bank a lien on and security interest in any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Borrower and maintained in an account at Bank, which may have a related account at a bank which is a member of the Federal Reserve System. Borrower authorizes Bank to serve as its bailee and agent with respect to the aforementioned book entry Treasury bills and other book entry securities and to take such action and to execute and deliver such documents on behalf of Borrower as Bank deems necessary or desirable in order to perfect Bank's security interest therein. Borrower hereby gives notice to Bank, in Bank's capacity as bailee and agent, of Bank's security interest in the aforementioned book entry Treasury bills and other book entry securities. Bank may at any time and from time to time, without notice, transfer into its own name or that of its nominee any of the foregoing property of Borrower.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Borrower hereunder.

**6.** **Other Loan Documents**. This Note is issued in connection with a letter agreement dated as of even date herewith (the "**Letter Agreement**"; capitalized terms used herein not otherwise defined herein shall have the meaning set forth in the Letter Agreement) between Borrower and Bank, and certain other agreements and documents executed and/or delivered in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time, collectively, including this Note, the "**Loan Documents**"), and is secured by the collateral (if any) described in the Loan Documents and by such other collateral as previously may have been or may in the future be granted to Bank to secure this Note. The holder of this Note is entitled to the benefits of the Loan Documents and may enforce the agreements of Borrower contained in the Loan Documents and exercise the remedies provided for by, or otherwise available in respect of, the Loan Documents, all in accordance with, and subject to the restrictions contained in, the terms of the Loan Documents.

**7.** **Default; Remedies**.

**7.1** **Events of Default**. The occurrence of any of the following, with respect to Borrower, any guarantor of this Note, any pledgor of equity in support of this Note, or any person or entity providing collateral support for the indebtedness and other obligations evidenced by this Note (each, a "**Credit Party**"), shall constitute an "**Event of Default**" under this Note: (a) the failure to pay within five (5) days of written notice from Bank to Borrower (which, notwithstanding anything to the contrary contained in any Loan Document, may be via e-mail) any principal, interest, fee, charge, indemnity or other indebtedness owing hereunder or under any other Loan Document; (b) the death or incapacity of any Credit Party (or any member or partner of any Credit Party which is a partnership) that is (1) a natural person holding either directly or indirectly a 20% interest in the Borrower or (2) Robert Douglas Spiro Jr.; (c) the failure to furnish Bank with any requested information or failing to permit inspection of books or records by Bank or any of its agents, in each case within ten (10) days of Bank's request therefor; (d) any financial statement or certificate furnished to Bank in connection with, or any representation or warranty made by any Credit Party to Bank in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Credit Party to Bank, proves to be incorrect, false, erroneous or misleading in any material respect when furnished or made; (e) any Credit Party (other than a natural person) dissolves, liquidates or otherwise ceases doing business as a going concern; (f) any "change of control" not permitted under the Loan Documents; (g) the commencement of a foreclosure proceeding against any Credit Party; (h) any default in the performance or observance of any covenant or agreement contained herein, in the Line of Credit Note of even date herewith or in Section A.6.1, Section A.6.2 or Section A.6.3 of the Letter Agreement; (i) any default in the performance or observance of any covenant or agreement contained in any Loan Document (other than as set forth in any other provision of

4

this Section 7.1) and such default continues for fifteen (15) days after the earlier of (1) knowledge of any Credit Party of such default and (2) written notice by Bank to Borrower of such default; (j) any default with respect to any other Material Indebtedness of any Credit Party owed to any person or entity other than Bank (including any such indebtedness in the nature of a lease) or default in the performance or observance of the terms of any instrument pursuant to which such Material Indebtedness was created or is secured, the effect of which default is to cause or permit any holder of any such indebtedness to cause the same to become due prior to its stated maturity (and whether or not such default is waived by the holder thereof) (as used herein, "**Material Indebtedness**" shall mean indebtedness for borrowed money in excess of $250,000 in the aggregate); (k) there exists or occurs any event or condition with respect to, or any change in the financial condition or affairs of, any Credit Party which in the reasonable opinion of Bank (or any subsequent holder hereof) materially impairs or adversely affects, or could reasonably be expected to materially impair or adversely affect, the prospect of payment or performance by such Credit Party of its obligations owed to Bank hereunder or under any other Loan Document; (l) the making of an assignment for the benefit of creditors, or the appointment of a trustee, receiver or liquidator for any Credit Party or for any of his, its or their property, or the commencement of any proceedings by any Credit Party under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute (including, if such Credit Party is a partnership, its dissolution pursuant to any agreement or statute), or the commencement of any such proceedings without the consent of such Credit Party; (m) the sending of notice of an intended bulk sale; (n) the entry of any judgment or any attachment, levy or execution against any Credit Party's properties in excess of $250,000.00 which shall not be released, discharged, dismissed, stayed or fully bonded for a period of thirty (30) days or more after its entry; (o) the revocation or attempted revocation, in whole or in part, of this Note or any other Loan Document by Borrower or any other Credit Party; (p) the issuance of a warrant of distraint or assertion of a lien for unpaid taxes against any Credit Party in excess of $50,000.00 or that are not paid in full within 30 days after the creation thereof; (q) any sale, transfer or other disposition of all or a substantial or material portion of the assets of any Credit Party; or (r) Borrower or any other Credit Party is convicted of a felony for any criminal act.

7.2    **Remedies**.  Upon the occurrence of an Event of Default: (a) Bank shall be under no further obligation to make advances hereunder or under any other Loan Document; (b) if an Event of Default specified in clause (l) of the definition of "Event of Default" above shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, shall be immediately due and payable without demand or notice of any kind; (c) if any other Event of Default shall occur, this Note and all outstanding principal and accrued interest hereunder together with any additional amounts payable hereunder or under any other Loan Documents, if not then due or payable on demand, at Bank's option without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) all other debts or obligations of Borrower to Bank or holder hereof (other than any liabilities or obligations, whether direct or contingent, now existing or hereafter arising, that Borrower, RDS or any Guarantor may have in respect of indebtedness owed by 20715 Avalon LLC to Bank), whether due or not due and whether direct or contingent and howsoever evidenced, shall, at the option of Bank or holder hereof, shall also become due and payable immediately without demand or notice; (e) this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (f) Bank may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law, including all rights and remedies of a secured creditor under the Uniform Commercial Code as adopted and enacted and in effect from time to time in the applicable jurisdiction and all other applicable law.

4840-7087-2992v3/104763-0009

**8.    Miscellaneous**.

**8.1    Anti-Money Laundering/International Trade Law Compliance**.  Borrower represents and warrants to Bank, as of the date of this Note, the date of each advance of proceeds under the Term Loan, the date of any renewal, extension or modification of the Term Loan, and at all times until the Term Loan has been terminated and all amounts thereunder have been indefeasibly paid in full, that: (a) no Covered Entity  (i) is a Sanctioned Person; (ii) has any of its assets in a Sanctioned Country or in the possession, custody or control of a Sanctioned Person; or (iii) does business in or with, or derives any of its operating income from investments in or transactions with, any Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (b) the proceeds of the Term Loan will not be used to fund any operations in, finance any investments or activities in, or, make any payments to, a Sanctioned Country or Sanctioned Person in violation of any law, regulation, order or directive enforced by any Compliance Authority; (c) the funds used to repay the Term Loan are not derived from any unlawful activity; and (d) each Covered Entity is in compliance with, and no Covered Entity  engages in any dealings or transactions prohibited by, any laws of the United States, including but not limited to any Anti-Terrorism Laws.  Borrower covenants and agrees that it shall immediately notify Bank in writing upon the occurrence of a Reportable Compliance Event.

As used herein: "**Anti-Terrorism Laws**" means any laws relating to terrorism, trade sanctions programs and embargoes, import/export licensing, money laundering or bribery, all as amended, supplemented or replaced from time to time; "**Compliance Authority**" means each and all of the (a) U.S. Treasury Department/Office of Foreign Assets Control, (b) U.S. Treasury Department/Financial Crimes Enforcement Network, (c) U.S. State Department/Directorate of Defense Trade Controls, (d) U.S. Commerce Department/Bureau of Industry and Security, (e) U.S. Internal Revenue Service, (f) U.S. Justice Department, and (g) U.S. Securities and Exchange Commission; "**Covered Entity**" means Borrower, its affiliates and subsidiaries, all Credit Parties and other guarantors, pledgors of collateral, all owners of the foregoing, and all brokers or other agents of Borrower acting in any capacity in connection with the Term Loan; "**Reportable Compliance Event**" means that any Covered Entity becomes a Sanctioned Person, or is indicted, arraigned, investigated or custodially detained, or receives an inquiry from regulatory or law enforcement officials, in connection with any Anti-Terrorism Law or any predicate crime to any Anti-Terrorism Law, or self-discovers facts or circumstances implicating any aspect of its operations with the actual or possible violation of any Anti-Terrorism Law; "**Sanctioned Country**" means a country subject to a sanctions program maintained by any Compliance Authority; and "**Sanctioned Person**" means any individual person, group, regime, entity or thing listed or otherwise recognized as a specially designated, prohibited, sanctioned or debarred person or entity, or subject to any limitations or prohibitions (including but not limited to the blocking of property or rejection of transactions), under any order or directive of any Compliance Authority or otherwise subject to, or specially designated under, any sanctions program maintained by any Compliance Authority.

**8.2    Indemnity**.  Borrower agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower), whether in connection with or arising out of or relating to (a) the matters referred to in this Note or in the other Loan Documents or the use of any advance hereunder, (b) any breach of a representation, warranty or covenant by Borrower or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority in any

6

way related to the Obligations or the Loan Documents or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination of this Note, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Borrower may participate at its expense in the defense of any such action or claim.

**8.3    Information**. So long as this Note shall remain outstanding, and without limitation of any provision of any Loan Document, Borrower agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Borrower as Bank may reasonably request from time to time and (b) at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from its records and books of account, visit its properties and discuss its affairs, finances and accounts with any of its officers, directors or independent accountants.

**8.4    Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Note must be in writing (except as may be agreed otherwise above with respect to borrowing requests) delivered to each party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and, with respect to any notice to Bank, such notice should be sent to the attention of: Thomas Belli, with a copy of any notices pursuant to Section 8.1 to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder.

**8.5    No Waiver**. No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

**8.6    Costs and Expenses**. Borrower shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Note and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Borrower or any other person or entity.

7

**8.7**    **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Note for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Borrower (which may be sent by electronic mail).

**8.8**    **Successors and Assigns**.  This Note and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Borrower and its legal representatives, successors and assigns; provided, however, that Borrower may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Borrower or its business, or any collateral pledged to secure the obligations evidenced hereby.

**8.9**    **Certain Taxes**.  The principal of and the interest on the obligations due under this Note, and any other amounts owed hereunder or under any other Loan Document for fees, costs, or otherwise, are payable in lawful money of the United States of America without deduction for or on account of any present or future tax, duty or other charge levied or imposed on this Note or other Loan Document or the proceeds hereof or the holder hereof by any government or any political subdivision thereof or by any other jurisdiction, or by any political subdivision thereof, from which any payment due with respect thereto is remitted or on account of any other restrictions and conditions of whatever nature.  If any such tax, duty or other charge is required to be deducted or withheld by law or regulation from any amount payable hereunder or under any other Loan Document, Borrower shall pay Bank such additional amounts (including any penalties and interest thereon) as may be necessary so that the amount actually received by Bank is equal to the full amount payable hereunder or under such other Loan Document had no such withholding or deduction been made.  Borrower shall furnish to Bank all tax receipts for withholding taxes, if any, paid on behalf of Bank within sixty (60) days of the payment of such tax.  Should Borrower not furnish the tax receipts within ninety (90) days of the due date of payment of such taxes, Borrower shall pay Bank a tax reimbursement equivalent to the amount of withholding tax due.

**8.10**    **Severability**.  The provisions of this Note are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Note in any jurisdiction.

**8.11**    **Limitation of Liability**.  To the fullest extent permitted by applicable law, Borrower shall not assert, and hereby waives any claim against Bank, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Note, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof.

**8.12**    **Reserved**.

**8.13**    **GOVERNING LAW.  THIS NOTE WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF THIS NOTE WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL**

8

RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS NOTE. NOTWITHSTANDING THE FOREGOING, THE LAWS OF THE JURISDICTION IN WHICH ANY COLLATERAL FOR THIS NOTE IS LOCATED SHALL APPLY TO THE CREATION AND PERFECTION OF THE SECURITY INTERESTS THEREIN AND TO THE EXERCISE OF REMEDIES BY BANK THAT PERTAIN TO OR CONCERN SUCH COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FORECLOSURE OF ANY SECURITY INTERESTS AND LIENS GRANTED IN SUCH COLLATERAL.

8.14    VENUE; JURISDICTION. ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR BORROWER ARISING OUT OF OR RELATING TO THIS NOTE MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, OR IN ANY STATE OR FEDERAL COURT IN THE STATE OF CALIFORNIA, AND BORROWER AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN BORROWER AND BANK, AND BORROWER FURTHER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING,   BETWEEN BORROWER AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. BORROWER DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON BORROWER AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 8.4 ABOVE (OR SUCH OTHER NEW NOTICE ADDRESS ESTABLISHED BY BORROWER HEREUNDER) BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY BORROWER AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF.   NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST BORROWER IN ANY OTHER JURISDICTIONS.

8.15    USA PATRIOT Act Notice. Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Borrower and any other Credit Party, which information includes the name, address, tax identification number and other information regarding Borrower and such Credit Party that will allow Bank to identify Borrower and such Credit Party in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

8.16    Further Assurances; Corrections of Defects. Borrower intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of any of the Loan Documents, or in the execution or acknowledgement thereof, and Borrower will execute, or re-execute, acknowledge and deliver such further instruments and

do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of the Loan Documents, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the obligations evidenced by the Loan Documents.

**8.17    WAIVER OF JURY TRIAL.  BORROWER (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS NOTE, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, OR ANY OTHER LOAN DOCUMENT, (ii) ANY TRANSACTION CONTEMPLATED IN THIS NOTE OR ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS NOTE, ANY OF THE OBLIGATIONS EVIDENCED HEREBY, ANY COLLATERAL THEREFOR OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO BORROWER THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY BORROWER IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.**

**8.18    JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.,* ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER.  PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.  BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON.  BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES FOLLOW]

Borrower acknowledges that he, she or it has read and understood all the provisions of this Note, including the sections "Waiver of Jury Trial" and "Judicial Reference in the Event of Jury Trial Waiver Unenforceability" and has been advised by counsel as necessary or appropriate.

**IN WITNESS WHEREOF,** the undersigned has executed this Term Note as of the date first written above.

BORROWER:

**BETTER 4 YOU BREAKFAST, INC.**

By: _____
     Name: Fernando Castillo
     Title: President, Chief Executive Officer

*Signature Page to Term Note*

# EXHIBIT D

000271



## SECURITY AGREEMENT
### (All Assets)

**THIS SECURITY AGREEMENT** (this "**Agreement**") is made and entered into as of this 16th day of August, 2019, by Better 4 You Breakfast, Inc., a California corporation ("**Borrower**"), Balance Foods, LLC, a California limited liability company ("**Balance**") and Moreno Bros. Distributing, LLC, a California limited liability company ("**Moreno**" and together with Borrower and Balance, individually and collectively, jointly and severally, "**Grantor**"), in favor of **BANK LEUMI USA** ("**Bank**"), with an address at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, in consideration of Bank now, heretofore or hereafter (a) extending or agreeing to extend any credit or other financial accommodation to Borrower, or (b) agreeing to any direct or indirect extension, renewal, replacement or modification of, or waiver or forbearance with respect to any such credit or other financial accommodation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.  The term "**Bank**" as used throughout this instrument shall be deemed to include BANK LEUMI USA, all its subsidiaries, and all its agencies, branches and departments wherever located.

1.       **Security Interest**.

      **1.1**     **Grant of Security Interest**.  As security for the full and prompt payment and performance of any and all Obligations (as hereinafter defined in paragraph 1.3), Grantor, as debtor, hereby assigns, transfers and grants to Bank, as secured party, a continuing lien on and security interest in the Collateral (as hereinafter defined).

      **1.2**     **Nature of Security Interest and Obligations**.  The foregoing grant is made for the benefit of Bank and/or any others having a participation or other interest in any of the Obligations, in such proportions as Bank shall in its sole discretion determine. It is the true, clear, and express intention of Grantor that the continuing grant of this security interest, and the Collateral covered hereby, remain as security for the full and prompt payment and performance of the Obligations, whether now existing or which may hereinafter be incurred by future advances otherwise and whether or not any of such Obligations is related to a transaction out of which any other Obligations arose, by class, or kind, or whether or not contemplated by the parties at the time of the granting of this security interest. Notice of the continuing grant of this security interest shall not be required to be stated on the face of any document representing any of such Obligations, nor otherwise identified as being secured hereby; and if any of such Obligations shall remain or become that of less than all of the Grantors herein (if more than one), any Grantor not liable therefor hereby expressly hypothecates his, her, its, or their ownership interest in the Collateral to the extent required to satisfy any of said Obligations, without restriction, or limitation.  Any of such Obligations shall be deemed to have been made pursuant to Section 9204(c) of the Uniform Commercial Code of the State of California.

      **1.3**     **Obligations Secured**.  The term "**Obligations**" shall have the meaning given such term in that certain letter agreement dated as of the date hereof among Grantor, Bank, and the other parties thereto (the "**Letter Agreement**"; capitalized terms used herein but not otherwise defined herein shall have the meaning set forth in the Letter Agreement).

      Notwithstanding anything to the contrary contained in the Loan Documents, with respect to any Grantor that is not Borrower, then, solely with respect to such Grantor, the definition of "**Obligations**" shall specifically exclude any and all Excluded Swap Obligations.  The foregoing limitation of the definition of Obligations shall only be deemed applicable to the obligations of any Grantor that is not Borrower (or solely any particular non-Borrower Grantor(s) if there is more than one Grantor) under the particular Swap (or Swaps), or, if arising under a master agreement governing more than one Swap, the

portion thereof, that constitute Excluded Swap Obligations. As used herein, (i) "**Excluded Swap Obligations**" means, with respect to each Grantor, any obligation to pay or perform under any agreement, contract or transaction that constitutes a Swap if, and to the extent that, all or any portion of this Agreement that relates to the obligations under such Swap is or becomes illegal as to such Grantor under the Commodity Exchange Act (7 U.S.C. §1 et seq.), as amended from time to time, and any successor statute (the "**CEA**"), or any rule, regulation, or order of the Commodity Futures Trading Commission (the "**CFTC**"), by virtue of such Grantor's failure for any reason to qualify as an "eligible contract participant" (as defined in the CEA and regulations promulgated thereunder) on the Eligibility Date for such Swap; (ii) "**Eligibility Date**" means the date on which this Agreement becomes effective with respect to the particular Swap (for the avoidance of doubt, the Eligibility Date shall be the date of the execution of the particular Swap if this Agreement is then in effect, and otherwise it shall be the date of execution and delivery of this Agreement); and (iii) "**Swap**" means any "swap" as defined in Section 1a(47) of the CEA and regulations thereunder between Borrower and Bank, other than (A) a swap entered into on, or subject to the rules of, a board of trade designated as a contract market under Section 5 of the CEA, or (B) a commodity option entered into pursuant to CFTC Regulation 32.3(a).

    **1.4**    **Collateral**. The term "**Collateral**" as used herein means all of Grantor's right, title and interest in the following, wherever located and whether now owned or existing or hereafter acquired or proceeds thereof created and all proceeds thereof:

    All personal property of Grantor, including without limitation all (a) accounts (including, without limitation, health-care-insurance receivables, accounts receivable and credit card receivables), (b) goods, including equipment, machinery, vehicles, rolling stock, furniture and fixtures, (c) chattel paper (whether tangible or electronic), (d) inventory (including raw materials, work in process, or materials used or consumed in Grantor's business, items held for sale or lease or furnished or to be furnished under contracts of service, sale or lease, and goods that are returned, reclaimed or repossessed), (e) general intangibles of every kind and nature, including without limitation licenses, intellectual property, patents, trademarks and copyrights, and payment intangibles, (f) instruments (including promissory notes), (g) documents (including warehouse receipts), (h) deposit accounts and bank accounts of any nature, (i) investment property (including securities entitlements, securities accounts, commodity accounts, and commodity contracts), (j) letters of credit and letter-of-credit rights, (k) supporting obligations, (l) commercial tort claims (if any, as described on Exhibit A hereto), (m) farm products, (n) property now or hereafter in Bank's control or possession (or in transit to or from, or under the custody or control of, Bank or any affiliate thereof), and (o) books and records; and (p) with respect to all of the foregoing, all property relating thereto, including, without limitation, insurance proceeds, all software, computer programs, computer records, books and records, and all additions and accessions thereto, replacements thereof and substitutions therefor, and the products and proceeds thereof (including cash and non-cash proceeds), investments therein, income, rents, profits, benefits thereof or therefrom, including all cash and cash equivalents.

    Notwithstanding the foregoing, Collateral shall not include any "**Excluded Property**", which is defined as any document, contract or agreement to which any Grantor is a party, or any of its rights or interests thereunder, in connection with any equipment financing, operating lease or capital lease permitted under the Loan Documents, if and for so long as the grant of such security interest or the assignment thereof shall constitute or result in a breach or termination pursuant to the terms of, or a default under, or is otherwise prohibited by the terms of any such document, contract or agreement due to an enforceable provision containing a restriction on assignment or the grant of a security interest thereunder (other than to the extent that any such term is rendered ineffective pursuant to Section 9406, 9407, 9408, or 9409 of the UCC (or any successor provision or provisions) or any other applicable law (including bankruptcy or insolvency laws) or principles of equity); provided that the foregoing exclusion

shall not apply if such prohibition has been waived by the other party to such document, contract or agreement or the other party to such document, contract or agreement has otherwise consented to the creation of a security interest in such document, contract or agreement; provided, further, that immediately upon the ineffectiveness or lapse or termination of any such provision, the Collateral shall include, and such Grantor shall be deemed to have granted a security interest in, all its rights, title and interests in and to such document, contract or agreement as if such provision had never been in effect; and provided, further, that the foregoing exclusion shall in no way be construed so as to limit, impair or otherwise affect Bank's unconditional continuing security interest in and to all rights, title and interests of the applicable Grantor in or to any accounts receivable, payment obligations or other rights to receive monies due or to become due under any such document, contract or agreement and in any such monies and other proceeds of such document, contract or agreement.  In no event shall accounts receivable, payment obligations or other rights to receive monies from account debtors be deemed Excluded Property.

All terms, unless otherwise defined in this Agreement or in any financing statement, shall have the definitions set forth in the Uniform Commercial Code as adopted and enacted and in effect from time to time in the State of California (the "UCC"); provided that terms used herein which are defined in the UCC on the date hereof shall continue to have the same meaning notwithstanding any replacement or amendment of such statute, except (i) with respect to any modification or amendment to the definition of any category or type of collateral, which modification or amendment will apply automatically to such term as used in this Agreement as of the date thereof, and (ii) as Bank may otherwise determine.

2.      **Representations, Warranties, Covenants and Agreements regarding Collateral**.

2.1     **General Representations, Warranties and Covenants**.  Grantor hereby represents, warrants and covenants to Bank that:

(a)      Grantor's type of organization, jurisdiction of organization, registration number and chief executive office are as set forth on Exhibit A attached hereto and made a part hereof, and are true and correct on the date hereof, and Grantor will provide Bank at least thirty (30) days prior written notice of any change in any of the foregoing;

(b)      Grantor's legal name is exactly as set forth in the preamble to this Agreement, and Grantor has not in the past five years changed its legal name or been known by any other name, been party to a merger, consolidation or other change in structure, changed or had its registration number in its state of organization changed, except as may be set forth on Exhibit A hereto;

(c)      the location of all Collateral owned by Grantor is as shown on Exhibit A hereto, and Grantor's records concerning the Collateral are kept only at such location(s);

(d)      Grantor will not change the location of the Collateral or Grantor's records concerning the Collateral without Bank's prior written consent;

(e)      Grantor is the legal and beneficial owner of the Collateral and has good, marketable and indefeasible title thereto, including the exclusive right to pledge, grant a security interest in, sell, assign or transfer such Collateral;

(f)      the Collateral is free from all encumbrances and rights of setoff of any kind except the lien in favor of Bank created by this Agreement and Permitted Liens;

3

(g)     Grantor will defend the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein;

(h)     Grantor shall not grant, create, incur or permit to exist any lien on or in any of the Collateral (except Permitted Liens), permit any of the Collateral to be levied upon under any legal process, or sell, assign or dispose of any of the Collateral (except in the ordinary course of business, as permitted under the Loan Documents, or as otherwise permitted in writing by Bank);

(i)     Grantor shall promptly notify Bank of the imposition at any time of any lien or encumbrance upon any of the Collateral, other than as permitted herein;

(j)     Grantor has the power and authority to own the Collateral, to grant the liens and security interests therein to Bank as provided herein, and to enter into and perform this Agreement and any other document or instrument delivered in connection herewith;

(k)     Grantor will not allow any third party to gain control of all or any part of the Collateral, and will not use any portion of the Collateral in any manner inconsistent with this Agreement or with the terms of any policy of insurance thereon;

(l)     Grantor shall cooperate with Bank in perfecting all security interests granted herein and in obtaining such agreements from third parties as Bank deems necessary, proper or convenient in connection with the preservation, perfection or enforcement of any of its rights hereunder;

(m)     Grantor shall keep, in accordance with generally accepted accounting principles consistently applied, accurate and complete records regarding the Collateral, and shall, on Bank's demand, make notations on its books and records showing Bank's security interest;

(n)     Grantor shall, at Grantor's reasonable expense, permit Bank (or its officers, agents, attorneys, or accountants) to examine or inspect the Collateral (wherever located), to obtain valuations or appraisals of the Collateral, and to audit and make extracts from such records or any of Grantor's books, ledgers, financial reports, correspondence or other records relating to the Collateral, and shall further answer promptly all of Bank's written or oral inquiries with respect thereto;

(o)     Grantor shall pay all taxes, assessments and other charges of every nature which may be levied or assessed against the Collateral other than taxes, assessments, fees and charges being contested in good faith by appropriate proceedings being diligently pursued, and for which adequate reserves have been set aside;

(p)     Grantor shall, at any time and from time to time, upon demand by Bank, deliver to Bank, endorsed and, or accompanied by instruments of assignment and transfer, in such form and containing such terms as Bank may request, any and all instruments, documents and/or chattel paper constituting part of the Collateral, as Bank may specify in its demand;

(q)     Grantor will not allow any part of the Collateral to be or become an accession to other goods not covered by this Agreement;

(r)     Grantor shall pay when due all transportation, storage and warehousing charges affecting or arising out of the Collateral;

(s)     Grantor shall do, obtain, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as Bank may request to vest in and assure to Bank that its rights hereunder and in or to the Collateral, and the proceeds thereof, including waivers from landlords, warehousemen, and mortgagees, and any other person having an interest in real estate where any Collateral is or is to be attached, installed or located;

(t)     Grantor shall keep the Collateral in good order and repair at all times and immediately notify Bank of any event causing a material loss or decline in value of the Collateral, whether or not covered by insurance, and the amount of such loss or depreciation;

(u)     Grantor will only use or permit the Collateral to be used in accordance with all applicable federal, state, county and municipal laws and regulations;

(v)     Grantor shall abide by, perform and discharge each and every obligation, covenant, condition, duty and agreement in connection with the Collateral contained herein or in any other document evidencing or securing the Obligations; and

(w)     Grantor may not sell, assign or otherwise dispose of any shares of stock or other securities now owned or hereafter acquired by Grantor which are issued by the same issuer and are of the same class as any shares of stock or other securities constituting a part of the Collateral.

**2.2**    **Insurance**.  In the event of any partial or complete loss or destruction of any of the Collateral by any means, Grantor shall, at its own expense, cause such repairs to be made as Bank may reasonably deems appropriate or at the option of Bank, replace such Collateral with new Collateral having a value equal to the value of the lost or destroyed Collateral prior to such loss or destruction, to the extent such loss or destruction exceeds $250,000 in any fiscal year.  Grantor agrees, at its own expense, to keep all insurable Collateral insured against loss or damage by fire, theft, sprinkler leakage or any other risk to which the Collateral may be subject (including without limitation risk of flood if any Collateral is maintained at a location in a flood hazard zone, and such other risks and hazards as Bank may reasonably specify), for the full insurable value thereof, under policies and with insurers reasonably acceptable to Bank, which policies shall contain a standard Lender's Loss Payable Clause issued in favor of Bank under which all losses thereunder shall be payable to Bank as Bank's interests may appear.  Grantor's duty to insure as set forth in this Section 2.2 shall be limited to obtaining insurance coverage which is usual and customary for businesses in the same business as Grantor.  Such policies shall expressly provide for at least thirty (30) days prior written notice to Bank of any intended cancellation or modification of the policy.  Grantor will deliver to Bank on request duplicate copies of policies or certificates of such insurance with evidence of payment of the premium thereon.  If Grantor fails to provide proof of said insurance, within five (5) Business Days after request for the same by Bank then, in addition to any other right or remedy that Bank may have and without waiving the consequences of such default, Bank may but need not obtain and maintain said insurance, at the sole expense of Grantor, which expense shall be deemed one of the Obligations and shall be payable to Bank on demand.  If an Event of Default has occurred and is continuing, Bank is irrevocably authorized to file claims and shall have the sole right to adjust, settle and collect claims under said insurance by such means, at such times, on such terms and in the name of Bank or Grantor, as Bank may see fit and in the name and on behalf of Grantor to execute releases and endorse checks or drafts payable in respect of any such insurance claims.  All sums received by Bank from any such insurance may be applied, in the reasonable discretion of Bank, to repair or replace Collateral and/or applied to reduce the Obligations.

**2.3**    **Authorization for Disposition of Collateral by Grantor**.  Notwithstanding anything to the contrary contained herein, until the occurrence of an Event of Default or notice from Bank terminating or limiting the right of Grantor to do so, Grantor may sell or lease in the ordinary course of its regular

business inventory constituting a part of the Collateral and may collect, compromise and adjust accounts receivable constituting a part of the Collateral, all on such terms as Grantor may in good faith deem advisable in the ordinary course of its regular business, and may retain all sums so collected.

3.  **Perfection; Further Assurances**.

(a)  Grantor hereby grants Bank the right, and irrevocably authorizes Bank, in Bank's reasonable discretion, to file, in form satisfactory to Bank, one or more financing statements, amendments thereto and continuations thereof (with, or, to the extent permitted by law, without the signature of Grantor) under the UCC naming Grantor as debtor and Bank as secured party and indicating therein, in Bank's sole discretion, that the Collateral is comprised of "all assets" or "all assets of the Debtor whether now existing or hereafter arising or acquired, including all proceeds thereof" or any like description or describing the items of Collateral herein specified, in all jurisdictions in which such filing is deemed by Bank to be necessary or desirable in order to perfect, preserve and protect its security interests in the Collateral.  Grantor agrees to provide to Bank from time to time promptly upon request any information requested by Bank so that Bank can take any such action.  Grantor hereby ratifies and confirms any of the foregoing actions taken by Bank.  If required by Bank, Grantor will execute, file and record any, notices, affidavits or other documents and take all such other actions as Bank may deem appropriate to protect or perfect its security interest in the Collateral or to otherwise accomplish the purposes of this Agreement.  Grantor hereby agrees to pay on demand, and/or authorizes Bank to charge its account with the reasonable cost of, any and all preparation, filing, recording and other fees and expenses which Bank deems appropriate in order to protect or perfect its security interest in the Collateral or to otherwise accomplish the purposes of this Agreement, including without limitation the cost of all searches of public records as Bank in its reasonable discretion shall require.  Notwithstanding the foregoing, Bank shall have no obligation to comply with any recording, re-recording, filing, re-filing, or other legal requirements necessary to establish or maintain the validity, priority or enforceability of, or Bank's right in or to, the Collateral or any part thereof.

(b)  At the request of Bank, Grantor will, at its own cost and expense, cause such liens and security interests as are governed by laws other than the UCC to be perfected and to continue to be perfected so long as the Obligations or any portion thereof is outstanding and unpaid or any commitment to lend by Bank with respect to the Obligations remains in effect.

(c)  Immediately upon Grantor's receipt of any portion of the Collateral which itself, or the ownership of which, is or becomes evidenced by an agreement, instrument, document or other writing (including but not limited to promissory notes, documents of title, trade acceptances and warehouse receipts), Grantor shall deliver the original thereof to Bank, together with appropriate endorsements or other specific evidence, in form and substance reasonably acceptable to Bank, of the collateral assignment thereof to Bank as security for the Obligations.

(d)  Grantor shall at any time and from time to time, take such steps as Bank may reasonably request for Bank to obtain an acknowledgement, in form and substance satisfactory to Bank, of any bailee or any other person having possession of any of the Collateral that the bailee or such other person holds such Collateral for Bank.

(e)  Grantor further covenants and agrees that, if any Collateral consists of letter of credit rights, electronic chattel paper, deposit accounts or supporting obligations not maintained with Bank or one of its affiliates, or any securities entitlement, securities account, commodities account, commodities contract or other investment property, or otherwise is subject to perfection

6

by "control" (within the appropriate meaning pursuant to the UCC) with a financial intermediary, financial institution or otherwise, Grantor shall take all necessary steps as Bank may reasonably request to achieve and maintain control of such Collateral in Bank's favor.  Without limitation of the foregoing, Grantor shall execute, and shall cause any depository institution or securities intermediary upon whose books and records the ownership interest of Grantor in such Collateral appears, to execute such pledge agreements, notification and control agreements or other agreements as Bank deems reasonably necessary in order to perfect, prioritize and protect its security interest in such Collateral, in each case in a form satisfactory to Bank.  Grantor shall, upon receipt of notice of termination of any such control agreement entered into between Grantor, Bank and a depository institution or securities intermediary (the "**First Agreement**"), or notice of the closing of any account which is the subject of such First Agreement, cause the possessory Collateral which is the subject of such First Agreement to be moved to another depository institution or securities intermediary subject to a new or amended control agreement, in a form reasonably satisfactory to Bank, executed by Grantor and such other depository institution or securities intermediary, and delivered to Bank no later than ten (10) days before the scheduled termination date of the First Agreement.

(f)    Grantor hereby grants Bank the right, in its sole discretion, at any time, (i) after the occurrence and during the continuance of an Event of Default, to transfer to or register in the name of itself or any of its nominees any of the Collateral, and whether or not so transferred or registered, to receive the income and dividends thereon, including stock dividends and rights to subscribe, and to hold the same as a part of the Collateral and/or apply the same as hereinafter provided; (ii) to exchange any of the Collateral for other property upon any reorganization, recapitalization, or other readjustment and in connection therewith to deposit any of the Collateral with any committee or depositary upon such terms as Bank may determine; (iii) in any bankruptcy or similar proceeding to file a proof of claim for the full amount of the Collateral and to vote such claim for or against any arrangement or with respect to any other matter; and (iv) to contest, pay and/or discharge all liens or encumbrances which are not Permitted Liens; pay or discharge taxes or assessments which are not timely paid, or, during the continuance of an Event of Default, pay or discharge claims, actions or demands against, any of the Collateral and to take all actions and proceedings in its own name or in the name of Grantor or any other appropriate person in order to remove or contest such liens, encumbrances, taxes, assessments, claims, actions or demands; or to refrain from doing any of the foregoing, all without affecting the Obligations and the Collateral and without notice or liability to, or the consent of Grantor except to account for property actually received by Bank.

(g)    If Grantor, as registered holder of any of the Collateral, shall receive any stock certificate, option or right, whether as an addition to, or in substitution or exchange for, any Collateral, or otherwise, Grantor agrees to accept the same as Bank's agent and to hold the same in trust for Bank, and to forthwith deliver the same to Bank in the exact form received, with Grantor's endorsement thereof if requested by Bank, to be held by Bank as part of the Collateral. Grantor hereby assigns to Bank all of Grantor's rights (but none of its obligations) in, to and under all collateral, guarantees, subordinations and other rights and benefits now or hereafter received by Grantor with respect to the Collateral as security for the Obligations and agrees to deliver to Bank, upon demand, all agreements, instruments and or documents evidencing same, endorsed and/or accompanied by instruments of assignment and transfer, in such form and containing such terms as Bank may request for the purposes set forth in this Agreement.

(h)    If Grantor shall at any time, acquire a commercial tort claim, as defined in the UCC, Grantor shall immediately notify Bank in a writing signed by Grantor of the brief details thereof and shall grant to Bank in such writing a security interest therein and in all proceeds

7

thereof, all of which shall be upon and subject to the terms of this Agreement, with such writing to be in form and substance satisfactory to Bank.

(i)    Notwithstanding the possession at any time of any of the Collateral by Bank, whether on its own behalf or on behalf of others, Grantor shall remain liable for the payment in full of the Obligations. Grantor assumes all liability and responsibility for the Collateral, and the obligation of Grantor to pay the Obligations shall in no way be affected or diminished by reason of the fact that any of the Collateral may be lost, destroyed, stolen, damaged or for any other reason whatsoever unavailable to Grantor or that the value of the Collateral shall be diminished.

(j)    **Power of Attorney**. Grantor does hereby make, constitute and appoint any officer or agent of Bank as Grantor's true and lawful attorney-in-fact, with power to file any claim, and or do any and all things and take any other action or proceedings, either in its own name or in the name of Grantor or otherwise, alone or jointly, which Bank may deem reasonably necessary or advisable to carry out the intent of this Agreement, and to endorse the name of Grantor or any of Grantor's officers or agents upon agreements, applications, notes, checks, drafts, money orders, or other instruments of payment or Collateral that may come into the possession of Bank in full or part payment of any amounts owing to Bank or to otherwise perfect a security interest in the Collateral, granting to Grantor's said attorney full power to do any and all things necessary to be done as fully and effectually as Grantor might or could do, including the right to sue for, compromise, settle and release all claims and disputes with respect to, the Collateral and including the right to vote any Collateral consisting of equity or like interests; provided, however, Bank may exercise such powers only upon the occurrence of an Event of Default and any continuation thereof. Grantor hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney is coupled with an interest, and is irrevocable for so long as the Obligations shall remain outstanding and unsatisfied and for so long as Bank has any commitments to lend under the Loan Documents. Grantor acknowledges and agrees that the power of attorney herein granted is for the benefit of Bank and does not require Bank to act for the benefit of Grantor as principal; and the power of attorney herein granted is not intended to make Bank a fiduciary for Grantor. Bank hereby accepts this power of attorney and all powers granted hereunder for the benefit of Bank. Grantor hereby acknowledges, consents and agrees that the power of attorney granted pursuant to this Subsection is irrevocable and coupled with an interest for so long as the Obligations shall remain outstanding and unsatisfied and for so long as Bank has any commitments to lend under the Loan Documents.

In furtherance of the foregoing, Grantor hereby irrevocably authorizes and directs each account debtor to honor any demand by Bank to make payment on any account as directed by Bank, until such time that Bank shall notify such account debtor otherwise. No account debtor shall be required to inquire into Bank's right to make any such demand, or into the application of any amounts paid by such account debtor pursuant to such demand. Grantor further agrees to assist, and not to hinder, delay or impede, Bank in the collection and enforcement of the accounts.

4.    **Events of Default**. The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an "**Event of Default**" under this Agreement. Furthermore, it shall also be an Event of Default hereunder if (a) demand by Bank under any Loan Document evidencing any of the Obligations that has a demand feature shall not be timely paid; (b) commencement of any proceeding, procedure, or remedy supplementary to or in enforcement of any judgment, issuance of any writ or order of attachment or garnishment, or the existence of any other lien against or with respect to any property of Grantor; (c) an uninsured material loss, theft, damage or destruction to any of the Collateral; (d) the entry of any judgment against Grantor in excess of $250,000 (other than to the extent covered by a solvent insurance provider that has acknowledged coverage) remains outstanding or

8

unbonded for longer than 30 days; (e) any lien (other than Permitted Liens) against or the making of any levy, seizure or attachment of or on the Collateral for so long as any Obligations, or any commitments by the Bank to lend, remain outstanding; (f) failure of Bank to have a perfected first priority security interest in any of the Collateral (subject to Permitted Liens) other than if the failure to be so perfected is as a result of Bank failing to file a UCC-1 financing statement or otherwise take the appropriate perfection action (but without limiting in any way the applicability of clause (e) hereof); (g) Bank receives any notice or evidence that Grantor or the Collateral may have directly or indirectly been engaged in any type of activity which, in Bank's reasonable judgment, might result in the loss, theft, damage or destruction of any of the Collateral and such loss, theft, damage or destruction of a portion of the Collateral would reasonably be expected to materially and negatively affect the Collateral or Bank's security interest therein; or (h) the seizure or forfeiture of any of the Collateral by or to any federal, state or local governmental body.

5. **Remedies**. During the continuance of any Event of Default: (a) any or all of the Obligations shall, at the option of Bank and notwithstanding any time or credit allowed by any instrument evidencing any Obligation, be immediately due and payable without notice, demand or presentment; (b) Bank may, in its discretion, take possession of the Collateral and, for that purpose, may enter, with the assistance of any persons, any premises where the Collateral or any part thereof may be located, and retain possession of the Collateral at such premises or remove the same therefrom; (c) Grantor shall, at the request of Bank, assemble and /or deliver the Collateral at such places as Bank may designate and cooperate in all other respects with Bank in the exercise of its rights hereunder; (d) if an Event of Default has occurred under Section 7.1(a) of the Line of Credit Note or under Section 7.1(a) of the Term Note, which remains uncured for thirty (30) days, or an Event of Default has occurred under Section 7.1(l) of the Line of Credit Note or under Section 7.1(l) of the Term Note, then the Bank may vote any shares of stock or other securities and exercise all or any powers with respect thereto with the same force and effect as an absolute owner thereof; (e) Bank may sell any of the Collateral or cause the same to be sold in the County of Los Angeles, California, or elsewhere, in one or more sales or parcels, at such price and on such terms as Bank may deem advisable, for cash or on credit, for immediate or future delivery, without assumption of any credit risk, at any public or private sales or other dispositions, without demand of performance (which demand is hereby expressly waived), on at least five (5) days notice to Grantor (if any notice is required by law) of any public sale or the time after which a private sale or other disposition may be made (which notice Grantor acknowledges is reasonable), and in connection therewith may grant options and may impose reasonable conditions thereon, and the purchasers of any of the Collateral so sold shall thereafter hold the same absolutely, free from any claim or right of any kind, including any equity of redemption of Grantor (any such equity being hereby expressly waived and released), and Bank or any of its nominees or agents may buy at any public sale and if the Collateral is of a type sold in a recognized market, or is of a type which is the subject of widely distributed standard price quotations, buy at private sale; (g) Bank shall not be obligated to make any sale of the Collateral regardless of notice of sale having been given; and (f) in addition to and notwithstanding any other rights granted by law or herein (or any limitations contained herein on any such rights), Bank shall have all of the rights and remedies with respect to the Collateral of a secured party under the UCC. Grantor agrees that any action taken by Bank in accordance with this paragraph shall be deemed to be commercially reasonable.

If in its reasonable discretion Bank deems it desirable, it may remove any Collateral held by it from the place where it may now or hereafter be located to any other place and deal with it there as herein provided. Bank has no obligation to marshal Collateral or otherwise prepare the Collateral for sale and may specifically disclaim any warranties as to the Collateral, including those of title, merchantability and fitness for a particular purpose.

Following an Event of Default, Bank, at any time, at its option, may apply all of any net cash receipts from the Collateral (whether received on a sale of the Collateral or otherwise) to the payment, in

9

whole or in part, of principal of and/or interest on any or all of the Obligations, whether or not then due, allocating the same as it shall elect, making rebate of interest or discount to the extent required by law and so as not to make the rate of interest charged unlawful with respect to Grantor or Bank. If any Obligations shall be contingent, Bank may retain a sufficient amount of the net cash receipts from the Collateral as additional Collateral to cover the largest aggregate sum which may become due or owing thereunder with prospective interest, costs, expenses and attorneys' fees and shall not be charged with any interest with respect thereto. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all of the Obligations Grantor (including but not limited to Borrower) shall be liable of the deficiency and the fees of any attorneys employed by Bank to collect such deficiency.

6.      **Additional Security; Setoff**.  Grantor hereby authorizes Bank, at any time and from time to time during the continuance of an Event of Default or at any time (regardless of whether an Event of Default is then continuing) in connection with scheduled interest and principal payments (i) to set off against, and to appropriate and apply to the payment of any of the Obligations (whether matured or unmatured, fixed or contingent, liquidated or unliquidated), any of the Collateral and all amounts owing by Bank to Grantor (whether payable in U.S. dollars or any other currency, whether matured or unmatured, and in the case of deposits, whether general or special (except trust and escrow accounts), time or demand and however evidenced), and (ii) pending any such action, to the extent necessary, to hold such amounts as Collateral to secure such Obligations and to return as unpaid for insufficient funds any and all checks and other items drawn against any deposit so held as Bank, in its sole discretion, may elect. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of Bank, although Bank may enter such setoff on its books and records at a later time.

Without limitation of the foregoing, the term "Collateral" shall include, and Grantor hereby grants to Bank a lien on and security interest in, any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Grantor and maintained in an account at Bank, which may have a related account at a bank which is a member of the Federal Reserve System. Grantor authorizes Bank to serve as its bailee and agent with respect to the aforementioned book entry Treasury bills and other book entry securities and to take such action and to execute and deliver such documents on behalf of Grantor as Bank deems necessary or desirable in order to perfect Bank's security interest therein. Grantor hereby gives notice to Bank, in Bank's capacity as bailee and agent, of Bank's security interest in the aforementioned book entry Treasury bills and other book entry securities. Bank may at any time and from time to time, without notice, transfer into its own name or that of its nominee any of such Collateral of Grantor.

7.      **Subrogation**.  If any of the Collateral is applied on account of any of the Obligations, Grantor shall not have any right of subrogation to Bank's right in any other Collateral held by Bank with respect to the Obligations or any right of contribution from Bank by reason thereof.

8.      **Preservation of Rights**.  No delay or omission on Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Bank's action or inaction impair any such right or power. Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Bank may have hereunder or under other agreements, at law or in equity and any and all such rights and remedies may be pursued by Bank simultaneously, separately, or sequentially. Bank may proceed in any order against Grantor or any other obligor of, or any collateral securing, the Obligations.

9.      **Interpretation**.  In this Agreement, unless Bank and Grantor otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the

10

word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Agreement; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in such Agreement are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any Person include that Person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. If this Agreement is executed by more than one party as Grantor, the obligations of such persons or entities will be joint and several.

     **10.**    **Notices**. All notices, requests and demands which any party is required or may desire to give must be made in writing delivered to each party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and, with respect to any notice to Bank, such notice should be sent to the attention of: Tom Belli, with a copy of any notices pursuant to Section 3(h) to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending, with a copy to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by other means, one day after transmission or shipment. Without limiting the foregoing, first class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder. No notice to or demand on Grantor will entitle Grantor to any other or further notice or demand in the same, similar or other circumstance.

     **11.**    **Costs and Expenses**. Grantor shall reimburse Bank immediately upon demand the full amount of all payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of Bank's in-house counsel), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Agreement and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of the custody, care, collection, repair, storage, preparation for sale, actual or attempted disposition of, protection and preservation of the Collateral (including without limitation insurance premiums and sales commissions), (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under this Agreement or any of the Loan Documents, and (c) the prosecution or defense of any action in any way related to this Agreement, or any of the Loan Documents, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Grantor or any other person or entity.

**12.    Entire Agreement**.  This Agreement constitutes the entire agreement between Grantor and Bank with respect to the subject hereof and supersedes all prior negotiations, communications (written or oral), discussions and correspondence concerning the subject matter hereof.  Grantor and Bank agree that any inconsistency or discrepancy between the provisions of this Agreement and any other documentation evidencing the Obligations of Grantor to Bank and/or between Grantor and Bank, shall be resolved in the manner most favorable to Bank.

**13.    Severability**.  The provisions of this Agreement and each other Loan Document are severable and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction or any other provision of any of the Loan Documents in any jurisdiction.

**14.    Limitation of Liability**.  To the fullest extent permitted by applicable law, neither Grantor nor Bank shall assert, and each hereby waives any claim against the other, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Agreement, any other document evidencing or securing the Obligations, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof; provided however that the foregoing shall in no way limit the indemnification obligations of Grantor set forth in any Loan Document for any special, indirect, consequential or punitive damages against Bank in any way related to the Loan Documents or the Obligations in connection with any suit or proceeding brought by a party other than a Grantor.

**15.    Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Agreement or consent to any departure by Grantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Agreement or any other Loan Document for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Grantor (which may be sent by electronic mail).

**16.    No Waiver**.  No failure on the part of Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

**17.    Successors and Assigns; Assignments**.  This Agreement and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Grantor and its legal representatives, successors and assigns; provided, however, that Grantor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder, whether in or to the Obligations, the Collateral or otherwise.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Grantor its business, or any Collateral.

**18.    Counterparts; Electronic Transmission**.  This Agreement may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of

which, taken together, shall constitute one and the same Agreement. Delivery of any executed counterpart of this Agreement by electronic transmission shall be effective as delivery of a manually executed counterpart hereof. Grantor acknowledges that information and documents relating to this Agreement and the credit accommodations provided for herein may be transmitted through electronic means.

**19.** **Patriot Act**. Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank is required to obtain, verify and record information that identifies Grantor, which information includes the name, address, tax identification number and other information regarding Grantor that will allow Bank to identify Grantor in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

**20.** **GOVERNING LAW. THIS AGREEMENT WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION SECURED HEREUNDER WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, GRANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT. NOTWITHSTANDING THE FOREGOING, THE LAWS OF THE JURISDICTION IN WHICH THE COLLATERAL IS LOCATED SHALL APPLY TO THE CREATION AND PERFECTION OF THE SECURITY INTERESTS THEREIN AND TO THE EXERCISE OF REMEDIES BY BANK THAT PERTAIN TO OR CONCERN SUCH COLLATERAL, INCLUDING, WITHOUT LIMITATION, THE FORECLOSURE OF ANY SECURITY INTERESTS AND LIENS GRANTED IN SUCH COLLATERAL.**

**21.** **VENUE; JURISDICTION. ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR GRANTOR ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA AND GRANTOR AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION OR PROCEEDING BETWEEN GRANTOR AND BANK. GRANTOR WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING BETWEEN BANK AND GRANTOR, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. GRANTOR DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON GRANTOR AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 10 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GRANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY GRANTOR AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER**

13

MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GRANTOR IN ANY OTHER JURISDICTIONS.

22.    <u>WAIVER OF JURY TRIAL</u>.  GRANTOR (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT GRANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS AGREEMENT, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY COLLATERAL OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO GRANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY GRANTOR IN THIS PARAGRAPH, AND (ii) GRANTOR HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

23.    <u>JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY</u>.  IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GRANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, ET SEQ., ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, GRANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.  GRANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON.  GRANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GRANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GRANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

14

**Grantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.**

**Initials of authorized officer of each Grantor:**

| Fc | Fc | Fc |
|----|----|----|
| **Borrower** | **Balance** | **Moreno** |

     24.     <u>Indemnity</u>.  Grantor agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "<u>Indemnified Parties</u>"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Grantor), in connection with or arising out of or relating to the matters referred to in this Agreement or the use of any advance with respect hereto, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by Grantor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Grantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); <u>provided</u>, <u>however</u>, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct , as determined by a final and non-appealable decision of a court of competent jurisdiction.   The indemnity agreement contained in this Section shall survive the termination or revocation of this Agreement, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon.  Grantor may participate at its expense in the defense of any such action or claim.

     25.     <u>Further Assurances; Corrections of Defects</u>.  Grantor intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Agreement or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Grantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Agreement, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations secured hereby.

     26.     <u>Authorization</u>.  Solely with respect to any Grantor that is not Borrower (such non-Borrower Grantor being referred to in this Section 26 and Section 27 as a "<u>Guarantor</u>"), Guarantor hereby authorizes Bank, without notice or demand and without affecting Guarantor's liability hereunder, from time to time to: (a) change or extend the time, or manner, or payment of the Obligations; (b) make further advances under the Loan Documents or increase or decrease the principal amount evidenced thereby; (c) change any of the terms, covenants, conditions or provisions of any of the Loan Documents;

15

000286

(d) transfer, assign or negotiate any of the Loan Documents; (e) take and hold additional security for the payment or the performance of the Obligations, and exchange, enforce, waive and release any such security; (f) release all or part of any security for the Obligations, including the Collateral, whether in accordance with any partial release provision now contained in the Loan Documents or otherwise as Bank may determine in its discretion; (g) apply the security for the Obligations, including the Collateral, to the payment of the Obligations and direct the order or manner of sale thereof as Bank may determine in its discretion; (h) proceed against Borrower or any guarantor of the Obligations without first foreclosing under any security for the Obligations, including the Collateral; (i) accept a conveyance of all or part of the security for the Obligations, including the Collateral, in partial satisfaction of the indebtedness due under the Obligations and proceed against Borrower or any guarantor for the balance then due thereunder; (j) accept one or more substitute properties to replace any portion of the security for the Obligations, including the Collateral; (k) discharge or release any parties liable under the Loan Documents; (l) accept or make compositions or other arrangements or file or refrain from filing a claim in any bankruptcy proceeding of or affecting Borrower or any other guarantor or pledgor or the property of any of them; or (m) credit payments in such manner and order of priority to principal, interest or other obligations as Bank may determine in its discretion.

27.    **Waivers**.  Guarantor hereby waives (a) any right to require Bank to (i) proceed against Borrower or any guarantor of the Obligations, (ii) proceed against or exhaust any security received from Borrower or any guarantor of the Obligations, or (iii) pursue any other remedy in Bank's power whatsoever; (b) any defense arising by reason of the application by Borrower of the proceeds of any borrowing; (c) any defense resulting from the absence, impairment or loss of any right of reimbursement, subrogation, contribution or other right or remedy against Borrower, any other guarantor of the Obligations or any security, whether resulting from an election by Bank to foreclose upon security by nonjudicial sale, or otherwise; (d) any setoff or counterclaim of Borrower or any defense which results from any disability or other defense of Borrower or the cessation or stay of enforcement from any cause whatsoever of the liability of Borrower (including, without limitation, the lack of validity or enforceability of any Loan Document); (e) any right to exoneration of sureties which would otherwise be applicable; (f) all presentments, diligence, demands for performance, notices of nonperformance, notices delivered under any Loan Document, protests, notice of dishonor, and notices of acceptance of this Agreement and of the existence, creation or incurring of new or additional obligations and notices of any public or private foreclosure sale; (g) any appraisement, valuation, stay, extension, moratorium redemption or similar law or similar rights for marshaling; (h) any right to be informed by Bank of the financial condition of Borrower or any  guarantor of the Obligations or any change therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the obligations, and Guarantor agrees that Guarantor has the ability and assumes the responsibility for keeping informed of the financial condition of Borrower and any other guarantors of the Obligations and of other circumstances affecting such nonpayment and nonperformance risks; (i) the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Agreement, and Guarantor agrees that the obligations of Guarantor shall not be affected by any circumstances, whether or not referred to in this Agreement, which might otherwise constitute a legal or equitable discharge of guarantors; (j)  the benefit of or right to assert any statute of limitations affecting the liability of Guarantor hereunder or the enforcement thereof to the extent permitted by law, and Guarantor agrees that any part payment by Borrower or other circumstance which operates to toll any statute of limitations as to Borrower shall also operate to toll the statute of limitations as to Guarantor; (k) Guarantor's or other surety's rights of subrogation, reimbursement, indemnification and contribution and other rights, benefits and defenses, if any, otherwise available to Guarantor pursuant to applicable law, including, without limitation, the rights, benefits or defenses set forth in California Civil Code Sections 2787 to 2855, inclusive, 2899 or 3433, and any rights, benefits or defenses resulting from alteration, impairment or suspension in any respect or by any means of any of Borrower's obligations under the Loan Documents or any of Bank's rights or remedies under the Loan Documents without Guarantor's prior consent; (l)  the right, if any, to the benefit

16

of, or to direct the application of, any security held by Bank, including, without limitation, the security for the Obligations, including the Collateral, and, until all the indebtedness and obligations, payment and performance of which are hereby guarantied, have been paid and performed in full, any right to enforce any remedy which Bank now has or hereafter may have against Borrower, and any right to participate in any security now or hereafter held by Bank; and (m) the right to require Bank to proceed against Borrower, to proceed against the security for the Obligations, including the Collateral, or to proceed against any other security now or hereafter held by Bank or to pursue any other remedy in Bank's power. Without limiting the generality of any of the foregoing, Guarantor hereby waives any right to be reimbursed by Borrower or any guarantor of the Obligations for payment of the Obligations made directly or indirectly by Guarantor or from any property of Guarantor, whether arising by way of any statutory, contractual or other right of subrogation, contribution, indemnification or otherwise until Bank is repaid in full by Borrower, any guarantor or Guarantor.

Further, in addition to all the other waivers agreed to and made by Guarantor as set forth in this Agreement, by executing this Agreement, Guarantor freely, irrevocably and unconditionally waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things:

      (a)    Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower.

      (b)    If Bank forecloses on any real property collateral pledged by Borrower: (i) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

      (c)    Guarantor waives all rights and defenses arising out of an election of remedies by Bank, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH HEREIN, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419 AND 3605, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

    **28.**    **Termination**.  (a) This Agreement, the Lien in favor of Bank created hereunder and all other security interests granted hereby shall automatically terminate with respect to all Obligations and all rights to the Collateral shall automatically revert to Grantor when (i) all commitments to lend under the Letter Agreement and the Notes shall have expired or been terminated, (ii) the principal of and interest on the Line of Credit and the Term Loan and all fees and other Obligations in connection therewith shall

have been indefeasibly paid in full in cash, (iii) all other Obligations of any kind owing to Bank shall have been cash collateralized or otherwise secured or supported in a manner satisfactory to Bank in its reasonable discretion, and (iv) all unreimbursed amounts shall have been indefeasibly paid in full in cash, provided, however, that in connection with the termination of this Agreement, Bank may require such indemnities as it shall reasonably deem necessary or appropriate to protect Bank against (x) loss on account of credits previously applied to the Obligations that may subsequently be reversed or revoked, (y) any obligations that may thereafter arise with respect to obligations in respect of cash management services or other bank products and (z) any Obligations that may thereafter arise under Section 11 hereof or Section 17 of the Letter Agreement.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

4827-1571-9840v3/104763-0009

**Grantor acknowledges that he, she or it has read and understood all provisions of this Agreement, including the waiver of jury trial, and has been advised by counsel as necessary and appropriate.**

**IN WITNESS WHEREOF,** Grantor has executed this Security Agreement as of the date first written above.

GRANTOR:

**BETTER 4 YOU BREAKFAST, INC.**

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**BALANCE FOODS, LLC**

**By:  Better 4 You Breakfast, Inc.,**
its sole member

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**MORENO BROS. DISTRIBUTING, LLC**

By: _____
Name: Fernando Castillo
Title: Manager

*Signature Page to Unlimited Guaranty*

## Exhibit A

The Information Certificate of even date herewith delivered by Borrower to Bank is hereby incorporated by reference as if set forth herein.

A-1

# EXHIBIT E

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**19-7728840925**

**08/19/2019 15:50**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

81044120006    UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

COGENCY GLOBAL INC
1325 J Street, Suite 1550
Sacramento, CA 95814
P6-75981393  L11Z0Z81-5

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BETTER 4 YOU BREAKFAST, INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5743 SMITHWAY ST., SUITE 103 | COMMERCE | CA | 90040 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BANK LEUMI USA | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 350 MADISON AVENUE | NEW YORK | NY | 10017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor of every kind and nature, whether now owned of hereafter acquired and wherever located, and all products and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)    ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:    6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien    ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
To be filed with the California Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

## UCC Filing Acknowledgement

08/22/2019

Page 1 of 1

COGENCY GLOBAL INC.
1325 J STREET
SUITE 1550
SACRAMENTO CA 95814-3688

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | **$16.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**          File Date: **08/19/2019**          File Time: **15:50**

Filing Number: **19-7728840925**          Lapse Date: **08/19/2024**

Debtor(s):
ORGANIZATION          **BETTER 4 YOU BREAKFAST, INC.**

**5743 SMITHWAY ST., SUITE 103 COMMERCE CA USA 90040**

Secured Party(ies):
ORGANIZATION          **BANK LEUMI USA**

**350 MADISON AVENUE NEW YORK NY USA 10017**

Filing by  the Secretary of State is not conclusive proof  that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information  on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814  · PO BOX 942835   · SACRAMENTO, CA 94235-0001   · (916) 653-3516   · HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS   ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

000294

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**19-7728840804**

**08/19/2019 15:50**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

81044120005    UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

COGENCY GLOBAL INC
1325 J Street, Suite 1550
Sacramento, CA 95814
P6-75981393  L1120781-4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BALANCE FOODS, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5743 SMITHWAY ST., SUITE 103 | COMMERCE | CA | 90040 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BANK LEUMI USA | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 350 MADISON AVENUE | NEW YORK | NY | 10017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor of every kind and nature, whether now owned of hereafter acquired and wherever located, and all products and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
To be filed with the California Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

000295



**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

### UCC Filing Acknowledgement

08/22/2019

Page 1 of 1

COGENCY GLOBAL INC.
1325 J STREET
SUITE 1550
SACRAMENTO CA 95814-3688

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | **$16.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**      File Date: **08/19/2019**      File Time: **15:50**

Filing Number: **19-7728840804**      Lapse Date: **08/19/2024**

Debtor(s):
ORGANIZATION      **BALANCE FOODS, LLC**

**5743 SMITHWAY ST., SUITE 103 COMMERCE CA USA 90040**

Secured Party(ies):
ORGANIZATION      **BANK LEUMI USA**

**350 MADISON AVENUE NEW YORK NY USA 10017**

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814  · PO BOX 942835  · SACRAMENTO, CA 94235-0001  · (916) 653-3516  · HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS  ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

000296

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**19–7728841057**

**08/19/2019 15:50**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

81044120007   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

**COGENCY GLOBAL INC**
1325 J Street, Suite 1550
Sacramento, CA 95814
P6-75981393   L1120281-6

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name; if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MORENO BROS. DISTRIBUTING, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5743 SMITHWAY ST., SUITE 103 | COMMERCE | CA | 90040 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BANK LEUMI USA | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 350 MADISON AVENUE | NEW YORK | NY | 10017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor of every kind and nature, whether now owned of hereafter acquired and wherever located, and all products and proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
To be filed with the California Secretary of State

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

000297

**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

### UCC Filing Acknowledgement

08/22/2019

Page 1 of 1

COGENCY GLOBAL INC.
1325 J STREET
SUITE 1550
SACRAMENTO CA 95814-3688

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | **$16.00** |

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Financing Statement**        File Date: **08/19/2019**        File Time: **15:50**

Filing Number: **19-7728841057**        Lapse Date: **08/19/2024**

Debtor(s):
ORGANIZATION        **MORENO BROS. DISTRIBUTING, LLC**

**5743 SMITHWAY ST., SUITE 103 COMMERCE CA USA 90040**

Secured Party(ies):
ORGANIZATION        **BANK LEUMI USA**

**350 MADISON AVENUE NEW YORK NY USA 10017**

Filing by  the Secretary of State is not conclusive proof  that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information   on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL.  ·SACRAMENTO, CA 95814  · PO BOX 942835  ·SACRAMENTO, CA 94235-0001  · (916) 653-3516  · HTTPS ://UCCCONNECT.SOS CA GOV

PROGRAMS  ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

000298

# EXHIBIT F

# RedRidge

Diligence Services

# Better 4 You Breakfast, Inc.

Limited Scope Recurring Field Examination

Prepared for Bank Leumi

December 23, 2021

*Strictly private and confidential*

## RedRidge Diligence Services

**Scott Michell**                      Tel: (818) 917-3234                      smitchell@redridgeds.com
*Managing Director*

**Sharon Goldberg**                    Tel: (323) 229-1312                      sgoldberg@redridgeds.com
*Director*

**Suresh Patel**                       Tel: (312) 443-8500                      spatel@redridgeds.com
*Associate*

## Better 4 You Breakfast, Inc.

**Michael Harand**                     Tel: (323) 838-555                       mharand@better4youmeals.com
*Vice President, Finance*

**Fernando Castillo**                  Tel: (323) 838-555x105                   fcastillo@better4youmeals.com
*CEO*

000301

## TABLE OF CONTENTS

I.    SCOPE & COMPANY OVERVIEW......................................................................    4

II.    EXAMINATION HIGHLIGHTS......................................................................    5

## ADDENDUMS

**Addendum I – Field Examination Worksheets**

000302

## Engagement Summary

This report contains information obtained from the Borrower's books and records. Please note such books and records have not been independently verified and the procedures used in preparing this report do not constitute an engagement to provide audit, attestation, review or compilation services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants, nor does it involve the level of transaction testing necessary to assess the degree of control risk associated with the control environment of the Company. The sufficiency of these procedures is solely the responsibility of Bank Leumi. Consequently, we make no representations regarding the sufficiency of the procedures either for the purpose for which this report has been requested or any other purpose. While it is understood this report will be used to assist Bank Leumi in lending decisions, it is not to be relied on exclusively. This report is intended solely for the use of Bank Leumi and should not be distributed to the Borrower or any party that does not take responsibility for the sufficiency of the procedures for their own purposes.

RDS was engaged by Bank Leumi to provide field exam services to assist in a review of the Cash, A/R, and AP as well as to provide recommendations on potential ineligible items for a borrowing base in conjunction with the current $12.5MM RLOC using a 85% advance rate against eligible A/R. As of Aug-21, the outstanding balance of the ROC was $10.9MM per the G/L.

RDS started the field exam remotely during the week of September 27, 2021 and worked through December 3, 2021.  The Company's facility is in Commerce, CA.  The exam was conducted as of the latest date where complete books and records were available, which was Aug-21.

However, the Exam could not be completed due to lack of proper information, multiple revisions, and unexplained variances and exceptions as discussed further in the highlights section.

All month-end dates are abbreviated in MMM-YY format.

## Company Background

Founded in 2011, B4YM is engaged in the business of providing meals to charter schools, private schools, and community organizations. Currently, it serves approximately 310 schools in Southern California and 42 schools in the SF Bay Area (San Francisco, San Jose, and East Bay). The Company negotiates service contracts with individual schools and organizations that specify meal prices as well as the types of meals to be provided (i.e. breakfast, lunch, snack and dinner) to the school. Contract terms vary from school to school but generally include a 5-year term. Schools obtain funding by the federal government through the National School Lunch Program and School Breakfast Program, which are administered by California Department of Education (CDE).

B4YM currently operates out of a kitchen and distribution facility in Commerce, CA under a lease agreement with options through 2034. The Company also operates 2 production facilities in Millbrae, CA (SF Bar Area) and Phoenix, AZ.

000303

- *Availability:* RDS could not calculate the net availability due to questions about the invoice dates on the A/R Aging and proper cash application regarding the level of cash that remained un-applied as of Aug-21 as discussed in Examination Highlights below. However, the below table is presented only to reflect the A/R balance and loan balance as reported by the Company. RDS did not apply any advance rate in presenting this summary table:

| Availability Summary Aug-21 $ in 000s | Per RDS Total |
|---|---|
| **Gross Collateral** | **16,644** |
| *Less Ineligibles* | |
| **Eligible Collateral** | **16,644** |
| Advance Rate | |
| **Allowable Collateral** | |
| **Max Loan Limit** | **12,500** |
| **Funding Requirements:** | |
| A/R Loan Balance | 10,935 |
| Past Due A/P > 60 DPD (net of Interco) | 170 |
| **Total Funding Requirements** | **11,105** |

- *Quality of Information and flow:* Information flow remained slow throughout the exam process.  The exam start date was postponed a couple of times between Sep-21 and Oct-21 as the Company was not prepared after the exam start date was set. The exam start date was finally set at 9/27/21 but information flow started on 10/7/21.  Information uploaded initially had errors some of which were subsequently revised without any explanations. The following critical information needed to complete the exam remains open as of the report date :

  - Company prepared BBC as of Aug-21.
  - FYE Jun-21 Financial statements
  - YTD ended Aug-21 and the same prior period ended Aug-20 Income statements
  - Reconciliation of sales per A/R stats to sales per Financial statements
  - A/R Verification test remain open as of the report date
  - Cash Application test and invoice test exceptions discussed below remain unanswered.
  - Reconciliation of A/P aging to G/L and Financials
  -  Discussion about potential PACA vendors and subsequent effects
  - Discussion on the reason for significant increase in revenues from SNR-YWCA of San Gabriel Valley from $1.1MM for TTM Aug-20 to $4.9MM for TTM Aug-21 and SNR-County of Los Angeles WDACS from $307k to $1.2MM for the same period.

*Continued on next page*

- Discussion about the reason for significant increase in A/R as of Aug-21 at $16.6MM from $12.6MM as of Aug-20.

- Discussion about the reason for significant increase in A/P as of Aug-21 at $6.1MM from $3.4MM as of Aug-20.

- Discussion about the increase in Due from Affiliate by $1.0MM as of Aug-21 to $4.9MM compared to $3.9MM as of Aug-20

- Discussion on reduction in subordinated debt from $700k in Aug-20 to $245k in Aug-21. And, if this pay-down was approved by the Bank.

- Discussion about the reason for significant increase in retained earnings as of Aug-21 at $12.1MM from $6.8MM as of Aug-20.

- Discussion on Past Due A/R accounts

- Explanation on testing exceptions including invoice test, cash application test, and credit memo test

- **_Multiple versions of A/R Aging report_**:  The first A/R Aging report was provided on 10/7/21 for Aug-21 but the report was for Sep-21. It appears that the Company does not post terms for customers and the invoice dates are reflected as the due dates in the A/R Aging reports. RDS manually re-aged the A/R aging by invoice date for the purposes of the exam.  Examiner noted variances between the aging totals per Summary A/R agings versus detailed A/R Agings for the same months particularly, in Jul-21 that remained un-explained.  The aging spread between the summary aging and detailed A/R aging as of Jul-21 is presented below for better analysis:

| | Current | 1-30 | 31-60 | 61-90 | 91-120 | Over 120 | Total per aging | Total Reported | Variance |
|---|---|---|---|---|---|---|---|---|---|
| Per AR Summary Aging History | 5,589 | 206 | 4,028 | 3,482 | 874 | 65 | 14,243 | 14,078 | 165 |
| Per Detailed Aging Above | 5,431 | - | 3,510 | 3,379 | 828 | - | 13,149 | 13,149 | - |
| **Variance** | **157** | **206** | **518** | **103** | **46** | **65** | **1,095** | **929** | **165** |
| A/R per G/L | | | | | | | | 13,151 | |

The variance between total of all the aging buckets and total balance as of Jul-21 was $165k which appeared to be due to two customers, EFC Charter Academies with a current balance of $113k and SNR - WLCAG with a balance of $52k that were not added to the total column.  However, the total amount per the aging reconciled with the A/R G/L.  When this issue was discussed with the Company, RDS was informed that the Company reviewed the variances and corrected the aging to reconcile with the G/L. Final versions of detailed A/R Agings were provided on 10/27/21.

A/R G/Ls were also revised more than once during the course of the exam. The first version of the A/R G/L reflected a higher beginning balance of $13.6MM as of 2/1/21 compared to the closing balance of $12.4MM as of 1/31/21 per the prior exam.  An explanation was requested but the Management again provided the revised G/L on the following day with no explanation for the variance.

**_The above issues discussed pose a question on the reliability and quality of the data being provided. This issue is further exacerbated by the fact that the Company uses QuickBooks as their accounting system that allows a user to change prior period data without leaving any audit trail._**

- **_Cash Application Test – Unsatisfactory:_**  The following significant cash application exceptions were noted:
  - A YWCA payment check #52865 was selected for the cash application test and the check stub provided as backup reflected four invoices being paid on 6/29/21. RDS noted all four invoices are still on the A/R Aging as of Aug-21. Note: the open invoices totaled $772.5k versus $390.1k per the check stub provided.
    - Two of the above-mentioned invoices listed on the check stub were also selected for the Invoice test and the Company provided the same check #52865 as proof of payment but, the check stub provided reflected different payment instructions.
    - The Company provided two of the invoices for review.  Although the invoice amounts matched the second check stub provided, the invoice date for invoice 0521-3260-21 is 5/30/21.
    - The details per the two versions of the check stub/remittance advice is presented below for better clarity:

| Customer Name | Backup per Cash Application Test | | | | | | Backup per Invoice Test | | | | | |
| | Check: | | | Invoice | | | Check: | | | Invoice | | |
| | # | Date | $ | # | Date | $ | # | Date | $ | # | Date | $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SNR- YWCA of San Gabriel Valley | 52865 | 6/29/2021 | 390,072 | 0521-3260-18 | 5/15/2021 | 96,848 | 52865 | 6/29/2021 | 390,072 | | | |
| | | | | 0521-3260-19 | 5/15/2021 | 97,568 | | | | 0521-3260-19 | 5/15/2021 | 193,211 |
| | | | | 0521-3260-20 | 5/15/2021 | 95,779 | | | | 0521-3260-21 | 5/15/2021 | 197,787 |
| | | | | 0521-3260-21 | 5/15/2021 | 99,878 | | | | | | |
| | | | | | | | | | | Disc/Adj | | (926) |
| | | | | | | 390,072 | | | | | | 390,072 |

  - An Archidocese payment check #19770 for $546,282 paid an invoice for the same amount.  However, this invoice was posted at a higher amount of $620,086 on the A/R Aging and G/L.
  - RDS noted other payments that appeared to have not been applied to the A/R Aging as of Aug-21.  However, this could not be pursued as of the report date from lack of further communication with the Management.

  *RDS recommends an extensive Cash application test along with a detailed analysis of all bank accounts to the books for the trailing 12 months to help validate that the funds are being properly applied per customer specifications.  This should be further followed up with a 100% verification of the A/R.*

- **_A/R Invoice Test – Unsatisfactory:_**  Due to the issues noted in the cash application test above, the A/R invoice test was also considered unsatisfactory. Furthermore, copies of invoices provided for customer SNR-YWCA discussed above reflected higher invoice balances whereas, the detailed invoice that broke down the meals by location and weeks reflected the lower amounts noted in the table above under the backup per cash application test.

- **_Cash proof:_**  Remote deposits and other non-payroll related transactions were noted under the payroll account (#1919) including remote deposits into the payroll account and transfers into the operating account and other account ending with (#6400) details of which were not provided for RDS review.

000306

**THIS PAGE INTENTIONALLY LEFT BLANK**

000307

# EXHIBIT G

000308

DocuSign Envelope ID: 0B2B2344-BB9B-4885-B545-E5D305D6B95



November 5, 2021

**VIA ELECTRONIC MAIL**

**BORROWER:**

Better 4 You Breakfast, Inc.
[dspiro@capitalstoneholdings.com and fcastillo@better4youmeals.com]

**GUARANTORS:**

Balance Foods, LLC
[dspiro@capitalstoneholdings.com and fcastillo@better4youmeals.com]

Moreno Bros. Distributing, LLC
[dspiro@capitalstoneholdings.com and fcastillo@better4youmeals.com]

Capital Stone Equity Fund I LP
[dspiro@capitalstoneholdings.com]

Robert Douglas Spiro Jr
[dspiro@capitalstoneholdings.com]

Spiro Revocable Family Trust
[dspiro@capitalstoneholdings.com]

Re:    $12,500,000 Line of Credit ("**Line of Credit**") and $6,750,000 Term Loan (Multi-Draw) ("**Term Loan**", together with the Line of Credit, collectively, the "**Facility**") from Bank Leumi USA ("**Bank**") to Better 4 You Breakfast, Inc. ("**Borrower**" or "**you**")

***Notice of Default and Reservations of Rights***

Ladies and Gentlemen:

We refer to the above referenced Facility governed by that certain letter agreement dated August 16, 2019, between Bank and Borrower (as amended, restated, supplemented or otherwise modified, the "**Letter Agreement**"), and evidenced by those certain Line of Credit Note in the original principal amount of $12,500,000 and Term Note (Multiple Draw) in the original principal amount of $6,750,000, each dated August 9, 2019 made by Borrower in favor of Bank (each as amended, restated, supplemented or otherwise modified, collectively the "**Note**"), together with all Loan Documents (as defined in the Letter Agreement) executed and delivered to Bank in connection therewith, which evidence, secure, guaranty or relate to the Note and Letter Agreement,.  Capitalized terms are used as defined in the Note or the Letter Agreement, as applicable.

We hereby inform you that Borrower has violated the following covenants under the Letter Agreement, and each such violation constitutes an Event of Default under the applicable Loan Document (collectively, the "**Specified Events of Default**"):

- Borrower has failed to comply with Section A.6.1(a) of the Letter Agreement by failing to provide Bank with Borrower's financial statements corresponding to the fiscal year ended on June 30, 2021, within the time frame set forth in such Section;

- Borrower has failed to comply with Section A.6.1(d) of the Letter Agreement by failing to provide the Individual Guarantor's personal financial statements and state and federal income tax returns for the 2019 and 2020 fiscal years within the time frame set forth in such Section;

- Borrower has failed to comply with Section A.6.2(a) of the Letter Agreement by failing to maintain a Tangible Net Worth of not less than $7,000,000 as of March 31, 2020;

- Borrower has failed to comply with Section A.6.2(b) of the Letter Agreement by failing to maintain an EBITDA of not less than (i) $5,900,000 as of March 31, 2020, (ii) $7,000,000 as of June 30, 2020, (iii) 7,398,000 as of September 30, 2020, (iv) $7,937,000 as of December 31, 2020, and (v) $8,818,000 as of March 31, 2021;

- Borrower has failed to comply with Section A.6.2(c) of the Letter Agreement by failing to maintain a Funded Debt to EBITDA ratio of not more than (i) 2.75 to 1.00 as of March 31, 2020, and (ii) 2.5 to 1.0 as of June 30, 2020 and September 30, 2020; and

- Borrower has failed to comply with Section A.6.3(b) of the Letter Agreement by failing to cooperate with Bank or Bank's agents to complete the ongoing collateral field examination.

This letter confirms that the Bank has not waived the Specified Events of Default, and the Bank expressly reserves all of its rights, powers, privileges and remedies under the Loan Documents, applicable law or otherwise with respect to the Specified Events of Default or any other Event of Default now existing or hereafter arising under the Loan Documents, including without limitation (i) the right to demand immediate full payment of all obligations owing under the Loan Documents, and (ii) the right to repossess and take other action with respect to any or all Collateral. The failure of Bank to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Event of Default (including, without limitation, the Specified Events of Default). Bank may elect to exercise any or all of its rights, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Bank.

In addition, commencing as of November 8, 2021, the Bank shall be charging interest on each Note at the Default Rate, as provided in Section 4.3 of each Note.

The fact that no other facts are noted which constitute, or form the basis of, a default, a default or an Event of Default under the Loan Documents or any notes or instruments referred to therein is not, and shall not be deemed to be, a waiver of any such default, whether now or hereafter existing under the Loan Documents.

The holding of any discussions between or among any or all of Bank, Borrower and/or any guarantor regarding the administration of the Facility or proposals regarding amendments to, or modifications or restructurings of any Loan Document shall not constitute any waiver of any default or Event of Default (including, without limitation, the Specified Event of Default), or an agreement to forbear from the exercise of Bank's rights and remedies under any Loan Document, or applicable law, nor shall it be construed as an undertaking by Bank to continue such discussions or to enter into any such amendments, modifications or restructurings.

000310

Very truly yours,

**BANK LEUMI USA**

By: *Elsa Burton*

Name: Elsa Burton

Title: Senior Vice President


By: *Ed Park*

Name: Ed Park

Title: First Vice President

000311

# EXHIBIT H

Classified: Internal

**BANK LEUMI USA**
555 West 5th Street, Suite 3300
Los Angeles, CA 90013

November 26, 2021

<u>VIA ELECTRONIC MAIL</u>

**Better 4 You Breakfast, Inc.**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
        Fernando Castillo
Email: dspiro@capitalstoneholdings.com
        fcastillo@better4youmeals.com

**Balance Foods, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
        Fernando Castillo
Email: dspiro@capitalstoneholdings.com
        fcastillo@better4youmeals.com

**Moreno Bros. Distributing, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
        Fernando Castillo
Email: dspiro@capitalstoneholdings.com
        fcastillo@better4youmeals.com

**Capital Stone Equity Fund I LP**
620 N. Central Ave. – Suite 400
Glendale, CA 91203
Email: dspiro@capitalstoneholdings.com

**Robert Douglas Spiro, Jr.**
12027 Otsego St.
Valley Village, CA 91607
Email: dspiro@capitalstoneholdings.com

**Spiro Revocable Family Trust**
12027 Otsego St.
Valley Village, CA 91607
Attn: Robert Douglas Spiro, Jr.
        Diane Castillo Spiro,
        As Trustees
Email: dspiro@capitalstoneholdings.com

Classified: Internal

**Fernando Castillo**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: fcastillo@better4youmeals.com

**Jacqueline Duvivier**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jduvivier@better4youmeals.com

**Jason Roberts**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

Re: <u>Notice of Default</u>

Ladies and Gentlemen:

  Reference is made to: (a) the certain Letter Agreement, dated as of August 16, 2019 (as amended, restated, supplemented or modified from time to time, the "*Letter Agreement*"), by and between Better 4 You Breakfast, Inc. ("*Borrower*"), Bank Leumi USA ("*Bank Leumi*" or "*Lender*") and the Guarantors and Pledgors party thereto (as defeined therein) (b) that certain Term Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "*Term Note*"), (c) that certain Line of Credit Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "*Line of Credit Note*"), (d) that certain Security Agreement, dated as of August 16, 2019, as amended, restated, supplemented or modified from time to time, the "*Security Agreement*"), between Borrower, Lender, and the Grantors thereto (as defined therein), (e)(i) the Unlimited Guaranty, dated August 16, 2019, by each of Balance Foods, LLC ("*Balance*"), Moreno Bros. Distributing, LLC ("*Moreno*"), and Capital Stone Equity Fund I LP ("*Capital Stone*", together with Balance and Moreno, "*Corporate Guarantors*") in favor of Lender (the "*Corporate Guaranty*"), and (ii) the Limited Guaranty, dated as of August 16, 2019, by each of Robert Douglas Spiro, Jr. ("*Spiro*") the Trustees of the Spiro Revocable Family Trust ("*Spiro Family Trust*") in favor of Lender (the "*Limited Spiro Guaranty*"), (Corporate Guarantors, together with Spiro, and the Spiro Family Trust, each, individually a "*Guarantor*", and collectively, the "*Guarantors*") and (the Corporate Guaranty, together with the Spiro Guaranty, individually a "*Guaranty*" and collectively, the "*Guaranties*"), and (f) the Pledge Agreement, dated as of August 16, 2021, by each of Capital Stone, Fernando Castillo ("*Castillo*"), Jacqueline Duvivier ("*Duvivier*") and Jason Roberts ("*Roberts*", together with Capital Stone, Castillo, and Duvivier, individually a "*Pledgor*", and collectively, "*Pledgors*") in favor of Lender, (the Pledge Agreement, together with the Loan Agreement, the Term Note, the Line of Credit Note, and the Security Agreement, collectively, the "*Loan Documents*"), and (f) the Notice of Default and Reservation of Rights Letter, dated November 5, 2021 (the "*Notice of Default*"), specifying the Events of Default that had occurred and are continuing the "*Existing Specified Events of Default*"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Letter Agreement.

  **PLEASE TAKE NOTICE**, that in addition to the Existing Specified Events of Default set forth in the Notice of Default, which are still continuing, an additional Event of Default has occurred and is continuing due to the failure of  Borrower to to pay all principal, interest and other charges, whether

DocuSign Envelope ID: 39E8CAE6-8485-481A-A04F-158DE62297BE

Classified: Internal

accrued or accruing thereon, on or before November, 16, 2021, the Line of Credit Maturity Date (the "*Additional Default*", together with the Exisitng Specified Defaults, the "*Specified Defaults*").

## **PLEASE TAKE FURTHER NOTICE**, that as a result of the occurrence and

continuance of the Specified Defaults, all principal, interest and other charges set forth in the Letter Agreement, the Notes, and other Loan Documents (as defined in the Letter Agreement) (the "*Obligations*") are immediately due and payable. As of the date hereof, the aggregate principal amount of the Obligations owing by Borrower to Lender under the Letter Agreement is not less than $16,531,695.41 (exclusive of any accrued and accruing interest, fees, costs and expense).

This letter confirms that Lender has not waived the Specified Defaults and expressly reserves all of its rights, powers, privileges and remedies under the Letter Agreement, the other Loan Documents, applicable law and otherwise with respect to any Default or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or any of the other Loan Documents, including without limitation, (i) the right to demand immediate full payment of all Obligations owing under the Letter Agreement and the other Loan Documents, and (ii) the right to repossess and take other action with respect to any or all Collateral, including the liquidation thereof pursuant to the security interest granted under the Security Agreement and the other Loan Documents. The failure of Lender to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Default or Event of Default (including, without limitation, the Specified Defaults). Lender may elect to exercise any or all of its rights, powers, privileges and remedies, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Lender.

Nothing contained herein, nor any action or inaction on the part of Lender, including without limitation, the making of any loan by Lender, shall be deemed to be a waiver of any rights or remedies available to Lender with respect to the Specified Defaults or any other Default or Event of Default that may exist under the Loan Agreement and other Loan Documents, again regardless of whether Lender is aware of any such Defaults or Events of Default.

Nothing contained in this letter and no delay by Lender in exercising any rights, powers, privileges or remedies under the Letter Agreement, any other Loan Document, or applicable law with respect to the Specified Defaults or any other Default or Event of Default now existing or hereafter arising under the Loan Agreement or any of the other Loan Documents shall be construed as a waiver or modification of such rights, powers, privileges and remedies. This Notice is not, and shall not be deemed to be, a waiver of, or a consent to, any Default, noncompliance, or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or other Loan Documents. This Notice shall not entitle the Borrower, any Guarantor or any Pledgor to any other or further demand, presentment, protest, or notice of any kind.

The holding of any discussions between Lender and Borrower regarding the administration of the loans or proposals regarding amendments to, or modifications or restructurings of the Letter Agreement or any other Loan Document shall not constitute any waiver of any Default or Event of Default (including, without limitation, the Specified Defaults), or an agreement to forbear from the exercise of Lender's rights, powers, privileges or remedies under the Letter Agreement or any other Loan Document, or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications or restructurings.

This Notice is without prejudice to, and Lender hereby specifically reserve and by this Notice preserve, all of their rights and remedies.

Very truly yours,

**BANK LEUMI USA**

By: _Elsa Burton_

Name: Elsa Burton

Title: SVP


By: _Ed Park_

Name: Ed Park

Title: FVP


cc:      Otterbourg, P.C.
         Attn: Andrew M. Kramer
              David W. Morse

# EXHIBIT I

Classified: Internal

**BANK LEUMI USA**
555 West 5th Street, Suite 3300
Los Angeles, CA 90013

December 10, 2021

<u>VIA ELECTRONIC MAIL</u>

**Better 4 You Breakfast, Inc.**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
    fcastillo@better4youmeals.com

**Balance Foods, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
    fcastillo@better4youmeals.com

**Moreno Bros. Distributing, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
    Fernando Castillo
Email: dspiro@capitalstoneholdings.com
    fcastillo@better4youmeals.com

**Capital Stone Equity Fund I LP**
655 N Central Avenue, 17 Fl.
Glendale, CA 91203
Email: dspiro@capitalstoneholdings.com

**Robert Douglas Spiro, Jr.**
6336 Beeman Avenue
N. Hollywood, California 91606
Email: dspiro@capitalstoneholdings.com

**Spiro Revocable Family Trust**
6336 Beeman Avenue
N. Hollywood, California 91606
Attn: Robert Douglas Spiro, Jr.
    Diane Castillo Spiro,
    As Trustees
Email: dspiro@capitalstoneholdings.com

6782479.1

000318

DocuSign Envelope ID: 9BE93FC0-72DD-4A61-B871-C4B2B688F10

Classified: Internal

**Fernando Castillo**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: fcastillo@better4youmeals.com

**Jacqueline Duvivier**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

**Jason Roberts**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

Re: <u>Notice of Lender's Exercise of Certain rights</u>

Ladies and Gentlemen:

Reference is made to: (a) the certain Letter Agreement, dated as of August 16, 2019 (as amended, restated, supplemented or modified from time to time, the "***Letter Agreement***"), by and between Better 4 You Breakfast, Inc. ("***Borrower***"), Bank Leumi USA ("***Bank Leumi***" or "***Lender***") and the Guarantors and Pledgors party thereto (as defeined therein) (b) that certain Term Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "***Term Note***"), (c) that certain Line of Credit Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "***Line of Credit Note***"), (d) that certain Security Agreement, dated as of August 16, 2019, as amended, restated, supplemented or modified from time to time, the "***Security Agreement***"), between Borrower, Lender, and the Grantors thereto (as defined therein), (e)(i) the Unlimited Guaranty, dated August 16, 2019, by each of Balance Foods, LLC ("***Balance***"), Moreno Bros. Distributing, LLC ("***Moreno***"), and Capital Stone Equity Fund I LP ("***Capital Stone***", together with Balance and Moreno, "***Corporate Guarantors***") in favor of Lender (the "***Corporate Guaranty***"), and (ii) the Limited Guaranty, dated as of August 16, 2019, by each of Robert Douglas Spiro, Jr. ("***Spiro***") the Trustees of the Spiro Revocable Family Trust ("***Spiro Family Trust***") in favor of Lender (the "***Limited Spiro Guaranty***"), (Corporate Guarantors, together with Spiro, and the Spiro Family Trust, each, individually a "***Guarantor***", and collectively, the "***Guarantors***") and (the Corporate Guaranty, together with the Spiro Guaranty, individually a "***Guaranty***" and collectively, the "***Guaranties***"), and (f) the Pledge Agreement, dated as of August 16, 2021, by each of Capital Stone, Fernando Castillo ("***Castillo***"), Jacqueline Duvivier ("***Duvivier***") and Jason Roberts ("***Roberts***", together with Capital Stone, Castillo, and Duvivier, individually a "***Pledgor***", and collectively, "***Pledgors***") in favor of Lender, (the Pledge Agreement, together with the Loan Agreement, the Term Note, the Line of Credit Note, and the Security Agreement, collectively, the "***Loan Documents***"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Letter Agreement.

We also refer to (a) the Notice of Default and Reservation of Rights Letter, dated November 5, 2021 (the "***Notice of Default***"), specifying the Events of Default that had occurred and are continuing the "***Existing Specified Events of Default***"); and (b) Notice of Default letter dated November 26, 2021 (the "***Additional Default Notice***" and together with the Notice of Default, the "***Default Letters***") specifying additional defaults in addition to the Existing Specified Events of Default set forth in the Notice of Default, (the "***Additional Default***", together with the Exisitng Specified Defaults, the

Classified: Internal

"*Specified Defaults*").  As a result of the Specified Defaults, all principal, interest and other charges set forth in the Letter Agreement, the Notes, and other Loan Documents (as defined in the Letter Agreement) (the "*Obligations*") are immediately due and payable.  As of the date hereof, the aggregate principal amount of the Obligations owing by Borrower to Lender under the Letter Agreement is not less than $16,485,103.10 (exclusive of any accrued and accruing interest, fees, costs and expense).

**PLEASE TAKE NOTICE**, that as a result of the occurrence and continuance of the Specified Defaults, in accordance with the terms of the Loan Documents, Lender hereby is exercising certain remedies.  Lender will no longer undertake any clearance of checks on the Borrowers behalf and the Lender will apply all of any net cash receipts from the Collateral (whether received on a sale of the Collateral or otherwise) to the payment, in whole or in part, of principal of and/or interest on any or all of the Obligations.

**PLEASE TAKE FURTHER NOTICE**, that in accordance with its rights under Section 2.1(n) of the Security Agreement, Lender's financial consultant, **Paladin Management Group**, will arrive at the Borrower's place of business at 9:00 a.m. to examine and inspect the Collateral (wherever located), to obtain valuations or appraisals of the Collateral, and to audit and make extract from such records or any of Borrower's books, ledgers, financial reports, correspondence or other record relating to the Collateral.  Lender expects that Borrower shall permit Lender's financial consultant access at that time and shall make a representative available to answer promptly all of the Lender's written or oral inquiries with respect thereto.  If Lender's financial consultant is not granted access and/or the Borrower does not cooperate with the Lender's financial consultant, Lender shall provide notice to the Borrower's account debtors that any proceeds owed to the Borrower shall be directed and paid to the Lender.

This letter confirms that Lender has not waived the Specified Defaults and expressly reserves all of its rights, powers, privileges and remedies under the Letter Agreement, the other Loan Documents, applicable law and otherwise with respect to any Default or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or any of the other Loan Documents, including without limitation, (i) the right to demand immediate full payment of all Obligations owing under the Letter Agreement and the other Loan Documents, (ii) to commence any legal or other action to collect any or all of the Obligations owing under the Letter Agreement from the Borrower, the Guarantors or Pledgors, (iii) the right to repossess and take other action with respect to any or all Collateral, including the liquidation thereof pursuant to the security interest granted under the Security Agreement and the other Loan Documents or (iv) take any other enforcement action or otherwise exercise any or all rights and remedies provided for by the Letter Agreement or applicable law.  The failure of Lender to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Default or Event of Default (including, without limitation, the Specified Defaults).  Lender may elect to exercise any or all of its rights, powers, privileges and remedies, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Lender.

Nothing contained herein, nor any action or inaction on the part of Lender, including without limitation, the making of any loan by Lender, shall be deemed to be a waiver of any rights or remedies available to Lender with respect to the Specified Defaults or any other Default or Event of Default that may exist under the Loan Agreement and other Loan Documents, again regardless of whether Lender is aware of any such Defaults or Events of Default.

Nothing contained in this letter and no delay by Lender in exercising any rights, powers, privileges or remedies under the Letter Agreement, any other Loan Document, or applicable law with respect to the Specified Defaults or any other Default or Event of Default now existing or hereafter arising under the Loan Agreement or any of the other Loan Documents shall be construed as a waiver or modification of such

Classified: Internal

rights, powers, privileges and remedies. This Notice is not, and shall not be deemed to be, a waiver of, or a consent to, any Default, noncompliance, or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Letter Agreement or other Loan Documents. This Notice shall not entitle the Borrower, any Guarantor or any Pledgor to any other or further demand, presentment, protest, or notice of any kind.

The holding of any discussions between Lender and Borrower regarding the administration of the loans or proposals regarding amendments to, or modifications or restructurings of the Letter Agreement or any other Loan Document shall not constitute any waiver of any Default or Event of Default (including, without limitation, the Specified Defaults), or an agreement to forbear from the exercise of Lender's rights, powers, privileges or remedies under the Letter Agreement or any other Loan Document, or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications or restructurings.

This Notice is without prejudice to, and Lender hereby specifically reserve and by this Notice preserve, all of their rights and remedies.

Very truly yours,

**BANK LEUMI USA**

By: _Elsa Burton_

Name: Elsa Burton

Title: SVP

By: _Ed Park_

Name: Ed Park

Title: FVP

cc:    Randy S. Snyder, Esq.
       Law Offices of Randy S. Snyder
       5959 Topanga Canyon Blvd.
       Suite 220
       Woodland Hills, CA  91367
       e-mail: rsnyder@rsslegal.com

       Otterbourg, P.C.
       Attn: Andrew M. Kramer
             David W. Morse

# EXHIBIT J

**BANK LEUMI USA**
555 West 5th Street, Suite 3300
Los Angeles, CA 90013

December 16, 2021

VIA ELECTRONIC MAIL
**Better 4 You Breakfast, Inc.**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
      Fernando Castillo
Email: dspiro@capitalstoneholdings.com
      fcastillo@better4youmeals.com

**Balance Foods, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
      Fernando Castillo
Email: dspiro@capitalstoneholdings.com
      fcastillo@better4youmeals.com

**Moreno Bros. Distributing, LLC**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Robert Douglas Spiro, Jr.
      Fernando Castillo
Email: dspiro@capitalstoneholdings.com
      fcastillo@better4youmeals.com

**Capital Stone Equity Fund I LP**
655 N Central Avenue, 17 Fl.
Glendale, CA 91203
Email: dspiro@capitalstoneholdings.com

**Robert Douglas Spiro, Jr.**
6336 Beeman Avenue
N. Hollywood, California 91606
Email: dspiro@capitalstoneholdings.com

**Spiro Revocable Family Trust**
6336 Beeman Avenue
N. Hollywood, California 91606
Attn: Robert Douglas Spiro, Jr.
      Diane Castillo Spiro,
      As Trustees

6794793.1

000323

Email: dspiro@capitalstoneholdings.com

**Fernando Castillo**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: fcastillo@better4youmeals.com

**Jacqueline Duvivier**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

**Jason Roberts**
5743 Smithway St., Unit 103
Commerce, CA 90040
Email: jroberts@better4youmeals.com

Re: Notice

Ladies and Gentlemen:

Reference is made to: (a) the certain Letter Agreement, dated as of August 16, 2019 (as amended, restated, supplemented or modified from time to time, the "*Letter Agreement*"), by and between Better 4 You Breakfast, Inc. ("*Borrower*"), Bank Leumi USA ("*Bank Leumi*" or "*Lender*") and the Guarantors and Pledgors party thereto (as defeined therein) (b) that certain Term Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "*Term Note*"), (c) that certain Line of Credit Note, dated as of August 16, 2019, executed by Borrower in favor Lender in accordance with the terms of the Letter Agreement (as amended, restated, supplemented or modified from time to time, the "*Line of Credit Note*"), (d) that certain Security Agreement, dated as of August 16, 2019, as amended, restated, supplemented or modified from time to time, the "*Security Agreement*"), between Borrower, Lender, and the Grantors thereto (as defined therein), (e)(i) the Unlimited Guaranty, dated August 16, 2019, by each of Balance Foods, LLC ("*Balance*"), Moreno Bros. Distributing, LLC ("*Moreno*"), and Capital Stone Equity Fund I LP ("*Capital Stone*", together with Balance and Moreno, "*Corporate Guarantors*") in favor of Lender (the "*Corporate Guaranty*"), and (ii) the Limited Guaranty, dated as of August 16, 2019, by each of Robert Douglas Spiro, Jr. ("*Spiro*") the Trustees of the Spiro Revocable Family Trust ("*Spiro Family Trust*") in favor of Lender (the "*Limited Spiro Guaranty*"), (Corporate Guarantors, together with Spiro, and the Spiro Family Trust, each, individually a "*Guarantor*", and collectively, the "*Guarantors*") and (the Corporate Guaranty, together with the Spiro Guaranty, individually a "*Guaranty*" and collectively, the "*Guaranties*"), and (f) the Pledge Agreement, dated as of August 16, 2021, by each of Capital Stone, Fernando Castillo ("*Castillo*"), Jacqueline Duvivier ("*Duvivier*") and Jason Roberts ("*Roberts*", together with Capital Stone, Castillo, and Duvivier, individually a "*Pledgor*", and collectively, "*Pledgors*") in favor of Lender, (the Pledge Agreement, together with the Loan Agreement, the Term Note, the Line of Credit

DocuSign Envelope ID: 5D767D87-C9C3-4602-8B96-153BCD5DE8E8

Note, and the Security Agreement, collectively, the "***Loan Documents***"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Letter Agreement.

We also refer to (a) the Notice of Default and Reservation of Rights Letter, dated November 5, 2021 (the "***Notice of Default***"), specifying the Events of Default that had occurred and are continuing the "***Existing Specified Events of Default***"); (b) Notice of Default letter dated November 26, 2021 (the "***Additional Default Notice***") specifying additional defaults in addition to the Existing Specified Events of Default set forth in the Notice of Default, (the "***Additional Default***", together with the Existing Specified Defaults, the "***Specified Defaults***"); and (c) the Notice of Lender's Exercise of Certain Rights dated December 10, 2021 (the "***Notice of Exercise Letter***" and together with Additional Default Notice and the Notice of Default, collectively, the "***Default Letters***") specifying the Lender's exercise of certain remedies. As a result of the Specified Defaults, all principal, interest and other charges set forth in the Letter Agreement, the Notes, and other Loan Documents (as defined in the Letter Agreement) (the "***Obligations***") are immediately due and payable. As of the date hereof, the aggregate principal amount of the Obligations owing by Borrower to Lender under the Letter Agreement is not less than $16,485,112.10 (exclusive of any accrued and accruing interest, fees, costs and expense).

Since delivery of the Notice of Exercise Letter, it has come to Bank Leumi's attention that Borrower may be diverting proceeds of account collections to accounts other than the collection account at the Bank. As you are aware, and have been previously notified in writing, all cash and non-cash proceeds of accounts receivable and other sales and income from customers or clients constitute Collateral (Section 1.4 of the Security Agreement) and are the property of Bank Leumi, a federally insured banking institution. Any diversion of collateral proceeds, whether in the form of deposits into a bank account at a bank other than Bank Leumi, or any direction to customers not to remit to the Bank's collection account, are direct violations of Section 6.3(a) of the Letter Agreement and constitute additional Events of Default under Section 4(c) and (g) of the Security Agreement.

This Notice is without prejudice to, and Lender hereby specifically reserved and by this Notice preserved, all of its rights and remedies.

Very truly yours,

**BANK LEUMI USA**

By: *Elsa Burton*

Name: Elsa Burton

Title: SVP

By: *Ed Park*

Name: Ed Park

Title: FVP

DocuSign Envelope ID: 5D767D87-C9C3-46D2-8B96-1F3BCD5DE8E8

cc:      Otterbourg, P.C.
         Attn: Andrew M. Kramer

# EXHIBIT K

## FEDWIRE RECEIVE CREDIT ADVICE
(ADVICE WITHOUT SIGNATURE)

**To**
CNG TRANSPORTATION LLC
12027 OSTEGEO ST
VALLEY VILLAGE CA 91607

**Date** 13-Dec-2021
**Transaction Number** 202112130004559
**Sending Bank Reference** 1222280030106729
**Related Bank Reference**

**Received Amount** 235,000.00 USD
**Credit Amount** 235,000.00 USD
**Charge Amount** 0.00 USD

**Originator**
201123348
BETTER 4 YOU BREAKFAST INC
5743 SMITHWAY ST SUITE 103
COMMERCE CA 90040

**Beneficiary**
5299536400
CNG TRANSPORTATION LLC
12027 OSTEGEO ST
VALLEY VILLAGE CA 91607

**Originator's Bank**

**Beneficiary's Bank**

**Instructing Bank**

**Intermediary Bank**

**Sending Bank**
122228003
SUNWEST BANK

NAMPA
ID

**Receiving Bank**
026002794
BANK LEUMI USA

NEW YORK
NY

**Originator to Beneficiary**

**Bank-to-Bank Information**

**Cesar Hernandez |** VP, Client Service Manager

555 W Fifth Street, Los Angeles, CA, 90013 **|** Tel: 213.452.8622



NOTE: The information in this message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and subject to legal sanction. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer without making any copies.

# EXHIBIT L

000329

**From:** Andrew M. Kramer
**Sent:** Friday, December 17, 2021 11:50 AM
**To:** 'Randy Snyder'
**Subject:** RE: Better 4 You Meals / CNG Transportation, LLC

Mr. Snyder,

I am in receipt of your email from last evening.

Reference is made to the Notices, which have been delivered to Better 4 You Breakfast, Inc ("B4Y"), copies of which have been sent to your attention. It appears that you have misconstrued the facts. Based on my review of your email with Bank Leumi, we have been advised of the following:

1. CNG Transportation is 100% owned by Mr. Spiro and it was established for the sole purpose of receiving funds form B4Y in order to pay transportation costs.

2. The proceeds you reference in the amount of $235,000 were received from a B4Y account at Sunwest Bank on December 13, 2021.

3. As B4Y, together with Mr. Spiro who is a Guarantor, have been notified in writing, the establishment of bank accounts at institutions, other than Bank Leumi, is an express violation of the terms of the Letter Agreement between B4Y and Bank Leumi.

4. It is also clear that proceeds were improperly deposited by B4Y into its account at Sunwest Bank, which constitute the proceeds of Bank Leumi's Collateral, B4Y was obligated to deposit at Bank Leumi.

Accordingly, the diversion of proceeds of Bank Leumi's Collateral into an unauthorized bank account, and the subsequent transfer to an affiliated entity constitutes a conversion by B4Y. In accordance with the express terms of the Letter Agreement and the other Loan Documents, Bank Leumi has the right to freeze the CNG account. Bank Leumi hereby demands that all remaining proceeds in B4Y's account at Sunwest Bank be transferred to Bank Leumi immediately. Further, B4Y is obligated to provide Bank Leumi with a full accounting of all proceeds received in the Sunwest account since its inception.

This email is without prejudice to, and expressly reserves, all of Bank Leumi's rights and remedies.



**Andrew M. Kramer** • Otterbourg P.C. • 230 Park Avenue • New York, NY 10169 • Direct: (212) 905-3630
• Cell: (914) 552-2930 • Fax: (212) 682-6104 • akramer@otterbourg.com • otterbourg.com

The information contained in this communication may be privileged and/or confidential and is intended only for the individual to whom it is addressed or agent responsible to deliver it to the intended recipient. If you have received this communication in error, please immediately notify us by telephone.

**From:** Randy Snyder <rsnyder@rsslegal.com>
**Sent:** Thursday, December 16, 2021 8:01 PM
**To:** Andrew M. Kramer <akramer@otterbourg.com>
**Subject:** Better 4 You Meals / CNG Transportation, LLC

Dear Mr. Kramer:

I have just been informed of some disturbing actions taken by Bank Leumi.

Funds were wired into the account of CNG Transportation, LLC ("CNG") to pay the pay-roll for that company. CNG is a third party Employee Leasing Company.

I have been informed that Bank Leumi seized funds in the CNG Bank Account and returned at least 50 paychecks. This seizure is impermissible and without justification. CNG is not a party to any claims by Bank Leumi and this unauthorized taking by Bank Leumi constitutes, among other things, conversion. Demand is made that Bank Leumi immediately release the wrongfully taken funds to CNG so that pay-roll can be met.

Thank you for your prompt attention to this matter.

Randy S. Snyder, Esq.
Law Offices of Randy S. Snyder
5959 Topanga Canyon Blvd.
Suite 220
Woodland Hills, CA 91367
(818) 222-7677 Tel
(818) 222-8988 Fax
rsnyder@rsslegal.com

************************************************************************

CONFIDENTIALITY NOTICE: This E-Mail may contain confidential information that is legally privileged. Do not read this e-mail if you are not the intended recipient. This e-mail transmission and any documents, files or previous e-mail messages attached to it may contain confidential information. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.

If you have received this e-mail in error, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving in any manner. We are not tax experts and cannot and will not opine as to the tax consequences of this communication. IRS Circular 230 Disclosure: in order to comply with requirements imposed by the Internal Revenue Service, we inform you that any Tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein. Thank you.

************************************************************************

# EXHIBIT M

# LOAN AGREEMENT

This Loan Agreement (the "Agreement") is made this 3rd day of April 2019, by and between 20715 AVALON, LLC, a California limited liability company ("Borrower"), on the one hand, and BANK LEUMI USA ("Lender"), on the other hand.

## RECITALS

A.     Borrower has applied to Lender for a loan in the maximum principal amount of Eight Million Eight Hundred Fifty Thousand and No/100 Dollars ($8,850,000.00) ("Loan") for the purpose of (i) refinancing Borrower's existing indebtedness secured by the Property (as hereinafter defined), and (ii) financing the construction and/or installation of Renovation Improvements (as hereinafter defined) on the Property.

B.     Lender has agreed to make the Loan to Borrower for such purposes upon the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1    DEFINITIONS –

For purposes of this Agreement, the following terms shall have the following meanings:

The definitions set forth in the Recitals or elsewhere in this Agreement are incorporated herein by reference.

"Advance" shall mean any advance or disbursement of Loan Proceeds (including Advances for Renovation) by Lender pursuant to this Agreement.

"Advance Date" shall mean the date of each Advance.

"Advance(s) for Renovation Improvements" shall mean any advance or disbursement of Loan Proceeds made by Lender to Borrower under Note #2 for payment of expenses paid or incurred by Borrower in connection with the construction or installation of Renovation Improvements on the Property, as more particularly described in Section 3.11 of this Agreement. The aggregate maximum principal amount of Advance(s) for Renovation Improvements shall not exceed $1,700,000.00.

"Affiliate" shall mean any Person, directly or indirectly, related to, in control of, controlled by, or under the common control of, Borrower, or of a successor thereof, whether through merger, consolidation, transfer of assets or otherwise.

"Agreement" shall mean this Loan Agreement, as originally executed and as it may from time to time be supplemented, extended, renewed, modified, or amended.

"Agreement To Furnish Insurance" shall mean the Agreement To Furnish Insurance duly executed by Borrower in form and content as required by Lender and as it may from time to time be supplemented, modified or amended.

"Anti-Money Laundering Laws" shall mean the USA Patriot Act of 2001, the Bank Secrecy Act, as amended through the date hereof, Executive Order 1 3324-Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended through the date hereof, and other federal laws and regulations and executive orders administered by OFAC which prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals (such individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanction and embargo programs), and such additional laws and programs administered by OFAC which prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on any of the OFAC lists.

"Application for Payment" shall mean a written application in form satisfactory to Lender requesting an Advance of Loan Proceeds for Renovation Improvements.

"Appraisal" shall mean an appraisal of the Property, or any portion thereof, performed and prepared for Lender at Borrower's sole expense by a duly licensed or certified appraiser designated by Lender and possessing all qualifications required by Lender and applicable Laws, setting forth the appraiser's opinion and determination of the fair market value of the Property; said Appraisal shall be prepared in full narrative form meeting all requirements and approaches to value as shall be necessary or appropriate in order to comply with all customary and generally accepted appraisal standards within the appraisal industry and in accordance with Lender's requirements, and to Lender's satisfaction and all applicable Laws governing Lender's operations.

"Approved Lease" shall mean a lease between Borrower and any tenant for all or any portion of the Property, which lease is substantially in a form pre-approved by Lender, the terms of which are satisfactory to Lender, and which tenant is satisfactory to Lender.

"Assets" shall have the meaning usually given that term in accordance with GAAP, but shall exclude sums due to Borrower from Affiliates (other than subsidiaries).

"Assignment of Deposit Account" shall mean the Security Agreement (Assignment of Deposit Account) duly executed by Borrower assigning to Lender any and all deposit accounts maintained by Borrower with Lender, including, without limitation, the Loan Closing Deposit Account.

"Assignment of Leases" shall mean the Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits duly executed and delivered to Lender by Borrower,

000334

assigning to Lender all present and future leases, subleases, rents, and concession rights, if any, and all related rights and interests of Borrower thereunder, affecting the Property, or any part thereof, and in form and content acceptable to Lender in its sole opinion and judgment, and shall include delivery to Lender of the executed originals of each of said leases.

"B4YB" shall mean Better 4 You Breakfast, Inc., a California corporation.

"Business Day" shall mean Monday through Friday, excluding Saturdays, Sundays and any day of the year on which banks are required or authorized to close in California.

"Collateral" shall mean all real and personal property of Borrower, or others, in which Lender has been and may hereafter be granted a lien, assignment or security interest to secure payment and performance of Borrower's obligations under the Loan.

"Corporate Guarantor" shall mean, individually and collectively, (i) B4YB and (ii) RDS Ventures, LLC, a Delaware limited liability company.

"Debt Service" shall mean all scheduled payments of principal and interest payable by Borrower to Lender under the Note.

"Debt Service Coverage Ratio" shall mean the ratio of (a) Net Operating Income to (b) Debt Service, for the period measured.

"Deed of Trust" shall mean that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of the date herein, duly executed and acknowledged by Borrower, for the benefit of Lender, to secure the Loan and encumbering the Property and other assets and rights as therein provided, together with all such riders and exhibits thereto as Lender shall require, and as it may from time to time be supplemented, modified or amended.

"EBITDA" shall mean, for B4YB, for any period, the sum of Net Income (in accordance with GAAP) of B4YB for such period *plus* (a) without duplication and to the extent deducted in determining Net Income for such period, the sum of (i) Interest Expense (in accordance with GAAP) for such period, (ii) all amounts attributable to depreciation and amortization expense for such period, (iii) any extraordinary charges for such period, (iv) customary, reasonable and documented fees, costs and expenses incurred by B4YB in connection with any Acquisition (in accordance with GAAP) in such period, (v) customary, reasonable and documented fees, costs and expenses incurred by B4YB in connection with equipment, tenant improvements, licensing, marketing, and soft/hard costs associated with opening a new facility, (vi) any other non-cash charges for such period (but excluding any non-cash charge in respect of an item that was included in Net Income in a prior period and any non-cash charge that relates to the write-down or write off of inventory), and (vii) the aggregate amount of federal and state income taxes on or measured by income that were deducted in determining the Net Income, *minus* (b) without duplication and to the extent included in Net Income, (i) any cash payments

3265287.4                                      3

made during such period in respect of non-cash charges described in clause (a)(iv) taken in a prior period, and (ii) any extraordinary gains (other than proceeds of business interruption insurance policies actually received by any party hereto during such period) and any non-cash items of income for such period, all calculated for the B4YB and its subsidiaries on a consolidated basis in accordance with GAAP. Notwithstanding anything herein to the contrary, Lender reserves the right to determine if the add-backs that pertain to (a)(iii), (a)(iv) and (a)(v) are acceptable.

"Environmental Indemnity" shall mean that certain Hazardous Substances Indemnity Agreement duly executed by Borrower and Guarantor, and as it may from time to time be supplemented, modified or amended, pursuant to which such parties shall indemnify and defend Lender from and against any loss or liability, direct or indirect, with respect to the presence or release of any hazardous or toxic material in, on, about or under the Property.

"Event of Default" shall mean any of those events specified in Article V hereof.

"FF&E" shall mean all furniture, fixtures, machinery, tools, inventory and equipment owned by Borrower and used, or intended to be used, in connection with the Property.

"Financial Statements" shall mean balance sheets, income statements, reconciliations of capital structure, statements of sources and applications of funds, and income tax returns, all prepared in accordance with GAAP, consistently applied.

"Financing Statements" shall mean one or more financing statements (form UCC-1) given by Borrower to Lender, if required by Lender, covering the FF&E and all other personal property and/or fixtures included in the Property.

"Fiscal Year" shall mean Borrower's fiscal year, ending on December 31 of each calendar year.

"GAAP" shall mean generally accepted accounting principles consistently maintained and applied throughout the period indicated and consistent with the prior financial practice of the Person providing such financial information.

"Governmental Agency" shall mean any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality or public body, court, administrative tribunal, or public utility.

"Gross Income" shall mean, for any given time, the total of all rentals and other income which are received by such Person pursuant to leases or other agreements of all or any portion of the Property, including, without limitation, percentage rentals and rentals representing pass-throughs of operating costs or cost increases to the applicable tenants; provided, however, that Gross Income shall exclude any security deposits received from any of the tenants unless and until the same are applied to rental obligations of the tenant in accordance with the terms of the applicable lease. All rentals

which are to be included in Gross Income shall be computed on a cash basis and shall include all amounts actually received.

"Guarantor" shall mean, individually and collectively, Corporate Guarantor, Individual Guarantor and Trust Guarantor.

"Guaranty" shall mean, individually and collectively, the Continuing Guaranties duly executed by Guarantor, unconditionally and irrevocably guaranteeing payment and performance of Borrower's obligations to Lender in connection with the Loan, as such agreement or agreements are originally executed and as such agreement or agreements may from time to time be reaffirmed, supplemented, modified or amended.

"Hazard Insurance Disclosure" shall mean the Hazard Insurance Disclosure duly executed by Borrower in form and content as required by Lender.

"Individual Guarantor" shall mean Robert Douglas Spiro, Jr., an individual.

"Insurance Policies" shall mean any of the policies of insurance specified in Section 4.1 hereof.

"Knowledge of Borrower" shall mean the actual knowledge of Robert Douglas Spiro, Jr., without any duty of inquiry or investigation.

"Laws" shall mean, collectively, all federal, state, and local laws, rules, regulations, ordinances, and codes.

"Lease Subordination" shall mean the Subordination Agreement (Lease), in form and content satisfactory to Lender in its sole opinion and judgment, executed by B4YB, subordinating its interest in that certain lease dated January 1, 2018, as amended, by and between B4YB, as lessee, and Borrower, as lessor, for the Property to the Loan.

"Loan" shall mean the loan described in the Recitals and in Article III of this Agreement.

"Loan Closing" shall mean the date on which the Loan closes in accordance with Section 3.2 of this Agreement.

"Loan Closing Costs" shall mean all title insurance premiums and recording charges, tax service contract fees, and all out-of-pocket fees and costs incurred by Lender in connection with the appraisal, inspection, assessment, evaluation, insuring, and testing of the Property, and all fees and costs incurred by Lender in connection with the negotiation and preparation of the Loan Documents, including attorneys' fees, and closing of the Loan as herein provided, including, but without limitation, the Loan Fee.

"Loan Closing Deposit Account" shall have the meaning ascribed to it in Section 3.11 of this Agreement.

000337

"Loan Documents" shall mean this Agreement, the Note, Deed of Trust, Assignment of Leases, Financing Statements, Guaranty, Environmental Indemnity, Agreement to Furnish Insurance, Hazard Insurance Disclosure, Tenant Estoppel, SNDA, Assignment of Deposit Account, Lease Subordination, any Swap Contracts and such other documents as Lender may require Borrower to give to Lender as evidence of and/or security for and/or guaranty of the Loan.

"Loan Fee" shall mean the sum of $44,250.00 payable by Borrower to Lender for the granting of the Loan.

"Loan Proceeds" shall mean funds advanced by Lender to Borrower for purposes set forth in Article III hereof.

"Maturity Date" shall mean March 31, 2021, as set forth in the Note, at which time the entire principal balance of the Loan, plus accrued interest thereon, is and shall be due and payable as provided in this Agreement and the Note, subject to acceleration as provided in the Loan Documents and also subject to the extension provision included in Section 3.5 below.

"Net Operating Income" shall mean, at any given time, the amount by which Gross Income exceeds Operating Expenses.

"Note" shall mean, individually and collectively, Note #1 and Note #2.

"Note #1" shall mean the Promissory Note of Borrower in the amount of $7,150,000.00 payable to the order of Lender, duly executed by Borrower, as required by Lender to evidence a portion of the Loan, as originally executed, and as it may from time to time be supplemented, modified or amended.

"Note #2" shall mean the Promissory Note of Borrower in the amount of $1,700,000.00 payable to the order of Lender, duly executed by Borrower, as required by Lender to evidence a portion of the Loan, as originally executed, and as it may from time to time be supplemented, modified or amended.

"OFAC" shall mean the United States Department of the Treasury, Office of Foreign Assets Control.

"OFAC Prohibited Person" shall mean a country, territory, individual or person (i) listed on, included within or associated with any of the countries, territories, individuals or entities referred to on The Office of Foreign Assets Control's List of Specially Designated Nationals and Blocked Persons or any other prohibited person lists maintained by governmental authorities, or otherwise included within or associated with any of the countries, territories, individuals or entities referred to in or prohibited by OFAC or any other Anti-Money Laundering Laws, or (ii) which is obligated or has any interest to pay, donate, transfer or otherwise assign any property, money, goods, services, or other benefits from the Property directly or indirectly, to any countries, territories, individuals or entities on or associated with anyone on such list or in such laws.

"Operating Expenses" shall mean, at any given time, the sum of the following expenses: (i) all taxes and assessments (including, without limitation, bond assessments) imposed on the Property (but excluding taxes and assessments which any tenant is required to pay directly to the applicable taxing authority so long as such tenant's payment of such taxes is correspondingly excluded from Gross Income); (ii) all amounts paid by such Person on account of insurance premiums for insurance carried in connection with the Property; provided, however, that if insurance on the Property is maintained as part of a blanket policy covering the Property, the insurance premium included in this subsection shall be the premium fairly allocable to the Property; and (iii) all other expenses which are properly charged against income according to GAAP and which are incurred by such Person with respect to the ownership and operation of the Property, including, without limitation, management expenses, cleaning expenses, leasing expenses, maintenance and repair costs, utility expenses, HVAC costs, material costs, cost of services, license fees and business taxes; provided, however, that Operating Expenses shall exclude Debt Service.

"Organizational Documents" shall mean, if Borrower, Guarantor or any other Person as Lender may require is other than a natural person, the duly filed, certified and/or executed documents or instruments evidencing or confirming the lawful formation and existence of Borrower, Guarantor and such other Persons, and all written consents and certifications required by Lender from Persons having management and/or ownership interests in Borrower, Guarantor and/or such other Person.

"Permitted Encumbrances" shall mean only those matters and exceptions to title to the Property, as shown in each preliminary report of title and all supplements thereto, issued by the Title Company, and approved by Lender, in regard to each Property.

"Person" shall mean an individual, corporation, limited liability company, partnership, joint venture, trust or unincorporated organization or a Governmental Agency.

"Property" shall mean the real property described in Exhibit "A" hereto and in the Deed of Trust and all present and future improvements thereon and appurtenances thereto.

"Renovation Improvements" shall mean the construction, rehabilitation and/or renovation of capital improvements to the Property in accordance with the Renovation Approved Budget (as defined in Section 3.11.2 below).

"SNDA" shall mean a subordination, nondisturbance and attornment agreement by a tenant on the Property, in form and content satisfactory to Lender.

"Swap Contract" shall have the meaning ascribed to it in Section 3.6.2 of this Agreement.

"Tenant Estoppel" shall mean a tenant estoppel certificate by a tenant on the Property, in form and content satisfactory to Lender.

000339

"Title Company" shall mean the title insurer designated by Lender, in its sole opinion and judgment, which shall issue the Title Policy.

"Title Policy" shall mean an ALTA Loan Policy (2006 Policy Form), written as such at Loan Closing and issued by the Title Company, with liability equal to the full amount of the Loan, in favor of Lender, as insured, insuring the lien of the Deed of Trust to be a valid first lien on the Property subject only to the applicable Permitted Encumbrances. The Title Policy shall have such endorsements thereto as Lender shall require. If required by Lender, the title insurance coverage will provide for reinsurance.

"Trust Guarantor" shall mean Robert Douglas Spiro, Jr. and Diana Castillo Spiro, as Trustees of the Spiro Revocable Family Trust dated August 20, 2016.

1.2    ACCOUNTING TERMS – All accounting terms not specifically defined herein shall be construed in accordance with GAAP, and all financial data submitted pursuant to this Agreement shall be prepared in accordance with GAAP, unless Lender agrees to another manner of preparation.

1.3    USE OF DEFINED TERMS – Any defined terms used in the plural shall include the singular, and the masculine gender shall include the feminine and/or neuter, and such terms shall encompass all members of the relevant class.

1.4    SCHEDULES AND EXHIBITS – All schedules and exhibits to this Agreement, either as originally existing or as the same may from time to time be supplemented, modified or amended, are incorporated herein by reference.

1.5    REFERENCES – Any reference to this Agreement or any other document shall include such document, both as originally executed, and as it may from time to time be amended, supplemented and modified. References herein to Articles, Sections and Exhibits shall be construed as references to this Agreement unless a different document is named.

1.6    OTHER TERMS – The term "document" is used in its broadest sense and encompasses agreements, certificates, opinions, consents, instruments and other written material of every kind. The terms "including" and "include" shall mean "including (include), without limitation."

ARTICLE II
REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower hereby represents, warrants and covenants to Lender as of the date of this Agreement, the date of Loan Closing, each Advance Date and each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires, that:

2.1    BORROWER'S CAPACITY – Borrower is a limited liability company, duly organized and existing under the Laws of the State of California, duly qualified to

3265287.4                                  8

do business in California and in any other state in which the nature of its business requires it to be so qualified, and is lawfully empowered and possesses the capacity to enter into and carry out the provisions of this Agreement.

2.2    <u>VALIDITY OF LOAN DOCUMENTS</u> – The Loan Documents are in all respects valid and binding upon Borrower according to their terms, subject to all applicable Laws, including, without limitation, equitable principles, insolvency Laws, and other matters applying to creditors generally; <u>provided, however,</u> that the implementation of such Laws do not and will not affect the ultimate realization of the obligations and security afforded thereby.  The execution and delivery by Borrower of and the performance by Borrower of all its obligations under the Loan Documents have been duly authorized by all necessary action and do not and will not:

2.2.1  Require any consent or approval not heretofore obtained of any other Person holding any interest in or entitled to receive any interest issued or to be issued by Borrower or otherwise; or

2.2.2  Violate any provision of the Organizational Documents or any other agreements to which Borrower is bound; or

2.2.3  Result in or require the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest, claim, charge, right of others, or other encumbrance of any nature (other than under the Loan Documents) upon or with respect to any property now owned or leased or hereafter acquired by Borrower; or

2.2.4  Violate any order, writ, judgment, injunction, decree, determination, or award of any court or of any Governmental Agency, or violate any provision of any Laws; or

2.2.5  Result in a breach of or constitute a default under, cause or permit the acceleration of any obligation owed under, or require any consent under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Borrower is a party or by which Borrower or any property of Borrower is bound or affected.

2.3    <u>BORROWER NOT IN DEFAULT</u> – Borrower is not in default under any order, writ, judgment, injunction, decree, determination, award, indenture, agreement, lease, or instrument of the type described in Section 2.2 above.

2.4    <u>NO GOVERNMENTAL APPROVALS REQUIRED</u> – No authorization, consent, approval, order, license, exemption from, or filing, registration, or qualification with, any Governmental Agency is or will be required to authorize, or is otherwise required in connection with:

2.4.1  The execution, delivery and the performance by Borrower of all or any of its obligations under the Loan Documents; or

2.4.2  The creation of the liens, security interests, or other charges or encumbrances described in the Loan Documents, except that filing and/or recording with Governmental Agencies may be required to perfect such liens, security interests, or other charges or encumbrances.

2.5  TAX LIABILITY - Borrower and Guarantor have timely filed all tax returns (federal, state, and local) required to be filed and have paid all taxes shown thereon to be due and all property taxes due, including interest and penalties, if any.

2.6  FINANCIAL STATEMENTS - All Financial Statements of Borrower, Guarantor and any Persons having an interest in Borrower or Guarantor (if Borrower or Guarantor is other than a natural person) which have heretofore been submitted to Lender fairly present the financial positions of Borrower, Guarantor and of such other Persons at the respective dates of their preparation in conformity with GAAP. Since the dates of such Financial Statements, there have been no adverse changes in the financial conditions of Borrower, Guarantor and of such other Persons.

2.7  PENDING LITIGATION – Based upon the Knowledge of Borrower, there are no actions, suits, or proceedings pending or threatened against or affecting Borrower, Guarantor or the Property, or involving the validity or enforceability of any of the Loan Documents or the priority of the lien thereof, at Law or in equity, or before or by any Governmental Agency, except actions, suits, and proceedings that are fully covered by insurance or which, if adversely determined, would not substantially impair the ability of Borrower or Guarantor to perform each and every one of their obligations under and by virtue of the Loan Documents; and neither Borrower nor Guarantor is in default with respect to any order, writ, injunction, decree, or demand of any court or any Governmental Agency.

2.8  VIOLATIONS OF LAWS – Based upon the Knowledge of Borrower, there are no violations or notices of violations of any Laws relating to the Property or any of the Collateral.

2.9  COMPLIANCE WITH ZONING ORDINANCES AND SIMILAR LAWS – Based upon the Knowledge of Borrower, the Property complies with all applicable Laws and all permits and approvals issued thereunder, affecting the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment of the Property, including, but not limited to, applicable subdivision Laws, licenses and permits, building codes, zoning ordinances, flood disaster, environmental protection and equal employment regulations and appropriate supervising boards of fire underwriters and similar agencies. Borrower shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties and representations herein contained, or would change the nature of the use or occupancy of the Property.

2.10  AVAILABILITY OF UTILITIES - All utility services necessary for the proper operation of the Property for its intended purposes are available at the Property.

3265287.4                                    10

2.11   CONDITION OF PROPERTY – The Property is not now damaged or injured as a result of any fire, explosion, accident, flood, or other casualty, nor subject to any action in eminent domain.

2.12   BROKERAGE COMMISSIONS - No brokerage commissions are or will be owed by Borrower in connection with the Loan, or if there are commissions due or payable, the same will be paid by Borrower. Borrower agrees to and shall indemnify and hold Lender harmless from all liability, claims, or losses arising by reason of any such brokerage commissions related to any or all acts of Borrower in connection with the Loan. This provision shall survive the repayment of the Loan and shall continue in full force and effect so long as the possibility of such liability, claims or losses exists.

2.13   ENVIRONMENTAL IMPACT STATEMENT - All required environmental impact statements as required by any Governmental Agency having jurisdiction over the Property have been duly filed and approved.

2.14   ACCESS - The Property fronts on a publicly maintained road or street and has both legal and practical access to the same.

2.15   SUBORDINATE FINANCING AND LEASES - Borrower will not cause there to be deeds of trust, mortgages, security agreements, liens or encumbrances on the Property or any portion thereof or interest therein. Borrower will not, without the prior written consent of Lender, enter into a lease for all or any portion of the Property except for Approved Leases.

2.16   PRIORITY OF LIEN ON PERSONALTY - No lease, chattel mortgage, bill of sale, security agreement, financing statement, or other title retention agreement (except those executed in favor of Lender) has or will be executed by Borrower with respect to any personal property, chattel or FF&E of Borrower used in conjunction with construction, operation, or maintenance of the Property.

2.17   AIR RIGHTS – Borrower has not and will not transfer, assign, convey, hypothecate or encumber any of the air rights pertaining to the Property.

2.18   COMPLIANCE WITH ENVIRONMENTAL LAWS – Other than permitted toxic materials stored and/or used by Borrower or any tenants upon the Property in the normal course of business, including, but not limited to ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, and in each case in full and complete compliance with all applicable environmental Laws, all as described in Exhibit "B" of the Environmental Indemnity ("Permitted Substances"), Borrower will not use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives, or related material on or in connection with any property or the business of Borrower on any property. Except for Permitted Substances, Borrower will not permit any lessee on any property to use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous materials, hazardous waste, radioactive materials, flammable explosives, related material

3265287.4                              11

on or in connection with any property or the business on any property. ("Toxic substances," "hazardous materials," and "hazardous waste" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable Laws or which are classified as hazardous or toxic under applicable Laws.)

2.19    <u>SOLVENCY</u> – Based upon the Knowledge of Borrower, Borrower has no knowledge of any facts or circumstances which would render Borrower unable to continue to be able to pay its debts as they mature and the realizable value of its Collateral is, and at all times that it may have obligations hereunder shall continue to be, sufficient to satisfy any and all obligations hereunder.

2.20    <u>PERMITS</u> – Based upon the Knowledge of Borrower, Borrower possesses all licenses, approvals, permits, franchises, patents, copyrights, trademarks, and trade names, or rights thereto, that are necessary to own the Property and conduct its business on the Property as now conducted, and Borrower is not in violation of any valid rights of others with respect to any of the foregoing.

2.21    <u>NO ERISA PLAN</u> – Borrower does not maintain a plan under the Employee Retirement Income Security Act of 1974.

2.22    <u>FULL DISCLOSURE</u> – All information in the loan application, Financial Statement, certificate, or other document and all information prepared and delivered by Borrower to Lender in obtaining the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof. All information in any loan application, Financial Statement, certificate or other document prepared and delivered to Lender on behalf of Borrower by Persons other than Borrower or its Affiliates, and all other information prepared and delivered to Lender on behalf of Borrower by Persons other than Borrower or its Affiliates in applying for the Loan is correct and complete in all material respects, and there are no omissions therefrom that result in any such information being incomplete, incorrect, or misleading in any material adverse respect as of the date thereof.

2.23    <u>USE OF PROCEEDS; MARGIN STOCK</u> – The proceeds of each Advance will be used by Borrower solely for the purposes specified in this Agreement. None of such proceeds will be used for the purpose of purchasing or carrying any "margin stock" as defined in Regulation U of the Board of Governors of the Federal Reserve System (12 C.F.R. Part 221 and 207), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry a margin stock or for any other purpose which might constitute this transaction a "purpose credit" within the meaning of such Regulation U. Borrower is not engaged in the business of extending credit for the purpose of purchasing or carrying margin stock. Neither Borrower nor any Person acting on behalf of Borrower has taken or will take any action which might cause any Loan Documents to violate Regulation U or any other regulations of the Board of Governors of the Federal Reserve System or to violate Section 7 of the Securities Exchange Act of 1934, or any rule or regulation thereunder, in each case as now in effect

000344

or as the same may hereafter be in effect.  Borrower and Borrower's Affiliates own no "margin stock".

2.24    GOVERNMENTAL REGULATION – Borrower is not subject to regulation under the Federal Power Act, the Investment Company Act of 1940, the Interstate Commerce Act (as any of the preceding have been amended), or any other Law which regulates the incurring by Borrower of indebtedness, including but not limited to Laws relating to common or contract carriers or the sale of electricity, gas, steam, water, or other public utility services.

2.25    NO CONDEMNATION – No condemnation proceedings are pending or threatened against the Property.

2.26    BUILDING PERMITS  - All building permits, by every name, required for the construction and installation of the Renovation Improvements have been or will be obtained prior to such construction and/or installation, and prior to the disbursement of any Advances for Renovation Improvements for such construction and/or installation, copies of same will be delivered to Lender.

<u>ARTICLE III</u>
<u>THE LOAN</u>

3.1    THE LOAN - The Loan will be in an amount not exceeding the principal sum of Eight Million Eight Hundred Fifty Thousand and No/100 Dollars ($8,850,000.00).  The Loan is non-revolving; Loan Proceeds once disbursed and repaid, cannot be reborrowed.

3.1.1    Note #1. At Loan Closing, Loan Proceeds under Note #1 shall be disbursed to (i) pay for the Loan Fee and all other Loan Closing Costs and (ii) refinance Borrower's existing indebtedness secured by the Property.  The Loan Fee shall be deemed fully earned and non-refundable when paid, whether or not any Loan Proceeds are disbursed at any time.

3.1.2    Note #2. The Loan Proceeds under Note #2 shall be disbursed by Lender to pay for Renovation Improvements pursuant to Section 3.11 below.

3.2    LOAN CLOSING

3.2.1  The Loan will close if, and only if, on or before April 30, 2019, Borrower shall, at its sole expense, deposit or cause to be deposited with Lender, the following in form and substance satisfactory to Lender, in Lender's sole opinion and judgment, duly executed by the party to be charged and acknowledged where required:

(a)    The Loan Fee;

(b)    The Note #1 and Note #2;

(c)    The Deed of Trust;

000345

(d)     The Assignment of Leases;

(e)     The Guaranty;

(f)     The Title Policy or evidence of a commitment therefor.  The Title Policy shall show no blanket exceptions for anything a survey would show;

(g)     If requested by Lender, the survey or surveys prepared by a licensed surveyor satisfactory to Lender, certified to the Title Company and to Lender and its successors, nominees, and assigns, and showing all easements.  The survey shall be conducted in compliance with ALTA standards as applied in California and shall be certified to the Title Company, Lender, and Borrower in form and content acceptable to Lender;

(h)     One or more Financing Statements;

(i)     If required by Lender, UCC search certificates showing the Financing Statements to be subject only to such prior filings as are acceptable to Lender, in its sole opinion and judgment;

(j)     True and correct copies of: Borrower's and Guarantor's Organizational Documents, certificate(s) of fictitious business name, and financial statements, all of which documents must be first reviewed and approved by Lender, its counsel, or both;

(k)     Such resolutions or other authorizations as Lender shall require of Borrower, Guarantor and any Person holding an interest in Borrower or Guarantor authorizing the Loan, the Guaranty or such other matters as Lender shall require;

(l)     The Environmental Indemnity;

(m)     The Agreement to Furnish Insurance, together with evidence that all insurance coverages required by Lender have been purchased and are in place;

(n)     The Hazard Insurance Disclosure;

(o)     The Appraisal, reporting that the maximum amount of the Loan to the appraised "as is" value of the Property does not exceed sixty-seven percent (67%);

(p)     A Phase I, and, if indicated, a Phase II environmental survey, by a qualified environmental engineer, indicating an absence of environmental concerns in regard to the Property, satisfactory in all respects to Lender, in Lender's sole opinion and judgment;

(q)     IRS Form 4506 executed by Borrower and Guarantor;

(r)      Review and approval of Borrower's Financial Statements, real estate schedules and tax returns (with all forms K-1 attached) prepared by a certified public accountant satisfactory to Lender;

(s)      Review and approval of each Guarantor's Financial Statements, real estate schedules and tax returns (with all forms K-1 attached) prepared by a certified public accountant satisfactory to Lender;

(t)      If requested by Lender, a property inspection prepared by an inspection company approved by Lender;

(u)      Verification and approval of all permits, approvals and authorizations required to operate and use the Property;

(v)      Such soils and/or geology reports as Lender may require, which reports shall be satisfactory in all respects to Lender, in its sole and absolute discretion, prepared by such geologists, engineers and/or other consultants as are approved by Lender;

(w)      As required by Lender, evidence satisfactory to Lender that the use of the Property will at all times comply with all applicable Laws, permits and/or approvals which affect the Property and/or the sale, operation, leasing or financing of the Property and/or the occupancy, use and enjoyment of the Property including, but not limited to, applicable subdivision Laws, licenses and permits, building codes, zoning ordinances, permits, approvals, parking ordinances, flood disaster, environmental protection and equal employment regulations and appropriate supervising boards of fire underwriters and similar agencies;

(x)      Review and approval of all fully executed leases on the Property to the satisfaction of Lender in its sole opinion and judgment;

(y)      The Lease Subordination;

(z)      Borrower shall have opened the Loan Closing Deposit Account with Lender;

(aa)      The Assignment of Deposit Account; and

(bb)      Such additional assignments, agreements, certificates, reports, approvals, instruments, documents, financing statements, consents, and opinions as Lender may request, including, but not limited to any zoning variances, permits, approvals, conditional use permits, development agreements or other land use requirements Borrower shall be required to obtain in connection with the construction and operation of the Property and any and all subordination agreements, non-disturbance and attornment agreements, and tenant estoppel certificates as Lender, in its sole and absolute discretion, shall require Borrower to obtain from tenants of the Property, if any.

3.3    LOAN PURPOSE – The Loan Proceeds disbursed shall be used by Borrower solely for (i) refinancing Borrower's existing indebtedness secured by the Property and financing the construction and installation of Renovation Improvements thereon, (ii) paying, at Loan Closing, the Loan Fee and all other Loan Closing Costs, and (iii) paying, at or after Loan Closing, such fees, costs and other amounts as Lender shall, in Lender's sole and absolute discretion, approve in writing, but only to the extent of the Loan Proceeds.  Borrower shall be responsible for paying any of the foregoing from its own funds in the event the Loan Proceeds are insufficient to do so.

3.4    LOAN FEE - The Loan Fee shall be paid by Borrower to Lender at Loan Closing from the Loan Proceeds, and will be in addition to all other fees mentioned in this Agreement.  The Loan Fee shall be deemed fully earned and non-refundable when paid, whether or not any Loan Proceeds are disbursed at any time.

3.5    LOAN TERM – The term of the Loan will commence on the date of Loan Closing and the Loan will mature upon the Maturity Date, subject to acceleration or adjustment as provided in this Agreement and the other Loan Documents.  If, as of the Maturity Date, there is not an uncured Event of Default under this Agreement or any of the Loan Documents, the Maturity Date will be extended to March 31, 2022, upon (i) Borrower's written request made not later than February 28, 2021, for an extension of the Maturity Date, (ii) execution by Borrower, Guarantor and Lender of a modification and/or extension agreement in form and content satisfactory to Lender, in reasonable opinion and judgment, (iii) issuance of such endorsements to the Title Policy as shall be satisfactory to Lender, in Lender's reasonable opinion and judgment, (iv) the Debt Service Coverage Ratio shall be no less than 1.20 to 1.00, which shall be measured for the immediately preceding twelve (12) consecutive calendar month period of time and applying the projected Debt Service calculated as if the Loan is being paid in full in equal monthly installments of principal and interest for a period of three hundred (300) months at the then effective interest rate under the Note, and (v) Lender's review and approval of Borrower's and Guarantor's Financial Statements to the satisfaction of Lender in its sole and absolute opinion and judgment.  In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and such Financial Statements of Borrower and Guarantor, and other documentation and evidence as shall be reasonably satisfactory to Lender, evidencing Borrower's compliance with the Debt Service Coverage Ratio requirement set forth in this Section 3.5 and other requirements set forth in this Section 3.5.  The granting of any such extension, however, is not intended to imply any agreement for any other or further extension of the Maturity Date.

3.6    INTEREST RATE; INTEREST RATE SWAP OPTION –

3.6.1    The interest rate will be as set forth in the Note.

3.6.2    Lender and Borrower are entering into an interest rate swap contract with Borrower in connection with the Loan (the "Swap Contract") for a notional amount not to exceed the principal amount of the Loan for a term not to end later than the Maturity Date, which Swap Contract shall be secured by the Deed of Trust.  Pursuant to a Swap Contract entered into in accordance with this Section:

000348

(i) Lender will agree to pay to Borrower a floating rate of interest which will be determined at the time of execution of the Swap Contract (but which floating rate shall not exceed the floating rate payable by Borrower on the Loan) and (ii) Borrower will agree to pay to Lender a fixed rate based on the prevailing market interest rate for Treasury securities with a maturity corresponding to the term of the Swap Contract as determined by Lender in its sole discretion at the time of execution of the Swap Contract (the "Swap Market Fixed Rate").

3.6.3    Lender shall not be obligated to enter into a Swap Contract with Borrower unless, at or prior to execution of the Swap Contract, Lender shall have received the following, each of which must be in form and substance satisfactory to Lender:

(a)    a Master Agreement in the form published by the International Swap and Derivatives Association, Inc., and related Schedule, duly executed by Borrower;

(b)    a confirmation under the foregoing; and

(c)    such other documents, agreements and instruments as Lender may require to evidence satisfaction of conditions contained in any of the foregoing.

3.6.4    Any Swap Contract may not be unwound or terminated, in whole or in part, without Lender's approval.

3.6.5    No Guarantor hereunder shall be deemed to be a guarantor of any Swap Contract if such Guarantor is not an "Eligible Contract Participant" as defined in § 1(a)(18) of the Commodity Exchange Act and the applicable rules issued by the Commodity Futures Trading Commission and/or the Securities and Exchange Commission (collectively, and as now or hereafter in effect, "the ECP Rules") to the extent that the providing of such guaranty by such Guarantor would violate the ECP Rules or any other applicable law or regulation.

3.7    REPAYMENT - In addition to any other provisions set forth herein, repayment of the Loan will be required as follows:

3.7.1   Interest and principal payments under the Loan shall be due and payable to Lender pursuant to the provisions of the Note;

3.7.2   Borrower hereby authorizes Lender, at Lender's option, if and to the extent any payment of principal or interest or sum otherwise due hereunder is not promptly made pursuant to the Note, to charge against any account of Borrower with Lender an amount equal to the principal and accrued interest from time to time due and payable to Lender under the Note or otherwise;

3.7.3   All payments hereunder or under the Note shall be made by Borrower without any offset or deduction for or on account of any present or future taxes,

3265287.4                                      17

imposts or duties, of whatever nature, imposed or levied by or on behalf of any Governmental Agency. If at any time, whether by reason of any present or future Law or other requirement, Borrower shall be compelled by such Law or other requirement to deduct or withhold such taxes, imposts or duties, Borrower shall pay such additional amounts to Lender as may be necessary such that every net payment under this Agreement and the Note on which Borrower is obligated, after such deduction or withholding, will not be less than the amount required hereunder or thereunder; and

3.7.4 Whenever any payment to be made under this Agreement and the Note shall be due on a day other than a Business Day of Lender, such payment may be made on the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of payment of interest hereunder and under the Note.

3.8    NO AUTOMATIC SET-OFF - The existence of any sum or sums being on deposit with Lender shall in no way constitute a set-off against or be deemed to compensate the obligations of the Loan or any payment or performance due under the Loan Documents or this Agreement, unless and until Lender, by affirmative action, shall so apply said accounts or any portion thereof, and then only to the extent thereof as so designated by Lender.

3.9    DEPOSIT ACCOUNT –

3.9.1    Borrower hereby grants, assigns, pledges and hypothecates to Lender all of Borrower's right, title and interest in and to all deposit accounts maintained by Borrower with Lender (including, without limitation, the Reserve Account (as hereinafter defined)) as security for each and all of the obligations of Borrower to Lender under the Loan Documents. Borrower shall, so long as the Loan has not been fully repaid, performed and discharged, maintain its primary operating account for the Property with Lender ("Operating Account").

3.9.2    In addition to being Borrower's sole depository account for any and all Net Operating Income from the Property, the funds on deposit in the Operating Account shall be utilized, on a monthly basis, to pay any and all principal and interest payments due under the Note. Accordingly, Borrower hereby authorizes Lender on a monthly basis to disburse from the Operating Account, the amount of principal and interest due under the Note, without further authorization on the part of Borrower. Such disbursements by Lender may be made by such means (including, without limitation, by automatic debit) as shall be satisfactory to Lender, in its sole and absolute discretion.

3.9.3    Notwithstanding the existence of the Operating Account, Borrower shall be responsible to pay interest and principal due under the terms of the Note from sources other than the Operating Account, regardless of whether the Operating Account has been disbursed in its entirety or an Event of Default has occurred. Upon the occurrence of any Event of Default, Lender may continue to withdraw funds from the Operating Account to pay any amount of principal and

3265287.4                                18

000350

interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower. Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the funds that may, at any time, be maintained in the Operating Account for payment of interest and/or principal on the Loan or any portion thereof.

3.9.4   Unless and until there occurs an Event of Default hereunder (or an event the occurrence of which with the giving of notice or passage of time would constitute an Event of Default hereunder), the funds in the Operating Account shall be accessible to Borrower, and Borrower shall have the right to withdraw any and all sums on deposit in the Operating Account; provided, however, that there remain on deposit in the Operating Account a sum sufficient to pay the installment of principal and/or interest due under the Note in the calendar month immediately following the date of Borrower's intended withdrawal or utilization of funds in the Operating Account. Notwithstanding the foregoing or anything else stated herein or in the other Loan Documents to the contrary, upon the occurrence of any Event of Default (or an event the occurrence of which with the giving of notice or passage of time would constitute an Event of Default hereunder), any and all rights of Borrower to withdraw or otherwise utilize any or all of the funds in the Operating Account shall terminate without notice to Borrower, and thereafter, Borrower shall have no right to withdraw or otherwise utilize funds from the Operating Account or to reduce the balance in the Operating Account in any manner or for any purpose.

3.10   RELIANCE BY LENDER AND ACQUITTANCE - Lender may conclusively assume that the statements, facts, information, and representations contained herein and/or in any affidavits, orders, receipts, or other written instrument(s) that are filed with Lender or exhibited to it, are true and correct, and Lender may rely thereon without any investigation or inquiry, and any payment made by Lender in reliance thereon shall be a complete release in its favor for all sums so paid.

3.11   ADVANCE(S) FOR RENOVATION IMPROVEMENTS - The Loan Proceeds under Note #2 disbursed by reason of the Advance(s) for Renovation Improvements shall be used by Borrower solely for the purpose of reimbursing Borrower for payments made in connection with the construction and installation of Renovation Improvements on the Property, together with any permits, fees and/or utility fees incurred in connection therewith.

3.11.1   Limitations on Advance(s) for Renovation Improvements. In addition to any other terms, conditions or limitations set forth in this Agreement with respect to Advance(s) for Renovation Improvements, all Advance(s) for Renovation Improvements shall be subject to the following conditions and limitations:

(a)    The total amount of the Advance(s) for Renovation Improvements shall not exceed the sum of $1,700,000.00 in the aggregate under Note #2, and any Advances for Renovations shall be made only under Note #2;

000351

(b)     Borrower acknowledges and agrees that to the extent, if any, the amount of the Advance(s) for Renovation Improvements is insufficient to complete the Renovation Improvements, Borrower shall be solely responsible for paying any deficiency from Borrower's own funds.  Borrower acknowledges that Lender has made no representation or warranty concerning the adequacy or sufficiency of the Loan Proceeds for payment of the Renovation Improvements and/or any portion thereof.  No interest will be charged on any Advance(s) for Renovation Improvement until such time as such Advance is made by Lender pursuant to this Agreement upon written request by Borrower and otherwise subject to the requirements set forth in Section 3.11.2 below.

(c)     The Renovation Improvements shall be completed, free and clear of any and all liens, in accordance with any and all applicable Laws.  In addition, upon completion of the Renovation Improvements, Borrower shall have delivered to Lender true and correct copies of valid, final certificates of occupancy and/or such similar Governmental Agency approval(s) for the Property, and each portion thereof, as may be required by Lender, in its sole discretion.

(d)     Lender shall be under no obligation to process more than four (4) Application(s) for Payment per calendar month for Loan Proceeds for Renovation Improvements; and

(e)     No further Advances for Renovation Improvements shall be requested by Borrower, and Lender shall have no obligation to make any further Advances for Renovation Improvements nor honor any Application for Payment, after April 3, 2020.

3.11.2  Conditions Precedent to Advance(s) for any Renovation Improvements.  Prior to and as a condition precedent to any duty on the part of Lender to make the first or any Advance of Loan Proceeds with respect to Advance(s) for Renovation Improvements, each of the following conditions precedent shall be satisfied:

(a)     No Event of Default hereunder or default under any of the Loan Documents (or event which, with the giving of notice or passage of time, or both, would become an Event of Default or default under any of the Loan Documents) shall have occurred and Borrower shall provide Lender with a sworn certificate certifying the same;

(b)     All approvals and permits, by every name, as required by any Governmental Agency, or as required by Lender, for the construction and/or installation of the Renovation Improvements shall have been obtained, and copies of same shall have been delivered to Lender;

(c)     With respect to payment of any Renovation Improvements, Lender shall have approved a detailed budget for the construction of any Renovation Improvements (the "Renovation Approved Budget"), and no changes shall have been made nor shall be permitted thereto without Lender's prior written consent, which consent Lender may give or withhold in its sole and absolute discretion;

3265287.4                              20

(d)    Borrower shall have delivered to Lender all contracts executed by Borrower in connection with the Renovation Improvements, which contracts must be approved by Lender;

(e)    Borrower shall submit to Lender an Application for Payment for the expense incurred by Borrower, which shall be approved by Lender and shall be accompanied by, without limitation, a written certificate signed by Borrower certifying, inter alia, (i) the identity of each workman or other Person who has performed work and/or supplied materials for which an Advance of Loan Proceeds is sought, (ii) a specific description of all such work performed and/or materials supplied, (iii) if a workman or other Person specified in the Application for Payment has not been paid, the amount to be paid to each such workman or other Person (copies of any and all applicable invoices and/or purchase orders shall be provided to Lender concurrently with the Application for Payment), (iv) if a workman or other Person specified in the Application for Payment has been paid, the amount so paid to each such workman or other Person (evidence of such payment, including, without limitation, cancelled checks, shall be provided to Lender concurrently with the Application for Payment); (v) that each workman or other Person specified in the Application for Payment has satisfactorily completed the work and/or furnished the materials for which payment is requested, in accordance with the applicable contract; and (vi) that all work performed and/or materials furnished for which an Application for Payment is made conforms to the Renovation Approved Budget;

(f)    Within thirty (30) days of disbursement by Lender for the Renovation Improvements pursuant to any Application for Payment, Borrower shall submit to Lender true and correct copies of all signed unconditional lien releases from each workman who has supplied the labor and/or materials encompassed in the Application for Payment under Section 3.11.2(d) and who shall have been paid in full with the payment described in such Application for Payment in accordance with subsection (c) above; provided, however, that with respect to a workman who has not yet been paid in full, Lender may require a conditional lien release and waiver (upon final payment), and conditioned only upon receipt of the full amount due such workman and in any event Borrower shall submit to Lender no later than thirty (30) days after Lender's disbursement of such full amount for the payment to such workman, a final unconditional lien release from said workman;

(g)    Lender shall have received such evidence as Lender may require that all funds disbursed pursuant to the previous Application for Payment have been utilized to pay the labor, services and/or materials described therein, and that such labor, services and/or materials have been paid in full, and in connection therewith, Lender may cause an inspection, at any time and from time to time, to be made of the progress of the construction, the results of which shall be satisfactory to Lender;

(h)    If required by Lender, issuance by the Title Company of (i) a CLTA 122 title policy endorsement, at Borrower's sole cost, insuring the continued priority of the lien of the Deed of Trust from all potential mechanic's lienholders, liens,

3265287.4                              21

000353

encumbrances and defects except the Permitted Encumbrances, and (ii) such other title policy endorsements to the Title Policy as Lender shall reasonably request;

(i)    Lender shall have received such other information, reports, and/or documentation as it may require in connection with any Application for Payment and/or requested Advances for Renovation Improvements;

(j)    All other conditions precedent required to be performed under Sections 3.2.1 shall have been met;

(k)    Any and all fees and costs incurred by Lender in connection with the Advances for Renovation Improvements shall be at the sole expense of Borrower and may, at the sole and absolute discretion of Lender, be paid from any Loan Proceeds remaining undisbursed; and

(l)    Such other terms and conditions required by Lender in its sole opinion and judgment.

3.11.3  In addition to, and without limiting any of the foregoing, Lender shall have the right, from time to time, as and when Lender deems it appropriate, in its sole discretion, and whether or not an Event of Default has occurred, to order an inspection of the Property at the sole cost to Borrower and at Lender's sole discretion.

3.11.4  Notwithstanding anything to the contrary in this Section 3.11, by no later than six (6) months from the date of Loan Closing, Borrower shall have completed the Renovation Improvements to the Property such that, as determined by Lender: (a) all of the obligations of Borrower for Renovation Improvements under the then existing Approved Leases shall have been completed, and (b) the tenant under such Approved Leases shall have accepted the completion of such obligations.

3.12    LOAN CLOSING DEPOSIT ACCOUNT - At Loan Closing, an amount equal to $99,000.00 from Loan Proceeds under Note #1 shall be deposited into a deposit account with Lender ("Loan Closing Deposit Account"), which Loan Closing Deposit Account shall be assigned to Lender pursuant to the Assignment of Deposit Account. As of the date of Loan Closing and at all times thereafter, Borrower shall maintain a minimum daily balance in the Loan Closing Deposit Account of not less than $99,000.00. The Loan Closing Deposit Account shall be a blocked account, accessible only to Lender. Borrower shall have no right to withdraw or otherwise utilize funds from the Loan Closing Deposit Account or to reduce the balance in the Loan Closing Deposit Account in any manner whatsoever.  Upon the occurrence of any Event of Default, Lender may withdraw funds from the Loan Closing Deposit Account to pay any amounts of principal and/or interest due and unpaid under the Note, in Lender's sole and absolute opinion and judgment, without further authorization on the part of Borrower.  Upon the repayment of the Loan in full, all amounts in the Loan Closing Deposit Account shall be disbursed to Borrower; provided, however, that all amounts in the Loan Closing Deposit Account shall be released prior to the repayment of the Loan in full upon satisfaction of the

Minimum DSCR (as defined in Section 4.24) required under Section 4.24, as determined by Lender as measured as of April 3, 2020 in accordance therewith.

## ARTICLE IV
## BORROWER'S COVENANTS

4.1    INSURANCE – Borrower shall obtain and at all times maintain hazard and liability insurance in amount, form and issued by a company or companies satisfactory to Lender, as required under the Deed of Trust and/or the Agreement to Furnish Insurance.

4.2    RIGHT OF ENTRY – Lender and Lender's employees or agents shall have the right to enter upon the Property for a reasonable business purpose (unless there is an Event of Default hereunder, in which case, Lender shall enter for whatever purpose Lender deems appropriate), including, without limitation, inspection of the premises and the posting of such notices and other written or printed material thereon.  Prior to entering upon the Property, Lender shall give notice of its intent to enter upon the Property; provided, however, that upon an Event of Default hereunder, no notice to Borrower shall be required.  In entering upon the Property, Lender takes all reasonable precautions to minimize the interference with the rights of any tenants located on the Property.

4.3    PRESERVE ITS EXISTENCE – Borrower, if other than a natural person, will, so long as Borrower remains obligated on the Loan, do all things necessary to preserve and keep in full force and effect its organizational status and will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Borrower or to the Property.

4.4    LENDER MAY EXAMINE BOOKS AND RECORDS – Lender shall have the right, from time to time, acting by and through its employees or agents, to examine the books, records, and accounting data of Borrower, and to make extracts therefrom or copies thereof.  Borrower shall upon reasonable written request make such books, records, and accounting data available to Lender, as stated above, upon written request, and upon like request shall promptly advise Lender, in writing, of the location of such books, records, and accounting data.

4.5    PAYMENT OF TAXES – Borrower shall pay and discharge all taxes, assessments, and governmental charges or levies imposed upon Borrower or upon its income or profits, or upon any properties belonging to it prior to the date on which penalties attach thereto, and all lawful claims which, if unpaid, might become a lien or charge of a material nature upon any of its properties; provided, that Borrower shall not be required to pay any such tax, assessment, charge, levy or claim which is being contested in good faith and by proper proceedings if it maintains adequate reserves with respect thereto.

4.6    COMPLY WITH APPLICABLE LAWS – Borrower shall comply with all applicable restrictive covenants, zoning and subdivision ordinances, building codes, health and environmental Laws and all other applicable Laws, directions, orders and

000355

notices of violations issued by any Governmental Agency relating to or affecting the premises or the business or activity being conducted thereon whether by Borrower or by any occupant thereof, including, without limitation, any and all Laws relating to hazardous or toxic waste or waste products or hazardous substances. Further, Borrower shall indemnify and hold Lender and the Trustee under the Deed of Trust harmless from the failure by Borrower to comply with such Laws in any respect.

4.7     MAINTENANCE OF PROPERTIES AND PRESERVE EXISTENCE – Borrower shall maintain and preserve, or cause to be maintained and preserved, all of its properties, necessary or useful in the proper conduct of its business, including such as may be under lease, in good working order and condition, ordinary wear and tear excepted. Borrower, so long as Borrower remains obligated on the Loan, shall do all things necessary to preserve and keep in full force and effect Borrower's organizational status, and will comply with all Laws, orders and decrees of any Governmental Agency or court applicable to Borrower or to the Property.

4.8     BOOKS AND RECORDS; AUDIT AND EXAMINATION – Borrower shall keep and maintain all books and records in original form, as shall be required and as shall otherwise be reasonable, pertaining to the performance by Borrower of its covenants and other obligations hereunder, and otherwise pertaining to its operations and activities. Borrower shall at all times permit Lender to review, audit and examine all such books and records, either directly or through one or more auditors designated by Lender, including independent contractors.

4.9     REPORTING REQUIREMENTS – So long as Borrower shall have any obligation to Lender under this Agreement and/or the other Loan Documents, Borrower shall prepare, or cause to be prepared, and deliver, or cause to be delivered, to Lender the following Financial Statements and reports:

(a)     As soon as practicable and in any event within ten (10) business days after Borrower knows or should reasonably have known, of the commencement of any legal action against it, except actions seeking money judgments that are fully insured or bonded, a report of the commencement of such action containing a statement signed by all managers or managing members of Borrower setting forth details of such legal action and any action Borrower proposes to take with respect thereto;

(b)     Within five (5) business days of the occurrence of any Event of Default or event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default, a report regarding such Event of Default or event setting forth details and describing any action which Borrower proposes to take with respect thereto, signed by Borrower;

(c)     Any change in the name of Borrower or use of any trade names or trade styles not presently used;

(d)     Borrower shall furnish to Lender complete and accurate copies of all signed income tax returns (with all forms K-1 attached) of Borrower within

000356

sixty (60) days after they are filed with the relevant taxing authorities. All such tax returns shall be prepared by an independent certified public accountant reasonably acceptable to Lender.

(e)     Borrower shall cause B4YB to furnish to Lender, as soon as available, and in any event no later than sixty (60) days following June 30 and December 31 of each calendar year, and no later than ninety (90) days following the end of each fiscal year end (June 30) of B4YB during which the Loan has not been fully repaid and performed, and discharged, complete and accurate semi-annual and annual Financial Statements, respectively, representing the financial condition of B4YB as of the date such Financial Statements are prepared and delivered to Lender, including, but not limited to, balance sheets, income statements, sources and uses of funds, real estate schedules and such other supplemental reports and schedules as Lender shall reasonably require. All such semi-annual Financial Statements may be company-prepared and all such annual Financial Statements shall be reviewed by an independent certified public accountant acceptable to Lender. All such Financial Statements shall contain a certification signed by any individual providing a Financial Statement or by one or more authorized representatives of any corporation, partnership, limited liability company, trust or other entity providing a Financial Statement, certifying to the completeness and accuracy of all information, without exception. All Financial Statements of B4YB shall be prepared and presented in accordance with GAAP, consistently applied, or in such other form and content as Lender may permit, in its sole and absolute opinion and judgment.

(f)     Borrower shall cause each Corporate Guarantor to furnish to Lender complete and accurate copies of all signed income tax returns (with all forms K-1 attached) of such Corporate Guarantor, including all schedules and exhibits thereto, prepared by an independent certified public accountant reasonably acceptable to Lender, within thirty (30) days after they are filed with the relevant taxing authorities;

(g)     Borrower shall cause Individual Guarantor to furnish to Lender complete and accurate copies of all signed income tax returns (with all forms K-1 attached) of Individual Guarantor, including all schedules and exhibits thereto, prepared by an independent certified public accountant reasonably acceptable to Lender, within thirty (30) days after they are filed with the relevant taxing authorities. Additionally, Borrower shall cause Individual Guarantor to furnish to Lender, concurrently with the delivery of Individual Guarantor's signed income tax returns, within thirty (30) days after such tax returns are filed with the relevant taxing authorities, complete and accurate annual Financial Statements representing the financial condition of Individual Guarantor as of the date such Financial Statements are prepared and delivered to Lender, including, but not limited to, balance sheets, income statements, sources and uses of funds, real estate schedules, verification of liquid assets, and such other supplemental reports and schedules as Lender shall reasonably require. All such Financial Statements may be self-prepared; and all such Financial Statements shall contain a certification signed by any individual providing a Financial Statement or by one or more authorized representatives of any corporation, partnership, limited liability company, trust or other entity providing a Financial Statement, certifying to the completeness and accuracy of all information,

without exception.  All Financial Statements of Individual Guarantor may be prepared subject to other comprehensive basis of accounting (OCBOA), in the usual and customary manner in which Individual Guarantor maintains in his/her books and records, consistently applied, and in the same form as previously provided to Lender as a condition to making the Loan;

(h)     Promptly upon receipt thereof, one (1) copy of any other report submitted to Borrower by independent accountants in connection with any annual, interim or special audit made by them of the books of Borrower;

(i)     Within five (5) business days of (i) any contact from any Governmental Agency concerning any environmental protection Laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous waste, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third Person against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous waste, or hazardous materials, or (iii) Borrower's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any Law, Borrower shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Borrower proposes to take with respect thereto, signed by Borrower;

(j)     Within five (5) business days of becoming aware of any developments or other information which may materially and adversely affect Borrower's properties, business, prospects, profits or condition (financial or otherwise) or Borrower's ability to perform this Agreement or the other Loan Documents, telephonic or written notice (delivered via facsimile) specifying the nature of such development or information and such anticipated effect, which shall be promptly confirmed in writing;

(k)     Borrower shall provide to Lender upon Lender's request and in any event no later than sixty (60) days following June 30th and December 31st of each calendar year during the term of this Agreement through and including the Maturity Date, a detailed rent roll covering the Property, setting forth the identity of each and every tenant on the Property, the rent paid by each such tenant, whether each such tenant is current on the rent, the square footage occupied by such tenant (to the extent available), and such other information as Lender may request, accompanied by copies of any and all lease agreements and related agreements and/or documentation.  Borrower shall not be required to provide said rent rolls to Lender more than two (2) times per calendar year;

(l)     Borrower shall provide to Lender upon Lender's request and in any event no later than sixty (60) days following the end of each calendar year during the term of this Agreement through and including the Maturity Date, a current operating statement for the Property, including income and expense statements and such other information as Lender may request; and

3265287.4                                    26

(m)     Such other information respecting the business, properties or the condition or operations, financial or otherwise, of Borrower as Lender may from time to time request.

4.10    LIENS – Borrower shall not create, incur, assume or suffer to exist any mortgage, deed of trust, pledge, lien, security interest or other charge or encumbrance (including the lien or retained security title of a conditional vendor) of any nature upon or with respect to the Property, or assign or otherwise convey any right to receive income, except that the foregoing restrictions shall not apply to mortgages, deeds of trust, pledges, liens, security interests or other charges or encumbrances, including the Deed of Trust and the Assignment of Leases, covering the Property created by or pursuant to or permitted by this Agreement, or taxes, assessments or governmental charges or levies on property of Borrower, or in respect of a judgment or award against Borrower, if the same shall not at the time be delinquent or thereafter can be paid without penalty, or if Borrower shall have set aside adequate reserves therefor as determined or approved by its certified independent accounting firm, or, if in the case of a judgments or award, execution on the same shall have been effectively stayed pending appeal or review or insured or bonded to the extent of Borrower's liability in respect thereof, and in the case of all of the foregoing, the same are being contested in good faith and by appropriate proceedings.

4.11    NO TRANSFER OR FURTHER ENCUMBRANCE – Borrower shall not, without the prior written consent of Lender:

(a)     Create, incur, assume, permit or suffer to exist, any mortgage, deed of trust, pledge, lien, hypothecation, charge (fixed or floating), security interest or other encumbrance whatsoever on the Property or any interest therein, except the Permitted Encumbrances;

(b)     Transfer the Property, or any interest therein, except for Approved Leases;

(c)     Become a party to any transaction whereby the Property or any portion thereof, or all any substantial part of the properties, assets or undertakings of Borrower (whether legally or beneficially owned by Borrower), would become the property of any other Person, whether by way of transfer, sale, conveyance, lease, sale and leaseback, except for Approved Leases;

(d)     Change the use of the Property;

(e)     Enter into a lease for all or any portion of the Property, except for Approved Leases;

(f)     Modify or amend any Approved Lease;

(g)     Transfer, convey, hypothecate, or sell membership interests in Borrower; or

3265287.4                                    27

(h)    Change the manager of Borrower.

4.12    PROTECTION OF LIENS – Borrower shall maintain the lien of the Deed of Trust as a first priority lien on the Property and take all actions, and execute and deliver to Lender all documents, reasonably required by Lender from time to time in connection therewith.

4.13    TITLE INSURANCE ENDORSEMENTS – Borrower shall deliver to Lender, at Borrower's sole expense and in form and content reasonably required by Lender from time to time, such endorsements to the Title Policy as Lender shall request.

4.14    TAXES AND OTHER DEBT – Borrower shall pay and discharge (a) before delinquency all taxes, assessments, and governmental charges or levies imposed upon it, upon its income or profits, or upon any property belonging to it; (b) when due all lawful claims (including, without limitation, claims for labor, materials, and supplies), which, if unpaid, might become a lien or encumbrance upon any of its assets or property; and (c) all its other obligations and indebtedness when due; provided, however, that Borrower may contest any of the foregoing in good faith and by appropriate proceedings diligently prosecuted by Borrower as long as Borrower has adequate reserves to pay any adverse determination or has otherwise provided Lender evidence of a surety or bond to pay any adverse determination.

4.15    CORPORATION RESTRICTIONS – Borrower will not consolidate or merge with any corporation, any limited partnership, any limited liability company, or any other Person.

4.16    NAME, FISCAL YEAR, ACCOUNTING METHOD, AND LINES OF BUSINESS – Borrower will not change its name, fiscal year, or method of accounting. Borrower will not directly or indirectly engage in any business other than the business in which Borrower is engaged on the date of this Agreement, discontinue any existing lines of business that are material to the business or operations of Borrower, or substantially alter its method of doing business.

4.17    LOANS - Borrower will not directly or indirectly (a) make any loan or advance to any other Person other than advances made in the ordinary course of Borrower's business; (b) purchase or otherwise acquire any capital stock or any securities of any other Person, any limited liability company interest or partnership interest in any other Person, or any warrants or other options or rights to acquire any capital stock or securities of any other Person or any limited liability company interest or partnership interest in any other Person; (c) make any capital contribution to any other Person; (d) otherwise invest in or acquire any interest in any other Person or establish any subsidiaries; (e) guarantee or otherwise become obligated in respect of any indebtedness of any other Person; or (f) subordinate any claim against or obligation of any other Person to Borrower to any other indebtedness of such Person.

4.18    INDEBTEDNESS - Borrower shall not assume, create, incur, or permit to exist any obligations or indebtedness in favor of any Person except trade obligations and

000360

normal accruals in the ordinary course of business not yet due and payable. Borrower shall not assume, create, incur, or permit to exist any contingent liabilities, including, without limitation, contingent reimbursement obligations under letters of credit.

4.19    ACQUISITION OF ASSETS - Borrower shall not acquire by purchase, lease or otherwise all or substantially all the assets of any other Person.

4.20    DISTRIBUTIONS - Borrower shall not, and shall cause B4YB not to, make, declare or permit any distribution to any officer, shareholder, member, manager or partner of Borrower or B4YB at any time that an Event of Default (or event that with the giving of notice or passage of time, or both, would constitute an Event of Default) has occurred and is continuing or if any such distribution would cause or contribute to an Event of Default (or event that with the giving of notice or passage of time, or both, would constitute an Event of Default).

4.21    TRANSACTIONS WITH AFFILIATES - Borrower will not enter into, or cause, suffer or permit to exist, any arrangement or contract with any of its Affiliates, including, without limitation, any management contract, unless such transaction is on terms that are no less favorable to Borrower than those that could have been obtained in a comparable transaction on an arms' length basis from a Person that is not an Affiliate.

4.22    TERRORISM AND ANTI-MONEY LAUNDERING - Borrower warrants and agrees as follows:

(a)    As of the date hereof and throughout the term of the Loan: (i) Borrower; (ii) any Person controlling or controlled by Borrower; (iii) if Borrower is a privately held entity, any Person having a beneficial interest in Borrower; or (iv) any Person for whom Borrower is acting as agent or nominee in connection with this transaction, is not an OFAC Prohibited Person.

(b)    To comply with applicable U.S. Anti-Money Laundering Laws and regulations, all payments by Borrower to Lender or from Lender to Borrower will only be made in Borrower's name and to and from a bank account of a bank based or incorporated in or formed under the laws of the United States or a bank that is not a "foreign shell bank" within the meaning of the U.S. Bank Secrecy Act (31 U.S.C. § 5311 et seq.), as amended, and the regulations promulgated thereunder by the U.S. Department of the Treasury, as such regulations may be amended from time to time.

(c)    To provide Lender at any time and from time to time during the term of the Loan with such information as Lender determines to be necessary or appropriate to comply with the Anti-Money Laundering Laws and regulations of any applicable jurisdiction, or to respond to requests for information concerning the identity of Borrower, any Person controlling or controlled by Borrower or any Person having a beneficial interest in Borrower, from any governmental authority, self-regulatory organization or financial institution in connection with its anti-money laundering compliance procedures, or to update such information.

3265287.4    29

000361

(d)    The representations and warranties set forth in this Section 4.22 shall be deemed repeated and reaffirmed by Borrower as of each date that Borrower makes a payment to Lender under the Note, this Agreement and the other Loan Documents or receives any payment from Lender.  Borrower agrees promptly to notify Lender in writing should Borrower become aware of any change in the information set forth in these representations.

4.24    APPROVED LEASES; SNDAs.

(a)    Borrower shall only enter into Approved Leases for the Property (this restriction shall apply to all leases for the Property entered into by Borrower, including, without limitation, all new and renewal leases).

(b)    Borrower shall no later than thirty (30) calendar days upon execution by Borrower of any new or renewal leases (including, without limitation, any modifications and/or extensions of such leases) with respect to the Property, provide Lender with (i) a true, correct and complete copy of such leases (including, without limitation, any modifications and/or extensions of such leases), as signed by all parties thereto, and (ii) Tenant Estoppels and, upon Lender's request, SNDA's from such tenants under the new leases.

4.24    MAINTAIN MINIMUM DEBT SERVICE COVERAGE RATIO –

4.24.1  From the date of Loan Closing and at all times thereafter during the term of the Loan, Borrower shall maintain a Debt Service Coverage Ratio of not less than 1.20 to 1.00 ("Minimum DSCR"), which shall be measured on (i)  April 3, 2020, for the preceding six (6) consecutive calendar month period of time and applying the projected Debt Service calculated as if the Loan is being paid in full in equal monthly installments of principal and interest for a period of three hundred (300) months at the then effective interest rate under the Note, and (ii) October 3, 2020, for the preceding twelve (12) consecutive calendar month period of time and applying the projected Debt Service calculated as if the Loan is being paid in full in equal monthly installments of principal and interest for a period of three hundred (300) months at the then effective interest rate under the Note.  In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and such Financial Statements and other documentation and evidence as shall be reasonably satisfactory to Lender, evidencing Borrower's compliance with the minimum Debt Service Coverage Ratio requirement set forth in this Section 4.24.1.  If Borrower fails to maintain a Debt Service Coverage Ratio equal to at least the Minimum DSCR requirement, as determined by Lender, then within thirty (30) days of written demand by Lender, Borrower shall pay down the outstanding principal balance of the Loan so as to satisfy the Minimum DSCR requirement, which amount shall be determined by Lender in its reasonable opinion and judgment.

4.24.2  From the date of Loan Closing and at all times thereafter during the term of the Loan, Borrower and B4YB shall collectively maintain a Debt Service Coverage Ratio of not less than 1.25 to 1.00 ("Minimum Combined DSCR"), based on (i) Debt Service plus current portion of long-term debt plus annual interest expenses of

B4YB, and (ii) the combined Net Operating Income of Borrower and the EBITDA of B4YB less any dividends made, and taxes paid, by B4YB, which shall be measured on (i) April 3, 2020, for the preceding six (6) consecutive calendar month period of time and applying the projected Debt Service calculated as if the Loan is being paid in full in equal monthly installments of principal and interest for a period of three hundred (300) months at the then effective interest rate under the Note, and (ii) October 3, 2020, and semi-annually thereafter at the end of every six (6) months, for the preceding twelve (12) consecutive calendar month period of time and applying the projected Debt Service calculated as if the Loan is being paid in full in equal monthly installments of principal and interest for a period of three hundred (300) months at the then effective interest rate under the Note. In connection therewith, Borrower shall deliver to Lender a profit and loss statement for Borrower and B4YB and such Financial Statements and other documentation and evidence as shall be reasonably satisfactory to Lender, evidencing Borrower's and B4YB's compliance with the minimum Debt Service Coverage Ratio requirement set forth in this Section 4.24.2. If Borrower and B4YB fail to maintain a Debt Service Coverage Ratio equal to at least the Minimum Combined DSCR requirement, as determined by Lender, then within thirty (30) days of written demand by Lender, Borrower shall pay down the outstanding principal balance of the Loan so as to satisfy the Minimum Combined DSCR requirement, which amount shall be determined by Lender in its reasonable opinion and judgment.

    4.25   POST-CLOSING SNDA AND TENANT ESTOPPEL – Borrower shall deliver to Lender by no later than thirty (30) days following the date of Loan Closing, a fully executed SNDA and Tenant Estoppel for all tenants on the Property, and the failure of Borrower to timely deliver such SNDAs and Tenant Estoppels shall be deemed an Event of Default hereunder.

ARTICLE V
EVENTS OF DEFAULT

An "Event of Default" shall be deemed to have occurred hereunder if:

    5.1   DEFAULT UNDER LOAN DOCUMENTS - Borrower shall fail to pay principal or interest, or both, when due under the terms of the Note; or Borrower shall fail to pay an amount owing under this Agreement or any of the other Loan Documents when due; or Borrower shall fail to perform or observe any term, covenant, or agreement contained in this Agreement or in any of the other Loan Documents; or

    5.2   BREACH OF WARRANTY - Any representations or warranties made or agreed to be made in any of the Loan Documents or this Agreement, or otherwise in connection with the Loan, shall be breached in any respect or shall prove to be false or misleading in any respect when made; or

    5.3   ACTION AGAINST BORROWER - Any suit shall be filed against Borrower, which, if adversely determined, could substantially impair the ability of Borrower to perform any or all of its obligations under and by virtue of this Agreement or

any of the other Loan Documents, unless Borrower's counsel furnishes to Lender its opinion, to the satisfaction of Lender and Lender's counsel, that, in Borrower's counsel's judgment, the suit is essentially without merit; or

    5.4   <u>LEVY UPON PROPERTY</u> - A levy be made on the Property or any other Collateral under any process or any lien creditor commences suit to enforce a judgment lien against the Property or any other Collateral, and such levy or action shall not be bonded against by sureties deemed by Lender to be sufficient in its sole opinion and judgment; or

    5.5   <u>FILING OF LIENS AGAINST THE PROPERTY</u> - Any lien for labor, material, taxes or otherwise shall be filed against the Property and such lien shall not be either satisfied or bonded over within sixty (60) days of such filing in the full amount, to Lender's satisfaction; or

    5.6   <u>CROSS-DEFAULT; OTHER OBLIGATIONS</u> - Borrower or Guarantor commits a breach or default in the payment or performance of any other obligation of Borrower or Guarantor, or breaches any warranty or representation of Borrower or Guarantor, under the provisions of any other instrument, agreement, guaranty, or document evidencing, supporting, or securing any other loan or credit extended by Lender, or by any affiliate of Lender, to Borrower, Guarantor, or to any affiliate of Borrower or Guarantor, including, but not limited to, any and all term loans, revolving credits, or lines of credit extended from time to time to Borrower or Guarantor (or any Person signing this Agreement on behalf of Borrower), or any other Person with which Borrower or Guarantor is affiliated and is conducting business on the Property; or

    5.7   <u>TRANSFER OF PROPERTY</u> – Except for Approved Leases, Borrower shall voluntarily or by operation of Law, sell, transfer, convey, lease, or encumber the Property, or any interest therein, or shall contract for such sale, transfer, conveyance, or encumbrance without the prior written consent of Lender, which consent Lender may either give or withhold in its sole and absolute opinion and judgment; or

    5.8   <u>INSOLVENCY</u> – (i) Borrower shall fail to pay its debts as they become due, or shall make an assignment for the benefit of its creditors, or shall admit, in writing, its inability to pay its debts as they become due, or (ii) Borrower shall file a petition under any chapter of the United States Bankruptcy Code or any similar Law, now or hereafter existing, or shall become "insolvent" as that term is generally defined under the United States Bankruptcy Code, or shall in any involuntary bankruptcy case commenced against it file an answer admitting insolvency or inability to pay its debts as they become due, or shall fail to obtain a dismissal of such case within thirty (30) calendar days after its commencement or shall convert the case from one chapter of the United States Bankruptcy Code to another chapter, or be the subject of an order for relief in such bankruptcy case, or be adjudged a bankrupt or insolvent, or shall have a custodian, trustee, or receiver appointed for, or have any court take jurisdiction of, its property, or any part thereof, in any voluntary or involuntary proceeding, including, but not limited to, those for the purpose of reorganization, arrangement, dissolution, or liquidation, and such

000364

custodian, trustee, or receiver shall not be discharged, or such jurisdiction shall not be relinquished, vacated, or stayed within thirty (30) calendar days after the appointment; or

      5.9 .   <u>BORROWER STATUS</u> - Without Lender's prior written consent, Borrower shall be liquidated, dissolved, or fail to maintain its status as a going concern or there shall be a change in the entity form of Borrower; or

      5.10   <u>ATTACHMENT</u> - Any proceeding shall be brought the object of which is that any part of Lender's commitment to make the Advances hereunder shall at any time be subject or liable to attachment or levy during the course of the suit of any creditor of Borrower unless Borrower's counsel furnishes to Lender its opinion, to the satisfaction of Lender and Lender's counsel, that, in its judgment and after investigation, the suit is essentially without merit; or

      5.11   <u>EMINENT DOMAIN</u> - The Property shall be the subject of an eminent domain proceeding or a taking adverse to the interest of Lender; or

      5.12   <u>DESTRUCTION</u> - The Property is damaged or destroyed by fire or other casualty and the loss shall prove to be inadequately covered by insurance actually collected or in the process of collection and Borrower shall not contribute its own funds to cover such inadequacy to fully repair such damage.

      5.13   <u>FINANCIAL CONDITION</u> - There shall be any material adverse change in the financial condition of any Borrower or either Guarantor; or

      5.14   <u>DEFAULT UNDER GUARANTY</u> – Either Guarantor fails to perform any term, condition or agreement contained in the Guaranty or revokes or notifies Lender of an intention to revoke the Guaranty; or

      5.15   <u>MISREPRESENTATION AND/OR NON-DISCLOSURE</u> - Borrower has made certain statements and disclosures in order to induce Lender to make the Loan and enter into this Agreement, and, in the event Borrower has made material misrepresentations or failed to disclose any material fact, Lender may treat such misrepresentation or omission as a breach of this Agreement.  Such action shall not affect any remedies Lender may have for such misrepresentation or non-disclosure, as such, or under its Deed of Trust for such misrepresentation or concealment; or

      5.16   <u>EXECUTION LEVY</u> - Execution shall have been levied against the Property or any lien creditor(s) commence(s) suit to enforce a judgment lien against the Property and such action or suit shall not have been bonded over and shall continue unstayed and in effect for a period of more than thirty (30) calendar days.

      5.17   <u>STOP NOTICE OR MECHANIC'S LIEN</u> - In the event of the filing with Lender of a notice to withhold or the recording of a mechanic's lien pursuant to sections 8400 and/or 8500, <u>et seq.</u>, of the California Civil Code relating to liens upon real property or any similar Law, and Borrower fails to furnish Lender a sufficient bond causing such notice or lien to be released, or give other indemnity, satisfactory to Lender, within twenty (20) Business Days after such filing or recording.

33

## ARTICLE VI
## REMEDIES

6.1   <u>CEASE PAYMENT AND/OR ACCELERATE</u> - Upon, or at any time after, the occurrence of an Event of Default, and during the continuance thereof, all Loan Proceeds disbursed or advanced by Lender and all accrued and unpaid interest thereon shall, at the option of Lender, become immediately due and payable, and Lender shall be released from any and all obligations to Borrower under the terms of this Agreement.

6.2   <u>ENFORCEMENT OF RIGHTS</u> - Upon, or at any time after, the occurrence of an Event of Default, and during the continuance thereof, Lender may enforce any and all rights and remedies under the Loan Documents, the Deed of Trust and all other documents delivered in connection therewith and against any or all Collateral and may pursue all rights and remedies available at Law or in equity.

6.3   <u>COLLATERAL</u> - Upon, or at any time after, the occurrence of an Event of Default, and during the continuance thereof, Lender may, at its option, without notice to Borrower or any Affiliate of Borrower or without regard to the adequacy of the Collateral for the payment of the Loan, appoint one or more receivers of the Collateral, and Borrower hereby irrevocably consents to such appointment, with such receivers having all the usual powers and duties of receivers in similar cases, including the full power to maintain, sell, dispose and otherwise operate the Collateral upon such terms that may be approved by a court of competent jurisdiction.

6.4   <u>RIGHTS AND REMEDIES NON-EXCLUSIVE</u> - In addition to the specific rights and remedies hereinabove mentioned, Lender shall have the right to avail itself of any other rights or remedies to which it may be entitled under any then existing Laws including, but not limited to, the right to realize upon any or all of its security, and to do so in any order.  Furthermore, the rights and remedies set forth above are not exclusive, and Lender may avail itself of any individual right or remedy set forth in this Agreement, or available under such Laws, without utilizing any other right or remedy.

## ARTICLE VII
## GENERAL CONDITIONS AND MISCELLANEOUS

7.1   <u>NONLIABILITY OF LENDER</u> - Borrower acknowledges and agrees that by accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to the Loan Documents, including any certificate, statement of profit and loss, or other Financial Statement, survey, appraisal or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.2   <u>NO THIRD PARTIES BENEFITTED</u> - This Agreement is made for the purpose of defining and setting forth certain obligations, rights, and duties of Borrower and Lender in connection with the Loan and shall be deemed a supplement to the Note

and the Loan Documents, and shall not be construed as a modification of the Note or the Loan Documents, except as provided herein. This Agreement is made for the sole protection of Borrower and Lender, and Lender's successors and assigns. No Person other than Lender or Borrower shall have any rights of any nature hereunder or by reason hereof or the right to rely hereon. In the event of a conflict between this Agreement and the Note, the provisions of the Note shall control. In the event of a conflict between this Agreement and the Deed of Trust, this Agreement shall control.

7.3    <u>INDEMNITY BY BORROWER</u> - Borrower hereby indemnifies and agrees to hold Lender and its directors, officers, agents, and employees (individually and collectively, the "Indemnitee(s)") harmless from and against:

7.3.1    Any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any Person if the claim, demand, action, or cause of action, directly or indirectly, relates to a claim, demand, action, or cause of action that the Person has or asserts against Borrower;

7.3.2    Any and all claims, demands, actions, or causes of action that are asserted against any Indemnitee by any Person which arise from or relate to any mechanics' lien or related proceeding relating to the Property or any other actual or alleged failure to pay or perform in connection with the Property ; and

7.3.3    Any and all liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any claim, demand, action, or cause of action specified in this Section 7.3.

7.4    <u>CHANGE IN LAWS</u> - In the event of the enactment, after the date of this Agreement, of any Laws: (a) deducting from the value of property for the purpose of taxation any lien or security interest thereon; (b) imposing upon Lender the payment of the whole or any part of the taxes or assessments or charges or liens herein required to be paid by Borrower; (c) changing in any way the Laws relating to the taxation of deeds of trust or mortgages or security agreements, or debts secured by deeds of trust or mortgages or security agreements, or the interest of the mortgagee or secured party in the property covered thereby; or (d) changing the manner of collection of such taxes; then, to the extent any of the foregoing may affect the Deed of Trust or the indebtedness secured thereby or Lender, then, and in any such event, Borrower, upon demand by Lender, shall pay such taxes, assessments, charges, or liens, or reimburse Lender therefor. If Borrower shall be prohibited from paying such tax or from reimbursing Lender for the amount thereof, Borrower shall execute a modification to the Loan Documents and the Note, which modification shall increase the interest rate payable pursuant to the Note so as to permit Lender to maintain its yield as if such tax had not been imposed. If Borrower shall be prohibited from executing the above-referenced modifications, Lender may, in Lender's sole discretion, declare the principal of all amounts disbursed and owing under the Note, this Agreement, and the other Loan Documents (including all obligations secured by the Loan Documents) and all other indebtedness of Borrower to Lender, together with interest thereon, to be forthwith due and payable, regardless of any other specified maturity or due date.

000367

7.5     <u>POWER OF ATTORNEY</u> - Borrower does hereby irrevocably appoint, designate, empower, and authorize Lender, as Borrower's agent, under power of attorney, coupled with an interest, to sign and file for record any financing statements, notices of completion, notices of cessation of labor, or any other notice or written document that it may deem necessary to file or record to protect Lender's interests; provided, however, that Lender shall not exercise the foregoing power other than upon an Event of Default hereunder.

7.6     <u>NONRESPONSIBILITY</u> - Lender shall in no way be liable for any acts or omissions of Borrower or Borrower's agents or employees.

7.7     <u>TIME IS OF THE ESSENCE</u> - Time is of the essence of this Agreement and of each and every provision hereof.

7.8     <u>NON-WAIVER</u> - The waiver by Lender of any breach or breaches hereof shall not be deemed, nor shall the same constitute, a waiver of any subsequent breach or breaches.

7.9     <u>BINDING EFFECT; ASSIGNMENT</u> - This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that Borrower may not assign its rights hereunder or any interest herein without the prior written consent of Lender. Lender shall have the right to assign its rights under this Agreement and to grant participations in the Loan to others, but all waivers or abridgements of Borrower's obligations that may be granted from time to time by Lender shall be binding upon such assignees or participants. Borrower shall, promptly upon demand, provide Lender or any such purchaser or participant, one or more written statements confirming Borrower's indebtedness to Lender and all obligations in connection with the Loan, including the existence of any default thereunder.

7.10    <u>EXECUTION IN COUNTERPARTS</u> - This Agreement and any other Loan Documents, except the Note, the Deed of Trust and the Assignment of Leases, may be executed in any number of counterparts, and any party hereto or thereto may execute any counterpart, each of which, when executed and delivered, will be deemed to be an original, and all of which counterparts of this Agreement or any other Loan Document, as the case may be, taken together will be deemed to be but one and the same instrument. The execution of this Agreement or any other Loan Document by any party or parties hereto or thereto will not become effective until counterparts hereof or thereof, as the case may be, have been executed by all the parties hereto or thereto.

7.11    <u>INTEGRATION; AMENDMENTS; CONSENTS</u> - This Agreement, together with the documents referred to herein constitutes the entire agreement of the parties touching upon the subject matter hereof, and supersedes any prior negotiations or agreements on such subject matter. No amendment, modification, or supplement of any provision of this Agreement or any of the other Loan Documents shall be effective unless in writing, signed by Lender and Borrower; and no waiver of any of Borrower's obligations under this Agreement or any of the other Loan Documents or consent to any

departure by Borrower therefrom shall be effective unless in writing, signed by Lender, and then only in the specific instance and for the specific purpose given.

7.12   NEUTRAL INTERPRETATION - This Agreement is the product of the negotiations between the parties, and in the interpretation and/or enforcement hereof is not to be interpreted more strongly in favor of one party or the other.

7.13   COSTS, EXPENSES, AND TAXES - Borrower shall pay to Lender, on demand:

7.13.1  All attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery, and administration of this Agreement and any other Loan Document and any matter related thereto, including, but not limited to, the appraisal of the Property;

7.13.2  The costs and expenses of Lender in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the fees and out-of-pocket expenses of any legal counsel, independent public accountants, and other outside experts retained by Lender and including all costs and expenses of enforcing any judgment or prosecuting any appeal of any judgment, order or award arising out of or in any way related to the Loan, this Agreement, or the Loan Documents; and

7.13.3  All costs, expenses, fees, premiums, and other charges relating to or arising from the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including, but not limited to, recording fees, filing fees, credit report fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

Except as otherwise provided in the Environmental Indemnity, all sums paid or expended by Lender under the terms of this Agreement shall be considered to be, and shall be, a part of the Loan. All such sums, together with all amounts to be paid by Borrower pursuant to this Agreement, shall bear interest commencing thirty (30) days after written demand for payment by Lender to Borrower at the rate provided in the Note, shall be secured by the Loan Documents, and shall be immediately due and payable by Borrower within said thirty (30) day period.

7.14   SURVIVAL OF REPRESENTATIONS AND WARRANTIES - All representations and warranties of Borrower contained herein or in any and all other Loan Documents shall survive the making of the Loan and the execution and delivery of the Note, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender. For the purpose of this Agreement, all statements contained in any certificate, agreement, Financial Statement, appraisal or other writing delivered by or on behalf of Borrower pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower contained herein or in the other Loan Documents, as the case may be.

7.15    NOTICES - Except as provided in the Deed of Trust, all notices, requests, demands, directions, and other communications provided for hereunder and under any other Loan Document (a "Notice") must be in writing and must be mailed, delivered, or sent by facsimile transmission to the appropriate party at its respective address set forth below or, as to any party, at any other address as may be designated by it in a written notice sent to the other parties in accordance with this Section 7.14. Any notice given by facsimile transmission must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail it will be effective three (3) calendar days after being deposited in the mails with first-class or airmail postage prepaid; if given by facsimile transmission, when sent; or if given by personal delivery, when delivered.

7.16    FURTHER ASSURANCES - Borrower shall, at its sole expense and without expense to Lender, do, execute, and deliver such further acts and documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended, now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest.

7.17    GOVERNING LAW - The Loan shall be deemed to have been made in California, and the Loan Documents shall be governed by and construed and enforced in accordance with the Laws of the State of California.

7.18    SEVERABILITY OF PROVISIONS - Any provision in any Loan Document that is held to be inoperative, unenforceable, or invalid shall be inoperative, unenforceable, or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

7.19    JOINT AND SEVERAL OBLIGATIONS - If this Agreement is executed by more than one Person as Borrower, the obligations of each of such Persons hereunder shall be joint and several obligations.

7.20    CONSTRUCTION - Whenever the context of this Agreement requires, the singular shall include the plural and the masculine gender shall include the feminine and/or neuter.

7.21    HEADINGS - Article and section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

7.22    AGENCY – Nothing in this Agreement shall be construed to constitute the creation of a partnership or joint venture between Lender and Borrower. Lender is not an agent or representative of Borrower.

7.23    USA PATRIOT ACT NOTICE – Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also

ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

7.24    APPLICATION OF PAYMENTS AND WAIVER OF MARSHALLING RIGHTS - Upon such terms and at such times as Lender considers best and with or without notice to Borrower, and without affecting Borrower's continuing liability under this Agreement or any other Loan Documents, Borrower hereby authorizes Lender to  (i) apply any sums received from Borrower, Guarantor, or any other endorser or cosigner, or from the sale or collection of any collateral or its proceeds, to any indebtedness whatsoever under the Loan, in any order and regardless of whether or not such indebtedness is secured by the Deed of Trust, secured by any other collateral, or is otherwise due and payable, (ii) apply any sums received from Borrower or any Guarantor, or from the sale of the Property, to all or any portion of the obligations under the Loan, in any order, regardless of whether said obligations are due and payable, and (iii) exercise any right or remedy Lender may have with respect to any obligations under the Loan Documents or any collateral securing any such obligations, the Deed of Trust or any Guaranty, including bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any collateral or any obligations.  In addition, Borrower hereby waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which the Property will be sold, or how the proceeds of any such sale will be allocated, in the event of any sale under the Deed of Trust, including, but not limited to, any and all rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time.

7.25    SALE OF LOAN DOCUMENTS AND PARTICIPATIONS – Lender shall have the right to do any or all of the following at any time without prior notice to or the consent of Borrower or any other Person: (a) to sell, transfer, pledge or assign any or all of the Loan Documents, or any or all servicing rights with respect thereto; and (b) to sell, transfer, pledge or assign participations in the Loan Documents.  Lender is authorized to forward or disclose to each purchaser, transferee, assignee, servicer, participant, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Loan and to Borrower as Lender determines to be necessary or desirable. Upon Lender's request, Borrower shall reasonably cooperate with Lender in connection with any of the transactions contemplated by this Section.

7.26    NOTICE OF RIGHT TO COPY OF APPRAISAL REPORT – California Law provides that applicants on loans secured by real estate are entitled to receive a copy of an appraisal report which has been prepared as a result of a property appraisal.  If Borrower qualifies and pays for the appraisal, it may request a copy of the appraisal report by writing to the Lender.  Such written request must be received by Lender no later than 90 days after (a) Lender provides notice of the action taken on Borrower's loan application, including a notice of incompleteness, or (b) in the case of a withdrawn application, after Borrower withdraws its application.  Lender's transmittal of a copy of the appraisal will be conditioned upon Borrower's payment of the cost of the appraisal.

3265287.4                                              39

7.27    NO JOINT VENTURE, MANAGEMENT AND CONTROL - Notwithstanding any provision of this Agreement, (i) Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower and Guarantor, or either of them, or any other person; (ii) Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower and Guarantor, or either of them; and (iii) Borrower does not have any claims, causes of action or defenses to its obligations to Lender based on any allegations of management or control exercised by Lender.  Borrower acknowledges and agrees that Lender does not manage or control it in any way.

7.28    WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.  NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, EACH PARTY HERETO HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.  EACH PARTY ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN.  THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME

KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

[Borrower's initials to follow on next page.]

000373

Borrower has initialed this Section 7.28 to further indicate its awareness and acceptance of each and every provision hereof.

_____
Borrower's Initials

[Signature page to follow.]

000374

IN WITNESS WHEREOF, Borrower and Lender have hereunto caused this Agreement to be executed as of the date first above written.

**BORROWER:**

20715 AVALON, LLC,
a California limited liability company

By: _____
Name: Robert Douglas Spiro, Jr.
Its: Manager


Address:

3951 Medford Street
Los Angeles, California 90063


[Lender's signature on next page]

000375

**LENDER**:

BANK LEUMI USA

By: _Elna R Buiton_
Name: _Elsa R Bourton_
Its: _SVP / Group Head_

By: _____
Name: _Tony Um_
Its: _VP / Credit Officer_

Address:

555 West 5th Street, Suite 3300
Los Angeles, California 90013
Attn: Kristine Arutunyan

# EXHIBIT "A"
# LEGAL DESCRIPTION OF PROPERTY

The Land referred to herein below is situated in the City of Carson, County of Los Angeles, State of California, and is described as follows:

PARCEL A:

PARCEL 4 IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON PARCEL MAP NO. 2538, FILED IN BOOK 38, PAGE 5 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D-2250, PAGE 752, OFFICIAL RECORDS.

PARCEL B:

THAT PORTION OF PARCEL 3, PARCEL MAP NO. 2538, IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 38, PAGE 5 OF PARCEL MAPS RECORDS OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID PARCEL 3; THENCE ALONG THE NORTHWESTERLY LINE OF SAID PARCEL 3 NORTH 72° 14' 30" EAST 67.34 FEET; THENCE SOUTH 22° 57' 12" EAST 122.91 FEET TO THE SOUTHEASTERLY LINE OF SAID PARCEL 3; THENCE ALONG THE SAID SOUTHEASTERLY LINE SOUTH 77° 49' 26" WEST 72.28 FEET TO THE SOUTHWESTERLY LINE OF SAID PARCEL 3, BEING ALSO THE NORTHEASTERLY LINE OF PARCEL 2 OF THE CITY OF LOS ANGELES DEPARTMENT OF WATER AND POWER RIGHT OF WAY RECORDED IN BOOK 10241, PAGE 397, RECORDS OF LOS ANGELES COUNTY; THENCE ALONG SAID SOUTHWESTERLY LINE OF PARCEL 3 NORTH 22° 57' 12" WEST 102.49 FEET AND NORTH 6° 08' 14" WEST 13.59 FEET OF THE POINT OF BEGINNING.

EXCEPT 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D-2250, PAGE 752, OFFICIAL RECORDS.

000377

# EXHIBIT N

# PROMISSORY NOTE

$7,150,000.00          LOS ANGELES, CALIFORNIA          April 3, 2019

FOR VALUE RECEIVED, 20715 AVALON, LLC, a California limited liability company ("Borrower"), promises to pay to BANK LEUMI USA ("Lender"), or its order, at its office located at 555 West 5th Street, Suite 3300, Los Angeles, California 90013, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Seven Million One Hundred Fifty Thousand and No/100 Dollars ($7,150,000.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

**LOAN AGREEMENT.**  This Note is the "Note #1" as defined in that certain Loan Agreement (the "Loan Agreement") of even date herewith, entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof.  All terms not defined herein shall have the same meaning as in the Loan Agreement.  In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

**INTEREST RATE.**

(a)      Advances outstanding under this Note shall bear interest until paid in full at a fluctuating rate per annum equal to the following ("**Note Rate**"): one and three-quarters of one percent (1.75%) above the LIBO Rate (Reserve Adjusted) (as hereinafter defined) in effect on the first day of the applicable Interest Period (as hereinafter defined); provided, however, that in no event shall the interest rate applicable to advances hereunder be less than one and three-quarters of one percent (1.75%) per annum.  Interest shall be calculated on the basis of a year being three hundred sixty (360) days and actual days elapsed.

(b)      The LIBO Rate (Reserve Adjusted) shall be adjusted with respect to any advance, as applicable, on and as of the effective date of any change in the LIBOR Reserve Percentage (as hereinafter defined).  Upon Borrower's request, Lender shall give notice to Borrower of the LIBO Rate (Reserve Adjusted) as determined or adjusted for each Interest Period in accordance herewith, which determination or adjustment shall be conclusive absent manifest error.

(c)      In the event Lender shall have determined that by reason of circumstances affecting the LIBO Rate (Reserve Adjusted) adequate and reasonable means do not exist for ascertaining the LIBO Rate (Reserve Adjusted) for any Interest Period with respect to any advance hereunder, the per annum rate of interest (the "**Alternate Rate**") applicable to such advance during such Interest Period shall be equal to one and one-quarter of one percent (1.25%) below the Wall Street Journal Prime Rate (as hereinafter defined), and

000379

the Alternate Rate shall become the Note Rate, subject to the minimum rate of interest specified in the first paragraph of this section; provided, however, that in no event shall the interest rate applicable to advances hereunder be less than one and three-quarters of one percent (1.75%) per annum. Interest shall be calculated on the basis of a year being three hundred sixty (360) days and actual days elapsed.

(d)    If, after the date of this Note, Lender shall determine (which determination shall be final and conclusive) that any Change in Law (as defined below) shall make it impossible or unlawful for Lender to make, fund or maintain LIBO Rate (Reserve Adjusted)-based advances, then Lender shall notify Borrower. From the date of such notice until Lender notifies Borrower that the circumstances giving rise to such determination no longer apply, then (i) any obligation of Lender contained herein or in any agreement of Lender to make available LIBO Rate (Reserve Adjusted)-based advances shall immediately be suspended, and (ii) any such LIBO Rate (Reserve Adjusted)-based advances then outstanding shall instead bear interest, at Lender's option, at the Alternate Rate, such change taking effect either (x) on the last day of the then current Interest Period if Lender may lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances to such day, or (y) immediately if Lender may not lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances. Upon the occurrence of any of the foregoing events, Borrower shall pay to Lender immediately upon demand such amounts as may be necessary to compensate Lender for any fines, fees, charges, penalties or other costs incurred or payable by Lender as a result thereof and which are attributable to any LIBO Rate (Reserve Adjusted)-based advances made available to Borrower hereunder, and any reasonable allocation made by Lender among its operations shall be conclusive and binding upon Borrower.

(e)    For purposes of this section entitled "**INTEREST RATE**" only, the following terms shall have the following meanings:

(i)    "**Business Day**" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in New York, New York and on which dealings in U.S. dollar deposits are carried on in London, England.

(ii)    "**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by Lender for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities,

in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

(iii)    "**Interest Period**" shall mean, as to any advance hereunder, the period of one (1) month, with the initial Interest Period commencing on the date of the first disbursement of an advance hereunder, and each subsequent Interest Period commencing on the last day of the immediately preceding Interest Period; provided that (i) if an Interest Period would end on a day which is not a Business Day, such Interest Period shall end on the next succeeding Business Day unless such day falls in the next succeeding calendar month in which case the Interest Period shall end on the next preceding Business Day, (ii) the final Interest Period shall commence on the last day of the immediately preceding Interest Period, and end on the Maturity Date, and (iii) any Interest Period that begins on the last Business Day of a calendar month (or a day for which there is no numerically corresponding day in the last calendar month of such Interest Period) shall end on the last Business Day of the last calendar month of such Interest Period.

(iv)    "**LIBO Rate (Reserve Adjusted)**" shall mean, with respect to any advance relative to any Interest Period the interest rate per annum determined by Lender by *dividing* (a) the rate quoted by the ICE Benchmark Administration Limited as its "LIBOR" rate for U.S. dollar deposits at or about 11:00 a.m., London time, on the second Business Day prior to the commencement of the Interest Period (or, if Lender adopts generally in its business a different rate quoting system or service for obtaining the rate of interest commonly known as "LIBOR" for U.S. dollar deposits, then upon giving prompt notice thereof to Borrower, such alternative rate quoting system or service shall be utilized for determining "LIBOR" in lieu of the rate quoted by the ICE Benchmark Administration Limited); provided, however, that if such rate cannot be determined by Lender as provided in the preceding clause (a) for any reason, as determined by Lender in its reasonable judgment, then a comparable replacement rate determined by Lender at such time (which determination shall be conclusive absent manifest error) by (b) a number equal to 1.00 *minus* the LIBOR Reserve Percentage.

(v)    "**LIBOR Reserve Percentage**" shall mean the percentage (expressed as a decimal, rounded upward to the next 1/100th of 1%) in effect on such day (whether or not applicable to Lender) under regulations issued from time to time by the Federal Reserve System Board for determining the maximum reserve requirement (including any emergency, supplemental or other marginal reserve requirement) with respect to Eurocurrency funding (currently referred to as "Eurocurrency Liabilities" in Regulation D of the Federal Reserve System Board).

**PRINCIPAL AND INTEREST PAYMENTS**.    Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on May 5, 2019, and shall continue to be due and payable, in arrears, on the same day of each and every calendar month thereafter until the Maturity Date (as hereinafter defined).

In the event the Maturity Date is extended pursuant to Section 3.5 of the Loan Agreement, commencing on May 5, 2021, and continuing on the same day of each and every calendar month thereafter until the Maturity Date, Borrower shall pay to Lender, in addition to the foregoing payments of interest, a monthly installment payment of principal in an amount equal to the then outstanding principal balance under this Note, amortized over a three hundred (300) month period calculated from March 31, 2021, calculated in accordance with Lender's then policies and practices.

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Deed of Trust (as defined in the Loan Agreement), the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

**APPLICATION OF PAYMENTS**.  All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

    a.    First.  To pay any and all interest due, owing and accrued;

    b.    Second.  To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Deed of Trust, the Loan Agreement, and the other Loan Documents; and

    c.    Third.  To pay the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower.  The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE**.  On March 31, 2021 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice.  In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined).  The Maturity Date may be extended pursuant to Section 3.5 of the Loan Agreement.

**UNPAID INTEREST, CHARGES AND COSTS**.  Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

3265288.3 | 007955-0226                4

**HOLIDAY.**  Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.**  All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country.  If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

**DEFAULT.**  Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

      (i)      Lender does not receive a payment in the amount and within the time and manner as set forth herein; or

      (ii)     There shall be an Event of Default under the Loan Agreement; or

      (iii)    There shall be a default under any of the other Loan Documents.

      Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE.**  From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to six percent (6%) over the Note Rate.

**PREPAYMENT.**  Borrower shall have the right at any time following five (5) calendar days prior written notice to Lender, to prepay all or any portion of the principal balance outstanding under this Note, without any prepayment premium or prepayment penalty;

provided, however, that Borrower agrees to indemnify Lender against any liabilities, losses or expenses (including, without limitation, loss of margin, any loss or expense sustained or incurred in liquidating or employing deposits from third parties, and any loss or expense incurred in connection with funds acquired to effect, fund or maintain any advance (or any part thereof) bearing interest based on the LIBO Rate (Reserve Adjusted)) which Lender sustains or incurs as a consequence of either (i) Borrower's failure to make a payment on the due date thereof, (ii) Borrower's revocation (expressly, by later inconsistent notices or otherwise) in whole or in part of any notice given to Lender to request, convert, renew or prepay any advance bearing interest based on the LIBO Rate (Reserve Adjusted), or (iii) Borrower's payment or prepayment (whether voluntary, after acceleration of the maturity of this Note or otherwise) or conversion of any advance bearing interest based on the LIBO Rate (Reserve Adjusted) on a day other than the last day of the applicable Interest Period. A notice as to any amounts payable pursuant to this paragraph given to Borrower by Lender shall, in the absence of manifest error, be conclusive and shall be payable upon demand. Borrower's indemnification obligations hereunder shall survive the payment in full of the advances and all other amounts payable hereunder.

**LATE CHARGES**. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY AND ACCELERATION**. This Note is secured by, among other things, the Property, pursuant to the Deed of Trust. The Deed of Trust contains, among other provisions, a provision for the immediate acceleration of this Note upon the occurrence of

any Default, any event of default under the Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property. Reference is made to the Deed of Trust for the specific provisions thereof.

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust or any other Loan Documents, including, but not limited to, any and all attorneys' fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS.** Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against

000385

whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**USA PATRIOT ACT NOTICE.** Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

**BORROWER:**

20715 AVALON, LLC,
a California limited liability company

By: _____
Name: Robert Douglas Spiro, Jr.
Its: Manager

# PROMISSORY NOTE

$1,700,000.00             LOS ANGELES, CALIFORNIA             April 3, 2019

FOR VALUE RECEIVED, 20715 AVALON, LLC, a California limited liability company ("Borrower"), promises to pay to BANK LEUMI USA ("Lender"), or its order, at its office located at 555 West 5th Street, Suite 3300, Los Angeles, California 90013, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of One Million Seven Hundred Thousand and No/100 Dollars ($1,700,000.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

**LOAN AGREEMENT.**  This Note is the "Note #2" as defined in that certain Loan Agreement (the "Loan Agreement") of even date herewith, entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof.  All terms not defined herein shall have the same meaning as in the Loan Agreement.  In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

**INTEREST RATE.**

(a)     Advances outstanding under this Note shall bear interest until paid in full at a fluctuating rate per annum equal to the following ("**Note Rate**"): one and three-quarters of one percent (1.75%) above the LIBO Rate (Reserve Adjusted) (as hereinafter defined) in effect on the first day of the applicable Interest Period (as hereinafter defined); provided, however, that in no event shall the interest rate applicable to advances hereunder be less than one and three-quarters of one percent (1.75%) per annum.  Interest shall be calculated on the basis of a year being three hundred sixty (360) days and actual days elapsed.

(b)     The LIBO Rate (Reserve Adjusted) shall be adjusted with respect to any advance, as applicable, on and as of the effective date of any change in the LIBOR Reserve Percentage (as hereinafter defined).  Upon Borrower's request, Lender shall give notice to Borrower of the LIBO Rate (Reserve Adjusted) as determined or adjusted for each Interest Period in accordance herewith, which determination or adjustment shall be conclusive absent manifest error.

(c)     In the event Lender shall have determined that by reason of circumstances affecting the LIBO Rate (Reserve Adjusted) adequate and reasonable means do not exist for ascertaining the LIBO Rate (Reserve Adjusted) for any Interest Period with respect to any advance hereunder, the per annum rate of interest (the "**Alternate Rate**") applicable to such advance during such Interest Period shall be equal to one and one-quarter of one percent (1.25%) below the Wall Street Journal Prime Rate (as hereinafter defined), and

000388

the Alternate Rate shall become the Note Rate, subject to the minimum rate of interest specified in the first paragraph of this section; provided, however, that in no event shall the interest rate applicable to advances hereunder be less than one and three-quarters of one percent (1.75%) per annum. Interest shall be calculated on the basis of a year being three hundred sixty (360) days and actual days elapsed.

(d)    If, after the date of this Note, Lender shall determine (which determination shall be final and conclusive) that any Change in Law (as defined below) shall make it impossible or unlawful for Lender to make, fund or maintain LIBO Rate (Reserve Adjusted)-based advances, then Lender shall notify Borrower. From the date of such notice until Lender notifies Borrower that the circumstances giving rise to such determination no longer apply, then (i) any obligation of Lender contained herein or in any agreement of Lender to make available LIBO Rate (Reserve Adjusted)-based advances shall immediately be suspended, and (ii) any such LIBO Rate (Reserve Adjusted)-based advances then outstanding shall instead bear interest, at Lender's option, at the Alternate Rate, such change taking effect either (x) on the last day of the then current Interest Period if Lender may lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances to such day, or (y) immediately if Lender may not lawfully continue to maintain LIBO Rate (Reserve Adjusted)-based advances. Upon the occurrence of any of the foregoing events, Borrower shall pay to Lender immediately upon demand such amounts as may be necessary to compensate Lender for any fines, fees, charges, penalties or other costs incurred or payable by Lender as a result thereof and which are attributable to any LIBO Rate (Reserve Adjusted)-based advances made available to Borrower hereunder, and any reasonable allocation made by Lender among its operations shall be conclusive and binding upon Borrower.

(e)    For purposes of this section entitled "**INTEREST RATE**" only, the following terms shall have the following meanings:

(i)    "**Business Day**" shall mean any day other than a Saturday or Sunday or a legal holiday on which commercial banks are authorized or required by law to be closed for business in New York, New York and on which dealings in U.S. dollar deposits are carried on in London, England.

(ii)    "**Change in Law**" means the occurrence, after the date of this Note, of any of the following: (a) the adoption or taking effect of any law, rule, regulation or treaty, (b) any change in any law, rule, regulation or treaty or in the administration, interpretation, implementation or application thereof by any governmental authority or (c) the making or issuance of any request, rule, guideline or directive (whether or not having the force of law) by any governmental authority; provided that notwithstanding anything herein to the contrary, (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act and all requests, rules, guidelines or directives thereunder or issued in connection therewith and (y) all requests, rules, guidelines or directives promulgated by Lender for International Settlements, the Basel Committee on Banking Supervision (or any successor or similar authority) or the United States or foreign regulatory authorities,

in each case pursuant to Basel III, shall in each case be deemed to be a "Change in Law," regardless of the date enacted, adopted or issued.

(iii)    "**Interest Period**" shall mean, as to any advance hereunder, the period of one (1) month, with the initial Interest Period commencing on the date of the first disbursement of an advance hereunder, and each subsequent Interest Period commencing on the last day of the immediately preceding Interest Period; provided that (i) if an Interest Period would end on a day which is not a Business Day, such Interest Period shall end on the next succeeding Business Day unless such day falls in the next succeeding calendar month in which case the Interest Period shall end on the next preceding Business Day, (ii) the final Interest Period shall commence on the last day of the immediately preceding Interest Period, and end on the Maturity Date, and (iii) any Interest Period that begins on the last Business Day of a calendar month (or a day for which there is no numerically corresponding day in the last calendar month of such Interest Period) shall end on the last Business Day of the last calendar month of such Interest Period.

(iv)    "**LIBO Rate (Reserve Adjusted)**" shall mean, with respect to any advance relative to any Interest Period the interest rate per annum determined by Lender by *dividing* (a) the rate quoted by the ICE Benchmark Administration Limited as its "LIBOR" rate for U.S. dollar deposits at or about 11:00 a.m., London time, on the second Business Day prior to the commencement of the Interest Period (or, if Lender adopts generally in its business a different rate quoting system or service for obtaining the rate of interest commonly known as "LIBOR" for U.S. dollar deposits, then upon giving prompt notice thereof to Borrower, such alternative rate quoting system or service shall be utilized for determining "LIBOR" in lieu of the rate quoted by the ICE Benchmark Administration Limited); provided, however, that if such rate cannot be determined by Lender as provided in the preceding clause (a) for any reason, as determined by Lender in its reasonable judgment, then a comparable replacement rate determined by Lender at such time (which determination shall be conclusive absent manifest error) by (b) a number equal to 1.00 *minus* the LIBOR Reserve Percentage.

(v)    "**LIBOR Reserve Percentage**" shall mean the percentage (expressed as a decimal, rounded upward to the next 1/100th of 1%) in effect on such day (whether or not applicable to Lender) under regulations issued from time to time by the Federal Reserve System Board for determining the maximum reserve requirement (including any emergency, supplemental or other marginal reserve requirement) with respect to Eurocurrency funding (currently referred to as "Eurocurrency Liabilities" in Regulation D of the Federal Reserve System Board).

**PRINCIPAL AND INTEREST PAYMENTS**.   Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on May 5, 2019, and shall continue to be due and payable, in arrears, on the same day of each and every calendar month thereafter until the Maturity Date (as hereinafter defined).

In the event the Maturity Date is extended pursuant to Section 3.5 of the Loan Agreement, commencing on May 5, 2021, and continuing on the same day of each and every calendar month thereafter until the Maturity Date, Borrower shall pay to Lender, in addition to the foregoing payments of interest, a monthly installment payment of principal in an amount equal to the then outstanding principal balance under this Note, amortized over a three hundred (300) month period calculated from March 31, 2021, calculated in accordance with Lender's then policies and practices.

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Deed of Trust (as defined in the Loan Agreement), the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

**APPLICATION OF PAYMENTS**.  All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

    a.    First.  To pay any and all interest due, owing and accrued;

    b.    Second.  To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Deed of Trust, the Loan Agreement, and the other Loan Documents; and

    c.    Third.  To pay the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower.  The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE**.  On March 31, 2021 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice.  In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined).  The Maturity Date may be extended pursuant to Section 3.5 of the Loan Agreement.

**UNPAID INTEREST, CHARGES AND COSTS**.  Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

**HOLIDAY.**  Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.**  All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country.  If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

**DEFAULT.**  Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

> (i)     Lender does not receive a payment in the amount and within the time and manner as set forth herein; or

> (ii)    There shall be an Event of Default under the Loan Agreement; or

> (iii)   There shall be a default under any of the other Loan Documents.

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE.**  From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to six percent (6%) over the Note Rate.

**PREPAYMENT.**  Borrower shall have the right at any time following five (5) calendar days prior written notice to Lender, to prepay all or any portion of the principal balance outstanding under this Note, without any prepayment premium or prepayment penalty;

provided, however, that Borrower agrees to indemnify Lender against any liabilities, losses or expenses (including, without limitation, loss of margin, any loss or expense sustained or incurred in liquidating or employing deposits from third parties, and any loss or expense incurred in connection with funds acquired to effect, fund or maintain any advance (or any part thereof) bearing interest based on the LIBO Rate (Reserve Adjusted)) which Lender sustains or incurs as a consequence of either (i) Borrower's failure to make a payment on the due date thereof, (ii) Borrower's revocation (expressly, by later inconsistent notices or otherwise) in whole or in part of any notice given to Lender to request, convert, renew or prepay any advance bearing interest based on the LIBO Rate (Reserve Adjusted), or (iii) Borrower's payment or prepayment (whether voluntary, after acceleration of the maturity of this Note or otherwise) or conversion of any advance bearing interest based on the LIBO Rate (Reserve Adjusted) on a day other than the last day of the applicable Interest Period.  A notice as to any amounts payable pursuant to this paragraph given to Borrower by Lender shall, in the absence of manifest error, be conclusive and shall be payable upon demand. Borrower's indemnification obligations hereunder shall survive the payment in full of the advances and all other amounts payable hereunder.

**LATE CHARGES**.  Time is of the essence for all payments and other obligations due under this Note.  Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment.  Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and  loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower  agrees that five percent (5%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor.  Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%)  of the amount of the delinquent payment (in addition to interest at the Default Rate).  The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder.  Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise.  The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of  Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY AND ACCELERATION**.  This Note is secured by, among other things, the Property, pursuant to the Deed of Trust.  The Deed of Trust contains, among other provisions, a provision for the immediate acceleration of this Note upon the occurrence of

000393

any Default, any event of default under the Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property. Reference is made to the Deed of Trust for the specific provisions thereof.

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust or any other Loan Documents, including, but not limited to, any and all attorneys' fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS.** Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against

whom enforcement is sought for any such action.  This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.**  Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation.  In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several.  Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**USA PATRIOT ACT NOTICE**. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan.  Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information.  Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

**BORROWER:**

20715 AVALON, LLC,
a California limited liability company

By: _____
Name: Robert Douglas Spiro, Jr.
Its: Manager

000396

# EXHIBIT O



**This page is part of your document - DO NOT DISCARD**



## 20190321092



**Pages:**
**0027**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/11/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 142.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 367.00 |



**L E A D S H E E T**



201904110110043

**00016479738**



009747583

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E442318



RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE CO.
NATIONAL COMMERCIAL SERVICES

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

BANK LEUMI USA
555 West 5th Street, Suite 3300
Los Angeles, California 90013
Attention: Thomas Belli

Assessor's Parcel No.: 7339-018-004, 040

NCS-935414

## DEED OF TRUST, ASSIGNMENT OF
## RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective on the 3rd day of April 2019, by 20715 AVALON, LLC, a California limited liability company ("Trustor"), whose address is 3951 Medford Street, Los Angeles, California 90063, to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee ("Trustee"), for the benefit of BANK LEUMI USA, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]          Exhibit "B"

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

**LEASES ARE UNRECORDED**

3266401.2 / 007955-0226                          1

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE CO.
NATIONAL COMMERCIAL SERVICES

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

BANK LEUMI USA
555 West 5th Street, Suite 3300
Los Angeles, California  90013
Attention:  Thomas Belli

Assessor's Parcel No.: 7339-018-004, 040

NCS-935414

## DEED OF TRUST, ASSIGNMENT OF
## RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective on the 3rd day of April 2019, by 20715 AVALON, LLC, a California limited liability company ("Trustor"), whose address is 3951 Medford Street, Los Angeles, California 90063, to FIRST AMERICAN TITLE INSURANCE COMPANY, as Trustee ("Trustee"), for the benefit of BANK LEUMI USA, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.  TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]    Exhibit "B"

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

**LEASES ARE UNRECORDED**

3266401.2 | 007955-0226                    1

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH: Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH:  All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection

therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined) ;

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings,

equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

## FOR THE PURPOSE OF SECURING:

(1)    Payment of the sum of Eight Million Eight Hundred Fifty Thousand and No/100 Dollars ($8,850,000.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain (i) Promissory Note of even date herewith executed by Trustor in the maximum principal amount of $7,150,000.00, and (ii) Promissory Note of even date herewith executed by Trustor in the maximum principal amount of $1,700,000.00 (individually and collectively, the "Note"), each payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms);

(2)    Performance of each and every term, covenant and condition of that certain Loan Agreement of even date herewith by and between Trustor and Lender, and all modifications, renewals or extensions thereof ("Agreement");

(3)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust);

(5)    Trustor's performance of each agreement in this Deed of Trust; and

(6)    Payment and performance of all obligations of Trustor under any Swap Contract with respect to which there is a writing evidencing the parties' agreement that said Swap Contract shall be secured by this Deed of Trust. "Swap Contract" means any document, instrument or agreement with Lender, now existing or entered into in the future, relating to an interest rate swap transaction, forward rate transaction, interest rate cap, floor or collar transaction, any similar transaction, any option to enter into any of the foregoing, and any combination of the foregoing, which agreement may be oral or in writing, including, without limitation, any master agreement relating to or governing any

or all of the foregoing and any related schedule or confirmation, each as amended from time to time.

Notwithstanding any provision to the contrary, the obligations secured hereby shall not include obligations arising under any Swap Contract to the extent that the grant of a lien hereunder to secure such Swap Contract would violate the Commodity Exchange Act by virtue of the Trustor's failure to constitute an "eligible contract participant" as defined in the Commodity Exchange Act at the time such grant of such lien becomes effective with respect to such Swap Contract. "Commodity Exchange Act" means 7 U.S.C. Section 1 et seq., as amended from time to time, any successor statute, and any rules, regulations and orders applicable thereto.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1)    PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple subject to the Permitted Encumbrances (as defined in the Agreement). Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

(2)    PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS: The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least ten (10) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

Following an event of default under this Deed of Trust described below in paragraph (14), or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly

installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums.  In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender.  Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose.  If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2).  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.  Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby.  Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of Trustor secured hereby in such manner and order as Lender may elect.  The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would

constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

(3)    TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to maturity any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

(4)    TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks as shall from time to time be required by Lender as necessary to protect the security interest of Lender in the Property. Notwithstanding the foregoing, Lender shall not have the right to require Trustor to maintain earthquake insurance. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content reasonably satisfactory to Lender. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in no event less than one (1) year's gross rental income and other revenues from the Property, and (iii) comprehensive general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time reasonably required by Lender. (b) If such insurance, together with written evidence of

the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5)    INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES:  (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and shall be applied as set forth in section (c) of this paragraph (5). (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5).  Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding.  Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) if a default has occurred hereunder or if Lender reasonably determines its security hereunder has been impaired be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property subject to Trustor's satisfaction of all the conditions set forth below in paragraph (5.1); or (iii) subject to the limitation of paragraph 5(c)(i), be divided in any manner among any such application, use or release.  No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

000407

(5.1)    Trustor shall give prompt written notice to Lender of any casualty to the Property, whether or not such casualty is covered by insurance. In the event of any damage to or destruction of the Improvements, and so long as there is no continuing default hereunder, Lender may release such proceeds to Trustor to be used for the costs of reconstruction of the Improvements if all of the following conditions are satisfied within sixty (60) days from the date of the damage or destruction:

(a)    Trustor provides evidence satisfactory to Lender in Lender's reasonable opinion and judgment that after the reconstruction is completed, the value of the Property as reasonably determined by Lender, will be not less than the value of the Property set forth in the appraisal on which Lender based its decision to make the Loan;

(b)    In Lender's reasonable judgment, such insurance proceeds are sufficient to pay all costs of reconstruction of the Improvements, including the making of payments required under the Note; or if such proceeds are not sufficient, Trustor deposits additional funds with Lender sufficient to pay such additional costs of reconstructing the Improvements;

(c)    Lender reasonably determines that (i) the damage or destruction can be repaired or restored and the Property as repaired or restored will comply with all applicable laws and (ii) the reconstruction of the Improvements can be completed in a timely manner;

(d)    Trustor has delivered to Lender final plans and specifications for the repair or restoration of the Property which shall have received all governmental approvals and a construction contract for the work of reconstruction, both in form and content reasonably satisfactory to Lender and with a contractor reasonably satisfactory to Lender; and

(e)    Lender has received and approved (i) a budget of all costs of repair or restoration and (ii) a construction schedule for such repair or restoration.

Trustor shall promptly and diligently restore the Improvements to the equivalent of its condition immediately prior to the casualty or to such other improved condition as is necessary to comply with the requirements of this Deed of Trust and/or any applicable governmental entity. Disbursements of such insurance proceeds shall be in accordance with Lender's customary construction loan disbursement procedures. Any proceeds held by Lender upon Trustor's failure to satisfy the conditions to disbursement within the time allowed above or those proceeds not required to reconstruct the Improvements shall be applied to the obligations outstanding under the Note.

(6)    MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a)    Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value,

each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in at least the condition as existed at the time of the making of the Loan, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)     Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, Fixtures or Personalty comprising the Property without the prior written consent of Lender. No material changes are to be made in any plans and/or specifications as approved by Lender without Lender's prior written consent. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby. Lender's consent as required by this paragraph 6(b) shall not be unreasonably withheld, conditioned or delayed.

(c)     Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents (based upon the Knowledge of Borrower (as defined in the Agreement)) and covenants to Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in the normal course of business by Trustor or any tenants upon the Property, including, but not limited to ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, and in each case in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that, except for Permitted Toxic Materials, Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender,

Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)     If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e)     Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be reasonably requested by Lender, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7)     LEGAL ACTIONS AND PAYMENT OF RELATED COSTS:  Trustor shall appear in and defend any action or proceeding that may, in the Lender's judgment, affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust.  Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention.  Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) business days, after Trustor first obtains knowledge of the pendency of such action or proceeding.  Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust.  Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust.  If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so.  Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand.  In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor, such approval not to be unreasonably withheld, conditioned or delayed.  All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note.  As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8)     LENDER'S RIGHTS TO INSPECT THE PROPERTY:  Lender and its agents, employees and contractors, may enter upon the Property at any time to inspect the Property for a reasonable business purpose (unless there is an default hereunder, in which case, Lender shall enter for whatever purpose Lender deems appropriate) relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).  Prior to entering upon the Property, Lender shall give notice of its intent to enter upon the Property; provided, however, that upon an default hereunder, no notice to Trustor shall be required.  In entering upon the Property, Lender takes all reasonable precautions to minimize the interference with the rights of any tenants located on the Property.

(9)    SUBSTITUTION OF TRUSTEE:  From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee.  Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation.  Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust.  An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10)    MISCELLANEOUS POWERS OF LENDER AND TRUSTEE:  In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person:  reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11)    ASSIGNMENT AND COLLECTION OF RENTS:  (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust, being retained by Trustor.  (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due.  Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor.  If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents.  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust.  Lender and the receiver shall be liable to account only for those rents actually received.  (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement

or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12)   RECONVEYANCE OF THE PROPERTY:  Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13)   CHANGE OF LENDER'S RECORDS:  In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

**ACCELERATION AND DEFAULT:**

(14)   CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR:  A default under this Deed of Trust shall occur in the event that: (a) (i) Trustor fails to pay when due any sum payable under the Note in accordance with the terms thereof; or (ii) Trustor fails to pay any sum the payment of which is required or secured by this Deed of Trust; (b) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed by Trustor; (e) there is an Event of Default under the Agreement; or (f) an event occurs which gives Lender the right or option to terminate any Swap Contract secured by this Deed of Trust.

(15)   LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers,

grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein not expressly permitted in the Agreement, or any interest in Trustor not expressly permitted in the Agreement, Lender may, at its option and without further notice to any person, (a) declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable and (b) terminate any Swap Contract secured by this Deed of Trust in accordance with its terms. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

(16)    LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a)    If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with

000415

the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17)   TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust.  Such notice shall be recorded in the office of the Recorder of the County where the Property is located.  (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust.  The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale.  The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale.  After deducting all costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of:  first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18)   OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19)   TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED: By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20)   SUCCESSORS IN INTEREST: The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21)   STATEMENTS CONCERNING THE STATUS OF THE LOAN: From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust.

Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22)    TRUSTEE'S OBLIGATIONS: The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23)    OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER: If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24)    NO OFFSETS: No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25)    GOVERNING LAW: The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26)    AGREEMENT CHANGED ONLY BY WRITING: This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27)    TIME: Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

(28)    NOTICE: Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

BANK LEUMI USA
555 West 5th Street, Suite 3300
Los Angeles, California 90013
Attention: Thomas Belli

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c)     Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing and sent by facsimile and mail or certified mail to the appropriate party at its respective address. Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via regular mail to the appropriate party at its respective address. If any notice is given by certified mail, it will be effective when deposited in the mails with first class or airmail postage prepaid; or if given by facsimile and mail, when the facsimile is sent.

(29)     TITLES, CAPTIONS, AND HEADINGS: The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30)     SEVERABILITY OF PROVISIONS: If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31)     ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32)     LENDER'S RELIANCE: The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

(33)     SECURITY AGREEMENT:

(a)     Security Interest. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest,

including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

      (b)   <u>Financing Statements</u>. Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

      (c)   <u>Remedies on Default</u>. Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

      (d)   <u>Fixture Filing</u>. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

    (34)   SALE OF INTEREST: Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

    (35)   SEPARATE PROPERTY: Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

    (36)   BOOKS AND RECORDS: Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time.

(37)    INSPECTION, APPRAISAL, AND ASSESSMENTS:  Subject to the provisions of paragraph (8) above, Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default,(a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto.  All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon thirty (30) days written notice by Lender to Trustor and shall be secured by this Deed of Trust; provided, however, that, unless a default hereunder has occurred, Lender may not charge Trustor for more than one (1) such appraisal or other inspection or report in any calendar year.  All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender; provided, however, that, upon Trustor's written request to Lender, Trustor shall be provided with a copy of each report of such inspection, appraisal or assessment so long as (i) Trustor has paid for such report and (ii) such report is not otherwise privileged or attorney work product or otherwise protected from disclosure.  Any appraisal or assessment may, at Lender's reasonable election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property.  Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

(38)    DEFINITIONS: All terms not defined herein shall be defined as set forth in the Agreement.

[Signature page to follow.]

000421

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

("Trustor")

20715 AVALON, LLC,
a California limited liability company

By: _____
Name: Robert Douglas Spiro, Jr.
Its: Manager

000422

# CALIFORNIA CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )

County of _Los Angeles_                )

On _4/5/2019_ _____ before me, _Rashida Jocelyn Anderson_ ,
(here insert name and title of the officer)

personally appeared _Robert Douglas Spiro Jr_
_Manager of Avalon LLC_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

RASHIDA JOCELYN ANDERSON
COMM. #2219154
Notary Public · California
Los Angeles County
My Comm. Expires Oct. 21, 2021

(Seal)

---

## Optional Information

Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

### Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _Deed of Trust_ _____

_____ ,

containing _____ pages, and dated _____ .

The signer(s) capacity or authority is/are as:
- [ ] Individual(s)
- [ ] Attorney-in-Fact
- [ ] Corporate Officer(s) _____
      Title(s)

- [ ] Guardian/Conservator
- [ ] Partner - Limited/General
- [ ] Trustee(s)
- [ ] Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

### Additional Information

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
- ○ form(s) of identification  ○ credible witness(es)

Notarial event is detailed in notary journal on:
Page # _____  Entry # _____

Notary contact: _____

Other
- [ ] Additional Signer(s)   [ ] Signer(s) Thumbprint(s)
- [ ] _____

© Copyright 2007-2017 Notary Rotary, PO Box 41400, Des Moines, IA 50311-0507. All Rights Reserved. Item Number 101772. Please contact your Authorized Reseller to purchase copies of this form.
000423

# EXHIBIT "A"
## LEGAL DESCRIPTION OF PROPERTY

The Land referred to herein below is situated in the City of Carson, County of Los Angeles, State of California, and is described as follows:

PARCEL A:

PARCEL 4 IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON PARCEL MAP NO. 2538, FILED IN BOOK 38, PAGE 5 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D-2250, PAGE 752, OFFICIAL RECORDS.

PARCEL B:

THAT PORTION OF PARCEL 3, PARCEL MAP NO. 2538, IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 38, PAGE 5 OF PARCEL MAPS RECORDS OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID PARCEL 3; THENCE ALONG THE NORTHWESTERLY LINE OF SAID PARCEL 3 NORTH 72° 14' 30" EAST 67.34 FEET; THENCE SOUTH 22° 57' 12" EAST 122.91 FEET TO THE SOUTHEASTERLY LINE OF SAID PARCEL 3; THENCE ALONG THE SAID SOUTHEASTERLY LINE SOUTH 77° 49' 26" WEST 72.28 FEET TO THE SOUTHWESTERLY LINE OF SAID PARCEL 3, BEING ALSO THE NORTHEASTERLY LINE OF PARCEL 2 OF THE CITY OF LOS ANGELES DEPARTMENT OF WATER AND POWER RIGHT OF WAY RECORDED IN BOOK 10241, PAGE 397, RECORDS OF LOS ANGELES COUNTY; THENCE ALONG SAID SOUTHWESTERLY LINE OF PARCEL 3 NORTH 22° 57' 12" WEST 102.49 FEET AND NORTH 6° 08' 14" WEST 13.59 FEET OF THE POINT OF BEGINNING.

EXCEPT 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D-2250, PAGE 752, OFFICIAL RECORDS.

000424

## EXHIBIT "B"
## (PERMITTED TOXIC MATERIALS)

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic materials and/or hazardous substances.

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

000425

# EXHIBIT P



**This page is part of your document - DO NOT DISCARD**



# 20190321093



**Pages:**
**0009**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/11/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 61.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| | |
| PAID: | 61.00 |



**L E A D S H E E T**



201904110110043

**00016479739**



009747583

**SEQ:**
**02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

131_4277313
000427

RECORDING REQUESTED BY:

First American Title - NCS

WHEN RECORDED MAIL DOCUMENT TO:

Bank Leumi USA
555 West 5th Street, Suite 330
Los Angeles, California 90013
Attention: Thomas Belli

Space Above This Line for Recorder's Use Only

## Absolute Assignment of Leases, Lease Guarantees, Rents, Issues and Profits
### Title of Document

Pursuant to Senate Bill 2 - Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fee, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

( ) This document is a transfer that is subject to the imposition of documentary transfer tax

( ) Recorded [concurrently] in connection with a transfer of real property subject to the imposition of Documentary Transfer Tax per GC 27388.1 (a) (2).

( ) Recorded [concurrently] in connection with a transfer of real property that is residential dwelling to an owner-occupier per GC 27388.1 (a) (2).

( X ) Maximum fee of $225 has been reached per GC 27388.1 (a) (1).

( ) Not related to real property GC 27388.1 (a) (1).

THIS PAGE ADDED TO PROVIDE EXEMPTION INFORMATION FOR THE
BUILDING HOMES AND JOBS ACT FEE
(SB-2; AFFORDABLE HOUSING FEE)
($3.00 Additional recording fee applies)

000428

**RECORDING REQUESTED BY:**

First American Title - NCS

**WHEN RECORDED MAIL DOCUMENT TO:**

Bank Leumi USA
555 West 5th Street, Suite 330
Los Angeles, California 90013
Attention: Thomas Belli

_Space Above This Line for Recorder's Use Only_

## Absolute Assignment of Leases, Lease Guarantees, Rents, Issues and Profits
Title of Document

Pursuant to Senate Bill 2 - Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fee, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

( ) This document is a transfer that is subject to the imposition of documentary transfer tax

( ) Recorded [concurrently] in connection with a transfer of real property subject to the imposition of Documentary Transfer Tax per GC 27388.1 (a) (2).

( ) Recorded [concurrently] in connection with a transfer of real property that is residential dwelling to an owner-occupier per GC 27388.1 (a) (2).

( X ) Maximum fee of $225 has been reached per GC 27388.1 (a) (1).

( ) Not related to real property GC 27388.1 (a) (1).

THIS PAGE ADDED TO PROVIDE EXEMPTION INFORMATION FOR THE
BUILDING HOMES AND JOBS ACT FEE
(SB-2; AFFORDABLE HOUSING FEE)
($3.00 Additional recording fee applies)

**RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:**

BANK LEUMI USA
555 West 5th Street, Suite 3300
Los Angeles, California  90013
Attention:  Thomas Belli

Assessor's Parcel No.: 7339-018-004, 040

NCS-935414

## ABSOLUTE ASSIGNMENT OF LEASES, LEASE GUARANTIES,
## RENTS, ISSUES AND PROFITS

FOR VALUE RECEIVED, the undersigned, 20715 AVALON, LLC, a California limited liability company ("Assignor"), grants, transfers and assigns to BANK LEUMI USA ("Assignee"), all of Assignor's right, title and interest in all leases executed by Assignor, or Assignor's predecessors in interest, or Assignor's successors in interest, in regard to the real property described below, as lessor (individually and collectively, the "Leases"), concerning real property located in Los Angeles County, California, and legally described as set forth in Exhibit "A" hereto and incorporated herein by reference ("Property"), and all lease guaranties in regard to the Leases (individually and collectively, the "Lease Guaranties") and all rents, issues and profits of the Property, including the cash proceeds thereof, to the fullest extent permitted by California Civil Code Section 2938. Assignor's interests in the Property are the subject of that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated April 3, 2019 ("Deed of Trust"), by Assignor, as Trustor, to First American Title Insurance Company, as Trustee, for Assignee, as Beneficiary, which Deed of Trust secures an obligation or obligations in the original aggregate principal amount of Eight Million Eight Hundred Fifty Thousand and No/100 Dollars ($8,850,000.00), plus permitted accrued interest pursuant to that certain Loan Agreement ("Loan Agreement") between Assignor and Assignee, dated April 3, 2019, in regard to which this assignment is given. This assignment includes the assignment of Assignor's interest in all extensions and renewals of the Leases and all extensions or renewals of the Lease Guaranties.

1.     Assignor warrants that title to all of such property interests is in Assignor; that Assignor has the right to make this assignment; that full title and right to receive all rents, issues and profits under the Leases and all amounts accruing under the Lease Guaranties are vested absolutely in Assignee by this assignment; and that the rental property and rental payments and other sums are free from liens, encumbrances, claims and setoffs of every kind whatsoever, other than the liens and rights of Assignee.

2.     Assignor, to the extent made necessary hereby, appoints Assignee its true, lawful and irrevocable attorney to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Assignor or in the name of Assignee, for all rents and other sums payable in regard to the Leases and Lease Guaranties.

**LEASES ARE UNRECORDED**

3266404.2 | 007955-0226                                   1

3. Until a default in the payment of any indebtedness to which this assignment is related or in the performance of any obligation, covenant or agreement contained herein or in the Deed of Trust on the part of Assignor to be performed occurs ("Default"), Assignor shall have the right to collect said rents or other sums, but according to the terms and conditions hereinafter specified. Upon Default by Assignor, Assignee shall be entitled to collect and receive all rents, issues and profits that have accrued but remain unpaid and uncollected by Assignor (or Assignor's agent, or for Assignor's benefit) on that date, and all rents, issues and profits that accrue after that date.

4. Assignee may enforce its rights to collect rents, issues and profits in any manner permitted by law, including, without limitation, (a) the appointment of a receiver, (b) obtaining possession of the rents, issues or profits, (c) delivery to any one or more of the tenants of a written demand for the turnover of rents, issues and profits in the form specified by California Civil Code Section 2938, and (d) delivery to Assignor of a written demand for the rents, issues and profits as specified by California Civil Code Section 2938.

5. Assignor consents that, without further notice and without releasing the liability of Assignor, Assignee may, at Assignee's discretion, give grace or indulgence in the collection of all rents and sums due or to become due under the Leases and Lease Guaranties and grant extensions of time for the payment of the same before, at, or after maturity.

6. Nothing herein contained shall be construed as imposing upon Assignee the duty to collect any rent or any other sum. Further, nothing herein contained shall be construed as imposing upon Assignee any duty in regard to causing the Property to be rented, in whole or in part, or to be utilized in any other way.

7. Nothing herein contained shall be construed as requiring Assignee to give credit to Assignor or any successor in interest of Assignor in regard to Assignor's obligation or obligations to Assignee which are related to this assignment, or as creating any setoff against or reduction of said obligation or obligations for any sum or sums except to the extent of any sum or sums actually received and so applied by Assignee.

8. Assignee does not assume any of the landlord's obligations under the Leases or the Lease Guaranties, or any of them, and Assignor agrees (a) to keep and perform all obligations of the landlord under the Leases and the Lease Guaranties and to save Assignee harmless from the consequences of any failure to do so; and (b) to preserve the Property subject to the Leases free and clear of liens and encumbrances, except to or with the written consent of Assignee.

9. Assignor agrees that Assignor will not assign any other interest in the Leases or the Lease Guaranties, or any of them, or in the rents, issues or profits of the Property; that notice of this assignment may be given to any tenant or lease guarantor at any time at Assignee's option; and that, in the event any payment of rent or any other sum is made to Assignor, Assignor will hold such rent or other sum as trustee for Assignee to the extent that the same equals any installment or installments then due and payable under the related obligation or obligations, any installment or installments on any lien which may be superior to the Deed of Trust in terms of priority and any taxes or assessments then due and payable in regard to the Property.

10.     Assignor further agrees, at its sole cost and expense: (i) to enforce or secure the performance of each obligation of the Leases by the respective Lessees to be performed and each obligation of the Lease Guaranties by the respective lease guarantor to be performed; (ii) not to anticipate the rents thereunder, nor to waive or release any party thereunder of or from his, her or its obligations; and (iii) not to modify the Leases or Lease Guaranties, or any of them, nor accept surrender thereunder.

11.     This assignment is in addition to the Deed of Trust and is not to be construed as being a waiver of any of the terms thereof or of the obligations which the Deed of Trust secures.

12.     If, as and when a Default occurs, Assignee shall be entitled to all attorneys' fees paid or incurred by Assignee for so doing, all fees and commissions paid or incurred by Assignee for or in connection with management of the Property, and reimbursement of all expenses paid or incurred by Assignee for or in connection with maintaining the Property, all added to the obligation hereinabove described as though advances under the Deed of Trust.

13.     This assignment is irrevocable and shall remain in full force and effect until and unless there is payment in full of all obligations related to it or it is released in writing by Assignee.

14.     A Default hereunder shall constitute a default under the Loan Agreement, the Note, the Deed of Trust and all other instruments evidencing or securing the Note, as those terms are defined in the Loan Agreement, and, upon occurrence of any such Default, at the option of Assignee, without notice to Assignor, all unpaid indebtedness secured by said instruments shall become immediately due and payable.

15.     Nothing contained in this assignment or in any action or undertaking by Assignee pursuant to this assignment shall be deemed or be construed to constitute Assignee as a mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or discharge any obligation, duty or liability hereunder or under the Leases or Lease Guaranties. Until the loan as evidenced by the Note and all indebtedness secured hereby shall have been paid in full, Assignor will from time to time execute and deliver to Assignee upon demand any and all writings which Assignee may deem necessary or desirable to carry out the purposes and intent hereof, and which will enable Assignee to enforce any right or remedy hereunder.

16.     Assignor hereby indemnifies and holds Assignee harmless from and against any and all liability, loss, or damage which Assignee may incur under the Leases or Lease Guaranties or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking to be performed or discharged by any mortgagee or holder of a trust deed under the Leases or this assignment. Nothing contained in the Note, the Deed of Trust, the Loan Agreement, or in this assignment shall be construed to bind Assignee to the performance of any of the terms or provisions contained in the Leases or Lease Guaranties, or otherwise to impose any obligation on Assignee, including, but not limited to, any liability under any covenant of quiet enjoyment contained in the Leases in the event that any tenant shall have been joined as a party defendant in any action to foreclose the Deed of Trust and shall have been barred and foreclosed thereby of all

right, title, and interest, and equity of redemption, in said premises. Prior to actual entry and taking possession of the Property, or any portion thereof, by Assignee, even though Assignee may be receiving rental income, this assignment shall not operate to place responsibility for control, care, management, or repair of said Property upon Assignee, nor for the carrying out of any terms and provisions of the Leases or Lease Guaranties. Should Assignee incur any liability described in this Section, or loss or damage under the Leases or Lease Guaranties or under or by reason of the assignment, or in defense of any such claims or demands, Assignor shall immediately upon demand reimburse Assignee for the amount thereof, including all costs, expenses and attorneys' fees incurred in connection therewith, and Assignee may retain possession and collection of any and all rents and other income derived from the Leases, the Lease Guaranties and/or the Property, and, from time to time, apply them in or towards satisfaction of or reimbursement for any such loss, damage, cost or expense.

[Signature page to follow.]

Dated:  April 3, 2019

**ASSIGNOR**

20715 AVALON, LLC,
a California limited liability company

By: _____
Name: Robert Douglas Spiro, Jr.
Its: Manager


**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       ) ss
COUNTY OF _Los Angeles_                )

On _4/5/2019_, before me, _Rashida Jocelyn Anderson_, a Notary Public, personally appeared _Robert Douglas Spiro. Jr._, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

RASHIDA JOCELYN ANDERSON
COMM. #2219154
Notary Public · California
Los Angeles County
My Comm. Expires Oct. 21, 2021

# EXHIBIT "A"
## LEGAL DESCRIPTION OF PROPERTY

The Land referred to herein below is situated in the City of Carson, County of Los Angeles, State of California, and is described as follows:

PARCEL A:

PARCEL 4 IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON PARCEL MAP NO. 2538, FILED IN BOOK 38, PAGE 5 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D-2250, PAGE 752, OFFICIAL RECORDS.

PARCEL B:

THAT PORTION OF PARCEL 3, PARCEL MAP NO. 2538, IN THE CITY OF CARSON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 38, PAGE 5 OF PARCEL MAPS RECORDS OF LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID PARCEL 3; THENCE ALONG THE NORTHWESTERLY LINE OF SAID PARCEL 3 NORTH 72º 14' 30" EAST 67.34 FEET; THENCE SOUTH 22º 57' 12" EAST 122.91 FEET TO THE SOUTHEASTERLY LINE OF SAID PARCEL 3; THENCE ALONG THE SAID SOUTHEASTERLY LINE SOUTH 77º 49' 26" WEST 72.28 FEET TO THE SOUTHWESTERLY LINE OF SAID PARCEL 3, BEING ALSO THE NORTHEASTERLY LINE OF PARCEL 2 OF THE CITY OF LOS ANGELES DEPARTMENT OF WATER AND POWER RIGHT OF WAY RECORDED IN BOOK 10241, PAGE 397, RECORDS OF LOS ANGELES COUNTY; THENCE ALONG SAID SOUTHWESTERLY LINE OF PARCEL 3 NORTH 22º 57' 12" WEST 102.49 FEET AND NORTH 6º 08' 14" WEST 13.59 FEET OF THE POINT OF BEGINNING.

EXCEPT 100 PERCENT OF THE OIL, GAS, PETROLEUM, AND OTHER HYDROCARBON SUBSTANCES WHICH LIE BELOW A PLANE PARALLEL TO AND 500 FEET BELOW THE NATURAL SURFACE OF SAID LAND WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND TO EXPLORE FOR, DEVELOP, OR REMOVE SAID SUBSTANCES, BUT WITH FULL RIGHT TO EXPLORE FOR, DEVELOP AND REMOVE THE SAME BY MEANS OF WELLS OR EQUIPMENT, HAVING SURFACE LOCATIONS OUTSIDE THE OUTER BOUNDARIES OF SAID REAL PROPERTY, IN AND UNDER OR RECOVERABLE FROM SAID REAL PROPERTY, AS EXCEPTED IN THE DEED FROM DEL AMO ESTATE COMPANY, A CORPORATION, RECORDED NOVEMBER 8, 1963 IN BOOK D-2250, PAGE 752, OFFICIAL RECORDS.

# EXHIBIT Q

## SECURITY AGREEMENT
## (ASSIGNMENT OF DEPOSIT ACCOUNT)

For value received, 20715 AVALON, LLC, a California limited liability company ("Assignor"), hereby assigns, pledges, and transfers to BANK LEUMI USA ("Lender"), and to its successors and assigns, all of Assignor's right, title, and interest in and to any and all deposit accounts with Lender, including, without limitation, that certain deposit account with Lender in the name of "20715 AVALON, LLC" and maintained at Lender, Account No. _____ (which is identified as the "Loan Closing Deposit Account" in the Loan Agreement of even date herewith by and between Assignor and Lender) (the "Loan Closing Deposit Account"), together with all monies or proceeds due or to become due under the Loan Closing Deposit Account, and all sums due or to become due thereon or therefrom by way of interest, repayments or otherwise and all proceeds thereof (collectively, the "Collateral"). This Security Agreement (Assignment of Deposit Account) (this "Agreement") is the "Assignment of Deposit Account" described in that certain Loan Agreement of even date herewith, by and between Assignor and Lender (together with any and all amendments, modifications or supplements thereto, the "Loan Agreement").

1.    Obligations Defined.  This assignment, pledge and transfer is given to Lender by Assignor as collateral security for all of the following obligations (individually and collectively, the "Obligations"): all indebtedness, liabilities and obligations now or hereafter owing to Lender by Assignor to Lender of any kind and description pursuant to or evidenced by (i) the Loan Agreement, and (ii) that certain (a) Promissory Note of even date herewith in the principal face amount of $7,150,000.00 and (b) Promissory Note of even date herewith in the principal face amount of $1,700,000.00 (together with any and all extensions, amendments, modifications or supplements thereto or renewals or extensions thereof, individually and collectively, the "Note"), executed by Assignor in favor of Lender, whether direct or indirect, absolute or contingent, joint or several, and howsoever evidenced, no matter how arising; all amounts advanced or incurred by Lender on account of Assignor under the terms of this Agreement or for the maintenance or preservation of the Collateral; any and all amendments, modifications, renewals or extensions of Obligations including those evidenced by new or additional agreements or instruments changing the rate of interest or adding or releasing any third party on the Obligations; and all costs of collection, including fees and expenses in connection with the protection or realization of the Collateral or the enforcement of this Agreement, the Loan Documents  (as defined in the Loan Agreement), the instruments, other notes, or other agreements evidencing the Obligations, whether or not suit is filed.

2.    Representations, Warranties and Covenants.  Assignor represents, warrants, and covenants that: Assignor is the owner of the above-described Collateral, and that such Collateral is free and clear of all liens and encumbrances of any nature whatsoever except for the lien in favor of Lender securing the obligations of Assignor to Lender; Assignor has not made any prior assignment or transfer of the Loan Closing Deposit Account or other Collateral, and shall not make any further assignment or transfer thereof during the term of this Agreement; Assignor has not withdrawn, canceled, been repaid, or redeemed all or any part thereof; there is no pending application for the withdrawal, cancellation, repayment, or redemption thereof; and this Agreement is valid, binding, and enforceable.

3273205.3 | 007955-0226

3.    <u>Extent of Security Interest</u>. This is a continuing security agreement, securing all Obligations, including those arising after any repayment and reborrowing and those arising under successive and future transactions which shall increase, renew or modify the Obligations; it is without limitation as to its effective period and the Obligations hereunder may be terminated only upon payment in full of all Obligations or the termination or expiration of Lender's obligation to extend credit to Assignor. Each credit granted to Assignor, including all present and future Obligations or the termination or expiration of Lender's obligation to extend credit to Assignor, is and shall be granted by Lender in reliance on this Agreement. This Agreement shall not constitute a commitment of any nature by Lender to renew or hereafter extend credit.

4.    <u>No Right to Withdraw</u>. Subject to Section 3.12 of the Loan Agreement, Assignor shall not have the right to withdraw funds from the Loan Closing Deposit Account during the term of the Loan without the express, prior written consent of Lender, which Lender may give or withhold in its sole and absolute discretion.

5.    <u>Power of Attorney</u>. Assignor hereby irrevocably constitutes and appoints Lender the true and lawful attorney of Assignor, with full power of substitution: to demand, collect, and receive payment of any and all monies or proceeds due or to become due under the Loan Closing Deposit Account and the other Collateral; to execute any and all instruments required for the withdrawal or repayment of same, or any part thereof; to insert in any instrument for the withdrawal of funds signed by Assignor the date and amount due under the Loan Closing Deposit Account and other Collateral, and to complete such instruments in any respect and in all respects to deal with the Loan Closing Deposit Account and other Collateral as the holder thereof; and, in its discretion, file any claim or take any other action or proceeding, either in its own name or in the name of Assignor, or otherwise, which Lender may deem necessary or appropriate to protect and preserve the right, title, assignment, pledge, transfer, and interest of Lender hereunder; however, that Lender shall not exercise the foregoing power other than upon an Event of Default (as defined in the Loan Agreement). This Agreement shall remain in full force and effect unless and until the Obligations are indefeasibly satisfied in full.

6.    <u>Financing Statements and Other Documents</u>. Assignor hereby agrees to permit Lender to file one or more financing or continuation statements, and any amendments thereto, all without Assignor's signature, where permitted by law, to perfect the security interest granted herein. Assignor agrees to sign such financing statements and other documents if requested by Lender. Any filing fees associated with the security interest granted herein charged by a public officer shall be for Assignor's account and, if paid by Lender, shall be payable by Assignor to Lender upon demand.

7.    <u>Delivery of Documents</u>. Assignor hereby agrees to deliver and does hereby pledge to Lender all written evidence of the Loan Closing Deposit Account and other Collateral, including, without limitation, all bank passbooks, certificates of deposit, and savings certificates with respect thereto. Lender is authorized at any time or times to notify each issuer or obligor with respect to the Loan Closing Deposit Account and other Collateral of the assignment, pledge, and transfer thereof to Lender, and to direct such issuer or obligor to mark its records accordingly. Assignor agrees to execute and deliver to Lender such further agreements, documents, assignments, and notices, in form and substance satisfactory to Lender, as Lender may request in its discretion in order to effectuate the purposes hereof.

8.      <u>Authorization</u>.  Either before or after termination of this Agreement, upon the occurrence and during the continuance of an Event of Default hereunder, Assignor authorizes Lender, at its sole discretion, with or without notice, and without affecting Assignor's continuing liability hereunder, from time to time, to: (i)  apply any sums received from Assignor, or from the sale or foreclosure of Collateral, to any, all, or any portion of the Obligations in any order, regardless of whether the Obligations are due and payable;  (ii) exercise any right or remedy it may have with respect to any Obligations, or any other collateral securing any of the Obligations, this Agreement, or any guaranty of the Obligations, including bidding and purchasing at any sale of any such collateral, and compromising, collecting or otherwise liquidating any such collateral or any of the Obligations, and/or (iii) make such payments and perform such acts as Lender may deem necessary to preserve and insure the Collateral or its value or Lender's security interest, including, without limitation, any action which Assignor shall have agreed to take pursuant to the terms of this Agreement.

9.      <u>Default and Remedies</u>.  The following acts or omissions shall each constitute a default under this Agreement: (a) Assignor breaches any term or condition of this Agreement; (b) any representation or warranty contained in this Agreement is false or misleading; (c) Assignor defaults on, or fails to perform any of, the Obligations; or (d) an Event of Default (as defined in the Loan Agreement) occurs under the Loan Agreement.

In addition to any other authorizations and rights of Lender with respect to the Loan Closing Deposit Account or any other Collateral, and without limiting anything else stated herein to the contrary, upon the occurrence of a default hereunder and so long as such default remains uncured, Lender may, at its option, without further notice to Assignor, prohibit any withdrawals or reductions from the Loan Closing Deposit Account and other Collateral (to the extent any such withdrawals or reductions are at any time permitted hereunder or under the Loan Agreement or other Loan Documents) and exercise any and/or all of its rights and remedies under the California Uniform Commercial Code, and as otherwise granted hereunder, or at law, or in equity, including, without limitation, the withdrawal of any and all amounts in the Loan Closing Deposit Account, the sale or other disposition of the Collateral and/or the giving of notice to third parties in possession of the Collateral to turn over the Collateral to Lender. Lender shall have all rights, powers, privileges, and remedies of a secured party under the California Uniform Commercial Code, or other applicable law, with respect to the Collateral. All of the rights and remedies of the Lender are cumulative and not alternative.

10.      <u>Governing Law and Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California.  This Agreement may not be amended, modified, or terminated except in writing executed by Lender and Assignor.  Assignor agrees that all actions or proceedings arising in connection with this Agreement shall be tried and litigated only in the state and federal courts located in the County of Los Angeles, State of California or, at the option of Lender, any court in which Lender shall initiate legal or equitable proceedings and which has subject matter jurisdiction over the matter in controversy.  Assignor consents to the jurisdiction of any competent state or federal court within that state.

11.      <u>Miscellaneous Provisions</u>.

(a)      If any provision of this Agreement is found to be unenforceable, the remainder of this Agreement shall remain in full force and effect, and shall be enforceable in accordance with its terms as if the unenforceable provision was not included herein.

(b)      If more than one person executes this Agreement, the obligations of Assignor hereunder are joint and several.  All words used herein in the singular shall be deemed to have been used in the plural when the context and construction so require.

(c)      Assignor waives the right to assert any statute of limitations with respect to this Agreement, the Collateral, or the Obligations.

(d)      Assignor agrees to pay attorneys' fees and all other costs and expenses which may be incurred by Lender in connection with this Agreement.

(e)      Paragraph headings are for convenience only and are not part of this Agreement.

(f)      This Agreement and the Collateral are assignable in whole or in part by Lender with any one and/or several of the Obligations and, when so assigned, Assignor shall be bound to the assignees on the same terms as set herein without affecting Assignor's liability hereunder with respect to any of the Collateral not so assigned.

(g)      All notices, requests and demands hereunder shall be made to Lender and to Assignor as provided in the Loan Agreement.

(h)      No modification or change to this Agreement in any of the terms and conditions shall be effective unless in writing and signed by an officer of Lender.

(i)      The rights and remedies of and authority granted to Lender under this Agreement shall be in addition to that granted by any statute or rule of law.  No delay or omission on the part of Lender or its assignee in exercising any right hereunder shall operate as a waiver of such right, or any other right under this Agreement.

[SIGNATURE PAGE FOLLOWS]

000441

IN WITNESS WHEREOF, Assignor has executed this Agreement as of the 3rd day of April 2019.

**ASSIGNOR:**

20715 AVALON, LLC,
a California limited liability company

By: _____
Name: Robert Douglas Spiro, Jr.
Its: Manager

# EXHIBIT R

Classified: Internal

**BANK LEUMI USA**
555 West 5th Street, Suite 3300
Los Angeles, CA 90013

November 26, 2021

VIA ELECTRONIC MAIL

**20715 Avalon, LLC**
3951 Medford Street
Los Angeles, California 90063
Attn: Robert Douglas Spiro, Jr.
Email: dspiro@capitalstoneholdings.com

**Robert Douglas Spiro, Jr.**
12027 Otsego Street
Valley Village, CA 91607
Email: dspiro@capitalstoneholdings.com

**Spiro Revocable Family Trust**
12027 Otsego Street
Valley Village, CA 91607
Attn: Robert Douglas Spiro, Jr.
     Diane Castillo Spiro,
     As Trustees
Email: dspiro@capitalstoneholdings.com

**Better 4 You Breakfast, Inc.**
5743 Smithway Street – Suite 103
Commerce CA, 90040
Attn: Fernando Castillo
     Robert Douglas Spiro, Jr.
Email: fcastillo@better4youmeals.com
     dspiro@capitalstoneholdings.com

**RDS Ventures, LLC**
3951 Medford Street
Los Angeles, California 90063
Attn: Robert Douglas Spiro, Jr.
Email: dspiro@capitalstoneholdings.com

Re: Notice of Default

Ladies and Gentlemen:

Reference is made to (a) the certain Loan Agreement, dated as of April 3, 2019 (as amended, restated, supplemented or modified from time to time, the "*Loan Agreement*"), by and between 20715 Avalon, LLC (the "*Borrower*") and Bank Leumi USA ("*Bank Leumi*" or "*Lender*"), (b) that certain Promissory Note, dated as of April 3, 2019, in the original principal amount of $7,150,000, executed by Borrower in connection with the Loan Agreement (as amended, restated, supplemented or modified from time to time, "*Note #1*"), (c) that certain Promissory Note, dated as of April 3, 2019, in the original principal

6765946.4

amount of $1,700,000, executed by Borrower in connection with the Loan Agreement (as amended, restated, supplemented or modified from time to time, "*Note #2*", together with Note #1, collectively the "*Notes*"), (d) that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, dated as of April 3, 2019, executed by Borrower in favor of Lender (as amended, restated, supplemented or modified from time to time, the "*Deed of Trust*"), (e)  Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits, dated April 3, 2019, executed by Borrower in favor of Lender (as amended, restated, supplemented or modified from time to time, the "*Assignment of Leases*"),(e) that certain Security Agreement, dated as of April 3, 2019, executed by Borrower in favor of Lender, as amended, restated, supplemented or modified from time to time, the "*Security Agreement*"), (f)(i) the Continuing Guaranty, dated April, 3, 2019, by Robert Douglas Spiro, Jr. ("*Spiro*") in favor of Lender (the "*Spiro Guaranty*"), (ii) the Continuing Guaranty, dated April 3, 2019, by the Trustees of the Spiro Revocable Family Trust ("*Spiro Family Trust*") in favor of Lender (the "*Spiro Family Trust Guaranty*"), (iii) the Continuing Guaranty, dated April 3, 2019, by RDS Ventures, LLC ("*RDS Ventures*") in favor of Lender (the "*RDS Ventures Guaranty*"), and (iv) the Continuing Guaranty, dated April, 3, 2019, by Better 4 You Breakfast, Inc. ("*B4YB*", together with Spiro, the Spiro Family Trust, RDS Ventures, each, individually a "*Guarantor*", and collectively, the "*Guarantors*") in favor of Lender (the "*B4YB Guaranty*", together with the Spiro Guaranty, the Spiro Family Trust Guaranty, the RDS Ventures Guaranty, individually a "*Guaranty*" and collectively, the "*Guaranties*", together with the Loan Agreement, the Notes, the Deed of Trust, the Assignment of Rents, the Security Agreement, and all other agreements, documents and instruments executed and delivered in connection threwith, collectively, the "*Loan Documents*"). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

**PLEASE TAKE NOTICE**, that Events of Default have occurred and are continuing, pursuant to  Section 5.1 of the Loan Agreement, due to the Borrower's failure (a) to pay all principal, interest and other charges, whether accrued or accruing thereon, on November 1, 2021, the Maturity Date, (b) the failure of Borrower to complete the Reonvation Improvements by no later than November 1, 2021, and (c) to cure the Violations (as defined in the Loan Agreement) (the "*Specified Defaults*").

**PLEASE TAKE FURTHER NOTICE**, that as a result of the occurrence and continuance of the Specified Defaults, (i) all principal, interest and other charges set forth in the Loan Agreement, the Notes, and other Loan Documents (as defined in the Loan Agreement) (the "*Obligations*") are immediately due and payable, and (ii) effective immediately, Lender shall charge interest at the Default Rate (as defined in the Notes) on the outstanding principal balance of the Obligations (calculated in accordance with the provisions of the Notes). As of the date hereof, the aggregate principal amount of the Obligations owing by Borrower to Lender under the Loan Agreement is not less than $8,563,888.84 (exclusive of any accrued and accruing interest, fees, costs and expense).

This letter confirms that Lender has not waived the Specified Defaults and expressly reserves all of its rights, powers, privileges and remedies under the Loan Agreement, the other Loan Documents, applicable law and otherwise with respect to any Default or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Loan Agreement or any of the other Loan Documents, including without limitation, (i) the right to demand immediate full payment of all Obligations owing under the Loan Agreement and the other Loan Documents, and (ii) the right to repossess and take other action with respect to any or all Collateral, including the liquidation thereof pursuant to the security interest granted under the Deed of Trust and the other Loan Documents. The failure of Lender to exercise any such rights, powers, privileges and remedies is not intended, and shall not be construed, to be a waiver of any such Default or Event of Default (including, without limitation, the Specified Defaults).  Lender may elect to exercise any or all of its rights, powers,

DocuSign Envelope ID: 39E8CAE6-8485-481A-A04F-15BD562297BE

Classified: Internal

privileges and remedies, at its sole option, at any time hereafter, without the necessity of any further notice, demand or other action on the part of Lender.

Nothing contained herein, nor any action or inaction on the part of Lender, including without limitation, the making of any loan by Lender, shall be deemed to be a waiver of any rights or remedies available to Lender with respect to the Specified Defaults or any other Default or Event of Default that may exist under the Loan Agreement and other Loan Documents, again regardless of whether Lender is aware of any such Defaults or Events of Default.

Nothing contained in this letter and no delay by Lender in exercising any rights, powers, privileges or remedies under the Loan Agreement, any other Loan Document, or applicable law with respect to the Specified Defaults or any other Default or Event of Default now existing or hereafter arising under the Loan Agreement or any of the other Loan Documents shall be construed as a waiver or modification of such rights, powers, privileges and remedies.  This Notice is not, and shall not be deemed to be, a waiver of, or a consent to, any Default, noncompliance, or Event of Default (including, without limitation, the Specified Defaults) now existing or hereafter arising under the Loan Agreement or other Loan Documents. This Notice shall not entitle the Borrower or any Guarantor to any other or further demand, presentment, protest, or notice of any kind.

The holding of any discussions between Lender and Borrower regarding the administration of the loans or proposals regarding amendments to, or modifications or restructurings of the Loan Agreement or any other Loan Document shall not constitute any waiver of any Default or Event of Default (including, without limitation, the Specified Defaults), or an agreement to forbear from the exercise of Lender's rights, powers, privileges or remedies under the Loan Agreement or any other Loan Document, or applicable law, nor shall it be construed as an undertaking by Lender to continue such discussions or to enter into any such amendments, modifications or restructurings.

This Notice is without prejudice to, and Lender hereby specifically reserve and by this Notice preserve, all of their rights and remedies.

.

Very truly yours,

**BANK LEUMI USA**

By: _Elsa Burton_

Name: Elsa Burton

Title: SVP

By: _Ed Park_

Name: Ed Park

Title: FVP

DocuSign Envelope ID: 39E9CAE6-8485-481A-A04F-15BDE62297BE

Classified: Internal

cc:    Otterbourg, P.C.
       Attn: Andrew M. Kramer
         David W. Morse

# EXHIBIT S



## LIMITED GUARANTY

**THIS LIMITED GUARANTY** (this "**Guaranty**") is made and entered into as of this 16th day of August, 2019, by Robert Douglas Spiro, Jr., an individual residing at 3951 Medford Street, Los Angeles, California 90063 ("**Spiro**") and by the Spiro Revocable Family Trust (the "**Trust**", and jointly and severally with Spiro, collectively, the "**Guarantor**"), and delivered to **BANK LEUMI USA** ("**Bank**"), with an address at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, in consideration of Bank previously, now or hereafter (a) extending or agreeing to extend any credit or other financial accommodation to Better 4 You Breakfast, Inc. ("**Borrower**"), or (b) agreeing to any direct or indirect extension, renewal, replacement or modification of, or waiver or forbearance with respect to any such credit or other financial accommodation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. The term "**Bank**" as used throughout this instrument shall be deemed to include BANK LEUMI USA, all its subsidiaries and all its agencies, branches and departments wherever located.

1.    **Guaranteed Obligations**.

(a)    Guarantor irrevocably, unconditionally and absolutely guarantees to Bank, and becomes surety for the prompt performance and payment when due, whether by acceleration, demand or otherwise, of (i) any and all Obligations (hereafter defined) of Borrower to Bank, in the aggregate at any one time outstanding plus all interest thereon; provided, however, that Guarantor's liability under this clause (i) shall not exceed $5,000,000. This is a guaranty of payment and not of collection. Bank shall not be obligated to make any request or demand upon or to pursue any of its rights against Borrower or any other person who may be liable for the payment of the Obligations, or to pursue any collateral security therefor, as a condition of Guarantor's liability hereunder. If Borrower fails to pay when due or otherwise defaults under any Obligations, Guarantor will pay such Obligations to Bank.

Until the Obligations are indefeasibly paid in full, Guarantor's liability hereunder shall not be reduced in any manner whatsoever by any amounts which Bank may receive as a result of payments made by or on behalf of Borrower or any other party, provided that payments made by Guarantor shall reduce Guarantor's liability hereunder.

The term "**Obligations**" shall the meaning given such term in that certain letter agreement dated as of the date hereof among Guarantor, Bank, and the other parties thereto (the "**Letter Agreement**"; capitalized terms used herein but not otherwise defined herein shall have the meaning set forth in the Letter Agreement).

(b)    Notwithstanding anything to the contrary contained herein, the definition of "Obligations" shall specifically exclude any and all Excluded Swap Obligations. The foregoing limitation of the definition of Obligations shall be deemed applicable only to the obligations of Guarantor (or solely any particular Guarantor(s) if there is more than one Guarantor) under the particular Swap (or Swaps), or, if arising under a master agreement governing more than one Swap, the portion thereof that constitute Excluded Swap Obligations. As used herein, (i) "**Excluded Swap Obligations**" means, with respect to each Guarantor, any obligation to pay or perform under any agreement, contract or transaction that constitutes a Swap if, and to the extent that, all or any portion of this Guaranty that relates to the obligations under such Swap is or becomes illegal as to such Guarantor under the Commodity Exchange Act (7 U.S.C.§1 et seq.), as

amended from time to time, and any successor statute (the "**CEA**"), or any rule, regulation, or order of the Commodity Futures Trading Commission (the "**CFTC**"), by virtue of such Guarantor's failure for any reason to qualify as an "eligible contract participant" (as defined in the CEA and regulations promulgated thereunder) on the Eligibility Date for such Swap; (ii) "**Eligibility Date**" means the date on which this Guaranty becomes effective with respect to the particular Swap (for the avoidance of doubt, the Eligibility Date shall be the date of the execution of the particular Swap if this Guaranty is then in effect, and otherwise it shall be the date of execution and delivery of this Guaranty); and (iii) "**Swap**" means any "swap" as defined in Section 1a(47) of the CEA and regulations thereunder between Borrower and Bank, other than (A) a swap entered into on, or subject to the rules of, a board of trade designated as a contract market under Section 5 of the CEA, or (B) a commodity option entered into pursuant to CFTC Regulation 32.3(a).

     **2.**    **Nature of Guaranty; Revocation**.  This Guaranty is a continuing, absolute and unconditional guaranty of payment and not of collection, and all Obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. Guarantor acknowledges that this Guaranty and Guarantor's obligations under this Guaranty shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any kind or nature whatsoever which might otherwise constitute a defense available to Borrower with respect to any of its Obligations under any of the Loan Documents, to Guarantor with respect to this Guaranty or the obligations of Guarantor hereunder, or to any other person or party with respect to any other obligations or agreements relating to Borrower or Borrower's Obligations to Bank, including, without limitation, fraud in the inducement, failure of consideration, promissory estoppel, expiration of the statute of limitations or laches. The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other party, or whether any of Borrower or any other person is joined in any such action or actions.  All rights, powers and remedies hereunder shall apply to all past, present and future liabilities of Borrower to Bank, including arising under successive transactions continuing, increasing or decreasing any such Obligations or creating new Obligations.  This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at any time or from time to time.  Except as otherwise expressly set forth herein, as to each Guarantor, this Guaranty shall continue until written notice of revocation signed by such Guarantor, or until written notice of the death of such Guarantor (which shall be deemed a notice of revocation hereunder) shall in each case have been actually received by Bank, notwithstanding a revocation by, or the death of, or complete or partial release for any cause, of any one or more of the remainder of the Guarantor(s), or of Borrower or of anyone liable in any manner for the Obligations hereby guaranteed or for the Obligations (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase, decrease or change in personnel, management, shareholders or members of any one or more of the Guarantor(s) which may be corporations, partnerships or other entities. Except as otherwise expressly set forth herein, written notice as provided herein shall be the only means of revocation or termination of this Guaranty, notwithstanding the fact that for periods of time there may be no outstanding Obligations of Borrower.  No revocation or termination hereof shall affect in any manner the effectiveness and applicability of this Guaranty, or any rights of Bank or the obligations of Guarantor hereunder, with respect to (a) Obligations of Borrower which shall have been created, contracted, assumed or incurred prior to receipt by Bank of written notice of such revocation or termination, (b) all extensions, renewals or modifications of any of the Obligations referred to in (a) above made after receipt by Bank of such written notice or (c) Obligations of Borrower which shall have been created, contracted, assumed or incurred after receipt by Bank of such written notice pursuant to any

2

contract entered into by Bank prior to its receipt of such notice or which are otherwise related to or connected with Obligations of Borrower theretofore arising or transactions theretofore entered into.

Notwithstanding the foregoing, this Guaranty shall automatically terminate with respect to all Obligations when (i) all commitments to lend under the Letter Agreement and the Notes shall have expired or been terminated, (ii) the principal of and interest on the Line of Credit and the Term Loan and all fees and other Obligations in connection therewith shall have been indefeasibly paid in full in cash, (iii) all other Obligations of any kind owing to Bank shall have been cash collateralized or otherwise secured or supported in a manner satisfactory to Bank in its reasonable discretion, and (iv) all unreimbursed amounts shall have been indefeasibly paid in full in cash, provided, however, that in connection with the termination of this Agreement, Bank may require such indemnities as it shall reasonably deem necessary or appropriate to protect Bank against (x) loss on account of credits previously applied to the Obligations that may subsequently be reversed or revoked, (y) any obligations that may thereafter arise with respect to obligations in respect of cash management services or other bank products and (z) any Obligations that may thereafter arise under Section 17 of the Letter Agreement.

This Guaranty shall not terminate, supersede, cancel, diminish or modify any prior Guaranty or guaranties given by Guarantor to Bank with respect to Obligations of Borrower unless expressly provided herein. All Obligations guaranteed by Guarantor and all rights of Bank, herein and under such prior Guaranty or guaranties, are cumulative and Bank may exercise its rights singly or collectively, and sequentially or concurrently.

Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor is joined in any such action or actions.

This Guaranty sets forth the entire agreement and understanding of Bank and Guarantor, and Guarantor acknowledges and represents that there exist and have been made absolutely no oral or other agreements, understandings, representations or warranties of any kind or nature (including, without limitation, any agreements or representations concerning renewal, continuation or increase of any of Borrower's Obligations; any obligation of Bank with respect to any other guarantor of, or any collateral securing, any of Borrower's Obligations; or any limitation or condition whatsoever to Bank's rights and Guarantor's obligations hereunder) with respect to this Guaranty or the obligations of Guarantor hereunder, except as specifically and expressly set forth in this Guaranty.

3.    **Authorizations to Bank; Waivers**. Bank may at any time and from time to time (whether or not after revocation or termination of this Guaranty), in its sole discretion and without the consent of, or notice to, Guarantor, without incurring responsibility to Guarantor, without impairing or releasing the obligations of Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

(1)    change the manner, place or terms of payment, or interest rates on, and/or change or extend the time of payment of, renew or alter, any Obligation of Borrower, any security therefor, or any Obligation incurred directly or indirectly in respect thereof, and the Guaranty herein made shall apply to the Obligations of Borrower as so changed, extended, renewed or altered;

3

(2)     take and hold, and sell, exchange, release, surrender, substitute, realize upon or otherwise deal with in any manner and in any order, and direct the order or manner of sale thereof (including without limitation by non-judicial sale pursuant to governing security documents and applicable law), any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Obligations hereby guaranteed or any other obligations (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3)     exercise or refrain from exercising any rights against Borrower or others (including Guarantor), or any security or otherwise act or refrain from acting;

(4)     settle, compromise, discharge or release any Obligation hereby guaranteed, any security therefor or any other obligation (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of Borrower to creditors of Borrower other than Bank and Guarantor;

(5)     release or substitute any one or more of the endorsers or other guarantors of the Obligations, or any portion thereof, or any other party thereto;

(6)     apply any sums by whomsoever paid or howsoever realized to any Obligations of Borrower to Bank, in such order as Bank shall determine (and Guarantor hereby waives any provision of law regarding applications of payments which specifies otherwise), regardless of what Obligations of Borrower remain unpaid; and

(7)     exercise any right or remedy Bank may have with respect to the Obligations or any security for the Obligations, this Guaranty or any other guaranty.

No invalidity, irregularity or unenforceability of all or any part of the Obligations hereby guaranteed or of any security therefor shall affect, impair or be a defense to this Guaranty, and this Guaranty is a primary obligation of Guarantor.

Guarantor waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such Obligations, suit or taking other action by Bank against, and any other notice to, any party liable thereon (including Guarantor).

Guarantor waives any right to require Bank to proceed against Borrower or any other person, or to marshal assets or proceed against or exhaust any collateral security for the Obligations, or to give notice of the terms, time and place of any public or private sale or other disposition of any such collateral security, or to take any other action or pursue any other remedy in Bank's power.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and Guarantor agrees that any payment of any Indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder.

Guarantor absolutely, unconditionally and irrevocably waives any and all rights to assert any defense, setoff, counterclaim or cross-claim of any kind or nature whatsoever with respect to this Guaranty, or the obligations of Guarantor under this Guaranty, or the obligations of any other person or

4

party (including, without limitation, Borrower) relating to this Guaranty, or otherwise with respect to the Obligations of Borrower, in any action or proceeding brought by Bank (or any subsequent holder of this Guaranty) to collect the liabilities of Borrower or any portion thereof, or to enforce the obligations of Guarantor under this Guaranty.

4.    **Additional Waivers**.

(a)    Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Until the Obligations are indefeasibly paid in full, Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(b)    To require Bank to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Obligations, disclose information with respect to the Obligations, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(c)    That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(d)    To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer other than the indefeasible payment in full of the Obligations;

(e)    To be discharged if any of the terms, conditions or provisions of the Obligations are altered in any respect;

(f)    To be discharged upon acceptance by Bank of anything in partial satisfaction of the Obligations, and/or if Bank designates the portion of the Obligations to be satisfied;

(g)    To be discharged upon any modification of the Obligations or the release by Bank of Borrower or any other guarantor, endorser or co-signer;

(h)    To require Bank to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Bank's power;

(i)    To receive the benefit of or participate in any and all security for repayment and/or performance of the Obligations;

(j)    To have any security for the Obligations first applied to satisfy or discharge the Obligations;

5

(k)    That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(l)    To be discharged based upon any failure by Bank to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Obligations, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Bank realizes upon any collateral;

(m)    To be discharged due to the release or discharge of any collateral for any Obligations or guaranty, or relating to the validity, value or enforceability of any collateral;

(n)    Guarantor also waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property.  This means, among other things: (1) Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2)  if Bank forecloses on any real property collateral pledged by Borrower:  (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure; and

(o)    Guarantor also waives all rights and defenses arising out of an election of remedies by Bank, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419 AND 3605, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

**5.**    **Security; Setoff**.  This Guaranty is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Guarantor has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Guarantor to Bank.  Bank at all times and from time to time shall have the right to require Guarantor to deliver to Bank as security for the Obligations of Guarantor hereunder, collateral security, original or additional, satisfactory to Bank.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other

6

dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Guarantor hereunder.

6.    **Representations and Warranties; Covenants**.    Guarantor hereby represents and warrants to Bank that: (a) this Guaranty and all other documents or agreements at any time hereafter delivered by Guarantor to Bank in connection herewith have been duly authorized, and upon their execution and delivery to Bank will constitute legal, valid and binding agreements and obligations of Guarantor, enforceable in accordance with their respective terms; (b) the consummation of the transactions contemplated by this Guaranty and the fulfillment of the terms hereof will not (i) conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time or both) a default under any contractual obligation of Guarantor; (ii) result in the creation or imposition of any lien or other encumbrance upon any of Guarantor's properties pursuant to the terms of any such contractual obligation or (iii) violate any law, rule or regulation applicable to Guarantor; (c) this Guaranty is executed at Borrower's request in order to induce Bank to extend or maintain the Obligations to Borrower; (d) Bank has made no representation to Guarantor as to the creditworthiness of Borrower or as to the nature or sufficiency of any collateral securing the Obligations or any part thereof; and (e) Guarantor has established adequate means of obtaining from Borrower on a continuing basis financial and other information pertaining to Borrower's financial condition.    Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that Bank shall have no obligation to disclose to Guarantor any information or material about any of the Borrowers which is acquired by Bank in any manner.

7.    **Information**.    So long as this Guaranty shall remain in effect, and without limitation of any provision of any other document evidencing or securing the Obligations, Guarantor agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Guarantor as Bank may reasonably request from time to time, and (b) if applicable, at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from his, her or its records and books of account, visit his, her or its properties and discuss his, her or its affairs, finances and accounts with any of his, her or its officers, directors or independent accountants.

8.    **Enforceability of Obligations**.    No modification, limitation or discharge of the Obligations arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law will affect, modify, limit or discharge Guarantor's liability in any manner whatsoever and this Guaranty will remain and continue in full force and effect and will be enforceable against Guarantor to the same extent and with the same force and effect as if any such proceeding had not been instituted.    Guarantor waives all rights and benefits which might accrue to it by reason of any such proceeding and will be liable to the full extent hereunder, irrespective of any modification, limitation or discharge of the liability of Borrower that may result from any such proceeding.

9.`    **Events of Default; Remedies**.    The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an "**Event of Default**" under this Guaranty.

Upon the happening of any Event of Default, and in any such event, and at any time thereafter, Bank may, without notice to Borrower or Guarantor, make the Obligations of Borrower to Bank, whether or not then due, immediately due to and payable hereunder as to Guarantor, and terminate any commitment or obligation to make loan advances, issue letters of credit or extend additional credit

7

accommodations to Borrower, and Bank shall be entitled to enforce the obligations of Guarantor hereunder.

Further, upon the happening of an Event of Default, Bank may immediately or at any time or times thereafter without demand or notice to Borrower or Guarantor and without advertisement, all of which are hereby expressly waived, sell, resell, assign and deliver all or part of any collateral security for the Obligations, at public or private sale, for cash, upon credit or for future delivery, and in connection therewith may grant options. Upon each such sale Bank may purchase the whole or any part of such collateral security, free from any right of redemption, which is hereby waived and released.

10.    **Subordination**. Without limiting Bank's rights under any other agreement, upon the date notice of revocation or termination of this Guaranty is received, or upon the occurrence of an Event of Default hereunder or under any of the Loan Documents, any obligations owed by Borrower to Guarantor in connection with any extension of credit or financial accommodation by Guarantor to or for the account of Borrower are hereby subordinated to the Obligations of Borrower, and any amounts received by Guarantor in connection therewith shall be paid over to Bank on account of the Obligations of Borrower without reducing or affecting in any manner the liability of Guarantor under other provisions of this Guaranty.

11.    **Waiver of Subrogation and Related Rights**. Guarantor shall not exercise, and hereby expressly waives, any right of subrogation against any Credit Party which it may otherwise have at any time as a result of this Guaranty (whether contractual, under Section 509 of the Bankruptcy Code, or otherwise) until all of the Obligations of Borrower and the other Credit Parties have been indefeasibly paid in full. If any amount is paid to Guarantor on account of subrogation rights Guarantor may otherwise have as a result of this Guaranty, when the Obligations of Borrower shall not have been paid in full, the amount received by Guarantor shall be held in trust for the benefit of Bank and shall be promptly paid to Bank to be credited and applied to the Obligations of Borrower. Further, until the Obligations are indefeasibly paid in full and all commitments to lend under the Notes and the Letter Agreement are terminated, Guarantor waives all of Guarantor's rights of reimbursement, indemnification and contribution.

12.    **Repayment or Recovery from Bank**. If claim is ever made upon Bank for repayment, return, restoration, rescission or other recovery of any amount or amounts received by Bank in payment or on account of any of the Obligations of Borrower or any other obligations of Guarantor hereunder and Bank repays all or part of said amount: (a) because such payment or application of proceeds is or may be avoided, rescinded, invalidated, declared fraudulent, set aside or determined to be void or voidable as a preferential transfer, fraudulent conveyance, impermissible setoff or a diversion of trust funds; or (b) for any other reason, including (without limitation) by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over Bank or any of Bank's assets or (ii) any settlement or compromise of any such claim effected by Bank with any such claimant (including Borrower), then and in such event Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon Guarantor, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of Borrower, and Guarantor shall be and remain liable to Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Bank, subject in all events to the amount of Guarantor's guaranty as set forth in paragraph 1(a) above. Guarantor hereby agrees to indemnify and to reimburse and hold Bank harmless for the amount so repaid and for all other claims, actions, suits, proceedings, liabilities, losses, costs and expenses of every kind (including, without limitation, the disbursements, expenses and fees of Bank's

8

attorneys) that may be imposed upon, incurred by or asserted against Bank (i) in connection with defending any such claim for repayment and collecting such amount from Guarantor or (ii) otherwise arising out of or related directly or indirectly to this Guaranty (including, without limitation, any action, suit or proceeding between Guarantor and Bank, whether on this Guaranty or otherwise). The provisions of this paragraph shall survive the termination of this Guaranty, and any satisfaction and discharge of Borrower by virtue of any payment or court order or any state or federal law, but in no event shall the provisions of this paragraph expand or increase the amount of Guarantor's guaranty as set forth in paragraph 1(a) above.

13. **Preservation of Rights**. No delay or omission on Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Bank's action or inaction impair any such right or power. Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Bank may have under any other agreements, at law or in equity. Bank may proceed in any order against Borrower, Guarantor or any other obligor of, or any collateral securing, the Obligations.

14. **Nature of Guarantor's Obligations**. Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

15. **Prohibited Person Compliance**. Guarantor warrants, represents and covenants that neither Guarantor nor any of its affiliates is or will be a person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224 or (d) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Guarantor covenants and agrees that neither Guarantor nor any of its affiliates will knowingly (i) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Guarantor further covenants and agrees to deliver (from time to time) to Bank any such certification or other evidence as may be requested by Bank in its sole and absolute discretion, confirming each such representation.

16. **Interpretation**. In this Guaranty, unless Bank and Guarantor otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Guaranty; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in this Guaranty are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the

9

certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any Person include that Person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Guaranty are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose. If this Guaranty is executed by more than one party as Guarantor, or if separate guaranties of Borrower's Obligations to Bank are executed by other parties, the obligations of all such persons or entities will be joint and several.

17.    **Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Guaranty must be in writing delivered to each such other party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and with respect to any notice to Bank, a copy to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending, with a copy to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder. No notice to or demand on Guarantor will entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

18.    **Reserved**.

19.    **Entire Agreement**. This Guaranty constitutes the entire agreement between Guarantor and Bank with respect to the subject hereof and supersedes all prior negotiations, communications and agreements (written or oral), discussions and correspondence concerning the subject matter hereof. Guarantor and Bank agree that any inconsistency or discrepancy between the provisions of this Guaranty and any other documentation evidencing the Obligations of Guarantor to Bank shall be resolved in the manner most favorable to Bank.

20.    **Severability; Waivers**. The provisions of this Guaranty are severable and if any waiver or other provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction. Without limiting the foregoing, Guarantor hereby warrants and agrees that each of the waivers set forth herein is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, such waivers are reasonable and not contrary to public policy or law.

21.    **Limitation of Liability**.

(a)    To the fullest extent permitted by applicable law, Guarantor shall not assert, and hereby waives any claim against Bank, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this

10

Guaranty, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof.

(b)  Any term or provision of this Guaranty to the contrary notwithstanding, the maximum aggregate amount for which any Guarantor shall be liable hereunder shall not exceed the maximum amount for which such Guarantor can be liable without rendering this Guaranty or any other Loan Document, as it relates to such Guarantor, subject to avoidance under applicable laws relating to fraudulent conveyance or fraudulent transfer (including but not limited to the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) (collectively, "**Fraudulent Transfer Laws**").  Any analysis of the provisions of this Guaranty for purposes of Fraudulent Transfer Laws shall take into account the right of contribution established in Section 21(c) and, for purposes of such analysis, give effect to any discharge of intercompany debt as a result of any payment made under this Guaranty.

(c)  To the extent that any Guarantor shall be required hereunder to pay any portion of any guaranteed Obligation exceeding the greater of (i) the amount of the value actually received by such Guarantor and its subsidiaries from the advances under the Letter Agreement and the other Obligations and (ii) the amount such Guarantor would otherwise have paid if such Guarantor had paid the aggregate amount of the guaranteed Obligations (excluding the amount thereof repaid by Borrower) in the same proportion as such Guarantor's net worth on the date enforcement is sought hereunder bears to the aggregate net worth of all the guarantors of the Obligations on such date, then such Guarantor shall be reimbursed by such other guarantors for the amount of such excess, pro rata, based on the respective net worth of such other guarantors on such date.

**22.**    **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Guaranty for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Guarantor (which may be sent by electronic mail).

**23.**    **No Waiver; Remedies**.  No failure on the part of Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

**24.**    **Successors and Assigns; Assignments**.  This Guaranty and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Guarantor and its legal representatives, successors and assigns; provided, however, that Guarantor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole and absolute discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Guarantor, its business or any collateral security provided in connection herewith.

**25.** **Counterparts; Electronic Transmission**. This Guaranty may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Guaranty. Delivery of any executed counterpart of this Guaranty by electronic transmission shall be effective as delivery of a manually executed counterpart hereof. Guarantor acknowledges that information and documents relating to this Guaranty and the credit accommodations provided for herein may be transmitted through electronic means.

**26.** **Patriot Act**. Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank may be required to obtain, verify and record information that identifies Guarantor, which information includes the name, address, tax identification number and other information regarding Guarantor that will allow Bank to identify Guarantor in accordance with the Patriot Act. In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

**27.** **GOVERNING LAW.** THIS GUARANTY WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION HEREUNDER WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY. NO REFERENCE TO ANY PROVISION OF ANY OTHER STATE'S LAWS WHICH MAY APPEAR HEREIN SHALL BE DEEMED TO SUPERSEDE THE CHOICE OF LAW SET FORTH IN THIS SECTION.

**28.** **VENUE; JURISDICTION.** ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND GUARANTOR AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION, OR PROCEEDING BETWEEN GUARANTOR AND BANK. GUARANTOR FURTHER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, BETWEEN GUARANTOR AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. GUARANTOR DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON GUARANTOR AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 17 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY GUARANTOR AND SHALL CONSTITUTE "PERSONAL DELIVERY" THEREOF. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER

12

MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GUARANTOR IN ANY OTHER JURISDICTIONS.

29.    **WAIVER OF JURY TRIAL**. GUARANTOR (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT GUARANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS GUARANTY, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS GUARANTY, ANY OF THE OBLIGATIONS, ANY COLLATERAL OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO GUARANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY GUARANTOR IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

30.    **JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY**. IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.*, ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

4812-6416-2976v2/104763-0009

000461

**30.** **JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.** IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.*, ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

Guarantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.

_____                    _____
Spiro's initials                             Trust signatory's initials

**31.** **Further Assurances; Corrections of Defects**. Guarantor, intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Guaranty or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Guarantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Guaranty, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations.

**32.** **Equal Credit Opportunity Act**. If Guarantor is not an "applicant for credit" under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("**ECOA**"), Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

13

000462

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the date first written above.

GUARANTOR:

**ROBERT DOUGLAS SPIRO, JR.**

By: _____


**SPIRO REVOCABLE FAMILY TRUST**

By: _____
Name: Robert Douglas Spiro, Jr.
Title: Trustee

By: _____
Name: Diana Castillo Spiro
Title: Trustee

*Signature Page to Limited Guaranty*

**<u>Spousal Consent</u>**

I am married to Robert Douglas Spiro, Jr., the Guarantor under the Limited Guaranty (the "**Agreement**") dated as of the date first set forth therein executed by my spouse in favor of Bank Leumi USA (the "**Lender**"). I acknowledge that I have read the Agreement and that I know its contents. I am aware that the legal, financial and related matters contained in the Agreement are complex, and I acknowledge that I have been advised to have the Agreement reviewed by independent legal counsel and to consult with such counsel regarding the provisions of the Agreement and their impact on me. I acknowledge that I have had full and adequate opportunity to have the Agreement reviewed by independent legal counsel and to discuss the Agreement with such counsel, and I have either sought such guidance or determined not to do so after reviewing the Agreement carefully. I am aware that by its provisions my spouse, Robert Douglas Spiro, Jr., agrees to, among other things, guarantee up to $5,000,000 of indebtedness owed by Better 4 You Breakfast, Inc. (the "**Borrower**") to the Lender on the terms set forth in the Agreement, and that such guaranty of such indebtedness includes my community property interest therein. I hereby consent to such guaranty, approve of all of the provisions of the Agreement, and agree that I will take no action at any time to hinder operation of the Agreement or my interest in the above-mentioned loans.

By: _____

Printed Name:  Diana Castillo Spiro

*Spousal Consent to Limited Guaranty*

# EXHIBIT T

000465



## UNLIMITED GUARANTY

**THIS UNLIMITED GUARANTY** (this "**Guaranty**") is made and entered into as of this 16th day of August, 2019, by Balance Foods, LLC, a California limited liability company ("**Balance**"), Moreno Bros. Distributing, LLC, a California limited liability company ("**Moreno**") and Capital Stone Equity Fund I LP, a Delaware limited partnership ("**Capital Stone**" and together with Balance and Moreno, individually and collectively, jointly and severally, the "**Guarantor**") and delivered to **BANK LEUMI USA** ("**Bank**"), with an address at 555 W. 5th Street, Suite 3300, Los Angeles, CA 90013, in consideration of Bank previously, now or hereafter (a) extending or agreeing to extend any credit or other financial accommodation to Better 4 You Breakfast, Inc., a California corporation ("**Borrower**"), or (b) agreeing to any direct or indirect extension, renewal, replacement or modification of, or waiver or forbearance with respect to any such credit or other financial accommodation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.  The term "**Bank**" as used throughout this instrument shall be deemed to include BANK LEUMI USA, all its subsidiaries and all its agencies, branches and departments wherever located.

1.      Guaranteed Obligations.

(a)     Guarantor irrevocably, unconditionally and absolutely guarantees to Bank, and becomes surety for the prompt performance and payment when due, whether by acceleration, demand or otherwise, of (i) any and all Obligations (hereafter defined) of Borrower to Bank, in the aggregate at any one time outstanding plus all interest thereon, and (ii) all attorneys' fees, costs and expenses of collection incurred by Bank in enforcing any of such Obligations and/or this Guaranty.  This is a guaranty of payment and not of collection.  Bank shall not be obligated to make any request or demand upon or to pursue any of its rights against Borrower or any other person who may be liable for the payment of the Obligations, or to pursue any collateral security therefor, as a condition of Guarantor's liability hereunder.  If Borrower fails to pay when due or otherwise defaults under any Obligations, Guarantor will pay such Obligations to Bank.

The term "**Obligations**" shall the meaning given such term in that certain letter agreement dated as of the date hereof among Guarantor, Bank, and the other parties thereto (the "**Letter Agreement**"; capitalized terms used herein but not otherwise defined herein shall have the meaning set forth in the Letter Agreement).

(b)     Notwithstanding anything to the contrary contained herein, the definition of "Obligations" shall specifically exclude any and all Excluded Swap Obligations.  The foregoing limitation of the definition of Obligations shall be deemed applicable only to the obligations of Guarantor (or solely any particular Guarantor(s) if there is more than one Guarantor) under the particular Swap (or Swaps), or, if arising under a master agreement governing more than one Swap, the portion thereof that constitute Excluded Swap Obligations.  As used herein, (i) "**Excluded Swap Obligations**" means, with respect to each Guarantor, any obligation to pay or perform under any agreement, contract or transaction that constitutes a Swap if, and to the extent that, all or any portion of this Guaranty that relates to the obligations under such Swap is or becomes illegal as to such Guarantor under the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute (the "**CEA**"), or any rule, regulation, or order of the Commodity Futures Trading Commission (the "**CFTC**"), by virtue of such Guarantor's failure for any reason to qualify as an "eligible contract participant" (as defined in the CEA and regulations promulgated thereunder) on the Eligibility Date for such Swap; (ii) "**Eligibility Date**" means the date on which this Guaranty becomes effective with respect to the particular Swap (for the avoidance of doubt, the Eligibility Date shall be the date of the execution

of the particular Swap if this Guaranty is then in effect, and otherwise it shall be the date of execution and delivery of this Guaranty); and (iii) "**Swap**" means any "swap" as defined in Section 1a(47) of the CEA and regulations thereunder between Borrower and Bank, other than (A) a swap entered into on, or subject to the rules of, a board of trade designated as a contract market under Section 5 of the CEA, or (B) a commodity option entered into pursuant to CFTC Regulation 32.3(a).

2.      **Nature of Guaranty; Revocation**.   This Guaranty is a continuing, absolute and unconditional guaranty of payment and not of collection, and all Obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. Guarantor acknowledges that this Guaranty and Guarantor's obligations under this Guaranty shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any kind or nature whatsoever which might otherwise constitute a defense available to Borrower with respect to any of its Obligations under any of the Loan Documents, to Guarantor with respect to this Guaranty or the obligations of Guarantor hereunder, or to any other person or party with respect to any other obligations or agreements relating to Borrower or Borrower's Obligations to Bank, including, without limitation, fraud in the inducement, failure of consideration, promissory estoppel, expiration of the statute of limitations or laches. The obligations hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other party, or whether any of Borrower or any other person is joined in any such action or actions.  All rights, powers and remedies hereunder shall apply to all past, present and future liabilities of Borrower to Bank, including arising under successive transactions continuing, increasing or decreasing any such Obligations or creating new Obligations.  This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at any time or from time to time.  Except as otherwise expressly set forth herein, as to each Guarantor, this Guaranty shall continue until written notice of revocation signed by such Guarantor, or until written notice of the death of such Guarantor (which shall be deemed a notice of revocation hereunder) shall in each case have been actually received by Bank, notwithstanding a revocation by, or the death of, or complete or partial release for any cause, of any one or more of the remainder of the Guarantor(s), or of Borrower or of anyone liable in any manner for the Obligations hereby guaranteed or for the Obligations (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase, decrease or change in personnel, management, shareholders or members of any one or more of the Guarantor(s) which may be corporations, partnerships or other entities.  Except as otherwise expressly set forth herein, written notice as provided herein shall be the only means of revocation or termination of this Guaranty, notwithstanding the fact that for periods of time there may be no outstanding Obligations of Borrower.  No revocation or termination hereof shall affect in any manner the effectiveness and applicability of this Guaranty, or any rights of Bank or the obligations of Guarantor hereunder, with respect to (a) Obligations of Borrower which shall have been created, contracted, assumed or incurred prior to receipt by Bank of written notice of such revocation or termination, (b) all extensions, renewals or modifications of any of the Obligations referred to in (a) above made after receipt by Bank of such written notice or (c) Obligations of Borrower which shall have been created, contracted, assumed or incurred after receipt by Bank of such written notice pursuant to any contract entered into by Bank prior to its receipt of such notice or which are otherwise related to or connected with Obligations of Borrower theretofore arising or transactions theretofore entered into.

Notwithstanding the foregoing, this Guaranty shall automatically terminate with respect to all Obligations when (i) all commitments to lend under the Letter Agreement and the Notes shall have expired or been terminated, (ii) the principal of and interest on the Line of Credit and the Term Loan and all fees and other Obligations in connection therewith shall have been

2

indefeasibly paid in full in cash, (iii) all other Obligations of any kind owing to Bank shall have been cash collateralized or otherwise secured or supported in a manner satisfactory to Bank in its reasonable discretion, and (iv) all unreimbursed amounts shall have been indefeasibly paid in full in cash, provided, however, that in connection with the termination of this Agreement, Bank may require such indemnities as it shall reasonably deem necessary or appropriate to protect Bank against (x) loss on account of credits previously applied to the Obligations that may subsequently be reversed or revoked, (y) any obligations that may thereafter arise with respect to obligations in respect of cash management services or other bank products and (z) any Obligations that may thereafter arise under Section 17 of the Letter Agreement.

This Guaranty shall not terminate, supersede, cancel, diminish or modify any prior Guaranty or guaranties given by Guarantor to Bank with respect to Obligations of Borrower unless expressly provided herein.  All Obligations guaranteed by Guarantor and all rights of Bank, herein and under such prior Guaranty or guaranties, are cumulative and Bank may exercise its rights singly or collectively, and sequentially or concurrently.

Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower or any other guarantor or surety of the Obligations.  This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations.  The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor.  A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor is joined in any such action or actions.

This Guaranty sets forth the entire agreement and understanding of Bank and Guarantor, and Guarantor acknowledges and represents that there exist and have been made absolutely  no oral or other agreements, understandings, representations or warranties of any kind or nature (including, without limitation, any agreements or representations concerning renewal, continuation or increase of any of Borrower's Obligations; any obligation of Bank with respect to any other guarantor of, or any collateral securing, any of Borrower's Obligations; or  any limitation or condition whatsoever to Bank's rights and Guarantor's obligations hereunder) with respect to this Guaranty or the obligations of Guarantor hereunder, except as specifically and expressly set forth in this Guaranty.

    3.    **Authorizations to Bank; Waivers**.  Bank may at any time and from time to time (whether or not after revocation or termination of this Guaranty), in its sole discretion and without the consent of, or notice to, Guarantor, without incurring responsibility to Guarantor, without impairing or releasing the obligations of Guarantor hereunder, upon or without any terms or conditions and in whole or in part:

        (1)    change the manner, place or terms of payment, or interest rates on, and/or change or extend the time of payment of, renew or alter, any Obligation of Borrower, any security therefor, or any Obligation incurred directly or indirectly in respect thereof, and the Guaranty herein made shall apply to the Obligations of Borrower as so changed, extended, renewed or altered;

        (2)    take and hold, and sell, exchange, release, surrender, substitute, realize upon or otherwise deal with in any manner and in any order, and direct the order or manner of sale thereof (including without limitation by non-judicial sale pursuant to governing  security documents and applicable law), any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the Obligations hereby guaranteed or any other obligations (including any of

3

those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3)    exercise or refrain from exercising any rights against Borrower or others (including Guarantor), or any security or otherwise act or refrain from acting;

(4)    settle, compromise, discharge or release any Obligation hereby guaranteed, any security therefor or any other obligation (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of Borrower to creditors of Borrower other than Bank and Guarantor;

(5)    release or substitute any one or more of the endorsers or other guarantors of the Obligations, or any portion thereof, or any other party thereto;

(6)    apply any sums by whomsoever paid or howsoever realized to any Obligations of Borrower to Bank, in such order as Bank shall determine (and Guarantor hereby waives any provision of law regarding applications of payments which specifies otherwise), regardless of what Obligations of Borrower remain unpaid; and

(7)    exercise any right or remedy Bank may have with respect to the Obligations or any security for the Obligations, this Guaranty or any other guaranty.

No invalidity, irregularity or unenforceability of all or any part of the Obligations hereby guaranteed or of any security therefor shall affect, impair or be a defense to this Guaranty, and this Guaranty is a primary obligation of Guarantor.

Guarantor waives notice of acceptance of this Guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such Obligations, suit or taking other action by Bank against, and any other notice to, any party liable thereon (including Guarantor).

Guarantor waives any right to require Bank to proceed against Borrower or any other person, or to marshal assets or proceed against or exhaust any collateral security for the Obligations, or to give notice of the terms, time and place of any public or private sale or other disposition of any such collateral security, or to take any other action or pursue any other remedy in Bank's power.

Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and Guarantor agrees that any payment of any Indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder.

Guarantor absolutely, unconditionally and irrevocably waives any and all rights to assert any defense, setoff, counterclaim or cross-claim of any kind or nature whatsoever with respect to this Guaranty, or the obligations of Guarantor under this Guaranty, or the obligations of any other person or party (including, without limitation, Borrower) relating to this Guaranty, or otherwise with respect to the Obligations of Borrower, in any action or proceeding brought by Bank (or any subsequent holder of this Guaranty) to collect the liabilities of Borrower or any portion thereof, or to enforce the obligations of Guarantor under this Guaranty.

4

**4.**    Additional Waivers.

(a)    Guarantor acknowledges that Guarantor may have certain rights under applicable law which, if not waived by Guarantor, might provide Guarantor with defenses against Guarantor's liability under this Guaranty. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Until the Obligations are indefeasibly paid in full, Guarantor waives all of Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Guarantor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Guarantor's rights:

(b)    To require Bank to notify Guarantor of any default by Borrower, provide Guarantor with notice of any sale or other disposition of security for any Obligations, disclose information with respect to the Obligations, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(c)    That Guarantor's obligation under this Guaranty must be commensurate with that of Borrower;

(d)    To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other guarantor, endorser or co-signer other than the indefeasible payment in full of the Obligations;

(e)    To be discharged if any of the terms, conditions or provisions of the Obligations are altered in any respect;

(f)    To be discharged upon acceptance by Bank of anything in partial satisfaction of the Obligations, and/or if Bank designates the portion of the Obligations to be satisfied;

(g)    To be discharged upon any modification of the Obligations or the release by Bank of Borrower or any other guarantor, endorser or co-signer;

(h)    To require Bank to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Bank's power;

(i)    To receive the benefit of or participate in any and all security for repayment and/or performance of the Obligations;

(j)    To have any security for the Obligations first applied to satisfy or discharge the Obligations;

(k)    That any arbitration award rendered against Borrower not constitute an award against Guarantor;

(l)    To be discharged based upon any failure by Bank to perfect or continue perfection of any lien, use due diligence to collect all or any part of any Obligations, or if

5

recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Bank realizes upon any collateral;

(m)    To be discharged due to the release or discharge of any collateral for any Obligations or guaranty, or relating to the validity, value or enforceability of any collateral;

(n)    Guarantor also waives all rights and defenses that Guarantor may have because Borrower's debt is secured by real property. This means, among other things: (1) Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) if Bank forecloses on any real property collateral pledged by Borrower:  (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Bank may collect from Guarantor even if Bank, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure; and

(o)    Guarantor also waives all rights and defenses arising out of an election of remedies by Bank, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, GUARANTOR HEREBY ABSOLUTELY, KNOWINGLY, UNCONDITIONALLY, AND EXPRESSLY WAIVES AND AGREES NOT TO ASSERT ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE SECTIONS 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2825, 2839, 2845, 2848, 2849, AND 2850, CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 580a, 580b, 580c, 580d, AND 726, CALIFORNIA UNIFORM COMMERCIAL CODE SECTIONS 3116, 3118, 3119, 3419 AND 3605, AND CHAPTER 2 OF TITLE 14 OF PART 4 OF DIVISION 3 OF THE CALIFORNIA CIVIL CODE.

**5.    Security; Setoff**.  This Guaranty is secured by the property described in any security agreement, pledge agreement, mortgage or other collateral security document which Guarantor has heretofore or may from time to time hereafter execute and deliver to Bank to secure any obligations of Guarantor to Bank.  Bank at all times and from time to time shall have the right to require Guarantor to deliver to Bank as security for the Obligations of Guarantor hereunder, collateral security, original or additional, satisfactory to Bank.

No failure by Bank to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Bank to insure or protect any security nor any other dealing (or failure to deal) with any security by Bank, shall impair or release the obligations of Guarantor hereunder.

**6.    Representations and Warranties; Covenants**.  Guarantor hereby represents and warrants to Bank that: (a) this Guaranty and all other documents or agreements at any time hereafter

6

delivered by Guarantor to Bank in connection herewith have been duly authorized, and upon their execution and delivery to Bank will constitute legal, valid and binding agreements and obligations of Guarantor, enforceable in accordance with their respective terms; (b) the consummation of the transactions contemplated by this Guaranty and the fulfillment of the terms hereof will not (i) conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time or both) a default under Guarantor's organizational documents or any contractual obligation of Guarantor; (ii) result in the creation or imposition of any lien or other encumbrance upon any of Guarantor's properties pursuant to the terms of any such contractual obligation or (iii) violate any law, rule or regulation applicable to Guarantor; (c) this Guaranty is executed at Borrower's request in order to induce Bank to extend or maintain the Obligations to Borrower; (d) Bank has made no representation to Guarantor as to the creditworthiness of Borrower or as to the nature or sufficiency of any collateral securing the Obligations or any part thereof; and (e) Guarantor has established adequate means of obtaining from Borrower on a continuing basis financial and other information pertaining to Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Guarantor further agrees that Bank shall have no obligation to disclose to Guarantor any information or material about any of the Borrowers which is acquired by Bank in any manner.

7.    **Information**.  So long as this Guaranty shall remain in effect, and without limitation of any provision of any other document evidencing or securing the Obligations, Guarantor agrees to (a) furnish to Bank, with reasonable promptness, such financial statements, tax returns or other information concerning the business, operations, properties and condition, financial or otherwise, of Guarantor as Bank may reasonably request from time to time, and (b) if applicable, at any reasonable time and from time to time, permit Bank or any of its agents or representatives to examine and make copies of and abstracts from his, her or its records and books of account, visit his, her or its properties and discuss his, her or its affairs, finances and accounts with any of his, her or its officers, directors or independent accountants.

8.    **Enforceability of Obligations**.    No modification, limitation or discharge of the Obligations arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law will affect, modify, limit or discharge Guarantor's liability in any manner whatsoever and this Guaranty will remain and continue in full force and effect and will be enforceable against Guarantor to the same extent and with the same force and effect as if any such proceeding had not been instituted. Guarantor waives all rights and benefits which might accrue to it by reason of any such proceeding and will be liable to the full extent hereunder, irrespective of any modification, limitation or discharge of the liability of Borrower that may result from any such proceeding.

9.    **Events of Default; Remedies**.  The occurrence of any Event of Default under the Line of Credit Note or the Term Note shall constitute an "**Event of Default**" under this Guaranty.

Upon the happening of any Event of Default, and in any such event, and at any time thereafter, Bank may, without notice to Borrower or Guarantor, make the Obligations of Borrower to Bank, whether or not then due, immediately due to and payable hereunder as to Guarantor, and terminate any commitment or obligation to make loan advances, issue letters of credit or extend additional credit accommodations to Borrower, and Bank shall be entitled to enforce the obligations of Guarantor hereunder.

Further, upon the happening of an Event of Default, Bank may immediately or at any time or times thereafter without demand or notice to Borrower or Guarantor and without advertisement, all of

7

which are hereby expressly waived, sell, resell, assign and deliver all or part of any collateral security for the Obligations, at public or private sale, for cash, upon credit or for future delivery, and in connection therewith may grant options. Upon each such sale Bank may purchase the whole or any part of such collateral security, free from any right of redemption, which is hereby waived and released.

In the case of each such sale, or of any proceedings to collect any obligations of Guarantor, Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery, including reasonable attorneys' fees, and after deducting such costs and expenses from the proceeds of sale or collection, Bank may apply any residue to pay any obligations of Guarantor, who shall continue to be liable for any deficiency, with interest.

10.     **Subordination**.   Without limiting Bank's rights under any other agreement, upon the date notice of revocation or termination of this Guaranty is received, or upon the occurrence of an Event of Default hereunder or under any of the Loan Documents, any obligations owed by Borrower to Guarantor in connection with any extension of credit or financial accommodation by Guarantor to or for the account of Borrower are hereby subordinated to the Obligations of Borrower, and any amounts received by Guarantor in connection therewith shall be paid over to Bank on account of the Obligations of Borrower without reducing or affecting in any manner the liability of Guarantor under other provisions of this Guaranty.

11.     **Waiver of Subrogation and Related Rights**.   Guarantor shall not exercise, and hereby expressly waives, any right of subrogation against any Credit Party which it may otherwise have at any time as a result of this Guaranty (whether contractual, under Section 509 of the Bankruptcy Code, or otherwise) until all of the Obligations of Borrower and the other Credit Parties have been indefeasibly paid in full.  If any amount is paid to Guarantor on account of subrogation rights Guarantor may otherwise have as a result of this Guaranty, when the Obligations of Borrower shall not have been paid in full, the amount received by Guarantor shall be held in trust for the benefit of Bank and shall be promptly paid to Bank to be credited and applied to the Obligations of Borrower.  Further, until the Obligations are indefeasibly paid in full and all commitments to lend under the Notes and the Letter Agreement are terminated, Guarantor waives all of Guarantor's rights of reimbursement, indemnification and contribution.

12.     **Repayment or Recovery from Bank**.   If claim is ever made upon Bank for repayment, return, restoration, rescission or other recovery of any amount or amounts received by Bank in payment or on account of any of the Obligations of Borrower or any other obligations of Guarantor hereunder and Bank repays all or part of said amount: (a) because such payment or application of proceeds is or may be avoided, rescinded, invalidated, declared fraudulent, set aside or determined to be void or voidable as a preferential transfer, fraudulent conveyance, impermissible setoff or a diversion of trust funds; or (b) for any other reason, including (without limitation) by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over Bank or any of Bank's assets or (ii) any settlement or compromise of any such claim effected by Bank with any such claimant (including Borrower), then and in such event Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon Guarantor, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of Borrower, and Guarantor shall be and remain liable to Bank hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Bank.  Guarantor hereby agrees to indemnify and to reimburse and hold Bank harmless for the amount so repaid and for all other claims, actions, suits, proceedings, liabilities, losses, costs and expenses of every kind (including, without limitation, the disbursements, expenses and fees of Bank's attorneys) that may be imposed upon, incurred by or asserted against Bank (i) in connection with defending any such claim for repayment and collecting such amount from Guarantor or (ii) otherwise

8

arising out of or related directly or indirectly to this Guaranty (including, without limitation, any action, suit or proceeding between Guarantor and Bank, whether on this Guaranty or otherwise). The provisions of this paragraph shall survive the termination of this Guaranty, and any satisfaction and discharge of Borrower by virtue of any payment or court order or any state or federal law.

13. **Preservation of Rights**. No delay or omission on Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will Bank's action or inaction impair any such right or power. Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which Bank may have under any other agreements, at law or in equity. Bank may proceed in any order against Borrower, Guarantor or any other obligor of, or any collateral securing, the Obligations.

14. **Nature of Guarantor's Obligations**. Guarantor's obligations hereunder are not contingent upon and are independent of the obligations of Borrower, or any other guarantor or surety of the Obligations. This Guaranty is not made in consideration of the liability of any other guarantor or surety of the Obligations. The release or death of any guarantor of the Obligations or the revocation of any guaranty shall not release or otherwise affect the liability of any other non-revoking guarantor. A separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Borrower or any other guarantor or whether Borrower or any other guarantor be joined in any such action or actions.

15. **Prohibited Person Compliance**. Guarantor warrants, represents and covenants that neither Guarantor nor any of its affiliates is or will be a person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224 or (d) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Guarantor covenants and agrees that neither Guarantor nor any of its affiliates will knowingly (i) conduct any business, or engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Guarantor further covenants and agrees to deliver (from time to time) to Bank any such certification or other evidence as may be requested by Bank in its sole and absolute discretion, confirming each such representation.

16. **Interpretation**. In this Guaranty, unless Bank and Guarantor otherwise agree in writing, (a) the singular includes the plural and the plural the singular; (b) references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; (c) the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; (d) references to sections or exhibits are to those of this Guaranty; (e) terms defined in Division 9 of the UCC of the State of California and not otherwise defined in this Guaranty are used as defined in such Article; (f) references to any amount as on deposit or outstanding on any particular date means such amount at the close of business on such day; (g) the words "hereof," "herein" and "hereunder" and words of similar import refer to such agreement (or the certificate or other document in which they are used) as a whole and not to any particular provision of such agreement (or such certificate or document); (h) references to any Section, Schedule or Exhibit are references to Sections, Schedules and Exhibits in or to such agreement (or the certificate or other document in which the reference is made), and references to any paragraph, subsection, clause or other

9

subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (i) references to any agreement refer to that agreement as from time to time amended, restated, supplemented, extended, renewed, replaced or otherwise modified or as the terms of such agreement are waived or modified in accordance with its terms; (j) references to any Person include that Person's successors and assigns; and (k) terms in one gender include the parallel terms in the neuter and opposite gender. Section headings in this Guaranty are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose. If this Guaranty is executed by more than one party as Guarantor, or if separate guaranties of Borrower's Obligations to Bank are executed by other parties, the obligations of all such persons or entities will be joint and several.

17. **Notices**. All notices, requests and demands which any party is required or may desire to give to any other party under any provision of this Guaranty must be in writing delivered to each such other party at his, her or its address first set forth above, or to such other address as any party may designate by written notice to all other parties, and with respect to any notice to Bank, a copy to Bank Leumi USA, 350 Madison Avenue, New York, NY 10017, Attention: Associate General Counsel – Lending, with a copy to Stradling Yocca Carlson & Rauth, P.C., 100 Wilshire Boulevard, Santa Monica, CA 90401, Attention: Dayan Rosen, or to such other address as any party may designate by written notice to all other parties. Each such notice, request and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by any other means, one day after transmission or shipment. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving notices hereunder. No notice to or demand on Guarantor will entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

18. **Costs and Expenses**. Guarantor shall reimburse Bank immediately upon demand the full amount of all reasonable payments, advances, charges, costs and expenses, whether or not collection is instituted hereon, including reasonable attorneys' fees (to include outside counsel fees), expended or incurred by Bank in connection with (a) the negotiation and preparation of this Guaranty and the other Loan Documents, Bank's continued administration hereof and thereof, and the preparation of amendments and waivers hereto and thereto, including without limitation all costs incidental thereto and costs of protection and preservation of collateral, (b) the enforcement of Bank's rights and/or the collection of any amounts which become due to Bank under this Guaranty, and (c) the prosecution or defense of any action in any way related to the Guaranty, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in any civil action, lawsuit, arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Bank or any other person) relating to Guarantor or any other person or entity.

19. **Entire Agreement**. This Guaranty constitutes the entire agreement between Guarantor and Bank with respect to the subject hereof and supersedes all prior negotiations, communications and agreements (written or oral), discussions and correspondence concerning the subject matter hereof. Guarantor and Bank agree that any inconsistency or discrepancy between the provisions of this Guaranty and any other documentation evidencing the Obligations of Guarantor to Bank shall be resolved in the manner most favorable to Bank.

20. **Severability; Waivers**. The provisions of this Guaranty are severable and if any waiver or other provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect or invalidate such provision in any other jurisdiction. Without limiting the foregoing, Guarantor hereby warrants and agrees that each of the

10

000475

waivers set forth herein is made with Guarantor's full knowledge of its significance and consequences, and that under the circumstances, such waivers are reasonable and not contrary to public policy or law.

**21.**     Limitation of Liability and Limitation of Guaranty.

(a)     To the fullest extent permitted by applicable law, neither Guarantor nor Bank shall assert, and hereby waives any claim against the other, on any theory of liability, for special, indirect, consequential or punitive damages arising out of, in connection with or as a result of, this Guaranty, any related Loan Documents, the transactions contemplated hereby or thereby or any loan advance or letter of credit or the use of the proceeds thereof; provided however that the foregoing shall in no way limit the indemnification obligations of Guarantor set forth in any Loan Document for any special, indirect, consequential or punitive damages against Bank in any way related to the Loan Documents or the Obligations in connection with any suit or proceeding brought by a third party.

(b)     Any term or provision of this Guaranty to the contrary notwithstanding, the maximum aggregate amount for which any Guarantor shall be liable hereunder shall not exceed the maximum amount for which such Guarantor can be liable without rendering this Guaranty or any other Loan Document, as it relates to such Guarantor, subject to avoidance under applicable laws relating to fraudulent conveyance or fraudulent transfer (including but not limited to the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code) (collectively, "**Fraudulent Transfer Laws**").  Any analysis of the provisions of this Guaranty for purposes of Fraudulent Transfer Laws shall take into account the right of contribution established in Section 21(c) and, for purposes of such analysis, give effect to any discharge of intercompany debt as a result of any payment made under this Guaranty.

(c)     To the extent that any Guarantor shall be required hereunder to pay any portion of any guaranteed Obligation exceeding the greater of (i) the amount of the value actually received by such Guarantor and its subsidiaries from the advances under the Letter Agreement and the other Obligations and (ii) the amount such Guarantor would otherwise have paid if such Guarantor had paid the aggregate amount of the guaranteed Obligations (excluding the amount thereof repaid by Borrower) in the same proportion as such Guarantor's net worth on the date enforcement is sought hereunder bears to the aggregate net worth of all the guarantors of the Obligations on such date, then such Guarantor shall be reimbursed by such other guarantors for the amount of such excess, pro rata, based on the respective net worth of such other guarantors on such date.

4840-1359-4784v3/104763-0009

000476

22.    **Amendments, Modifications, Etc**.  No amendment, modification or waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall be effective unless the same shall be in writing and signed by Bank or other party to be charged, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. Notwithstanding the foregoing, Bank may modify this Guaranty for the purposes of completing missing content or correcting erroneous content, without the need for a written amendment, provided that Bank shall send a copy of any such modification to Guarantor (which may be sent by electronic mail).

23.    **No Waiver; Remedies**.  No failure on the part of Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any other remedies provided hereunder or by any other instrument or document or under applicable law.

24.    **Successors and Assigns; Assignments**.  This Guaranty and the terms hereof shall be binding upon and inure to the benefit of Bank and its successors and assigns, including subsequent holders hereof, and Guarantor and its legal representatives, successors and assigns; provided, however, that Guarantor may not assign or transfer its interests or rights hereunder (whether by operation of law or otherwise) without Bank's prior written consent, which Bank may withhold in its sole and absolute discretion.  Bank reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, Bank's rights and benefits hereunder and under any or all of the other Loan Documents.  In connection therewith, Bank may disclose all documents and information which Bank now has or hereafter may acquire relating to any credit accommodation subject hereto, Guarantor, its business or any collateral security provided in connection herewith.

25.    **Counterparts; Electronic Transmission**.  This Guaranty may be executed in any number of counterparts, each of which, when so executed, shall be deemed to be an original and all of which, taken together, shall constitute one and the same Guaranty.  Delivery of any executed counterpart of this Guaranty by electronic transmission shall be effective as delivery of a manually executed counterpart hereof.  Guarantor acknowledges that information and documents relating to this Guaranty and the credit accommodations provided for herein may be transmitted through electronic means.

26.    **Patriot Act**.  Bank hereby notifies you that pursuant to the requirements of the USA Patriot Act, Title III of Pub. L. 107-56 (signed into law October 26, 2001) (the "**Patriot Act**"), Bank may be required to obtain, verify and record information that identifies Guarantor, which information includes the name, address, tax identification number and other information regarding Guarantor that will allow Bank to identify Guarantor in accordance with the Patriot Act.  In that connection, Bank may also request corporate formation documents, or other forms of identification, to verify information provided.

27.    GOVERNING LAW.  THIS GUARANTY WAS ACCEPTED BY BANK IN THE STATE OF CALIFORNIA, AND THE PROCEEDS OF ANY CREDIT ACCOMMODATION HEREUNDER WERE DISBURSED FROM THE STATE OF CALIFORNIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY.  IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO ANY PRINCIPLES OF CONFLICT OF LAWS WHICH WOULD OR MIGHT MAKE THE LAWS OF ANY OTHER JURISDICTION APPLICABLE) AND ANY APPLICABLE LAW OF

12

THE UNITED STATES OF AMERICA.  TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY.  NO REFERENCE TO ANY PROVISION OF ANY OTHER STATE'S LAWS WHICH MAY APPEAR HEREIN SHALL BE DEEMED TO SUPERSEDE THE CHOICE OF LAW SET FORTH IN THIS SECTION.

     **28.**   VENUE; JURISDICTION.  ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BANK OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT BANK'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND GUARANTOR AGREES SUCH COURT SHALL HAVE JURISDICTION IN ANY SUIT, ACTION, OR PROCEEDING BETWEEN GUARANTOR AND BANK. GUARANTOR FURTHER WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, BETWEEN GUARANTOR AND BANK, AND HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT. GUARANTOR DOES HEREBY AGREE THAT SERVICE OF PROCESS UPON GUARANTOR AT ITS NOTICE ADDRESS AS SET FORTH IN SECTION 17 HEREOF BY REGISTERED MAIL, RETURN RECEIPT REQUESTED, SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING AT THE TIME RECEIVED OR REFUSED BY GUARANTOR AND SHALL CONSTITUTE "PERSONAL SERVICE" THEREOF.  NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GUARANTOR IN ANY OTHER JURISDICTIONS.

     **29.**   WAIVER OF JURY TRIAL.  GUARANTOR (a) KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT GUARANTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO, AND IN, ANY ACTION OR OTHER LEGAL PROCEEDING OF ANY NATURE, RELATING TO (i) THIS GUARANTY, ANY CREDIT ACCOMMODATION PROVIDED WITH RESPECT HERETO, (ii) ANY TRANSACTION CONTEMPLATED IN ANY SUCH LOAN DOCUMENTS OR (iii) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THIS GUARANTY, ANY OF THE OBLIGATIONS, ANY COLLATERAL OR ANY OTHER LOAN DOCUMENT AND (b) CERTIFIES THAT (i) NEITHER BANK, ANY AFFILIATE OF BANK NOR ANY REPRESENTATIVE OF BANK OR ANY SUCH AFFILIATE HAS REPRESENTED TO GUARANTOR THAT BANK OR ANY SUCH AFFILIATE WILL NOT SEEK TO ENFORCE THE WAIVER MADE BY GUARANTOR IN THIS PARAGRAPH, AND (ii) HE, SHE OR IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AS NECESSARY AND APPROPRIATE BY INDEPENDENT LEGAL COUNSEL.

     **30.**   JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §§ 638, *ET SEQ.*, ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST

4840-1359-4784v3/104763-0009

EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN.   GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

**Guarantor acknowledges that he, she or it has read and understood all the provisions of the Jury Trial Waiver and the Judicial Reference In the Event of Jury Trial Waiver Unenforceability and has been advised by counsel as necessary or appropriate.**

**Initials of authorized officer of each Guarantor:**

|                        |                        |                        |
| ---------------------- | ---------------------- | ---------------------- |
| **Capital Stone**      | **Balance**            | **Moreno**             |

*See next pg for initials.*

14

4840-1359-4784v3/104763-0009



| Capital Stone | Balance | Moreno |

**31.    Indemnity**. Guarantor agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Guarantor), whether in connection with or arising out of or relating to (a) the matters referred to in this Guaranty or the use of any advance with respect hereto, (b) any breach of a representation, warranty or covenant by Guarantor or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Guarantor; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction. The indemnity agreement contained in this Section shall survive the termination or revocation of this Guaranty, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon. Guarantor may participate at its expense in the defense of any such action or claim.

**32.    Further Assurances; Corrections of Defects**. Guarantor, intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Guaranty or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Guarantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Guaranty, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations.

**33.    Equal Credit Opportunity Act**. If Guarantor is not an "applicant for credit" under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("**ECOA**"), Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

14

**31.**     **Indemnity**.  Guarantor agrees to indemnify each of Bank, each legal entity, if any, who controls, is controlled by or is under common control with Bank, and each of their respective directors, officers and employees (the "**Indemnified Parties**"), and to defend and hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Guarantor), whether in connection with or arising out of or relating to (a) the matters referred to in this Guaranty or the use of any advance with respect hereto, (b) any breach of a representation, warranty or covenant by Guarantor or (c) any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority if such suit, action, claim, proceeding or governmental investigation is in any way related to any of the Loan Documents, the Obligations or any act or omission by Borrower, any Pledgor or any Guarantor (other than in respect of indebtedness owed by 20715 Avalon LLC to Bank); provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses to the extent attributable to an Indemnified Party's gross negligence or willful misconduct, as determined by a final and non-appealable decision of a court of competent jurisdiction.  The indemnity agreement contained in this Section shall survive the termination or revocation of this Guaranty, payment of any advance hereunder and the assignment of any rights hereunder, or entry of judgment hereon.  Guarantor may participate at its expense in the defense of any such action or claim.

**32.**     **Further Assurances; Corrections of Defects**.  Guarantor, intending to be legally bound hereby, agrees to promptly correct any defect, error or omission, upon the request of Bank, which may be discovered in the contents of this Guaranty or any other document evidencing or securing the Obligations, or in the execution or acknowledgement hereof, and Guarantor will execute, or re-execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or as may be reasonably requested by Bank to satisfy the terms and conditions of this Guaranty, and all documents executed in connection therewith, including but not limited to the recording, filing or perfecting of any document given for securing and perfecting liens, mortgages, security interests and interests to secure the Obligations.

**33.**     **Equal Credit Opportunity Act**.  If Guarantor is not an "applicant for credit" under Section 202.2 (e) of the Equal Credit Opportunity Act of 1974 ("**ECOA**"), Guarantor acknowledges that (i) this Guaranty has been executed to provide credit support for the Obligations, and (ii) Guarantor was not required to execute this Guaranty in violation of Section 202.7(d) of the ECOA.

[NO FURTHER TEXT, SIGNATURES FOLLOW ON NEXT PAGE]

15

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the date first written above.

GUARANTOR:

**BALANCE FOODS, LLC**

**By:  Better 4 You Breakfast, Inc.,**
its sole member

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**MORENO BROS. DISTRIBUTING, LLC**

By: _____
Name: Fernando Castillo
Title: President, Chief Executive Officer

**CAPITAL STONE EQUITY FUND I LP**

**By: RDS Ventures, LLC**
its general partner

By: _____
Name: Robert Douglas Spiro, Jr.
Title: Manager

*Signature Page to Unlimited Guaranty*

**EXHIBIT G**

000483

1 | TOM LALLAS (SBN 66512)
2 | MARK D. HURWITZ (SBN 151159)
   | LEVY, SMALL & LALLAS
3 | 815 Moraga Drive
   | Los Angeles, CA 90049
4 | Tel: (310) 471-3000
   | Fax No.: (310) 471-7990
5 | E-mail: tlallas@lsl-la.com
   | mhurwitz@lsl-la.com
6 |
7 | ANDREW KRAMER (NY Bar No. 1871797)
   | JOHN BOUGIAMAS (NY Bar No. 2517498)
8 | OTTERBOURG P.C.
   | 230 Park Avenue
9 | New York, NY 10169
   | Tel: (212) 661-9100
10 | Fax No.: (212) 682-6104
   | E-mail: akramer@otterbourg.com
11 | jbougiamas@otterbourg.com
12 |
   | Attorneys for Plaintiff
13 | Bank Leumi USA

14

15 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

16 | COUNTY OF LOS ANGELES

17 | UNLIMITED JURISDICTION

| | |
|---|---|
| 18 | |
| BANK LEUMI USA, | Case No. |
| 19 | |
| | **EX PARTE APPLICATION FOR A** |
| 20 | Plaintiff, | **TEMPORARY RESTRAINING ORDER** |
| | **AND ORDER TO SHOW CAUSE RE** |
| 21 | | **PRELIMINARY INJUNCTION;** |
| | vs. | **MEMORANDUM OF POINTS AND** |
| 22 | | **AUTHORITIES IN SUPPORT** |
| | | **THEREOF;** |
| 23 | BETTER 4 YOU BREAKFAST, INC., | **DECLARATION RE NOTICE** |
| | BALANCE FOODS, LLC, MORENO BROS. | |
| 24 | DISTRIBUTING, LLC, CAPITAL STONE | Cal. Code of Civ. Proc. §§ 526(a) and 527 |
| | EQUITY FUND I LP, 20715 AVALON, LLC, | |
| 25 | ROBERT DOUGLAS SPIRO, JR., DIANA | Date:   January 4, 2022 |
| | CASTILLO SPIRO, as Trustee of the Spiro | Time:  8:30 a.m. |
| 26 | Revocable Trust, and RDS VENTURES, LLC | Dept:    82 or 85 or 86 |
| 27 | and DOES 1 THROUGH 50, inclusive, | |
| | Defendants. | |
| 28 | | |

6799300.1

1    Plaintiff Bank Leumi USA ("Bank Leumi") hereby applies ex parte for a temporary

2    restraining order, and an order to show cause why a preliminary injunction should not issue,

3    directing and compelling Defendant Better 4 You Breakfast, Inc. ("BFYB"), and its affiliates,

4    Balance Foods, LLC ("Balance Foods") and Moreno Bros. Distributing, LLC ("Moreno",

5    together with BFYB and Balance, collectively, the "BFYB Defendants") and Defendant 20715

6    Avalon LLC ("Avalon") as follows:

7        (a) directing the BFYB Defendants and each of their agents, officers, directors and

8    employees, and all those acting in combination and concert with them, to (i) turn over any and all

9    payments and proceeds from accounts receivable they have received, prior to the date of the

10   issuance of such preliminary injunction, which were not deposited into their respective accounts

11   at Bank Leumi, (ii) continue to turn over any and all payments and proceeds they receive after the

12   issuance of such preliminary injunction, that constitute and are included in Bank Leumi's

13   collateral (the "Collateral") under that certain letter agreement (the "Letter Agreement"), which

14   payments and proceeds the BFYB Defendants are obligated to remit to Bank Leumi, (iii) provide

15   an accounting to the Court regarding all such payments and proceeds received on or before the

16   hearing date on the order to show cause why a preliminary injunction should not issue; (iv)

17   provide to Bank Leumi, and its agents and consultants, for inspection each of the BFYB's

18   Defendants' books and records, including BFYB's general ledger and to provide to Bank Leumi

19   access to the BFYB Defendants' offices, including the BFYB Defendants' computers and

20   information stored on computer, hard drive and email; (v) open all mail in the presence of Bank

21   Leumi representatives in order to ensure any checks are not misdirected; and (vi) be restrained

22   and enjoined from altering, deleting or destroying any books or records, including

23   communications (emails and texts) on company computers and/or personal devices; and

24       (b) directing Avalon and its agents, officers, directors and employees, and all those acting

25   in combination and concert with them, to deposit into escrow a portion of the proceeds from the

26   sale of its real property known as and located at 20715 Avalon Blvd, Carson, CA 90746 (the

27   "Property") that would be payable to one of Avalon's owners, RDS Ventures, LLC ("RDS") and

28

6799300.1

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
000485

RDS' principal Defendant Robert Douglas Spiro, Jr. ("Spiro").  The Property constitutes Bank Leumi's collateral pursuant to a loan agreement between Avalon and Bank Leumi (the "Avalon Loan Agreement").

    This Application is based on the grounds that (a) BFYB is in default on its $16.4 million loan obligation to Bank Leumi under the Letter Agreement, (b) the BFYB Defendants have been converting the Collateral in violation of Bank Leumi's rights, including misappropriating and diverting collections on accounts receivable to which Bank Leumi is entitled, (c) the BFYB Defendants are refusing to cooperate and preventing Bank Leumi from monitoring the Collateral, including collections of accounts receivable, thereby placing the Collateral at imminent risk of irreparable loss, (d) Balance, Moreno and Spiro are in default on their guaranties of BFYB's obligations to Bank Leumi, and (e) without immediate injunctive relief, there is an imminent danger of irreparable harm to Bank Leumi, including loss of the Collateral and inability to collect the obligations owing by BFYB.

    This Application is supported by the Verified Complaint and exhibits thereto, the attached Memorandum of Points and Authorities, the accompanying Declarations of Ed Park, Allen Soong and Scott Mitchell and any exhibits thereto, and such other and further evidence and argument as the Court may consider.

    Notice of this Application has been given in accordance with California Rules of Court 3.1203 and 3.1204, as stated in the Declaration of Mark D. Hurwitz, including to the following counsel who Bank Leumi is informed and believes is counsel for all of the Defendants named herein:

> Randy S. Snyder, Esq.
> Law Offices of Randy S. Snyder
> 5959 Topanga Canyon Blvd.
> Suite 220
> Woodland Hills, CA 91367
> e-mail: rsnyder@rsslegal.com

6799300.1

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
000486

1    DATED:  January 3, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations
TOM LALLAS
MARK D. HURWITZ


By: _____ *Mark Hurwitz* _____
        MARK D. HURWITZ

Attorneys for Plaintiff Bank Leumi USA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>INTRODUCTION</u>

By this action, Plaintiff Bank Leumi USA ("<u>Bank Leumi</u>") seeks a temporary restraining order, and an order to show cause why a preliminary injunction should not issue, directing and compelling Defendant Better 4 You Breakfast, Inc. ("<u>BFYB</u>"), and its affiliates, Balance Foods, LLC ("<u>Balance Foods</u>") and Moreno Bros. Distributing, LLC ("<u>Moreno</u>", together with BFYB and Balance, collectively, the "<u>BFYB Defendants</u>") and Defendant 20715 Avalon LLC ("<u>Avalon</u>") as follows:

(a) directing the BFYB Defendants and each of their agents, officers, directors and employees, and all those acting in combination and concert with them, to (i) turn over any and all payments and proceeds from accounts receivable they have received, prior to the date of the issuance of such preliminary injunction, which were not deposited into their respective accounts at Bank Leumi, (ii) continue to turn over any and all payments and proceeds they receive after the issuance of such preliminary injunction, that constitute and are included in Bank Leumi's collateral (the "<u>Collateral</u>") under that certain letter agreement (the "<u>Letter Agreement</u>"), which payments and proceeds the BFYB Defendants are obligated to remit to Bank Leumi, (iii) provide an accounting to the Court regarding all such payments and proceeds received on or before the hearing date on the order to show cause why a preliminary injunction should not issue; (iv) provide to Bank Leumi, and its agents and consultants, for inspection each of the BFYB's Defendants' books and records, including BFYB's general ledger and to provide to Bank Leumi access to the BFYB Defendants' offices, including the BFYB Defendants' computers and information stored on computer, hard drive and email; (v) open all mail in the presence of Bank Leumi representatives in order to ensure any checks are not misdirected; and (vi) be restrained and enjoined from altering, deleting or destroying any books or records, including communications (emails and texts) on company computers and/or personal devices; and

6799300.1

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

000488

(b) directing Avalon and its agents, officers, directors and employees, and all those acting in combination and concert with them, to deposit into escrow a portion of the proceeds from the sale of its real property known as and located at 20715 Avalon Blvd, Carson, CA 90746 (the "Property") that would be payable to one of Avalon's owners, RDS Ventures, LLC ("RDS") and RDS' principal Defendant Robert Douglas Spiro, Jr. ("Spiro").  The Property constitutes Bank Leumi's collateral pursuant to a loan agreement between Avalon and Bank Leumi (the "Avalon Loan Agreement").

In support of the requested relief, Bank Leumi has submitted (a) its Verified Complaint herein and the exhibits thereto and (b) the accompanying Declarations of Ed Park, a First Vice President and Senior Relationship Manager of Bank Leumi (the "Park Declaration"), Allen Soong, Managing Partner of Paladin Management Group (the "Soong Declaration") and Scott Mitchell, Managing Director of RedRidge Diligence Services ("Mitchell Declaration").  As set forth in the Park Declaration, Bank Leumi is owed more than $16.4 million (exclusive of any accrued and accruing interest, fees, costs and expenses) by BFYB in principal, plus interest, costs and allowable fees and expenses, as a result of financial accommodations made by Bank Leumi to BFYB pursuant to the Letter Agreement.  BFYB's obligations to Bank Leumi are secured by, among other things, liens on all BFYB's assets, including all of BFYB's accounts receivable and its books and records, and computers.

BFYB has defaulted on its obligations under the Letter Agreement as a result of, among others, the following breaches:

(a)    BFYB failed to pay to Bank Leumi all principal, interest and other charges, whether accrued or accruing thereon, on or before November 16, 2021, the Letter Agreement maturity date;

(b)    Based on projections Bank Leumi received from BFYB November 2021, the BFYB Defendants projected they would collect proceeds from accounts receivable in the amount of $4,684,697 during the month of December 2021, which the BFYB Defendants were obligated to deposit into their respective accounts at Bank Leumi.  Only $808,636 has been deposited into BFYB's account at Bank Leumi, during this same period of time, leaving in excess of $3.876 million unaccounted for.

(c)    It became clear that the BFYB Defendants were diverting customer receipts to other banks -- an express violation of the terms of the Letter Agreement.  Bank Leumi obtained evidence that BFYB established a bank account at Sunwest Bank, an institution other than Bank Leumi, and improperly deposited at least $235,000 of accounts receivable proceeds that constitute Bank Leumi's Collateral into the Sunwest Bank account, which BFYB thereafter transferred to the account of CNG, a company wholly owned by Spiro, at Bank Leumi.  The funds were required to be deposited at BFYB's account at Bank Leumi and the failure to do so, and the deposit and transfer elsewhere, constitute conversion of those proceeds;

(d)    Furthermore, as set forth in the Soong Declaration, although access was originally refused, a meeting was held between Fernando Castillo, who is BFYB's Chief Executive Officer ("CEO"), and Mr. Soong, a representative of Paladin, a consultant retained by Bank Leumi, on December 24, 2021.  During that meeting, BFYB's CEO acknowledged the BFYB Defendants were receiving cash collections from their customers, which had not been deposited at Bank Leumi, and were paying their unsecured trade vendors and other bills with the proceeds thereof;

(e)    As set forth in the Mitchell Declaration, both before and after the credit facility with Bank Leumi had matured, the BFYB Defendants failed to cooperate with Bank Leumi and its agents to complete a Collateral field examination and refused to permit Bank Leumi and its field examiner, RedRidge Diligence Services ("RedRidge"), to visit and inspect the BFYB Defendants' properties or to review, audit, check and inspect the Collateral and the BFYB Defendants' books and records.  As is more fully set forth in the report delivered by RedRidge, the audit information obtained from the BFYB Defendants was deficient and could not be completed due to lack of proper information, multiple revisions, and unexplained variances and exceptions.

In short, the BFYB Defendants and their officers and agents, have violated, and are continuing to violate, Bank Leumi's rights under the BFYB Loan Documents causing irreparable injury to Bank Leumi by, among other things, (i) refusing to cooperate and preventing Bank

6799300.1

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

000490

Leumi from monitoring the Collateral including collections of accounts receivable, thereby placing the Collateral at imminent risk of irreparable loss, and (ii) misappropriating funds and depriving Bank Leumi of any means of ascertaining whether or not BFYB is diverting additional collections on accounts receivable or other Collateral that Bank Leumi is entitled to receive under the BFYB Loan Documents.  Accordingly, Bank Leumi is entitled to a Temporary Restraining Order and Preliminary Injunction .

In addition, although Bank Leumi in this action is not seeking to enforce the loan obligation owing by Avalon, Bank Leumi seeks to compel Avalon to set aside net proceeds ultimately payable to Spiro, from the sale of the Property owned by Avalon, as additional collateral security for Spiro's obligations to Bank Leumi on his guaranty of BFYB's obligations.  Avalon has entered into a purchase agreement to sell the Property, which is expected to close on or around January 20, 2021.  After paying closing costs and the amounts owed to Bank Leumi under the Avalon Loan Agreement, any excess proceeds will be paid to Avalon's owners, including Defendant RDS, which owns 82.50% of Avalon and is a pass-through entity.  Defendant Spiro owns 85% of RDS and is entitled to receive his pro rata portion of the net proceeds.  In view of BFYB's diversion of Bank Leumi's Collateral, which has been orchestrated by Spiro, and Spiro and the Spiro Trust's guarantee of BFYB's obligations to Bank Leumi, Bank Leumi requests entry of a Temporary Restraining Order and Preliminary Injunction requiring Avalon to hold in escrow the excess proceeds from the sale of the Property (after payment of closing costs and payment to Bank Leumi of the amounts owed to Bank Leumi under the Avalon Loan Agreement) ultimately payable to Spiro to satisfy any judgment Bank Leumi obtains in this action against Spiro.

## II.

## A TEMPORARY RESTRAINING ORDER MAY ISSUE
## WHERE GREAT AND IRREPARABLE INJURY WILL RESULT
## TO THE APPLICANT UNLESS THE OFFENDING CONDUCT
## <u>IS IMMEDIATELY RESTRAINED</u>

A temporary restraining order ("TRO") may issue when "[i]t appears from the facts shown by affidavit or by the verified complaint that great or irreparable injury will result to the applicant before the matter can be heard on notice …"  (Code Civ. Proc. § 527(c)(1).)  The Court should grant the TRO where the likelihood is that the plaintiff will prevail on the merits at trial, and where the interim harm to the plaintiff without the TRO outweighs the likely harm to the defendant if the order is issued.  (*Smith v. Adventist Health System/West* (2010) Cal.App.4th 729, 749; *Church of Christ in Hollywood v. Superior Court* (2002) 99 Cal.App.4th 1244, 1251.)

The granting or denial of a temporary restraining order is discretionary with the trial judge and amounts to a mere preliminary or interlocutory order to keep the subject of the litigation in *status quo* pending the determination of the action on its merits.  (Code Civ. Proc. §526(a)(3); *Continental Baking Co. v. Katz* (1968) Cal.2d 512, 528; *Lenard v. Edmonds* (1957) 151 Cal.App.2d 764, 769; *Gray v. Bybee* (1943) 60 Cal.App.2d 564, 571.)  Moreover, California law expressly provides that an injunction may be issued to prevent the further disposition of assets by one being sued for improperly transferring assets.  (California Civil Code § 3439.07.)

As stated in the Park Declaration, Plaintiff Bank Leumi will suffer irreparable harm unless the BFYB Defendants are not immediately directed to (i) turn over any and all payments and proceeds they have received prior to the date of the issuance of a preliminary injunction from accounts receivable, which were not deposited into their respective accounts at Bank Leumi, (ii) continue to turn over any and all payments and proceeds they receive after the issuance of such preliminary injunction, that constitute and are included in the Collateral, which payments and proceeds the BFYB Defendants are obligated to remit to Bank Leumi, (iii) provide an accounting to the Court regarding all such payments and proceeds received on or before the hearing date on

6799300.1

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
000492

the order to show cause why a preliminary injunction should not issue; and (iv) to provide to Bank Leumi for inspection each of the BFYB Defendants' books and records and to provide to Bank Leumi, and its agents and consultants, access to the BFYB Defendants' offices, including the BFYB Defendants' computers and information stored on computer, hard drive and email, and be restrained and enjoined from altering, deleting or destroying any books or records, including communications (emails and texts) on company computers and/or personal devices.

In addition, Defendant Avalon and its agents, officers, directors and employees, and all those acting in combination and concert with them, should be directed to hold in escrow a portion of the excess proceeds (after payment of closing costs and payment to Bank Leumi of the amounts owed to Bank Leumi under the Avalon Loan Agreement) from the sale of the Property that would be paid to RDS (as Spiro is an 82.5% owner of RDS).

For the above reasons and those stated in the Park Declaration, a Temporary Restraining Order should be immediately issued to prevent further irreparable harm to Bank Leumi.

## III.

### AN ORDER TO SHOW CAUSE REGARDING

### PRELIMINARY INJUNCTION SHOULD ALSO ISSUE

When a preliminary injunction is sought along with a TRO, the party must request an order to show cause (OSC) regarding the preliminary injunction.  (Cal. Rules of Court, Rule 3.1150(a).)

Bank Leumi requests a full hearing on a Preliminary Injunction for the same reasons and under the same authorities as set forth in support of the TRO, and requests that an Order to Show Cause be issued along with the TRO to afford the BFYB Defendants and Avalon the opportunity to show why they should not be restrained and enjoined in the same manner for the remainder of this litigation.

A Preliminary Injunction is proper in, among others, the following circumstances:

"(1)  When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

(2)  When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.

(3)  When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual."

(Code Civ. Proc. § 526(a).)

As with a Temporary Restraining Order, when granting a preliminary injunction, the Court weighs two interrelated factors; the likelihood the moving party will prevail on the merits, and the relative interim harm to the parties from the issuance or non-issuance of the injunction. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 990; *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1449.)

As shown in the Park, Soong and Mitchell Declarations submitted herewith, and as will be shown at the hearing on a preliminary injunction, sufficient grounds exist for both the TRO and a preliminary injunction.

**IV.**

**EX PARTE RELIEF IS PERMITTED UNDER THESE CIRCUMSTANCES**

**PLAINTIFF HAS COMPLIED WITH THE CALIFORNIA RULES OF COURT**

"An applicant [for an ex parte application] must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte."  (Cal. Rules of Court, Rule 3.1202(c).)

6799300.1

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
000494

1    As shown by the Park Declaration and stated above, there is an imminent and present

2    danger of irreparable harm and immediate damage warranting ex parte relief.  The BFYB

3    Defendants have violated, and are continuing to violate, Bank Leumi's rights under the Letter

4    Agreement and are actively impairing Bank Leumi's rights with respect to the Collateral,

5    including conversion of payments that are required to be made to Bank Leumi.  For example, the

6    BFYB Defendants (a) have interfered with, and are continuing to interfere with, Bank Leumi's

7    rights to the Collateral by (i) failing to cause all payments of accounts to be remitted to Bank

8    Leumi, including by opening an unauthorized account at Sunwest Bank and depositing proceeds

9    from accounts into that account rather than to its account at Bank Leumi in contravention of the

10    Loan Documents (ii) receiving cash collections from their customers, which had not been

11    deposited at Bank Leumi, and using such cash collections to pay their unsecured trade vendors

12    and other bills with the proceeds thereof; and (b) have refused, and are continuing to refuse, to

13    cooperate with Bank Leumi's field examiner and consultant to permit them to enter its premises

14    to inspect BFYB's properties or to review, audit, check and inspect the Collateral and BFYB 's

15    books and records, as expressly permitted by the Loan Documents.

16    The BFYB Defendants have already caused, and are continuing to cause, irreparable

17    injury to Bank Leumi by, among other things, (i) preventing Bank Leumi from monitoring the

18    Collateral, including collections, thereby placing the Collateral at risk; and (ii) depriving Bank

19    Leumi of any means of ascertaining whether or not the BFYB Defendants are diverting additional

20    collections on accounts receivable or other Collateral that Bank Leumi is entitled to receive under

21    the Loan Documents.  Based on the foregoing, it is clear that Bank Leumi will suffer immediate

22    and irreparable injury if BFYB's conduct is not immediately enjoined, and will suffer significant

23    prejudice if a temporary restraining order is not issued forthwith.  Accordingly, a temporary

24    restraining order is also appropriate.

25

26

27

28

6799300.1

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

000495

1

## V.

2

## <u>CONCLUSION</u>

3         For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue a

4  Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction should not

5  issue in the form submitted herewith.

6
   DATED:  January 3, 2022                    LEVY, SMALL & LALLAS
7                                             A Partnership Including Professional Corporations
                                              TOM LALLAS
8                                             MARK D. HURWITZ

9

10                                            By: _____ *Mark Hurwitz* _____
                                                   MARK D. HURWITZ
11
                                              Attorneys for Plaintiff Bank Leumi USA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF MARK D. HURWITZ RE NOTICE

I, Mark D. Hurwitz, declare as follows:

1.     I am an attorney at law duly admitted to practice before this Court and all Courts of the State of California and am an attorney at Levy, Small & Lallas, A Partnership Including Professional Corporations ("LSL"), counsel of record for plaintiff Bank Leumi USA herein.

2.     I have personal, first-hand knowledge of the entire contents of this Declaration and if called upon to do so, could and would competently testify thereto.

3.     On January 3, 2021 at 9:57 a.m. I sent an email transmitting notice of this Ex Parte Application ("Notice") to the following attorney, whom I am informed and believe is the attorney for all of the persons and entities named as defendants in this action, including without limitation: Better 4 You Breakfast, Inc.; Balance Foods, LLC; Moreno Bros. Distributing, LLC; Capital Stone Equity Fund I LP; Robert Douglas Spiro, Jr.; Diana Castillo Spiro, as Trustee of the Spiro Revocable Trust; 20715 Avalon, LLC; and RDS Ventures, LLC:

Randy S. Snyder, Esq.

Law Offices of Randy S. Snyder

5959 Topanga Canyon Blvd.

Suite 220

Woodland Hills, CA 91367

e-mail: rsnyder@rsslegal.com

4.     A true and correct copy of the Notice is attached as Exhibit 1 hereto and incorporated herein by reference as though set forth in full herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 3rd day of January, 2022, at Los Angeles, California.


_____
Mark D. Hurwitz

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

# EXHIBIT 1

000498

| | |
|---|---|
| **From:** | Mark Hurwitz |
| **To:** | "rsnyder@rsslegal.com" |
| **Cc:** | Tom Lallas; Nora Arutunyan; "Andrew M. Kramer"; "John Bougiamas" |
| **Subject:** | Bank Leumi USA v. Better 4 You Breakfast, Inc., et al.--Ex Parte Notice |
| **Date:** | Monday, January 3, 2022 9:57:07 AM |

Dear Mr. Snyder:

Please take notice that on January 4, 2022 at 8:30 a.m. in Department 82, 85 or 86 of the Los Angeles County Superior Court, located at 111 N. Hill Street, Los Angeles, California 90012, Bank Leumi USA ("Bank Leumi") will appear ex parte to apply for a temporary restraining order, and an order to show cause why a preliminary injunction should not issue, directing and compelling Better 4 You Breakfast, Inc. ("BFYB"), and its affiliates, Balance Foods, LLC ("Balance Foods") and Moreno Bros. Distributing, LLC ("Moreno", together with BFYB and Balance, collectively, the "BFYB Defendants") and Defendant 20715 Avalon LLC ("Avalon") as follows:

(a) directing the BFYB Defendants and each of their agents, officers, directors and employees, and all those acting in combination and concert with them, to (i) turn over any and all payments and proceeds from accounts receivable they have received, prior to the date of the issuance of such preliminary injunction, which were not deposited into their respective accounts at Bank Leumi, (ii) continue to turn over any and all payments and proceeds they receive after the issuance of such preliminary injunction, that constitute and are included in Bank Leumi's collateral (the "Collateral") under that certain letter agreement (the "Letter Agreement"), which payments and proceeds the BFYB Defendants are obligated to remit to Bank Leumi, (iii) provide an accounting to the Court regarding all such payments and proceeds received on or before the hearing date on the order to show cause why a preliminary injunction should not issue; (iv) provide to Bank Leumi, and its agents and consultants, for inspection each of the BFYB's Defendants' books and records, including BFYB's general ledger and to provide to Bank Leumi access to the BFYB Defendants' offices, including the BFYB Defendants' computers and information stored on computer, hard drive and email; (v) open all mail in the presence of Bank Leumi representatives in order to ensure any checks are not misdirected; and (vi) be restrained and enjoined from altering, deleting or destroying any books or records, including communications (emails and texts) on company computers and/or personal devices; and

(b) directing Avalon and its agents, officers, directors and employees, and all those acting in combination and concert with them, to deposit into escrow a portion of the proceeds from the sale of its real property known as and located at 20715 Avalon Blvd, Carson, CA 90746 (the "Property") that would be payable to one of Avalon's owners, RDS Ventures, LLC ("RDS") and RDS' principal Defendant Robert Douglas Spiro, Jr. ("Spiro").

Please note that the parties named as defendants in this matter include: Better 4 You Breakfast, Inc.; Balance Foods, LLC; Moreno Bros. Distributing, LLC; Capital Stone Equity Fund I LP; Robert Douglas

Spiro, Jr.; Diana Castillo Spiro, as Trustee of the Spiro Revocable Trust; 20715 Avalon, LLC; and RDS Ventures, LLC.

Please let us know whether you intend to appear the hearing on the application to oppose the application.   We will let you know when we find out which Department will hold the hearing.

Thank you.

Mark

Sent by:
Mark D. Hurwitz
Levy, Small & Lallas
815 Moraga Drive
Los Angeles, California  90049
Tel: 310-471-3000  Fax: 310-471-7990
Email:  MHurwitz@lsl-la.com
-------------
Confidentiality Note:   Please note that the information in this email is confidential and may be privileged and is intended only for the use of the named addressee(s).  Nothing in this email is intended by the attorney or the client to constitute a waiver of the confidentiality of this information.  If the recipient of this email is not the intended recipient, please be advised that any duplication or distribution of this information is unauthorized.  If you have received this information in error, please immediately notify us by return e-mail, and please destroy this transmission, all attachments to it, and any copies that have been made.  Thank you for your cooperation.

# EXHIBIT H-1

**Fill in this information to identify the case:**

Debtor name ___**Better 4 You Breakfast, Inc.**___

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known) ___**2:22-bk-10994-BB**___

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:   List Creditors Who Have Secured Claims**

| 2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1   ALLIANCE FUNDING**<br>Creditor's Name<br><br>**3745 W. Chapman Ave.**<br>**Suite 200**<br>**Orange, CA 92868**<br>Creditor's mailing address<br><br><br>**SFriedrich@afg.com**<br>Creditor's email address, if known<br><br><br>**Date debt was incurred**<br><br><br>**Last 4 digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>☑ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | Describe debtor's property that is subject to a lien<br>**Equipment Loan**<br><br><br><br>Describe the lien<br><br><br>Is the creditor an insider or related party?<br>☑ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>☑ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$1,003,459.00** | **$0.00** |
| **2.2   Amur Equipment Finance, Inc.**<br>Creditor's Name<br><br>**308 N. Locust St., Suite 1**<br>**Grand Island, NE 68801**<br>Creditor's mailing address<br><br><br><br>Creditor's email address, if known<br><br><br>**Date debt was incurred**<br>**07/09/19**<br>**Last 4 digits of account number**<br>**3181**<br>Do multiple creditors have an interest in the same property? | Describe debtor's property that is subject to a lien<br>**OMNI IDXE-DWX, equpment financed under Contract 948535**<br><br><br>Describe the lien<br><br><br>Is the creditor an insider or related party?<br>☑ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>☑ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply | $81,867.60 | $0.00 |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

**2.3** | **Amur Equipment Finance, Inc.**
Creditor's Name

**308 N. Locust St., Suite 1
Grand Island, NE 68801**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
07/24/19**
**Last 4 digits of account number
5912**

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Specified equipment financed under Contract 948816**

**Describe the lien**

**Is the creditor an insider or related party?**
- ■ No
- ☐ Yes

**Is anyone else liable on this claim?**
- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

$15,486.30 | $0.00

---

**2.4** | **Axis Capital**
Creditor's Name

**(Amur Equipment Financial)
308 N. Locust St
Grand Island, NE 68801**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Equipment Loan**

**Describe the lien**

**Is the creditor an insider or related party?**
- ■ No
- ☐ Yes

**Is anyone else liable on this claim?**
- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Unknown | $0.00

---

**2.5** | **Bank Leumi USA**
Creditor's Name

**350 Madison Ave.
New York, NY 10017**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Blanket**

**Describe the lien**

$16,400,000.00 | $0.00

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

Creditor's email address, if known

**Date debt was incurred**
**08/19/19**
**Last 4 digits of account number**
**0925**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.6 | **CNG Transportation, LLC** | Describe debtor's property that is subject to a lien | $56,000.00 | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | **Business Loan** | | |

**3951 Medford Street**
**Los Angeles, CA 90063**
Creditor's mailing address

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.7 | **Corporation Service Company** | Describe debtor's property that is subject to a lien | **Unknown** | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | **Leased equipment, lease dated 7/1/16 with Alliance Funding Group** | | |

**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**
Creditor's mailing address

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**07/07/16 - 06/24/21**
**Last 4 digits of account number**
**0939**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**                    page 3 of 34

Debtor  **Better 4 You Breakfast, Inc.**
Name

Case number (if known)  **2:22-bk-10994-BB**

---

| 2.8 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
08/15/16**

**Last 4 digits of account number
1598**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 8/11/16 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

$8,449.44    $0.00

---

| 2.9 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
09/08/16 - 08/19/21**

**Last 4 digits of account number
2302**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 8/31/16 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

$14,465.20    $0.00

---

| 2.10 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
11/15/16**

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 11/3/16 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

$5,016.78    $0.00

---

Official Form 206D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 4 of 34

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**Last 4 digits of account number**
**3621**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

**2.1**
**1**

**Corporation Service Company**
Creditor's Name

**P.O. Box 2576**
**Springfield, IL 62706**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**09/22/17  - 08/12/19**
**Last 4 digits of account number**
**7825**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Blanket**

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Unknown**          **$0.00**

---

**2.1**
**2**

**Corporation Service Company**
Creditor's Name

**P.O. Box 2576**
**Springfield, IL 62706**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**05/22/18 - 08/15/19**
**Last 4 digits of account number**
**5723**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Blanket**

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Unknown**          **$0.00**

---

**2.1**
**3**

**Corporation Service Company**

**Describe debtor's property that is subject to a lien**

**$31,932.11**          **$0.00**

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**Creditor's Name**

**801 Adlai Stevenson Dr.
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
06/25/18**

**Last 4 digits of account number
6524**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Leased equipment, lease dated 6/22/18 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 4 | **Corporation Service Company** | **Describe debtor's property that is subject to a lien** | **$26,366.70** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
10/04/18**

**Last 4 digits of account number
6568**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Leased equipment, lease dated 9/25/18 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 5 | **Corporation Service Company** | **Describe debtor's property that is subject to a lien** | **$30,017.26** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
01/08/19**

**Last 4 digits of account number
8971**

**Leased equipment, lease dated 12/18/18 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 6 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.16 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**04/02/19**

**Last 4 digits of account number**
**0441**

Describe debtor's property that is subject to a lien

**Leased equipment, lease dated 4/1/19 with Alliance Funding Group**

**$5,893.08** | **$0.00**

Describe the lien

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.17 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**P.O. Box 2576**
**Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**04/30/19**

**Last 4 digits of account number**
**8510**

Describe debtor's property that is subject to a lien

**Blanket**

**Unknown** | **$0.00**

Describe the lien

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.18 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Creditor's mailing address

Describe debtor's property that is subject to a lien

**Leased equipment, lease dated 6/25/19 with Alliance Funding Group**

**$127,294.92** | **$0.00**

Describe the lien

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**07/03/19**

**Last 4 digits of account number**
**9005**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.19 | **Corporation Service Company** | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | **Blanket** | | |

**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Creditor's mailing address

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**07/11/19**

**Last 4 digits of account number**
**2826**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.20 | **Corporation Service Company** | **Describe debtor's property that is subject to a lien** | **$590,000.00** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | **Blanket** | | |

**P.O. Box 2576**
**Springfield, IL 62706**

Creditor's mailing address

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**03/25/20**

**Last 4 digits of account number**
**0843**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

☐ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 1 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**P.O. Box 2576
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
04/29/21**

**Last 4 digits of account number
4223**

**Do multiple creditors have an interest in the same property?**

☐ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 4/28/21 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$152,031.69      $0.00

---

| 2.2 2 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**P.O. Box 2576
Springfield, IL 62706**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
06/16/21**

**Last 4 digits of account number
7021**

**Do multiple creditors have an interest in the same property?**

☐ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 6/14/21 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$153,583.31      $0.00

---

| 2.2 3 | **Corporation Service Company** | | |
|---|---|---|---|

Creditor's Name

**P.O. Box 2576
Springfield, IL 62706**

Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 6/29/21 with Alliance Funding Group**

**Describe the lien**

$52,638.08      $0.00

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**07/15/21**

**Last 4 digits of account number**
**8432**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

| 2.2 4 | **Corporation Service Company** | | | |
|---|---|---|---|---|

Creditor's Name

**P.O. Box 2576**
**Springfield, IL 62706**

Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**1 Leased equipment, lease dated 7/29/21 with Alliance Funding Group**

**$154,844.58**    **$0.00**

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**08/27/2**

**Last 4 digits of account number**
**6018**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

| 2.2 5 | **Corporation Service Company** | | | |
|---|---|---|---|---|

Creditor's Name

**P.O. Box 2576**
**Springfield, IL 62706**

Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Blanket**
**May be duplicate of Samson Horus**

**$241,424.00**    **$0.00**

**Describe the lien**

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**10/05/21**

**Last 4 digits of account number**
**0024**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 10 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.2 6**  **Crown Credit Company**
Creditor's Name

**40 S. Washington St**
**New Bremen, OH 45869**
Creditor's mailing address

Creditor's email address, if known

Date debt was incurred
**11/26/15 - 10/27/20**
Last 4 digits of account number
**7554**
Do multiple creditors have an interest in the same property?
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Leased equipment, all equipment leased from Crown**

Describe the lien

Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Unknown**        **$0.00**

---

**2.2 7**  **CT Corporation System**
Creditor's Name

**330 N. Brand Blvd., Suite 700**
**Attn SPRS**
**Glendale, CA 91203**
Creditor's mailing address

Creditor's email address, if known

Date debt was incurred
**12/06/21**
Last 4 digits of account number
**8934**
Do multiple creditors have an interest in the same property?
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Blanket $0**

Describe the lien

Is the creditor an insider or related party?
■ No
☐ Yes
Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**$246,000.00**        **$0.00**

---

**2.2 8**  **CT Corporation System**
Creditor's Name

**330 N. Brand Blvd., Suite 700**
**Attn SPRS**
**Glendale, CA 91203**
Creditor's mailing address

Creditor's email address, if known

Describe debtor's property that is subject to a lien

Describe the lien

Is the creditor an insider or related party?
■ No
☐ Yes

**Unknown**        **$0.00**

---

Official Form 206D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 11 of 34

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**Date debt was incurred**
**04/10/18**
**Last 4 digits of account number**
**7620**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.2 9 | **CT Corporation System** | **Describe debtor's property that is subject to a lien** | **$95,749.50** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**330 N. Brand Blvd., Suite 700**
**Attn SPRS**
**Glendale, CA 91203**
Creditor's mailing address

**Leased equipment, lease dated 7/26/19**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**07/29/17**
**Last 4 digits of account number**
**8964**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 0 | **Dedicated Funding, LLC,** | **Describe debtor's property that is subject to a lien** | **$47,728.44** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**860 E. 4500 S. Ste 312**
**Salt Lake City, UT 84107**
Creditor's mailing address

**Specifically identified equipment purchased from Restaurant Depo on 8/5/19**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**08/07/19**
**Last 4 digits of account number**
**7724**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.3 1 | **Dedicated Funding-Territorial Bank** | **Describe debtor's property that is subject to a lien** | **$27,570.00** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**860 East 4500 South #312
Salt Lake City, UT 84107**

Creditor's mailing address

**invoicing@dedicatedfunding.com**

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Describe debtor's property that is subject to a lien**

**Equipment Loan**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 2 | **Financial Pacific Leasing** | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**3455 S. 344th Way #300
Federal Way, WA 98001**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Describe debtor's property that is subject to a lien**

**Equipment Loan**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 3 | **Financial Pacific Leasing, Inc.** | **Describe debtor's property that is subject to a lien** | **$10,254.60** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**3455 S. 344th Way, Ste 300
Auburn, WA 98001**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
07/22/16 - 06/29/21**

**Last 4 digits of account number**

**Describe debtor's property that is subject to a lien**

**Leased equipment, lease dated 7/19/16 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

---

| Official Form 206D | Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property** | page 13 of 34 |
|---|---|---|

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

**3491**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 4 | **Financial Pacific Leasing, Inc.** | | | |
|---|---|---|---|---|

Creditor's Name

**3455 S. 344th Way, Ste 300
Auburn, WA 98001**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**08/05/16 - 07/16/21**

**Last 4 digits of account number**
**0627**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 8/2/16 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Unknown**      **$0.00**

---

| 2.3 5 | **Financial Pacific Leasing, Inc.** | | | |
|---|---|---|---|---|

Creditor's Name

**3455 S. 344th Way, Ste 300
Auburn, WA 98001**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**01/18/18**

**Last 4 digits of account number**
**9627**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 1/17/18 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**$9,717.26**      **$0.00**

---

| 2.3 6 | **Financial Pacific Leasing, Inc.** | | | |
|---|---|---|---|---|

Creditor's Name

**PO Box 4568
Federal Way, WA 98063**

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease #001-1184529-906 dated 2/9/18 with Fanancial Pacific Leasing, Inc.**

**$9,020.33**      **$0.00**

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

**Describe the lien**

_Creditor's mailing address_

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

_Creditor's email address, if known_

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**02/09/18**

**Last 4 digits of account number**
**5381**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.37 | **JP Morgan Chase Bank, NA** | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|

_Creditor's Name_

**Loan Processing, Middle Market Serv**
**10 South Dearborn, Floor L2, Suite**
**Chicago, IL 60603-2300**
_Creditor's mailing address_

**Blanket**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

_Creditor's email address, if known_

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**08/06/18 - 08/27/19**

**Last 4 digits of account number**
**3949**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.38 | **Leumi Bank** | **Describe debtor's property that is subject to a lien** | **$4,861,036.68** | **$0.00** |
|---|---|---|---|---|

_Creditor's Name_

**555 W. 5th Street, Suite 3300**
**Los Angeles, CA 90013**
_Creditor's mailing address_

**Nonrevolving Term Loan**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

**Is anyone else liable on this claim?**

**Ed.Park@leumiusa.com**
_Creditor's email address, if known_

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**As of the petition filing date, the claim is:**
Check all that apply

**Do multiple creditors have an interest in the same property?**

---

Official Form 206D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 15 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

■ No
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 9 | **Leumi Bank** | Describe debtor's property that is subject to a lien | $11,624,066.42 | $0.00 |
|---|---|---|---|---|

Creditor's Name

**555 W. 5th Street, Suite 3300**
**Los Angeles, CA 90013**
Creditor's mailing address

**Revolver**

Describe the lien

**Ed.Park@leumiusa.com**
Creditor's email address, if known

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Date debt was incurred**

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 0 | **Marlin** | Describe debtor's property that is subject to a lien | $978.00 | $0.00 |
|---|---|---|---|---|

Creditor's Name

**330 Fellowship Rd**
**Mt. Laurel, NJ 08054**
Creditor's mailing address

**Equipment Loan**

Describe the lien

**keversmeyer@marlincapitalsolutions.com**
Creditor's email address, if known

**Is the creditor an insider or related party?**
■ No
☐ Yes

**Date debt was incurred**

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 1 | **Mitsubishi HC** | Describe debtor's property that is subject to a lien | **Unknown** | $0.00 |
|---|---|---|---|---|

Creditor's Name

**Leasing-Hitachi Capital**
**7808 Creekridge Circle, Suite 250**
**Edina, MN 55439**
Creditor's mailing address

**Equipment Loan**

Describe the lien

---

Official Form 206D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 16 of 34

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

**CustomerService@vendors ervicesgroup.com**

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number** **0002**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 2 | **National Funding, Inc.** | | | **Unknown** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**9820 Town Centre Drive, Suite 200 San Diego, CA 92121**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred** **02/13/17 - 08/13/19**

**Last 4 digits of account number** **4199**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Blanket**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 3 | **Opus Bank** | | | **Unknown** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**131 W. Commonwealth Ave. Fullerton, CA 92832**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred** **09/08/17**

**Last 4 digits of account number** **0576**

**Do multiple creditors have an interest in the same property?**

**Describe debtor's property that is subject to a lien**
**Specifically identified equipment**

**Describe the lien**

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 4 | **PAWNEE EQUIPMENT Leasing** | | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |

Creditor's Name

**654 Amherst Road Suite 320**
**Sunderland, MA 01375**
Creditor's mailing address

**rebecca@pawneeleasing.com**
Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Equipment Loan**

**Describe the lien**

**Is the creditor an insider or related party?**
☒ No
☐ Yes
**Is anyone else liable on this claim?**
☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 5 | **Pawnee Leasing Corp.** | | **Describe debtor's property that is subject to a lien** | **$4,957.38** | **$0.00** |

Creditor's Name

**3801 Automation Way, Suite 207**
**Fort Collins, CO 80525**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**07/07/16 - 06/24/21**
**Last 4 digits of account number**
**6211**
**Do multiple creditors have an interest in the same property?**
☒ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Leased equipment, lease dated 7/6/16 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
☒ No
☐ Yes
**Is anyone else liable on this claim?**
☒ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 6 | **Pawnee Leasing Corp.** | | **Describe debtor's property that is subject to a lien** | **$4,152.54** | **$0.00** |

Creditor's Name

**3801 Automation Way, Suite 207**
**Fort Collins, CO 80525**
Creditor's mailing address

**Leased equipment, lease dated 1/19/17 with Alliance Funding Group**

**Describe the lien**

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 18 of 34

Debtor    **Better 4 You Breakfast, Inc.**
_____
Name

Case number (if known)    **2:22-bk-10994-BB**

---

|  |  |
|---|---|
| Creditor's email address, if known | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes |
| **Date debt was incurred**<br>**01/23/17** | **Is anyone else liable on this claim?**<br>■ No |
| **Last 4 digits of account number**<br>**9372** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |

---

| 2.4 7 | **Pawnee Leasing Corp.**<br>Creditor's Name<br><br>**3801 Automation Way, Suite 207**<br>**Fort Collins, CO 80525**<br>Creditor's mailing address | **Describe debtor's property that is subject to a lien**<br>**Leased equipment, lease dated 3/29/17 with Alliance Funding Group**<br><br>**Describe the lien** | **$1,045.55** | **$0.00** |
|---|---|---|---|---|

|  |  |
|---|---|
| Creditor's email address, if known | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes |
| **Date debt was incurred**<br>**04/04/17** | **Is anyone else liable on this claim?**<br>■ No |
| **Last 4 digits of account number**<br>**8467** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an interest in the same property?**<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:**<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |

---

| 2.4 8 | **Pawnee Leasing Corp.**<br>Creditor's Name<br><br>**3801 Automation Way, Suite 207**<br>**Fort Collins, CO 80525**<br>Creditor's mailing address | **Describe debtor's property that is subject to a lien**<br>**Leased equipment, lease dated 3/29/17 with Alliance Funding Group**<br><br>**Describe the lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|

|  |  |
|---|---|
| Creditor's email address, if known | **Is the creditor an insider or related party?**<br>■ No<br>☐ Yes |
| **Date debt was incurred**<br>**04/18/17** | **Is anyone else liable on this claim?**<br>■ No |
| **Last 4 digits of account number**<br>**5642** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:**<br>Check all that apply |

---

Official Form 206D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 19 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

**2.49**

**Pawnee Leasing Corp.**
Creditor's Name

**3801 Automation Way,
Suite 207
Fort Collins, CO 80525**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**01/09/18**
**Last 4 digits of account number**
**6737**
**Do multiple creditors have an
interest in the same property?**
☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 12/12/17 with
Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| | |
|---|---|
| **Unknown** | **$0.00** |

---

**2.50**

**Pawnee Leasing Corp.**
Creditor's Name

**3801 Automation Way,
Suite 207
Fort Collins, CO 80525**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**04/12/18**
**Last 4 digits of account number**
**0155**
**Do multiple creditors have an
interest in the same property?**
☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 4/11/18 with
Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| | |
|---|---|
| **$2,678.13** | **$0.00** |

---

**2.51**

**Pawnee Leasing Corp.**
Creditor's Name

**3801 Automation Way,
Suite 207
Fort Collins, CO 80525**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 7/10/19 with
Alliance Funding Group**

**Describe the lien**

| | |
|---|---|
| **$68,589.05** | **$0.00** |

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

Creditor's email address, if known

**Is the creditor an insider or related party?**

■ No

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**
**07/11/19**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**
**1204**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

■ No

☐ Unliquidated

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Disputed

---

| 2.5 2 | **RAYMOND LEASING** | Describe debtor's property that is subject to a lien | **Unknown** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**Equipment Loan**

**22 S Canal St**
**GREENE, NY 13778**

Creditor's mailing address

**Describe the lien**

**rayleaseinvoice@raymond corp.com**

**Is the creditor an insider or related party?**

Creditor's email address, if known

■ No

☐ Yes

**Date debt was incurred**

**Is anyone else liable on this claim?**

■ No

**Last 4 digits of account number**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

■ No

☐ Unliquidated

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Disputed

---

| 2.5 3 | **Raymond Leasing Corp** | Describe debtor's property that is subject to a lien | **$53,966.00** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**Leased equipment, specified equipment related to Master Lease Schedule No. 34083**

**Corp. Headquarters,**
**PO Box 130**
**Greene, NY 13778**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

Creditor's email address, if known

■ No

☐ Yes

**Date debt was incurred**

**Is anyone else liable on this claim?**

**03/26/18**

■ No

**Last 4 digits of account number**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**2697**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

■ No

☐ Unliquidated

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Disputed

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.5 4**

**Samson Horus**
Creditor's Name

**90 John Street,**
**New York, NY 10038**
Creditor's mailing address


Creditor's email address, if known

Date debt was incurred
**10/22/21**
Last 4 digits of account number
**5227**
Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Blanket**


Describe the lien


Is the creditor an insider or related party?
☑ No
☐ Yes
Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| $121,614.32 | $0.00 |
|---|---|

---

**2.5 5**

**SAMSON HORUS, LLC**
Creditor's Name

**400 Rella Blvd. Suite**
**165-101**
**Suffern, NY 10901**
Creditor's mailing address


Creditor's email address, if known

Date debt was incurred

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

Describe debtor's property that is subject to a lien
**Business Loan**


Describe the lien


Is the creditor an insider or related party?
☑ No
☐ Yes
Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| $490,000.00 | $0.00 |
|---|---|

---

**2.5 6**

**STATE OF CALIFORNIA**
Creditor's Name

**EMPLOYMENT**
**DEVELOPMENT**
**DEPARTMENT**
**LIEN GROUP, MIC 92G, PO**
**BOX 826880**
**Sacramento, CA**
**94280-0001**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Tax lien**


Describe the lien

| Unknown | $0.00 |
|---|---|

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 22 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**Is the creditor an insider or related party?**

■ No

☐ Yes

_____
Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**08/03/18**

**Last 4 digits of account number**
**2363**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

| 2.5 7 | **STATE OF CALIFORNIA** | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**EMPLOYMENT DEVELOPMENT DEPARTMENT LIEN GROUP, MIC 92G, PO BOX 826880 Sacramento, CA 94280-0001**

**Tax lien**

_____
Creditor's mailing address

**Describe the lien**
_____

**Is the creditor an insider or related party?**

■ No

☐ Yes

_____
Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**09/19/18**

**Last 4 digits of account number**
**9807**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

---

| 2.5 8 | **STATE OF CALIFORNIA** | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**EMPLOYMENT DEVELOPMENT DEPARTMENT LIEN GROUP, MIC 92G, PO BOX 826880 Sacramento, CA 94280-0001**

**Tax lien**

_____
Creditor's mailing address

**Describe the lien**
_____

**Is the creditor an insider or related party?**

■ No

☐ Yes

_____
Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**01/29/19**

---

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 23 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|

Name

**Last 4 digits of account number**
**5108**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.5 9 | **STATE OF CALIFORNIA** | **Describe debtor's property that is subject to a lien** | **Unknown** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**EMPLOYMENT DEVELOPMENT DEPARTMENT LIEN GROUP, MIC 92G, PO BOX 826880 Sacramento, CA 94280-0001**

**Tax lien**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**10/08/19**

**Last 4 digits of account number**
**4473**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.6 0 | **STATE OF CALIFORNIA** | **Describe debtor's property that is subject to a lien** | **$290,000.00** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**EMPLOYMENT DEVELOPMENT DEPARTMENT LIEN GROUP, MIC 92G, PO BOX 826880 Sacramento, CA 94280-0001**

**Tax lien**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**03/31/20**

**Last 4 digits of account number**
**9385**

**Do multiple creditors have an interest in the same property?**

As of the petition filing date, the claim is:
Check all that apply

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

■ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.6 1 | | | |
|---|---|---|---|

**STATE OF CALIFORNIA**
Creditor's Name

**EMPLOYMENT
DEVELOPMENT
DEPARTMENT
LIEN GROUP, MIC 92G, PO
BOX 826880
Sacramento, CA
94280-0001**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
05/20/20**
**Last 4 digits of account number
1980**
**Do multiple creditors have an
interest in the same property?**
■ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

Describe debtor's property that is subject to a lien
**Tax lien**

Describe the lien

Is the creditor an insider or related party?
■ No
☐ Yes
**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$145,000.00 | $0.00

---

| 2.6 2 | | | |
|---|---|---|---|

**Susquehanna Commercial
Finance, Inc**
Creditor's Name

**2 Great Valley Parkway, Ste
300
Malvern, PA 19355**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred
04/17/17**
**Last 4 digits of account number
8300**
**Do multiple creditors have an
interest in the same property?**
■ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

Describe debtor's property that is subject to a lien
**Leased equipment, lease dated 4/7/17 with
Alliance Funding Group**

Describe the lien

Is the creditor an insider or related party?
■ No
☐ Yes
**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

$4,621.44 | $0.00

---

| 2.6 3 | | | |
|---|---|---|---|

**Susquehanna Commercial
Finance, Inc**

Describe debtor's property that is subject to a lien

$3,836.88 | $0.00

---

Debtor   **Better 4 You Breakfast, Inc.**
_____
Name

Case number (if known)   **2:22-bk-10994-BB**

Creditor's Name
**2 Great Valley Parkway, Ste 300**
**Malvern, PA 19355**
Creditor's mailing address

**Leased equipment, lease dated 5/5/2017 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**05/12/17**
**Last 4 digits of account number**
**6760**

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 2.64 | **Susquehanna Commercial Finance, Inc** | | $15,630.28 | $0.00 |
|---|---|---|---|---|

Creditor's Name
**2 Great Valley Parkway, Ste 300**
**Malvern, PA 19355**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Leased equipment, lease dated 6/7/17 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**06/08/17**
**Last 4 digits of account number**
**6351**

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 2.65 | **Susquehanna Commercial Finance, Inc** | | $13,648.60 | $0.00 |
|---|---|---|---|---|

Creditor's Name
**2 Great Valley Parkway, Ste 300**
**Malvern, PA 19355**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Leased equipment, lease dated 6/12/17 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**06/26/17**
**Last 4 digits of account number**
**3959**

---

Official Form 206D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page 26 of 34

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.6 6 | **Susquehanna Commercial Finance, Inc** | | | Unknown | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**2 Great Valley Parkway, Ste 300**
**Malvern, PA 19355**

Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**07/20/17**

**Last 4 digits of account number**
**2900**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Leased equipment, lease dated 6/7/17 with Alliance Funding Group**

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.6 7 | **TCF** | | | Unknown | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**(BB&T Commercial Equipment Capital)**
**2 Great Valley Parkway, Ste. 300**
**Malvern, PA 19355**

Creditor's mailing address

**TCFCSCustomerservice@tcfbank.com**

Creditor's email address, if known

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

☑ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**Equipment Loan**

**Describe the lien**

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.6 8 | **TCF** | | | Unknown | $0.00 |
|---|---|---|---|---|---|

**Describe debtor's property that is subject to a lien**

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

Debtor    **Better 4 You Breakfast, Inc.**
_____
Name                                                    Case number (if known)    **2:22-bk-10994-BB**

| | |
|---|---|
| Creditor's Name | **Business Loan** |
| **(BB&T Commercial Equipment Capital) 2 Great Valley Parkway, Ste. 300 Malvern, PA 19355** | |
| Creditor's mailing address | **Describe the lien** |
| **TCFCSCustomerservice@tcfbank.com** | **Is the creditor an insider or related party?** |
| Creditor's email address, if known | ■ No □ Yes |
| **Date debt was incurred** | **Is anyone else liable on this claim?** ■ No |
| **Last 4 digits of account number 2352** | □ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Do multiple creditors have an interest in the same property?** ■ No □ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:** Check all that apply □ Contingent □ Unliquidated □ Disputed |

---

| | | | |
|---|---|---|---|
| 2.6 9 | **TCF Equipment Finance** | **Describe debtor's property that is subject to a lien** | $27,102.88 | $0.00 |

| | |
|---|---|
| Creditor's Name | **Leased equipment, lease dated 5/25/17 with Alliance Funding Group** |
| **a division of TCF National Bank 11100 Wayzata Blvd., Ste 801 Hopkins, MN 55305** | |
| Creditor's mailing address | **Describe the lien** |
| | **Is the creditor an insider or related party?** ■ No □ Yes |
| Creditor's email address, if known | **Is anyone else liable on this claim?** ■ No |
| **Date debt was incurred 05/31/17** | □ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **Last 4 digits of account number 6237** | |
| **Do multiple creditors have an interest in the same property?** ■ No □ Yes. Specify each creditor, including this creditor and its relative priority. | **As of the petition filing date, the claim is:** Check all that apply □ Contingent □ Unliquidated □ Disputed |

---

| | | | |
|---|---|---|---|
| 2.7 0 | **TCF Equipment Finance** | **Describe debtor's property that is subject to a lien** | $5,159.64 | $0.00 |

| | |
|---|---|
| Creditor's Name | **Leased equipment, lease dated 9/15/17 with Alliance Funding Group** |
| **a division of TCF National Bank 11100 Wayzata Blvd., Ste 801 Hopkins, MN 55305** | |
| Creditor's mailing address | **Describe the lien** |
| | **Is the creditor an insider or related party?** ■ No |

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

Debtor    **Better 4 You Breakfast, Inc.**
_____
Name

Case number (if known)    **2:22-bk-10994-BB**

---

Creditor's email address, if known

☐ **Yes**

**Is anyone else liable on this claim?**

**Date debt was incurred**

☑ No

**10/11/17**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**7914**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☑ **No**

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

☐ Disputed

---

| | | | |
|---|---|---|---|
| 2.7 1 | **US Foods, Inc.** | Describe debtor's property that is subject to a lien | **$273,237.00** | **$0.00** |

Creditor's Name

**Merchandise purchased from lienholder**

**15155 Northam St.**
**La Mirada, CA 90638**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

☑ **No**

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

☑ No

**11/21/19**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**8131**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☑ **No**

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

☐ Disputed

---

| | | | |
|---|---|---|---|
| 2.7 2 | **US Small Business Administration** | Describe debtor's property that is subject to a lien | **$150,000.00** | **$0.00** |

Creditor's Name

**Blanket**

**10737 Gateway West, #300**
**El Paso, TX 79935**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

☑ **No**

Creditor's email address, if known

☐ Yes

**Is anyone else liable on this claim?**

**Date debt was incurred**

☑ No

**07/03/20**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

**3222**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

☑ **No**

☐ Contingent

☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Unliquidated

☐ Disputed

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.7 3 | **VERNON CAPITAL** | Describe debtor's property that is subject to a lien | $240,000.00 | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | **Business Loan** | | |

**383 Kingston Ave , Suite 343,**
**Brooklyn, NY 11213**

Creditor's mailing address

Describe the lien

Underwriting@vernoncapit
algroup.com

Creditor's email address, if known

Is the creditor an insider or related party?

■ No
☐ Yes

**Date debt was incurred**

Is anyone else liable on this claim?

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

| 2.7 4 | **Vox Funding** | Describe debtor's property that is subject to a lien | $250,000.00 | $0.00 |
|---|---|---|---|---|
| | Creditor's Name | **Business Loan** | | |

**14 E 44th St 4th Floor**
**New York, NY 10017**

Creditor's mailing address

Describe the lien

support@voxfunding.com

Creditor's email address, if known

Is the creditor an insider or related party?

■ No
☐ Yes

**Date debt was incurred**

Is anyone else liable on this claim?

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | $38,248,130.97 |
|---|---|---|

**Part 2:**  **List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy
000531

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **ANDREW MICHAEL KRAMER**<br>**JOHN BOUGIAMAS**<br>**OTTERBOURG, PC**<br>**230 PARK AVE**<br>New York, NY 10169-0005 | Line  2.38 | |
| **Ascentium Capital, LLC**<br>**LLC, 23970 Hwy 59 N., 2nd Fl**<br>**Kingwood, TX 77339-1535** | Line  2.7 | 1481 |
| **Capitol Corporate Services, Inc.**<br>**455 Capitol Mall Complex, Ste 217**<br>**Sacramento, CA 95814** | Line  2.37 | |
| **Cogency Global Inc.**<br>**1325 J Street, Suite 1550,**<br>**Sacramento, CA 95814** | Line  2.5 | |
| **Corporation Service Company**<br>**c/o Pawnee Leasing Corp.**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.45 | |
| **Corporation Service Company**<br>**c/o Financial Pacific Leasing, Inc.**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.33 | |
| **Corporation Service Company**<br>**c/o National Funding, Inc.**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.42 | |
| **Corporation Service Company**<br>**c/o Pawnee Leasing Corp.**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.47 | |
| **Corporation Service Company**<br>**c/o Susquehanna Commercial Finance**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.62 | |
| **Corporation Service Company**<br>**c/o Pawnee Leasing Corp.**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.48 | |
| **Corporation Service Company**<br>**c/o Susquehanna Commercial Finance**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.63 | |
| **Corporation Service Company**<br>**c/o TCF Equipment Finance**<br>**801 Adlai Stevenson Dr.**<br>**Springfield, IL 62706** | Line  2.69 | |

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 31 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**Corporation Service Company**
**c/o Susquehanna Commercial Finance**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.64**_

---

**Corporation Service Company**
**c/o Susquehanna Commercial Finance**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.65**_

---

**Corporation Service Company**
**c/o Susquehanna Commercial Finance**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.66**_

---

**Corporation Service Company**
**c/o TCF Equipment Finance**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.70**_

---

**Corporation Service Company**
**c/o Pawnee Leasing Corp.**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.49**_

---

**Corporation Service Company**
**c/o Financial Pacific Leasing, Inc.**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.35**_

---

**Corporation Service Company**
**c/o Pawnee Leasing Corp.**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.50**_

---

**Corporation Service Company**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.12**_

---

**Corporation Service Company**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.17**_

---

**Corporation Service Company**
**c/o Amur Equipment Finance, Inc.**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.2**_

---

**Corporation Service Company**
**c/o Pawnee Leasing Corp.**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.51**_

---

**Corporation Service Company**
**c/o Amur Equipment Finance, Inc.**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.3**_

---

**Corporation Service Company**
**801 Adlai Stevenson Dr.**
**Springfield, IL 62706**

Line _**2.20**_

---

Official Form 206D     Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**     page 32 of 34

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| **Corporation Service Company**<br>c/o US Small Business Administratio<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62706 | Line __2.72__ | |
| **Corporation Service Company**<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62706 | Line __2.21__ | |
| **Corporation Service Company**<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62706 | Line __2.22__ | |
| **Corporation Service Company**<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62706 | Line __2.23__ | |
| **Corporation Service Company**<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62706 | Line __2.24__ | |
| **Corporation Service Company**<br>801 Adlai Stevenson Dr.<br>Springfield, IL 62706 | Line __2.25__ | |
| **Gisella Melendez**<br>**Wolters Kluwer Lien Solutions**<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.26__ | 8235 |
| **Hitachi Capital America Corp.**<br>7808 Creekridge Circle, Ste 250<br>Minneapolis, MN 55439 | Line __2.13__ | |
| **Hitachi Capital America Corp.**<br>7808 Creekridge Circle, Ste 250<br>Minneapolis, MN 55439 | Line __2.14__ | |
| **Hitachi Capital America Corp.**<br>7808 Creekridge Circle, Ste 250<br>Minneapolis, MN 55439 | Line __2.15__ | |
| **Lien Solutions**<br>c/o Gisella Melendez<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.43__ | |
| **Lien Solutions**<br>c/o Gisella Melendez<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.28__ | |
| **Lien Solutions**<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.36__ | |
| **Lien Solutions**<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.53__ | |
| **Lien Solutions**<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.29__ | |

Official Form 206D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 33 of 34

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| **Lien Solutions**<br>P.O. Box 29071<br>Glendale, CA 91209-9071 | Line __2.30__ | |
| **NCS UCC Services Group**<br>c/o Mary Cowan<br>PO Box 24101<br>Cleveland, OH 44124 | Line __2.71__ | |
| **TOM LALLAS**<br>**MARK D. HURWITZ**<br>**LEVY, SMALL & LALLAS**<br>815 Moraga Drive<br>Los Angeles, CA 90049 | Line __2.38__ | |
| **Wolters Kluwer Lien Solutions**<br>PO Box 29071<br>Glendale, CA 91209-9071 | Line __2.27__ | |
| **Wolters Kluwer Lien Solutions**<br>PO Box 29071<br>Glendale, CA 91209-9071 | Line __2.54__ | |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy
000535

**EXHIBIT H-2, 3**

**Fill in this information to identify the case:**

Debtor name      **Better 4 You Breakfast, Inc.**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    **2:22-bk-10994-BB**

☐ Check if this is an
amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

    ☐ No. Go to Part 2.

    ☑ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
    with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,451.19** | **$0.00** |
|  | **AARON CANO MORALES** **523 SOUTH HARRIS AVENUE** **COMPTON, CA 90221** | ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
|  | Date or dates debt was incurred **1/5/2022** | Basis for the claim: **Wages and benefits** | | |
|  | Last 4 digits of account number Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset? ☑ No ☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00** | **$0.00** |
|  | **ABIGAIL MATA** **1406 E 111TH PL APT 555** **Los Angeles, CA 90059** | ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
|  | Date or dates debt was incurred | Basis for the claim: **Wages and benefits** | | |
|  | Last 4 digits of account number Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset? ☑ No ☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,642.13 | $0.00 |
|---|---|---|---|---|
| | **ABRAHAM TORRES RUIZ**<br>**4325 EAST 1ST STREET**<br>**EAST LOS ANGELES, CA 90022** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,627.50 | $0.00 |
|---|---|---|---|---|
| | **ADA ALVARADO**<br>**1428 E 126TH ST**<br>**COMPTON, CA 90222** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.5 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,587.75 | $0.00 |
|---|---|---|---|---|
| | **ADELFO CHAVEZ**<br>**119 WILLOW ST APT. # 2**<br>**REDWOOD, CA 94063** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.6 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,455.30 | $0.00 |
|---|---|---|---|---|
| | **ADRIAN VAZQUEZ**<br>**2101 SANDY LANE APT M#8**<br>**LAS VEGAS, NV 89115** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 2.7 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,428.28 | $0.00 |
|---|---|---|---|---|

**ADRIAN VENTURA**
**14053 SAYRE ST**
**SYLMAR, CA 91342**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.8 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,935.72 | $0.00 |
|---|---|---|---|---|

**AIDA CACHO**
**7410 WOODMAN AVE 208**
**VAN NUYS, CA 91405**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.9 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,554.29 | $0.00 |
|---|---|---|---|---|

**AILEEN GILES**
**2319 RANSOM ST**
**COMMERCE, CA 90040**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.10 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,753.87 | $0.00 |
|---|---|---|---|---|

**ALBERTO GALLARDO**
**3587 MAGNOLIA AVE**
**LYWOOD, CA 90262**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.11** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,928.28** | **$0.00**

**ALBERTO HERNANDEZ**
**718 JUDSON  ST**
**LOS ANGELES, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

**2.12** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,363.79** | **$0.00**

**ALEJANDRA CORREA CHAVEZ**
**405 ROGELL CT APT 3**
**SAN MATEO, CA 94401**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

**2.13** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$635.55** | **$0.00**

**ALEJANDRA ESPINOZA**
**1020 ORANGE AVE. APT. #4**
**LONG BEACH, CA 90813**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

**2.14** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,172.25** | **$0.00**

**ALEJANDRA MORALES DE JESUS**
**124 S HICKS AVE**
**LOS ANGELES, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.15 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**ALEJANDRA PEREZ**
**813 W 40TH PLACE**
**Los Angeles, CA 90037**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.16 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,004.15 | $0.00 |
|---|---|---|---|---|

**ALEJANDRA RIVERA DE**
**BERNACHE**
**6060 BUELL STREET**
**BELL GARDENS, CA 90201**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.17 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,728.41 | $0.00 |
|---|---|---|---|---|

**ALEJANDRA ROBLES**
**1022 KERN AVE.**
**LOS ANGELES, CA 90022**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.18 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,052.50 | $0.00 |
|---|---|---|---|---|

**ALEJANDRO CRUZ**
**5915 KING AVE**
**MAYWOOD, CA 90270**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.19 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,599.28** | **$0.00** |
|---|---|---|---|---|
| | **ALEJANDRO TERRONES** | *Check all that apply.* | | |
| | **521 WHITEFORD** | ☐ Contingent | | |
| | **LA PUENTE, CA 91744** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.20 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,513.22** | **$0.00** |
|---|---|---|---|---|
| | **ALEXIS MENDOZA** | *Check all that apply.* | | |
| | **507 S GERHART AVE** | ☐ Contingent | | |
| | **EAST LOS ANGELES, CA 90022** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.21 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,433.60** | **$0.00** |
|---|---|---|---|---|
| | **ALFONSO OLIVEROS** | *Check all that apply.* | | |
| | **308 2ND LANE APT. B** | ☐ Contingent | | |
| | **SOUTH SAN FRANCISCO, CA 94080** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.22 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,541.28** | **$0.00** |
|---|---|---|---|---|
| | **ALFREDO ROBLEDO** | *Check all that apply.* | | |
| | **11506 GARFIELD AVE** | ☐ Contingent | | |
| | **SOUTH GATE, CA 90280** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.23 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $913.65 | $0.00 |
|---|---|---|---|---|

**ALICIA HERNANDEZ**
**2806 WEST LANTANA STREET**
**COMPTON, CA 90220**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.24 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $852.90 | $0.00 |
|---|---|---|---|---|

**ALICIA RAMOS**
**1520 E 87TH ST**
**LOS ANGELES, CA 90002**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.25 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,754.23 | $0.00 |
|---|---|---|---|---|

**ALICIA REYES**
**2021 ISABEL ST**
**LOS ANGELES, CA 90065**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.26 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,584.88 | $0.00 |
|---|---|---|---|---|

**ALMA GONZALEZ**
**4466 CASA GRANDE CIRCLE APT 33**
**CYPRESS, CA 90630**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**2.27** | Priority creditor's name and mailing address

**ALMA HERNANDEZ**
**7449 JAMIESON AVE**
**RESEDA, CA 91335**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,361.10          $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.28** | Priority creditor's name and mailing address

**ALMA RAMIREZ**
**1366 E 58 ST**
**LOS ANGELES, CA 90011**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$861.30          $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.29** | Priority creditor's name and mailing address

**ALMA VELAZQUEZ**
**656 S DUNCAN AVE**
**LOS ANGELES, CA 90022**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,735.58          $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.30** | Priority creditor's name and mailing address

**ALONDRA VILLASENOR**
**1525 WILLOW AVE**
**SAN LEANDRO, CA 94579**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$6,243.00          $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 2.31 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $875.55 | $0.00 |
|---|---|---|---|---|

**AMEYDA ROQUE**
**736 EAST 23RD STREET**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.32 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,295.01 | $0.00 |
|---|---|---|---|---|

**AMIT PAREKH**
**8218 SANTA INEZ PLACE, BLDG 34**
**BUENA PARK, CA 90620**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.33 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,818.25 | $0.00 |
|---|---|---|---|---|

**ANA CASILLAS**
**3366 BROADWAY ST**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.34 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,551.80 | $0.00 |
|---|---|---|---|---|

**ANA CORPENO**
**21217 GAULT ST APT 37**
**CANOGA PARK, CA 91303**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

**2.35** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,275.45 | $0.00

**ANA DUARTE**
**423 E 52ND ST**
**LOS ANGELES, CA 90011**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.36** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,624.65 | $0.00

**ANA HERNANDEZ**
**1723 E. GAGE AVE**
**LOS ANGELES, CA 90001**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.37** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,816.95 | $0.00

**ANA HERRERA**
**4112 N FIGUEROA ST APT 1**
**LOS ANGELES, CA 90065**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.38** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,425.82 | $0.00

**ANA HERRERA**
**12919 GOLLER AVE**
**NORWALK, CA 90650**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.39 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,851.00 | $0.00 |
|---|---|---|---|---|

**ANA MAGANA
7014 S HOOVER ST APT 29
LOS ANGELES, CA 90044**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.40 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,034.55 | $0.00 |
|---|---|---|---|---|

**ANA MARIA DEL CARPIO
5421 KESTER AVE APT #102
SHERMAN OAKS, CA 91411**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.41 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,413.15 | $0.00 |
|---|---|---|---|---|

**ANA PARENTE
8946 CYPRESS AVENUE
SOUTH GATE, CA 90280**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.42 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $821.55 | $0.00 |
|---|---|---|---|---|

**ANA RIVERA
9554 MAIE AVE
LOS ANGELES, CA 90002**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.43 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,125.45 | $0.00 |
|---|---|---|---|---|

**ANA RODRIGUEZ**
**9433 COMPTON AVE**
**LOS ANGELES, CA 90002**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.44 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,816.35 | $0.00 |
|---|---|---|---|---|

**ANA VELASQUEZ**
**5307 COMPTON AVE**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.45 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,430.21 | $0.00 |
|---|---|---|---|---|

**ANAYELI CERVANTES**
**6049 ALLSTON ST #2**
**LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.46 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,810.70 | $0.00 |
|---|---|---|---|---|

**ANDER VANEGAS**
**435 E 65TH ST**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number
Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.47 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,828.88** | $0.00 |
|---|---|---|---|---|
| | **ANDREA OSORIO** | *Check all that apply.* | | |
| | **10050 MOUNTAIR AVE #10** | ☐ Contingent | | |
| | **TUJUNGA, CA 91042** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.48 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,164.54** | $0.00 |
|---|---|---|---|---|
| | **ANDRES GONZALES MARTINEZ** | *Check all that apply.* | | |
| | **4933 ECHO STREET APT 16** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90042** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.49 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$684.45** | $0.00 |
|---|---|---|---|---|
| | **ANGELA LOPEZ** | *Check all that apply.* | | |
| | **2056 S HARVARD BLV APT 1** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90018** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.50 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$921.60** | $0.00 |
|---|---|---|---|---|
| | **ANGELICA ROSAS DE APARICIO** | *Check all that apply.* | | |
| | **2614 WEST 7TH STREET, #501** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90057** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.51** | Priority creditor's name and mailing address

**ANIBAL GALEANA**
**4411 E 57 TH ST APT  C**
**MAYWOOD, CA 90270**

As of the petition filing date, the claim is:      **$1,256.40**    **$0.00**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.52** | Priority creditor's name and mailing address

**ANITA SAPP**
**4527 CALICO AVE**
**PICO RIVERA, CA 90660**

As of the petition filing date, the claim is:      **$672.60**    **$0.00**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.53** | Priority creditor's name and mailing address

**ANITA TRAN-TONG**
**3545 MONTEREY RD**
**LOS ANGELES, CA 90032**

As of the petition filing date, the claim is:      **$2,197.58**    **$0.00**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.54** | Priority creditor's name and mailing address

**ANNETTE MIRE**
**2724 FRECKLES RD**
**LAKEWOOD, CA 90712**

As of the petition filing date, the claim is:      **$7,392.20**    **$0.00**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.55 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $865.95 | $0.00 |
|---|---|---|---|---|
| | **ANTONIA MENDEZ ARENAS**<br>**625 NORTH HILL ST APT 411**<br>**LOS ANGELES, CA 90012** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.56 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,369.80 | $0.00 |
|---|---|---|---|---|
| | **ANTONIA MONTOYA**<br>**1508 EAST 62ND STREET APT 3**<br>**LOS ANGELES, CA 90001** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.57 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,029.60 | $0.00 |
|---|---|---|---|---|
| | **ANTONIO GARCIA GUMERSINDO**<br>**1890 S COCHRAN AVE # 17**<br>**LOS ANGELES, CA 90019** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.58 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,529.70 | $0.00 |
|---|---|---|---|---|
| | **ARACELI AGUILAR**<br>**4037 LENNOX BOULEVARD**<br>**INGLEWOOD, CA 90304** | *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

| 2.59 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,384.10 | $0.00 |
|---|---|---|---|---|

**ARACELI GUERRERO DE MATA**
**2887 W AVE 35 2**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.60 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,164.30 | $0.00 |
|---|---|---|---|---|

**ARACELI NAVARRETE**
**3163 OHIO AVE #B**
**SOUTH GATE, CA 90280**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.61 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $994.35 | $0.00 |
|---|---|---|---|---|

**ARACELI PEREZ**
**7735 ATLANTIC AVE #97**
**CUDAHY, CA 90201**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.62 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,149.13 | $0.00 |
|---|---|---|---|---|

**ARACELI POSADA DE MEJIA**
**667 FRASER AVE**
**LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.63 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,108.95** | $0.00 |
|---|---|---|---|---|

**ARACELI RAMIREZ**
**12544 OXNARD ST. APT. B**
**NORTH HOLLYWOOD, CA 91606**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.64 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,513.05** | $0.00 |
|---|---|---|---|---|

**ARACELY JOVEL**
**500 WEST GLEASON STREET**
**MONTEREY PARK, CA 91754**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.65 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,594.35** | $0.00 |
|---|---|---|---|---|

**ARASELI ESPARZA RODRIGUEZ**
**10138 MCCLEMONT AVENUE**
**TUJUNGA, CA 91042**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.66 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$898.20** | $0.00 |
|---|---|---|---|---|

**ARCELIA FLORES**
**316 W HARDY ST**
**INGLEWOOD, CA 90301**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.67 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,113.73 | $0.00 |
|---|---|---|---|---|

**ARELY MOLINA**
**11266 ADELPHIA AVE**
**PACOIMA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.68 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,432.64 | $0.00 |
|---|---|---|---|---|

**ARIEL DIAZ**
**35 NEPTUNE ST**
**SAN FRANCISCO, CA 94124**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.69 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,300.28 | $0.00 |
|---|---|---|---|---|

**ARIELLA CASTILLO DUVIVIER**
**3 INDIGO DRIVE APT 101**
**PETALUMA, CA 94954**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.70 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,534.33 | $0.00 |
|---|---|---|---|---|

**ARMANDO CHACON**
**350 EAST 106TH STREET**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.71 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **$2,151.85** | **$0.00** |
|---|---|---|---|---|---|

**ARMANDO GUERRERO
6623 WOODLEY AVE # 13
VAN NUYS, CA 91406**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.72 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **$2,398.45** | **$0.00** |
|---|---|---|---|---|---|

**ARTURO GANCEDO
2320 CONNOR AVE
COMMERCE, CA 90040**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.73 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **$2,974.50** | **$0.00** |
|---|---|---|---|---|---|

**ASHLEY BECHET
8124 STEWART AND GRAY ROAD,
APT 101
DOWNEY, CA 90241**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.74 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | | **$1,834.20** | **$0.00** |
|---|---|---|---|---|---|

**ASUCENA LEDEZMA
20554 HARTLAND ST APT 4
CANOGA PARK, CA 91306**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.75 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,070.70** | **$0.00** |
|---|---|---|---|---|
| | **AUDREY ARNOLD** | *Check all that apply.* | | |
| | **132 HARPS ST APT A** | ☐ Contingent | | |
| | **SAN FERNANDO, CA 91340** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes |

| 2.76 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,830.00** | **$0.00** |
|---|---|---|---|---|
| | **AZUCENA LOPEZ** | *Check all that apply.* | | |
| | **1555 E IMPERIAL HWY APT 26** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90059** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes |

| 2.77 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,234.96** | **$0.00** |
|---|---|---|---|---|
| | **BALTAZAR TRUJILLO** | *Check all that apply.* | | |
| | **14400 VOSE ST. APT#224** | ☐ Contingent | | |
| | **VAN NUYS, CA 91405** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes |

| 2.78 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,359.39** | **$0.00** |
|---|---|---|---|---|
| | **BERNARDINO PEREZ** | *Check all that apply.* | | |
| | **305 SAN ANSELMO AVE S** | ☐ Contingent | | |
| | **SAN BRUNO, CA 94066** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes |

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|--------|----------------------------------|--|------------------------|------------------------|
| | Name | | | |

---

**2.79** | Priority creditor's name and mailing address

**BETY SANTAMARIA**
**618 1/2 CLELA AVE**
**LOS ANGELES, CA 90022**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$348.00    $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.80** | Priority creditor's name and mailing address

**BLANCA CHAVEZ**
**1480 E 115TH ST APT#75**
**LOS ANGELES, CA 90059**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$732.30    $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.81** | Priority creditor's name and mailing address

**BLANCA GUERRA VARGAS**
**2721 WINDY BREEZE CT**
**LAS VEGAS, NV 89142**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,457.34    $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.82** | Priority creditor's name and mailing address

**BLANCA MEJIA**
**333 1/2 BRANCH ST.**
**LOS ANGELES, CA 90042**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,081.95    $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.83 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,989.90 | $0.00 |
|---|---|---|---|---|

**BONIFACIO JIMENEZ**
**3712 EMMONS AVE**
**NORTH LAS VEGAS, NV 89030**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.84 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**BRALLAM CARRILLO**
**4580W 173RD ST APT 102**
**Lawndale, CA 90260**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.85 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $932.40 | $0.00 |
|---|---|---|---|---|

**BRENDA REYNA**
**2920 WEST 7TH STREET APT 13**
**LOS ANGELES, CA 90005**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.86 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,926.40 | $0.00 |
|---|---|---|---|---|

**BRET GREENBERG**
**541 E RAINIER AVENUE**
**ORANGE, CA 92865**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.87 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**BRET VIEGELMANN**
**24619 VALLEY ST APT 19**
**NEWHALL, CA 91321**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.88 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,019.01 | $0.00 |
|---|---|---|---|---|

**CAMILA MONTES**
**1085 ROLLINS ROAD**
**APARTAMENTO 203**
**MILBRAE, CA 94010**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.89 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,461.90 | $0.00 |
|---|---|---|---|---|

**CANDIDA DE LA CRUZ**
**7318 WILBUR AV.**
**RESEDA, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.90 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,251.86 | $0.00 |
|---|---|---|---|---|

**CARINA SOLIS**
**3641 CHESAPEAKE APT 2**
**LOS ANGELES, CA 90016**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 2.91 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**CARLOS VELEZ**
**2461 1/2 PALM PL**
**Huntington Park, CA 90255**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)
- ☑ No
- ☐ Yes

---

| 2.92 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,766.18** | **$0.00** |
|---|---|---|---|---|

**CARLOS MARTINS**
**4405 ROSEMEAD BLVD APT 208**
**ROSEMEAD, CA 91770**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)
- ☑ No
- ☐ Yes

---

| 2.93 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,069.89** | **$0.00** |
|---|---|---|---|---|

**CARLOS NOLASCO**
**317 NORTH 3RD ST APT C**
**MONTEBELLO, CA 90640**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)
- ☑ No
- ☐ Yes

---

| 2.94 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,252.92** | **$0.00** |
|---|---|---|---|---|

**CARLOS PAZ**
**5556 ELMER AVE APT 1**
**NORTH HOLLYWOOD, CA 91601**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)
- ☑ No
- ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.95 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,677.64 | $0.00 |
|---|---|---|---|---|
| | **CARLOS VELEZ** **2461 1/2 PALM PL** **HUNTINGTON PARK, CA 99255** | ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
| | Date or dates debt was incurred **1/5/2022** | Basis for the claim: **Wages and benefits** | | |
| | Last 4 digits of account number Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset? ■ No ☐ Yes | | |

| 2.96 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,276.24 | $0.00 |
|---|---|---|---|---|
| | **CARLOS VILLEGAS** **1262 S ROWAN AVE  APT 4** **LOS ANGELES, CA 90023** | ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
| | Date or dates debt was incurred **1/5/2022** | Basis for the claim: **Wages and benefits** | | |
| | Last 4 digits of account number Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset? ■ No ☐ Yes | | |

| 2.97 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $813.60 | $0.00 |
|---|---|---|---|---|
| | **CARMEN MOYANO** **6625 DE SOTO AVE APT 17** **CANOGA PARK, CA 91303** | ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
| | Date or dates debt was incurred **1/5/2022** | Basis for the claim: **Wages and benefits** | | |
| | Last 4 digits of account number Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset? ■ No ☐ Yes | | |

| 2.98 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 | $0.00 |
|---|---|---|---|---|
| | **CAROLINA HERNANDEZ** **9341 ELM VISTA DR** **Downey, CA 90242** | ☐ Contingent ☐ Unliquidated ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: **Wages and benefits** | | |
| | Last 4 digits of account number Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset? ■ No ☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.99 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $348.00 | $0.00 |
|---|---|---|---|---|

**CAROLINA SANTAMARIA**
**618 1/2 CLELA AVE**
**LOS ANGELES, CA 90022**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.100 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,262.10 | $0.00 |
|---|---|---|---|---|

**CECILIA RAMOS**
**11115 SHERMAN WAY APT 110**
**SUN VALLEY, CA 91352**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.101 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,879.01 | $0.00 |
|---|---|---|---|---|

**CELENE REYES DE JESUS**
**367 S FORD BLVD**
**LOS ANGELES, CA 90022**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.102 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,490.10 | $0.00 |
|---|---|---|---|---|

**CELIA PLEITEZ**
**3609 CEDAR AVENUE**
**LYNWOOD, CA 90262**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.103 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $6,795.92 | $0.00 |
|---|---|---|---|---|
| | **CESAR DE DIOS PEREZ**<br>**13707 S BUDLONG AVE APT 116**<br>**GARDENA, CA 90247** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.104 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $2,799.59 | $0.00 |
|---|---|---|---|---|
| | **CESAR MORENO**<br>**657 SOUTH BONNIE BEACH**<br>**PLACE**<br>**LOS ANGELES, CA 90023** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.105 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $4,252.00 | $0.00 |
|---|---|---|---|---|
| | **CHRISTINE HERNANDEZ**<br>**21304 BLUE CURL WAY**<br>**CANYON COUNTRY, CA 91351** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.106 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $6,527.85 | $0.00 |
|---|---|---|---|---|
| | **CHRISTOPHER DAPELLO**<br>**2725 E MINE CREEK RD #1094**<br>**PHOENIX, AZ 85024** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.107** | Priority creditor's name and mailing address

**CINTHIA GUNERA VELASQUEZ**
**8637 STATE STREET APT A**
**SOUTH GATE, CA 90280**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$2,783.03      $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.108** | Priority creditor's name and mailing address

**CIRERI OLIVARES**
**2704 WINDY BREEZE CT.**
**LAS VEGAS, NV 89142**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,414.19      $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.109** | Priority creditor's name and mailing address

**CIRILA MORALES DE LOS**
**SANTOS**
**6049 ALLSTON SUITE 2**
**LOS ANGELES, CA 90022**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$2,320.13      $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.110** | Priority creditor's name and mailing address

**CLAUDIA CHAVEZ**
**615 S RAMPART BLVD APT 101**
**LOS ANGELES, CA 90057**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

$1,943.03      $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.111** | Priority creditor's name and mailing address

**CLAUDIA GUEVARA**
**2533 OCEAN VIEW AVE APT 506**
**LOS ANGELES, CA 90057**

As of the petition filing date, the claim is:      **$1,723.05**    $0.00
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.112** | Priority creditor's name and mailing address

**CLAUDIA MORALES**
**10965 GLENOAKS BLVD SP 517**
**PACOIMA, CA 91331**

As of the petition filing date, the claim is:      **$771.45**    $0.00
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.113** | Priority creditor's name and mailing address

**CLAUDIA ORTIZ**
**5281 1/2 HUNTINGTON DR NORTH**
**LOS ANGELES, CA 90032**

As of the petition filing date, the claim is:      **$984.60**    $0.00
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.114** | Priority creditor's name and mailing address

**CREON DOTSON**
**4018 HILLCREST DRIVE APT B**
**LOS ANGELES, CA 90008**

As of the petition filing date, the claim is:      **$5,635.01**    $0.00
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.115 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,792.18** | **$0.00** |
|---|---|---|---|---|

**CRESENCIO REYES**
**2021 ISABEL ST**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.116 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,770.45** | **$0.00** |
|---|---|---|---|---|

**CRISTHIAN VALERIO**
**8235 OWENSOMOUTH AVE APT**
**24**
**CANOGA PARK, CA 91304**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.117 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$655.05** | **$0.00** |
|---|---|---|---|---|

**CYNTHIA URUGUTIA-RIVERO**
**10107 PESCADERO AVENUE**
**SOUTH GATE, CA 90280**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.118 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$998.85** | **$0.00** |
|---|---|---|---|---|

**DAMARIS VICTORIA**
**2003 OAK STREET  APT 110**
**LOS ANGELES, CA 90007**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.119 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,596.61 | $0.00 |
|---|---|---|---|---|

**DAMIAN RODRIGUEZ**
**6246 PICKERING AVE APT B**
**WHITTIER, CA 90601**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.120 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,720.20 | $0.00 |
|---|---|---|---|---|

**DANIEL CASTILLO**
**12237 SHERIDAN ST**
**NORWALK, CA 90650**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.121 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**DANIELLA CASTILLO DUVIVIER**
**1100 WILSHIRE BLVD APT 2705**
**LOS ANGELES, CA 90017**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.122 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**DAPHNE ROBERTS**
**5048 ARCTIC PL**
**RANCHO CUCAMONGA, CA 91739**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.123 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $6,730.14 | $0.00 |
|---|---|---|---|---|
| | **DAVID KRETOVICS**<br>**626 WEST WHITCOMB AVENUE**<br>**GLENDORA, CA 91741** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.124 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,116.75 | $0.00 |
|---|---|---|---|---|
| | **DEBORAH CORTES**<br>**5508 N CONWELL AVE**<br>**AZUSA, CA 91702** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.125 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $5,503.35 | $0.00 |
|---|---|---|---|---|
| | **DEBORAH SWINSON**<br>**504 SOUTH CLYMAR AVENUE**<br>**COMPTON, CA 90220** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.126 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,344.00 | $0.00 |
|---|---|---|---|---|
| | **DELMY VASQUEZ**<br>**440 E 111TH PL**<br>**LOS ANGELES, CA 90061** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.127 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $2,758.39 | $0.00 |
|---|---|---|---|---|
| | **DENNIS ALVARADO**<br>**2533 OCEAN VIEW AVE APT# 506**<br>**LOS ANGELES, CA 90057** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.128 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $885.30 | $0.00 |
|---|---|---|---|---|
| | **DIANE RUEDA**<br>**14642 KITTRIDGE ST**<br>**VAN NUYS, CA 91405** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.129 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,854.77 | $0.00 |
|---|---|---|---|---|
| | **DIANNA CUEVAS**<br>**3306 BURTON AVE APT D**<br>**LYNWOOD, CA 90262** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.130 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,717.20 | $0.00 |
|---|---|---|---|---|
| | **DOLORES GUADIANA**<br>**4156 W. 119TH ST.**<br>**HAWTHORNE, CA 90250** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.131 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**DOLORES PADILLA**
**8457 EVERGREEN AVE APT E**
**South Gate, CA 90280**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.132 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**DORA CRUZ**
**6049 ALLSTON ST APT2**
**Los Angeles, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.133 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,026.28 | $0.00 |
|---|---|---|---|---|

**DORALIZ TRUJILLO**
**8505 COLUMBUS AVE UNIT 101**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.134 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,653.53 | $0.00 |
|---|---|---|---|---|

**DULCE ROBLEDO**
**8520 STEWART AND GRAY ROAD**
**DOWNEY, CA 90241**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.135 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,437.32 | $0.00 |
|---|---|---|---|---|

**DYLAN PETERS**
**10565 MIDNIGHT GLEAM AVE**
**LAS VEGAS, NV 89129**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.136 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,506.85 | $0.00 |
|---|---|---|---|---|

**EARL ROSAS**
**28151 HIGHRIDGE RD APT 107**
**RANCHO PALOS VERDES, CA**
**90275**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.137 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $922.33 | $0.00 |
|---|---|---|---|---|

**EDUVIGES SANCHEZ DE**
**VILLEGAS**
**439 WEST 64TH STREET**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.138 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,715.60 | $0.00 |
|---|---|---|---|---|

**EDWIN ARAGON**
**11266 ADELPHIA AVE**
**PACOIMA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.139 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$7,372.21** | **$0.00** |
|---|---|---|---|---|
| | **EDWIN MAIRENA** | *Check all that apply.* | | |
| | **7554 FRENCH SPRINGS ST** | ☐ Contingent | | |
| | **LAS VEGAS, NV 89139** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes | | |

| 2.140 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|
| | **EGIDIO HERNANDEZ** | *Check all that apply.* | | |
| | **3567 E 58 ST** | ☐ Contingent | | |
| | **Maywood, CA 90270** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes | | |

| 2.141 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$918.00** | **$0.00** |
|---|---|---|---|---|
| | **ELADIO CORADO** | *Check all that apply.* | | |
| | **442 S MARIPOSA AVE APT 102** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90020** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes | | |

| 2.142 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,030.95** | **$0.00** |
|---|---|---|---|---|
| | **ELDA ROMAN** | *Check all that apply.* | | |
| | **3632 E 5TH ST APT 8** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90063** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No  ☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.143 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $949.20 | $0.00 |
|---|---|---|---|---|

**ELISA REYES**
**6008 STAFFORD AVENUE APT C**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.144 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,709.40 | $0.00 |
|---|---|---|---|---|

**ELIZABETH CARVAJAL**
**13413 TRAUB AVE.**
**LOS ANGELES, CA 90059**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.145 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,719.60 | $0.00 |
|---|---|---|---|---|

**ELIZABETH QUINONEZ**
**3641 CHESAPEAKE AVENUE APT
2**
**LOS ANGELES, CA 90016**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.146 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,512.90 | $0.00 |
|---|---|---|---|---|

**ELIZABETH VIDAL**
**12401 FILMORE STREET SPACE
112**
**SYLMAR, CA 91342**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.147 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,226.25 | $0.00 |
|---|---|---|---|---|

**ELOISA MICHEL**
**1565 W 19TH ST**
**LONG BEACH, CA 90810**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.148 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $379.65 | $0.00 |
|---|---|---|---|---|

**ELOISA SANCHEZ ZERMENO**
**345 S NEW HAMPSHIRE AVE APT**
**307**
**LOS ANGELES, CA 90020**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.149 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,725.00 | $0.00 |
|---|---|---|---|---|

**ELSA SALAZAR**
**263 E. 30TH ST.**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.150 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,360.50 | $0.00 |
|---|---|---|---|---|

**ELSIE ARIAS**
**17256 SAN FERNANDO MISSION**
**BLVD**
**GRANADA HILLS, CA 91344**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.151** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00

**ELVIA LOPEZ**
**3327 E SABINA ST APT 2405**
**Los Angeles, CA 90023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.152** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00

**ELVIRA AYALA**
**611 N SANTA FE AVE**
**Compton, CA 90221**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.153** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $952.95 | $0.00

**ELVIRA JUAREZ**
**737 W. 41ST PLACE APT. 14**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

**2.154** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00

**EMILIA GAMBOA**
**3018 E 4TH ST  APT 5**
**Los Angeles, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
■ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.155 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $348.00 | $0.00 |
|---|---|---|---|---|

Priority creditor's name and mailing address

**EMILIA GAMBOA**
**3018 E 4TH ST  APT 5**
**LOSANGELES, CA 90063**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.156 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,082.12 | $0.00 |
|---|---|---|---|---|

**EMILIANO CHAVEZ**
**14674 RAYEN ST #8**
**PANORAMA CITY, CA 91402**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.157 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,179.15 | $0.00 |
|---|---|---|---|---|

**EMILY HILLMAN**
**1710 S PURDUE AVE APT 101**
**WEST LOS ANGELES, CA 90025**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.158 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,193.25 | $0.00 |
|---|---|---|---|---|

**EMMA QUIROZ GOMEZ**
**1450 WEST ETIWANDA AVENUE**
**RIALTO, CA 92376**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.159 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$440,000.00** | **$440,000.00** |
|---|---|---|---|---|

**Employment Development Department**
**PO Box 989061**
**West Sacramento, CA 95798**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred<br>**2019** | Basis for the claim:<br>**Payroll Taxes** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.160 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$0.00** | **$0.00** |
|---|---|---|---|---|

**ENRIQUE LOERA**
**444 S. KINGSELY DR APT 101**
**Los Angeles, CA 90020**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim:<br>**Wages and benefits** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.161 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$884.25** | **$0.00** |
|---|---|---|---|---|

**ERENDIRA CAMPOS GONZALEZ**
**6008 STAFFORD AVENUE APT C**
**HUNTINGTON PARK, CA 90255**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.162 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,651.99** | **$0.00** |
|---|---|---|---|---|

**ERIBERTO IBARRA-SALAZAR**
**4298 BORATKO ST**
**LAS VEGAS, NV 89115**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** |
|---|---|

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.163 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,486.95** | $0.00 |
|---|---|---|---|---|
| | **ERIKA CARMONA**<br>**324 1/2 N. AVE. 51**<br>**LOS ANGELES, CA 90042** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

---

| 2.164 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,328.25** | $0.00 |
|---|---|---|---|---|
| | **ERIKA RODRIGUEZ AMAYA**<br>**2411 E GAGE AVE APT 36**<br>**HUNTINGTON PARK, CA 90255** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

---

| 2.165 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$10,461.68** | $0.00 |
|---|---|---|---|---|
| | **ERWIN ROSALES**<br>**11134 ARMINTA ST, 103**<br>**SUN VALLEY, CA 91352** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

---

| 2.166 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$2,083.05** | $0.00 |
|---|---|---|---|---|
| | **ESTELA DORANTES**<br>**6049 ALLSTON SUITE 2**<br>**LOS ANGELES, CA 90022** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.167 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,572.96** | **$0.00** |
|---|---|---|---|---|

**ESTHELA LOPEZ**
**863 E 49TH PL APT 2**
**LOS ANGELES, CA 90011**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.168 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**ESTHER HERNANDEZ**
**9341 ELM VISTA DR APT 9**
**Downey, CA 90242**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.169 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,704.45** | **$0.00** |
|---|---|---|---|---|

**EUDOSIA HERNANDEZ**
**3923 EAST 6TH STREET**
**LOS ANGELES, CA 90023**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.170 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,464.51** | **$0.00** |
|---|---|---|---|---|

**EUGENIA RIVAS**
**12460 LAKEWOOD BLV. APT 14**
**DOWNEY, CA 90242**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.171 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,175.55 | $0.00 |
|---|---|---|---|---|

**EVA LOPEZ**
**128 1/2 SPRUCE AVE**
**INGLEWOOD, CA 90301**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.172 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $930.88 | $0.00 |
|---|---|---|---|---|

**EVA MARIA MARTINEZ VALENCIA**
**1738 TAMPA WAY**
**SAN JOSE, CA 95122**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.173 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,785.00 | $0.00 |
|---|---|---|---|---|

**EVANGELINA SERRANO**
**910 W. 76TH ST.**
**LOS ANGELES, CA 90044**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.174 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,995.20 | $0.00 |
|---|---|---|---|---|

**EVELYN ACOSTA**
**832 S TAYLOR AVE APT A**
**MONTEBELLO, CA 90640**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.175 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,041.60** | $0.00 |
|---|---|---|---|---|

**EVELYN LOPEZ**
**13411 BEAVER ST**
**SYLMAR, CA 91342**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.176 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,710.32** | $0.00 |
|---|---|---|---|---|

**EVELYN MALDONADO**
**832 S TAYLOR AVENUE**
**MONTEBELLO, CA 90640**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.177 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,398.64** | $0.00 |
|---|---|---|---|---|

**FABIAN GARCIA SANCHEZ**
**1342 N FERNDALE ST**
**ANAHEIM, CA 92801**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.178 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,436.08** | $0.00 |
|---|---|---|---|---|

**FATIMA MEDINA**
**1208 WARWICK CT**
**LAS VEGAS, NV 89110**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.179 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,804.11 | $0.00 |
|---|---|---|---|---|

**FELANDO MARSHALL**
**PO BOX 5645**
**LONG BEACH, CA 90805**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.180 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**FERNANDO CASTILLO**
**330 WEST 11TH STREET APT 302**
**LOS ANGELES, CA 90015**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.181 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,994.93 | $0.00 |
|---|---|---|---|---|

**FERNANDO URBINA**
**258 N WESTLAKE AVE**
**LOS ANGELES, CA 90026**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.182 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,169.93 | $0.00 |
|---|---|---|---|---|

**FERNANDO ZUNIGA**
**2003 W 11TH ST APT 6**
**LOS ANGELES, CA 90006**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.183 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$945.28** | $0.00 |
|---|---|---|---|---|

**FERONDA CARR**
**1437 REVERE AVE**
**SAN FRANCISCO, CA 94124**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| 2.184 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,172.32** | $0.00 |
|---|---|---|---|---|

**FIDEL MARCIAL**
**12803 BOMBARDIER AVE**
**NORWALK, CA 90650**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| 2.185 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,018.50** | $0.00 |
|---|---|---|---|---|

**FIDELINA ESCALANTE**
**3439 BESWICK**
**LOS ANGELES, CA 90023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| 2.186 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,857.15** | $0.00 |
|---|---|---|---|---|

**FLORIDALMA ROBLERO**
**345 SOUTH COLUMBIA AVE APT**
**428**
**LOS ANGELES, CA 90017**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.187 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**Franchise Tax Board**
**PO Box 1673**
**Sacramento, CA 95812-1673**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Only**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.188 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $947.25 | $0.00 |
|---|---|---|---|---|

**FRANCISCA HERNANDEZ**
**913 NORTH EASTMAN AVENUE**
**LOS ANGELES, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.189 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,618.56 | $0.00 |
|---|---|---|---|---|

**FRANCISCO BELTRAN**
**2320 E AVE Q4 APT #37**
**PALMDALE, CA 93550**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.190 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,229.93 | $0.00 |
|---|---|---|---|---|

**FRANCISCO NERI**
**5077 BORLAND ROAD**
**LOS ANGELES, CA 90032**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.191 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,739.33 | $0.00 |
|---|---|---|---|---|

**FRANKLIN TINEY**
**4039 E 58TH ST**
**MAYWOOD, CA 90270**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.192 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $924.04 | $0.00 |
|---|---|---|---|---|

**GABRIELA LEMUS QUEVEDO**
**1613 BERMUDA WAY**
**SAN JOSE, CA 95122**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.193 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,007.40 | $0.00 |
|---|---|---|---|---|

**GABRIELA OCON**
**3623 E 61ST PL**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.194 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,588.40 | $0.00 |
|---|---|---|---|---|

**GEORGINA DEL VALLE**
**11321 MONA BLVD. #271**
**LOS ANGELES, CA 90059**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.195 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,021.61** | **$0.00** |
|---|---|---|---|---|

**GERALD BONCALES**
**737 SHULLSBURG WAY**
**OAKLEY, CA 94561**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.196 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,967.92** | **$0.00** |
|---|---|---|---|---|

**GERMAN MARTINEZ**
**1829 HAMLET ST #2**
**SAN MATEO, CA 94403**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.197 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$909.37** | **$0.00** |
|---|---|---|---|---|

**GINA MURCIA**
**1105 LEIGHTON AVE**
**LOS ANGELES, CA 90037**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.198 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,672.50** | **$0.00** |
|---|---|---|---|---|

**GIULIANA FRANCO**
**20267 HAYNES ST**
**WINNETKA, CA 91306**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.199 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,145.58 | $0.00 |
|---|---|---|---|---|

**GLORIA PEREZ**
**813 W 40TH PLACE**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY   ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)   ☐ Yes

---

| 2.200 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,857.00 | $0.00 |
|---|---|---|---|---|

**GRACIELA MEDINA**
**639 S. COMMONWEALTH AVE.**
**#208**
**LOS ANGELES, CA 90005**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY   ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)   ☐ Yes

---

| 2.201 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,589.12 | $0.00 |
|---|---|---|---|---|

**GREGORY CHAVEZ**
**7809 MORRILL AVE**
**WHITTIER, CA 90606**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY   ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)   ☐ Yes

---

| 2.202 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**GREISY NOLASCO**
**4830 LIVE OAK ST**
**Bell Gardens, CA 90201**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?
Specify Code subsection of PRIORITY   ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)   ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.203 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,635.00** | **$0.00** |
|---|---|---|---|---|

**GRETNA ROJO**
**7411 NEWCASTLE AVE**
**LOS ANGELES, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.204 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,055.10** | **$0.00** |
|---|---|---|---|---|

**GRISELDA CASTILLO**
**916 S CARONDELET ST APT 29**
**LOS ANGELES, CA 90006**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.205 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,792.20** | **$0.00** |
|---|---|---|---|---|

**GRISELDA LUEVANO**
**3332 IDELL ST**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.206 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$884.55** | **$0.00** |
|---|---|---|---|---|

**GRISELDA RODRIGUEZ PELAYO**
**1262 WEST MARSHALL BLVD**
**SAN BERNARDINO, CA 92405**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.207 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,877.55 | $0.00 |
|---|---|---|---|---|

**GUADALUPE ZAVALA**
**740 VALENCIA ST. #102**
**LOS ANGELES, CA 90017**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.208 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,560.00 | $0.00 |
|---|---|---|---|---|

**GUILLERMINA LANDA**
**9613 S. NORMANDIE AVE.**
**LOS ANGELES, CA 90044**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.209 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,749.15 | $0.00 |
|---|---|---|---|---|

**GUILLERMINA RAMOS**
**1338 E 46ST.**
**LOS ANGELES, CA 90011**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.210 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,017.51 | $0.00 |
|---|---|---|---|---|

**GUILLERMO AQUINO**
**8809 ETIWANDA AVE APT 18**
**NORTHRIDGE, CA 91325**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|---|
| | Name | | | | |

---

| 2.211 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,812.99 | $0.00 |
|---|---|---|---|---|

**GUILLERMO BARAJAS**
**2368 WILMA AVE**
**COMMERCE, CA 90040**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.212 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,125.64 | $0.00 |
|---|---|---|---|---|

**GUILLERMO ORTIZ**
**PO BOX 180309**
**LOS ANGELES, CA 90018**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.213 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,712.15 | $0.00 |
|---|---|---|---|---|

**GUILLERMO SERRANO**
**1225 BEACH ST APT B**
**MONTEBELLO, CA 90640**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.214 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,844.53 | $0.00 |
|---|---|---|---|---|

**GUSTAVO GALEANO**
**1559 N HILL AVE APT 17**
**PASADENA, CA 91104**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.215 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,486.88** | **$0.00** |
|---|---|---|---|---|

**GUSTAVO PESCADOR**
**6653 DARBY AVE. APT.17**
**RESEDA, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.216 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,857.90** | **$0.00** |
|---|---|---|---|---|

**GUSTAVO RIVAS PAREDES**
**145 W MARKET ST APT 4**
**DALY CITY, CA 94014**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.217 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,889.04** | **$0.00** |
|---|---|---|---|---|

**HECTOR GONZALEZ**
**45561 6TH ST E**
**LANCASTER, CA 93535**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.218 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,348.52** | **$0.00** |
|---|---|---|---|---|

**HECTOR RAMIREZ**
**1100 E 33RD ST APT 511**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.219 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,255.97 | $0.00 |
|---|---|---|---|---|

**HERNAN VAZQUEZ**
**2412 CRAWFORD ST**
**N LAS VEGAS, NV 89030**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.220 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $790.80 | $0.00 |
|---|---|---|---|---|

**HILDA HERNANDEZ**
**7730 FAIR AVENUE**
**SUN VALLEY, CA 91352**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.221 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,381.35 | $0.00 |
|---|---|---|---|---|

**HILDA PALENCIA FRANCO**
**114 N WESTMORELAND AVE APT**
**12**
**LOS ANGELES, CA 90004**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.222 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $799.68 | $0.00 |
|---|---|---|---|---|

**HOGLA ARCEO**
**15912 VIA ALAMITOS**
**SAN LORENZO, CA 94580**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.223 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,903.13 | $0.00 |
|---|---|---|---|---|

**HOMAR BARRON**
**125 W HILLSDALE BLV**
**SAN MATEO, CA 94403**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.224 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,724.74 | $0.00 |
|---|---|---|---|---|

**HORALIA ESTRADA**
**3815 SUSAN DR**
**SAN BRUNO, CA 94066**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.225 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,658.42 | $0.00 |
|---|---|---|---|---|

**HUGO CORRAL**
**3046 WALNUT**
**HUNTINGTON PK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.226 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,719.24 | $0.00 |
|---|---|---|---|---|

**HUGO PALMA**
**8505 COLUMBUS AVE APT 101**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.227 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,618.80 | $0.00 |
|---|---|---|---|---|
| | **HUMBERTO REYES SANDOVAL**<br>**1442 YORK STREET**<br>**RICHMOND, CA 94801** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.228 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $2,134.80 | $0.00 |
|---|---|---|---|---|
| | **HUMBERTO RODRIGUEZ**<br>**2829 CAMULOS PL**<br>**LOS ANGELES, CA 90023** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.229 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,650.80 | $0.00 |
|---|---|---|---|---|
| | **IGNACIO RAMIREZ**<br>**3604 NORTON AVE #A**<br>**LYNWOOD, CA 90262** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.230 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,491.00 | $0.00 |
|---|---|---|---|---|
| | **IMELDA CRUZ**<br>**6715 7TH AVE**<br>**LOS ANGELES, CA 90043** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.231 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$581.85** | **$0.00** |
|---|---|---|---|---|

**INGRID ZETINA**
**14328 BARRYDALE STREET**
**LA PUENTE, CA 91746**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.232 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**Internal Revenue Services**
PO Box 7346
**Philadelphia, PA 19101-7346**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Only**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.233 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,357.95** | **$0.00** |
|---|---|---|---|---|

**IRIS HERNANDEZ**
**133 1/2 W 47TH ST**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.234 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,603.95** | **$0.00** |
|---|---|---|---|---|

**IRMA ISORDIA**
**334 E. 82ND ST.**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**2.235** | Priority creditor's name and mailing address

**ISAIAS MORALES MORALES**
**1175 SPENCE STREET**
**LOS ANGELES, CA 90023**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,364.60**   **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.236** | Priority creditor's name and mailing address

**ISMAEL GARCIA**
**2018 W 43 PL**
**LOS ANGELES, CA 90062**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,281.60**   **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.237** | Priority creditor's name and mailing address

**ISMAEL RODRIGUEZ**
**933 ROSE AVE**
**REDWOOD CITY, CA 94063**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$3,958.38**   **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.238** | Priority creditor's name and mailing address

**IVIS QUINONES RODRIGUEZ**
**4688 HUNTINGTON DRIVE SOUTH**
**APT 211**
**LOS ANGELES, CA 90032**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,902.88**   **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.239 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,012.07 | $0.00 |
|---|---|---|---|---|

**JACKELLINE IBARRA**
**4418 ELIZABETH ST APT 8**
**CUDAHY, CA 90201**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.240 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $946.80 | $0.00 |
|---|---|---|---|---|

**JACQUELIN HERNANDEZ**
**4557 JADE ST**
**LOS ANGELES, CA 90032**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.241 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**JACQUELINE DUVIVIER**
**CASTILLO**
**775 TALUS WAY**
**RENO, NV 89503**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.242 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,406.03 | $0.00 |
|---|---|---|---|---|

**JAIME LOPEZ**
**4326 GRATIAN ST**
**EAST LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|--------|--------------------------------|--|--------------------------|----------------------|
| | Name | | | |

---

| 2.243 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,566.59** | **$0.00** |
|-------|---------------------------------------------|-----------------------------------------------|---------------|-----------|

**JAIME MATEO**
**721 BONNIE BREA APT 17**
**LOS ANGELES, CA 90057**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.244 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|-------|---------------------------------------------|-----------------------------------------------|-----------|-----------|

**JANET HERNANDEZ**
**6011 VINEVALE AVENUE**
**Maywood, CA 90270**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.245 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|-------|---------------------------------------------|-----------------------------------------------|-----------|-----------|

**JANETH LAZARO**
**1819 PINE AVE APT A**
**Long Beach, CA 90806**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.246 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$13,650.00** | **$0.00** |
|-------|---------------------------------------------|-----------------------------------------------|----------------|-----------|

**JASON ROBERTS**
**5048 ARCTIC PL**
**RANCHO CUCAMONGA, CA 91739**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.247 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $815.52 | $0.00 |
|---|---|---|---|---|

**JAZZMON HEARD**
**1339 STEINER STREET**
**SAN FRANCISCO, CA 94115**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.248 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,254.90 | $0.00 |
|---|---|---|---|---|

**JEAN PAUL RENEAUX**
**10942 ORO VISTA AVE**
**SUNLAND, CA 91040**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.249 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**JEANNETTE HERNANDEZ**
**9341 ELM VISTA DR**
**Downey, CA 90242**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.250 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,863.85 | $0.00 |
|---|---|---|---|---|

**JENNIFER AMADOR**
**7581 EL ESCORIAL WAY**
**BUENA PARK, CA 90620**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.251 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,692.55 | $0.00 |
|---|---|---|---|---|

**JERONIMO CHIC TINEY**
**3571 EAST 58TH STREET**
**MAYWOOD, CA 90270**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.252 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,601.20 | $0.00 |
|---|---|---|---|---|

**JESUS PESCADOR**
**19248 BRYANT ST #10**
**NORTHRIDGE, CA 91324**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.253 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,343.33 | $0.00 |
|---|---|---|---|---|

**JOEL FLORES**
**7808 2ND STREET APT 10**
**DOWNEY, CA 90241**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.254 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,180.42 | $0.00 |
|---|---|---|---|---|

**JOEL RAMIREZ**
**143 FIR AVE**
**SOUTH SAN FRANCISCO, CA**
**94080**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.255 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,162.97 | $0.00 |
|---|---|---|---|---|

**JOHN FLORES**
**342 E ESTHER ST**
**LONG BEACH, CA 90813**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.256 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $868.50 | $0.00 |
|---|---|---|---|---|

**JOHN SHAW**
**4215 LOS FELIZ BLVD APT 4**
**LOS ANGELES, CA 90027**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.257 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,958.43 | $0.00 |
|---|---|---|---|---|

**JOHNSON JARQUIN SILES**
**9035 PARK STREET**
**BELLFLOWER, CA 90706**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.258 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**JONATHAN DIAZ**
**3013 ALDRICH STREET**
**ANTIOCH, CA 94509**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.259 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,544.70 | $0.00 |
|---|---|---|---|---|

**JONATHAN JAIMES**
**720 1/2 SOUTH FETTERLY**
**AVENUE**
**EAST LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.260 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,738.82 | $0.00 |
|---|---|---|---|---|

**JONATHAN SAUCEDO**
**11734 ELDRIDGE AVE**
**LAKE VIEW TERRACE, CA 91342**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.261 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,409.04 | $0.00 |
|---|---|---|---|---|

**JORGE ALTAMIRANO**
**1428 E 71ST ST**
**LOS ANGELES, CA 90001**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.262 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,698.68 | $0.00 |
|---|---|---|---|---|

**JORGE GOMEZ**
**420 S. UNION DR APT 204**
**LOS ANGELES, CA 90017**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.263 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$841.65** | **$0.00** |
|---|---|---|---|---|

**JORGE GUERRA**
**1214 W 54TH ST**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.264 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,636.18** | **$0.00** |
|---|---|---|---|---|

**JORGE LUIS VELAZQUEZ**
**ESCAMILLA**
**813 W 40TH PLACE**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.265 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,013.06** | **$0.00** |
|---|---|---|---|---|

**JORGE RAMOS LOPEZ**
**8810 MEMORY PARK AVE APT 203**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.266 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$5,848.26** | **$0.00** |
|---|---|---|---|---|

**JORGE RIZO**
**315 W AVENUE 38 APT # 116**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.267 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $841.73 | $0.00 |
|---|---|---|---|---|

**JOSE ANGEL GONZALEZ**
**725 PRINCESS AVE**
**NORTH LAS VEGAS, NV 89030**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.268 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,678.60 | $0.00 |
|---|---|---|---|---|

**JOSE APONTE ROMERO**
**325 CORONADO AVE APT 307**
**DALY CITY, CA 94015**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.269 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,853.42 | $0.00 |
|---|---|---|---|---|

**JOSE CAMILO**
**6543 DE SOTO AVE. APT. 17**
**CANOGA PARK, CA 91303**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.270 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**JOSE CASAS**
**1481 KURTZ AVE**
**Los Angeles, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.271 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,212.40 | $0.00 |
|---|---|---|---|---|

**JOSE GONZALEZ**
**3649 RAMBOZ AVE**
**LOS ANGELES, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.272 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $857.00 | $0.00 |
|---|---|---|---|---|

**JOSE IGNACIO SALGADO**
**6614 FAIRFIELD ST**
**LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.273 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,317.76 | $0.00 |
|---|---|---|---|---|

**JOSE SALAZAR**
**299 OAKFORD DR**
**LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.274 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,937.66 | $0.00 |
|---|---|---|---|---|

**JOSE TOVAR**
**656 S DUNCAN AVE**
**LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.275 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,649.94 | $0.00 |
|---|---|---|---|---|

**JOSE ZAVALA**
**9691 ROSEBAY STREET**
**ANAHEIM, CA 92804**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.276 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $958.50 | $0.00 |
|---|---|---|---|---|

**JOSEFINA COLIN**
**1819 GRAMERCY PL. APT #307**
**LOS ANGELES, CA 90019**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.277 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,822.50 | $0.00 |
|---|---|---|---|---|

**JOSEFINA ESCALANTE**
**1262 S ROWAN AVENUE APT 4**
**LOS ANGELES, CA 90023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.278 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,035.30 | $0.00 |
|---|---|---|---|---|

**JOSEFINA FERNANDEZ**
**HUARACHA**
**6722 MIDDLETON STREET APT B**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.279 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $471.20 | $0.00 |
|---|---|---|---|---|

**JOSEFINA ROSALES**
**3327 GRANADA ST**
**LOS ANGELES, CA 90065**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.280 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,911.21 | $0.00 |
|---|---|---|---|---|

**JOSELYN ESTEFANY OSEGUEDA**
**FERNANDEZ**
**948 SOUTH BONNIE BEACH**
**PLACE**
**LOS ANGELES, CA 90023**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.281 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,331.09 | $0.00 |
|---|---|---|---|---|

**JUAN ALVAREZ**
**9631 ARLETA**
**ARLETA, CA 91331**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.282 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,199.92 | $0.00 |
|---|---|---|---|---|

**JUAN FLORES PEREZ**
**8118 TONE STREET**
**LAS VEGAS, NV 89123**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.283** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$4,251.38** | **$0.00**

**JUAN GARCIA**
**416 88TH STREET APT 7**
**DALY CITY, CA 94015**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.284** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,916.71** | **$0.00**

**JUAN GONZALEZ**
**9525 E AVE Q 2**
**PALMDALE, CA 93591**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.285** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00**

**JUAN LATIN**
**222 PARK SR REDWOOCITY**
**Redwood City, CA 94061**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.286** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,754.79** | **$0.00**

**JUAN MARIN**
**7177 KUHL DRIVE**
**COMMERCE, CA 90040**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.287 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,470.30** | **$0.00** |
|---|---|---|---|---|

**JUAN MERCADO**
**4322 MORGAN AVENUE**
**LOS ANGELES, CA 90011**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.288 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,427.43** | **$0.00** |
|---|---|---|---|---|

**JUAN RODRIGUEZ**
**7410 WOODWMAN AVE APT 208**
**VAN NUYS, CA 91405**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.289 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,852.20** | **$0.00** |
|---|---|---|---|---|

**JUAN RODRIGUEZ**
**917 BEECH ST**
**EAST PALO ALTO, CA 94303**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.290 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,435.12** | **$0.00** |
|---|---|---|---|---|

**JUAN SALAS**
**8168 SEVILLE AVE**
**SOUTH GATE, CA 90280**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.291 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,896.31 | $0.00 |
|---|---|---|---|---|

**JUAN SANCHEZ
682 1ST AVENUE
SAN BRUNO, CA 94066**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.292 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $862.35 | $0.00 |
|---|---|---|---|---|

**JUANA CHAMU
341 S AVE 19
LOS ANGELES, CA 90031**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.293 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**JUANA CUELLAR
2529 FOLSOM STREET
Los Angeles, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.294 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,252.35 | $0.00 |
|---|---|---|---|---|

**JUANA SANCHEZ
2927 JEFFRIES AVE
LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.295 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,111.50** | **$0.00** |
|---|---|---|---|---|

**JUDITH VEGA MARTINEZ**
**7912 RHODES AVE**
**NORTH HOLLYWOOD, CA 91605**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.296 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$4,205.00** | **$0.00** |
|---|---|---|---|---|

**JUSTIN FIELDING**
**927 TERRACE #49**
**LOS ANGELES, CA 90042**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.297 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,587.75** | **$0.00** |
|---|---|---|---|---|

**JUSTINA PECH**
**1000 WALNUT ST**
**INGLEWOOD, CA 90301**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.298 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,531.44** | **$0.00** |
|---|---|---|---|---|

**JUSTINO GONZALEZ**
**210 TURF DR**
**PLACENTIA, CA 92870**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.299 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,081.20 | $0.00 |
|---|---|---|---|---|

**KAREN BURCIAGA**
**2762HAUSER BLVD**
**CULVER CITY, CA 90016**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☐ No
☐ Yes

| 2.300 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,180.98 | $0.00 |
|---|---|---|---|---|

**KAREN PARTIDA ALTAMIRANO**
**3447 NORTH FIGUEROA STREET**
**LOS ANGELES, CA 90065**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☐ No
☐ Yes

| 2.301 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $511.95 | $0.00 |
|---|---|---|---|---|

**KARLA AGUIRRE**
**237 E 88ST**
**LOS ANGELES, CA 90003**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☐ No
☐ Yes

| 2.302 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,831.22 | $0.00 |
|---|---|---|---|---|

**KARLA FLORES**
**11266 ADELPHIA AVE**
**PACOIMA, CA 91331**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☐ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.303 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**KARLA RIVERA**
**7800 JABONERIA RD APT 9**
**Bell Gardens, CA 90201**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.304 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$895.50** | **$0.00** |
|---|---|---|---|---|

**KATHERINE OROZCO**
**505 W 46ST**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.305 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,863.30** | **$0.00** |
|---|---|---|---|---|

**KATTIA KOTCHARIAN**
**6701 ETON AVENUE APT 201**
**CANOGA PARK, CA 91303**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.306 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,909.12** | **$0.00** |
|---|---|---|---|---|

**KEVIN GUERRA**
**4858 1/2 W ADAMS BLVD**
**LOS ANGELES, CA 90016**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.307 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,510.68 | $0.00 |
|---|---|---|---|---|

**LAURA GONZALEZ**
**8516 RIVES AVE**
**DOWNEY, CA 90240**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.308 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $879.00 | $0.00 |
|---|---|---|---|---|

**LESLIE HUMES**
**17030 YUKON AVE APT 23**
**TORRANCE, CA 90504**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.309 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,293.15 | $0.00 |
|---|---|---|---|---|

**LESNIN TOLEDO**
**13555 WENTWORTH ST**
**ARLETA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.310 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,888.36 | $0.00 |
|---|---|---|---|---|

**LESTAT RAMIRREZZ**
**13100 1/2 DRONFIELD AVE**
**SYLMAR, CA 91342**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.311 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $934.50 | $0.00 |
|---|---|---|---|---|
| | **LETICIA HARO SOTO**<br>**10334 1/2 VICTORIA AVENUE**<br>**WHITTIER, CA 90604** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.312 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $2,066.90 | $0.00 |
|---|---|---|---|---|
| | **LEYDI DIAZ**<br>**6801 MISSION ST APT 205**<br>**DALY CITY, CA 94014** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.313 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $8,122.20 | $0.00 |
|---|---|---|---|---|
| | **LIDIA CASTRO**<br>**8633 BALBOA BLVD UNIT 5**<br>**NORTHRIDGE, CA 91325** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.314 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | $1,703.76 | $0.00 |
|---|---|---|---|---|
| | **LILIAN BETANCUR**<br>**11330 RUNNYMEDE SUN VALLEY**<br>**LOS ANGELES, CA 91352** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 2.315 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,441.80 | $0.00 |
|---|---|---|---|---|
| | **LILIAN LUCERO** | *Check all that apply.* | | |
| | **3926 GIBRALTAR AVENUE APT 6** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90008** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ☑ No |
| | ☐ Yes |

---

| 2.316 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,065.00 | $0.00 |
|---|---|---|---|---|
| | **LINA HERNANDEZ** | *Check all that apply.* | | |
| | **318 EAST 65TH STREET** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90003** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ☑ No |
| | ☐ Yes |

---

| 2.317 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,221.60 | $0.00 |
|---|---|---|---|---|
| | **LORENA GARCIA** | *Check all that apply.* | | |
| | **222 E 87TH ST** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90003** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ☑ No |
| | ☐ Yes |

---

| 2.318 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $878.70 | $0.00 |
|---|---|---|---|---|
| | **LORENA IBARRA** | *Check all that apply.* | | |
| | **11439 PEAR ST** | ☐ Contingent | | |
| | **LYNWOOD, CA 90262** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

| Last 4 digits of account number | Is the claim subject to offset? |
|---|---|
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ☑ No |
| | ☐ Yes |

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.319 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$975.00** | $0.00 |
|---|---|---|---|---|

**LORENA VILLAFANA**
**1349 26TH STREET APT 403**
**SANTA MONICA, CA 90404**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.320 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$4,016.37** | $0.00 |
|---|---|---|---|---|

**LOUIS MIX**
**10833 REAGAN STREET**
**LOS ALAMITOS, CA 90720**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.321 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,301.13** | $0.00 |
|---|---|---|---|---|

**LOURDES HUERTA**
**9304 CEDAR ST.**
**BELLFLOWER, CA 90706**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.322 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$860.40** | $0.00 |
|---|---|---|---|---|

**LUCIA OCON**
**439 E 95TH ST**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|--------|------------------------------|------------------------|------------------|
| | Name | | |

| 2.323 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | **$1,311.00** | $0.00 |
|-------|----------------------------------------------|----------------------|

**LUCIA RODRIGUEZ**
**209 W 65TH ST**
**LOS ANGELES, CA 90003**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**LUCILA HERNANDEZ**
**5220 ROOSEVELT AVE A**
**SANTA ANA, CA 92703**

2.324   Priority creditor's name and mailing address

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$664.05**   $0.00

| Date or dates debt was incurred | Basis for the claim: |
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**LUCRECIA MENDOZA**
**7713 YARMOUTH AVE**
**RESEDA, CA 91335**

2.325   Priority creditor's name and mailing address

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$1,021.80**   $0.00

| Date or dates debt was incurred | Basis for the claim: |
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**LUCY RAMIREZ**
**2715 EAGLE STREET**
**LOS ANGELES, CA 90033**

2.326   Priority creditor's name and mailing address

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$1,447.05**   $0.00

| Date or dates debt was incurred | Basis for the claim: |
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.327 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|
| | **LUIS ARIAS** | Check all that apply. | | |
| | **127 RIVERA ST , APT1** | ☐ Contingent | | |
| | **Los Angeles, CA 90063** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| 2.328 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,698.39 | $0.00 |
|---|---|---|---|---|
| | **LUIS CASTILLO** | Check all that apply. | | |
| | **722 SOUTH BIXEL STREET A743** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90017** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| 2.329 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,536.38 | $0.00 |
|---|---|---|---|---|
| | **LUIS ESCOBAR** | Check all that apply. | | |
| | **245 3TH RENO** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90057** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| 2.330 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,201.30 | $0.00 |
|---|---|---|---|---|
| | **LUIS GARCIA** | Check all that apply. | | |
| | **6730 ALBYN COURT** | ☐ Contingent | | |
| | **NEWARK, CA 94560** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|--------|------------------------------|------------------------|------------------|
|        | Name |  |  |

| 2.331 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,723.48 | $0.00 |
|-------|---------------------------------------------|----------------------------------------------|-----------|-------|

**LUIS MARTINEZ**
**15222 RAYEN APT 18**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.332 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,098.20 | $0.00 |
|-------|---------------------------------------------|----------------------------------------------|-----------|-------|

**LUIS PARTIDA**
**3447 NORTH FIGUEROA STREET**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.333 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,064.20 | $0.00 |
|-------|---------------------------------------------|----------------------------------------------|-----------|-------|

**LUIS SALDANA QUINTO**
**325 WEST AVENUE 38 APT# 217**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.334 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,921.40 | $0.00 |
|-------|---------------------------------------------|----------------------------------------------|-----------|-------|

**LUIS VALDIVIA**
**1924 FOLSOM ST**
**SAN FRANCISCO, CA 94103**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.335** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00**

**LUISA LOPEZ**
**245 SR. RENO STREET**
**Los Angeles, CA 90057**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.336** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$4,679.10** | **$0.00**

**LUZ LOPEZ**
**621 ROMULO STREET**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.337** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,930.96** | **$0.00**

**MA NUNEZ**
**6936 VESPER AVE. APT. 20**
**VAN NUYS, CA 91405**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

**2.338** | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,248.75** | **$0.00**

**MAGDALENA SANTIBANEZ**
**144 E 88TH PL**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.339 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,609.28** | **$0.00** |
|---|---|---|---|---|

**MAILY NGUYEN**
**2010 18TH AVE**
**OAKLAND, CA 94606**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.340 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,154.72** | **$0.00** |
|---|---|---|---|---|

**MAN HONG WU YEE**
**2026 34TH AVE**
**SAN FRANCISCO, CA 94116**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.341 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,463.40** | **$0.00** |
|---|---|---|---|---|

**MANUEL GALDAMEZ**
**865 MEADE AVENUE**
**SAN FRANCISCO, CA 94124**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.342 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,730.70** | **$0.00** |
|---|---|---|---|---|

**MANUEL LOPEZ**
**11265 CALIFORNIA AVE**
**LYNWOOD, CA 90262**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.343 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,168.32** | **$0.00** |
|---|---|---|---|---|

**MANUEL PALMA**
**421 S BIXEL ST APT 102**
**LOS ANGELES, CA 90017**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.344 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,700.40** | **$0.00** |
|---|---|---|---|---|

**MARCIAL REYES FUENTES**
**921 ROLLINS RD, APT 1**
**BURLINGAME, CA 94010**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.345 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$13,650.00** | **$0.00** |
|---|---|---|---|---|

**MARGARITA LUNA**
**1817 BERGLUND DRIVE**
**WEST COVINA, CA 91792**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.346 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$879.60** | **$0.00** |
|---|---|---|---|---|

**MARGARITA ORTIZ**
**1102 S APRILIA AVE**
**COMPTON, CA 90220**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**2.347**

Priority creditor's name and mailing address

**MARGARITA UMANZOR**
**4575 VERONA ST APT 3**
**LOS ANGELES, CA 90022**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,636.37**    **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.348**

Priority creditor's name and mailing address

**MARIA  VALDIVIA**
**6185 SPRINGVALE DR**
**LOS ANGELES CA, CA 90042**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$681.30**    **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.349**

Priority creditor's name and mailing address

**MARIA AVALOS**
**1403 MOUNT LASSEN DRIVE**
**SAN JOSE, CA 95127**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$1,364.80**    **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

**2.350**

Priority creditor's name and mailing address

**MARIA BARRAZA**
**1461 W PHILLIPS BLVD.**
**POMONA, CA 91766**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$888.15**    **$0.00**

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.351 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $611.55 | $0.00 |
|---|---|---|---|---|

**MARIA C GONZALEZ**
**2218 SHERIDAN ST.**
**LOS ANGELES, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.352 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,524.70 | $0.00 |
|---|---|---|---|---|

**MARIA CARBAJAL**
**22106 ELAINE AVE**
**HAWAIIAN GARDENS, CA 90716**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.353 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,665.00 | $0.00 |
|---|---|---|---|---|

**MARIA CELIS**
**16040 RINALDI ST**
**GRANADA HILLS, CA 91344**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.354 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,156.65 | $0.00 |
|---|---|---|---|---|

**MARIA CONTRERAS**
**157 W 94 ST.**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.355 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $600.90 | $0.00 |
|---|---|---|---|---|

**MARIA CUEVAS**
**3854 LYNDORA ST**
**LYNWOOD, CA 90262**

_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.356 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,838.85 | $0.00 |
|---|---|---|---|---|

**MARIA CUJCUJ**
**114 E 65TH STREET**
**LOS ANGELES, CA 90003**

_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.357 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,121.80 | $0.00 |
|---|---|---|---|---|

**MARIA DE LOS ANGELES LOPEZ**
**3735 RANDOLPH PL**
**HUNTINGTON PARK, CA 90255**

_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.358 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $624.00 | $0.00 |
|---|---|---|---|---|

**MARIA DE LOURDES NUNO**
**GARCIA**
**1777 1/4 E85TH ST**
**LOS ANGELES, CA 90001**

_Check all that apply._
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.359 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,430.58 | $0.00 |
|---|---|---|---|---|

**MARIA DEL CARMEN VAZQUEZ
PATINO
3587MAGNOLIA AVE
LYNWOOD, CA 90262**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.360 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,829.70 | $0.00 |
|---|---|---|---|---|

**MARIA ESPINOZA
6008 MERIDIAN ST
LOS ANGELES, CA 90042**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.361 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $643.05 | $0.00 |
|---|---|---|---|---|

**MARIA FLORES
2750 NEWELL ST
LOS ANGELES, CA 90039**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.362 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,863.75 | $0.00 |
|---|---|---|---|---|

**MARIA FUENTES
422 N COLONIA DE LAS PALMAS
LOS ANGELES, CA 90022**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.363 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,078.44** | $0.00 |
|---|---|---|---|---|

**MARIA G ACEVES**
**47116 WHITTIER BLVD**
**LOS ANGELES, CA 90022**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.364 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,447.35** | $0.00 |
|---|---|---|---|---|

**MARIA GARCIA**
**3056 LEEWARD AVE APT 113**
**LOS ANGELES, CA 90005**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.365 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$784.20** | $0.00 |
|---|---|---|---|---|

**MARIA GOMEZ**
**1419 1/2 E 60TH ST**
**LOS ANGELES, CA 90001**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.366 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$546.07** | $0.00 |
|---|---|---|---|---|

**MARIA GRANILLO**
**22418 HORST AVE**
**HAWAIIAN GARDENS, CA 90716**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.367 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,031.98 | $0.00 |
|---|---|---|---|---|

**MARIA GUADALUPE RODRIGUEZ
CACHO
6653 DARBY AVE
RESEDA, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.368 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,779.30 | $0.00 |
|---|---|---|---|---|

**MARIA HERNANDEZ
144 1/4 W 70TH ST
LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.369 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,375.05 | $0.00 |
|---|---|---|---|---|

**MARIA HERNANDEZ
5950 S MAIN ST APT 302
LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.370 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,488.96 | $0.00 |
|---|---|---|---|---|

**MARIA HERNANDEZ
10140 KENILWORTH WAY
SAN JOSE, CA 95127**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.371 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $878.25 | $0.00 |
|---|---|---|---|---|

**MARIA HERNANDEZ RODRIGUEZ**
**1262 WEST MARSHALL BLVD**
**SAN BERNARDINO, CA 92405**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.372 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $721.50 | $0.00 |
|---|---|---|---|---|

**MARIA JIMENEZ**
**5412 LINDLEY AVE APT 208**
**ENCINO, CA 91316**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.373 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,103.15 | $0.00 |
|---|---|---|---|---|

**MARIA JUAREZ**
**15523 RAYEN ST APT 32**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.374 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,825.65 | $0.00 |
|---|---|---|---|---|

**MARIA KEKULA**
**12311 ALPINE AVE**
**LYNWOOD, CA 90262**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (*if known*) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.375 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$949.95** | **$0.00** |
|---|---|---|---|---|

**MARIA LARIN**
**114 NORTH WESTMORALAND**
**AVE APT 16**
**LOS ANGELES, CA 90004**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| 2.376 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,710.45** | **$0.00** |
|---|---|---|---|---|

**MARIA MAGALLON**
**610 E 97TH ST APT 6**
**INGLEWOOD, CA 90301**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| 2.377 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$2,406.83** | **$0.00** |
|---|---|---|---|---|

**MARIA MARQUEZ**
**9525 E AVE Q2**
**PALMDALE, CA 93591**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| 2.378 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,846.05** | **$0.00** |
|---|---|---|---|---|

**MARIA MARTINEZ**
**5307 1/2 COMPTON AVE**
**LOS ANGELES, CA 90011**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.379 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $593.85 | $0.00 |
|---|---|---|---|---|

**MARIA MARTINEZ**
**1143 W. 88TH ST.**
**LOS ANGELES, CA 90044**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.380 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,033.20 | $0.00 |
|---|---|---|---|---|

**MARIA MEDINA**
**4209 NORMAL AVE LA CA 90029**
**LOS ANGELES, CA 90029**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.381 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,700.85 | $0.00 |
|---|---|---|---|---|

**MARIA MEZA**
**3639 WHITTIER BLVD #6**
**LOS ANGELES, CA 90023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.382 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,361.70 | $0.00 |
|---|---|---|---|---|

**MARIA MIRAMONTES**
**130 E 88TH PL APT 3**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.383 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$686.40** | **$0.00** |
|---|---|---|---|---|

**MARIA MOLINA**
**238 E 61ST ST**
**LOS ANGELES, CA 90003**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.384 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,822.50** | **$0.00** |
|---|---|---|---|---|

**MARIA MONTANO**
**1656 E PRINCETON ST**
**ONTARIO, CA 91764**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.385 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,046.55** | **$0.00** |
|---|---|---|---|---|

**MARIA MONTES DEOCA**
**1056 N EASTMAN AVE**
**LOS ANGELES, CA 90063**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.386 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,209.00** | **$0.00** |
|---|---|---|---|---|

**MARIA NAVARRO**
**703 W. ROOSEVELT AVE.**
**MONTEBELLO, CA 90640**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|--------|------------------------------|------------------------|------------------|
| | Name | | |

| 2.387 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,150.95 | $0.00 |
|-------|---|---|---|---|

**MARIA NERI**
**346 1/2 N DOUGLAS ST**
**LOS ANGELES, CA 90026**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.388 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $786.30 | $0.00 |
|-------|---|---|---|---|

**MARIA PATINO**
**518 S HILLVIEW AVE**
**EAST LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.389 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,452.15 | $0.00 |
|-------|---|---|---|---|

**MARIA PECH**
**10519 YUKON AVE**
**INGLEWOOD, CA 90303**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.390 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,521.45 | $0.00 |
|-------|---|---|---|---|

**MARIA PONCE**
**444 S. LAFAYETTE PARK PL. APT.**
**306**
**LOS ANGELES, CA 90057**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 2.391 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,035.45 | $0.00 |
|---|---|---|---|---|

**MARIA QUEZADA**
**1762 STANLEY AVE.**
**LONG BEACH, CA 90804**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number        Is the claim subject to offset?

Specify Code subsection of PRIORITY        ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)      ☐ Yes

---

| 2.392 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $761.40 | $0.00 |
|---|---|---|---|---|

**MARIA RAMIREZ**
**11764 GAGER ST**
**SYLMAR, CA 91342**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number        Is the claim subject to offset?

Specify Code subsection of PRIORITY        ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)      ☐ Yes

---

| 2.393 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $609.60 | $0.00 |
|---|---|---|---|---|

**MARIA RAMOS**
**10643 TAMARACK AVE**
**PACOIMA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number        Is the claim subject to offset?

Specify Code subsection of PRIORITY        ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)      ☐ Yes

---

| 2.394 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,208.85 | $0.00 |
|---|---|---|---|---|

**MARIA RUIZ**
**6120 GIFFORD AVE APT A**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number        Is the claim subject to offset?

Specify Code subsection of PRIORITY        ■ No
unsecured claim: 11 U.S.C. § 507(a) (4)      ☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.395 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,988.55** | $0.00 |
|---|---|---|---|---|

**MARIA RUIZ VELEZ**
**3359 EAST OLYMPIC BOULEVARD**
**APT 305**
**LOS ANGELES, CA 90023**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.396 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,091.10** | $0.00 |
|---|---|---|---|---|

**MARIA SALCEDO ALVAREZ**
**4936 SOUTHALL LANE**
**BELL GARDENS, CA 90201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.397 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,565.85** | $0.00 |
|---|---|---|---|---|

**MARIA SALCIDO**
**11401 SHERMAN WAY APT 6**
**NORTH HOLLYWOOD, CA 91605**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.398 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,171.20** | $0.00 |
|---|---|---|---|---|

**MARIA SAMANIEGO**
**118 NORTH MANHATTAN PLACE**
**LOS ANGELES, CA 90004**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.399 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,180.65** | **$0.00** |
|---|---|---|---|---|

**MARIA SEPULVEDA**
**6122 ALDAMA ST**
**LOS ANGELES, CA 90042**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.400 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,066.95** | **$0.00** |
|---|---|---|---|---|

**MARIA TERESA GARCIA**
**GONZALEZ**
**6804 S MAIN ST APT 5**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.401 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$963.30** | **$0.00** |
|---|---|---|---|---|

**MARIA TOVAR**
**7924 CROCKET BLVD**
**LOS ANGELES, CA 90001**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.402 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,996.53** | **$0.00** |
|---|---|---|---|---|

**MARIA UGALDE**
**9205 BURNET AVE #211**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

---

| 2.403 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,415.40 | $0.00 |
|---|---|---|---|---|

**MARIA VALDIVIA**
**851 W 81ST ST APT 4**
**LOS ANGELES, CA 90044**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.404 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $575.10 | $0.00 |
|---|---|---|---|---|

**MARIANA LOPEZ**
**14950 VANOWEN ST APT 228**
**VAN NUYS, CA 91405**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.405 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,815.45 | $0.00 |
|---|---|---|---|---|

**MARIBEL PAYAN**
**6321 ARROYO GLEN ST**
**LOS ANGELES, CA 90042**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.406 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $579.60 | $0.00 |
|---|---|---|---|---|

**MARICRUZ IBARRA**
**515 S CHICAGO ST**
**LOS ANGELES, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.407 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**MARICRUZ RAMIREZ**
**1235 S EASTERN AVE**
**East Los Angeles, CA 90022**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.408 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,345.80 | $0.00 |
|---|---|---|---|---|

**MARIELA IBARRA**
**8969 VIRGINIA AVE**
**SOUTH GATE, CA 90280**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.409 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**MARILOU NORIEGA**
**1112 W 131 ST**
**South Gate, CA 90280**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.410 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,065.58 | $0.00 |
|---|---|---|---|---|

**MARILU ALCARAZ DE SALAZAR**
**638 ORME AVE**
**LOS ANGELES, CA 90023**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| | | | | |
|---|---|---|---|---|
| 2.411 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,195.43** | **$0.00** |
| | **MARIO HERRERA SOTO**<br>**9220 DANBRIDGE STREET**<br>**PICO RIVERA, CA 90660** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| | | | | |
|---|---|---|---|---|
| 2.412 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$910.95** | **$0.00** |
| | **MARISOL BLANCO CLAROS**<br>**1824 W 41 ST**<br>**LOS ANGELES, CA 90062** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| | | | | |
|---|---|---|---|---|
| 2.413 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,725.00** | **$0.00** |
| | **MARLENE NUNEZ**<br>**1540 S DUNSMUIR AVE**<br>**LOS ANGELES, CA 90019** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| | | | | |
|---|---|---|---|---|
| 2.414 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,218.75** | **$0.00** |
| | **MARTA AVILES**<br>**1442 NIETO LN. #413**<br>**LOS ANGELES, CA 90033** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.415 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,399.68** | **$0.00** |
|---|---|---|---|---|

**MARTA KARINA CAUICH**
**411 CEDAR ST**
**REDWOOD CITY, CA 94063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.416 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,733.70** | **$0.00** |
|---|---|---|---|---|

**MARTA MEJIA**
**325 W ADAMS BLVD APT 3109**
**LOS ANGELES, CA 90007**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.417 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$569.25** | **$0.00** |
|---|---|---|---|---|

**MARTHA LOPEZ**
**9220 DANBRIDGE ST**
**PICO RIVERA, CA 90660**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.418 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,211.25** | **$0.00** |
|---|---|---|---|---|

**MARTHA MUNIZ**
**523 SOUTH HARRIS AVENUE**
**COMPTON, CA 90221**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.419 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,659.45 | $0.00 |
|---|---|---|---|---|

**MARTHA VALDIVIA**
**424 S BURLINGTON AVE APT 109**
**LOS ANGELES, CA 90057**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.420 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,043.40 | $0.00 |
|---|---|---|---|---|

**MARTHA ZAMORA**
**1855 10TH ST APT B**
**SANTA MONICA, CA 90404**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.421 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,159.19 | $0.00 |
|---|---|---|---|---|

**MARTIN SANCHEZ GAMBOA**
**8172 1/2 SAN GABRIEL AVE**
**SOUTH GATE, CA 90280**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.422 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,338.72 | $0.00 |
|---|---|---|---|---|

**MARVIN HERNANDEZ**
**704 N HOBART BLV APT 3**
**LOS ANGELES, CA 90029**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.423 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,021.00** | $0.00 |
|---|---|---|---|---|

**MARVIN MEJIA**
**1412 WEST 130TH STREET**
**COMPTON, CA 90222**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.424 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$6,162.90** | $0.00 |
|---|---|---|---|---|

**MARVIN RUIZ REYES**
**6152 SHELTER CREEK LANE**
**SAN BRUNO, CA 94066**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.425 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,049.15** | $0.00 |
|---|---|---|---|---|

**MATEA RODRIGUEZ**
**610 MARGARET AVE**
**LOS ANGELES, CA 90022**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.426 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,739.95** | $0.00 |
|---|---|---|---|---|

**MAURA ESTEBAN**
**682 1ST AVENUE**
**SAN BRUNO, CA 94066**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.427 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,855.03** | $0.00 |
|---|---|---|---|---|

| **MAURO LEON** |
| **8439 LOCH LOMOND DR.** |
| **PICO RIVERA, CA 90660** |

*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.428 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,446.30** | $0.00 |
|---|---|---|---|---|

| **MAYRA CISNEROS** |
| **12411 OSBORNE ST APT 34** |
| **LOS ANGELES, CA 91331** |

*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.429 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,086.75** | $0.00 |
|---|---|---|---|---|

| **MAYRA RODRIGUEZ ALVAREZ** |
| **1335 WEST 106TH STREET** |
| **LOS ANGELES, CA 90044** |

*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.430 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,265.13** | $0.00 |
|---|---|---|---|---|

| **MELANIA JIMENEZ** |
| **4010 WEST 102ND STREET** |
| **INGLEWOOD, CA 90304** |

*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.431 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|
| | **MELODY GARCIA**<br>**4933 ECHO ST #16**<br>**Los Angeles, CA 90042** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.432 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,006.95 | $0.00 |
|---|---|---|---|---|
| | **MERCEDES HERNANDEZ**<br>**1848 DAISY AVE**<br>**LONG BEACH, CA 90806** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.433 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,772.02 | $0.00 |
|---|---|---|---|---|
| | **MICHAEL HARAND**<br>**1776 E. AZALEA AVENUE**<br>**LAKE HAVASU CITY, AZ 86404** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.434 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $493.73 | $0.00 |
|---|---|---|---|---|
| | **MIGUEL ANGEL JUAN**<br>**721 BONNIE BRAE APTO 17**<br>**LOS ANGELES, CA 90057** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.435 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,003.10 | $0.00 |
|---|---|---|---|---|

**MIGUEL ANGEL RODRIGUEZ**
**1701 E LESLIE AVE**
**LAS VEGAS, NV 89101**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.436 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,106.32 | $0.00 |
|---|---|---|---|---|

**MIGUEL GONZALEZ**
**2850 S DECATUR BLVD #9**
**LAS VEGAS, NV 89102**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.437 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $984.10 | $0.00 |
|---|---|---|---|---|

**MIGUEL GRANADOS**
**17824 DOWNEY AVE**
**BELLFLOWER, CA 90706**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.438 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,341.12 | $0.00 |
|---|---|---|---|---|

**MIGUEL HERNANDEZ**
**2701 E BOULDER ST**
**LOS ANGELES, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.439 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,339.00 | $0.00 |
|---|---|---|---|---|

**MILTON GUEVARA**
**1235 WILDWOOD AVE APT #380**
**SUNNYVALE, CA 94089**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.440 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,816.95 | $0.00 |
|---|---|---|---|---|

**MIRIAM BRINGAS**
**1259 W 130TH ST**
**GARDENA, CA 90247**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.441 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,451.70 | $0.00 |
|---|---|---|---|---|

**MIRIAM SALAZAR**
**257 E 30TH ST**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.442 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,440.00 | $0.00 |
|---|---|---|---|---|

**MIRNA RODRIGUEZ**
**4547 LOMITA ST.**
**LOS ANGELES, CA 90019**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.443 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $929.25 | $0.00 |
|---|---|---|---|---|

**MONICA OCAMPO**
**1150 CORNWELL ST APT.6**
**LOS ANGELES, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.444 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,763.84 | $0.00 |
|---|---|---|---|---|

**MONICA VARGUEZ**
**556 WAPELLO ST**
**ALTADENA, CA 91001**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.445 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $864.48 | $0.00 |
|---|---|---|---|---|

**MONIQUE ASH**
**1375 REVERE AVE**
**SAN FRANCISCO, CA 94124**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.446 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**MONSERRAT PARRA**
**11328 RUNNYMEDE S.T.**
**Burbank, CA 91352**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.447 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | $805.05 | $0.00 |
|---|---|---|---|---|

**NANCY ARIAS**
**2216 TERRACE HEIGHTS AVE**
**LOS ANGELES, CA 90023**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.448 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | $390.75 | $0.00 |
|---|---|---|---|---|

**NANCY GARMENDIA**
**809W 68TH ST**
**LA, CA 90044**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.449 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | $2,654.30 | $0.00 |
|---|---|---|---|---|

**NANCY MARQUEZ**
**9525 E AVENUE Q-2**
**PALMDALE, CA 93591**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.450 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>Check all that apply. | $1,512.30 | $0.00 |
|---|---|---|---|---|

**NATALIA ZETINA**
**12711 BRANFORD ST APT 206F**
**PACOIMA, CA 91331**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.451 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**NATIVIDAD CASAS**
**1484 KURTZ AVE**
**Los Angeles, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.452 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,530.00** | **$0.00** |
|---|---|---|---|---|

**NELIDA ARAUJO**
**2757 LIVE OAK ST**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.453 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,238.72** | **$0.00** |
|---|---|---|---|---|

**NILSEN ALVAREZ MACHADO**
**924 WEST 61ST STREET**
**LOS ANGELES, CA 90044**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

---

| 2.454 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,994.63** | **$0.00** |
|---|---|---|---|---|

**NOEMI FIGUEROA**
**11266 ADELPHIA AVE**
**PACOIMA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

☑ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.455 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,472.85** | $0.00 |
|---|---|---|---|---|

**NOHEMI MARTINEZ**
**11836 FREEMAN AVE**
**HAWTHORNE, CA 90250**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.456 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,960.90** | $0.00 |
|---|---|---|---|---|

**NORA RENTERIA**
**6140 RUGBY AVE, APT 122**
**HUNTINGTON PARK, CA 90255**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.457 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$442.20** | $0.00 |
|---|---|---|---|---|

**NORMA CALDERON**
**421 S BIXEL ST  APT 102**
**LOS ANGELES, CA 90017**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.458 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,514.40** | $0.00 |
|---|---|---|---|---|

**NORMA PAREDES DE ALVAREZ**
**16350 S HARBOR BLVD APT 1515**
**SANTA ANA, CA 92704**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.459 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,708.80** | **$0.00** |
|---|---|---|---|---|

**OLEGARIO PALOMARES**
**2118 47TH AVE**
**OAKLAND, CA 94601**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.460 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,508.10** | **$0.00** |
|---|---|---|---|---|

**OLGA DIAZ**
**3437 W FLORENCE AVE APT 12**
**LOS ANGELES, CA 90043**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.461 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,456.35** | **$0.00** |
|---|---|---|---|---|

**OLIVIA ANGUIANO**
**12309 ALPINE AVE.**
**LYNWOOD, CA 90262**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.462 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,523.55** | **$0.00** |
|---|---|---|---|---|

**OLIVIA RENTERIA**
**1633 1/2 E CENTURY BLVD**
**LOS ANGELES, CA 90002**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.463 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|
| | **OSBALDO HERCULANO**<br>**875 HUNTINGTON AVE. APT 2**<br>**San Bruno, CA 94066** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.464 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,262.08 | $0.00 |
|---|---|---|---|---|
| | **OSCAR DURAN URIAS**<br>**6623 PINE AVE APT A**<br>**BELL, CA 90201** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.465 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,544.51 | $0.00 |
|---|---|---|---|---|
| | **OSCAR ESTRADA**<br>**1751 MARKET ST AP 10**<br>**SAN FRANCISCO, CA 94103** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.466 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,817.12 | $0.00 |
|---|---|---|---|---|
| | **OSCAR GONZALEZ**<br>**10613 RIVES AVE**<br>**DOWNEY, CA 90241** | Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.467 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**OSCAR VALENZUELA**
**18827 THORN CREST CT.**
**CANYON COUNTRY, CA 91351**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.468 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,837.50 | $0.00 |
|---|---|---|---|---|

**PAOLA TREJO**
**3112 DALTON AVENUE**
**LOS ANGELES, CA 90018**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.469 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,590.15 | $0.00 |
|---|---|---|---|---|

**PATRICIA GARCIA**
**6031 11TH AVE**
**LOS ANGELES, CA 90043**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.470 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,248.60 | $0.00 |
|---|---|---|---|---|

**PATRICIA HARO**
**2417 FOLSOM ST APT 3**
**LOS ANGELES, CA 90033**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.471 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,827.90** | $0.00 |
|---|---|---|---|---|

**PATRICIA LEYVA**
**10622 1/2 FREEMAN AVE**
**LENNOX, CA 90304**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| 2.472 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,122.80** | $0.00 |
|---|---|---|---|---|

**PATRICIO JIMENEZ SANCHEZ**
**1224 NORTON ST**
**SAN MATEO, CA 94401**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| 2.473 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | $0.00 |
|---|---|---|---|---|

**PEDRO GONZALES**
**3571 E 58 ST,**
**Maywood, CA 90270**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

| 2.474 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,609.43** | $0.00 |
|---|---|---|---|---|

**PEDRO GONZALES**
**3571 E 58 ST,**
**MAYWOOD, CA 90270**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☒ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.475 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,483.50 | $0.00 |
|---|---|---|---|---|

**PHAN SU**
**4250 FILHURST AVE**
**BALDWIN PARK, CA 91706**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.476 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,698.50 | $0.00 |
|---|---|---|---|---|

**PORFIRIO CARMONA**
**952 EASTON AVE APT 1**
**SAN BRUNO, CA 94066**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.477 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $748.35 | $0.00 |
|---|---|---|---|---|

**RACHEL SCOTT**
**1914 WEST 35TH PL**
**LOS ANGELES, CA 90018**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.478 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,268.30 | $0.00 |
|---|---|---|---|---|

**RAMON ALVAREZ**
**720 S NORMANDIE SOY 208**
**LOS ANGELES, CA 90005**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| 2.479 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$991.80** $0.00 |
| | **RAQUEL HARO** | *Check all that apply.* | |
| | **122 E 98TH ST** | ☐ Contingent | |
| | **LOS ANGELES, CA 90003** | ☐ Unliquidated | |
| | | ☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: | |
| | **1/5/2022** | **Wages and benefits** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | |
| | | ☐ Yes | |

| | | | |
|---|---|---|---|
| 2.480 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$3,005.99** $0.00 |
| | **RAUL RODRIGUEZ JIMENEZ** | *Check all that apply.* | |
| | **819 NORTH BONNIE BEACH** | ☐ Contingent | |
| | **PLACE** | ☐ Unliquidated | |
| | **LOS ANGELES, CA 90063** | ☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: | |
| | **1/5/2022** | **Wages and benefits** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | |
| | | ☐ Yes | |

| | | | |
|---|---|---|---|
| 2.481 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$11,205.88** $0.00 |
| | **REBECCA FIGUEROA** | *Check all that apply.* | |
| | **5131 N 40TH ST** | ☐ Contingent | |
| | **PHOENIX, AZ 85018** | ☐ Unliquidated | |
| | | ☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: | |
| | **1/5/2022** | **Wages and benefits** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | |
| | | ☐ Yes | |

| | | | |
|---|---|---|---|
| 2.482 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,720.80** $0.00 |
| | **REFUGIO TRUJILLO** | *Check all that apply.* | |
| | **11718 ALLIN ST APT#161** | ☐ Contingent | |
| | **CULVER CITY, CA 90230** | ☐ Unliquidated | |
| | | ☐ Disputed | |
| | Date or dates debt was incurred | Basis for the claim: | |
| | **1/5/2022** | **Wages and benefits** | |
| | Last 4 digits of account number | Is the claim subject to offset? | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | |
| | | ☐ Yes | |

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

**2.483** | Priority creditor's name and mailing address

**REINA CONTRERAS**
**6851 SEPULVEDA BLVD APT 109**
**VAN NUYS, CA 91405**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$1,033.50**   $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.484** | Priority creditor's name and mailing address

**REYNA ORTEGA VALLE**
**4423 1/2 TOWNE AVE**
**LOS ANGELES, CA 90011**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$1,071.90**   $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.485** | Priority creditor's name and mailing address

**RICARDO FLORES**
**942 SAYBROOK AVE**
**LOS ANGELES, CA 90022**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,678.58**   $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

**2.486** | Priority creditor's name and mailing address

**RICARDO LOPEZ CORNEJO**
**929 ROLLINS RD APT #4**
**BURLINGAME, CA 94010**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**$2,109.70**   $0.00

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.487 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,764.08 | $0.00 |
|---|---|---|---|---|

**RICHARD CALEL**
**3718 E 55TH ST APT B**
**MAYWOOD, CA 90270**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.488 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $701.55 | $0.00 |
|---|---|---|---|---|

**RITA OFELIA JIMENEZ DE**
**TEJEDA**
**2209 W RAYMOND ST**
**COMPTON, CA 90220**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.489 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,309.85 | $0.00 |
|---|---|---|---|---|

**ROBERT CAMARENA**
**11471 DONNER PASS CT**
**RANCHO CUCAMONGA, CA 91737**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.490 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**ROBERT SPIRO**
**12027 OTSEGO STREET**
**VALLEY VILLAGE, CA 91607**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.491 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,544.90 | $0.00 |
|---|---|---|---|---|

**ROBERTO ALTAMIRANO**
**5330 ASCOT AVENUE # 1**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.492 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,648.90 | $0.00 |
|---|---|---|---|---|

**ROBERTO HERNANDEZ**
**3978 HAUSSMAN CT**
**SOUTH SAN FRANCISCO, CA**
**94080**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.493 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,457.40 | $0.00 |
|---|---|---|---|---|

**ROCIO VARELA FLORES**
**116 3/4 EAST 69TH STREET**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| 2.494 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,650.00 | $0.00 |
|---|---|---|---|---|

**ROMULO CALISTRI**
**14014 NW PASSAGE #144**
**MARINA DEL REY, CA 90292**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.495 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,119.18 | $0.00 |
|---|---|---|---|---|

**ROMULO VASQUEZ**
**411 EAST 59TH PLACE**
**LOS ANGELES, CA 90003**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.496 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,936.18 | $0.00 |
|---|---|---|---|---|

**RONALDO PINEDA MELGAR**
**5688 BALTIMORE STREET**
**LOS ANGELES, CA 90042**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.497 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,649.13 | $0.00 |
|---|---|---|---|---|

**RONEAL PRASAD**
**136 ARLETA AVE**
**SAN FRANCISCO, CA 94134**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.498 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,004.28 | $0.00 |
|---|---|---|---|---|

**ROSA AGUIAR**
**9517 ALEXANDER AVE**
**SOUTH GATE, CA 90280**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.499 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,044.00 | $0.00 |
|---|---|---|---|---|

**ROSA CHAVEZ**
**833 W. 57TH ST.**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.500 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $792.45 | $0.00 |
|---|---|---|---|---|

**ROSA MOLINA**
**2646 WEST AVENUE 34 APTO.2**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.501 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $990.88 | $0.00 |
|---|---|---|---|---|

**ROSA PANTOJA**
**15757 VIA COLUSA**
**SAN LORENZO, CA 94580**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.502 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,373.30 | $0.00 |
|---|---|---|---|---|

**ROSA RODRIGUEZ**
**4644 LEONIS ST**
**COMMERCE, CA 90040**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.503 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,497.45** | **$0.00** |
|---|---|---|---|---|

**ROSA YESCAS**
**19100 PARTHENIA ST #10**
**NORTHRIDGE, CA 91324**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

■ No
☐ Yes

| 2.504 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,389.20** | **$0.00** |
|---|---|---|---|---|

**ROSALBA AVILA**
**6653 DARBY AVE 17**
**RESEDA, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

■ No
☐ Yes

| 2.505 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$879.30** | **$0.00** |
|---|---|---|---|---|

**ROSARIO RAMIREZ**
**170 GEYER CT**
**ONTARIO, CA 91762**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

■ No
☐ Yes

| 2.506 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,575.45** | **$0.00** |
|---|---|---|---|---|

**ROSAURA MARTINEZ**
**7832 ELLENBOGEN STREET**
**SUNLAND, CA 91040**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.507 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**ROSY RODRIGUEZ**
**5330 ASCOT AVE APT 1**
**Los Angeles, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.508 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,246.03 | $0.00 |
|---|---|---|---|---|

**RUBEN ARELLANO**
**2852 1/2 LANFRANCO ST**
**LOS ANGELES, CA 90033**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.509 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,437.63 | $0.00 |
|---|---|---|---|---|

**RUBEN ESTRADA NAVAS**
**933 ROSE AVE**
**REDWOOD CITY, CA 94063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.510 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,433.02 | $0.00 |
|---|---|---|---|---|

**RUBEN RUIZ**
**1522 S. BALDWIN AVE. UNIT 17**
**ARCADIA, CA 91007**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.511 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,290.71 | $0.00 |
|---|---|---|---|---|

**RUBEN SEDANO**
**2402 1/2 MANITOU AVE**
**LOS ANGELES, CA 90031**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.512 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,649.50 | $0.00 |
|---|---|---|---|---|

**RUBIN SAAVEDRA**
**2191 WHITMAN WAY AVE  APT#**
**17**
**SAN BRUNO, CA 94066**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.513 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,521.90 | $0.00 |
|---|---|---|---|---|

**RUTH AGUILAR ALVAREZ**
**3333 ANDRITA ST APT 204**
**LOS ANGELES, CA 90065**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.514 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,160.29 | $0.00 |
|---|---|---|---|---|

**RUTH CAMACHO**
**408 N BAYSHORE BLVD APT 4**
**SAN MATEO, CA 94401**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.515 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,114.40 | $0.00 |
|---|---|---|---|---|

**SALVADOR HERNANDEZ CASAS**
**15441 NORDOFF #26**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.516 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,280.00 | $0.00 |
|---|---|---|---|---|

**SALVADOR LOPEZ**
**5444 CORTEEN PL APT 2**
**VALLEY VILLAGE, CA 91607**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.517 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,745.25 | $0.00 |
|---|---|---|---|---|

**SAMUEL MARTINEZ**
**4503 ORCHARD AVE**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.518 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $622.45 | $0.00 |
|---|---|---|---|---|

**SANDRA ALVARADO**
**1122W 43 RD ST**
**LOS ANGELES, CA 90037**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.519 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,387.43** | **$0.00** |
|---|---|---|---|---|
| | **SANDRA BALANAY** | *Check all that apply.* | | |
| | **58 ROBINSON DRIVE** | ☐ Contingent | | |
| | **DALY CITY, CA 94014** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| 2.520 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$782.85** | **$0.00** |
|---|---|---|---|---|
| | **SANDRA BLANCO** | *Check all that apply.* | | |
| | **2320 1/4 JOHNSTON STREET** | ☐ Contingent | | |
| | **LOS ANGELES, CA 90031** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| 2.521 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$888.30** | **$0.00** |
|---|---|---|---|---|
| | **SANDRA PEREZ DE GONZALEZ** | *Check all that apply.* | | |
| | **319 N N LAFAYETTE PARK PLACE** | ☐ Contingent | | |
| | **#1** | ☐ Unliquidated | | |
| | **LOS ANGELES, CA 90026** | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| 2.522 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,322.11** | **$0.00** |
|---|---|---|---|---|
| | **SANDRA VAZQUEZ MONTES** | *Check all that apply.* | | |
| | **2101 SANDY LANE** | ☐ Contingent | | |
| | **LAS VEGAS, NV 89115** | ☐ Unliquidated | | |
| | | ☐ Disputed | | |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | **1/5/2022** | **Wages and benefits** | | |
| | Last 4 digits of account number | Is the claim subject to offset? | | |
| | Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (4) | ■ No | | |
| | | ☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.523 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$663.90** | **$0.00** |
|---|---|---|---|---|

**SANDY GONZALEZ**
**9631 ARLETA AVE**
**ARLETA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.524 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,255.35** | **$0.00** |
|---|---|---|---|---|

**SANTIAGO REYNA**
**646 E 52ST**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.525 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,094.25** | **$0.00** |
|---|---|---|---|---|

**SANTOS HERNANDEZ DIAZ**
**501 S SPRING ST APT 700**
**LOS ANGELES, CA 90013**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.526 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,116.20** | **$0.00** |
|---|---|---|---|---|

**SANTOS LOPEZ**
**1168 SPENCE ST**
**LOS ANGELES, CA 90023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.527 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $819.90 | $0.00 |
|---|---|---|---|---|

**SARA ALCAZAR**
**4172 WALL ST.**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.528 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $549.90 | $0.00 |
|---|---|---|---|---|

**SEBASTIANA HERNANDEZ**
**1357 ELM AVE APT 3**
**LONG BEACH, CA 90813**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.529 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,819.04 | $0.00 |
|---|---|---|---|---|

**SERENA CISNEROS**
**481 VIA MIRAMONTE**
**MONTEBELLO, CA 90640**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.530 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,393.60 | $0.00 |
|---|---|---|---|---|

**SERGIO GIOVANNI ALVAREZ**
**GONZALEZ**
**1455 E 112TH ST**
**LOS ANGELES, CA 90059**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.531 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,960.55** | $0.00 |
|---|---|---|---|---|

**SERGIO JIMENEZ**
**1108 S FETTERLY AVE**
**LOS ANGELES, CA 90022**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.532 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,493.09** | $0.00 |
|---|---|---|---|---|

**SERGIO PACHECO**
**6543 DE SOTO AVE**
**CANOGA PARK, CA 91303**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.533 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,402.96** | $0.00 |
|---|---|---|---|---|

**SERGIO SANDOVAL**
**2455 E 55 ST**
**LOS ANGELES, CA 90058**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.534 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$994.35** | $0.00 |
|---|---|---|---|---|

**SEVERINA PEREZ**
**6820 3/4 S MAIN ST.**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.535 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$5,233.06** | $0.00 |
|---|---|---|---|---|

**SHABIR KASHYAP**
**6750 LOS VERDES DRIVE, APT 1**
**RANCHO PALOS VERDES, CA**
**90275**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.536 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$5,991.46** | $0.00 |
|---|---|---|---|---|

**SHANNON ROBERTS**
**22827 CANYON LAKE DRIVE**
**SOUTH**
**CANYON LAKE, CA 92587**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.537 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,031.85** | $0.00 |
|---|---|---|---|---|

**SHIRLEY MOYANO**
**8130 NESTLE AVENUE**
**RESEDA, CA 91335**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.538 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,618.95** | $0.00 |
|---|---|---|---|---|

**SILVIA GAMBOA**
**8421 CYPRESS AVENUE**
**SOUTH GATE, CA 90280**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.539 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $825.60 | $0.00 |
|---|---|---|---|---|

**SILVIA MEJIA**
**204 WEST 109TH PLACE**
**LOS ANGELES, CA 90061**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.540 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $348.00 | $0.00 |
|---|---|---|---|---|

**SILVIA PORTILLO**
**1312 GLENNFIELD CT 35**
**LOS ANGELES, CA 90023**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.541 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,822.05 | $0.00 |
|---|---|---|---|---|

**SILVIA SALAZAR**
**16114 RINALDI STREET**
**GRANADA HILLS, CA 91344**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.542 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $720.45 | $0.00 |
|---|---|---|---|---|

**SILVIA ZARAGOZA**
**1816 WEST 11TH PL**
**LOS ANGELES, CA 90006**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 2.543 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,481.45 | $0.00 |
|---|---|---|---|---|

**SIMEON MARTINEZ**
**1027 E. 42ND, ST**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.544 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,390.95 | $0.00 |
|---|---|---|---|---|

**SOLEDAD GARCIA**
**PO BOX 1089**
**LONG BEACH, CA 90801**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.545 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,851.30 | $0.00 |
|---|---|---|---|---|

**SOLEDAD GOMEZ**
**2955 W 8TH ST APT 103**
**LOS ANGELES, CA 90005**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.546 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,046.90 | $0.00 |
|---|---|---|---|---|

**SONIA MARTINEZ**
**12719 MONTAGUE STREET**
**PACOIMA, CA 91331**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.547 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**SONIA MENA**
**6600 FOSTER BRIDGE**
**Bell Gardens, CA 90201**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.548 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,720.28** | **$0.00** |
|---|---|---|---|---|

**STEPHANIE TELLEZ**
**3483 EAGLE ST**
**LOS ANGELES, CA 90063**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.549 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$13,650.00** | **$0.00** |
|---|---|---|---|---|

**STEVEN HOLGUIN**
**4117 IVY RUSSELL WAY**
**LAS VEGAS, NV 89115**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.550 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,370.10** | **$0.00** |
|---|---|---|---|---|

**SUSANA ARRIZON**
**10129 S BURL AVE**
**INGLEWOOD, CA 90304**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (*if known*) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.551 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,321.22** | **$0.00** |
|---|---|---|---|---|

**SUSANA OCHOA**
**1742 SOUTH GRANT ST APT 1**
**SAN MATEO, CA 94402**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.552 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$653.70** | **$0.00** |
|---|---|---|---|---|

**SUSY MORENO FLORES**
**18014 SHERMAN  WAY APART  #**
**223**
**RESEDA, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.553 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,850.57** | **$0.00** |
|---|---|---|---|---|

**SVIDE GAZCA**
**3483 EAGLE ST**
**LOS ANGELES, CA 90063**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| 2.554 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$990.75** | **$0.00** |
|---|---|---|---|---|

**TANIA SERNA**
**19609 SHERMAN WAY # 118**
**RESEDA, CA 91335**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
☑ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 2.555 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,413.20** | **$0.00** |
|---|---|---|---|---|

**TATIANA MONTOYA**
**346 RUBIDOX ST**
**MONTEBELLO, CA 90640**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.556 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$812.85** | **$0.00** |
|---|---|---|---|---|

**TERESA ABUNDIS**
**8242 DONOVAN ST.**
**DOWNEY, CA 90242**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.557 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,599.00** | **$0.00** |
|---|---|---|---|---|

**TERESA CUELLAR**
**1050 N. MARIPOSA AVE APT 304**
**LOS ANGELES, CA 90029**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.558 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,436.25** | **$0.00** |
|---|---|---|---|---|

**TERESA MARTA**
**5312 LAVINIA AVE**
**LYNWOOD, CA 90262**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.559 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$2,605.88** | $0.00 |
|---|---|---|---|---|
| | **THELMA MIRANDA**<br>**1720 SWEETWOOD DRIVE**<br>**DALY CITY, CA 94015** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.560 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$13,650.00** | $0.00 |
|---|---|---|---|---|
| | **THOMAS WILSON**<br>**12088 MORROW DRIVE**<br>**TUSTIN, CA 92782** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.561 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$645.69** | $0.00 |
|---|---|---|---|---|
| | **TRINIDAD ZARAGOZA**<br>**522 S WOODS AVE**<br>**LOS ANGELES, CA 90022** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.562 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$3,894.10** | $0.00 |
|---|---|---|---|---|
| | **URIO PAREDES**<br>**8900 BURNET AVE APT 111**<br>**NORTH HILLS, CA 91343** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | |
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (4) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.563 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,606.50** | $0.00 |
|---|---|---|---|---|

**VALERIA DELGADO**
**7849 S. NORMANDIE AVE. B**
**LOS ANGELES, CA 90044**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.564 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$602.85** | $0.00 |
|---|---|---|---|---|

**VANESSA MOLINA**
**14429 S LONESS AVE**
**COMPTON, CA 90220**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.565 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,641.75** | $0.00 |
|---|---|---|---|---|

**VERENICE HERNANDEZ**
**5220 ROOSEVELT AVE A**
**SANTA ANA, CA 92703**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| 2.566 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,418.70** | $0.00 |
|---|---|---|---|---|

**VERONICA MONTOYA**
**346 RUBIDOUX ST**
**MONTEBELLO, CA 90640**

Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
- ■ No
- ☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.567 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,297.98 | $0.00 |
|---|---|---|---|---|

**VIANEY GRANILLO**
**21911 CLARETTA AVE**
**HAWAIIAN GARDEN, CA 90716**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.568 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,330.85 | $0.00 |
|---|---|---|---|---|

**VICTOR ROCHA**
**1206 1/2 E 22 ST**
**LOS ANGELES, CA 90011**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.569 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,077.88 | $0.00 |
|---|---|---|---|---|

**VILMA RODRIGUEZ GONZALEZ**
**11811 BEVERLY BLVD APT 8**
**WHITTIER, CA 90601**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.570 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,228.62 | $0.00 |
|---|---|---|---|---|

**VIQUER PALOMARES**
**CASTANEDA**
**1481 BEACON AVE APT 4**
**SAN MATEO, CA 94401**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.571 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,448.55 | $0.00 |
|---|---|---|---|---|

**VIRIDIANA LOPEZ**
**725 PRINCESS AVE**
**LAS VEGAS, NV 89030**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.572 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,013.85 | $0.00 |
|---|---|---|---|---|

**VIVIANA CORTES**
**6524 1/2 STAFFORD AVE**
**HUNTINGTON PARK, CA 90255**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.573 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |
|---|---|---|---|---|

**WALTER ESPINOZA**
**7253 FARMDALE AVE.**
**North Hollywood, CA 91605**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

---

| 2.574 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,504.87 | $0.00 |
|---|---|---|---|---|

**WALTER FLORES**
**6645 FOSTER BRIDGE BLVD APT**
**C**
**BELL GARDENS, CA 90201**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

■ No
☐ Yes

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

| 2.575 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$6,686.62** | **$0.00** |
|---|---|---|---|---|

**WENDY CASTRO-HARRIS**
**9112 WEST BOULEVARD**
**PICO RIVERA, CA 90660**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.576 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,086.56** | **$0.00** |
|---|---|---|---|---|

**WENDY STONER**
**2329  92ND AVE**
**OAKLAND, CA 94603**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.577 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$1,980.22** | **$0.00** |
|---|---|---|---|---|

**WILLIAM MADRID**
**9485 FETTERLY AVE APT C**
**LOS ANGELES, CA 90022**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| 2.578 | Priority creditor's name and mailing address | As of the petition filing date, the claim is:<br>*Check all that apply.* | **$360.60** | **$0.00** |
|---|---|---|---|---|

**YESENIA REYES**
**445 S. NEW HAMPSHIRE AVE, APT**
**222**
**LOS ANGELES, CA 90020**

☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **1/5/2022** | **Wages and benefits** |

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?

■ No
☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 2.579 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,855.44** | **$0.00** |

**YESICA GONZALEZ**
**348 E 81ST**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.580 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,131.73** | **$0.00** |

**YISSEL MONTERO**
**153 E 82ND ST**
**LOS ANGELES, CA 90003**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.581 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$2,140.65** | **$0.00** |

**YOSELIN MORA**
**15523 RAYEN ST APT 32**
**NORTH HILLS, CA 91343**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.582 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$1,987.93** | **$0.00** |

**YULISSA MOYA**
**2807 PARKWAY DR**
**EL MONTE, CA 91732**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred
**1/5/2022**

Basis for the claim:
**Wages and benefits**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

Is the claim subject to offset?
■ No
☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|---|
| | Name | | | |

| 2.583 | Priority creditor's name and mailing address<br>**YURIRIA BRIONES**<br>**6049 EAST ALLSTON ST**<br>**LOS ANGELES, CA 90022** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $1,398.97 | $0.00 |
|---|---|---|---|---|
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| 2.584 | Priority creditor's name and mailing address<br>**ZEFERINO VELAZQUEZ**<br>**ESCAMILLA**<br>**716 S WESTLAKE AVE. APT#34**<br>**LOS ANGELES, CA 90057** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $2,712.38 | $0.00 |
|---|---|---|---|---|
| | Date or dates debt was incurred<br>**1/5/2022** | Basis for the claim:<br>**Wages and benefits** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (<u>4</u>) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

**3.** List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | | Amount of claim |
|---|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address<br>**Aetna Life Insurance Company**<br>**Lockbox 911408  PO Box 31001-1408**<br>**Pasadena, CA 91110** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | $54,064.26 |
|---|---|---|---|
| | Date(s) debt was incurred _<br>Last 4 digits of account number **5100** | Basis for the claim:  **insurance health**<br>Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.2 | Nonpriority creditor's name and mailing address<br>**Albie s Food Products, LLC**<br>**1534 O'Rourke Blvd.**<br>**Gaylord, MI 49735** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed | $47,334.44 |
|---|---|---|---|
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim:  **food**<br>Is the claim subject to offset? ■ No  ☐ Yes | |

| 3.3 | Nonpriority creditor's name and mailing address<br>**Allen B. Felahy**<br>**Farbod Nourian**<br>**FELAHY EMPLOYMENT LAWYERS**<br>**550 South Hope Street, Suite 2655**<br>**Los Angeles, CA 90071** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $0.00 |
|---|---|---|---|
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim:  **Notice Only**<br>Is the claim subject to offset? ■ No  ☐ Yes | |

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$10,263.75** |
|---|---|---|---|
| | **Allen R. Klein Company Inc.**<br>**99 Powerhouse Rd.**<br>**Roslyn Heights, NY 11577** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Business Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No  ☐ Yes | |

---

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$16,250.62** |
|---|---|---|---|
| | **American Reclamation, Inc**<br>**4560 Doran Street**<br>**Los Angeles, CA 90039-1006** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **trash service** | |
| | Last 4 digits of account number  **5374** | Is the claim subject to offset? ■ No  ☐ Yes | |

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,056.00** |
|---|---|---|---|
| | **American Walk-in Coolers, LLC**<br>**140 S. Camino Seco Ste 305**<br>**Tucson, AZ 85710** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **repairs fridge** | |
| | Last 4 digits of account number  **9032** | Is the claim subject to offset? ■ No  ☐ Yes | |

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$26,848.65** |
|---|---|---|---|
| | **Ardellas**<br>**1170 Sandhill Ave**<br>**Carson, CA 90746** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **food** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No  ☐ Yes | |

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$88,078.70** |
|---|---|---|---|
| | **Atlapac**<br>**14700 Marquardt Ave.**<br>**Santa Fe Springs, CA 90670** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **food** | |
| | Last 4 digits of account number  **ET4U** | Is the claim subject to offset? ☐ No  ☐ Yes | |

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$105,560.40** |
|---|---|---|---|
| | **Balance Foods, LLC**<br>**5743 Smithway St., Ste 103**<br>**Los Angeles, CA 90040** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Business Debt** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No  ☐ Yes | |

---

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$29,112.23** |
|---|---|---|---|
| | **Berkshire Hathaway Homestate Co**<br>**PO Box 844501**<br>**Los Angeles, CA 90084** | ☐ Contingent<br>☐ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **insurance workers comp** | |
| | Last 4 digits of account number  **0626** | Is the claim subject to offset? ■ No  ☐ Yes | |

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.11** Nonpriority creditor's name and mailing address

**Best Bay Logistics**
**13831 Slover Ave.**
**Fontana, CA 92337**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **transportation**

Is the claim subject to offset? ☑ No ☐ Yes

**$2,150.00**

---

**3.12** Nonpriority creditor's name and mailing address

**Bestway Sandwiches**
**1530 1st St.**
**San Fernando, CA 91340**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No ☐ Yes

**$573,920.14**

---

**3.13** Nonpriority creditor's name and mailing address

**Brager Tax Law Group APC**
**11400 W Olympic Blvd #750**
**Los Angeles, CA 90064**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **legal**

Is the claim subject to offset? ☑ No ☐ Yes

**$11,090.68**

---

**3.14** Nonpriority creditor's name and mailing address

**Break Time Snacks, Inc**
**30054 Quail Run Drive**
**Agoura Hills, CA 91301**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No ☐ Yes

**$174,766.50**

---

**3.15** Nonpriority creditor's name and mailing address

**BRET VIEGELMANN**
**24619 VALLEY ST APT 19**
**NEWHALL, CA 91321**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benfits**

Is the claim subject to offset? ☑ No ☐ Yes

**$1,963.65**

---

**3.16** Nonpriority creditor's name and mailing address

**BRH SUPPLY**
**17472 Apex Circle**
**Huntington Beach, CA 92647**

Date(s) debt was incurred __

Last 4 digits of account number  **945**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **sanitation supplies**

Is the claim subject to offset? ☑ No ☐ Yes

**$84,951.92**

---

**3.17** Nonpriority creditor's name and mailing address

**Butter Buds Inc.**
**24016 Network Place**
**Chicago, IL 60673-1240**

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No ☐ Yes

**$86,464.00**

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.18** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$40,180.25**

**Caldwell Fresh Foods**
**4035 E 52nd St.**
**Maywood, CA 90270**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  **food**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.19** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$14,638.00**

**Cargill, Inc.**
**PO Box 749481**
**Los Angeles, CA 90074-9481**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  **cold storage off site**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.20** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$134,164.70**

**CDL Utilities**
**5743 Smithway St. #106**
**Commerce, CA 90040**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  **LA utilities**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.21** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown**

**Central Restaurant Product**
**PO Box 78070**
**Indianapolis, IN 46278-0070**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number  **5913**

Basis for the claim:  **equipment**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.22** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$2,422.00**

**Certifix Livescan**
**700 N. Valley St. Suite B**
**Anaheim, CA 92801**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim:  **service**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.23** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,888.50**

**Chubb**
**PO Box 382001**
**Pittsburgh, PA 15250-8001**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number  **001C**

Basis for the claim:  **insurance workers comp**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.24** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$10,014.50**

**Colonial Life**
**P.O. Box 903**
**Columbia, SC 29202-0903**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _
Last 4 digits of account number  **4491**

Basis for the claim:  **insurance**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**3.25** | Nonpriority creditor's name and mailing address
**Commerce Industrial Council**
PO Box 911039
Los Angeles, CA 90091

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$1,065.00**

---

**3.26** | Nonpriority creditor's name and mailing address
**Compwest Insurance Company**
PO Box 101563
Pasadena, CA 91189-1563

Date(s) debt was incurred _

Last 4 digits of account number  **0204**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **insurance**

Is the claim subject to offset? ■ No  ☐ Yes

**$181,784.30**

---

**3.27** | Nonpriority creditor's name and mailing address
**Continental Processors**
681 South Clarence
Los Angeles, CA 90023

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

**$82,160.35**

---

**3.28** | Nonpriority creditor's name and mailing address
**Crown Lift Trucks**
PO Box 641173
Cincinnati, OH 45264

Date(s) debt was incurred _

Last 4 digits of account number  **7341**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No  ☐ Yes

**$1,579.31**

---

**3.29** | Nonpriority creditor's name and mailing address
**Crystal Clear Packaging**
14808 Whittram Ave
Fontana, CA 92335

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **packaging materials**

Is the claim subject to offset? ■ No  ☐ Yes

**$7,648.66**

---

**3.30** | Nonpriority creditor's name and mailing address
**DANIELLA CASTILLO DUVIVIER**
1100 WILSHIRE BLVD APT 2705
LOS ANGELES, CA 90017

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ■ No  ☐ Yes

**$495.25**

---

**3.31** | Nonpriority creditor's name and mailing address
**DAPHNE ROBERTS**
5048 ARCTIC PL
RANCHO CUCAMONGA, CA 91739

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ■ No  ☐ Yes

**$9,978.00**

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

**3.32** | **Nonpriority creditor's name and mailing address**

**David Barrera**
**c/o Lawyers for Employee & Consumer**
**4100 West Alameda Avenue, 3rd Fl.**
**Burbank, CA 91505**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  **Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

**$0.00**

---

**3.33** | **Nonpriority creditor's name and mailing address**

**Department of Motor Vehicles (DMV)**
**PO BOX 942897**
**SACRAMENTO, CA 94297**

Date(s) debt was incurred _

Last 4 digits of account number  **9703**

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

**Unknown**

---

**3.34** | **Nonpriority creditor's name and mailing address**

**Dewafelbakkers**
**10000 Crystal Hill Rd**
**North Little Rock, AR 72113**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:**  **food**

Is the claim subject to offset? ■ No ☐ Yes

**$84,043.05**

---

**3.35** | **Nonpriority creditor's name and mailing address**

**Diego Garcia**
**c/o Ramin R. Younessi**
**A Professional Law Corporation**
**3435 Wilshire Blvd Suite 2200**
**Los Angeles, CA 90010**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  **Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

**$0.00**

---

**3.36** | **Nonpriority creditor's name and mailing address**

**El Milagro Bakery**
**13309 Paxton St**
**Pacoima, CA 91331**

Date(s) debt was incurred _

Last 4 digits of account number  **2101**

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**  **food**

Is the claim subject to offset? ■ No ☐ Yes

**$51,478.00**

---

**3.37** | **Nonpriority creditor's name and mailing address**

**Enterprise**
**333City Blvd. W 1008**
**Orange, CA 92868**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:**  **truck rental**

Is the claim subject to offset? ■ No ☐ Yes

**$453,633.24**

---

**3.38** | **Nonpriority creditor's name and mailing address**

**Enterprise-Claims**
**PO Box 843369**
**Kansas City, MO 64184**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
■ Disputed

**Basis for the claim:** _

Is the claim subject to offset? ■ No ☐ Yes

**$33,598.76**

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.39** Nonpriority creditor's name and mailing address

**Ernest Packaging Solutions**
5777 Smithway St
Commerce, CA 90040

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **packaging for food**

Is the claim subject to offset? ☑ No  ☐ Yes

**$112,195.37**

---

**3.40** Nonpriority creditor's name and mailing address

**Evergreen Licensing LLC**
PO BOX 610028
Dallas,, TX 75261-0028

Date(s) debt was incurred _

Last 4 digits of account number  **3721**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No  ☐ Yes

**$28,993.50**

---

**3.41** Nonpriority creditor's name and mailing address

**Express Employment Professionals**
P.O. Box 844277
Los Angeles, CA 90084-4277

Date(s) debt was incurred _

Last 4 digits of account number  **0184**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **temp agency**

Is the claim subject to offset? ☑ No  ☐ Yes

**$54,048.87**

---

**3.42** Nonpriority creditor's name and mailing address

**FELAHY EMPLOYMENT LAWYERS**
550 S. Hope Street, Suite 2655
Los Angeles, CA 90071

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **legal**

Is the claim subject to offset? ☑ No  ☐ Yes

**$10,687.50**

---

**3.43** Nonpriority creditor's name and mailing address

**FERNANDO CASTILLO**
330 WEST 11TH STREET APT 302
LOS ANGELES, CA 90015

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ☑ No  ☐ Yes

**$36,259.89**

---

**3.44** Nonpriority creditor's name and mailing address

**Field Fresh Foods Inc.**
P.O. Box 3877
Gardena, CA 92047

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No  ☐ Yes

**$56,225.00**

---

**3.45** Nonpriority creditor's name and mailing address

**Fishbowl**
580 East Technology Ave.
Orem, UT 84097

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **IT sotware**

Is the claim subject to offset? ☑ No  ☐ Yes

**$5,337.00**

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

**3.46**

**Nonpriority creditor's name and mailing address**
**Fit Foodz**
**1505 Soaring Hawk Point**
**Atlanta, GA 30339**

Date(s) debt was incurred __

Last 4 digits of account number __

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** __food__

Is the claim subject to offset? ☑ No  ☐ Yes

**$51,936.00**

---

**3.47**

**Nonpriority creditor's name and mailing address**
**Freeman, Freeman & Smiley, LLP**
**1888 Century Park East, Suite 1500**
**Los Angeles, CA 90067**

Date(s) debt was incurred __

Last 4 digits of account number __

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** __legal__

Is the claim subject to offset? ☑ No  ☐ Yes

**$2,128.50**

---

**3.48**

**Nonpriority creditor's name and mailing address**
**Freund Baking Company**
**2050 S. Tubeway Ave.**
**Commerce, CA 90040**

Date(s) debt was incurred __

Last 4 digits of account number __30

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** __food__

Is the claim subject to offset? ☑ No  ☐ Yes

**$45,618.59**

---

**3.49**

**Nonpriority creditor's name and mailing address**
**GHA Technologies, Inc.**
**Dept. #2090 PO Box 29661**
**Phoenix, AZ 85038-9661**

Date(s) debt was incurred __

Last 4 digits of account number __

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** __IT hardware__

Is the claim subject to offset? ☑ No  ☐ Yes

**$3,070.27**

---

**3.50**

**Nonpriority creditor's name and mailing address**
**Global Food Solutions**
**PO Box 11115**
**Hauppauge, NY 11788**

Date(s) debt was incurred __

Last 4 digits of account number __

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** __food__

Is the claim subject to offset? ☑ No  ☐ Yes

**$182,120.15**

---

**3.51**

**Nonpriority creditor's name and mailing address**
**Global Foods Inc.**
**8700 Spanish Ridge Ave.**
**Las Vegas, NV 89148-1391**

Date(s) debt was incurred __

Last 4 digits of account number __

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:** __Business Debt__

Is the claim subject to offset? ☑ No  ☐ Yes

**$6,347.04**

---

**3.52**

**Nonpriority creditor's name and mailing address**
**Good Taste Bakery**
**8702 Woodley Ave.**
**North Hills, CA 91343**

Date(s) debt was incurred __

Last 4 digits of account number __

**As of the petition filing date, the claim is:** *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** __food__

Is the claim subject to offset? ☑ No  ☐ Yes

**$119,731.50**

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

**3.53** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$14,245.28**

**Great American Packaging, LLC**
**4361 S. Soto St.**
**Vernon, CA 90058**

Date(s) debt was incurred _
Last 4 digits of account number  **4Y01**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **packaging for food**

Is the claim subject to offset? ☒ No  ☐ Yes

---

**3.54** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$9,000.00**

**Green Hasson Janks**
**PO Box 514670**
**Los Angeles, CA 90051-4670**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☒ No  ☐ Yes

---

**3.55** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,710.60**

**Hartford, The**
**PO Box 783690**
**Philadelphia, PA 19178-3690**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☒ No  ☐ Yes

---

**3.56** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$3,278.00**

**Heartland School Solutions**
**One Heartland Way**
**Jeffersonville, IN 47130**

Date(s) debt was incurred _
Last 4 digits of account number  **4019**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **software**

Is the claim subject to offset? ☒ No  ☐ Yes

---

**3.57** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$4,176.00**

**Highland Beef Farms, Inc.**
**PO Box 2414**
**Reston, VA 20195**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☒ No  ☐ Yes

---

**3.58** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$13,240.02**

**Individual Foodservice**
**5496 Lindbergh Ln.**
**Bell, CA 90201**

Date(s) debt was incurred _
Last 4 digits of account number  **7784**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☒ No  ☐ Yes

---

**3.59** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$38,915.75**

**InterCrate Inc.**
**PO Box 10349**
**Fresno, CA 93745**

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **equipmemt**

Is the claim subject to offset? ☒ No  ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 3.60 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,879.05 |
|---|---|---|---|

**3.60**

**Nonpriority creditor's name and mailing address**
**Intergrated Business Solutions of Southe**
**18870 Milos Circle**
**Huntington Beach, CA 92648**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

**$2,879.05**

---

**3.61**

**Nonpriority creditor's name and mailing address**
**Iowa Rotocast Plastics, Inc.**
**PO Box 320**
**Decorah, IA 52101**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **packaging**

Is the claim subject to offset? ■ No ☐ Yes

**$26,101.62**

---

**3.62**

**Nonpriority creditor's name and mailing address**
**IPFS Corporation**
**PO Box 100391**
**Pasadena, CA 91189-0391**

Date(s) debt was incurred _

Last 4 digits of account number  **7273**

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **insurance**

Is the claim subject to offset? ■ No ☐ Yes

**$15,069.39**

---

**3.63**

**Nonpriority creditor's name and mailing address**
**Isotech Pest Management**
**311 N. Crescent Way**
**Anaheim, CA 92801**

Date(s) debt was incurred _

Last 4 digits of account number  **5102**

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **pest control**

Is the claim subject to offset? ■ No ☐ Yes

**$9,176.40**

---

**3.64**

**Nonpriority creditor's name and mailing address**
**J & J Snack Foods Corp.**
**PO Box 845054**
**Los Angeles, CA 90084-5054**

Date(s) debt was incurred _

Last 4 digits of account number  **4320**

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ■ No ☐ Yes

**$141,037.50**

---

**3.65**

**Nonpriority creditor's name and mailing address**
**JACQUELINE DUVIVIER CASTILLO**
**775 TALUS WAY**
**RENO, NV 89503**

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ■ No ☐ Yes

**$35,400.78**

---

**3.66**

**Nonpriority creditor's name and mailing address**
**Jada Spices LLc**
**745 NW 31 Street**
**Miami, CA 91042**

Date(s) debt was incurred _

Last 4 digits of account number _

**As of the petition filing date, the claim is:** *Check all that apply.*
☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ■ No ☐ Yes

**$10,974.66**

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 3.67 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$25,445.40** |
|---|---|---|---|

**JASON ROBERTS**
**5048 ARCTIC PL**
**RANCHO CUCAMONGA, CA 91739**

Date(s) debt was incurred __1/5/2022__

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Wages and benefits__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.68 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$5,000.00** |
|---|---|---|---|

**Jesse K. Swartz**
**PO Box 762**
**Irvington, VA 22480**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Business Debt__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.69 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$6,076.64** |
|---|---|---|---|

**JobSource North America, Inc.**
**PO Box 31001-2434**
**Pasadena, CA 91110-2434**

Date(s) debt was incurred __

Last 4 digits of account number __3356__

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __temp agency__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.70 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$62,409.19** |
|---|---|---|---|

**John Soules Foods, Inc**
**PO Box 4579**
**Tyler, TX 75712**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __food__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.71 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$3,397.48** |
|---|---|---|---|

**JONATHAN DIAZ**
**3013 ALDRICH STREET**
**ANTIOCH, CA 94509**

Date(s) debt was incurred __1/5/2022__

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Wages and benefits__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.72 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$37,348.80** |
|---|---|---|---|

**JSL Foods, Inc.**
**1478 N. Indiana St.**
**Los Angeles, CA 90063**

Date(s) debt was incurred __

Last 4 digits of account number __2005__

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __food__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.73 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$0.00** |
|---|---|---|---|

**Kelly Aviva Cohen**
**Seyfarth Shaw LLP**
**2029 Century Park East Suite 3500**
**Los Angeles, CA 90067-3021**

Date(s) debt was incurred __

Last 4 digits of account number __

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Notice Only__

Is the claim subject to offset? ■ No ☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.74**

**Nonpriority creditor's name and mailing address**
**Koi Consulting Group, Inc.**
**1590 Rosecrans Avenue Ste D311**
**Manhattan Beach, CA 90266**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **IT**

Is the claim subject to offset? ☒ No  ☐ Yes

**$43,190.66**

---

**3.75**

**Nonpriority creditor's name and mailing address**
**Los Angeles Cold Storage Company**
**PO Box 54244**
**Los Angeles, CA 90054**

Date(s) debt was incurred _

Last 4 digits of account number  **850**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **of f site cold storage**

Is the claim subject to offset? ☒ No  ☐ Yes

**$39,464.42**

---

**3.76**

**Nonpriority creditor's name and mailing address**
**Magline, Inc.**
**1205 W. Cedar St.**
**Standish, MI 48658**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **equipment**

Is the claim subject to offset? ☒ No  ☐ Yes

**$3,246.09**

---

**3.77**

**Nonpriority creditor's name and mailing address**
**Managed Mobile**
**1901 Nancita Circle**
**Placentia, CA 92870**

Date(s) debt was incurred _

Last 4 digits of account number  **0558**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **truck repairs**

Is the claim subject to offset? ☒ No  ☐ Yes

**$1,361.55**

---

**3.78**

**Nonpriority creditor's name and mailing address**
**Maranatha Cleaning Services, Inc.**
**PO Box 7350**
**Van Nuys, CA 91409**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **services**

Is the claim subject to offset? ☒ No  ☐ Yes

**$48,566.00**

---

**3.79**

**Nonpriority creditor's name and mailing address**
**MARGARITA LUNA**
**1817 BERGLUND DRIVE**
**WEST COVINA, CA 91792**

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ☒ No  ☐ Yes

**$689.31**

---

**3.80**

**Nonpriority creditor's name and mailing address**
**Mason Winters Associate**
**Seyfarth Shaw LLP**
**2029 Century Park East Suite 3500**
**Los Angeles, CA 90067-3021**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Notice Only**

Is the claim subject to offset? ☒ No  ☐ Yes

**$0.00**

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 3.81 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
|---|---|---|---|

**Matthew Graffigna Associate**
**Seyfarth Shaw LLP**
**601 South Figueroa Street Suite 330**
**Los Angeles, CA 90017-5793**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Notice Only**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.82 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $334,752.33 |
|---|---|---|---|

**Me Gusta Gourmet Foods**
**13752 Van Nuys Blvd.**
**Pacoima, CA 91331**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $11,594.56 |
|---|---|---|---|

**Mexilink, Inc.**
**DEPT 229   PO BOX 4346**
**Houston, TX 77210**

Date(s) debt was incurred _

Last 4 digits of account number  **2893**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $116,487.24 |
|---|---|---|---|

**Meza Construction**
**2550 E. 55th St.**
**Huntington Park, CA 90255**

Date(s) debt was incurred _

Last 4 digits of account number  **B4YM**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **construction service**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $189,998.86 |
|---|---|---|---|

**Moreno Brothers Distributing**
**5743 Smithway Street , Ste 103**
**Commerce, CA 90040**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $31,803.08 |
|---|---|---|---|

**New Wave Converting Inc**
**14808 Whittram Ave**
**Fontana, CA 92335**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **equipment**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $10,067.00 |
|---|---|---|---|

**Nextgen**
**7165 Bermuda Rd.**
**Las Vegas, NV 89119**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.88** | Nonpriority creditor's name and mailing address
Nichols Sales, Inc.
14140 Live Oak Ave. Suite A
Baldwin Park, CA 91706

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*            **$4,276.42**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **trash service**

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.89** | Nonpriority creditor's name and mailing address
NU Health Foods, LLC
PO Box 12376
Marina Del Rey, CA 90295

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*            **$4,300.80**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.90** | Nonpriority creditor's name and mailing address
O'Reilly
11559 Rosecrans Ave.
Norwalk,, CA 90650

Date(s) debt was incurred __

Last 4 digits of account number  **3316**

As of the petition filing date, the claim is: *Check all that apply.*            **$6,949.48**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **equipment parts**

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.91** | Nonpriority creditor's name and mailing address
OSCAR VALENZUELA
18827 THORN CREST CT.
CANYON COUNTRY, CA 91351

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*            **$3,837.00**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.92** | Nonpriority creditor's name and mailing address
P & R Paper Supply Company, Inc.
P.O. Box 590
Redlands, CA 92373

Date(s) debt was incurred __

Last 4 digits of account number  **5349**

As of the petition filing date, the claim is: *Check all that apply.*            **$271,031.57**

☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim:  **packaging**

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.93** | Nonpriority creditor's name and mailing address
PALFINGER LIFTGATE
PO Box 5822
Carol Stream, IL 60197-5822

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*            **$2,336.67**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☒ No ☐ Yes

---

**3.94** | Nonpriority creditor's name and mailing address
Paola Lopez
c/o Leena Fana
Lawyers for Employee & Consumer Rig
4100 West Alameda Avenue, 3rd Fl.
Burbank, CA 91505

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*            **$0.00**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Notice Only**

Is the claim subject to offset? ☒ No ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.95** | Nonpriority creditor's name and mailing address
**Parks Coffee California Inc.**
PO Box 110914
Carrollton, TX 75011-0914

Date(s) debt was incurred __
Last 4 digits of account number **1252**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: **office supplies**

Is the claim subject to offset? ☑ No ☐ Yes

**$1,259.59**

---

**3.96** | Nonpriority creditor's name and mailing address
**PartsPak Inc**
602 Airport Blvd.
Doylestown, PA 18902

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Business Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$692.93**

---

**3.97** | Nonpriority creditor's name and mailing address
**Pasta Piccinini, Inc. Gourmet Fresh**
950 N. Fair Oak Ave.
Pasadena, CA 91103

Date(s) debt was incurred __
Last 4 digits of account number **B4YM**

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: **food**

Is the claim subject to offset? ☑ No ☐ Yes

**$54,025.76**

---

**3.98** | Nonpriority creditor's name and mailing address
**Philadelphia Indemnity
Insurance Co.**
PO Box 70251
Philadelphia, PA 19176

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: **Insurance**

Is the claim subject to offset? ☑ No ☐ Yes

**$257,724.61**

---

**3.99** | Nonpriority creditor's name and mailing address
**Pizza Hut**
PO Box 782110
Wichita, KS 67278

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: **food**

Is the claim subject to offset? ☑ No ☐ Yes

**$42,284.64**

---

**3.100** | Nonpriority creditor's name and mailing address
**Precision Industrial Manufacturers**
16198 Gladstone St.
Baldwin Park, CA 91706

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Business Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$4,161.65**

---

**3.101** | Nonpriority creditor's name and mailing address
**Precision Scales Inc.**
1300 East 223rd St., Ste 408
Carson, CA 90745

Date(s) debt was incurred __
Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Business Debt**

Is the claim subject to offset? ☑ No ☐ Yes

**$1,010.00**

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 3.102 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$661.50** |
|---|---|---|---|

**PRINT N COPY**
**4820 S. Eastern Ave. Unit P**
**Los Angeles, CA 90040**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.103 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$28,520.91** |
|---|---|---|---|

**Prudential Overall Supply**
**P.O. Box 11210**
**Santa Ana, CA 92711-1210**

Date(s) debt was incurred _

Last 4 digits of account number  **2500**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **smocks for employees**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.104 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$102,378.66** |
|---|---|---|---|

**Pueblo Trading Company, Inc**
**PO Box 11508**
**Newport Beach, CA 92658**

Date(s) debt was incurred _

Last 4 digits of account number  **4You**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.105 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$20,068.00** |
|---|---|---|---|

**QBE**
**PO BOX 734576**
**CHICAGO, IL 60673**

Date(s) debt was incurred _

Last 4 digits of account number  **7515**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **insuance**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.106 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$28,830.75** |
|---|---|---|---|

**Raymond Intralogistics Solutions**
**9939 Norwalk Blvd.**
**Santa Fe Springs, CA 90670**

Date(s) debt was incurred _

Last 4 digits of account number  **6600**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: _

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.107 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$6,741.01** |
|---|---|---|---|

**Republic Wireless**
**PO Box 75070**
**Chicago, IL 60675-5070**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: _

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.108 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$9,901.49** |
|---|---|---|---|

**Restaurant Depot - Van Nuys**
**15853 Strathern St.**
**Van Nuys, CA 91406-1310**

Date(s) debt was incurred _

Last 4 digits of account number  **0061**

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | |
|---|---|---|---|
| | Name | Case number (if known) | **2:22-bk-10994-BB** |

| 3.109 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$47,219.44** |
|---|---|---|---|

**ROBERT CAMARENA**
**11471 DONNER PASS CT**
**RANCHO CUCAMONGA, CA 91737**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Wages and benefits**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.110 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$11,134.44** |
|---|---|---|---|

**ROBERT SPIRO**
**12027 OTSEGO STREET**
**VALLEY VILLAGE, CA 91607**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **1/5/2022**

Basis for the claim:  **Wages and benefits**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.111 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$8,520.00** |
|---|---|---|---|

**Rocket Machine Works Inc**
**5410 S Villa Ave**
**Fresno, CA 93725**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.112 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$458,854.48** |
|---|---|---|---|

**Rockview**
**PO Box 668**
**Downey, CA 90241**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim:  **food**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.113 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,534.94** |
|---|---|---|---|

**ROMULO CALISTRI**
**14014 NW PASSAGE #144**
**MARINA DEL REY, CA 90292**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **1/5/2022**

Basis for the claim:  **Wages and benefits**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.114 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$26,906.93** |
|---|---|---|---|

**Seyfarth Shaw LLP**
**2029 Century Park East.  Suite 3500**
**Los Angeles, CA 90067**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim:  **legal**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| 3.115 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$0.00** |
|---|---|---|---|

**Sharde Thomas Skahan**
**2029 Century Park E, Ste 3500**
**Los Angeles, CA 90067-3021**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Notice Only**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.116** | Nonpriority creditor's name and mailing address

**Shoes For Crews, llc**
File Lockbox 734176
CHICAGO, IL 60673

Date(s) debt was incurred __

Last 4 digits of account number  **0040**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **shoes**

Is the claim subject to offset? ☑ No ☐ Yes

**$1,333.28**

---

**3.117** | Nonpriority creditor's name and mailing address

**Simply Fresh LLC**
PO Box 715378
Cincinnati, OH 45271-5378

Date(s) debt was incurred __

Last 4 digits of account number  **5545**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No ☐ Yes

**$18,302.76**

---

**3.118** | Nonpriority creditor's name and mailing address

**Smith IT Solutions LLC**
2906 N Frederic Street
Burbank, CA 91504

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **IT**

Is the claim subject to offset? ☑ No ☐ Yes

**$25,250.00**

---

**3.119** | Nonpriority creditor's name and mailing address

**Smithway Associates, Inc.**
5743 Smithway St. #106
Commerce, CA 90040

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **LA rent**

Is the claim subject to offset? ☑ No ☐ Yes

**$68,002.00**

---

**3.120** | Nonpriority creditor's name and mailing address

**SoCal Gas (The Gas Company 4938 9)**
PO Box C
Monterey Park, CA 91756

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **utilities**

Is the claim subject to offset? ☑ No ☐ Yes

**$3,561.62**

---

**3.121** | Nonpriority creditor's name and mailing address

**Sonsray**
PO Box 51173
Los Angeles, CA 90051

Date(s) debt was incurred __

Last 4 digits of account number  **4000**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **truck rental**

Is the claim subject to offset? ☑ No ☐ Yes

**$5,666.09**

---

**3.122** | Nonpriority creditor's name and mailing address

**Southern California Immediate Medical**
7300 Alondra Blvd. Suite 101
Paramount, CA 90723

Date(s) debt was incurred __

Last 4 digits of account number __

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **medical service**

Is the claim subject to offset? ☑ No ☐ Yes

**$8,094.20**

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

| 3.123 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$104,973.12** |
|---|---|---|---|

**Southwest Border Flavor**
**2580 W. Brooke St., STE. 101**
**North Las Vegas, NV 89032**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.124 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$74,237.73** |
|---|---|---|---|

**Spectra 360, Inc.**
**P.O.Box 75410**
**Chicago, IL 60675-5410**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **temp agency**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.125 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$6,018.00** |
|---|---|---|---|

**STEVEN HOLGUIN**
**4117 IVY RUSSELL WAY**
**LAS VEGAS, NV 89115**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **1/5/2022**

Last 4 digits of account number _

Basis for the claim:  **Wages and benefits**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.126 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$51,400.00** |
|---|---|---|---|

**Superior Carrier Services Inc**
**10430-28 Pioneer Blvd.**
**Santa Fe Springs, CA 90670**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **truck transfer service**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.127 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$3,232.30** |
|---|---|---|---|

**Supplymates**
**40 N. Altadena Dr. Suite 206**
**Pasadena, CA 91107**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **office supplies**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.128 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$171,933.64** |
|---|---|---|---|

**Sysco Los Angeles, Inc.**
**20701 East Currier Road**
**Walnut, CA 91789**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number  **8973**

Basis for the claim:  **food**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.129 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$17,860.07** |
|---|---|---|---|

**T-Mobile**
**PO Box 790047**
**St. Louise, MO 06317-9007**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number  **2789**

Basis for the claim:  **phones**

Is the claim subject to offset? ■ No  ☐ Yes

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

---

**3.130** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$32,000.00**

Taltran Global Inc.
45 S. Arroyo Pkwy., Unit 217
Pasadena, CA 91105

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.131** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$59,220.00**

Tarrier Foods Corp
PO Box 634310
Cincinnati, OH 00063-4310

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **food**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.132** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$11,076.96**

TEC Equipment Leasing
PO Box 743076
Los Angeles, CA 90074

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number **2533**

Basis for the claim: **truck rentals**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.133** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$4,016.05**

THOMAS WILSON
12088 MORROW DRIVE
TUSTIN, CA 92782

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **1/5/2022**

Last 4 digits of account number _

Basis for the claim: **Wages and benefits**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.134** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,270.50**

Tiffany  Morgan Birkett, APC
519 S. First Avenue
Arcadia, CA 91006

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.135** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00**

TOM LALLAS
MARK D. HURWITZ
LEVY, SMALL & LALLAS
815 Moraga Drive
Los Angeles, CA 90049

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: **Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.136** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,345.58**

TPx - TelePacific Communications
515 S. Flower St. 46th
Los Angeles, CA 90071

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number **8082**

Basis for the claim: **phones**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Better 4 You Breakfast, Inc. | | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

**3.137** | **Nonpriority creditor's name and mailing address**
**Tuscany Cheese LLC**
**6850 Artesia Blvd.**
**Buena Park, CA 90620**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: __food__

Is the claim subject to offset? ☑ No ☐ Yes

**$138,840.08**

---

**3.138** | **Nonpriority creditor's name and mailing address**
**Uline**
**PO Box 88741**
**Chicago, IL 60680-1741**

Date(s) debt was incurred _

Last 4 digits of account number __4311__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: __boxes__

Is the claim subject to offset? ☑ No ☐ Yes

**$4,453.66**

---

**3.139** | **Nonpriority creditor's name and mailing address**
**US Foods, Inc.**
**File 6993**
**Los Angeles, CA 90074-6993**

Date(s) debt was incurred _

Last 4 digits of account number __3017__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: __food__

Is the claim subject to offset? ☑ No ☐ Yes

**$230,709.50**

---

**3.140** | **Nonpriority creditor's name and mailing address**
**Veronica Ortiz**
**c/o Law Office of Lavi & Ebrahimian**
**Joseph Lavi**
**8889 W. Olympic Blvd Suite 200**
**Beverly Hills, CA 90211**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Notice Only__

Is the claim subject to offset? ☑ No ☐ Yes

**$0.00**

---

**3.141** | **Nonpriority creditor's name and mailing address**
**Victor's Market Company**
**11735 S. Prairie Ave.**
**Hawthorne, CA 90250**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: __food__

Is the claim subject to offset? ☑ No ☐ Yes

**$40,879.10**

---

**3.142** | **Nonpriority creditor's name and mailing address**
**WEX  (76 Universal)**
**PO Box 6293**
**Carol Stream, IL 60197**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Business Debt__

Is the claim subject to offset? ☑ No ☐ Yes

**$13,550.33**

---

**3.143** | **Nonpriority creditor's name and mailing address**
**WEX (Chevron)**
**PO Box 4337**
**Carol Stream, IL 60197**

Date(s) debt was incurred _

Last 4 digits of account number __9404__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: __gas__

Is the claim subject to offset? ☑ No ☐ Yes

**$59,210.85**

---

| Debtor | **Better 4 You Breakfast, Inc.** | | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|---|
| | Name | | | |

---

| 3.144 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$574,998.80** |
|---|---|---|---|

**Wild Fresh Produce**
**PO Box. 32658**
**Los Angeles, CA 90032**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  **food**

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.145 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$20,031.70** |
|---|---|---|---|

**Wrecks West USA Inc**
**1707 S Bluff Rd**
**Montebello, CA 90640**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim: _

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.146 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$40,076.11** |
|---|---|---|---|

**ZNV - Get Fresh Sales, Inc.**
**P.O. Box 96087**
**Las Vegas, NV 89193-6087**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.147 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$3,994.10** |
|---|---|---|---|

**ZNV-A&M Cold Storage & Trailer Leas**
**PO Box 86 Minster**
**Minster, OH 45865**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.148 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$4,103.00** |
|---|---|---|---|

**ZNV-Dunlapv Inc**
**1626 Jamboree Dr.**
**Colorado Springs, CO 80920**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.149 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,625.63** |
|---|---|---|---|

**ZNV-Lowe Rental Inc**
**7405 Graham Road. St. B**
**Fairburn, GA 30213**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.150 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$131,297.83** |
|---|---|---|---|

**ZNV-Meadow Gold-Las Vegas (MG)**
 **6350 E. Centennial Pkwy.**
**Las Vegas, NV 89115**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ☑ No  ☐ Yes

---

| Debtor | **Better 4 You Breakfast, Inc.** | Case number (if known) | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

| 3.151 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$556.95** |
|---|---|---|---|

**ZNV-Republic Services**
**P.O. Box 78829**
**Phoenix, AZ 85062-8829**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.152 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$74,105.72** |
|---|---|---|---|

**ZNV-TCI Leasing/Rentals**
**4950 Triggs Street**
**Los Angeles, CA 90022**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.153 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$192,535.00** |
|---|---|---|---|

**ZSF - Banner Fruit Co.**
**PO Box 2971**
**South San Francisco, CA 94083**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.154 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,883.15** |
|---|---|---|---|

**ZSF - Bludog Telecom Inc.**
**355 N. Lantana #486**
**Camarillo, CA 93010**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.155 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,672.86** |
|---|---|---|---|

**ZSF - City of Millbrae**
**621 Magnolia Ave.**
**Millbrae, CA 94030**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.156 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$3,605.42** |
|---|---|---|---|

**ZSF - Claddagh Refrigeration Co. In**
**1434 15th Street**
**San Francisco, CA 94103**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.157 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$12,204.84** |
|---|---|---|---|

**ZSF - Gilt Edge Creamery**
**1636 Gilbreth Road**
**Burlingame, CA 94010**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Last 4 digits of account number** _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | **Better 4 You Breakfast, Inc.** | Case number *(if known)* | **2:22-bk-10994-BB** |
|---|---|---|---|
| | Name | | |

---

**3.158** | Nonpriority creditor's name and mailing address

**ZSF - Lara's Trucking, Inc.**
**PO Box 576849**
**Modesto, CA 95357**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$36,400.00**

---

**3.159** | Nonpriority creditor's name and mailing address

**ZSF - Marlin Business Bank**
**PO Box 13604**
**Philadelphia, PA 19101-3604**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$1,360.79**

---

**3.160** | Nonpriority creditor's name and mailing address

**ZSF - MSM, Inc.**
**1101 Francisco Blvd. E.**
**San Rafael, CA 94901**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$2,455.92**

---

**3.161** | Nonpriority creditor's name and mailing address

**ZSF - PG & E**
**PO Box 997300**
**Sacramento, CA 95899-7300**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:   **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$30,103.70**

---

**3.162** | Nonpriority creditor's name and mailing address

**ZSF - Ryder**
**Lockbox File 056347**
**Los Angeles, CA 90074-6347**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$78,783.87**

---

**3.163** | Nonpriority creditor's name and mailing address

**ZSF - Sysco Food Services**
**20701 East Currier Road**
**Walnut, CA 91789**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$24,811.45**

---

**3.164** | Nonpriority creditor's name and mailing address

**ZSF - The Fruit Guys**
**21 Airport Blvd., Ste H South**
**South San Francisco, CA 94080**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No ☐ Yes

**$6,989.00**

---

| Debtor | Better 4 You Breakfast, Inc. | Case number (if known) | 2:22-bk-10994-BB |
|---|---|---|---|
| | Name | | |

| 3.165 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,387.59 |
|---|---|---|---|

**ZSF - Tyco Integrated Security**
**P.O. Box 37967**
**Pittsburgh, PA 15250-7967**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.166 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $6,294.07 |
|---|---|---|---|

**ZSF - ULINE**
**PO Box 88741**
**Chicago, IL 60680-1741**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.167 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,684.72 |
|---|---|---|---|

**ZSF-Kelly Spicers Packaging**
**P.O. Box 741659**
**Los Angeles, CA 90074-1659**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

| 3.168 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,000.00 |
|---|---|---|---|

**ZSF-Teocal Transport, Inc**
**2101 Carden St.**
**San Leandro, CA 94577**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Business Debt**

Is the claim subject to offset? ■ No  ☐ Yes

---

### Part 3:    List Others to Be Notified About Unsecured Claims

**4.** List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Robert Lourenco Costa**<br>**Mahoney Law Group, APC**<br>**249 E Ocean Blvd Ste 814**<br>**Long Beach, CA 90802-4899** | Line  **3.140**<br><br>☐  Not listed. Explain ____ | _ |

---

### Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

**5.** Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ | 1,678,558.47 |
| 5b. Total claims from Part 2 | 5b. | + $ | 8,279,013.96 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ | 9,957,572.43 |

---

**EXHIBIT I**

| Employee Code | Wages Owed As of 2/24/2022 | $ Vacation Available | $ PTO Time | Bonus | COVID Pay | Sch | Sched E Priority Claim (Wages & Benefits) | Sched F Gen Unsecured Claim | Notes |
|---|---|---|---|---|---|---|---|---|---|
| 2444 | $480.00 | $0.00 | $107.85 | | | E | $587.85 | $0.00 | |
| 2198 | $960.00 | $205.50 | $286.20 | | | E | $1,451.70 | $0.00 | |
| 2375 | $1,536.00 | $96.72 | $365.76 | | $600.00 | E | $2,598.48 | $0.00 | |
| 2170 | $480.00 | $0.00 | $907.80 | | | E | $1,387.80 | $0.00 | |
| 1451 | $480.00 | $0.00 | $818.10 | | | E | $1,298.10 | $0.00 | |
| 2370 | $480.00 | $0.00 | $181.95 | | | E | $661.95 | $0.00 | |
| 1596 | $960.00 | $105.00 | $631.80 | | | E | $1,696.80 | $0.00 | |
| 2420 | $480.00 | $0.00 | $159.90 | | | E | $639.90 | $0.00 | |
| 1700 | $1,024.00 | $373.92 | $460.96 | | | E | $1,858.88 | $0.00 | |
| 1561 | $1,056.00 | $127.38 | $261.20 | | | E | $1,444.58 | $0.00 | |
| 2058 | $480.00 | $0.00 | $929.40 | | | E | $1,409.40 | $0.00 | |
| 2209 | $1,056.00 | $220.28 | $768.41 | | | E | $2,044.68 | $0.00 | |
| 2403 | $480.00 | $0.00 | $136.05 | | | E | $616.05 | $0.00 | |
| 1005 | $0.00 | $154.21 | $788.44 | | | E | $942.65 | $0.00 | |
| 1311 | $960.00 | $165.90 | $713.70 | | | E | $1,839.60 | $0.00 | |
| 2429 | $1,024.00 | $267.04 | $259.36 | | | E | $1,550.40 | $0.00 | |
| 2260 | $1,072.00 | $207.03 | $1,036.66 | | | E | $2,315.69 | $0.00 | |
| 1140 | $480.00 | $0.00 | $659.70 | | | E | $1,139.70 | $0.00 | |
| 1014 | $1,280.00 | $274.00 | $724.60 | | | E | $2,278.60 | $0.00 | |
| 1540 | $1,072.00 | $347.90 | $1,039.00 | | | E | $2,458.90 | $0.00 | |
| 2065 | $1,536.00 | $197.28 | $1,702.32 | | $600.00 | E | $4,035.60 | $0.00 | |
| 1259 | $480.00 | $0.00 | $825.00 | | | E | $1,305.00 | $0.00 | |
| 2356 | $512.00 | $0.00 | $208.48 | | | E | $720.48 | $0.00 | |
| 1063 | $1,104.00 | $270.65 | $1,049.49 | | | E | $2,424.14 | $0.00 | |
| 1256 | $480.00 | $0.00 | $625.20 | | | E | $1,105.20 | $0.00 | |
| 2525 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 | |
| 1178 | $480.00 | $0.00 | $370.05 | | | E | $850.05 | $0.00 | |
| 1482 | $480.00 | $0.00 | $635.70 | | | E | $1,115.70 | $0.00 | |
| 2244 | $480.00 | $0.00 | $818.85 | | | E | $1,298.85 | $0.00 | |
| 2341 | $512.00 | $0.00 | $180.48 | | | E | $692.48 | $0.00 | |
| 1492 | $512.00 | $0.00 | $596.80 | | | E | $1,108.80 | $0.00 | |
| 1900 | $960.00 | $217.80 | $723.15 | | | E | $1,900.95 | $0.00 | |
| 1860 | $480.00 | $0.00 | $663.75 | | | E | $1,143.75 | $0.00 | |
| 2543 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 | |
| 1235 | $1,244.16 | $62.21 | $1,210.14 | | | E | $2,516.51 | $0.00 | |
| 1106 | $1,056.00 | $995.61 | $825.00 | | | E | $2,876.61 | $0.00 | |
| 1875 | $480.00 | $0.00 | $385.65 | | | E | $865.65 | $0.00 | |
| 1210 | $1,344.00 | $169.47 | $267.96 | | | E | $1,781.43 | $0.00 | |
| 1558 | $1,280.00 | $281.00 | $449.40 | | | E | $2,010.40 | $0.00 | |
| 1942 | $1,024.00 | $373.92 | $322.72 | | | E | $1,720.64 | $0.00 | |
| 2470 | $928.00 | $169.36 | $169.22 | | | E | $1,266.58 | $0.00 | |
| 1768 | $480.00 | $0.00 | $194.10 | | | E | $674.10 | $0.00 | |
| 2349 | $480.00 | $0.00 | $234.00 | | | E | $714.00 | $0.00 | |
| 1623 | $1,312.00 | $444.85 | $504.10 | | | E | $2,260.95 | $0.00 | |
| 2301 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 | |
| 1823 | $960.00 | $100.50 | $357.15 | | | E | $1,417.65 | $0.00 | |
| 2453 | $960.00 | $200.25 | $191.40 | | | E | $1,351.65 | $0.00 | |
| 1931 | $1,120.00 | $286.65 | $785.58 | | | E | $2,192.23 | $0.00 | |
| 1609 | $480.00 | $0.00 | $112.20 | | | E | $592.20 | $0.00 | |
| 1552 | $1,056.00 | $127.38 | $722.04 | | | E | $1,905.42 | $0.00 | |
| 2106 | $1,243.52 | $1,092.16 | $971.50 | | | E | $3,307.18 | $0.00 | |
| 2115 | $1,216.00 | $228.57 | $1,254.00 | | | E | $2,698.57 | $0.00 | |
| 2142 | $480.00 | $0.00 | $290.70 | | | E | $770.70 | $0.00 | |
| 1833 | $1,216.00 | $170.24 | $750.69 | | | E | $2,136.93 | $0.00 | |
| 1255 | $1,280.00 | $297.20 | $1,000.00 | | | E | $2,577.20 | $0.00 | |
| 2008 | $480.00 | $0.00 | $959.70 | | | E | $1,439.70 | $0.00 | |
| 1483 | $1,280.00 | $154.40 | $720.40 | | | E | $2,154.80 | $0.00 | |
| 1138 | $512.00 | $0.00 | $283.20 | | | E | $795.20 | $0.00 | |
| 2536 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 | |
| 1017 | $480.00 | $0.00 | $950.70 | | | E | $1,430.70 | $0.00 | |
| 2529 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 | |
| 2522 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 | |
| 1315 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 | |
| 1780 | $1,280.00 | $237.40 | $1,480.00 | | | E | $2,997.40 | $0.00 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2136 | $480.00 | $0.00 | $294.60 | | | E | $774.60 | $0.00 |
| 1019 | $1,692.16 | $176.09 | $1,322.00 | | | E | $3,190.25 | $0.00 Insider |
| 1753 | $1,152.00 | $276.66 | $162.36 | | | E | $1,591.02 | $0.00 |
| 1304 | $960.00 | $226.35 | $750.00 | | | E | $1,936.35 | $0.00 |
| 2469 | $960.00 | $0.00 | $155.70 | | | E | $1,115.70 | $0.00 |
| 1955 | $1,072.00 | $558.61 | $1,117.56 | | | E | $2,748.17 | $0.00 |
| 1473 | $480.00 | $0.00 | $201.75 | | | E | $681.75 | $0.00 |
| 1564 | $1,408.00 | $133.10 | $660.88 | | | E | $2,201.98 | $0.00 |
| 2456 | $480.00 | $0.00 | $107.25 | | | E | $587.25 | $0.00 |
| 1320 | $960.00 | $170.40 | $750.00 | | | E | $1,880.40 | $0.00 |
| 2139 | $1,056.00 | $461.84 | $825.00 | | | E | $2,342.84 | $0.00 |
| 1166 | $1,024.00 | $189.92 | $800.00 | | | E | $2,013.92 | $0.00 |
| 1671 | $480.00 | $0.00 | $607.95 | | | E | $1,087.95 | $0.00 |
| 1928 | $1,088.00 | $80.41 | $850.00 | | | E | $2,018.41 | $0.00 |
| 1696 | $480.00 | $0.00 | $771.30 | | | E | $1,251.30 | $0.00 |
| 2468 | $1,024.00 | $186.88 | $152.48 | | | E | $1,363.36 | $0.00 |
| 1551 | $480.00 | $0.00 | $478.50 | | | E | $958.50 | $0.00 |
| 1475 | $480.00 | $0.00 | $586.35 | | | E | $1,066.35 | $0.00 |
| 2378 | $480.00 | $0.00 | $270.60 | | | E | $750.60 | $0.00 |
| 2448 | $480.00 | $0.00 | $153.00 | | | E | $633.00 | $0.00 |
| 1868 | $1,280.00 | $152.80 | $1,000.00 | | | E | $2,432.80 | $0.00 |
| 1885 | $1,056.00 | $385.61 | $346.83 | | | E | $1,788.44 | $0.00 |
| 2408 | $1,104.00 | $316.71 | $363.46 | | | E | $1,784.17 | $0.00 |
| 1243 | $480.00 | $0.00 | $621.75 | | | E | $1,101.75 | $0.00 |
| 2428 | $480.00 | $0.00 | $219.00 | | | E | $699.00 | $0.00 |
| 2511 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 |
| 1503 | $480.00 | $0.00 | $1,103.25 | | | E | $1,583.25 | $0.00 |
| 2526 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 |
| 1743 | $480.00 | $0.00 | $843.75 | | | E | $1,323.75 | $0.00 |
| 2237 | $960.00 | $205.50 | $277.95 | | | E | $1,443.45 | $0.00 |
| 1733 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 2230 | $480.00 | $0.00 | $788.55 | | | E | $1,268.55 | $0.00 |
| 1801 | $480.00 | $0.00 | $295.20 | | | E | $775.20 | $0.00 |
| 1910 | $480.00 | $0.00 | $854.40 | | | E | $1,334.40 | $0.00 |
| 1702 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 1322 | $1,344.00 | $736.26 | $662.34 | | | E | $2,742.60 | $0.00 |
| 1912 | $1,280.00 | $107.40 | $348.60 | | | E | $1,736.00 | $0.00 |
| 2258 | $480.00 | $0.00 | $892.65 | | | E | $1,372.65 | $0.00 |
| 1053 | $960.00 | $105.30 | $750.00 | | | E | $1,815.30 | $0.00 |
| 1754 | $960.00 | $170.25 | $359.25 | | | E | $1,489.50 | $0.00 |
| 1458 | $480.00 | $0.00 | $521.55 | | | E | $1,001.55 | $0.00 |
| 1099 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 2433 | $960.00 | $105.30 | $227.40 | | | E | $1,292.70 | $0.00 |
| 1568 | $480.00 | $0.00 | $858.30 | | | E | $1,338.30 | $0.00 |
| 1892 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 2531 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 |
| 2432 | $1,088.00 | $85.34 | $235.96 | | | E | $1,409.30 | $0.00 |
| 2360 | $1,088.00 | $102.51 | $115.26 | | | E | $1,305.77 | $0.00 |
| 1954 | $1,120.00 | $117.25 | $465.33 | | | E | $1,702.58 | $0.00 |
| 1499 | $1,120.00 | $135.10 | $79.28 | | | E | $1,334.38 | $0.00 |
| 2215 | $480.00 | $0.00 | $330.30 | | | E | $810.30 | $0.00 |
| 2208 | $960.00 | $100.20 | $583.65 | | | E | $1,643.85 | $0.00 |
| 1625 | $480.00 | $0.00 | $417.90 | | | E | $897.90 | $0.00 |
| 1025 | $1,056.00 | $841.83 | $1,221.00 | | | E | $3,118.83 | $0.00 |
| 1040 | $1,216.00 | $235.22 | $950.00 | $600.00 | | E | $3,001.22 | $0.00 |
| 2484 | $480.00 | $0.00 | $57.00 | | | E | $537.00 | $0.00 |
| 1413 | $1,072.00 | $123.28 | $1,239.50 | | | E | $2,434.78 | $0.00 |
| 1870 | $1,088.00 | $113.39 | $809.37 | | | E | $2,010.76 | $0.00 |
| 1391 | $1,472.00 | $700.12 | $1,150.00 | | | E | $3,322.12 | $0.00 |
| 1975 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 2265 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 1685 | $1,280.00 | $140.40 | $843.00 | | | E | $2,263.40 | $0.00 |
| 2451 | $1,024.00 | $213.60 | $203.52 | | | E | $1,441.12 | $0.00 |
| 1560 | $1,088.00 | $358.19 | $850.00 | | | E | $2,296.19 | $0.00 |
| 1731 | $1,056.00 | $385.61 | $476.36 | | | E | $1,917.96 | $0.00 |
| 2506 | $464.00 | $0.00 | $29.00 | | | E | $493.00 | $0.00 |
| 2506 | $960.00 | $99.90 | $25.05 | | | E | $1,084.95 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1632 | $480.00 | $0.00 | $891.45 | | E | $1,371.45 | $0.00 |
| 1222 | $1,056.00 | $386.10 | $366.30 | | E | $1,808.40 | $0.00 |
| 1569 | $1,024.00 | $407.04 | $800.00 | | E | $2,231.04 | $0.00 |
| 2226 | $1,243.52 | $790.61 | $1,256.54 | | E | $3,290.66 | $0.00 |
| 1570 | $480.00 | $0.00 | $471.30 | | E | $951.30 | $0.00 |
| 1906 | $1,280.00 | $233.60 | $954.60 | | E | $2,468.20 | $0.00 |
| 1030 | $480.00 | $0.00 | $739.65 | | E | $1,219.65 | $0.00 |
| 2518 | $960.00 | $99.90 | $25.05 | | E | $1,084.95 | $0.00 |
| 1716 | $480.00 | $0.00 | $972.30 | | E | $1,452.30 | $0.00 |
| 1185 | $480.00 | $0.00 | $693.15 | | E | $1,173.15 | $0.00 |
| 2047 | $480.00 | $0.00 | $291.90 | | E | $771.90 | $0.00 |
| 1510 | $528.00 | $0.00 | $33.00 | | E | $561.00 | $0.00 |
| 2393 | $1,024.00 | $192.48 | $365.12 | | E | $1,581.60 | $0.00 |
| 1881 | $480.00 | $0.00 | $60.75 | | E | $540.75 | $0.00 |
| 2396 | $960.00 | $60.45 | $344.85 | | E | $1,365.30 | $0.00 |
| 1496 | $1,056.00 | $288.26 | $789.69 | | E | $2,133.95 | $0.00 |
| 1987 | $1,056.00 | $468.11 | $950.07 | | E | $2,474.18 | $0.00 |
| 2455 | $480.00 | $0.00 | $106.20 | | E | $586.20 | $0.00 |
| 1353 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 2500 | $960.00 | $100.05 | $30.00 | | E | $1,090.05 | $0.00 |
| 1869 | $1,056.00 | $467.61 | $825.00 | | E | $2,348.61 | $0.00 |
| 1673 | $992.00 | $131.13 | $722.46 | | E | $1,845.59 | $0.00 |
| 2137 | $1,120.00 | $221.90 | $798.53 | | E | $2,140.43 | $0.00 |
| 1225 | $1,072.00 | $1,485.56 | $843.36 | | E | $3,400.92 | $0.00 |
| 1856 | $928.00 | $290.44 | $304.79 | | E | $1,523.23 | $0.00 |
| 1514 | $1,056.00 | $180.51 | $825.00 | | E | $2,061.51 | $0.00 |
| 2447 | $960.00 | $200.25 | $191.25 | | E | $1,351.50 | $0.00 |
| 2401 | $480.00 | $0.00 | $115.50 | | E | $595.50 | $0.00 |
| 1024 | $1,024.00 | $213.60 | $582.40 | | E | $1,820.00 | $0.00 |
| 1522 | $1,072.00 | $217.42 | $701.66 | | E | $1,991.07 | $0.00 |
| 2028 | $480.00 | $0.00 | $333.90 | $640.00 | E | $1,453.90 | $0.00 |
| 2461 | $1,024.00 | $213.60 | $157.92 | | E | $1,395.52 | $0.00 |
| 1242 | $1,040.00 | $71.34 | $55.09 | $620.00 | E | $1,786.43 | $0.00 |
| 2427 | $992.00 | $258.70 | $245.83 | | E | $1,496.53 | $0.00 |
| 1059 | $640.00 | $0.00 | $734.60 | | E | $1,374.60 | $0.00 |
| 1523 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 1898 | $480.00 | $0.00 | $406.20 | | E | $886.20 | $0.00 |
| 2478 | $1,024.00 | $160.16 | $102.40 | | E | $1,286.56 | $0.00 |
| 2149 | $928.00 | $314.65 | $369.90 | | E | $1,612.55 | $0.00 |
| 2143 | $1,056.00 | $413.82 | $571.89 | | E | $2,041.71 | $0.00 |
| 1915 | $960.00 | $175.35 | $750.00 | | E | $1,885.35 | $0.00 |
| 2092 | $480.00 | $0.00 | $1,078.05 | | E | $1,558.05 | $0.00 |
| 2395 | $1,168.00 | $225.57 | $234.33 | | E | $1,627.90 | $0.00 |
| 1705 | $960.00 | $304.35 | $750.00 | | E | $2,014.35 | $0.00 |
| 1046 | $480.00 | $0.00 | $573.15 | | E | $1,053.15 | $0.00 |
| 1924 | $480.00 | $0.00 | $304.95 | | E | $784.95 | $0.00 |
| 1418 | $480.00 | $0.00 | $437.25 | | E | $917.25 | $0.00 |
| 2389 | $1,024.00 | $0.00 | $155.52 | | E | $1,179.52 | $0.00 |
| 2534 | $1,280.00 | $100.00 | $33.40 | | E | $1,413.40 | $0.00 |
| 2388 | $1,056.00 | $149.00 | $376.04 | | E | $1,581.03 | $0.00 |
| 1804 | $480.00 | $0.00 | $213.60 | | E | $693.60 | $0.00 |
| 1722 | $480.00 | $0.00 | $687.30 | | E | $1,167.30 | $0.00 |
| 1993 | $480.00 | $0.00 | $897.15 | | E | $1,377.15 | $0.00 |
| 2545 | $960.00 | $99.90 | $25.05 | | E | $1,084.95 | $0.00 |
| 1119 | $1,600.00 | $201.50 | $1,250.00 | | E | $3,051.50 | $0.00 |
| 2508 | $960.00 | $99.90 | $25.05 | | E | $1,084.95 | $0.00 |
| 2548 | $960.00 | $0.00 | $25.05 | | E | $985.05 | $0.00 |
| 2119 | $480.00 | $0.00 | $1,086.30 | | E | $1,566.30 | $0.00 |
| 1844 | $480.00 | $0.00 | $497.25 | | E | $977.25 | $0.00 |
| 2154 | $480.00 | $0.00 | $30.00 | | E | $510.00 | $0.00 |
| 1007 | $480.00 | $0.00 | $652.65 | | E | $1,132.65 | $0.00 |
| 2532 | $960.00 | $0.00 | $15.00 | | E | $975.00 | $0.00 |
| 2540 | $960.00 | $75.00 | $25.05 | | E | $1,060.05 | $0.00 |
| 2095 | $480.00 | $0.00 | $472.80 | | E | $952.80 | $0.00 |
| 1934 | $480.00 | $0.00 | $146.55 | | E | $626.55 | $0.00 |
| 1761 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 1449 | $480.00 | $0.00 | $640.05 | | E | $1,120.05 | $0.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2284 | $512.00 | $0.00 | $671.36 | | | E | | $1,183.36 | $0.00 |
| 2439 | $1,024.00 | $240.32 | $246.08 | | | E | | $1,510.40 | $0.00 |
| 1536 | $480.00 | $0.00 | $526.95 | | | E | | $1,006.95 | $0.00 |
| 2331 | $1,024.00 | $347.20 | $427.20 | | | E | | $1,798.40 | $0.00 |
| 1871 | $1,280.00 | $167.40 | $356.20 | | | E | | $1,803.60 | $0.00 |
| 2399 | $480.00 | $0.00 | $114.15 | | | E | | $594.15 | $0.00 |
| 1961 | $480.00 | $0.00 | $943.20 | | | E | | $1,423.20 | $0.00 |
| 2013 | $512.00 | $0.00 | $554.72 | | | E | | $1,066.72 | $0.00 |
| 2466 | $960.00 | $200.25 | $174.00 | | | E | | $1,334.25 | $0.00 |
| 2365 | $480.00 | $0.00 | $248.25 | | | E | | $728.25 | $0.00 |
| 2051 | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 1748 | $1,088.00 | $323.00 | $640.73 | | | E | | $2,051.73 | $0.00 |
| 2177 | $1,056.00 | $221.60 | $92.90 | | | E | | $1,370.49 | $0.00 |
| 1143 | $480.00 | $0.00 | $681.15 | | | E | | $1,161.15 | $0.00 |
| 2474 | $1,600.00 | $292.00 | $216.25 | | | E | | $2,108.25 | $0.00 |
| 1285 | $480.00 | $0.00 | $444.00 | | | E | | $924.00 | $0.00 |
| 2394 | $1,040.00 | $325.49 | $330.53 | | | E | | $1,696.01 | $0.00 |
| 1803 | $480.00 | $0.00 | $206.70 | | | E | | $686.70 | $0.00 |
| 2379 | $480.00 | $0.00 | $97.35 | | | E | | $577.35 | $0.00 |
| 2282 | $480.00 | $0.00 | $821.10 | | | E | | $1,301.10 | $0.00 |
| 1095 | $992.00 | $388.12 | $385.02 | | | E | | $1,765.14 | $0.00 |
| 1957 | $480.00 | $0.00 | $998.70 | | | E | | $1,478.70 | $0.00 |
| 2035 | $1,072.00 | $274.37 | $243.88 | | | E | | $1,590.25 | $0.00 |
| 1022 | $1,088.00 | $294.27 | $982.43 | | | E | | $2,364.70 | $0.00 |
| 2354 | $960.00 | $300.45 | $364.20 | | | E | | $1,624.65 | $0.00 |
| 2218 | $480.00 | $0.00 | $65.25 | | | E | | $545.25 | $0.00 |
| 2413 | $960.00 | $130.35 | $267.15 | | | E | | $1,357.50 | $0.00 |
| 1347 | $960.00 | $425.10 | $750.00 | | | E | | $2,135.10 | $0.00 |
| 1488 | $480.00 | $0.00 | $130.95 | | | E | | $610.95 | $0.00 |
| 1581 | $1,280.00 | $247.60 | $555.20 | | | E | | $2,082.80 | $0.00 |
| 1072 | $480.00 | $0.00 | $958.05 | | | E | | $1,438.05 | $0.00 |
| 1980 | $480.00 | $0.00 | $277.50 | | | E | | $757.50 | $0.00 |
| 2118 | $960.00 | $148.65 | $750.00 | | | E | | $1,858.65 | $0.00 |
| 1650 | $480.00 | $0.00 | $1,016.55 | | | E | | $1,496.55 | $0.00 |
| 1724 | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 1428 | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 2179 | $480.00 | $0.00 | $256.95 | | | E | | $736.95 | $0.00 |
| 2514 | $1,120.00 | $116.55 | $29.23 | | | E | | $1,265.78 | $0.00 |
| 2533 | $960.00 | $0.00 | $15.00 | | | E | | $975.00 | $0.00 |
| 2020 | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 2336 | $512.00 | $0.00 | $234.88 | | | E | | $746.88 | $0.00 |
| 2493 | $960.00 | $300.24 | $73.35 | | | E | | $1,333.59 | $0.00 |
| 2290 | $480.00 | $0.00 | $1,039.65 | | | E | | $1,519.65 | $0.00 |
| 2537 | $1,056.00 | $82.50 | $27.56 | | | E | | $1,166.06 | $0.00 |
| 2435 | $480.00 | $0.00 | $102.75 | | | E | | $582.75 | $0.00 |
| 1357 | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 2547 | $960.00 | $75.00 | $25.05 | | | E | | $1,060.05 | $0.00 |
| 2499 | $1,024.00 | $133.44 | $40.96 | | | E | | $1,198.40 | $0.00 |
| 1408 | $480.00 | $0.00 | $410.55 | | | E | | $890.55 | $0.00 |
| 1215 | $480.00 | $0.00 | $207.75 | | $690.00 | E | | $1,377.75 | $0.00 |
| 1878 | $1,104.00 | $194.75 | $1,239.59 | | | E | | $2,538.34 | $0.00 |
| 2517 | $960.00 | $99.90 | $25.05 | | | E | | $1,084.95 | $0.00 |
| 1277 | $1,104.00 | $184.75 | $535.96 | | | E | | $1,824.71 | $0.00 |
| 2412 | $960.00 | $155.40 | $299.85 | | | E | | $1,415.25 | $0.00 |
| 2148 | $480.00 | $0.00 | $30.00 | | | E | | $510.00 | $0.00 |
| 2385 | $480.00 | $0.00 | $88.05 | | | E | | $568.05 | $0.00 |
| 1088 | $1,600.00 | $572.75 | $1,250.00 | | | E | | $3,422.75 | $0.00 |
| 1651 | $960.00 | $360.45 | $750.00 | | | E | | $2,070.45 | $0.00 |
| 2039 | $928.00 | $314.65 | $350.61 | | | E | | $1,593.26 | $0.00 |
| 1565 | $1,280.00 | $281.00 | $467.20 | | | E | | $2,028.20 | $0.00 |
| 1855 | $480.00 | $0.00 | $647.10 | | | E | | $1,127.10 | $0.00 |
| 1520 | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 2368 | $992.00 | $108.97 | $371.07 | | | E | | $1,472.04 | $0.00 |
| 1202 | $480.00 | $0.00 | $956.55 | | | E | | $1,436.55 | $0.00 |
| 2255 | $480.00 | $0.00 | $1,063.20 | | | E | | $1,543.20 | $0.00 |
| 2423 | $1,024.00 | $240.32 | $252.00 | | $640.00 | E | | $2,156.32 | $0.00 |
| 2334 | $1,024.00 | $347.20 | $107.20 | | $680.00 | E | | $2,158.40 | $0.00 |

| ID | | Col1 | Col2 | Col3 | | | E | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1784 | | $1,088.00 | $550.46 | $767.72 | | | E | | $2,406.18 | $0.00 |
| 2113 | | $960.00 | $202.20 | $750.00 | | | E | | $1,912.20 | $0.00 |
| 2111 | | $1,088.00 | $242.76 | $788.97 | | | E | | $2,119.73 | $0.00 |
| 1156 | | $992.00 | $531.96 | $775.00 | | | E | | $2,298.96 | $0.00 |
| 2038 | | $480.00 | $0.00 | $753.60 | | | E | | $1,233.60 | $0.00 |
| 2176 | | $1,088.00 | $113.90 | $428.40 | | | E | | $1,630.30 | $0.00 |
| 1843 | | $960.00 | $485.70 | $750.00 | | | E | | $2,195.70 | $0.00 |
| 1845 | | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 1317 | | $480.00 | $0.00 | $112.65 | | | E | | $592.65 | $0.00 |
| 2087 | | $480.00 | $0.00 | $867.60 | | | E | | $1,347.60 | $0.00 |
| 1666 | | $480.00 | $0.00 | $870.45 | | | E | | $1,350.45 | $0.00 |
| 1500 | | $1,129.60 | $217.10 | $1,306.10 | | | E | | $2,652.80 | $0.00 |
| 1463 | | $1,129.60 | $1,147.25 | $1,306.10 | | | E | | $3,582.95 | $0.00 |
| 1738 | | $960.00 | $241.05 | $750.00 | | | E | | $1,951.05 | $0.00 |
| 2400 | | $512.00 | $0.00 | $210.88 | | | E | | $722.88 | $0.00 |
| 2295 | | $1,072.00 | $201.67 | $1,041.85 | | | E | | $2,315.52 | $0.00 |
| 2520 | | $960.00 | $0.00 | $15.00 | | | E | | $975.00 | $0.00 |
| 2480 | | $992.00 | $155.16 | $118.73 | | | E | | $1,265.89 | $0.00 |
| 2294 | | $928.00 | $314.65 | $347.71 | | | E | | $1,590.36 | $0.00 |
| 1704 | | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 1798 | | $480.00 | $0.00 | $297.90 | | | E | | $777.90 | $0.00 |
| 1528 | | $480.00 | $0.00 | $421.20 | | | E | | $901.20 | $0.00 |
| 1840 | | $480.00 | $0.00 | $1,089.00 | | | E | | $1,569.00 | $0.00 |
| 1479 | | $1,280.00 | $468.80 | $1,212.20 | | | E | | $2,961.00 | $0.00 |
| 1953 | | $480.00 | $0.00 | $278.10 | | | E | | $758.10 | $0.00 |
| 2546 | | $960.00 | $0.00 | $25.05 | | | E | | $985.05 | $0.00 |
| 2201 | | $480.00 | $0.00 | $226.35 | | | E | | $706.35 | $0.00 |
| 1886 | | $1,104.00 | $355.35 | $1,276.50 | | | E | | $2,735.85 | $0.00 |
| 1758 | | $480.00 | $0.00 | $260.25 | | | E | | $740.25 | $0.00 |
| 2205 | | $480.00 | $0.00 | $949.80 | | | E | | $1,429.80 | $0.00 |
| 2085 | | $480.00 | $0.00 | $684.90 | | | E | | $1,164.90 | $0.00 |
| 1668 | | $480.00 | $0.00 | $881.70 | | | E | | $1,361.70 | $0.00 |
| 2060 | | $1,088.00 | $238.17 | $877.71 | | | E | | $2,203.88 | $0.00 |
| 1384 | | $1,312.00 | $684.50 | $804.83 | | | E | | $2,801.33 | $0.00 |
| 2112 | | $960.00 | $179.70 | $750.00 | | | E | | $1,889.70 | $0.00 |
| 1639 | | $480.00 | $0.00 | $84.75 | | | E | | $564.75 | $0.00 |
| 2489 | | $480.00 | $0.00 | $56.85 | | | E | | $536.85 | $0.00 |
| 2358 | | $480.00 | $0.00 | $152.85 | | | E | | $632.85 | $0.00 |
| 1908 | | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 1773 | | $480.00 | $0.00 | $431.55 | | | E | | $911.55 | $0.00 |
| 2297 | | $480.00 | $0.00 | $578.70 | | | E | | $1,058.70 | $0.00 |
| 2000 | | $1,129.60 | $696.47 | $304.64 | | | E | | $2,130.71 | $0.00 |
| 1100 | | $480.00 | $0.00 | $893.70 | | | E | | $1,373.70 | $0.00 |
| 2109 | | $960.00 | $420.45 | $750.00 | | | E | | $2,130.45 | $0.00 |
| 2338 | | $480.00 | $0.00 | $223.50 | | | E | | $703.50 | $0.00 |
| 1089 | | $480.00 | $0.00 | $439.20 | $600.00 | | E | | $1,519.20 | $0.00 |
| 2016 | | $960.00 | $99.45 | $750.00 | | | E | | $1,809.45 | $0.00 |
| 1114 | | $960.00 | $175.80 | $750.00 | | | E | | $1,885.80 | $0.00 |
| 1662 | | $1,104.00 | $539.75 | $1,276.50 | | | E | | $2,920.25 | $0.00 |
| 1929 | | $480.00 | $0.00 | $127.65 | | | E | | $607.65 | $0.00 |
| 2269 | | $1,056.00 | $179.36 | $740.69 | | | E | | $1,976.04 | $0.00 |
| 1859 | | $480.00 | $0.00 | $138.60 | | | E | | $618.60 | $0.00 |
| 1895 | | $480.00 | $0.00 | $176.85 | | | E | | $656.85 | $0.00 |
| 1837 | | $480.00 | $0.00 | $490.80 | | | E | | $970.80 | $0.00 |
| 1525 | | $480.00 | $0.00 | $759.00 | | | E | | $1,239.00 | $0.00 |
| 2340 | | $992.00 | $310.47 | $237.77 | | | E | | $1,540.24 | $0.00 |
| 1796 | | $480.00 | $0.00 | $670.65 | | | E | | $1,150.65 | $0.00 |
| 1282 | | $1,024.00 | $1,040.00 | $873.28 | | | E | | $2,937.28 | $0.00 |
| 1443 | | $1,072.00 | $174.20 | $956.43 | | | E | | $2,202.63 | $0.00 |
| 2521 | | $960.00 | $99.90 | $25.05 | | | E | | $1,084.95 | $0.00 |
| 2549 | | $960.00 | $0.00 | $15.00 | | | E | | $975.00 | $0.00 |
| 1272 | | $1,184.00 | $230.88 | $925.00 | | | E | | $2,339.88 | $0.00 |
| 2105 | | $480.00 | $0.00 | $1,110.00 | | | E | | $1,590.00 | $0.00 |
| 1818 | | $480.00 | $0.00 | $121.50 | | | E | | $601.50 | $0.00 |
| 1675 | | $1,142.40 | $596.01 | $801.29 | | | E | | $2,539.70 | $0.00 |
| 1230 | | $480.00 | $0.00 | $297.30 | | | E | | $777.30 | $0.00 |
| 1448 | | $480.00 | $0.00 | $196.05 | | | E | | $676.05 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1806 | $928.00 | $290.44 | $351.34 | | E | $1,569.77 | $0.00 |
| 2239 | $1,280.00 | $399.80 | $93.40 | | E | $1,773.20 | $0.00 |
| 2454 | $960.00 | $0.00 | $117.00 | | E | $1,077.00 | $0.00 |
| 2021 | $960.00 | $0.00 | $249.60 | | E | $1,209.60 | $0.00 |
| 2098 | $480.00 | $0.00 | $280.65 | $600.00 | E | $1,360.65 | $0.00 |
| 2390 | $960.00 | $300.45 | $354.00 | | E | $1,614.45 | $0.00 |
| 1782 | $480.00 | $0.00 | $269.25 | | E | $749.25 | $0.00 |
| 1645 | $1,056.00 | $440.72 | $587.73 | | E | $2,084.45 | $0.00 |
| 1948 | $1,120.00 | $525.88 | $875.00 | $660.00 | E | $3,180.88 | $0.00 |
| 2431 | $1,056.00 | $143.39 | $294.20 | | E | $1,493.58 | $0.00 |
| 2541 | $960.00 | $0.00 | $15.00 | | E | $975.00 | $0.00 |
| 1729 | $480.00 | $0.00 | $792.60 | | E | $1,272.60 | $0.00 |
| 1933 | $1,088.00 | $248.37 | $850.00 | | E | $2,186.37 | $0.00 |
| 1642 | $1,024.00 | $43.36 | $215.36 | | E | $1,282.72 | $0.00 |
| 2034 | $1,280.00 | $114.00 | $340.00 | | E | $1,734.00 | $0.00 |
| 1039 | $1,408.00 | $845.68 | $930.60 | | E | $3,184.28 | $0.00 |
| 1086 | $512.00 | $0.00 | $358.88 | | E | $870.88 | $0.00 |
| 1706 | $1,280.00 | $303.20 | $1,000.00 | | E | $2,583.20 | $0.00 |
| 1598 | $480.00 | $0.00 | $809.40 | | E | $1,289.40 | $0.00 |
| 1401 | $480.00 | $0.00 | $882.60 | | E | $1,362.60 | $0.00 |
| 2530 | $960.00 | $99.90 | $25.05 | | E | $1,084.95 | $0.00 |
| 1637 | $960.00 | $630.15 | $750.00 | | E | $2,340.15 | $0.00 |
| 1669 | $1,056.00 | $172.59 | $572.06 | | E | $1,800.65 | $0.00 |
| 1067 | $480.00 | $0.00 | $272.85 | | E | $752.85 | $0.00 |
| 1445 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 1799 | $1,104.00 | $1,031.55 | $1,270.12 | | E | $3,405.67 | $0.00 |
| 1717 | $480.00 | $0.00 | $908.70 | | E | $1,388.70 | $0.00 |
| 1762 | $480.00 | $0.00 | $799.65 | | E | $1,279.65 | $0.00 |
| 2528 | $960.00 | $99.90 | $25.05 | | E | $1,084.95 | $0.00 |
| 1905 | $480.00 | $0.00 | $285.60 | | E | $765.60 | $0.00 |
| 1412 | $1,184.00 | $229.22 | $206.83 | | E | $1,620.05 | $0.00 |
| 1783 | $960.00 | $350.55 | $197.40 | | E | $1,507.95 | $0.00 |
| 2076 | $480.00 | $0.00 | $274.35 | | E | $754.35 | $0.00 |
| 2415 | $480.00 | $0.00 | $180.75 | | E | $660.75 | $0.00 |
| 1920 | $1,216.00 | $329.65 | $907.82 | | E | $2,453.47 | $0.00 |
| 1232 | $1,024.00 | $208.64 | $800.00 | | E | $2,032.64 | $0.00 |
| 1107 | $992.00 | $300.86 | $403.00 | $620.00 | E | $2,315.86 | $0.00 |
| 2304 | $992.00 | $120.28 | $419.74 | | E | $1,532.02 | $0.00 |
| 1690 | $480.00 | $0.00 | $881.85 | | E | $1,361.85 | $0.00 |
| 1123 | $480.00 | $0.00 | $906.15 | | E | $1,386.15 | $0.00 |
| 2463 | $960.00 | $200.25 | $184.80 | | E | $1,345.05 | $0.00 |
| 1664 | $1,600.00 | $950.25 | $1,250.00 | | E | $3,800.25 | $0.00 |
| 1977 | $480.00 | $0.00 | $508.95 | | E | $988.95 | $0.00 |
| 1708 | $960.00 | $365.70 | $750.00 | | E | $2,075.70 | $0.00 |
| 1853 | $1,056.00 | $726.50 | $825.00 | | E | $2,607.50 | $0.00 |
| 1077 | $480.00 | $0.00 | $488.25 | | E | $968.25 | $0.00 |
| 2352 | $480.00 | $0.00 | $194.10 | | E | $674.10 | $0.00 |
| 2355 | $480.00 | $0.00 | $305.85 | | E | $785.85 | $0.00 |
| 1857 | $1,056.00 | $638.72 | $1,221.00 | | E | $2,915.72 | $0.00 |
| 1409 | $1,072.00 | $335.50 | $407.36 | | E | $1,814.86 | $0.00 |
| 2243 | $1,176.32 | $110.28 | $463.73 | | E | $1,750.33 | $0.00 |
| 2214 | $480.00 | $0.00 | $1,012.05 | | E | $1,492.05 | $0.00 |
| 2483 | $480.00 | $0.00 | $54.90 | | E | $534.90 | $0.00 |
| 2513 | $960.00 | $99.90 | $25.05 | | E | $1,084.95 | $0.00 |
| 1760 | $480.00 | $0.00 | $399.00 | | E | $879.00 | $0.00 |
| 2293 | $1,088.00 | $451.18 | $1,148.18 | | E | $2,687.36 | $0.00 |
| 2465 | $480.00 | $0.00 | $117.90 | | E | $597.90 | $0.00 |
| 1672 | $480.00 | $0.00 | $737.10 | | E | $1,217.10 | $0.00 |
| 1624 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 1440 | $480.00 | $0.00 | $46.20 | | E | $526.20 | $0.00 |
| 2253 | $1,104.00 | $103.67 | $1,276.50 | | E | $2,484.17 | $0.00 |
| 1684 | $1,280.00 | $467.40 | $608.00 | | E | $2,355.40 | $0.00 |
| 2236 | $480.00 | $0.00 | $811.05 | | E | $1,291.05 | $0.00 |
| 1110 | $960.00 | $320.40 | $750.00 | | E | $2,030.40 | $0.00 |
| 2212 | $960.00 | $324.45 | $750.00 | | E | $2,034.45 | $0.00 |
| 1200 | $480.00 | $0.00 | $363.15 | | E | $843.15 | $0.00 |
| 2479 | $480.00 | $0.00 | $30.60 | | E | $510.60 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1274 | $1,056.00 | $210.05 | $825.00 | | E | $2,091.05 | $0.00 |
| 2292 | $1,280.00 | $114.00 | $188.40 | | E | $1,582.40 | $0.00 |
| 2094 | $1,280.00 | $274.00 | $331.80 | | E | $1,885.80 | $0.00 |
| 1465 | $480.00 | $0.00 | $347.40 | | E | $827.40 | $0.00 |
| 1042 | $960.00 | $250.35 | $750.00 | | E | $1,960.35 | $0.00 |
| 2345 | $960.00 | $60.45 | $364.50 | | E | $1,384.95 | $0.00 |
| 2103 | $1,280.00 | $781.20 | $753.20 | | E | $2,814.40 | $0.00 |
| 2367 | $480.00 | $0.00 | $191.55 | | E | $671.55 | $0.00 |
| 2539 | $960.00 | $75.00 | $25.05 | | E | $1,060.05 | $0.00 |
| 2303 | $960.00 | $114.60 | $750.00 | | E | $1,824.60 | $0.00 |
| 2344 | $1,024.00 | $320.48 | $395.52 | | E | $1,740.00 | $0.00 |
| 1616 | $480.00 | $0.00 | $1,051.65 | | E | $1,531.65 | $0.00 |
| 2462 | $960.00 | $200.25 | $201.60 | | E | $1,361.85 | $0.00 |
| 1647 | $960.00 | $125.70 | $750.00 | | E | $1,835.70 | $0.00 |
| 1455 | $480.00 | $0.00 | $360.75 | | E | $840.75 | $0.00 |
| 1509 | $1,072.00 | $377.88 | $649.23 | | E | $2,099.11 | $0.00 |
| 2443 | $960.00 | $225.30 | $229.05 | | E | $1,414.35 | $0.00 |
| 1553 | $1,600.00 | $650.50 | $854.25 | | E | $3,104.75 | $0.00 |
| 1142 | $1,088.00 | $227.12 | $1,258.00 | $600.00 | E | $3,173.12 | $0.00 |
| 2074 | $480.00 | $0.00 | $785.25 | | E | $1,265.25 | $0.00 |
| 2078 | $960.00 | $229.95 | $750.00 | $600.00 | E | $2,539.95 | $0.00 |
| 2348 | $960.00 | $300.45 | $370.05 | | E | $1,630.50 | $0.00 |
| 1450 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 2306 | $960.00 | $370.80 | $552.15 | | E | $1,882.95 | $0.00 |
| 2542 | $960.00 | $75.00 | $25.05 | | E | $1,060.05 | $0.00 |
| 2289 | $480.00 | $0.00 | $394.35 | | E | $874.35 | $0.00 |
| 2099 | $960.00 | $105.90 | $655.35 | | E | $1,721.25 | $0.00 |
| 1212 | $960.00 | $96.00 | $510.00 | | E | $1,566.00 | $0.00 |
| 1964 | $960.00 | $432.00 | $673.35 | | E | $2,065.35 | $0.00 |
| 1060 | $1,104.00 | $132.65 | $1,139.71 | | E | $2,376.36 | $0.00 |
| 2339 | $480.00 | $0.00 | $254.55 | | E | $734.55 | $0.00 |
| 1802 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 2044 | $480.00 | $0.00 | $550.95 | | E | $1,030.95 | $0.00 |
| 1583 | $480.00 | $0.00 | $320.55 | $600.00 | E | $1,400.55 | $0.00 |
| 2485 | $992.00 | $155.16 | $52.55 | | E | $1,199.70 | $0.00 |
| 2381 | $480.00 | $0.00 | $215.55 | | E | $695.55 | $0.00 |
| 1371 | $480.00 | $0.00 | $435.30 | | E | $915.30 | $0.00 |
| 1679 | $480.00 | $0.00 | $481.05 | | E | $961.05 | $0.00 |
| 1824 | $1,104.00 | $217.18 | $1,276.50 | | E | $2,597.68 | $0.00 |
| 1296 | $0.00 | $1,101.60 | $1,421.10 | $1,000.00 | E | $3,522.70 | $0.00 |
| 1945 | $960.00 | $110.40 | $459.45 | | E | $1,529.85 | $0.00 |
| 1049 | $1,280.00 | $253.80 | $476.80 | | E | $2,010.60 | $0.00 |
| 2382 | $1,024.00 | $192.48 | $357.44 | | E | $1,573.92 | $0.00 |
| 1976 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 1275 | $1,056.00 | $512.49 | $1,221.00 | | E | $2,789.49 | $0.00 |
| 1698 | $480.00 | $0.00 | $746.40 | | E | $1,226.40 | $0.00 |
| 1876 | $960.00 | $105.60 | $673.35 | | E | $1,738.95 | $0.00 |
| 2291 | $480.00 | $0.00 | $761.10 | | E | $1,241.10 | $0.00 |
| 2211 | $480.00 | $0.00 | $782.85 | | E | $1,262.85 | $0.00 |
| 2157 | $960.00 | $626.40 | $750.00 | | E | $2,336.40 | $0.00 |
| 2467 | $992.00 | $206.93 | $138.26 | | E | $1,337.19 | $0.00 |
| 2299 | $480.00 | $0.00 | $447.30 | | E | $927.30 | $0.00 |
| 1714 | $1,120.00 | $281.23 | $536.90 | | E | $1,938.13 | $0.00 |
| 1431 | $480.00 | $0.00 | $590.85 | | E | $1,070.85 | $0.00 |
| 1128 | $480.00 | $0.00 | $201.60 | | E | $681.60 | $0.00 |
| 1297 | $1,104.00 | $217.35 | $1,185.59 | | E | $2,506.94 | $0.00 |
| 2190 | $480.00 | $0.00 | -$55.35 | | E | $424.65 | $0.00 |
| 2392 | $1,024.00 | $320.48 | $329.12 | | E | $1,673.60 | $0.00 |
| 1817 | $480.00 | $0.00 | $659.70 | | E | $1,139.70 | $0.00 |
| 2407 | $480.00 | $0.00 | $177.60 | | E | $657.60 | $0.00 |
| 1192 | $480.00 | $0.00 | $246.90 | | E | $726.90 | $0.00 |
| 2446 | $1,056.00 | $247.83 | $214.17 | | E | $1,518.00 | $0.00 |
| 2283 | $480.00 | $0.00 | $681.45 | | E | $1,161.45 | $0.00 |
| 1364 | $480.00 | $0.00 | $285.60 | | E | $765.60 | $0.00 |
| 1735 | $480.00 | $0.00 | $1,110.00 | | E | $1,590.00 | $0.00 |
| 1102 | $960.00 | $442.20 | $433.35 | | E | $1,835.55 | $0.00 |
| 1244 | $480.00 | $0.00 | $391.95 | | E | $871.95 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1158 | $960.00 | $175.20 | $513.00 | | | E | $1,648.20 | $0.00 |
| 1480 | $1,024.00 | $0.00 | $310.56 | | | E | $1,334.56 | $0.00 |
| 1080 | $1,072.00 | $785.58 | $1,239.50 | | | E | $3,097.08 | $0.00 |
| 2397 | $960.00 | $60.45 | $343.95 | | | E | $1,364.40 | $0.00 |
| 1159 | $1,120.00 | $374.15 | $1,295.00 | | $1,400.00 | E | $4,189.15 | $0.00 |
| 1276 | $1,056.00 | $418.94 | $523.88 | | | E | $1,998.81 | $0.00 |
| 2079 | $480.00 | $0.00 | $708.15 | | | E | $1,188.15 | $0.00 |
| 2464 | $992.00 | $206.93 | $44.80 | | | E | $1,243.72 | $0.00 |
| 1164 | $992.00 | $1,007.50 | $775.00 | | | E | $2,774.50 | $0.00 |
| 1233 | $1,040.00 | $109.36 | $594.91 | | | E | $1,744.28 | $0.00 |
| 1566 | $480.00 | $0.00 | $528.30 | | | E | $1,008.30 | $0.00 |
| 1584 | $960.00 | $100.05 | $513.90 | | | E | $1,573.95 | $0.00 |
| 1495 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 2475 | $1,024.00 | $106.88 | $149.44 | | | E | $1,280.32 | $0.00 |
| 2203 | $960.00 | $169.35 | $723.15 | | | E | $1,852.50 | $0.00 |
| 1776 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 1720 | $1,120.00 | $606.73 | $875.00 | | | E | $2,601.73 | $0.00 |
| 1441 | $1,056.00 | $191.73 | $825.00 | | | E | $2,072.73 | $0.00 |
| 1137 | $960.00 | -$19.95 | $390.00 | | | E | $1,330.05 | $0.00 |
| 2374 | $480.00 | $0.00 | $152.25 | | | E | $632.25 | $0.00 |
| 2160 | $1,280.00 | $213.40 | $1,480.00 | | | E | $2,973.40 | $0.00 |
| 1392 | $480.00 | $0.00 | $695.40 | | | E | $1,175.40 | $0.00 |
| 2371 | $480.00 | $0.00 | $141.30 | | | E | $621.30 | $0.00 |
| 1745 | $480.00 | $0.00 | $900.30 | | | E | $1,380.30 | $0.00 |
| 1643 | $1,056.00 | $110.72 | $457.22 | | | E | $1,623.93 | $0.00 |
| 1562 | $1,104.00 | $673.79 | $1,024.82 | | | E | $2,802.61 | $0.00 |
| 1815 | $480.00 | $0.00 | $772.95 | | | E | $1,252.95 | $0.00 |
| 1239 | $1,472.00 | $254.38 | $899.76 | | | E | $2,626.14 | $0.00 |
| 1842 | $480.00 | $0.00 | $721.95 | | | E | $1,201.95 | $0.00 |
| 1701 | $1,056.00 | $424.05 | $726.66 | | | E | $2,206.71 | $0.00 |
| 2252 | $992.00 | $336.35 | $396.34 | | | E | $1,724.69 | $0.00 |
| 2259 | $992.00 | $336.35 | $392.62 | | | E | $1,720.97 | $0.00 |
| 2347 | $960.00 | $300.45 | $352.35 | | | E | $1,612.80 | $0.00 |
| 2384 | $960.00 | $275.40 | $311.85 | | | E | $1,547.25 | $0.00 |
| 1517 | $480.00 | $0.00 | $354.75 | | | E | $834.75 | $0.00 |
| 1962 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 1326 | $960.00 | $525.90 | $358.20 | | | E | $1,844.10 | $0.00 |
| 1209 | $960.00 | $601.05 | $390.00 | | | E | $1,951.05 | $0.00 |
| 1302 | $960.00 | $550.95 | $510.00 | | | E | $2,020.95 | $0.00 |
| 2505 | $1,056.00 | $110.06 | $33.00 | | | E | $1,199.06 | $0.00 |
| 1385 | $1,536.00 | $272.40 | $1,674.00 | | | E | $3,482.40 | $0.00 |
| 2405 | $480.00 | $0.00 | $211.35 | | | E | $691.35 | $0.00 |
| 2024 | $480.00 | $0.00 | $792.60 | | | E | $1,272.60 | $0.00 |
| 2221 | $480.00 | $75.00 | $268.50 | | | E | $823.50 | $0.00 |
| 2164 | $1,072.00 | $316.41 | $969.83 | | | E | $2,358.23 | $0.00 |
| 1149 | $512.00 | $0.00 | $642.72 | | | E | $1,154.72 | $0.00 |
| 2027 | $480.00 | $0.00 | $792.45 | | | E | $1,272.45 | $0.00 |
| 1170 | $480.00 | $0.00 | $518.40 | | | E | $998.40 | $0.00 |
| 1619 | $480.00 | $0.00 | $218.25 | | | E | $698.25 | $0.00 |
| 1834 | $480.00 | $0.00 | $1,110.00 | | | E | $1,590.00 | $0.00 |
| 2406 | $480.00 | $0.00 | $116.85 | | | E | $596.85 | $0.00 |
| 1404 | $480.00 | $0.00 | $776.55 | | | E | $1,256.55 | $0.00 |
| 1096 | $992.00 | $244.28 | $501.12 | | | E | $1,737.40 | $0.00 |
| **TOTALS FOR H0** | **$415,626.88** | **$78,980.53** | **$292,382.10** | **$0.00** | **$11,750.00** | | **$798,739.51** | **$0.00** Total Hourly |
| 1188 | $0.00 | -$25.20 | $1,400.00 | | | E | $1,374.80 | $0.00 |
| 1091 | $2,426.76 | $1,529.36 | $1,322.72 | | | E | $5,278.84 | $0.00 |
| 1744 | $2,500.00 | $1,156.89 | $1,287.29 | | | E | $4,944.17 | $0.00 |
| 1826 | $2,500.00 | $2,807.11 | $1,438.75 | | | E | $6,745.85 | $0.00 |
| 1734 | $2,600.00 | $482.70 | $2,220.00 | | | E | $5,302.70 | $0.00 |
| 1781 | $2,600.10 | $1,351.80 | $1,145.40 | | $2,400.00 | E | $7,497.30 | $0.00 |
| 1151 | $0.00 | $1,557.00 | $1,409.40 | | | E | $2,966.40 | $0.00 |
| 1097 | $2,600.10 | $483.00 | $1,479.90 | | | E | $4,563.00 | $0.00 |
| 1486 | $2,625.00 | $3,045.87 | $1,501.89 | | $1,225.20 | E | $8,397.95 | $0.00 |
| 1749 | $2,703.75 | $1,808.04 | $1,306.34 | | | E | $5,818.13 | $0.00 |
| 2501 | $2,708.33 | $364.38 | $152.81 | | | E | $3,225.52 | $0.00 |
| 1167 | $0.00 | $2,141.88 | $1,562.50 | | | E | $3,704.38 | $0.00 |
| 1363 | $2,708.35 | $2,121.88 | $1,562.50 | | | E | $6,392.73 | $0.00 |

| ID | | | | | | E/F | | | Note |
|---|---|---|---|---|---|---|---|---|---|
| 1659 | $2,916.67 | $546.49 | $1,579.94 | | | E | $5,043.09 | $0.00 | |
| 1238 | $3,000.00 | $993.94 | $1,731.00 | $55,144.50 | | E | $13,650.00 | | |
| 1238 | $3,000.00 | $993.94 | $1,731.00 | $55,144.50 | | F | | $47,219.44 | Claim over priority |
| 2040 | $3,125.00 | $1,154.32 | $1,118.27 | | | E | $5,397.59 | $0.00 | |
| 1631 | $3,458.34 | $114.83 | $1,862.33 | | | E | $5,435.49 | $0.00 | |
| 2081 | $0.00 | $2,615.45 | $3,023.64 | | | E | $5,639.09 | $0.00 | |
| 1213 | $3,541.67 | $6,741.90 | $1,961.28 | | $3,268.80 | E | $13,650.00 | | |
| 1213 | $3,541.67 | $6,741.90 | $1,961.28 | | $3,268.80 | F | | $1,963.65 | Claim over priority |
| 2171 | $3,750.00 | $757.49 | $1,731.00 | | | E | $6,238.49 | $0.00 | Insider |
| 1018 | $3,750.00 | $6,876.32 | $2,162.50 | | | E | $12,788.82 | $0.00 | Insider |
| 1308 | $3,895.84 | $7,012.20 | $2,247.50 | | | E | $13,155.54 | $0.00 | |
| 1634 | $0.00 | $2,507.37 | $3,557.92 | | | E | $6,065.29 | $0.00 | |
| 1011 | $4,583.34 | $2,320.90 | $2,644.00 | | | E | $9,548.24 | $0.00 | |
| 1229 | $4,687.50 | $685.19 | $2,704.00 | | | E | $8,076.69 | $0.00 | |
| 1066 | $5,208.33 | $6,527.58 | $2,884.32 | | | E | $13,650.00 | | |
| 1066 | $5,208.33 | $6,527.58 | $2,884.32 | | | F | | $970.23 | Claim over priority |
| 2273 | $5,208.34 | $7,692.20 | $3,005.00 | | | E | $13,650.00 | | |
| 2273 | $5,208.34 | $7,692.20 | $3,005.00 | | | F | | $2,255.54 | Claim over priority |
| 2018 | $5,208.34 | $5,809.27 | $4,447.40 | | | E | $13,650.00 | | |
| 2018 | $5,208.34 | $5,809.27 | $4,447.40 | | | F | | $1,815.01 | Claim over priority |
| 1198 | $5,208.34 | $7,691.52 | $3,004.50 | | | E | $13,650.00 | | |
| 1198 | $5,208.34 | $7,691.52 | $3,004.50 | | | F | | $2,254.36 | Claim over priority |
| 1511 | $0.00 | $1,794.38 | $0.00 | | | E | $1,794.38 | $0.00 | |
| 1405 | $5,720.00 | $8,579.34 | $3,300.00 | | | E | $13,650.00 | | |
| 1405 | $5,720.00 | $8,579.34 | $3,300.00 | | | F | | $3,949.34 | Claim over priority |
| 1342 | $5,720.00 | $11,880.00 | $3,300.00 | | | E | $13,650.00 | | Insider |
| 1342 | $5,720.00 | $11,880.00 | $3,300.00 | | | F | | $7,250.00 | Claim over priority |
| 1736 | $6,000.00 | $12,461.40 | $3,461.50 | | | E | $13,650.00 | | Insider |
| 1736 | $6,000.00 | $12,461.40 | $3,461.50 | | | F | | $8,272.90 | Claim over priority |
| 1194 | $9,450.00 | $19,674.00 | $5,465.00 | | | E | $13,650.00 | | Insider |
| 1194 | $9,450.00 | $19,674.00 | $5,465.00 | | | F | | $20,939.00 | Claim over priority |
| 1008 | $11,875.00 | $24,661.80 | $6,850.50 | | | E | $13,650.00 | | Insider |
| 1008 | $11,875.00 | $24,661.80 | $6,850.50 | | | F | | $29,737.30 | Claim over priority |
| 1563 | $12,087.50 | $25,088.40 | $6,969.00 | | | E | $13,650.00 | | Insider |
| 1563 | $12,087.50 | $25,088.40 | $6,969.00 | | | F | | $30,494.90 | Claim over priority |
| TOTALS FOR SA | $212,594.12 | $320,812.29 | $133,179.60 | $110,289.00 | $10,162.80 | | $309,194.49 | $157,121.67 | Total Salaried |
| | | | | | | | | | |
| TOTALS FOR AL | $628,221.00 | $399,792.82 | $425,561.70 | $110,289.00 | $21,912.80 | | $1,107,933.99 | $157,121.67 | Total All Employees |
| | | | | | | | | $1,265,055.66 | Total |

**EXHIBIT J**

**Better 4 You Breakfast, Inc.**
**13 Week Cash Flow Projections**

| Week #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning Date: | 02/28/22 | 03/07/22 | 03/14/22 | 03/21/22 | 03/28/22 | 04/04/22 | 04/11/22 | 04/18/22 | 04/25/22 | 05/02/22 | 05/09/22 | 05/16/22 | 05/23/22 |
| Week Ending Date: | 03/06/22 | 03/13/22 | 03/20/22 | 03/27/22 | 04/03/22 | 04/10/22 | 04/17/22 | 04/24/22 | 05/01/22 | 05/08/22 | 05/15/22 | 05/22/22 | 05/29/22 |
| Beginning Book Balance | $ 792,000 | $ 674,723 | $ 712,693 | $ 1,109,852 | $ 1,155,322 | $ 937,992 | $ 1,033,728 | $ 1,523,619 | $ 2,252,283 | $ 1,403,309 | $ 2,085,753 | $ 1,937,028 | $ 2,626,971 |
| **Receipts** | | | | | | | | | | | | | |
| Senior Meals - L.A. | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 | 141,509 |
| Breakfast Sales - L.A. | 232,388 | 232,388 | 232,388 | 232,388 | 247,881 | 247,881 | 247,881 | 247,881 | 240,134 | 240,134 | 240,134 | 240,134 | 247,881 |
| Breakfast Sales - S.F. | 47,120 | 47,120 | 47,120 | 47,120 | 50,262 | 50,262 | 50,262 | 50,262 | 48,691 | 48,691 | 48,691 | 48,691 | 50,262 |
| Breakfast Sales - L.V. | 26,366 | 26,366 | 26,366 | 26,366 | 28,124 | 28,124 | 28,124 | 28,124 | 27,245 | 27,245 | 27,245 | 27,245 | 28,124 |
| Lunch Sales - L.A. | 490,356 | 490,356 | 490,356 | 490,356 | 523,046 | 523,046 | 523,046 | 523,046 | 506,701 | 506,701 | 506,701 | 506,701 | 523,046 |
| Lunch Sales - S.F. | 154,820 | 154,820 | 154,820 | 154,820 | 165,141 | 165,141 | 165,141 | 165,141 | 159,981 | 159,981 | 159,981 | 159,981 | 165,141 |
| Lunch Sales - L.V. | 120,970 | 120,970 | 120,970 | 120,970 | 129,035 | 129,035 | 129,035 | 129,035 | 125,003 | 125,003 | 125,003 | 125,003 | 129,035 |
| Dinner Sales - L.A. | 32,717 | 32,717 | 32,717 | 32,717 | 34,898 | 34,898 | 34,898 | 34,898 | 33,807 | 33,807 | 33,807 | 33,807 | 34,898 |
| Dinner Sales - S.F. | 9,181 | 9,181 | 9,181 | 9,181 | 9,793 | 9,793 | 9,793 | 9,793 | 9,487 | 9,487 | 9,487 | 9,487 | 9,793 |
| Snack Sales - L.A. | 11,892 | 11,892 | 11,892 | 11,892 | 12,685 | 12,685 | 12,685 | 12,685 | 12,288 | 12,288 | 12,288 | 12,288 | 12,685 |
| Snack Sales - S.F. | 6,406 | 6,406 | 6,406 | 6,406 | 6,833 | 6,833 | 6,833 | 6,833 | 6,619 | 6,619 | 6,619 | 6,619 | 6,833 |
| Snack Sales - L.V. | 2,589 | 2,589 | 2,589 | 2,589 | 2,762 | 2,762 | 2,762 | 2,762 | 2,676 | 2,676 | 2,676 | 2,676 | 2,762 |
| Catering Revenue - L.A. | 102 | 102 | 102 | 102 | 108 | 108 | 108 | 108 | 105 | 105 | 105 | 105 | 108 |
| Sales Discounts - Breakfast - L.A. | (458) | (458) | (458) | (458) | (488) | (488) | (488) | (488) | (473) | (473) | (473) | (473) | (488) |
| Sales Discounts - Breakfast - S.F. | (44) | (44) | (44) | (44) | (47) | (47) | (47) | (47) | (46) | (46) | (46) | (46) | (47) |
| Sales Discounts - Breakfast - L.V. | (3) | (3) | (3) | (3) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) |
| Sales Discounts - Lunch - L.A. | (4,538) | (4,538) | (4,538) | (4,538) | (4,841) | (4,841) | (4,841) | (4,841) | (4,690) | (4,690) | (4,690) | (4,690) | (4,841) |
| Sales Discounts - Lunch - S.F. | (285) | (285) | (285) | (285) | (304) | (304) | (304) | (304) | (295) | (295) | (295) | (295) | (304) |
| Sales Discounts - Lunch - L.V. | (2,297) | (2,297) | (2,297) | (2,297) | (2,450) | (2,450) | (2,450) | (2,450) | (2,373) | (2,373) | (2,373) | (2,373) | (2,450) |
| Trade Discounts - L.A. | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) |
| Trade Discounts - S.F. | (12) | (12) | (12) | (12) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) | (13) |
| Billable Exp. Reimburse. - L.A. | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Billable Expense Reimburse.- S.F. | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Meal Pack - L.A. | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 254 | 254 | 254 | 254 | 271 |
| **Total Receipts** | 1,269,047 | 1,269,047 | 1,269,047 | 1,269,047 | 1,344,198 | 1,344,198 | 1,344,198 | 1,344,198 | 1,306,606 | 1,306,606 | 1,306,606 | 1,306,606 | 1,344,198 |
| **Direct Costs** | | | | | | | | | | | | | |
| Cost of Meals Sold - L.A. | 303,137 | 321,089 | 321,089 | 321,089 | 321,089 | 312,109 | 312,109 | 312,109 | 312,109 | 321,089 | 313,071 | 321,089 | 313,071 |
| Cost of Meals Sold - S.F. | 925 | 980 | 980 | 980 | 980 | 953 | 953 | 953 | 953 | 980 | 955 | 980 | 955 |
| Cost Of Meals - Milk - L.A. | 62,472 | 62,472 | 62,472 | 62,472 | 66,172 | 66,172 | 66,172 | 66,172 | 64,321 | 64,321 | 64,321 | 64,321 | 66,172 |
| Cost of Meals - Milk - L.V. | 10,063 | 10,063 | 10,063 | 10,063 | 10,658 | 10,658 | 10,658 | 10,658 | 10,360 | 10,360 | 10,360 | 10,360 | 10,658 |
| Cost of Meals - Milk - S.F. | 15,906 | 15,906 | 15,906 | 15,906 | 16,848 | 16,848 | 16,848 | 16,848 | 16,377 | 16,377 | 16,377 | 16,377 | 16,848 |
| Cost of Meals - Fruit/Produce - L.A | 71,052 | 71,052 | 71,052 | 71,052 | 75,259 | 75,259 | 75,259 | 75,259 | 73,154 | 73,154 | 73,154 | 73,154 | 75,259 |
| Cost of Meals - Fruit/Produce - L.V | 1,433 | 1,433 | 1,433 | 1,433 | 1,517 | 1,517 | 1,517 | 1,517 | 1,475 | 1,475 | 1,475 | 1,475 | 1,517 |
| Cost of Meals - Fruit/Produce - S.F. | 10,860 | 10,860 | 10,860 | 10,860 | 11,503 | 11,503 | 11,503 | 11,503 | 11,181 | 11,181 | 11,181 | 11,181 | 11,503 |
| Kitchen Labor - COS - L.A. | | 140,115 | | 140,115 | | 148,412 | | | 144,262 | | 144,262 | | 148,412 |
| Kitchen Labor - COS - S.F. | | 19,935 | | 19,935 | | 21,116 | | | 20,525 | | 20,525 | | 21,116 |
| Kitchen Labor - COS - L.V. | | 1,076 | | 1,076 | | 1,140 | | | 1,108 | | 1,108 | | 1,140 |
| Kitchen Labor Payroll Tax - L.A. | | 12,949 | | 12,949 | | 13,716 | | | 13,333 | | 13,333 | | 13,716 |
| Kitchen Labor Payroll Tax - S.F. | | 1,694 | | 1,694 | | 1,794 | | | 1,744 | | 1,744 | | 1,794 |
| Distrib. Costs - Freight - L.A. | 6,101 | 6,101 | 6,101 | 6,101 | 6,463 | 6,463 | 6,463 | 6,463 | 6,282 | 6,282 | 6,282 | 6,282 | 6,463 |
| Distrib. Costs - Freight - S.F. | 5,574 | 5,574 | 5,574 | 5,574 | 5,904 | 5,904 | 5,904 | 5,904 | 5,738 | 5,738 | 5,738 | 5,738 | 5,904 |

**Better 4 You Breakfast, Inc.**
**13 Week Cash Flow Projections**

| Week #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Beginning Date:** | 02/28/22 | 03/07/22 | 03/14/22 | 03/21/22 | 03/28/22 | 04/04/22 | 04/11/22 | 04/18/22 | 04/25/22 | 05/02/22 | 05/09/22 | 05/16/22 | 05/23/22 |
| **Week Ending Date:** | 03/06/22 | 03/13/22 | 03/20/22 | 03/27/22 | 04/03/22 | 04/10/22 | 04/17/22 | 04/24/22 | 05/01/22 | 05/08/22 | 05/15/22 | 05/22/22 | 05/29/22 |
| Distrib. Costs - Freight - L.V. | 402 | 402 | 402 | 402 | 426 | 426 | 426 | 426 | 414 | 414 | 414 | 414 | 426 |
| Q.C. Labor - COS - L.A. | | 52,168 | | 52,168 | | 55,258 | | | 53,712 | | 53,712 | | 55,258 |
| Q.C. Labor - COS - S.F. | | 4,089 | | 4,089 | | 4,331 | | | 4,210 | | 4,210 | | 4,331 |
| Q.C. Labor Payroll Tax - L.A. | | 3,039 | | 3,039 | | 3,219 | | | 3,129 | | 3,129 | | 3,219 |
| Q.C. Labor Payroll Tax - S.F. | | 438 | | 438 | | 464 | | | 451 | | 451 | | 464 |
| Warehouse Labor - L.A. | | 20,445 | | 20,445 | | 21,656 | | | 21,050 | | 21,050 | | 21,656 |
| Warehouse Labor - S.F. | | 5,583 | | 5,583 | | 5,913 | | | 5,748 | | 5,748 | | 5,913 |
| Warehouse Labor Payroll Tax- L.A. | | 1,833 | | 1,833 | | 1,942 | | | 1,887 | | 1,887 | | 1,942 |
| Warehouse Labor Payroll Tax- S.F. | | 512 | | 512 | | 542 | | | 527 | | 527 | | 542 |
| Packaging Costs - COS - L.A. | 72,470 | 72,470 | 72,470 | 72,470 | 51,174 | 51,174 | 51,174 | 51,174 | 49,743 | 49,743 | 49,743 | 49,743 | 51,174 |
| Packaging Costs - COS - S.F. | 503 | 503 | 503 | 503 | 355 | 355 | 355 | 355 | 345 | 345 | 345 | 345 | 355 |
| **Total Direct Costs** | 560,897 | 842,780 | 578,903 | 842,780 | 568,348 | 838,844 | 559,341 | 559,341 | 824,139 | 561,460 | 825,104 | 561,460 | 839,808 |
| | | | | | | | | | | | | | |
| **Indirect Expenses** | | | | | | | | | | | | | |
| Server Labor Payroll Tax - L.A. | | 12,112 | | 12,112 | | 12,829 | | | 12,470 | | 12,470 | | 12,829 |
| Server Labor Payroll Tax - S.F. | | 748 | | 748 | | 792 | | | 770 | | 770 | | 792 |
| Truck Rental - L.A. | 222,923 | | | | 222,923 | | | | 222,923 | | | | 222,923 |
| Truck Rental - S.F. | 62,869 | | | | 62,869 | | | | 62,869 | | | | 62,869 |
| Truck Rental - L.V. | 27,104 | | | | 27,104 | | | | 27,104 | | | | 27,104 |
| Transport. Fuel - L.A. | 20,572 | 20,572 | 20,572 | 20,572 | 21,790 | 21,790 | 21,790 | 21,790 | 21,181 | 21,181 | 21,181 | 21,181 | 21,790 |
| Transport. Fuel - S.F. | 8,215 | 8,215 | 8,215 | 8,215 | 8,702 | 8,702 | 8,702 | 8,702 | 8,458 | 8,458 | 8,458 | 8,458 | 8,702 |
| Transport. Fuel-L.V. | 4,670 | 4,670 | 4,670 | 4,670 | 4,946 | 4,946 | 4,946 | 4,946 | 4,808 | 4,808 | 4,808 | 4,808 | 4,946 |
| Transport. Labor | | 117,126 | | 117,126 | | 124,062 | | | 120,592 | | 120,592 | | 124,062 |
| Transport. Labor - S.F. | | 38,858 | | 38,858 | | 41,159 | | | 40,008 | | 40,008 | | 41,159 |
| Transport. Labor - L.V. | | 6,823 | | 6,823 | | 7,228 | | | 7,025 | | 7,025 | | 7,228 |
| Transport. Labor Payroll Tax | | 380 | | 380 | | 402 | | | 391 | | 391 | | 402 |
| Transport. Labor Payroll Tax- L.A. | | 9,364 | | 9,364 | | 9,918 | | | 9,641 | | 9,641 | | 9,918 |
| Transport. Labor Payroll Tax- S.F. | | 3,201 | | 3,201 | | 3,391 | | | 3,296 | | 3,296 | | 3,391 |
| Transport. Labor Payroll Tax- L.V. | | 719 | | 719 | | 762 | | | 741 | | 741 | | 762 |
| 1 Admin. Payroll Tax - L.A. | | | 9,380 | | 9,380 | | 9,380 | | 9,380 | | 9,380 | | |
| 2 Admin. Payroll Tax - S.F. | | | 314 | | 314 | | 314 | | 314 | | 314 | | |
| 3 Admin. Payroll Tax - Phoenix | | | 452 | | 452 | | 452 | | 452 | | 452 | | |
| Mainten. Labor - L.A. | | 6,104 | | 6,104 | | 6,466 | | | 6,285 | | 6,285 | | 6,466 |
| Mainten. Labor Payroll Tax- L.A. | | 422 | | 422 | | 447 | | | 434 | | 434 | | 447 |
| Accounting Dept. Wages- L.A. | | | 16,538 | | 16,538 | | 16,538 | | 16,538 | | 16,538 | | |
| Accounting Dept. Wages- Phoenix | | | 2,866 | | 2,866 | | 2,866 | | 2,866 | | 2,866 | | |
| Admin. Dept. Wages - L.A. | | | 95,673 | | 95,673 | | 95,673 | | 95,673 | | 95,673 | | |
| Admin. Dept. Wages - S.F. | | | 2,936 | | 2,936 | | 2,936 | | 2,936 | | 2,936 | | |
| Admin. Dept. Wages - Phoenix | | | 3,889 | | 3,889 | | 3,889 | | 3,889 | | 3,889 | | |
| Nutrition Dept. Wages - L.A. | | | 5,132 | | 5,132 | | 5,132 | | 5,132 | | 5,132 | | |
| Purchasing Wages - L.A. | | | 5,169 | | 5,169 | | 5,169 | | 5,169 | | 5,169 | | |
| Sales Dept. Wages - L.A. | | | 23,425 | | 23,425 | | 23,425 | | 23,425 | | 23,425 | | |
| Bank Charges - L.A. | 9,091 | | | | 9,091 | | | | 9,091 | | | | |
| Consultants - L.A. | 12,000 | | | | 12,000 | | | | 12,000 | | | | |
| Insurance - L.A. | 215,000 | | | | 215,000 | | | | 215,000 | | | | |
| Auto Expense - L.A. | 1,500 | | | | 1,500 | | | | 1,500 | | | | |

**Better 4 You Breakfast, Inc.**
**13 Week Cash Flow Projections**

| Week #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning Date: | 02/28/22 | 03/07/22 | 03/14/22 | 03/21/22 | 03/28/22 | 04/04/22 | 04/11/22 | 04/18/22 | 04/25/22 | 05/02/22 | 05/09/22 | 05/16/22 | 05/23/22 |
| Week Ending Date: | 03/06/22 | 03/13/22 | 03/20/22 | 03/27/22 | 04/03/22 | 04/10/22 | 04/17/22 | 04/24/22 | 05/01/22 | 05/08/22 | 05/15/22 | 05/22/22 | 05/29/22 |
| Auto Expense - S.F. | 200 | | | | 200 | | | | 200 | | | | |
| Office / Computer Supplies | 1,300 | | | | 1,300 | | | | 1,300 | | | | |
| Office /Computer Supplies -L.A. | 8,000 | | | | 8,000 | | | | 8,000 | | | | |
| Office /Computer Supplies -S.F. | 900 | | | | 900 | | | | 900 | | | | |
| Office /Computer Supplies -L.V. | 1,400 | | | | 1,400 | | | | 1,400 | | | | |
| Other Supplies - L.A. | 50 | | | | 50 | | | | 50 | | | | |
| Rent - Facility - L.A. | 68,002 | | | | 68,002 | | | | 68,002 | | | | |
| Rent - Facility - S.F. | 35,300 | | | | 35,300 | | | | 35,300 | | | | |
| Rent - Facility - L.V. | 7,276 | | | | 7,276 | | | | 7,276 | | | | |
| Rent - Equip./Other - L.A. | | | 73,000 | | | | 73,000 | | | - | 73,000 | | |
| Rent - Equip./Other - S.F. | | 2,500 | | | | 2,500 | | | | 2,500 | | | |
| Rent -Equip./Other.- L.V. | | 5,000 | | | | 5,000 | | | | 5,000 | | | |
| Repair & Mainten. - L.A. | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 | 16,308 |
| Repair & Mainten. - S.F. | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 | 1,581 |
| Repair & Mainten. - L.V. | 564 | 564 | 564 | 564 | 564 | 564 | 564 | 564 | 564 | 564 | 564 | 564 | 564 |
| Equip. Repair/ Mainten. - L.A. | 555 | 555 | 555 | 555 | 555 | 555 | 555 | 555 | 555 | 555 | 555 | 555 | 555 |
| Equip. Repair/ Mainten. - S.F. | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 | 134 |
| Equip. Repair/ Mainten.- Phoenix | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 |
| Other Tax & License -L.A. | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 490 | 490 |
| Other Tax & License -S.F. | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Travel - L.A. | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 | 675 |
| Travel - S.F. | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 | 123 |
| Travel - L.V. | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 |
| Telephone - L.A. | 13,672 | | | | 13,672 | | | | 13,672 | | | | |
| Telephone - S.F. | 947 | | | | 947 | | | | 947 | | | | |
| Telephone - L.V. | 180 | | | | 180 | | | | 180 | | | | |
| Utilities (Other) - L.A. | 67,000 | | | | 67,000 | | | | 70,000 | | | | |
| Utilities (Other) - S.F. | 15,000 | | | | 15,000 | | | | 15,000 | | | | |
| Utilities (Other) - L.V. | 1,500 | | | | 1,500 | | | | 1,500 | | | | |
| Server Labor - L.A. | | 123,545 | | 123,545 | | 130,861 | | | 127,201 | | 127,201 | | 130,861 |
| Server Labor - S.F. | | 7,183 | | 7,183 | | 7,609 | | | 7,396 | | 7,396 | | 7,609 |
| **Total Indirect Expenses** | 825,427 | 388,298 | 292,985 | 380,798 | 993,181 | 409,619 | 294,966 | 56,193 | 1,331,441 | 62,702 | 630,226 | 55,202 | 715,015 |
| **Net Cash Flows** | (117,277) | 37,970 | 397,159 | 45,470 | (217,330) | 95,736 | 489,891 | 728,664 | (848,974) | 682,443 | (148,724) | 689,943 | (210,625) |
| **Ending Cash Balance** | $ 674,723 | $ 712,693 | $ 1,109,852 | $ 1,155,322 | $ 937,992 | $ 1,033,728 | $ 1,523,619 | $ 2,252,283 | $ 1,403,309 | $ 2,085,753 | $ 1,937,028 | $ 2,626,971 | $ 2,416,346 |

**Summary of Key Line Items:**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Book Balance | $ 792,000 | $ 674,723 | $ 712,693 | $ 1,109,852 | $1,155,322 | $ 937,992 | $ 1,033,728 | $ 1,523,619 | $ 2,252,283 | $ 1,403,309 | $ 2,085,753 | $ 1,937,028 | $ 2,626,971 |
| Total Receipts | 1,269,047 | 1,269,047 | 1,269,047 | 1,269,047 | 1,344,198 | 1,344,198 | 1,344,198 | 1,344,198 | 1,306,606 | 1,306,606 | 1,306,606 | 1,306,606 | 1,344,198 |
| Total Direct Costs | 560,897 | 842,780 | 578,903 | 842,780 | 568,348 | 838,844 | 559,341 | 559,341 | 824,139 | 561,460 | 825,104 | 561,460 | 839,808 |
| Total Indirect Expenses | 825,427 | 388,298 | 292,985 | 380,798 | 993,181 | 409,619 | 294,966 | 56,193 | 1,331,441 | 62,702 | 630,226 | 55,202 | 715,015 |
| Net Cash Flows | (117,277) | 37,970 | 397,159 | 45,470 | (217,330) | 95,736 | 489,891 | 728,664 | (848,974) | 682,443 | (148,724) | 689,943 | (210,625) |
| Ending Cash Balance | $ 674,723 | $ 712,693 | $ 1,109,852 | $ 1,155,322 | $ 937,992 | $ 1,033,728 | $ 1,523,619 | $ 2,252,283 | $ 1,403,309 | $ 2,085,753 | $ 1,937,028 | $ 2,626,971 | $ 2,416,346 |

**Better 4 You Breakfast, Inc.**
**13 Week Cash Flow Projections**
**Key Notes**

<u>General</u>

- Events impacting this projection period include the first week of January 2022 which did not include school meal service due to the Omicron variant; and also Spring Break for certain schools.

- Debtor currently has 67 schools and 8 senior centers, comprising of over 450 locations throughout Los Angeles, San Francisco, and Las Vegas.  No client has over 10% of Debtor's revenues.

<u>Receipts</u>

- Receipts exclude  inflationary increases to clients as Debtor is in the process of amending certain contracts.

- Debtor's client typically pay within 30-45 days of invoicing on the last day of each month.

- Sales Discounts are deductions adjustments for quality or delivery issues.

- Billable Expense Reimbursements:  The USDA and DOD assign commodity goods to those public entities which participate in the national school lunch program.  As a processor, Debtor converts the commodities into meals for its clients when ordered.  Debtor invoices its clients for the meals ordered, and issues a credit for meals which use such commodities.  The CRO will be investigating the accounting treatment of the commodities.

<u>Expenses</u>

- Food costs are purchased during the current week and up to four weeks in advance of its usage.

- Debtor has about 556 employees, of which 515  are on hourly payroll, occuring on the 10th and 25th of each month; and 41 are on salary payroll, occuring on the 15th and 30th of each month.

- Truck Rental: Debtor has a fleet of over 75 vehicles, of which 28 are owend and the balance leased.  The fleet comprises of vans, 14 to 16 foot trucks, and  53 foot truck-trailers.

- Repair and maintenance includes an additional $5,000 per week for capital expenditure reserves for its combined 110,000 square feet of operations in three locations.

- Packaging costs are anticipated to be initially higher in order to build inventory due to recent supply chain disruptions and shortages.

<u>Other</u>

-  Excludes adequate protection payments and professional fees.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
206 N. Jackson St. Ste. 201, Glendale, CA, 91206

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF JACQUELINE DUVIVIER IN SUPPORT OF FIRST DAY MOTIONS INCLUDING MOTION TO LIMIT NOTICE, MOTION FOR USE OF CASH COLLATERAL, MOTION FOR AUTHORIZATION TO PAY PRIORITY WAGE CLAIMS AND BENEFITS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **2/28/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Eryk R Escobar**    eryk.r.escobar@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,narutunyan@lsl-la.com
- **David A Tilem**    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;TilemDR69450@notify.bestcase.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/28/2022 | Joan J. Fidelson | /s/ Joan J. Fidelson |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.