```
David A. Tilem (SBN 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street, Suite 201
Glendale, California 91206
Tel: 888-257-7648 * 818-507-6000
Fax: 818-507-6800
DavidTilem@TilemLaw.com

Proposed Attorneys for Debtor-
     in-Possession
```

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br><br><br><br><br><br>**BETTER 4 YOU BREAKFAST, INC.,**<br><br><br><br><br><br>                    Debtor.<br>_____ | ) Case No. **2:22-bk-10994-BB**<br>)<br>)<br>) Chapter 11<br>)<br>) **EMERGENCY MOTION**<br>) **FOR ORDER AUTHORIZING DEBTOR TO**<br>) **PAY PRE-PETITION PRIORITY**<br>) **PAYROLL CLAIMS, PAYROLL RELATED**<br>) **TAXES AND TO HONOR PRE-PETITION**<br>) **EMPLOYEE BENEFITS OBLIGATIONS;**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES**<br>)<br>) Date:          **TO BE SET BY COURT**<br>) Time:<br>) CtRm: 1539<br>)       255 East Temple Street<br>)       Los Angeles, CA 90012<br>) |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

    **NOTICE IS HEREBY GIVEN** that Debtor and debtor-in-possession Better 4 You Breakfast, Inc. ("Debtor") has filed this motion entitled:

/ / /

/ / /

**Emergency Motion for Order Authorizing Debtor to Pay Pre-Petition Priority Payroll, Payroll Related Taxes and to Honor Pre-Petition Employee Benefits Obligations; Memorandum of Points and Authorities; Declaration of Jacqueline Duvivier in Support**

By this motion, Debtor seeks authorization on an emergency basis to pay: current payroll obligations (those incurred in the payroll period which includes the Petition Date), pay related payroll taxes, and honor pre-petition employment benefits obligations.

This motion is based on the attached Memorandum of Points and Authorities and Declarations, pleadings and other documents on file with the Court in this matter and such additional evidence as may be accepted by the Court at the time of the hearing.

**NOTICE IS FURTHER GIVEN** that, pursuant to Local Bankruptcy Rule 9075-1(a), the Court will schedule a hearing on this Emergency Motion. Notice of the hearing date and time will be transmitted as directed by the Court. It is most likely that the hearing will be conducted remotely by Zoom. If that is the case, the Zoom access information will also be provided as directed by the Court.

Dated: February 28, 2022

LAW OFFICES OF DAVID A. TILEM

By: _____
David A. Tilem, Proposed
Attorneys for Debtor-in-Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**JURISDICTION AND APPLICABLE LAW**

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157 and 1334. This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B) and (M).

Venue of this case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief sought herein are sections 105(a), 363, 507(a) and 1108 of the Bankruptcy Code 11 U.S.C. §§ 101 et seq., Federal Rules of Bankruptcy Procedure ("FRBP") 2002 and 9014, and Local Bankruptcy Rules 2081-1(a)(6) and 9075-1.

This case was commenced by the filing of a voluntary Chapter 11 petition on February 24, 2022 (the "Petition Date"). No trustee has been appointed, no Committee of Unsecured Creditors has been appointed and Debtor is operating as a Debtor-in-Possession.

**II.**

**SUMMARY OF RELIEF REQUESTED**

Debtor seeks authority to immediately pay payroll wage claims, pay payroll taxes and honor employee benefits which are entitled to priority under Section 507(a)(4) and (5). Debtor does NOT seek authority to pay such claims in excess of the priority dollar limits specified in those provisions.

/ / /

/ / /

/ / /

/ / /

## III.

## BACKGROUND CONCERNING THE DEBTOR, ITS BUSINESS
## AND ITS FINANCIAL DIFFICULTIES

The following summary of facts is derived from the separately filed Declaration of Jacqueline Duvivier (the "Duvivier Declaration"). Ms. Duvivier is the CBO and Debtor's business manager. She is also a minority shareholder of the Debtor.

**A.    BROAD SUMMARY**

Debtor manufactures, packages and distributes pre-packaged meals on a contract basis for specified periods of time to approximately 400 clients including schools, residential care facilities, senior care facilities, rehabilitation facilities and others in California and Nevada. Those clients distribute the meals to thousands of low income people including school children, those in senior care facilities, medical facilities and in other settings. The meals provided include breakfast, lunch, dinner and snacks.

The meals are manufactured and assembled in Los Angeles County, California at Debtor's primary headquarters in the City of Commerce and distributed through leased warehouses in several "regions".

**B.    ABBREVIATED SUMMARY OF DEBTOR'S FINANCIAL CONDITION**

The Debtor operates on a July 1 - June 30 fiscal year. Debtor's net income for the 2020-2021 fiscal year was approximately $3.6 million on gross sales of $48.2 million. True and correct copies of Debtor's unaudited financial statements for that fiscal year are attached to the Duvivier Declaration as Exhibit "A-1". Debtor's net income for this 2021-2022 fiscal year to date (through

December 31, 2021) has been approximately $3.4 million on gross sales of $31.6 million.  This interim period is unaudited and subject to modification.  Accounts receivables are $8.9 million and, given the nature and identity of the account debtors, the accounts are deemed to be reliably collectible.  True and correct copies of Debtor's financial statements for this fiscal year to date, including agings for the receivables and payables, are attached to the Duvivier Declaration as Exhibit "A-2".

