1  David A. Tilem (SBN 103825)
   LAW OFFICES OF DAVID A. TILEM
2  206 North Jackson Street, Suite 201
   Glendale, California 91206
3  Tel: 888-257-7648 * 818-507-6000
   Fax:(818) 507-6800
4  DavidTilem@TilemLaw.com

5  Proposed Attorneys for Debtor-
        in-Possession

6

7                  **UNITED STATES BANKRUPTCY COURT**

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9                      **LOS ANGELES DIVISION**

10

11  In re:                          ) Case No. **2:22-bk-10994-BB**
                                     )
12                                   ) Chapter 11
                                     )
13                                   )
                                     )         **EMERGENCY MOTION**
14                                   ) **FOR ORDER AUTHORIZING DEBTOR TO**
                                     ) **USE CASH COLLATERAL ON AN**
15                                   ) **INTERIM BASIS AND FINAL BASIS**
    **BETTER 4 YOU BREAKFAST, INC.,** ) **AFTER FINAL HEARING.**
16                                   ) **MEMORANDUM OF POINTS AND**
                                     ) **AUTHORITIES**
17                                   )
                                     ) Date:     **TO BE SET BY COURT**
18                                   ) Time:
                                     ) CtRm: 1539
19                                   )     255 East Temple Street
                    Debtor.          )     Los Angeles, CA 90012
20  _____ )

21  **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE,**

22  **THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN**

23  **INTEREST:**

24       **NOTICE IS HEREBY GIVEN** that Debtor and debtor-in-possession

25  Better 4 You Breakfast, Inc. ("Debtor") has filed this motion

26  entitled:

27  / / /

28  / / /

1    **<u>Emergency Motion</u> for Order Authorizing Debtor to Use Cash**
    **Collateral on an Interim Basis and Final Basis after**
2    **Final Hearing; Memorandum of Points and Authorities**

3

4       By this motion Debtor seeks authorization to use cash

5  collateral, first on an emergency interim basis, and then on a

6  permanent basis. Debtor proposed to use cash collateral to fund

7  ongoing business operations including the payment of wages, taxes,

8  utilities and other ordinary and necessary expenses.

9       Debtor proposes to use cash collateral pursuant to a budget

10  prepared by Debtor which is attached as Exhibit "J" to the

11  Declaration of Jacqueline Duvivier (the "Duvivier Declaration")

12  filed contemporaneously herewith.  The budget provides for payment

13  of ordinary and necessary expenses for a period of 13 weeks.

14       The budget includes those expenses which Debtor reasonably

15  anticipates, but may need to be amended as events unfold.

16       This motion is based on the attached Memorandum of Points and

17  Authorities and Declarations, pleadings and other documents on file

18  with the Court in this matter and such additional evidence as may

19  be accepted by the Court at the time of the hearing.

20     **NOTICE IS FURTHER GIVEN** that, pursuant to Local Bankruptcy

21  Rule 9075-1(a), the Court will schedule a hearing on this Emergency

22  Motion.  Notice of that hearing date and time will be transmitted

23  as directed by the Court.  It is most likely that the hearing will

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1  be conducted remotely by Zoom.  If that is the case, the Zoom

2  access information will also be provided as directed by the Court.

3  Dated: February 27, 2022                    LAW OFFICES OF DAVID A. TILEM

4

5                                             By: _____

6                                                 David A. Tilem, Proposed
                                                  Attorneys for Debtor-in-
7                                                 Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND APPLICABLE LAW

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157 and 1334. This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (M).

Venue of this case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief sought herein are sections 105(a), 361, 363, 1107(a) and 1108 of the Bankruptcy Code 11 U.S.C. §§ 101 et seq., Federal Rules of Bankruptcy Procedure ("FRBP") 2002, 4001, 6004 and 9014, and Local Bankruptcy Rule 2081-1 and and 9075-1.