Debtor has two wholly owned subsidiaries.  Balance Foods, LLC is in the business of manufacturing and providing snack food products included in some of the meals prepared by the Debtor.  Moreno Bros. Distributing, LLC is in the distribution business.  On February 24, 2022 the Los Angeles Superior Court issued an Order appointing a Receiver to liquidate the assets of those two entities.

Until the month of February, 2021, Debtor employed a full time CFO who was experiencing serious personal problems.  The extent of these problems was unknown to Debtor's management.  As a result of these problems, however, the CFO began to perform erratically.  This included failing to properly maintain Debtor's books and records for the last 3 quarters of 2021 and the current first quarter of 2022.  The problems were not discovered until about October, 2021.

Debtor has placed the CFO on leave with reduced duties and is undergoing an internal audit to correct the accounting errors, but these problems caused Debtor to default on its credit facility with Bank Leumi ("Leumi").  Leumi called the term loan and demanded immediate payment of both loans, approximately $16 million.  Debtor

was unable to "write a check". This case was filed only after last minute efforts to negotiate a settlement with Leumi were not successful and just minutes before a hearing in Los Angeles Superior Court at which Leumi was seeking to impose a Receiver to liquidate Debtor's business.

But for the demand by Leumi for immediate payment of the full amount of its claim, Debtor would not have needed to seek relief under Title 11. Debtor has been, and continues to be profitable. Debtor is still working to overcome the accounting issues created by its CFO.

**C.    DEBTOR'S EMPLOYEES**

Debtor employs approximately 550 individuals, mostly in California and Nevada (with a few who live in Arizona). Debtor is a non-union shop. Debtor was current on its payroll and federal payroll tax obligations through the Petition Date, and employee claims are related to either the "stub period" immediately preceding the Petition Date or accrued obligations for PTO and vacation time.

Debtor normally pays two separate payrolls: hourly employees are paid on the 10th and 25th of each month. Salaried employees are paid on the 15th and last day of each month. Each payroll covers a period 25 to 10 days before the paydate. Debtor last paid payroll for both groups of employees for the period ending February 15, 2022.

This case was filed on February 24, 2022 (the "Petition Date"). Hourly employees are owed wages for the "stub period" from February 16, 2022 through February 24, 2022. The normal pay-date for this payroll is March 10, 2022. Salaried employees are owed

1  wages for the stub period from February 16, 2022 through February
2  24, 2022.  The normal pay-date for this payroll is March 15, 2022.
3      To be absolutely clear, this motion does NOT seek authority to
4  use cash collateral - which is the subject of a separately filed
5  motion or to pay amounts in excess of the statutory priority amount
6  specified in Section 507(a)(4) and (5).

## IV.

### SPECIFIC INFORMATION ABOUT INDIVIDUAL EMPLOYEES

9      Attached to the Duvivier Declaration as Exhibit "I" is a
10 schedule of employees.  Names have been redacted, however
11 individual employees can be identified by their employee numbers.
12 Insiders are designated with yellow highlighting.  Those holding
13 claims in excess of the statutory priority amount specified in
14 Section 507(a)(4) and (5) appear on two consecutive line items -
15 one showing the priority claim amount (Bankruptcy Schedule E) and
16 the other showing the excess as a general unsecured claim
17 (Bankruptcy Schedule F).  Again, only the Schedule E priority
18 claims are at issue in this motion.
19     Debtor proposes to pay in cash only the actual wages and
20 related withholding taxes.  PTO and vacation claims will be
21 satisfied in the ordinary course of Debtor's business as may be
22 requested by individual employees, as governed by Debtor's employee
23 manual and applicable non-bankruptcy law.
24     If cash collateral is authorized to pay the wages, Debtor will
25 also pay employer's taxes related to the payroll.
26 / / /
27 / / /
28 / / /

**V.**

**GOOD CAUSE EXISTS TO GRANT THE MOTION**

The Debtor provides pre-packaged meals to thousand of low income individuals. Those meals are prepared, packed and shipped by approximately 550 employees. Most are hourly low or minimum-wage workers who have families which depend on their income.

If this motion is denied, Debtor will be required to immediately cease operations. Further, given Leumi's liens, it is likely that the liquidation value (not the going concern value) of Debtor's business will be insufficient to pay Leumi's claim leaving all other creditors, including employees, without any recovery.