This case was commenced by the filing of a voluntary Chapter 11 petition on February 24, 2022 (the "Petition Date").  No trustee has been appointed, no Committee of Unsecured Creditors has been appointed and Debtor is operating as a Debtor-in-Possession.

### II.

### SUMMARY OF RELIEF REQUESTED

Debtor seeks leave to use cash collateral pursuant to Bankruptcy Rule 4001 pursuant to a budget on an interim basis until such time as the Court can conduct a final hearing on this motion and thereafter on a final basis.

Debtor requests an immediate hearing on this motion to request interim use of cash collateral and thereafter a briefing schedule and a final hearing on this motion at which time Debtor will ask the Court to consider authorizing the use of cash collateral on an ongoing basis throughout the duration of the case.

1

**III.**

**THE DEBTOR, ITS BUSINESS, AND ITS**

**FINANCIAL DIFFICULTIES**

**A.    SUMMARY**

Debtor manufactures, packages and distributes pre-packaged meals on a contract basis for specified periods of time to approximately 400 clients including schools, residential care facilities, senior care facilities, rehabilitation facilities and others in California and Nevada.  Those clients distribute the meals to thousands of law income people including school children, those in sehnior care facilities, medical facilities and in other settings.  The meals provided include breakfast, lunche, dinner and snacks.

The meals are manufactured and assembled in Los Angeles County, California at Debtor's primary headquarters in the City of Commerce, and distributed through leased warehouses in several "regions".

**B.    DEBTOR'S FINANCIAL CONDITION AND BUSINESS OPERATIONS**

The following summary of facts is derived from the attached Declaration of Jacqueline Duvivier (the "Duvivier Declaration"). Ms. Duvivier is the Debtor's CBO (Chief Business Officer) and Business Manager.  She is also a minority shareholder of the Debtor.

The Debtor operates on a July 1 - June 30 fiscal year. Debtor's net profit for the 2020-2021 fiscal year was approximately $3.6 million on gross sales of $48.2 million.  True and correct copies of Debtor's financial unaudited statements for that fiscal year are attached to the Duvivier Declaration as Exhibit "A-1".

1  Debtor's net income for this 2021-2021 fiscal year to date (through

2  December 31, 2021) has been approximately $3.4 million on gross

3  sales of $31.6 million.  This interim period is unaudited and

4  subject to modification.  Accounts receivable are $8.9 million and,

5  given the nature and identity of the account debtors, the accounts

6  are deemed to be reliably collectible.  True and correct copies of

7  Debtor's financial statements for this fiscal year to date,

8  including agings for the receivables and payables, are attached to

9  the Duvivier Declaration as Exhibit "A-2".

10       Debtor has two wholly owned subsidiaries.  Balance Foods, LLC

11  is in the business of manufacturing and providing snack food

12  products included in some of the meals prepared by the Debtor.

13  Moreno Bros. Distributing, LLC is in the distribution business.  On

14  February 24, 2022 the Los Angeles Superior Court issued an Order

15  appointing a Receiver to liquidate the assets of those two

16  entities.

17       Until the month of February, 2021, Debtor employed a full time

18  CFO who was experiencing serious personal problems.  The extent of

19  these problems was unknown to Debtor's management.  As a result of

20  these problems, however, the CFO began to perform erratically.

21  This included failing to properly maintain Debtor's books and

22  records for the last 3 quarters of 2021 and the current first

23  quarter of 2022.  The problems were not discovered until about

24  October, 2021.

25       Debtor has placed the CFO on leave with reduced duties and is

26  undergoing an internal audit to correct the accounting errors, but

27  these problems caused Debtor to default on its credit facility with

28  Bank Leumi ("Leumi").  Leumi called the term loan and demanded

1    immediate payment of both loans, approximately $16 million.  Debtor

2    was unable to "write a check".  This case was filed only after last

3    minute efforts to negotiate a settlement with Leumi were not

4    successful and just minutes before a hearing in Los Angeles

5    Superior Court at which Leumi was seeking to impose a Receiver to

6    liquidate Debtor's business.