From a legal perspective, what Debtor proposes to pay are claims entitled to priority under 11 U.S.C. §507(a)(4) and (5). Provided that Leumi is adequately protected (an issue to be considered in the context of Debtor's cash collateral motion), the claims of these creditors are senior in priority to all other pre-petition claims. It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating Chapter 11 cases is critical to reorganization. See LTV Corp. v Aetna Cas. & Surety Co. (In re Chateaugay Corp.), 116 B.R. 887, 898 (Bankr. S.D. N.Y. 1990). Accordingly, bankruptcy courts have authorized debtors to pay prepetition priority wage claims as a means of allowing debtors to maintain their work force and thereby preserve the debtors' ability to operate in the ordinary course, without the disruption of employee defections.

The Bankruptcy Court in In re Braniff, Inc., 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) discussed the reasons for allowing payment of prepetition payroll as follows:

> In the early days of this case, the court entered orders permitting the post-petition payment of certain pre-petition wages and wage-related claims. As is often the case in operating Chapter 11 cases, the court did this for two reasons. First, it was necessary that Braniff pay its employees for work performed pre-petition if the employees were to remain on the job post-petition. The filing of a bankruptcy case presents many uncertainties for employees. If their pay is interrupted, employees are obviously not going to remain on the job despite the fact that their continuation in place is vitally important for the debtor.
>
> Second, in any event, the pre-petition wages are subject to the priority of Section 507(a)(3) [now 507(a)(4)]. Thus, in all but the direst of circumstances, the debtor will ultimately pay the pre-petition wages because of their very high priority. Accordingly, the court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case.

See also In re Columbia Gas Systems, Inc., 171 B.R.189, 191-92 (Bankr. D. Del. 1994) (holding that to justify payment of one class of prepetition creditors in advance of confirmed plan, Chapter 11 debtor must show that payment is essential to continued operation of business); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581-82 (3rd Cir.1981) (in order to authorize immediate payment to certain creditors, a real and immediate threat must exist that failure to pay will place the continued operation of the business in serious jeopardy). Collier on Bankruptcy explains the issue as follows:

> Because wages are priority claims, courts have often permitted debtors to pay prepetition wage claims in the ordinary course in response to a motion filed by a debtor in possession at the commencement of a chapter 11 case. The ability to ensure that the employees receive their unpaid prepetition salary and to not miss a paycheck is critical to obtaining the stability necessary for the transition to operating as a debtor in possession.

Collier on Bankruptcy, P 507.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Applied here, the filing of this bankruptcy case will

Main Document    Page 10 of 12

undoubtedly create uncertainty for the Debtor's employees. The Debtor believes it is important to provide some assurance to employees that they will continue to receive the pay and benefits properly due to them.

It is common knowledge that employers are struggling to find employees, particularly in the food service business. Debtor cannot afford to lose its employees. Paying payroll on a timely basis is imperative to keeping operations going.

Payroll taxes withheld from an employee's wages on behalf of an applicable taxing authority are held in trust by the Debtor. As such, those funds are not property of the Debtor's estate under Section 541 of the Bankruptcy Code. See Begier v. IRS, 496 U.S. 53 (1990) (holding that withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate).

As priority claims, these obligations must be paid in full before any of the Debtor's general unsecured obligations may be satisfied. The relief requested herein affects only the timing of payment of these priority obligations. It does not prejudice the rights of general unsecured creditors or other parties in interest.

As set forth in the Duvivier Declaration, the payments proposed to be made by the Debtor pursuant to this motion will not render the Debtor administratively insolvent.

Because retaining Debtor's employees is critical to the survival of its business, Debtor believes that granting the relief requested herein is appropriate, entirely consistent with the rehabilitative purposes of Chapter 11, and in the best interest of its estate and creditors.

## VI.

### EMERGENCY RELIEF IS APPROPRIATE

Procedural authorization for an emergency hearing on this emergency motion is found in Rule 90065 of the Federal Rules of Bankruptcy Procedure ("FRBP"), and in Local Bankruptcy Rule ("LBR") 9075-1(c)6. As discussed herein and as set forth in the supporting Duvivier Declaration, the Debtor respectfully submits that, on the facts of this case, emergency relief is both necessary and appropriate.

## VI.

### CONCLUSION

Based on the forgoing, Debtor respectfully requests that this Court enter an Order authorizing Debtor to pay pre-petition payroll obligations, including PTO time and vacation time, to Debtor's employees in amounts not to exceed $13,650 per employee which have accrued during the "stub period" immediately before the Petition Date, and to provide such other and further relief as the Court deems appropriate.

Dated: February 28, 2022                LAW OFFICES OF DAVID A. TILEM

By: _____
    DAVID A. TILEM, Proposed
    Attorneys for Debtor and
    Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
206 N. Jackson St. Ste. 201, Glendale, CA, 91206

A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION PRIORITY PAYROLL CLAIMS, PAYROLL RELATED TAXES AND TO HONOR PRE-PETITION EMPLOYEE BENEFITS OBLIGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **2/28/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Eryk R Escobar**    eryk.r.escobar@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,narutunyan@lsl-la.com
- **David A Tilem**    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;TilemDR69450@notify.bestcase.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/28/2022 | Joan J. Fidelson | /s/ Joan J. Fidelson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**