7        But for the demand by Leumi for immediate payment of the full

8    amount of its claim, Debtor would not have needed to seek relief

9    under Title 11.  Debtor has been, and continues to be profitable.

10   Debtor is still working to overcome the accounting issues created

11   by its CFO.

12       Debtor employs approximately 550 individuals, mostly in

13   California and Nevada (with a few who live in Arizona).  Debtor is

14   a non-union shop.  Debtor is current on its payroll and federal

15   payroll tax obligations.  Debtor has, or will shortly file motions

16   seeking leave to pay payroll, payroll benefits and related tax and

17   insurance obligations for the payroll period which includes the

18   Petition Date pursuant to Section 507(a)(4) and (5) (the "Payroll

19   Motion").  Debtor will also file applications to continue paying

20   Officers holding an interest in the Debtor and their related

21   parties ("Insider Compensation Applications").  Debtor will also be

22   filing, or has filed a motion to limit notice as well as motions to

23   employ general bankruptcy counsel and Armory Consulting Co. as its

24   newly hired Chief Restructuring Officer.

25       Debtor has all required insurance and licenses.  Copies will

26   be provided to the Office of the United States Trustee as part of

27   Debtor's 7-day package.

28       Most of Debtor's operations rely on leased warehouse space,

1 vehicles which are either owned or leased and Debtor's team of

2 employees.

3     Debtor anticipates a 100% plan and has been seeking both

4 replacement financing or, if necessary, a merger partner or buyer.

5 **C.    CREDITORS HOLDING SECURITY INTERESTS**

6     Attached to the Duvivier Declaration as Exhibit "H-1" is a

7 schedule of all Creditors believed to have liens against property

8 of the estate - Bankruptcy Schedule D.  This does NOT include

9 creditors who may be holding liens pursuant to PACA, however the

10 amount of such PACA claims combined is believed to be less than

11 $250,000.  Many are lienholders have financed equipment financing

12 leases with "lease to own" provisions.  Debtor is still reviewing

13 those.  Only 7 appear to have "blanket" liens with an outstanding

14 balance due, and hence a lien on Debtor's cash.

| *NAME* | *ESTIMATED CLAIM* |
|---|---|
| Bank Leumi | 16,500,000 |
| Fox Business Funding c/o Corporation Service Company | 590,000 |
| CA Employment Dev. Dept | 465,000 |
| US Small Business Admin. | 150,000 |
| Corporation Service Company | 241,400 |
| Samson Orus | 121,600 |
| Vox Funding, c/o CT Corporation System | 246,000 |

/ / /

/ / /

/ / /

/ / /

/ / /

1

## IV.

## USE OF CASH COLLATERAL IS APPROPRIATE

**A.    THE DEBTOR REQUIRES THE USE OF CASH COLLATERAL**

Bankruptcy Code §363(a) defines cash collateral as cash or cash equivalents which are property of the estate in which some other party also has an interest.

Due to the urgency of the situation, counsel has yet to complete a review of loan documents, however, all creditors believed to hold liens (other than PACA liens), regardless of the nature of their collateral, are identified on Exhibit "H-1" to the Duvivier Declaration.

To maintain its business, Debtor requires the use of cash collateral in such amounts, and for such specific purposes as are set forth in a projected cash flow budget, a copy of which is attached as Exhibit "J" to the Duvivier Declaration.  Such expenditures include, but are not limited to, payroll, payroll taxes, payroll related expenses, raw materials, packaging materials, utilities, shipping materials, fuel, insurance of various types, equipment leases, warehouse leases, internet related services, software, repairs and maintenance, overhead and administrative expense.  Exhibit "J" to the Duvivier Declaration sets forth Debtor's projected income and expenses on a week by week basis for 13 weeks (roughly 3 months).  Exhibit "J" was prepared by management (including Ms. Duvivier) with the assistance of Debtor's newly engaged CRO.

**B.    THIS COURT MAY APPROVE THE USE OF CASH COLLATERAL**

Section 363(c)(2) of the Bankruptcy Code provides that:

> The trustee may not use, sell, or lease cash
> collateral under paragraph (1) of this

1    subsection unless –

2    (A) each entity that has an interest in such cash
     collateral consents; or

3

4    (B) the court, after notice and a hearing
     authorizes such use, sale, or lease in
     accordance with the provisions of this section.

5

6    The reference in §363(c)(2)(B) to "provisions of this section"

7    is understood to be a reference to §363(e) which requires the Court

8    to find "adequate protection" for the interest of the non-debtor

9    party.  The phrase "adequate protection" is defined in §361.

10    Accordingly, if Debtor is able to show by competent evidence

11    that the affected creditors are adequately protected, this motion

12    should be granted.

13    C.    **THE INTERESTS OF THE SECURED CREDITORS ARE ADEQUATELY**

14          **PROTECTED**

15    The concept of adequate protection, as set forth in 11 U.S.C.

16    §361 was designed to be flexible in order to permit courts to

17    "adapt to varying circumstances and changing modes of financing."

18    In re JKJ Chevrolet, 190, B.R. 542,545 (Bankr. E.D. Va 1995)

19    (citing a House Report discussing the language of section 361). Any

20    means a court adopts for providing such protection must ensure that

21    the "secured creditor receives the value for which he bargained."

22    In re Martin, 761 F.2d 472,474 (8th Cir. N.D. 1985)(citing

23    congressional discussion of "adequate protection"). Thus, the Court

24    must consider the facts and circumstances of each case and provide

25    the secured creditor with that which will adequately protect its

26    interest in the collateral.

27    Further, as enunciated by the Supreme Court in United States

28    Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,

Case 2:22-bk-10994-BB   Doc 18   Filed 02/28/22   Entered 02/28/22 14:48:38   Desc
Main Document    Page 11 of 15


208 S. Ct. 755 (1986), a secured creditor is only entitled to adequate protection against any <u>reduction in value</u> of <u>its</u> interest in the collateral. Here and in light of the current market, the value of the Properties is likely to increase so long as the condition of each of the properties is not permitted to deteriorate.

In balancing the rights of secured and unsecured creditors, Courts have frequently permitted a debtor to use cash collateral in circumstances where such use would enhance or preserve the value of the collateral.  For example, in <u>In re Stein</u>, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the Court allowed a debtor to use cash collateral where the secured party had no equity cushion for protection.  The Court in <u>Stein</u> found that the use of the cash collateral was necessary to the continued operations of the debtor, and that the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]." <u>Id</u>., 460.  <u>See also</u>, <u>In re Pine Lake Village Apartment co.</u>, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash collateral generated from rental income to preserve the value of real property which also secured creditor's claim); <u>In re Karl A. Neise, Inc.</u>, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally-secured creditor adequately protected by lien in post-petition property acquired by debtors; debtors can use cash collateral "in the normal operation of their business"). **Some courts have held that an equity cushion of at least 10% adequately protects a the interest of a secured creditor.** See <u>In re McGowan</u>, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion is sufficient for adequate protection); <u>In re Mellor</u>, 734 F.2d 1396, 1401 (9th Cir. 1984) (citing McGowan approvingly).

03109\I\20220228-EmergCashCollMtn.wpd                    11                    February 28 2022

1  **D.    IN DETERMINING WHETHER CREDITORS ARE ADEQUATELY**

2  **PROTECTED, THE COURT SHOULD PROMOTE REORGANIZATION**

3      It is also well-established that a Bankruptcy Court, where

4  possible, should resolve issues presented in favor of

5  reorganization.  In re Hoffman, 51 B.R. 42, 47 (Bankr. W.D. Ark.

6  1985) (relief from stay); In re A&B Heating and Air Conditioning,

7  Inc., 48 B.R. 401, 403-404 (Bankr. M.D. Fla. 1985) (Section 105

8  injunction); In re Lahman Manufacturing Company, Inc., 33 B.R. 681,

9  685 (Bankr. D.S.C. 1983) (Section 105 injunction); In re Heatron,

10  Inc., 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980).  In In re O'Connor,

11  808 F.2d. 1393 (10th Cir. 1987) the Tenth Circuit stated:

12              "In this case, Debtors, in the midst of a Chapter 11
               proceeding, have proposed to deal with cash
13              collateral for the purpose of enhancing the
               prospects of reorganization.  This quest is the
14              ultimate goal of Chapter 11.  Hence, the efforts are
               not only to be encouraged, but also their efforts
15              during the administration of the proceeding are to
               be measured in light of that quest.  Because the
16              ultimate benefit to be achieved by a successful

17              reorganization inures to all the creditors of
               the estate, a fair opportunity must be given to
18              the Debtors to achieve that end."

19  808 F.2d. at 1397.

20  **E.    CARVE OUT FOR PROFESSIONAL COMPENSATION**

21      In Security Leasing Partners v. ProAlert (In re ProAlert), 314

22  B.R. 436 (9th Cir. BAP 2004), the Court affirmed a lower court's

23  holding that a debtor may also use cash collateral to pay

24  professional fees, even over the objection of an undersecured

25  creditor with an interest in the cash collateral, provided that the

26  secured creditor is adequately protected and without the need to

27  show a benefit to the secured creditor from such use under 11

28  U.S.C. § 506(c).  This issue is not yet ripe, but may become

1   relevant as the case progresses.

2   **F.    ADEQUATE PROTECTION**

3       Under the facts of this case, secured creditors who may be

4   holding security interests in cash are adequately protected by the

5   dollar amount and quality of Debtor's receivables, as well as

6   Debtor's historical financial performance as reflected in Exhibits

7   A-1 and A-2 to the Duvivier Declaration as well as the Declaration

8   itself.  Debtor's gross sales and net income have both increased

9   over the last 3-1/2 years, the Covid emergency is behind us (with

10  children returning to school) and issues related to the errant CFO

11  are being addressed both by existing management and the new CRO.

12      Debtor has no reason to believe that its revenue stream or

13  business will suffer as a result of filing this petition.

14                                **V.**

15                            **CONCLUSION**

16      The key facts in this case are very straightforward.  Assuming

17  that the specified creditors have valid liens on Debtor's funds and

18  receivables, Debtor cannot operate without funds.  There is no

19  reason to believe that filing this case will diminish the Debtor's

20  gross receipts or net income.

21      Continued operations maintain and enhance the value of the

22  estate's assets as well as generate revenue to repay claims.  For

23  the foregoing reasons, Debtor respectfully requests the entry of an

24  Order authorizing the interim use of Cash Collateral, authorizing

25  the use of cash collateral to pay pre-petition stub-period wage

26  claims, setting a date for a final hearing with regard to Debtor's

27  / / /

28  / / /

1  further use of cash collateral, authorizing Debtor's use of cash

2  collateral on an ongoing basis and for such other and further

3  relief as this Court deems just and proper.

4  Dated: February 28, 2022          LAW OFFICES OF DAVID A. TILEM

5

6                                    By: _____

7                                        DAVID A. TILEM, Proposed
                                         Attorneys for Debtor and
8                                        Debtor-in-
                                         PossessionFebruary 28, 2022

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
206 N. Jackson St. Ste. 201, Glendale, CA, 91206


A true and correct copy of the foregoing document entitled (*specify*): **EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TOUSE CASH COLLATERAL ON AN INTERIM BASIS AND FINAL BASIS AFTER FINAL HEARING. MEMORANDUM OF POINTS AND AUTHORITIES**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **2/28/2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Eryk R Escobar**    eryk.r.escobar@usdoj.gov
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,narutunyan@lsl-la.com
- **David A Tilem**    davidtilem@tilemlaw.com,
  DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;TilemDR69450@notify.bestcase.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com


☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.


☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.


☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 2/28/2022 | Joan J. Fidelson | /s/ Joan J. Fidelson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**