STEPTOE & JOHNSON LLP
Jeffrey M. Reisner (State Bar No. 143715)
jreisner@steptoe.com
Kerri A. Lyman (State Bar No. 241615)
klyman@steptoe.com
Joshua R. Taylor (*pro hac vice forthcoming*)
jrtaylor@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9423
Facsimile:  (213) 439-9599

*Proposed Special Counsel to the
Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:22-BK-10994-BB |
| **BETTER 4 YOU BREAKFAST, INC,** | Chapter 11 |
| Debtor and Debtor in Possession. | **MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) APPROVING CERTAIN BID PROTECTIONS IN CONNECTION WITH THE DEBTOR'S ENTRY INTO A POTENTIAL STALKING HORSE AGREEMENT; (D) SCHEDULING THE AUCTION AND SALE HEARING; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF**<br><br>*[Application to Shorten Time Filed Concurrently Herewith]* |

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND PARTIES REQUESTING SPECIAL NOTICE:**

Better 4 You Breakfast, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**") moves this Court (the "**Motion**"), pursuant to Bankruptcy Code sections 105, 363, 365, 503 and 507 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Bankruptcy Rule 6004-1, for the approval of certain procedures to conduct a sale of all or substantially all of Debtor's assets (collectively, the "**Assets**"), or subsets thereof, free and clear of all liens, claims, encumbrances, and other interests, to the highest bidder that complies with the applicable procedures.  Specifically, the Debtor seeks an order:

a)       approving the proposed procedures, including the overbid provisions (the "**Bid Procedures**") substantially in the form attached hereto as Exhibit A (the "**Bid Procedures Order**"), in connection with the proposed sale at auction (the "**Auction**") of the Assets, free and clear of all liens, claims, interests, and encumbrances to the highest bidder at the Auction ("**Successful Bidder**"), pursuant to sections 105 and 363 of the Bankruptcy Code;

b)       Authorizing the sale of the Assets to Successful Bidder free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f), and (m) and 365 of the Bankruptcy Code;

c)       Approving the assumption and assignment of certain executory contracts and unexpired leases under section 365 of the Bankruptcy Code;

d)       Scheduling the Auction and hearing for the sale of the Assets ("**Sale**");

e)       Approving the proposed form of the notice of (i) the Auction, the hearing to consider approval of the Sale ("**Sale Hearing**"), and related matters, and (ii) assumption, assignment and sale of the certain executory contracts and unexpired leases, substantially in the forms attached as **Exhibit 2** and **Exhibit 3** to the Bidding Procedures Order.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

f)  Granting such other related relief as provided in the Bid Procedures Order.

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order: (i) granting this Motion; (ii) approving the Bid Procedures as set forth in the proposed Bid Procedures Order; (iii) approving the Sale of the Assets to the Successful Bidder, free and clear of all liens, claims, encumbrances and other interests, subject to the bidding/auction process proposed by the Debtor; (iv) authorizing the assumption, assignment and sale of the certain executory contracts and unexpired leases; and (v) granting such other and further relief as is just and proper under the circumstances

Dated:  May 10, 2022

STEPTOE & JOHNSON LLP

By:  */s/ Jeffrey M. Reisner*

STEPTOE & JOHNSON LLP
Jeffrey M. Reisner (State Bar No. 143715)
jreisner@steptoe.com
Kerri A. Lyman (State Bar No. 241615)
klyman@steptoe.com
Joshua R. Taylor (*pro hac vice forthcoming*)
jrtaylor@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9423
Facsimile:  (213) 439-9599

*Proposed Special Counsel to the
Debtor and Debtor in Possession*

3

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................1

INTRODUCTION ............................................................................................................2

JURISDICTION AND VENUE .........................................................................................4

BACKGROUND ..............................................................................................................4

    A.    General Case Background ......................................................................4

    B.    The Debtor's Assets ................................................................................4

    C.    The Marketing Process ..........................................................................5

    D.    Bid Procedures Order ............................................................................6

    E.    Bid Procedures........................................................................................7

    F.    Assumption and Assignment Procedures ...........................................22

    G.    Scheduling and Notice.........................................................................25

    H.    Sale Order .............................................................................................28

ARGUMENT ................................................................................................................28

    A.    Approval of the Bidding Procedures is Appropriate and in the Best Interests of the Debtor's Estate and Stakeholders...............................28

        1.    Motion for Order Establishing Procedures for the Sale  of Estate Property ....................................................................29

    B.    If A Stalking Horse Bidder is Subsequently Designated, the Break-Up Fee Has a Sound Business Purpose and is Necessary to Preserve the Value of the Debtor's Estate  ...............................................................31

    C.    Secured Parties Should Be Authorized to Credit Bid on the Assets under Section 363(k) of the Bankruptcy Code .......................................34

    D.    The Procedure for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases is Appropriate..................................35

    E.    Approval of the Sale is Warranted Under § 363 ................................36

i

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

1.    The Sale of the Assets is Authorized by § 363 as a Sound Exercise of the Debtor's Business Judgment ...................................................................37

2.    The Sale of the Debtor's Assets Free and Clear of Liens and Other Interests is Authorized by § 363(f) ........................................................38

3.    The Sale Should Be Subject to the Protections of Section 363(m) of the Bankruptcy Code ....................................................................................43

F.    Relief from the 14-Day Waiting Period Under Rules 6004(h) and 6006(d) is Appropriate ....................................................................................................44

G.    The Applicable Requirements of LBR 6004-1 are Satisfied .................................45

CONCLUSION ...................................................................................................................45

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 995 Fifth Ave. Assocs.*,
    96 B.R. 24 (Bankr. S.D.N.Y. 1989) ...................................................................41

*In re Abbotts Dairies of Pa., Inc.*,
    788 F.2d 143 (2d Cir. 1986) ....................................................................47, 53

*In re America West Airlines, Inc.*,
    166 B.R. 908 (Bankr. D. Ariz. 1994) ..............................................................42

*In re ARSN Liquidating Corp. Inc.*,
    2017 WL 279472 (Bankr. D.N.H. Jan. 20, 2017) ...........................................50

*In re Atlanta Packaging Prods., Inc.*,
    99 B.R. 124 (Bankr. N.D. Ga. 1988) ...........................................................39, 40

*In re Atlanta Packaging Prods., Inc.*,
    99 BR. 124 (Bankr. N.D. Ga. 1988) ...............................................................47

*In re Barbecues Galore, Inc.*,
    Case No. 08-16036-MT (Bankr. C.D. Cal. Sept. 4, 2008) ..............................40

*In re Baroni*,
    2021 WL 3011907 (9th Cir. BAP July 13, 2021)........................................49, 50

*In re Bel Air Assocs., Ltd.*,
    706 F.2d 301 (10th Cir. 1983) ........................................................................53

*In re Bethel Healthcare, Inc.*,
    2017 WL 5256742 (Bankr. C.D. Cal. October 19, 2017) .................................47

*In re Bon Ton Rest. & Pastry Shop, Inc.*,
    53 B.R. 789 (Bankr. N.D. Ill. 1985) ...............................................................45

*Burtch v. Ganz (In re Mushroom Transp. Co.)*,
    382 F.3d 325 (3d Cir. 2004) ...........................................................................40

*In re Bygaph, Inc.*,
    56 B.R. 596 (Bankr. S.D.N.Y. 1986) ...........................................................45, 49

*Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*,
    181 F.3d 527 (3d Cir. 1999) ........................................................................40, 42

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

*Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*,
    103 B.R. 524 (Bankr. D.N.J. 1989) .................................................................45

*In re Case Engineered Lumber, Inc.*,
    No. 09–22499 (Bankr. N.D.Ga. Sept. 1, 2009) ...............................................43

*In re Christ Hospital*,
    502 B.R. 158 (Bankr. D.N.J. 2013) .................................................................51

*Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
    722 F.2d 1063 (2d Cir. 1983) ...................................................................12, 47

*Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    60 B.R. 612 (Bankr. S.D.N.Y. 1986) ..............................................................47

*In re CXM, Inc.*,
    307 B.R. 94 (Bankr. N.D. Ill. 2004) ...............................................................42

*In re Dan River, Inc.*,
    No. 04-10990 (Banker. N.D. Ga. Dec. 17, 2004) ............................................42

*In re Delaware & Hudson Ry. Co.*,
    124 BR. 169 (D. Del. 1991) .............................................................................47

*Doehring v. Crown Corp. (In re Crown Corp.)*,
    679 F.2d 774 (9th Cir. 1982) ..........................................................................40

*In re Dundee Equity Corp.*,
    1992 Bankr. LEXIS 436 (Bankr. S.D.N.Y. Mar. 6, 1992) ...............................49

*In re Elliot*,
    94 B.R. 343 (Bankr. E.D. Pa. 1988) ...............................................................49

*Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*,
    73 B.R. 616 (Bankr. E.D. Pa. 1987) ...............................................................53

*Ewell v. Diebert (In re Ewell)*,
    958 F.2d 276 (9th Cir. 1992) ..........................................................................53

*Folger Adam Security v. DeMatteis/MacGregor JV*,
    209 F.3d 252 (3d Cir. 2000) .....................................................................50, 52

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*,
    107 F.3d 558 (8th Cir. 1997) ....................................................................40, 47

*In re Gardens Regional Hospital and Medical Center, Inc.*,
    567 B.R. 820, 825 (Bankr. C.D. Cal. 2017) ....................................................50

iv

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*,
   331 B.R. 251 (N.D. Tex. 2005) ............................................................47

*In re Grumman Olson Indus. Inc.*,
   467 B.R. 694 (S.D.N.Y 2012) ...........................................................51

*In re Hupp Indus.*,
   140 B.R. 191 (Bankr. N.D. Ohio 1997)........................................41, 42

*In re La Paloma Generating, Co.*,
   2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017) ...............................50

*In re Lajijani*,
   325 B.R. 282 (B.A.P. 9th Cir. 2005) ....................................................47

*In re Lake Burton Dev., LLC*,
   2010 WL 5563622 (Bankr. N.D. Ga. Mar. 18, 2010) ..........................42

*In re Leckie Smokeless Coal Co.*,
   99 F.3d 573 (4th Cir. 1996) .................................................................51

*MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   837 F.2d 89 (2d Cir. 1988) ..................................................................52

*Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*,
   1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) ........................................53

*In re Marrose Corp.*,
   1992 WL 33848 (Bankr. S.D.N.Y. 1992).............................................41

*Meyers v. Martin (In re Martin)*,
   91 F.3d 389 (3d Cir. 1996) ..................................................................47

*Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*,
   930 F.2d 1132 (6th Cir. 1991) .............................................................49

*In re Natco Indus., Inc.*,
   54 B.R. 436 (Bankr. S.D.N.Y. 1985) ...................................................45

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*,
   78 F.3d 18 (2d Cir. 1996) ....................................................................45

*Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*,
   147 B.R. 650 (S.D.N.Y. 1992) ........................................40, 41, 42, 47

v

*Official Comm. of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.),*
    973 F.2d 141 (2d Cir. 1992) ...................................................................................47

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),*
    4 F.3d 1095 (2d Cir. 1993) ....................................................................................45

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),*
    163 F.3d 570 (9th Cir. 1998) .................................................................................53

*PBBPC, Inc. v. OPK Biotech, LLC (In re PBBPC, Inc.),*
    484 B.R. 860 (1st Cir. B.A.P. 2013) ......................................................................50

*In re Pisces Leasing Corp.,*
    66 B.R. 671 (E.D.N.Y. 1986) .................................................................................53

*In re PW, LLC,*
    391 B.R. 25 (9th Cir. BAP 2008) ...........................................................................50

*In re Rock Indus. Machinery Corp.,*
    572 F.2d 1195 (7th Cir. 1978) ...............................................................................53

*In re S.B. Restaurant Co.,*
    Case No. 14-13728 (Bankr. C.D. Cal. July 8, 2014) (J. Smith) ...........................40

*In re S.N.A. Nut Co.,*
    186 B.R. 98 (Bankr. N.D. Ill. 1995) .......................................................................42

*In re Sassoon Jeans, Inc.,*
    90 B.R. 608 (S.D.N.Y. 1988) .................................................................................53

*Securities and Exchange Commission v. Capital Cove Bancorp LLC,*
    2015 WL 12684446 (C.D. Cal. Nov. 19, 2015) .....................................................49

*In re Shay,*
    2017 WL 262040 (Bankr. C.D. Cal. January 18, 2017) ........................................47

*In re Slates,*
    2012 WL 5359489 (9th Cir. BAP October 31, 2012) ............................................47

*In re T Asset Acquisition Company, LLC,*
    No. 09-31853 (Bankr. C.D. Cal. Jan. 28, 2010) ..............................................42, 43

*In re Tama Beef Packing Inc.,*
    321 B.R. 469 (8th Cir. BAP 2005) .........................................................................43

*The Ninth Avenue Remedial Group v. Allis-Chalmers Corp.,*
    195 B.R. 716 (Bankr. N.D. Ind. 1996) ...................................................................52

vi

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

*In re Titusville Country Club*,
128 B.R. 396 (W.D. Pa. 1991) ...................................................47

*In re Tougher Indus.*,
2013 WL 1276501 (Bankr. N.D.N.Y. Mar. 27, 2013) .................51

*In re Trans World Airlines, Inc.*,
322 F.3d 283 (3d Cir. 2001) ...............................................50, 51

*United Mine Workers of Am. Combined Benefit Fund v. Walter Energy, Inc.*,
551 B.R. 631 (N.D. Ala. 2016) .................................................51

*In re Verity Health System of California, Inc.*,
No. 18-20151 (Bankr. C.D. Cal. Oct. 30, 2018)...................42, 43

*In re Verity*,
Case No. 18-20151 (Bankr. C.D. Cal. Oct. 31, 2018) ...............40

*In re Victor Valley Community Hospital*,
Case No. 10-39537 (Bankr. C.D. Cal. Oct. 7, 2010) ..................40

*In re Vista Marketing Group Ltd.*,
557 B.R. 630 (Bankr. N.D. Ill. 2016) ........................................51

*WBO P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBO P'ship)*,
189 B.R. 97 (Bankr. E.D. Va. 1995) .........................................51

*In re Women First Healthcare, Inc.*,
332 B.R. 115 (Bankr. D. Del. 2005) .........................................42

*In re WPRV-TV, Inc.*,
143 B.R. 315 (D.P.R. 1991) .....................................................47

**Statutes**

U.S.C. § 365(f)(2)...........................................................................45

11 U.S.C. § 105(a).................................................................38, 49

11 U.S.C. § 363(b).................................................................46, 52

11 U.S.C. § 363(b)(1).............................................................38, 46

11 U.S.C. § 365(a).................................................................44, 45

28 U.S.C. §§ 157 and 1334..........................................................15

28 U.S.C. §§ 1408 and 1409........................................................15

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rules 2002, 6004, and 6006 ...................................12, 38

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

# MEMORANDUM OF POINTS AND AUTHORITIES

Better 4 You Breakfast, Inc., as debtor and debtor in possession (the "<u>Debtor</u>" or "<u>B4YB</u>"), hereby moves (this "<u>Motion</u>") for entry of an order, pursuant to sections 105(a), 363, 365, 503, 507, 1107, and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 6004-1(b), and 9013-1 of the Local Bankruptcy Rules for the Central District of California (the "<u>Local Rules</u>") and seeks entry of an order as follows:

    i.    establishing bid procedures (the "<u>Bid Procedures</u>"), substantially in the form attached as <u>Exhibit 1</u> to the Bid Procedures Order, in connection with the sale or sales (each, a "<u>Sale</u>") of all or substantially all of the Debtor' assets (the "<u>Assets</u>"), pursuant to section 363 of the Bankruptcy Code;

    ii.    authorizing, but not directing, the Debtor, with the consent of Valley National Bank, as successor by merger to Bank Leumi USA (the "<u>Lender</u>"), and in consultation with the official committee of unsecured creditors (the "<u>Committee</u>"), to enter into a stalking horse agreement (a "<u>Stalking Horse Agreement</u>") with one or more parties (each, a "<u>Stalking Horse Bidder</u>") for a Sale (a "<u>Stalking Horse Bid</u>"), without further order of this Court;

    iii.    authorizing the Debtor, with the consent of the Lender and in consultation with the Committee, without further order of this Court, to offer a break-up fee of up to 3.0% of the total cash consideration offered for a Stalking Horse Bid (the "<u>Break-Up Fee</u>") and an expense reimbursement of up to $240,000 (the "<u>Expense Reimbursement</u>" and, together with the Break-Up Fee, the "<u>Bid Protections</u>") for the Stalking Horse Bidder, if any;

    iv.    scheduling an auction or auctions for a Sale (an "<u>Auction</u>") and approving the form and manner of notice thereof (the "<u>Bid Procedures/Auction Notice</u>");

1

v.     establishing certain procedures relating to the assumption and assignment of executory contracts and unexpired leases in connection with a Sale, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"), and approving the form and manner of notice of the proposed assumption and assignment of executory contracts and unexpired leases (the "Cure Notice"); and

vi.     setting a hearing for approval of any Sale (the "Sale Hearing") to approve the Sale free and clear of all liens, claims, encumbrances and other interests (collectively, the "Encumbrances") other than those permitted by the purchaser and, if not scheduled to be satisfied in full, by the affected secured creditor, and grant the purchaser the protections of § 363(m).

## INTRODUCTION

1.     By this Motion, the Debtor seeks approval of the Bid Procedures and related relief to facilitate its efforts to market and sell substantially all of its Assets under section 363 of the Bankruptcy Code. Debtor in consultation with its professionals, the Committee, and the Lender, has concluded that an immediate sale of all or substantially all of Debtor's assets is the best path forward as it will maximize the value of the estate for the benefit of all creditors. If momentum is maintained, the Debtor believes that a sale price that pays all creditors in full and provides for a distribution to equity holders is achievable.

2.     With the assistance of its proposed investment banker, Stout ("Stout") and in consultation with the Committee and with the consent of the Lender, the Debtor seeks to engage in a robust marketing process in order to identify one or more parties interested in pursuing a Sale. Prior to the commencement of the Bankruptcy Case, several interested parties have expressed an interest in pursuing a Sale.

3.     The Bid Procedures provide the formal framework for a Sale and have been structured to elicit value-maximizing bids for the Assets. Among other things, the Bid Procedures: (a) set forth the timeline for the Sale Process that is reasonable and appropriate to produce value-

2

maximizing bids for the Debtor's Assets and are consistent with the milestones set forth in the Cash Collateral Order (as defined below); (b) establish the basic rules for submitting bids for the purchase of the Debtor's Assets; (c) provide parameters for the selection of a Stalking Horse Bidder; and (d) provide the Committee with consultation rights at various stages in the process. The proposed Bid Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and, therefore, should be approved.

4.    Consistent with the Debtor's need to consummate a Sale quickly and efficiently, the Debtor proposes the following key dates and deadlines for the Sale Process:

| Date | Event |
| --- | --- |
| Friday, May [13], 2022 at 4:00 p.m. (PT) | Bid Procedures Objection Deadline |
| Tuesday, May [17], 2022 | Bid Procedures Hearing |
| Friday, May 20, 2022 | Filing and service of Bid Procedures/Auction Notice |
| Tuesday, May 31, 2022 at 12:00 p.m. (PT) | Deadline to Submit Stalking Horse Bid |
| Wednesday, June 1, 2022 | Deadline to file Potential Assumed/Assigned Contract and Cure Schedule |
| Wednesday, June 1, 2022 | Deadline to Designate Stalking Horse Bid/ Execute Stalking Horse APA |
| Wednesday, June 1, 2022 | Deadline to File Assumption and Assignment Notice |
| Tuesday, June 14, 2022 at 12:00 p.m. (PT) | Deadline to Submit Qualified Bids |
| Tuesday, June 14, 2022 at 4:00 p.m. (PT) | Cure/ Assignment Objection Deadline & Objection to Sale |
| Thursday, June 16, 2022 | Sale Auction |
| Friday, June 17, 2022 | Deadline to File Notice of Successful Bidder |
| Tuesday, June [21], 2022 | Sale Hearing |

3

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

| Monday, June 27, 2022 | Deadline to Close |

5.      Accordingly, as discussed in detail herein, the Debtor respectfully requests entry of an order substantially in the form attached as Exhibit A (the "Bid Procedures Order").

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and legal predicates for the relief sought herein are sections 105, 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Bankruptcy Rules 6004-1 and 9013 1.

## BACKGROUND

**A.      General Case Background**

8.      On February 24, 2022 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code in this Court.  The Debtor is in possession of its assets as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 cases.

9.      An official committee of unsecured creditors has been appointed in this case.

10.      BFYB is a food service company that prepares, packages, and delivers pre-packaged meals to institutional clients including schools, nursing homes, board and care facilities and others in the California and Las Vegas areas.  The company has approximately 400 clients for whom it produces and delivers approximately 100,000 meals per day including breakfast, lunch, and dinner meals, as well as snacks.

11.      B4YB is based in the City of Commerce were the meals are assembled.  The meals are then distributed to clients through leased warehouses in Los Angeles, San Francisco, Las Vegas, and the California Central Valley.

**B.      The Debtor's Assets**

4

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

12.    The Debtor's Assets generally consist of (i) cash, (ii) accounts receivable, (iii) inventory, (iv) office furniture, (v) office equipment, (vi) vehicles, (vii) machinery and equipment, (viii) contracts, (x) leases, and (xi) good will.

13.    In addition, B4YB has two wholly owned subsidiaries: (i) Balance Foods, LLC ("Balance Foods"), which manufactures and packages snack foods which are sold to B4YB and included in some of the meals prepared and sold by B4YB; and (ii) Moreno Bros. Distributing, LLC ("Moreno Bros") which provides logistical support and services to deliver B4YB meals and snacks as well as bread and tortilla products to clients.  Both Balance Foods and Moreno Bros employ approximately 20 additional employees.  On February 24, 2022, the Los Angeles Superior Court issued an Order appointing a Receiver for both Balance Foods and Moreno Bros.

14.    The Debtor proposes to sell all or substantially all of the Assets, including the stock of Balance Foods and Moreno Bros., in a form of transaction to be negotiated.  Any such sale shall be referred to as a "Transaction."

C.    **The Marketing Process**

15.    The Debtor's Sale process is being managed by its proposed investment banker, Stout.  A Motion to retain Stout shall be filed shortly.  Stout will be working closely with the Debtor's CRO, James Wong of Armory Consulting, and management to analyze the Debtor's current financial position, prepare marketing and diligence materials, and populate a digital data room (the "Data Room") for prospective purchasers interested in purchasing all or any portion of the Debtor's Assets.  Stout's work has largely just begun, Stout was not retained on a blank slate. There have been several potential buyers that have expressed interest in purchasing the Debtor since the Petition Date, and the Debtor is actively negotiating with at least two (2) interested parties.

16.    Debtor believes that the most likely buyer for the company will be a strategic buyer rather than a financial investor who is not familiar with this industry segment.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

17. To date, the Debtor has identified and contacted five potential buyers, both industry and financial players. To date, four of those parties have signed non-disclosure agreements. One has received access to the Data Room maintained by the Debtor, has begun to conduct due diligence, and has provided a non-binding indications of interest and expressed interest in purchasing substantially all of the Debtor's assets and at a price that is expected to satisfy all claims in full and provide a return to equity.

18. Due to the fact the Debtor is in the midst of bid season and renewals during the month of May, conducting the sale process on an accelerated basis is critical to preserving value. Schools start up as early as the first week of August, and substantial planning must be performed and expenses incurred between June and July to be ready for the first day. Equipment must be ordered, employees must be hired and trained, and logistics arranged so as to ensure successful execution of delivery to over 400 schools in the greater Los Angeles area, San Francisco Bay Area and Las Vegas metropolitan areas. The Debtor anticipates delivering over 120,000 meals daily to low income students and seniors for the '22-'23 school year. A sale needs to be completed before the end of June in order that the Debtor will be in a position to continue to service its ultimate customers in August 2022 without fail.

**D.    Bid Procedures Order**

19. By this Motion, the Debtor seeks the entry of the Bid Procedures Order: (i) approving the Bid Procedures; (ii) approving various forms and the manner of notice thereof; (iii) establishing the Assumption and Assignment Procedures; (iv) authorizing the Debtor, with the consent of the Lender and in consultation with the Committee, to designate a Stalking Horse Bidder and, with the consent of the Lender and in consultation with the Committee, to provide the Bid Protections in connection therewith; (v) approving the Bid Protections; and (iv) scheduling the Auction and a Sale Hearing.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

20.    Additionally, by this Motion, the Debtor further requests that, at the Sale Hearing, the Court enter an order approving the Sale of the Assets free and clear of all liens, claims, and encumbrances, subject to assumed liabilities and the liens of unsatisfied secured creditors.

**E.    Bid Procedures**

21.    To maximize the value of its Assets for the benefit of the Debtor's estate and creditors, the Debtor seeks to implement a competitive bidding process to culminate in a Sale.  As described more fully in the Bid Procedures and the Bid Procedures Order, the Debtor seeks approval to sell the Assets to a Qualified Bidder (as defined below) that makes the highest or otherwise best offer for the Assets.  The Debtor requests that competing bids for the Assets, including the submission of any Stalking Horse Bids, be governed by the Bid Procedures and Bid Procedures Order, which, among other things, collectively establish:

a.  the requirements that an Interested Party must satisfy to be entitled to participate in the bidding process and become a Potential Bidder [Bid Procedures at § I.A.2];

b.  the requirements for Potential Bidders to submit bids and the method and criteria by which such bids become Qualified Bids [Bid Procedures at §§ I.B.3, I.C];

c.  the process for the selection of a Stalking Horse Bid, if any [Bid Procedures at § I.B.1];

d.  the deadline by which bids must be submitted [Bid Procedures at § I.C.1];

e.  the Assumption and Assignment Procedures for executory contracts and unexpired leases [Bid Procedures at § II]; and

f.  various other matters relating to the Sale Process generally, including the Auction, designation of Successful Bidder(s), and Sale Hearing [Bid Procedures at §§ I.D, I.E, I.G].

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

22.      In addition, the Debtor seeks the authority, subject to the terms of the Bid Procedures Order and with the consent of the Lender and in consultation with the Committee, to accept a Stalking Horse Bid from a Potential Bidder and to enter into a Stalking Horse Agreement with a Stalking Horse Bidder in the Debtor's business judgment, with the consent of the Lender and in consultation with the Committee.  A Stalking Horse Purchaser will aid Debtor in its sale process by providing a baseline from which other interested parties may bid, will ensure continuity of Debtor's business for its customers, employees and vendor base, and will result in a firm commitment to consummate a Transaction and definite consideration on which Debtor can begin to formulate a resolution of this chapter 11 case.  To facilitate a competitive, value-maximizing Sale, by this Motion, the Debtor requests authority, in the exercise of its business judgment, with the consent of the Lender and in consultation with the Committee, without further order of this Court, to offer Bid Protections to a Stalking Horse Bidder in accordance with the terms of any Stalking Horse Agreements, in the form of (a) a Break-Up Fee of up to an aggregate of three percent (3%) of the cash portion of the purchase price of the Stalking Horse Bid and (b) expense reimbursement for the Stalking Horse Bidder in connection with its bids, up to a maximum amount of $240,000.

23.      To the extent the Debtor, with the consent of the Lender and in consultation with any Committee, designates a Stalking Horse Bidder, the Debtor shall, by **June 1, 2022**, file a notice of such determination with the Court (the "Stalking Horse Bidder Notice").  The Stalking Horse Bidder Notice, if filed, shall also include a copy of any Stalking Horse Bidder's Stalking Horse Agreement.

24.      After submission of all Qualified Bids (as defined below), the Debtor, after consultation with Committee and with the consent of the Lender, will select the highest or otherwise best Qualified Bid for all or substantially all of the Assets (any one or more such Qualified Bids, a "Baseline Bid").  In no event shall any Qualified Bidder, other than a Stalking Horse Bidder, be entitled to any Bid Protections, unless authorized by separate order of this Court.

8

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

25.     To the extent the Debtor receives a Qualified Bid prior to selecting a Stalking Horse Bidder, which it deems to be the highest and best Bid, given the amount of consideration offered (with such consideration sufficient to pay all creditors in full), and obviates the need to conduct an auction, after consultation with Committee and with the consent of the Lender, the Debtor requests the authority to select such Qualified Bid as the Successful Bid, cancel the auction, and proceed with the Sale Hearing.

26.     The Bid Procedures contain the following provisions, some of which are required to be highlighted pursuant to Local Rule 6004-1(b) and which are more fully described in the Bid Procedures and the Bid Procedures Order:[1]

(a)  **Provisions Governing Qualification of Bidders** [Bid Procedures § I.A.2].   To participate in the bidding process or otherwise be considered for any purpose under the Bid Procedures, an interested party (each, an "Interested Party") must deliver or have previously delivered to the Debtor, if determined to be necessary by the Debtor in its sole discretion, the following documents (collectively, the "Preliminary Bid Documents"): (a) an executed confidentiality agreement using the Debtor's form, as may be amended, on terms reasonably acceptable to the Debtor (a "Confidentiality Agreement"), to the extent not already executed; (b) a statement and other factual support demonstrating to the Debtor's satisfaction in the exercise of its reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing the Debtor's Assets; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale Transaction, which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, the party

---

[1] These provisions are excerpted from the Bid Procedures.  However, to the extent any inconsistencies between this summary and the Bid Procedures exist, the Bid Procedures shall govern.  Terms used but not defined herein shall have the definitions ascribed to them in the Bid Procedures.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

that will bear liability for a breach), the adequacy of which will be assessed by the Debtor (including in consultation with its advisors).

(b) **Stalking Horse Bidder and Bid Protections** [Bid Procedures § I.B.1].  The Debtor, in its discretion, exercised in good faith and in consultation with the Committee and with the consent of the Lender, may execute, subject to higher or otherwise better offers, a purchase agreement (a "Stalking Horse Agreement") with a Qualified Bidder that submits a Qualified Bid (as defined below) for the Debtor's Assets (a "Stalking Horse Bid").  If the Debtor chooses to enter into a Stalking Horse Agreement with a Stalking Horse Bidder, the Debtor, in its discretion, exercised in good faith and in consultation with the Committee and with the consent of the Lender, may offer the Stalking Horse Bidder(s): (i) a break-up fee of no more than 3.0% of the total cash consideration payable under such Stalking Horse Agreement (the "Break-Up Fee") plus (ii) expense reimbursement for the Stalking Horse Bidder's actual out-of-pocket costs of up to $240,000 for a sale of the Debtor's Assets (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").

(c) Provisions Governing Qualified Bids [Bid Procedures § I.C.2]

    (i)    *Assets*.  Each Interested Party, Potential Bidder, and Qualified Bidder (each, a "Bidder" and, collectively, the "Bidders") must state that the Bid includes an offer by the Bidder to effectuate a Sale Transaction and identify which Assets are included in the Bid.

    (ii)    *Good Faith Deposit*.  Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash, in an amount to be determined by the Debtor, but in any event no less than 10% of the Bidder's proposed Purchase Price (as defined below), which will be held in an escrow or trust account on the terms set forth in the Bid Procedures and which deposit shall be forfeited if such bidder is the

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

Successful Bidder and breaches its obligation to close; *provided however*, that if the Lender submits a credit bid, the Lender shall not be required to post a Good Faith Deposit.  Each Bid must provide for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Purchase Agreement equal to the amount of the Deposit.

(iii)    *Purchase Price*.  Each Bid must clearly set forth the cash purchase price (the "Cash Consideration") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "Purchase Price") including, without limitation, which executory contracts and unexpired leases the Bidder expects the Debtor to assume and assign to the Bidder (the "Transferred Contracts") and which liabilities, if any, of the Debtor the Bidder is agreeing to assume (the "Assumed Liabilities").  The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtor (in consultation with the Committee and with the consent of the Lender).  If a Stalking Horse Bidder has been selected by the Debtor, the cash component of any other Qualified Bid must be no less than an amount necessary to satisfy the Break-Up Fee and Expense Reimbursement, as defined below, and be a Topping Bid.  In order for the Bid to qualify as a Topping Bid, it must provide for consideration at Closing (as defined below) that is equal to or in excess of the sum of: (i) the Stalking Horse Bid; (ii) the Expense Reimbursement; (iii) the Break-Up Fee; and (iv) the Minimum Increment (as defined below).

(iv)    *Binding and Irrevocable*.  Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until two (2) business

11

**MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

days after the closing of the Sale with the Successful Bidder or the Back-Up Bidder, as applicable (the "<u>Closing</u>").

(v)  *Contemplated Transaction Documents*.  Each Bid must include an executed purchase agreement (a "<u>Purchase Agreement</u>") marked against the form asset purchase agreement provided by the Debtor, which shall be posted in the Data Room (the "<u>Form APA</u>"), pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale Transaction including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Form APA; (ii) specification of the proposed Purchase Price [allocated, if applicable, as set forth in section I.C.2.iii of the Bid Procedures]; and (iii) any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "<u>Contemplated Transaction Documents</u>").  The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtor than the provisions contained in any applicable Stalking Horse Agreement.  A Bid must identify with particularity each and every condition to closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents.  **The Contemplated Transaction Documents must include a commitment to close by no later than June 27, 2022**.  A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtor.

(vi)  *Contingencies*.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be subject to the accuracy in all material respects at Closing of specified representations and warranties at or before Closing or the satisfaction in all material respects at Closing of specified conditions.  A

12

Bid must disclose any governmental approvals identified by the Qualified Bidder other than as set forth in the Contemplated Transaction Documents that may impact the evaluation of such Bid.

(vii)    *No Collusion*.  Each Bid must include a representation that the Bidder has not engaged in any collusion with respect to its Bid submission (though Qualified Bidders are permitted to make joint bids) and that the Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

(viii)    *Authorization and Identity*.    Each Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents.  A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of each equity holder or other financial backer of the Bidder if such Bidder is formed for the purpose of submitting the Bid.

(ix)    *Committed Financing*.    Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale Transaction and provide adequate assurance of future performance under all Transferred Contracts.    Such information should include, *inter alia*, the following:

a.    the Potential Bidder's current financial statements (audited, if they exist);

b.    contact names, telephone numbers, and e-mail addresses for verification of financing sources;

13

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

      c.   evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale Transaction; and

      d.   any other form of financial disclosure of credit-quality support information acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated Sale Transaction.

(x)   *Adequate Assurance of Future Performance*.  Each Bid must demonstrate, in the Debtor's reasonable business judgment, that the potential Bidder can provide adequate assurance of future performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code.

(xi)   *Expenses and Disclaimer of Fees*.  Other than the Stalking Horse Bidder, a Bidder may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment from the Debtor, the Estate, the Lender or the Committee, or from their respective members and representatives.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code, relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

(xii)   *Payment of Break-Up Fee and Expense Reimbursement*.  If a Stalking Horse Bidder has been selected, a Bid must allow for the payment of the Break-Up Fee and Expense Reimbursement to the applicable Stalking Horse Bidder from the first proceeds of the cash portion of the Purchase Price of such Bid upon Closing.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

(xiii)  _Non-Reliance_. A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

(xiv)  _As Is, Where Is._  A Bid must include an acknowledgement and representation of the Qualified Bidder that it understands that any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate, except to the extent set forth in the Contemplated Transaction Documents of the Successful Bidder

(d)  **Bid Deadline.** A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtor so as to be received on or before **Wednesday, June 14, 2022 at 12:00 p.m. (PT)** (the "Bid Deadline"); provided that Debtor may extend the Bid Deadline without further order of the Court, after consultation with the Committee and with the consent of the Lender. To the extent that the Bid Deadline is extended for all parties, Debtor shall file a notice on the docket of this chapter 11 case indicating the same. Any party that does not submit

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.

(e)    **Right to Credit Bid** [Bid Procedures § I.B.4].  Any Qualified Bidder (including any Secured Party, which is deemed a Qualified Bidder) who has a valid and perfected lien on any Assets of the Debtor's estate (a "Secured Creditor") and the right and power to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of section 363(k) of the Bankruptcy Code; *provided however*, that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured.  Any credit bid by a Secured Party shall provide for the payment in full in cash of the claim held by a senior lien holder on the assets subject to the credit bid, and the Bid Protections afforded to any stalking horse (which such amount of Bid Protection payment shall then be added to such Secured Party's debt) to the extent they are not subordinated to such Secured Party's claim.

(f)    **Provisions Governing the Auction** [Bid Procedures § I.D].  After the receipt and review of at least one Qualified Bid, the Debtor shall make a determination, in consultation with the Committee and with the consent of the Lender, whether to accept such Qualified Bid(s) for all of the Assets, or to proceed with the Auction for a Sale Transaction(s).  The Debtor will only proceed with the Auction if the Debtor's Chief Restructuring Officer, after consultation with the Committee and with the consent of the Lender, concludes that an Auction for a Sale Transaction is likely to produce a higher and better Qualified Bid.

To the extent the Debtor receives Qualified Bids and determines to proceed to Auction, the Debtor shall determine, in consultation with the Committee and with

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

the consent of the Lender, which Qualified Bid represents the then highest or otherwise best Bid for all of the Assets (the "Baseline Bid"). The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid (as defined herein) shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to its estate, including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing; and (c) the amount of unassumed liabilities attendant to such Bid, and (d) the net economic effect of any changes to the value to be received by the Debtor's creditors from the proposed Sale Transaction (collectively, the "Bid Assessment Criteria").

On or before **June 15, 2022**, the Debtor shall file a notice on the Court's docket (an "Auction Notice") providing (i) notice of whether the Auction will be conducted in person, telephonically, or via a video conferencing service; and (ii) notice of whether the Debtor believes, (after consultation with the Committee and with the consent of the Lender), that the Auction should be held so as to maximize value for the estate.

Unless otherwise designated by the Debtor (in consultation with the Committee and with the consent of the Lender), the Auction shall commence at **10:00 a.m. (Pacific Time) on a date no later than June 16, 2022,** at the offices of Steptoe & Johnson LLP, 633 West Fifth Street, Suite 1900 Los Angeles, California 90071, or at such other place designated by the Debtor.  In the Debtor's discretion, the Auction may be held by telephonic or video conference.

The Auction shall be conducted according to the following procedures:

(i)     *Participation at the Auction*. Only the Stalking Horse Bidder and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction.  Only the authorized representatives and professional advisors of

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

each of the Qualified Bidders, the Stalking Horse Bidder, the Debtor, the Committee, the Lender, and the U.S. Trustee shall be permitted to attend the Auction, unless otherwise agreed by the Debtor, in consultation with the Committee and with the consent of the Lender, twenty-four (24) hours prior to the commencement of the Auction.

Except as otherwise set forth herein, the Debtor (in consultation with the Committee and with the consent of the Lender,) may conduct the Auction in the manner it determines will result in the highest or best offer for the Assets in accordance with the Bid Procedures.

In the event, after the conclusion of the Auction, that certain discrete assets and/or discrete groups of assets which are not included in the Successful Bid have not been sold (the "Unsold Assets"), the Debtor may, (in consultation with the Committee and with the consent of the Lender), resume an auction for the sale of the Unsold Assets, on such bid procedures as may be implemented by the Debtor in its discretion.

(ii)    *The Debtor Shall Conduct the Auction*.  The Debtor and its professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtor shall describe the terms of any Baseline Bid.  The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtor (in consultation with the Committee and Lender), and may take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate.  All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  The Debtor reserves the right to conduct the Auction in the manner designed to maximize value based upon the nature and extent of the

18

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

Qualified Bids received in accordance with the Bid Procedures. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, Bid Procedures, the Auction, or the proposed Sale Transaction.

(iii)    *Terms of Overbids*. An "Overbid" is any bid made at the Auction by a Qualified Bidder subsequent to the Debtor's announcement of the applicable Baseline Bid that satisfies the following conditions:

a.    Minimum Increment. During the Auction, bidding shall begin with the Baseline Bid (which include the Bid Protections, if any). Any Overbid after the Baseline Bid shall be made in increments of (i) at least $100,000, above the Baseline Bid (the "First Minimum Increment") and (ii) after the first Overbid, of at least $250,000 (the "Subsequent Minimum Increment") in cash or other consideration acceptable to the Debtor. Notwithstanding the foregoing, the Debtor shall retain the right, in consultation with the Committee and with the consent of the Lender, to modify the bid increment requirements on the record at the Auction in consultation with the Committee and Lender.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor (in consultation with the Committee and with the consent of the Lender,) accepts a higher Qualified Bid as an Overbid.

b.    Consideration of Overbids. The Debtor reserves the right, in its reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the

19

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

c. <u>Closing Evidence</u>. To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtor demonstrating such Qualified Bidder's ability to close the Sale Transaction proposed by such Overbid.

(iv) *Additional Procedures*. The Debtor (in consultation with the Committee and with the consent of the Lender) may (a) determine which Qualified Bid, if any, is the highest or best offer for the Assets and (b) reject at any time before entry of an order of the Court approving the sale of the Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures; or (iii) contrary to the best interest of the Debtor, its estate, and creditors. The Debtor (in consultation with the Committee and with the consent of the Lender) may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders.  At the Debtor's discretion, the Auction proceedings may be recorded by audio, video or both.

(v)    *Consent to Jurisdiction as Condition to Bidding*.  All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

(vi)    *Closing the Auction*.  The Auction shall continue until there is only one Qualified Bid for the Assets that the Debtor determines, in consultation with the Committee and with the consent of the Lender, is the highest or otherwise best Qualified Bid (such Qualified Bid, the "Successful Bid"), and that further bidding is unlikely to result in a higher or otherwise better Bid, at which point, the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction.  In selecting the Successful Bid, the Debtor may consider all factors, including, the Bid Assessment Criteria.  Unless the Successful Bid provides for cash consideration sufficient to pay in full the allowed debt of the Lender, the terms of the Successful Bid must be acceptable to the Lender.

Upon the closing of the Auction, the Debtor (in consultation with the Committee and with the consent of the Lender) shall identify the Successful Bidder and the Successful Bid as soon as reasonably practicable which

21

highest or best offer will provide the greatest amount of net value to the Debtor, and advise the Qualified Bidders of such determination.

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtor in the exercise of its reasonable business judgment, in consultation with the Committee and with the consent of the Lender, shall be required to serve as the back-up bidder (the "Back-Up Bidder").  The identity of the Back-Up Bidder(s) and the amount and material terms of the final Bid(s) of the Back-Up Bidder(s) (the "Back-Up Bid(s)") shall be announced by the Debtor at the conclusion of the Auction at the same time the Debtor announces the Successful Bid.  Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the earlier of the Closing of the Sale Transaction with the Successful Bidder, or fifteen (15) business days after the confirmation of Successful Bidder as same.  The Good Faith Deposit of the Back-Up Bidder shall be returned by the Debtor within three (3) days after Closing.

Prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made The Debtor shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

As stated above, the Bid of the Successful Bidder and the Back-Up Bidder must be irrevocable until Closing

**F.**    **Assumption and Assignment Procedures**

27.    The Debtor is seeking approval of the Assumption and Assignment Procedures for notifying counterparties to executory contracts and unexpired leases (the "Contract

22

Counterparties") of, among other things, proposed Cure Amounts (as defined below) with respect to those executory contracts and unexpired leases that the Debtor may assume and assign and/or transfer in connection with a Sale Transaction to the Successful Bidder (the "Potential Assumed/Assigned Contracts").

28.    By **June 1, 2022**, the Debtor will file a notice (the "Assumption and Assignment Notice") identifying the Potential Assumed/Assigned Contracts (such list, the "Potential Assumed/Assigned Contract and Cure Schedule"),[2] substantially in the form attached as Schedule A to Exhibit 3 to the Bid Procedures Order, and serve such notice on all Contract Counterparties to the Potential Assumed/Assigned Contracts.  The Assumption and Assignment Notice served on each Contract Counterparty shall: (i) identify Potential Assumed/Assigned Contracts; (ii) identify the Debtor counterparty to such Potential Assumed/Assigned Contracts; (iii) list the proposed cure amounts, if any, that the Debtor believes must be paid to cure all defaults outstanding under each Potential Assumed/Assigned Contract (the "Cure Amounts") as of such date; (iv) include a statement that assumption and assignment of such Potential Assumed/Assigned Contract is not required or guaranteed; and (v) inform such Contract Counterparty of the requirement to file any Cure/Assignment Objection (as defined below) by the Cure/Assignment Objection Deadline (as defined below).  Service of the Potential Assumed/Assigned Contract and Cure Schedule upon a Contract Counterparty does not constitute an admission that a particular Potential Assumed/Assigned Contract is an executory contract or unexpired lease, or confirm that the Debtor is required to assume and/or assign such contract or lease.[3]

29.    The Debtor further requests that a Contract Counterparty must file any objection to the Cure Amount and/or the assumption and assignment of such Potential Assumed/Assigned

---

[2] For the avoidance of doubt, the Debtor reserves all rights to remove any executory contract or unexpired lease from the Potential Assumed/Assigned Contract and Cure Schedule prior to Closing of any Sale Transaction(s), in which instance such executory contract or unexpired lease will not be a Transferred Contract (as such term is defined below).

[3] The Debtor reserves all rights concerning the characterization of the Potential Assumed/Assigned Contracts in all respects.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

Contract by **June 14, 2022 at 4:00 p.m. (Pacific Time)** (the "Cure/Assignment Objection Deadline").

30.    In addition, if, prior to the Closing of the Auction, the Debtor, Successful Bidder, or Backup Bidder, as applicable, in accordance with the Bid Procedures, identify additional executory contracts or unexpired leases that such wishes to add to or remove from to the Potential Assumed/Assigned Contracts and Cure Schedule (each an "Additional Contract") the Debtor shall, within two (2) calendar days, or as soon as reasonably practicable, of making or being informed of such a determination, send a supplemental Assumption and Assignment Notice (a "Additional Assumption and Assignment Notice") to the applicable Contract Counterparties to such Additional Contracts.

31.    The Debtor requests that the Court require that any objections to a proposed Cure Amount and/or any other objections to the assumption and assignment of any of the Potential Assumed/Assigned Contracts must: (i) be made in writing and filed on the docket for this chapter 11 case no later than the Cure/Assignment Objection Deadline; (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged to be due by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (iv) be served upon the Notice Parties (as defined in the Bid Procedures), so as to be actually received by such parties on or before the Cure/Assignment Objection Deadline

32.    In addition, the Debtor requests that objections from any Contract Counterparty to an Additional Assumption and Assignment Notice (an "Additional Potential Assignment/Cure Objection") must: (i) be made in writing and filed on the docket by the later of (a) the Cure/Assignment Objection Deadline and (b) seven (7) calendar days after the Debtor files and serves the Additional Assumption and Assignment Notice; (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract

**MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

Counterparty, and include contact information for such Contract Counterparty; (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules; and (iv) be served upon the Notice Parties (as defined in the Bid Procedures) so as to be actually received on or before seven (7) calendar days after the Debtor files and serves the Additional Assumption and Assignment Notice (the "Additional Potential Assignment Objection Deadline").

33.     The Assumption and Assignment Notice also provides that Cure/Assignment Objections, if any, will be heard at (i) the Sale Hearing or (ii) on such other date subsequent to the Sale Hearing but before the Closing, as the Court may designate prior to, during, or after the Sale Hearing (the "Cure/Assignment Hearing").  Any Additional Assumption and Assignment Notice shall provide that Additional Potential Assignment/Cure Objections will be resolved at a hearing to be held by the Court (i) on or before seven (7) calendar days from the timely filing of the Additional Potential Assignment/Cure Objection; (ii) at the Cure/Assignment Hearing; or (iii) such other date designated by the Court.

34.     At the Sale Hearing, (i) the Successful Bidder shall present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder with respect to the Transferred Contracts and (ii) the Debtor will request entry of an order approving the assumption and assignment of any or all Potential Assumed/Assigned Contracts to be assumed by the Debtor and assigned to the Successful Bidder.  For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of all parties-in-interest

**G.     Scheduling and Notice**

35.     Pursuant to the *Order Approving Stipulation to (I) Amend the Order Authorizing Further Use of Cash Collateral on an Interim Basis; (II) Authorize Continued Use of Cash Collateral; and (III) Grant Related Relief* [Docket No. 212] (the "Cash Collateral Order"), the Debtor is required to (i) file a Motion for entry of a Bid Procedures Order by no later than **May 6, 2022**, or such later date as may be consented to by the Lender; (ii) conduct an auction for

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

substantially all of the Debtor's assets no later than **June 17, 2022**; and (iii) obtain entry of an

order approving the Sale, no later than **two (2) Business Days** following the closing of the Auction.

In addition, the Cash Collateral Order requires that the Closing occur no later than **five (5)**

**Business Days** following the entry of the Sale Order.

36.     Given the Debtor's liquidity needs and the pre-petition interest in the Debtor's

assets, the proposed timeline is likely sufficient to complete a fair and open sale process that will

maximize the value received for the Assets.  The most likely Potential Bidders are among those

who previously indicated interest and had access to the Data Room prior to the filing of this Motion

to perform due diligence.  Thus, these Potential Bidders need a shorter length of time for any

additional due diligence to submit competing bids.  However, if new Potential Bidders emerge,

the proposed timeline will provide them with sufficient time to perform due diligence given that

the process is well understood at this juncture and all relevant materials are readily available.  Thus,

the schedule proposed above will allow for the consummation of the Sale Transaction as quickly

as possible and in a manner designed to maximize the value received for the Assets.

37.     **Notice of Motion**.  On the date the notice of this Motion is filed or as soon as is

practicable thereafter, the Debtor will cause this Motion and all exhibits hereto, the Bid Procedures,

and a copy of the proposed Bid Procedures Order, to be served upon (a) the Office of the United

States Trustee for the Central District of California; (b)counsel to the Lender, (c) counsel for the

other pre-petition Secured Parties; (d) counsel for the Committee; (e) all persons and entities that

have filed a request for service of filings in the Chapter 11 case pursuant to Bankruptcy Rule 2002;

(f) all parties reasonably known to the Debtor that assert liens, claims, and encumbrances, and

other interests with respect to the Assets; (g) all entities known to have expressed an interest in

bidding on the Assets; (h) all known counterparties to the Debtor's executory contracts and

unexpired leases; and (i) any federal, state or local governmental agency to the extent required by

the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or order of the Court. (collectively,

the "Sale Notice Parties").

**MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

38.    **Notice of Bid Procedures**. Within two (2) calendar days of the entry of the Bid Procedures Order, or as soon thereafter as practicable, the Debtor shall cause to be served, by first-class mail, postage prepaid, a notice setting forth, among other things, the dates established for submission of Qualified Bids, the Auction, and the Sale Hearing, substantially in the form attached to the Bid Procedures Order as Exhibit 2, upon the Sale Notice Parties and all of the Debtor's creditors.

39.    Debtor will post the Sale Notice and the Bidding Procedures Order on the Court's website in accordance with the Local Rules for the Bankruptcy Court for the Central District of California.

40.    **Notice of Successful Bidder(s)**. Following the Auction, the Debtor will promptly file with the Court a notice (the "Notice of Successful Bidder") that will inform the Court of the results of the Auction. The Notice of Successful Bidder will identify, among other things: (i) the Successful Bidder as the proposed purchaser of the Assets; (ii) the amount and form of consideration to be paid by the Successful Bidder for the Assets; (iii) the liabilities to be assumed by the Successful Bidder; and (iv) the Potential Assumed/Assigned Contracts to be assumed by the Debtor and assigned to the Successful Bidder, or the Debtor's rights and interests therein sold and transferred to the Successful Bidder, as the case may be, in connection with the Sale Transaction (the "Transferred Contracts"). The Notice of Successful Bidder will also include similar information relating to the Back-Up Bidder and the Back-Up Bid. In addition, the Debtor will attach to the Notice of Successful Bidder: (i) the proposed order approving the Sale ("Sale Order") to the Successful Bidder; (ii) a copy of the Purchase Agreement entered into by the Debtor and the Successful Bidder following the Auction; and (iii) any additional information or documentation relevant to the Successful Bid. The Debtor will file the Notice of Successful Bidder on the docket for the chapter 11 case as promptly as is reasonably practicable prior to the Sale Hearing, but will not be required to serve the same on any parties-in-interest in the Chapter 11 case.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**H.    Sale Order**

41.    To ensure the Debtor is in compliance with the terms of the Cash Collateral Order, and in light of the Debtor's limited liquidity, the Debtor requests that this Court set the Sale Hearing for a date that is not later than **June 21, 2022**.  At the Sale Hearing, the Debtor intends to seek the entry of the Sale Order: (a) approving the Sale free and clear of all liens, claims, interests, and other encumbrances, and (b) authorizing the assumption and assignment of the Transferred Contracts, among other things.  Pursuant to the Sale Order, the Debtor will sell any Assets that are the subject of a Sale Transaction free and clear of all liens, claims, interests, and other encumbrances to the fullest extent possible pursuant to section 363(f) of the Bankruptcy Code, including without limitation, successor liability or similar theories (except for those Assumed Liabilities and obligations expressly assumed by the Successful Bidder) and the Successful Bidder will be protected from liability for and cannot be pursued for any claims owed by the Debtor, except as otherwise agreed by the Successful Bidder and the Debtor or as set forth in the Sale Order.  In addition, the Sale Order will have findings that the Sale is not a fraudulent conveyance. The Debtor will file a proposed form of Sale Order (the "Proposed Sale Order") on or before **June 10, 2022**.  The Bid Procedures provide proper and adequate notice for these and the other terms and conditions of the bidding, Auction, and Sale Processes.

## ARGUMENT

**A.    Approval of the Bidding Procedures is Appropriate and in the Best Interests of the Debtor's Estate and Stakeholders**

42.    Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate [.]" 11 U.S.C. § 363(b)(1). Section 105(a) provides in pertinent part that "[t]he Court may issue any order, process or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Rules") govern the scope of the notice to be provided in the event a debtor elects to sell property of the estate under § 363.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

43.    With respect to the procedures to be adopted in conducting a sale outside the ordinary course of a debtor's business, Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the debtor provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. P. 6004(f). LBR 6004-1 provides, in pertinent part, as follows:

1.    **Motion for Order Establishing Procedures for the Sale of Estate Property**

(2) <u>Contents of Notice [of a Sale Procedure Motion].</u> The notice must describe the proposed bidding procedures and include a copy of the proposed purchase agreement. If the purchase agreement is not available, the moving party must describe the terms of the sale proposed, when a copy of the actual agreement will be filed with the court, and from whom it may be obtained. The notice must describe the marketing efforts undertaken and the anticipated marketing plan, or explain why no marketing is required. […]

(3) <u>Service of the Notice and Motion</u>. The moving party must serve the motion and notice of the motion and hearing by personal delivery, messenger, telephone, fax, or email to the parties to whom notice of the motion is required to be given by the FRBP or by these rules, any other party that is likely to be adversely affected by the granting of the motion, and the United States trustee. The notice of hearing must state that any response in opposition to the motion must be filed and served at least 1 day prior to the hearing, unless otherwise ordered by the court. […]

(6) <u>Break-Up Fees</u>. If a break-up fee or other form of overbid protection is requested in the Sale Procedure Motion, the request must be supported by evidence establishing: (A) That such a fee is likely to enhance the ultimate sale price; and (B) The reasonableness of the fee. […]

29

LBR 6004-1(b).

44.    Neither the Bankruptcy Code nor the Rules contain specific provisions with respect to the procedures to be employed by a debtor in conducting a public or private sale. Nonetheless, as one court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).  Additionally, courts have long recognized the need for competitive bidding at hearings; "[c]ompetitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize bidding, not restrict it.'" *Id.*; *see also Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor's fiduciary duties included maximizing and protecting the value of the estate's assets); *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564-65 (8th Cir. 1997) ("[A] primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."). Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate and, therefore, are appropriate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 536-37 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide benefit to debtor's estate); *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (such sale procedures "encourage bidding and to maximize the value of the Assets").

45.    Courts frequently approve competitive bidding procedures like the proposed Bid Procedures as a means of ensuring that such sales will maximize value for the estate.  *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.),* 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid amounts, deposits, and comparable deal terms to be used by all overbidders); *In re Verity*, Case No. 18-20151 (Bankr. C.D. Cal. Oct. 31, 2018) (J. Robles) (order approving qualified bidder, overbidding and other sale/auction procedures); *In re S.B.*

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

*Restaurant Co.*, Case No. 14-13728 (Bankr. C.D. Cal. July 8, 2014) (J. Smith) (order approving qualified bidder, overbidding and other sale/auction procedures); *In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal. Oct. 7, 2010) (J. Bauer) (order approving qualified bidder, overbidding and other sale/auction procedures); *In re Barbecues Galore, Inc.*, Case No. 08-16036-MT (Bankr. C.D. Cal. Sept. 4, 2008) (J. Tighe) (similar)

46.     Here, the Bidding Procedures are designed to promote the paramount goal of any proposed sale of property of the Debtor's estate: maximizing the value of sale proceeds received by the estate.  The Bidding Procedures provide for an orderly and appropriately competitive process through which interested parties may submit offers to purchase the Assets.  Specifically, the Debtor, with the assistance of its advisors, has structured the Bidding Procedures to promote active bidding by interested parties and to confirm the highest or otherwise best offer reasonably available for the Assets.  Additionally, the Bidding Procedures will allow the Debtor to conduct the Auction in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale. Accordingly, the Bidding Procedures should be approved because, under the circumstances, they are reasonable, appropriate and in the best interests of the Debtor, its estate, creditors, and all parties in interest.

**B.     If A Stalking Horse Bidder is Subsequently Designated, the Break-Up Fee Has a Sound Business Purpose and is Necessary to Preserve the Value of the Debtor's Estate**

47.     The Debtor submits that the potential Break-Up Fee if a Stalking Horse Bidder is subsequently designated is a normal and oftentimes necessary component of sales outside the ordinary course of business under § 363. In particular, such a protection encourages a potential purchaser to invest the requisite time, money, and effort to conduct due diligence and sale negotiations with a debtor despite the inherent risks and uncertainties of the chapter 11 process. *See*, *e.g.*, *Integrated Resources*, 147 B.R. at 660 (noting that fees may be legitimately necessary to convince a "white knight" to offer an initial bid, for the expenses such bidder incurs and the risks such bidder faces by having its offer held open, subject to higher and better offers); *In re Hupp*

31

*Indus.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1997) (without any reimbursement, "bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's. . . due diligence"); *In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. 1992) (stating that "agreements to provide reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); *In re 995 Fifth Ave. Assocs.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding that bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citations omitted).

48.    A proposed bidding incentive, such as a Break-Up Fee, should be approved when it is in the best interests of the estate. *See In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995); *see also In re America West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994); *In re Hupp Indus., Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992). Typically, this requires that the bidding incentive provide some benefit to the debtor's estate. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999) (holding even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions the administrative expense provisions of § 503(b) govern in the bankruptcy context).

49.    In evaluating the appropriateness of a break-up fee, the appropriate question for the Court to consider is "whether the break-up fee served any of three possible useful functions: (1) to attract or retain a potentially successful bid; (2) to establish a bid standard or minimum for other bidders to follow; or (3) to attract additional bidders." *In re Integrated Resources, Inc.*, 147 B.R. at 662 (where the Court heard testimony that the average breakup fee in the industry is 3.3%). Break-up fees in the same general range as the proposed Break-Up Fee have been routinely approved in the context of bankruptcy sales, including this Court *See In re Verity Health System of California, Inc.*, No. 18-20151 (Bankr. C.D. Cal. Oct. 30, 2018) (J. Robles) (approving break-up fee equal to 4% of the cash purchase price); *In re T Asset Acquisition Company, LLC*, No. 09-

32

**MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

31853 (Bankr. C.D. Cal. Jan. 28, 2010) (J. Robles) (approving break-up fee equal to 3% of the cash purchase price); *see also In re CXM, Inc.*, 307 B.R. 94, 103–04 (Bankr. N.D. Ill. 2004) (court approved break-up fee in amount equal to the actual expenses that the stalking horse incurred in connection with its bid to buy the Sale Assets, subject to a maximum cap of $200,000, which equaled 3% of the cash purchase price); *In re Women First Healthcare, Inc.*, 332 B.R. 115, 118 (Bankr. D. Del. 2005) (court approved break-up fee that equaled 4.7% percent of the purchase price; *In re Dan River, Inc.*, No. 04-10990 (Banker. N.D. Ga. Dec. 17, 2004) (court approved break-up fee equal to 5.3% of the cash purchase price); *In re Lake Burton Dev., LLC*, 2010 WL 5563622, *43 (Bankr. N.D. Ga. Mar. 18, 2010) (court approved break-up fee equal to 4.75% of cash purchase price); *In re Case Engineered Lumber, Inc.*, No. 09–22499 (Bankr. N.D.Ga. Sept. 1, 2009)(J. Brizendine) (approving break-up fee equal to 3.5% of the cash purchase price); *In re Tama Beef Packing Inc.*, 321 B.R. 469, 498 (8th Cir. BAP 2005) (noting that the bankruptcy court correctly concluded that break-up fees are "usually limited to one to four perfect of the purchase price"). Notably, this Court has also approved break-up fees within the range of the proposed Break-Up Fee. *See In re Verity Health System of California, Inc.*, No. 18-20151 (Bankr. C.D. Cal. Oct. 30, 2018) (J. Robles) (approving break-up fee equal to 4% of the cash purchase price); *In re T Asset Acquisition Company, LLC*, No. 09-31853 (Bankr. C.D. Cal. Jan. 28, 2010) (J. Robles) (approving break-up fee equal to 3% of the cash purchase price).

50.    The Debtor submits that all of the bidding procedures the Debtor is seeking to have the Bankruptcy Court approve, including the proposed Break-Up Fee to any Stalking Horse Bidder, satisfies all three of the useful functions set forth above: (1) to attract or retain a potentially successful bid; (2) to establish a bid standard or minimum for other bidders to follow; and (3) to attract additional bidders. The proposed break-up fee of up to 3% of the purchase price is well within, or below, the percentage parameters that have been approved by many other courts. Thus, the Debtor believes that the proposed Break-Up Fee if a Stalking Horse Bidder is selected would fairly and reasonably compensate any Stalking Horse Bidder for taking actions that will benefit

the Debtor's estate. The Break-Up Fee would compensate such a Stalking Horse Bidder for diligence and professional fees incurred in negotiating the terms of any Stalking Horse Agreement on an expedited timeline.

51.     Additionally, the Debtor does not believe that the Break-Up Fee will have a chilling effect on the sale process. Rather, any Stalking Horse Bidder will increase the likelihood that the best possible price for the Assets will be received, by permitting other qualified bidders to rely on the diligence performed by any Stalking Horse Bidder, and moreover, by allowing qualified bidders to utilize any Stalking Horse Agreement as a platform for negotiations and modifications in the context of a competitive bidding process. Any Stalking Horse Bidder would only be designated with the consent of the Lender and after consultation with the Committee.

52.     Finally, any Break-Up Fee will be paid only if, among other things, the Debtor enters into a transaction for the Assets with a bidder other than any Stalking Horse Bidder. Accordingly, no Break-Up Fee will be paid unless a higher and better offer is received and consummated. In sum, the potential Break-Up Fee is reasonable under the circumstances and will enable the Debtor to maximize the value for the Assets while limiting any chilling effect in the sale process.

**C.     Secured Parties Should Be Authorized to Credit Bid on the Assets under Section 363(k) of the Bankruptcy Code**

53.     Section 363(k) of the Bankruptcy Code provides that, unless the court for cause orders otherwise, the holder of a claim secured by property that is the subject of a sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such secured creditor to bid the full face value of its claim and does not limit the credit bid to the claim's economic value.

54.     As a result, Debtor proposes that any party that holds claims, that is not subject to objection by the start of the Auction, that are secured by valid, binding, enforceable, non-avoidable

34

1   and perfected liens on and security interests in an Asset, be permitted to submit a credit bid for the

2   Assets subject to those liens and security interest, subject to providing Secured Claim

3   Documentation (as defined in the Bidding Procedures) satisfactory to Debtor.  The Debtor submits

4   that the Lender meets such criteria.

**D.    The Procedure for Assumption and Assignment of Certain Executory Contracts and
Unexpired Leases is Appropriate**

55.    Section 365(a) provides that, subject to the court's approval, a trustee "may assume

or reject any executory contracts or unexpired leases of the debtor."  11 U.S.C. § 365(a).  Upon

finding that a trustee has exercised its sound business judgment in determining to assume an

executory contract or unexpired lease, courts should approve the assumption under § 365(a). *See*

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *see also*

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099

(2d Cir. 1993).

56.    Pursuant to § 365(f)(2), a trustee may assign an executory contract or unexpired

lease of nonresidential real property if:

> (A)    the trustee assumes such contract or lease in accordance with the
> provisions of this section; and

> (B)    adequate assurance of future performance by the assignee of such
> contract or lease is provided, whether or not there has been a default
> in such contract or lease.

U.S.C. § 365(f)(2).

57.    The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, and should be given "practical, pragmatic construction." *See*

*Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J.

1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate

assurance of future performance does not mean absolute assurance that debtor will thrive and pay

rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although

35

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

58.     Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).  The Debtor and the Successful Bidder will present evidence at the Sale Hearing to prove the financial credibility, willingness, and ability of the Successful Bidder to perform under the contracts or leases. The Court and other interested parties therefore will have the opportunity to evaluate the ability of any Successful Bidder to provide adequate assurance of future performance under the contracts or leases, as required by § 365(b)(1)(C).

59.     In addition, the Debtor submits that the cure procedures set forth herein are appropriate, reasonably calculated to provide notice to any affected party, and afford the affected party to opportunity to exercise any rights affected by the Motion, and consistent with § 365.  To the extent that any defaults exist under any Assumed Executory Contracts, any such defaults will be cured pursuant to the Successful Bidder's Purchase Agreement. Except as otherwise limited by § 365, any provision in the Assumed Executory Contracts that would restrict, condition, or prohibit an assignment of such contracts will be deemed unenforceable pursuant to § 365(f)(1). Accordingly, the Debtor submits that the cure procedures for effectuating the assumption and assignment of the Assumed Executory Contracts as set forth herein are appropriate and should be approved.

**E.**     **Approval of the Sale is Warranted Under § 363**

60.     As discussed above, § 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

U.S.C. § 363(b)(1).

### 1.    The Sale of the Assets is Authorized by § 363 as a Sound Exercise of the Debtor's Business Judgment

61.    In accordance with Rule 6004, sales of property rights outside the ordinary course of business may be by private sale or public auction. The Debtor has determined that the Sale of the Assets by public auction will enable it to obtain the highest and best offer for these assets (thereby maximizing the value of the estate) and is in the best interests of the Debtor's creditors. The Debtor has determined in its business judgment that a sale of the Assets through a competitive, public auction is the best way to maximize the value of those assets.

62.    Sections 363 provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although § 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, a sale of a debtor's assets should be authorized if a sound business purpose exists for doing so.  *See, e.g., In re Slates,* 2012 WL 5359489, *11 (9th Cir. BAP October 31, 2012); *In re Shay*, 2017 WL 262040, *4 (Bankr. C.D. Cal. January 18, 2017); *In re Bethel Healthcare, Inc.,* 2017 WL 5256742, *2 (Bankr. C.D. Cal. October 19, 2017); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (2d Cir. 1986); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Ry. Co.*, 124 BR. 169, 176 (D. Del. 1991); *see also Official Comm. of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

63.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc*., 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of

37

bankruptcy law that the. . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting In re Atlanta Packaging Prods., Inc*., 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)).  As long as the sale appears to enhance a debtor's estate, court approval of a debtor's decision to sell should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd*., 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re WPRV-TV, Inc*., 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

64.    Applying § 363, the proposed Sale of the Assets should be approved. As set forth above, the Debtor has determined that the best method of maximizing the recovery of the Debtor's creditors would be through the Sale of the Assets.  As assurance of value, bids will be tested through the Auction consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and pursuant to the Bidding Procedures approved by the Court.  Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process—the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

65.    The Debtor has assembled a data room which is available upon the execution of an appropriate confidentiality agreement, and its proposed investment banker will be contacting potential interested parties. There is a limited universe of potential acquirers of the Assets, and the Debtor and its advisors have been in active discussions with certain of these potential purchasers.

**2.    The Sale of the Debtor's Assets Free and Clear of Liens and Other Interests is Authorized by § 363(f)**

66.    The Debtor further submits that it is appropriate to sell the Assets free and clear of liens pursuant to § 363(f), with any such liens attaching to the sale proceeds of the Assets to the

38

extent applicable. Section 363(f) authorizes a trustee to sell assets free and clear of liens, claims,

interests and encumbrances if:

(1)     applicable nonbankruptcy law permits the sale of such property free and

clear of such interests;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is

greater than the value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept

a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by § 105(a), which provides that "[t]he

Court may issue any order, process or judgment that is necessary or appropriate to carry out the

provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

67.    Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its five

requirements will suffice to permit the sale of the Debtor's Assets "free and clear" of liens and

interests. *In re Baroni*, 2021 WL 3011907, *7 (9th Cir. BAP July 13, 2021) ("Such property may

be sold free and clear of liens if any one of five conditions is met"); *Securities and Exchange

Commission v. Capital Cove Bancorp LLC*, 2015 WL 12684446, *1 (C.D. Cal. Nov. 19, 2015)

("Because Section 363(f) is written in the disjunctive, satisfaction of any one condition is sufficient

to sell the property 'free and clear of any interest.' [11 U.S.C. § 363(f)]; *In re Elliot*, 94 B.R. 343,

345 (Bankr. E.D. Pa. 1988) ('[I]f any of the five conditions of § 363(f) are met, the Trustee has

authority to conduct the sale free and clear of all liens.'") *In re Dundee Equity Corp.*, 1992 Bankr.

LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that

the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been

met*."); In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Michigan

Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132,

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

1147 n.24 (6th Cir. 1991) (stating that § 363(f) is written in the disjunctive; holding that the court

may approve the sale "free and clear" provided at least one of the subsections of § 363(f) is met).

68.    At least one of the tests of § 363(f) is satisfied with respect to the transfer of the

Assets pursuant to a Purchase Agreement. Additionally, at least § 363(f)(2) will be met in

connection with the transactions proposed under the Purchase Agreement because each of the

parties holding liens on the Assets will consent or, absent any objection to this motion, will be

deemed to have consented to the Sale. Any lienholder also will be adequately protected by having

its liens, if any, in each instance against the Debtor or its estate, attach to the sale proceeds

ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of

priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to

any claims and defenses the Debtor may possess with respect thereto. Moreover, all rights under

the Cash Collateral Order are being preserved.  Accordingly, § 363(f) authorizes the transfer and

conveyance of the Assets free and clear of any such claims, interests, liabilities, or liens.  *In re

Baroni*, 2021 WL 3011907, *7 (9th Cir. BAP July 13, 2021) ("Such property may be sold free and

clear of liens if any one of five conditions is met" and finding that the lienholders either consented

to the sale or with respect to liens subject to bona fide dispute were given notice of the sale and

did not object.).

69.    Although § 363(f) provides for the sale of assets "free and clear of any interests,"

the term "any interest" is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v.

DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000).   Courts have interpreted "any

interest" expansively to include not only in rem interests in property, but also other obligations

that are "connected to or arise from the property being sold" or that could "potentially travel with

the property being sold." *In re PW, LLC,* 391 B.R. 25, *41-42 (9th Cir. BAP 2008) ("We believe

Congress intended 'interest' to have an expansive scope" and includes liens) *In re Gardens

Regional Hospital and Medical Center, Inc.*, 567 B.R. 820, 825 (Bankr. C.D. Cal. 2017)

(California Attorney General imposed conditions are an "interest in property" that can be stripped

**MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

off the assets through a sale under § 363); *In re La Paloma Generating, Co.*, 2017 WL 5197116,

*4 (Bankr. D. Del. Nov. 9, 2017) (holding that emission surrender obligations created by California

regulations and statutes and enforced by the California Air Resources Board are an interest in

property which can be cut off by a § 363 sale).  *See also In re Trans World Airlines, Inc.*, 322 F.3d

283, 285, 288 (3d Cir. 2001) (holding that plaintiff's interests in travel vouchers that were issued

to settle employment discrimination are an interest under § 363 because they arise from the

property being sold); *PBBPC, Inc. v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860, 867-

870 (1st Cir. B.A.P. 2013) (holding that debtor's assets could be sold free and clear of

Commonwealth of Massachusetts's right to treat a purchaser of substantially all of the assets of

chapter 11 debtor as a "successor employer" to which debtor's experience rating could be imputed

to determine purchaser's unemployment insurance contribution); *In re ARSN Liquidating Corp.

Inc.*, 2017 WL 279472, *5 (Bankr. D.N.H. Jan. 20, 2017) (Nat'l Council on Compensation Ins.

violated sale order by imputing debtor's workers' compensation experience rating to buyer in

setting buyer's workers' compensation experience rating); *In re Vista Marketing Group Ltd.*, 557

B.R. 630, 635-39 (Bankr. N.D. Ill. 2016) (free and clear language in sale order prevented a state

sanitary district from asserting claim against asset purchaser for connection fee surcharge that was

calculated based entirely on debtor's use of the district's sewer facilities); *United Mine Workers

of Am. Combined Benefit Fund v. Walter Energy, Inc.*, 551 B.R. 631, 641 (N.D. Ala. 2016) (sale

under § 363 cuts off Coal Act obligations despite language in Act imposing successor liability on

buyer); *In re Christ Hospital*, 502 B.R. 158, 76-79 (Bankr. D.N.J. 2013) (section 363 sales cut off

tort claims against purchaser of nonprofit hospital); *In re Tougher Indus.*, 2013 WL 1276501 at

**6-9 (Bankr. N.D.N.Y. Mar. 27, 2013) (holding that debtor's assets could be sold free and clear

of New York State Department of Labor's right to use the debtor's experience rating to access the

buyer's tax liability as successor to the debtor); *In re Grumman Olson Indus. Inc.*, 467 B.R. 694,

702–03 (S.D.N.Y 2012) ("Section 363(f) can be used to sell property free and clear of claims that

could otherwise be assertable against the buyer of the assets under the common law doctrine of

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

successor liability"); *WBO P'ship v. Va. Dep't of Med. Assistance Servs. (In re WBO P'ship)*, 189 B.R. 97, 104–05 (Bankr. E.D. Va. 1995) (holding that Commonwealth of Virginia's right to recapture depreciation is an "interest" as that term is used in § 363(f)).

70.     In the case of *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" *Id*. at 289 (*citing* 3 Collier on Bankruptcy, ¶ 363.06[1] (L. King, 15th rev. ed. 1988)). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co*., the scope of § 363(f) is not limited to *in rem* interests. 99 F.3d 573, 581-582 (4th Cir. 1996) (holding that coal mine operators could sell their assets free and clear of their obligations to a benefits plan and fund under the Coal Act).   Thus, debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger*, 209 F.3d at 258 (*citing Leckie*, 99 F.3d at 582).   Courts have consistently held that a buyer of a debtor's assets pursuant to a § 363 sale takes such assets free from successor liability resulting from pre-existing claims. *See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp*., 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under § 363(f)).   The purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the purchaser arising from the Debtor's pre-sale conduct.   Under § 363(f), the purchaser is entitled to know that the Assets are not infected with latent claims that will be asserted against the purchaser after the proposed transaction is completed. Accordingly, consistent with the above-cited case law,

the order approving the Sale should state that the Successful Bidder is not liable as a successor under any theory of successor liability, for claims that encumber or relate to the Assets.

### 3. The Sale Should Be Subject to the Protections of Section 363(m) of the Bankruptcy Code

71.    Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See 11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," one court has held:

> [t]he requirement that a Buyer act in good faith . .  speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

72.    In approving the Sale free and clear of Encumbrances, Debtor requests that the Court find and hold that all purchasers of Assets purchased in accordance with the Bidding Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Successful Bidder will be the result of a competitive bidding process and arm's-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed transaction. The Debtor intends to make an appropriate showing at the Sale Hearing that the purchase agreement with the Successful Bidder is a negotiated, arm's length transaction, in which the Successful Bidder at all times has acted in good faith under and otherwise in accordance with the standards set forth above.  Accordingly, this Court should find that Purchaser acted in good faith within the meaning of section 363(m).

43

*See generally Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570 (9th Cir. 1998); *Ewell v. Diebert (In re Ewell),* 958 F.2d 276, 280 (9th Cir. 1992); *Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.),* 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sassoon Jeans, Inc.,* 90 B.R. 608, 610 (S.D.N.Y. 1988) (*quoting In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (*quoting In re Rock Indus. Machinery Corp.,* 572 F.2d 1195, 1998 (7th Cir. 1978)); *Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.),* 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

## F.   Relief from the 14-Day Waiting Period Under Rules 6004(h) and 6006(d) is Appropriate

73.   Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtor requests that the Order be effective immediately by providing that the 14-day stays under Rules 6004(h) and 6006(d) are waived.

74.   The purpose of Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." *Collier on Bankruptcy*, ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Furthermore, *Collier* provides that if an objection is filed and overruled, and the objecting

44

party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id*.

75.     The Debtor hereby requests that the Court waive the 14-day stay periods under Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the Sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.  A quick closing is imperative in light of the limited time-frame in which the Debtor can use its cash collateral, together with the need to prepare for the upcoming school year.

**G.     The Applicable Requirements of LBR 6004-1 are Satisfied**

76.     All of the applicable requirements of LBR 6004-1(b) pertaining to the Motion and the request therein to approve the Bidding Procedures have been satisfied. First, as required by LBR 6004-1(b)(2), the Notice of Motion describes the proposed Bidding Procedures and describes the elements of a potential Stalking Horse Agreement. Second, as required by LBR 6004-1(b)(2), the Notice of the Bid Procedures Motion and this Memorandum describe marketing efforts undertaken and the anticipated marketing of the Assets through the deadline for prospective Overbidders to submit bids for the Auction.  Third, the Debtor provided notice of the Notice of Motion, Motion, and this Memorandum pursuant to LBR 6004-1(b)(3) and the Order Granting Emergency Motion of Debtors for Order Limiting Scope of Notice [Dkt. No. 132]. Therefore, the Debtor submits that service of the Notice of Motion, Motion, and this Memorandum by such means was adequate and appropriate.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (i) granting the relief requested herein; and (ii) granting such other and further relief as the Court may deem proper.

MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

1    Dated:  May 10, 2022                    STEPTOE & JOHNSON LLP

2

3                                    By:    */s/ Jeffrey M. Reisner*

4                                           STEPTOE & JOHNSON LLP
                                            Jeffrey M. Reisner (State Bar No. 143715)
5                                           jreisner@steptoe.com
                                            Kerri A. Lyman (State Bar No. 241615)
6                                           klyman@steptoe.com
                                            Joshua R. Taylor (*pro hac vice forthcoming*)
7                                           jrtaylor@steptoe.com
                                            633 West Fifth Street, Suite 1900
8                                           Los Angeles, California 90071
                                            Telephone: (213) 439-9423
9                                           Facsimile:  (213) 439-9599

10

11                                          *Proposed Attorneys to the*
                                            *Debtor and Debtor in Possession*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          46

28    MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF
      SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

# <u>EXHIBIT A</u>

STEPTOE & JOHNSON LLP
Jeffrey M. Reisner (State Bar No. 143715)
jreisner@steptoe.com
Kerri A. Lyman (State Bar No. 241615)
klyman@steptoe.com
Joshua R. Taylor (*pro hac vice forthcoming*)
jrtaylor@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9423
Facsimile:  (213) 439-9599

*Proposed Counsel to the*
*Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BETTER 4 YOU BREAKFAST, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:22-bk-10994 (BB)<br><br>**ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) APPROVING CERTAIN BID PROTECTIONS IN CONNECTION WITH THE DEBTOR'S ENTRY INTO A POTENTIAL STALKING HORSE AGREEMENT; (D) SCHEDULING THE AUCTION AND SALE HEARING; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF**<br><br>Date: _____ 2022<br>Time: _____ a.m.<br>Place: Courtroom 1539<br>      255 E. Temple Street<br>      Los Angeles, CA  90012 |

1    Upon the *Debtor's Motion for (I) An Order (A) Approving Bid Procedures for the Sale of*

2    *Substantially All of the Debtors' Assets; (B) Approving Procedures for the Assumption and*

3    *Assignment of Executory Contracts and Unexpired Leases; (C) Approving Certain Bid Protections*

4    *in Connection With the Debtors' Entry Into A Potential Stalking Horse Agreement; (D) Scheduling*

5    *the Auction and Sale Hearing; (E) Approving the Form and Manner of Notice Thereof; and*

6    *(F) Granting Related Relief* (the "Motion");[1] and the Court having jurisdiction over this matter

7    pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found this matter is a core proceeding

8    pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and

9    the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

10   considered the statements of counsel, any objections raised, and the evidence presented at the Bid

11   Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in

12   the best interests of the Debtor's bankruptcy estate, its creditors, and other parties in interest; and

13   after due deliberation and sufficient cause appearing therefor;

14   **IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

15   A.    The Debtor has demonstrated that good and sufficient notice of the relief granted

16   by this Order has been given and no further notice is required. A reasonable opportunity to object

17   or be heard regarding the relief granted by this Order has been afforded to those parties entitled to

18   notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

19   B.    The Debtor has articulated good and sufficient reasons for, and the best interests of

20   its estate and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this

21   order (this "Order") for, among other things, the (i) Bid Deadline; (ii) Sale Objection Deadline;

22   (iii) Auction; (iv) Cure/Assignment Objection Deadline; and (v) Sale Hearing, each as defined

23   below.

24

25

26   _____

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to it in the Motion or the Bid
27   Procedures, as applicable.
[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant
28   to Bankruptcy Rule 7052. To the extent that any of the following findings of fact constitute conclusions of law, they
are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted
as such.

C.      The Bid Procedures are fair, reasonable, and appropriate and represent the best available method for maximizing value for the benefit of the Debtor's estate.

D.      It may be necessary to induce a third-party bidder to serve as a Stalking Horse Bidder and provide Bid Protections, pursuant to the terms of this Order.

E.      The Bid Procedures were negotiated at arm's length, in good faith, and without collusion.  The Bid Procedures balance the Debtor's interests in emerging expeditiously from this chapter 11 case while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtor's estate, its creditors, and other parties in interest.

F.      The Bid Procedures Notice and Assumption and Assignment Notice are reasonably calculated to provide the Sale Notice Parties, the Contract Counterparties, and other interested parties with proper notice of the (i) Bid Procedures; (ii) Auction; (iii) Assumption and Assignment Procedures (including the Cure/Assignment Objection Deadline); (iv) Sale Hearing; and (v) Sale.

G.      The Motion and the Bid Procedures comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

H.      Due, sufficient, and adequate notice of the relief granted herein has been given to all parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

3.      The Bid Procedures, which are attached hereto as Exhibit 1 and incorporated herein by reference, are hereby approved in all respects and shall govern all Bidders and Bids, including those that may be submitted by Qualified Bidders at the Auction.

4.      Bidders seeking to submit Bids for the Assets must do so in accordance with the terms of the Bid Procedures and this Order.

5.      Following entry of this Order, the Debtor shall be authorized, but not directed, with the consent of the Lender and in consultation with the Committee, to select one or more Bidders to act as a stalking horse bidder (each, a "Stalking Horse Bidder").

6.     The Debtor is authorized, only upon consent of the Lender and after consultation with the Committee, to grant the Bid Protections to any Stalking Horse Bidder in accordance with the Bid Procedures, if the Debtor determines that granting the Bid Protections is in the best interests of the Debtor's estate and stakeholders.  To the extent such determination is made to grant the Bid Protections, the Debtor shall disclose such Bid Protections in the corresponding notice designating a Stalking Horse Bidder (the "Stalking Horse Bidder Notice") to be filed pursuant to the Bid Procedures, and such Bid Protections may be granted without further action or order by the Court in accordance with the Bid Procedures.  For the avoidance of doubt, the Bid Protections are hereby authorized in the form of (a) a Break-Up Fee of up to an aggregate of three percent (3%) of the total cash consideration offered for any Stalking Horse Bid and (b) Expense Reimbursement actually incurred by a Stalking Horse Bidder in connection with its bid, not to exceed $240,000. Any Bid Protections incurred by the Debtor pursuant this Order and the Bid Procedures shall be an allowed super-priority administrative expense against the Debtor's estate under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code,  which allowed super-priority expense claim shall be junior and subordinate to the super-priority claims previously granted in favor of Lender and shall be payable out of the proceeds of the sale of Assets to a third-party, other than the Stalking Horse Bidder, which is the Successful Bidder, without further order of the Court.

7.     As set forth in the Bid Procedures and this Order, the Debtor, with the consent of Lender and upon consultation with the Committee, is authorized but not directed, to designate a Stalking Horse Bidder no later than **JUNE __, 2022**.

8.     If the Debtor, with the consent of the Lender and after consultation with the Committee, designates a Stalking Horse Bidder, the Debtors shall, by **JUNE __, 2022**, file the Stalking Horse Bidder Notice.  The Stalking Horse Bidder Notice, if filed, shall also include a copy of the Stalking Horse Bidder's Stalking Horse Agreement.

9.     The Debtor shall file a proposed form of Sale Order (the "Proposed Sale Order") on or before **JUNE __, 2022**.

10.    The deadline for all Potential Bidders to submit a Qualified Bid (other than the Lender) is **JUNE __, 2022 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline"), as set forth in the Bid Procedures.

11.    By **JUNE __, 2022**, the Debtor shall file a notice on the Court's docket (an "Auction Notice") providing notice of whether the Auction will be conducted in person, telephonically, or via a video conferencing service.

12.    As set forth in the Bid Procedures, if at least one Qualified Bid is received by the Bid Deadline (in addition to any credit bid by the Lender, which shall be deemed a Qualified Bid), the Debtor will hold the Auction beginning on or before **June 16, 2022 at 10:00 a.m. (Pacific Time)** in accordance with the Bid Procedures at Steptoe & Johnson LLP, 633 West Fifth Street, Suite 1900 Los Angeles, California 90071, or at such other location as the Debtor may designate.

13.    By **JUNE __, 2022 at 5:00 p.m. (Pacific Time)**, the Debtor shall file with the Court the Notice of Auction Results, but shall not be required to serve the same on any parties-in-interest in this chapter 11 case; provided, that the Debtor shall obtain the consent of the Lender and shall consult with the Committee prior to filing the Notice of Successful Bidder.

14.    The Lender shall be entitled to credit bid some or all of its claims pursuant to section 363(k) of the Bankruptcy Code.  Any credit bid by the Lender shall automatically be deemed a Qualified Bid.

15.    If (a) the Debtor does not receive a Stalking Horse Bid or other Qualified Bid by the Bid Deadline, or (b) the Debtor receives only one Qualified Bid, (i) the Debtor may file a notice cancelling the Auction; and (ii) the Lender shall be permitted to submit a credit bid or other bid, as applicable, to purchase all or a portion of the Assets within five (5) business days after the Bid Deadline or by such other date as agreed by and between the Debtor and the Lender.

16.    If the Debtor receives a Qualified Bid, which the Debtor believes is the highest and best bid for the Assets (with such consideration sufficient to pay all creditors in full), obviating the need for an Auction then, after consultation with the Committee and with the consent of the Lender, the Debtor may file a notice cancelling the Auction, designate such Bid as the Successful Bid, and schedule a Sale Hearing.

17. Following the conclusion of the Auction, and subject to compliance with the terms of the Cash Collateral Order [Docket No. 212], as that order may be amended, revised, or replaced from time to time ("Cash Collateral Order"), the Sale Hearing may be adjourned or rescheduled with the consent of the Lender without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the Court's docket.  At the Sale Hearing, the Debtor shall present the Successful Bid to the Court for approval.

18. The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local transfer laws or requirements.

19. The Bid Procedures Notice and Assumption and Assignment Notice substantially in the forms attached to this Order as <u>Exhibit 2</u> and <u>Exhibit 3</u>, respectively, are approved in all respects.  Other than with respect to the Notice of Successful Bidder, no other or further notice of the Bid Procedures, Assumption and Assignment Procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale is required.

20. To be considered, any objection to the Sale must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before **JUNE __, 2022 at 4:00 p.m. (Pacific Time)** (the "<u>Sale Objection Deadline</u>").

21. The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtor, or the consummation and performance of the Sale of the Assets to the Successful Bidder, including the transfer of the Assets free and clear of all liens, claims, interests, and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Assets), and the Debtor's assumption and assignment of the Transferred Contracts to the Successful Bidder.

22. No Qualified Bidder or any other person or entity, other than a Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment in connection with the Sale.

23.     The Assumption and Assignment Procedures, as described in the Motion, are hereby approved in all respects. The failure to specifically include or reference any particular provision of the Assumption and Assignment Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Assumption and Assignment Procedures be authorized and approved in their entirety.

24.     As further governed by the Assumption and Assignment Procedures, the Cure/Assignment Objection Deadline is **JUNE __, 2022 at 4:00 p.m. (Pacific Time)**.

25.     Any Contract Counterparty that fails to file a Cure Objection by the Cure/Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures: (i) shall be deemed to have forever waived and released any right to assert a Cure Objection and (ii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Potential Assumed/Assigned Contracts and Cure Schedule with respect to the Transferred Contract and (b) seeking additional amounts arising under the Transferred Contract prior to the Closing from the Debtors or Successful Bidder(s).

26.     Any Contract Counterparty that fails to file an Assignment Objection by the Cure/Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures: (i) shall be deemed to have forever waived and released any right to assert an Assignment Objection; (ii) shall be deemed to have consented to the assumption and assignment, or assignment, as the case may be, of its Transferred Contract without the necessity of obtaining any further order of the Court; and (iii) shall be forever barred and estopped from objecting to the assumption and assignment, or assignment, as the case may be, of its Transferred Contract to the Successful Bidder.

27.     Any Contract Counterparty that fails to file an Additional Potential Assignment Objection by the Additional Potential Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures: (i) shall be deemed to have forever waived and released any right to assert a Cure Objection or Assignment Objection; (ii) shall be deemed to have consented to the assumption and assignment, or assignment, as the case may be, of their Transferred Contract without the necessity of obtaining any further order of the Bankruptcy Court;

and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth in an Additional Assumption and Assignment Notice with respect to the Transferred Contract and (b) seeking additional amounts arising under the Transferred Contract prior to the closing from the Debtors or Successful Bidder(s).

28.    Notwithstanding anything to the contrary contained herein or in the Bid Procedures, nothing herein or in the Bid Procedures shall modify the terms and conditions of the Cash Collateral Orders in connection with any Sale of any Assets of the Debtor.  Nothing herein shall amend or modify (a) any provisions, terms, or conditions of the Cash Collateral Order, and, (b) without limiting the foregoing, the rights of the Lender in connection with any Sale of the Debtor's Assets, including credit bidding rights.

29.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

30.    The Debtor is authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

31.    All persons and entities that participate in the Sale Process and/or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bid Procedures, the Sale Process, and the Auction(s).

32.    To the extent of any inconsistences between the Bid Procedures and this Order, this Order shall govern.

33.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Bid Procedures or this Order.

# <u>EXHIBIT 1</u>

### <u>Bid Procedures</u>

**UNITED STATES BANKRUPTCY COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

|  |  |
|---|---|
| In re:<br><br>BETTER 4 YOU BREAKFAST, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:22-bk-10994 (BB)<br><br>**PROCEDURES FOR (A) SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS THROUGH A SALE TRANSACTION, AND (B) ASSUMPTION ANDASSIGNMENT OF EXECUTORY CONTRACT OR UNEXPIRED LEASES IN CONNECTION WITH A SALE TRANSACTION** |

On February 24, 2022 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On May __, 2022, the United States Bankruptcy Court for the Central District of California (the "Court") entered an order (the "Bid Procedures Order") authorizing the Debtor to, among other things, (i) solicit offers for a Sale Transaction (as defined below) through the process and procedures set forth below (the "Bid Procedures") and (ii) establish procedures for the assumption and assignment of executory contracts and unexpired leases in connection with any Sale Transaction(s) approved by the Court (the "Assumption and Assignment Procedures").

The Debtor seeks to consummate a transaction for the sale of its Assets (a "Sale Transaction") under section 363 and, as applicable, section 365, of the Bankruptcy Code to the extent certain criteria are satisfied as set forth in greater detail below. Any Sale Transaction will be subject to the approval of the Court. ***A hearing by the Court on the approval of any Sale Transaction(s) is currently scheduled for June __, 2022 at [●] (Pacific Time) (the "Sale Hearing").***

**I.    BID PROCEDURES**

**A.    General Sale Transaction Information**

**1.    Assets for Sale**

The Debtor is soliciting interest for the consummation of a Sale Transaction with respect to the Debtor's Assets, which principally consist of the business assets and property associated with the preparation, packaging and delivery of pre-packaged sales to institutional clients,

including schools, nursing homes, board and care facilities in the California and Las Vegas areas. All of the Debtor's rights, title, and interest in and to its Assets, including without limitation, the Assets or stock of its wholly owned subsidiaries, Balance Foods, LLC and Moreno Bros. Distributing, LLC, shall be sold free and clear of any liens, claims, encumbrances, and other interests (except as otherwise provided in the applicable Purchase Agreement, as defined below) to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code, with such liens, claims, encumbrances, and other interests to attach to the net proceeds of the Sale Transaction with the same validity and priority as such liens, claims, encumbrances, and other interests applied against the respective Assets purchased pursuant to these Bid Procedures.  Debtor is offering its assets for sale in any combination.

Further information on the Assets being offered for sale pursuant to these Bid Procedures is available upon request from the Debtor's proposed investment banker, ("_____") - (Attn: _____ at _____ - _____) on the terms and conditions set forth below.

**2.    Access to Due Diligence Materials**

To participate in the bidding process and receive due diligence information, including full access to the Debtor's electronic data room (the "Data Room") and additional non-public information regarding the Debtor (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") must deliver the Preliminary Bid Documents (as defined below) to the following parties (the "Recipient Parties"):

(i)    James Wong, in his capacity as Chief Restructuring Officer of the Debtor, c/o of Armory Consulting Co., Attn: James Wong, 3943 Irvine Blvd #253, Irvine, CA 92602 (jwong@armoryconsulting.com)

(ii)    Proposed special counsel to the Debtor: Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@Steptoe.com), Joshua Taylor (jrtaylor@Steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071

(iii)    Proposed investment banker to the Debtor:_____;

(iv)    counsel to the Lender: (a) Otterbourg P.C., Attn: Andrew M Kramer, Esq. (akramer@otterbourg.com) and Pauline McTernan, Esq. (pmcternan@otterbourg.com), 230 Park Avenue, 30th Floor, New York, New York 10169-0075 and (b) Fox Rothschild LLP, Attn: Keith Owens (kowens@foxrothschuld.com) and Nicholas Koffroth (nkoffroth@foxrothschild.com), 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067;

(v)    Lender's financial advisor: Paladin, Attention: Allen Soong (asoong@paladinmgmt.com); and

(vi)    Committee   Brinkman   Law   Group,   P.C.,   Attn:   Daren   Brinkman (dbrinkman@brinkmanlaw.com), 543 Country Club Drive, Suite B, Wood Ranch, CA 93065.

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties include: (a) an executed confidentiality agreement using the Debtor's form, as may be amended, on terms reasonably acceptable to the Debtor, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and other factual support demonstrating to the Debtor's satisfaction in the exercise of its reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing the Assets; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale Transaction, which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtor (including in consultation with its advisors, the Committee and the Lender ).  Any Interested Party who, in the Debtor's determination, qualifies for access to the Diligence Materials shall be deemed a "Potential Bidder."  For the avoidance of doubt, if the Lender (as defined below) submits a credit bid, the Lender does not need to submit the Preliminary Bid Documents and such Bid shall automatically be deemed a Qualified Bid (as defined below).

### 3.    Due Diligence from Potential Bidders

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined below) (each, a "Bidder" and, collectively, the "Bidders") shall comply with all requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated Sale Transaction.  Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder.  Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### B.    Auction Qualification Process

### 1.    Stalking Horse Bidder

The Debtor, consistent with its fiduciary duties and with the consent of the Lender and upon consultation with the Committee (as defined below), may execute, subject to higher or otherwise better offers, a purchase agreement (a "Stalking Horse Agreement") with a Qualified Bidder that submits a Qualified Bid for the Assets (a "Stalking Horse Bid").  No Bid may be a Stalking Horse Bid if it does not constitute a Qualified Bid; *provided* that any credit bid submitted by the Lender (as defined below) pursuant to section 363(k) of the Bankruptcy Code shall automatically be deemed to be a Qualified Bid.  If the Debtor, with the consent of the Lender and upon consultation with the Committee, decides to enter into a Stalking Horse Agreement with a Stalking Horse Bidder, the Debtor, upon consent of the Lender and upon consultation with the Committee, may grant the Stalking Horse Bidder, upon execution of a Stalking Horse Agreement: (i) a break-up fee of no more than 3.0% of the total cash consideration payable under such Stalking Horse Agreement (the "Break-Up Fee") plus (ii) expense reimbursement for the Stalking Horse

Bidder's actual out-of-pocket costs of up to $240,000 (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").

**The deadline for a Potential Bidder to submit a Stalking Horse Bid is June __, 2022 (the "Stalking Horse Bid Deadline").**

**The Debtor may, but is not required to, designate a Stalking Horse Bid of Qualified Bidder (the "Stalking Horse Bidder") on or before June __, 2022 (the "Stalking Horse Bidder Designation Deadline"). If the Debtor designates a Stalking Horse Bidder, the Debtor will file a notice (the "Stalking Horse Bidder Notice") on or before June __, 2022, which Stalking Horse Bid Notice will attach any Stalking Horse Agreement and disclose any Bid Protections offered to any Stalking Horse Bidder.**

### 2.    Form of Asset Purchase Agreement

A Potential Bidder must submit a proposed asset purchase agreement (a "Purchase Agreement"), similar in form and substance, as modified, to the asset purchase agreement to be furnished by the Debtor in the Data Room (the "Form APA"), which shall be provided in advance to the Lender and the Committee.

### 3.    Designation as Qualified Bidder

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets constitute a Topping Bid), that satisfies the Bid Conditions defined and as described below and otherwise satisfies the requirements of the Bid Procedures Order and the Bid Procedures set forth herein, and that the Debtor, with the consent of the Lender and after consultation with the Committee, determines is likely to submit a *bona fide* offer for all of the Assets and to be able to consummate a Sale Transaction, if selected as a Successful Bidder (as defined below).

As used herein, "Lender" means:

(i)    Valley National Bank, as successor by merger to Bank Leumi USA (the "Lender").

As used herein, "Committee" means:

(i)    the official committee as appointed by the U.S. Trustee to serve in these cases (the "Committee").

The Debtor, after consultation with the Committee and with the consent of Lender, shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than **June __, 2022 at 5:00 p.m. (Pacific Time)**.

### 4.    Right to Credit Bid

If the Lender submits a credit bid pursuant to section 363(k) of the Bankruptcy Code, such credit bid shall automatically be deemed to be a Qualified Bidder, without being required to submit any of the Preliminary Bid Documents or satisfy any of the Bid Conditions set forth herein.

Any Qualified Bidder (including any Secured Party, which is deemed a Qualified Bidder) who has a valid and perfected lien on any Assets of the Debtor's estate (a "Secured Creditor") and the right and power to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of section 363(k) of the Bankruptcy Code; provided however, that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured. Any credit bid by a Secured Party shall provide for the payment in full in cash of the claim held by a senior lien holder on the assets subject to the credit bid, and the Bid Protections afforded to any stalking horse (which such amount of Bid Protection payment shall then be added to such Secured Party's debt) to the extent they are not subordinated to such Secured Party's claim.

## C.    **Bidding Process**

The Debtor and its advisors shall, after consultation with the Committee and with the consent of the Lender: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets. The Debtor, in consultation with the Committee and with the consent of the Lender, shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order or these Bid Procedures that will better promote the goals of such process.

### 1.    **Bid Deadline**

***The Bid Deadline is June __, 2022 at 4:00 p.m. (Pacific Time).***  On or before the Bid Deadline, a Qualified Bidder that desires to make a proposal, solicitation, or offer for a Sale Transaction (each, a "Bid") shall deliver written and electronic copies (in both pdf and MS-Word format) of its Bid to the Recipient Parties.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid; *provided* that the

Lender may submit credit bid at the Auction.

### 2.    **Qualified Bids**

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder must deliver a Bid, so as to be received by the Recipient Parties on or before the Bid Deadline, that meets the following requirements (collectively, the "Bid Conditions"):

  i.    Identity of Assets to be Purchased.  Each Bidder must state that the Bid includes an offer by the Bidder to effectuate a Sale Transaction and identify which Assets are included in the Bid.

  ii.    Good Faith Deposit.  Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash payable to _____, equal to 10% of the Bidder's proposed Purchase Price (as defined below), which will be held in an escrow or trust account on the terms set forth in the Bid Procedures and which deposit shall

be forfeited if such bidder is the Successful Bidder and breaches its obligation to close; *provided however*, that if the Lender submits a credit bid, it shall not be required to post a Good Faith Deposit.  Each Bid must provide for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Purchase Agreement equal to the amount of the Deposit.

iii.    <u>Purchase Price</u>.  Each Bid must clearly set forth the cash purchase price (the "<u>Cash Consideration</u>") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "<u>Purchase Price</u>") including, without limitation, which executory contracts and unexpired leases the Bidder expects the Debtor to assume and assign to the Bidder (the "<u>Transferred Contracts</u>") and which liabilities, if any, of the Debtor the Bidder is agreeing to assume (the "<u>Assumed Liabilities</u>").  The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtor with the consent of the Lender, the consultation with the Committee.  If a Stalking Horse Bidder has been selected by the Debtor, the cash component of any other Qualified Bid must be no less than an amount necessary to satisfy the Break-Up Fee and Expense Reimbursement, as defined below, and be a Topping Bid.  In order for the Bid to qualify as a "<u>Topping Bid</u>," it must provide for consideration at Closing (as defined below) that is equal to or in excess of the sum of: (i) the Stalking Horse Bid; (ii) the Expense Reimbursement; (iii) the Break-Up Fee; and (iv) the Minimum Increment (as defined below).

iv.    <u>Binding and Irrevocable</u>.  Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until two (2) business days after the closing of the Sale with the Successful Bidder or, as applicable, the Back-Up Bidder (the "<u>Closing</u>").

v.    <u>Contemplated Transaction Documents</u>.  Each Bid must include an executed Purchase Agreement marked against the Form APA pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale Transaction including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Form APA; (ii); and any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "<u>Contemplated Transaction Documents</u>").  The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtor than the provisions contained in any applicable Stalking Horse Agreement.  A Bid must identify with particularity each and every condition to closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents.  All Bids must provide that all Cure Amounts (as defined herein) will be paid by such Bidder.  ***The Contemplated Transaction Documents must include a commitment to close by no later than June __, 2022***.  A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtor.

vi.  <u>Contingencies</u>.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be subject to the accuracy in all material respects at Closing of specified representations and warranties at or before Closing or the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before Closing or the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before Closing.  A Bid must disclose any governmental approvals identified by the Potential Bidder other than as set forth in the Contemplated Transaction Documents that may impact the evaluation of such Bid.

vii.  <u>No Collusion</u>.  Each Bid must include a representation that the Bidder has not engaged in any collusion with respect to its Bid submission (though Potential Bidders are permitted to make joint bids) and that the Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

viii.  <u>Authorization to Bid and Identity of Bidder</u>.  Each Bid must include evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents.  A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Bidder and the identity of any person or entity providing debt or equity financing for the Bid.

ix.  <u>Financing Sources</u>.  Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale Transaction and provide adequate assurance of future performance under all Transferred Contracts.  Such information may include, *inter alia*, the following:

a.  the Potential Bidder's current financial statements (audited, if they exist);

b.  contact names, telephone numbers, and e-mail addresses for verification of financing sources;

c.  evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale Transaction (including confirmation that the funding of such commitments is not subject to any contingency); and

d.  any other form of financial disclosure of credit-quality support information acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated Sale Transaction.

x.  <u>Adequate Assurance of Future Performance</u>.  Each Bid must demonstrate, in the Debtor's reasonable business judgment and after consultation with the Lender and the Committee, that the potential Bidder can provide adequate assurance of future

performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code.

xi.  No Fees Payable to Qualified Bidder.  Other than any Stalking Horse Bidder, a Bidder may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment from the Debtor, the Estate, the Lender or the Committee, or from their respective members and representatives.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

xii.  Payment of the Break-Up Fee and Expense Reimbursement.  If a Stalking Horse Bidder has been selected, a Bid must allow for the payment of the Break-Up Fee and Expense Reimbursement to the applicable Stalking Horse Bidder from the first proceeds of the cash portion of the Purchase Price of such Bid upon Closing.

xiii.  Non-Reliance.  A Bid must include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Debtor or the physical condition of the Assets, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

xiv.  As Is, Where Is.  A Bid must include an acknowledgement and representation of the Potential Bidder that it understands that any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate, except to the extent set forth in the Purchase Agreement of the Successful Bidder.

A Bid received from a Potential Bidder shall constitute a "Qualified Bid" if the Debtor believes, after consultation with the Committee and with the consent of the Lender, that such Bid would be consummated if selected as the Successful Bid.  The Debtor shall have the right to reject any and all Bids that it believes, after consultation with the Committee and with consent of the Lender, do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.  Any credit bid submitted by the Lender pursuant to section 363(k) of the Bankruptcy Code shall automatically be deemed to be a Qualified Bid; *provided, however*, that (i) in no event shall the Lender's credit bid be a Back-Up Bidder, unless the Lender so consents at the conclusion of the Auction, and (ii) the Lender, in the event it submits a credit bid, reserves the right to announce its intention not to make any further Bids at the Auction.

### D. <u>Auction</u>

After the receipt and review of all Qualified Bids, the Debtor shall make a determination, after consultation with the Committee and with the consent of the Lender, whether to accept such Qualified Bid(s) for the Assets, or to proceed with the Auction for a Sale Transaction(s); *provided* that, if at least two Qualified Bids were received, the Debtor must proceed with the Auction absent the consent of the Lender.  The Debtor will only proceed with the Auction if the Debtor's CRO, after consultation with the Committee and with the consent of the Lender, concludes that an Auction for a Sale Transaction is likely to produce a higher and better Qualified Bid; *provided* that, if at least two Qualified Bids were received, the Debtor must proceed with the Auction absent the consent of the Lender.

To the extent the Debtor receives Qualified Bids and determines to proceed to Auction, the Debtor, after consultation with the Committee and with the consent of the Lender, shall determine which Qualified Bid represents the then highest or otherwise best Bid, as applicable (the "<u>Baseline Bid</u>"). The determination of which Qualified Bid constitute the Baseline Bid and which Qualified Bid constitute the Successful Bid (as defined herein) shall take into account any factors the Debtor, after consultation with the Committee and with the consent of the Lender, reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing; (c) the amount of unassumed liabilities attendant to such Bid, and (d) the net economic effect of any changes to the value to be received by the Debtor's creditors from the proposed Sale Transaction  (collectively, the "<u>Bid Assessment Criteria</u>").  If the Debtor, with the consent of the Lender and after consultation with the Committee, designate a Stalking Horse Bidder, the Baseline Bid, to the extent not the Stalking Horse Bid, must be not less than the Purchase Price of the Stalking Horse Bid *plus* (ii) the Break-Up Fee *plus* (iii) the Expense Reimbursement.

On or before ***June __, 2022***, the Debtors shall file a notice on the Court's docket (an "<u>Auction Notice</u>") providing notice of whether the Auction will be conducted in person, telephonically, or via a video conferencing service.

Unless otherwise designated by the Debtor, after consultation with the Committee and with the consent of the Lender, the Auction shall commence at ***10:00 a.m. (Pacific Time) on a date no later than June 16, 2022,*** at the offices of Steptoe & Johnson LLP, 633 West Fifth Street, Suite 1900 Los Angeles, California 90071, or at such other place designated by the Debtor.  The Auction may be held by telephonic or video conference.

The Auction shall be conducted according to the following procedures:

#### 1. <u>Participation at the Auction</u>

Only the Stalking Horse Bidder and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction.  Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtor, the Committee, Lender, and the United States Trustee shall be permitted to attend the Auction, unless otherwise agreed by the Debtor, in consultation with the Committee and with the consent of the Lender, twenty-four (24) hours prior to the commencement of the Auction.

Except as otherwise set forth herein, the Debtor, after consultation with the Committee and with the consent of the Lender, may conduct the Auction in the manner they determine will result in the highest or best offer(s) for the Assets in accordance with the Bid Procedures.

In the event, after the conclusion of the Auction, that certain discrete Assets and/or discrete groups of Assets which are not included in the Successful Bid have not been sold (the "Unsold Assets"), the Debtor may, in the exercise of its business judgment and after consultation with the Committee and with the consent of the Lender, resume an auction for the sale of the Unsold Assets, on such bid procedures as may be implemented by the Debtor, after consultation with the Committee and with the consent of the Lender.

## 2.    The Debtors Shall Conduct the Auction

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of any Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtor (in consultation with the Committee and with the consent of the Lender), and may take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate. All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor reserves the right to conduct the Auction, after consultation with the Committee and with the consent of the Lender, in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any other order of the Court entered in connection herewith and disclosed to each Qualified Bidder. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, the Bid Procedures, the Auction, or the proposed Sale Transaction(s).

## 3.    Terms of Overbids

An "Overbid" is any bid made at the Auction by a Qualified Bidder subsequent to the Debtor's announcement of the applicable Baseline Bid(s) that satisfies the following conditions:

### (a)    Minimum Increment

During the Auction, bidding shall begin with the Baseline Bid. The initial Overbid after the Baseline Bid, which shall include the Bid Protections, if any, (the "Initial Overbid") shall be made in an increment of at least $100,000, and any Overbid thereafter shall be made in an increment of at least $250,000 (collectively, the "Minimum Increment"), in cash or other consideration acceptable to the Debtor, after consultation with the Committee and with the consent of the Lender. Any Overbids subsequent to the Initial Overbid shall be made in increments of at least the applicable Minimum Increment.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor, after consultation with the Committee and with the consent of the Lender, accept a higher Qualified Bid as an Overbid.

### (b)    Consideration of Overbids

Subject to compliance with the terms of the Cash Collateral Order that is in effect at that time, the Debtor reserves the right, after consultation with the Committee and with the consent of the Lender, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in the exercise of its business judgment and after consultation with the Committee and with the consent of the Lender, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

### (c)    Evidence of Ability to Close Sale Transaction

To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtor, after consultation with the Committee and with the consent of the Lender, demonstrating such Qualified Bidder's ability to close the Sale Transaction proposed by such Overbid.

### 4.    Additional Procedures

The Debtor, after consultation with the Committee and with the consent of the Lender, may (a) determine which Qualified Bid, if any, is the highest or best offer for the Assets and (b) reject at any time before entry of an order of the Court approving a Sale Transaction pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the Bid Procedures Order; or (iii) contrary to the best interest of the Debtor, its estate, and its creditors. The Debtor (in consultation with the Committee and with the consent of the Lender) may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders.  At the Debtor's discretion, the Auction proceedings may be recorded by audio, video or both.

### 5.    Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, the Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

### 6.    Closing the Auction

The Auction shall continue until there is only one Qualified Bid that the Debtor determines, in the exercise of its business judgment and after consultation with the Committee and with the consent of the Lender, is the highest or otherwise best Qualified Bid (such Qualified Bid, the "Successful Bid," and such Qualified Bidder, the "Successful Bidder"), and that further bidding is

unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction.  In selecting the Successful Bid, the Debtor, after consultation with the Committee and with the consent of the Lender, may consider all factors relevant to the sale of the Assets, including the Bid Assessment Criteria.

Upon the closing of the Auction, the Debtor, after consultation with the Committee and the consent of the Lender, shall identify the Successful Bidder and the Successful Bid as soon as reasonably practicable which highest or best offer will provide the greatest amount of net value to the Debtor, and advise the Qualified Bidders of such determination.

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtor after consultation with the Committee and the consent of the Lender, shall be required to serve as the back-up bidder (the "Back-Up Bidder").  The identity of the Back-Up Bidder and the amount and material terms of the final Bid of the Back-Up Bidder (the "Back-Up Bid") shall be announced by the Debtor at the conclusion of the Auction at the same time the Debtor announces the Successful Bid.  Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the earlier of the Closing of the Sale Transaction with the Successful Bidder or fifteen (15) business days after the confirmation of the Successful Bidder as same.  The Good Faith Deposit of the Back-Up Bidder shall be returned by the Debtor within three (3) days after Closing.

Prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Debtor shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

As stated above, the Successful Bid of the Successful Bidder and the Back-Up Bid of the Back-Up Bidder, respectively, must be irrevocable until Closing.

### E.    Notice of Acceptance of Successful Bid

Upon determination of the Successful Bid, on or before ***June __, 2021 at 5:00 p.m. (Pacific Time)***, the Debtor will file with the Court and serve on the Notice Parties (as defined below) and on all non-debtor counterparties to Transferred Contracts (as defined below) included in the Successful Bid, a notice of the Debtor's intent to effectuate a Sale Transaction for the Assets with the Successful Bidder upon the approval of the Successful Bid by the Court at the Sale Hearing. The Debtor's presentation of a particular Successful Bid to the Court for approval does not constitute the Debtor's acceptance of such Successful Bid.  The Debtor will be deemed to have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

### F.    Free of Any and All Interests

Except as otherwise provided in the Purchase Agreement of the Successful Bidder and subject to the approval of the Court, all of the Debtor's right, title, and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, encumbrances, and other interests

to the maximum extent permitted by section 363 of the Bankruptcy Code, with such liens, claims, encumbrances, and other interests to attach to the proceeds of the sale of the Assets with the same validity and priority as such liens, claims, encumbrances, and other interests were held against the Assets prior to the sale.

### G.    Return of Good Faith Deposit

*The Sale Hearing will occur on June __, 2022 at [●] (Pacific Time)* before the Hon. Sheri Bluebond, United States Bankruptcy Court for the Central District of California, 255 East Temple Street, Courtroom 1539, Los Angeles, California, 90012.  Any objections to the Sale Transaction requested at the Sale Hearing must be filed and served so as to be received by the Notice Parties or before *June __, 2022 at 4:00 p.m. (Pacific Time)*.

At the Sale Hearing, the Debtor will seek entry of an order (the "Sale Approval Order") authorizing and approving the Sale Transaction to the Successful Bidder.  Subject to the terms of the Cash Collateral Order that is in effect at that time, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Lender and the Committee, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

If the Successful Bidder fails to consummate an approved Sale Transaction in accordance with its applicable Purchase Agreement or such Purchase Agreement is terminated, the Debtor, after consultation with the Committee and with the consent of the Lender, shall be authorized, but not required, to deem the applicable Back-Up Bid, as disclosed at the Sale Hearing, as the Successful Bid, and the Debtor, after consultation with the Committee and with the consent of the Lender, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting the next highest Bid for each Facility without further order of the Court.

### H.    Return of Good Faith Deposit

The Good Faith Deposit of any Successful Bidder (or any Back-Up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Sale Transaction at Closing.  Counsel to the Debtor will hold the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder in a segregated account until the Closing of the Sale Transaction with the Successful Bidder.  Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective Bidders following the conclusion of the Auction.  If a Successful Bidder (including any Back-Up Bidder that has become the Successful Bidder) fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtor's damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtor's rights to seek additional damages from the Court as appropriate.

## II.    ASSUMPTION AND ASSIGNMENT PROCEDURES

As part of a Sale Transaction, the Debtor may assume and assign certain of its executory contracts and unexpired leases (the "Potential Assumed/Assigned Contracts") to the Successful

Bidder (the "<u>Transferred Contracts</u>").  The following Assumption and Assignment Procedures govern the assumption and assignment of the Transferred Contracts in connection with Sale Transaction to the Successful Bidder.

On or before **June __, 2022,** the Debtor will file and serve a notice of executory contracts and unexpired leases that may be assumed and assigned with respect to any Sale Transaction for any or all of the Facilities (the "<u>Potential Assumption and Assignment Notice</u>").  The Potential Assumption and Assignment Notice will include a schedule (the "<u>Potential Assumed/Assigned Contract and Cure Schedule</u>") identifying (i) the Potential Assumed/Assigned Contracts that may be assumed and assigned to the Successful Bidder in the event of a Sale Transaction (*i.e.* may become Transferred Contracts) and (ii) the amount, if any, the Debtor believes is necessary to cure all monetary defaults under such Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Amounts</u>").

The Potential Assumption and Assignment Notice will be served on each of the non-debtor counterparties (the "<u>Contract Counterparties</u>") listed on the Potential Assumed/Assigned Contract and Cure Schedule by first class mail.  The Potential Assumption and Assignment Notice will state that the Debtor is or may be seeking the assumption and assignment of the Potential Assumed/Assigned Contracts in connection with one or more Sale Transactions of the applicable Facilities, but that the Debtor reserves all rights to add or remove any Potential Assumed/Assigned Contract from such schedule at any time prior to Closing.

Any Contract Counterparty may object to inclusion of its Potential Assumed/Assigned Contracts on the Potential Assumed/Assigned Contract and Cure Schedule and the Cure Amounts. ***Objections to the potential assumption and assignment of an Executory Contract on the Potential Assumed/Assigned Contract and Cure Schedule (an "<u>Assignment Objection</u>") or to the Cure Amounts (a "<u>Cure Objection</u>") must be filed with the Court and served on the Notice Parties so as to be received no later than June __, 2022 at 5:00 p.m. (Pacific Time) (the "<u>Cure/Assignment Objection Deadline</u>")***.  Any Cure Objection or Assignment Objection must clearly identify the factual and legal reasons for such object and, with respect to a Cure Objection, appropriate documentation in support of the disputed Cure Amount.

Upon receipt of an Assignment Objection or Cure Objection, the Debtor will contact the non-debtor counterparty or its counsel to attempt to resolve such objection.  If an Assignment Objection or Cure Objection is timely filed by the Cure/Assignment Objection Deadline and cannot be resolved, a hearing will be held (i) at the Sale Hearing or (ii) on such other date subsequent to the Sale Hearing but before the Closing Date, as the Court may designate prior to, during, or after the Sale Hearing (the "<u>Cure/Assignment Hearing</u>") before the Bankruptcy Court to consider the objection.

If no Assignment Objections or Cure Objections are filed or received with respect to any Potential Assumed/Assigned Contracts identified on the Potential Assumed/Assigned Contract and Cure Schedule, then the Cure Amounts set forth in the Potential Assumed/Assigned Contract and Cure Schedule for such Potential Assumed/Assigned Contract will be binding upon the non-debtor counterparty to such Potential Assumed/Assigned Contract for all purposes and will constitute a final determination of the Cure Amounts required to be paid by the Debtor in connection with the assumption and assignment of such Potential Assumed/Assigned Contract.

In addition, all Contract Counterparties to the Potential Assumed/Assigned Contracts who fail to file an Assignment Objection or Cure Objection before the Cure/Assignment Objection Deadline, will be (i) forever barred from objecting to the Cure Amounts with respect to the Potential Assumed/Assigned Contracts, and the Debtor and the Bidder at the Auction will be entitled to rely solely upon the Cure Amounts set forth in the Schedule; (ii) deemed to have consented to the assumption and assignment (subject only to the right to seek adequate assurance of future performance from the applicable Successful Bidder(s) in accordance with the procedures set forth herein); and (iii) forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumptions or assignment of the applicable Potential Assumed/Assigned Contracts, subject only to the right to seek adequate assurance of future performance from the applicable Successful Bidder in accordance with the procedures set forth herein.

Further, if, prior to the Closing of the Auction, the Debtor, Successful Bidder, or Backup Bidder, as applicable, in accordance with the Bid Procedures, identify additional executory contracts or unexpired leases that it wishes to add to or remove from to the Potential Assumed/Assigned Contracts and Cure Schedule (each an "Additional Contract") the Debtor shall, within two (2) calendar days, or as soon as reasonably practicable, of making or being informed of such a determination, send a supplemental Assumption and Assignment Notice (a "Additional Assumption and Assignment Notice") to the applicable Contract Counterparties to such Additional Contracts.

Objections from any Contract Counterparty to an Additional Assumption and Assignment Notice (an "Additional Potential Assignment/Cure Objection") must: (i) be made in writing and filed on the docket by the later of (a) the Cure/Assignment Objection Deadline and (b) seven (7) calendar days after the Debtor files and serves the Additional Assumption and Assignment Notice (as applicable, the "Additional Potential Assignment/Cure Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty; (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules; and (iv) be served upon the Notice Parties (as defined in the Bid Procedures) so as to be actually received on or before the Additional Potential Assignment Objection Deadline. Any Additional Assumption and Assignment Notice shall provide that Additional Potential Assignment/Cure Objections will be resolved at a hearing to be held by the Court (i) on or before seven (7) calendar days from the timely filing of the Additional Potential Assignment/Cure Objection; (ii) at the Cure/Assignment Hearing; or (iii) such other date designated by the Court.

As set forth above, upon determination of the Successful Bid, on or before **_June __ 2022 at 5:00 p.m. (Pacific Time)_**, the Debtor will file with the Court and serve on the Notice Parties and on all Contract Counterparties to Transferred Contracts included in the Successful Bid a notice (the "Notice of Successful Bidder" and, together with the Assumption and Assignment Notice and any Additional Assumption and Assignment Notice, the "Contract Notices") of the Debtor's intent to effectuate a Sale Transaction to the Successful Bidder upon the approval of the Successful Bid by the Court at the Sale Hearing. Any Contract Counterparty to a Transferred Contract seeking additional assurance of future performance than that provided by the Successful Bidder (the "Adequate Assurance Objection") should immediately contact (i) the Debtor: Armory Consulting

Co., Attn: James Wong, 3943 Irvine Blvd #253, Irvine, CA 92602 (jwong@armoryconsulting.com); (ii) proposed special counsel for the Debtor: Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@steptoe.com), Joshua Taylor (jrtaylor@steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071; (iii) counsel to the Committee Brinkman Law Group, P.C., Attn: Daren Brinkman (dbrinkman@brinkmanlaw.com), 543 Country Club Drive, Suite B, Wood Ranch, CA 93065 and the Successful Bidder to attempt to resolve any Adequate Assurance Objection. To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract. The Debtor intends to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

Service of the Contract Notices shall not constitute an admission that a Potential Assumed/Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code and shall not require the Debtor to assume and assign such Potential Assumed/Assigned Contract.

## III.    **NOTICE PARTIES**

As used herein, the "Notice Parties" are:

i.      the Debtor, c/o Armory Consulting Co., Attn: James Wong, 3943 Irvine Blvd #253, Irvine, CA 92602 (jwong@armoryconsulting.com);

ii.     proposed special counsel for the Debtor: Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@steptoe.com), Joshua Taylor (jrtaylor@steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071

iii.    counsel to the Lender (a) Otterbourg P.C., Attn: Andrew M Kramer, Esq. (akramer@otterbourg.com) and Pauline McTernan, Esq. (pmcternan@otterbourg.com), 230 Park Avenue, 30th Floor, New York, New York 10169-0075 and (b) Fox Rothschild LLP, Attn: Keith Owens (kowens@foxrothschild.com) and Nicholas Koffroth (nkoffroth@foxrothschild.com), 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067;

iv.     counsel to the Committee Brinkman Law Group, P.C., Attn: Daren Brinkman (dbrinkman@brinkmanlaw.com), 543 Country Club Drive, Suite B, Wood Ranch, CA 93065; and

v.      the Office of The United States Trustee, Attn: Eric Escobar, Esq.

# <u>EXHIBIT 2</u>

**Bid Procedures Notice**

1   STEPTOE & JOHNSON LLP
    Jeffrey M. Reisner (State Bar No. 143715)
2   jreisner@steptoe.com
    Kerri A. Lyman (State Bar No. 241615)
3   klyman@steptoe.com
    Joshua R. Taylor (*pro hac vice forthcoming*)
4   jrtaylor@steptoe.com
    633 West Fifth Street, Suite 1900
5   Los Angeles, California 90071
    Telephone: (213) 439-9423
6   Facsimile:  (213) 439-9599
7
8   *Proposed Counsel to the*
    *Debtor and Debtor in Possession*
9

10                **UNITED STATES BANKRUPTCY COURT**
11            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                      **LOS ANGELES DIVISION**
12

| | |
|---|---|
| In re: | Chapter 11 |
| BETTER 4 YOU BREAKFAST, INC., | Case No. 2:22-bk-10994 (BB) |
| Debtor. | **NOTICE OF PROPOSED SALE OR SALES OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED LIABILITIES, AND SCHEDULING FINAL SALE HEARING RELATED THERETO** |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May __, 2022,  Debtor filed a  Motion for (I) An Order (A) Approving Bid Procedures for the  Sale  of  Substantially  All  of  the  Debtors'  Assets;  (B)  Approving  Procedures  for  the Assumption  and  Assignment  of  Executory  Contracts  and  Unexpired  Leases;  (C)  Approving Certain Bid Protections in Connection With the Debtors' Entry Into A Potential Stalking Horse

Agreement; (D) Scheduling the Auction and Sale Hearing; (E) Approving the Form and Manner of Notice Thereof; and (F) Granting Related Relief (the "<u>Motion</u>").[1]

On May __, 2022, the Bankruptcy Court entered the Bid Procedures Order [Docket No. __], thereby approving the Bid Procedures.

## I.      **BID PROCEDURES AND STALKING HORSE BIDDER**

On May [●], 2022, the Bankruptcy Court entered the Bid Procedures Order [Docket No. ●], thereby approving the Bid Procedures and the Debtor's ability, with the consent of the Lender and upon consultation with the Committee, to designate a Stalking Horse Bidder on or **before June __, 2022**.

In order for a Potential Bidder to be eligible to participate in the Auction as a Qualified Bidder, **it must comply with the Bid Procedures, and deliver its Bid, so as to be received on or before June __, 2022 at 4:00 p.m. (Pacific Time) (the "<u>Bid Deadline</u>")**, to: (1) (a) the Debtor, c/o Armory Consulting Co., Attn: James Wong, 3943 Irvine Blvd #253, Irvine, CA 92602 (jwong@armoryconsulting.com); (b) proposed special counsel to the Debtor: Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@steptoe.com), Joshua Taylor (jrtaylor@steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071; (c) the Debtor's investment bankers Stout, Attn: (_____); the (2) (a)the Lender, c/o Paladin, Attention: Allen Soong (asoong@paladinmgmt.com); (b) counsel to Lender,  Otterbourg P.C., Attn: Andrew M Kramer, Esq. (akramer@otterbourg.com) and Pauline McTernan, Esq. (pmcternan@otterbourg.com), 230 Park Avenue, 30th Floor, New York, New York 10169-0075 and (b) Fox Rothschild LLP, Attn: Keith Owens (kowens@foxrothschild.com) and Nicholas Koffroth (nkoffroth@foxrothschild.com), and (3) the Committee Brinkman Law Group, P.C., Attn: Daren Brinkman (dbrinkman@brinkmanlaw.com), 543 Country Club Drive, Suite B, Wood Ranch, CA 93065 (collectively, the "<u>Bid Notice Parties</u>").

To receive copies of the (i) Sale Motion, any exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the Form APA or Stalking Horse Agreement, as applicable, please submit a request by email to: (a) proposed special counsel to the Debtor, Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@steptoe.com), Joshua Taylor (jrtaylor@steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071; and (b) the Debtor's investment banker, Stout (email: _____).

In order for Interested Parties to obtain access to the Debtor's data room, each Interested Party must first sign and deliver a confidentiality agreement to the Debtor and provide certain financial data, which financial must be acceptable to the Debtor, after consultation with the Committee and the Lender.  Please refer to the Bid Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to it in the Motion or the Bid Procedures, as applicable.

## II.    SALE HEARING AND CLOSING

The Sale Hearing is scheduled for **June [●] 2022 at [●] (Pacific Time)** at the United States Bankruptcy Court for the Central District of California, United States Courthouse, 255 E. Temple Street, Los Angeles, CA 90012, before the Honorable Sheri Bluebond, United States Bankruptcy Judge. The Sale Hearing may be held virtually and is being held to approve the highest or otherwise best offer(s) received for the Assets at the Auction, which, if any, will take place on **June, 20 2022** at the offices of Steptoe & Johnson, 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071, or at such other location as the Debtor may hereafter designate, **commencing at 10:00 a.m. Pacific Time)**. Subject to the terms of the Cash Collateral Orders, the Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of these chapter 11 cases or without prior notice by an announcement of the adjourned date at the Sale Hearing.

**THE DEADLINE TO OBJECT TO THE DEBTOR'S REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES TO THE SUCCESSFUL BIDDER (EACH, A "SALE OBJECTION") IS JUNE __, 2022 at 4:00 P.M. (PACIFIC TIME) (THE "SALE OBJECTION DEADLINE").**

Any person or entity wishing to submit a Sale Objection must do so in writing and state with particularity the grounds for such objections or other statements of position. All Sale Objections shall be served so as to be actually received by no later than the Sale Objection Deadline by: (1) (a) the Debtor, Armory Consulting Co., Attn: James Wong, 3943 Irvine Blvd #253, Irvine, CA 92602 (jwong@armoryconsulting.com); (b) proposed special counsel to the Debtor: Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@steptoe.com), Joshua Taylor (jrtaylor@steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071; (c) the Debtor's investment bankers Stout, Attn: (_____); the (2) (a) the Lender, c/o Paladin, Attention: Allen Soong (asoong@paladinmgmt.com); (b) counsel to Lender, Otterbourg P.C., Attn: Andrew M Kramer, Esq. (akramer@otterbourg.com) and Pauline McTernan, Esq. (pmcternan@otterbourg.com), 230 Park Avenue, 30th Floor, New York, New York 10169-0075 and Fox Rothschild LLP, Attn: Keith Owens (kowens@foxrothschild.com) and Nicholas Koffroth (nkoffroth@foxrothschild.com), and (3) the Committee, Brinkman Law Group, P.C., Attn: Daren Brinkman (dbrinkman@brinkmanlaw.com), 543 Country Club Drive, Suite B, Wood Ranch, CA 93065 and (viii) any other party that has filed a request for notices with the Court (collectively, the "Notice Parties")

The failure of any person or entity to file and serve a Sale Objection on or before the Sale Objection Deadline, as applicable, (i) shall be deemed a consent to the Sale to the Successful Bidder and the other relief requested in the Motion, and (ii) shall be a bar to the assertion of any objection the sale of the Assets to the Successful Bidder (including in any such case, without limitation, the transfer of the Assets free and clear of all Encumbrances, other than the assumed liabilities).

## III.    THE DEBTORS' CONTRACTS AND LEASES

The Sale Order, if approved, shall authorize the assumption and assignment of the Transferred Contracts of the Debtor to the Successful Bidder. In accordance with the Bid Procedures Order, individual notices setting forth the specific Potential Assumed/Assigned

Contracts that may be assumed by the Debtor and assigned to the Successful Bidder, or sold and transferred to the Successful Bidder, and the proposed Cure Amounts for such Potential Assumed/Assigned Contracts will be given to all Contract Counterparties to the Potential Assumed/Assigned Contracts. Such counterparties will be given the opportunity to object to the assumption and assignment, or sale and transfer, of a Potential Assumed/Assigned Contracts and the proposed Cure Amount. This notice is subject to the full terms and conditions of the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict. The Debtor encourages all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>EXHIBIT 3</u>

## Assumption and Assignment Notice

1  STEPTOE & JOHNSON LLP
   Jeffrey M. Reisner (State Bar No. 143715)
2  jreisner@steptoe.com
3  Kerri A. Lyman (State Bar No. 241615)
   klyman@steptoe.com
4  Joshua R. Taylor (*pro hac vice forthcoming*)
   jrtaylor@steptoe.com
5  633 West Fifth Street, Suite 1900
6  Los Angeles, California 90071
   Telephone: (213) 439-9423
7  Facsimile:  (213) 439-9599

8  *Proposed Counsel to the*
9  *Debtor and Debtor in Possession*

10             **UNITED STATES BANKRUPTCY COURT**
11         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                    **LOS ANGELES DIVISION**
12
13 |                                    | Chapter 11 |
14 | In re:                             | Case No. 22-10994 (BB) |
15 | BETTER 4 YOU BREAKFAST, INC.,      | **NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTOR** |
16 |         Debtor.                    |  |
17
18
19
20
21 **PLEASE TAKE NOTICE OF THE FOLLOWING:**
22
23          On May __, 2022,  Debtor filed a  Motion for (I) An Order (A) Approving Bid Procedures
   for the Sale of Substantially All of the Debtors' Assets; (B) Approving Procedures for the
24 Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Approving
   Certain Bid Protections in Connection With the Debtors' Entry Into A Potential Stalking Horse
25 Agreement; (D) Scheduling the Auction and Sale Hearing; (E) Approving the Form and Manner
   of Notice Thereof; and (F) Granting Related Relief (the "Motion").[1]
26
27
28
   _____
   [1] Capitalized terms used but not defined herein shall have the meaning ascribed to it in the Motion or the Bid
   Procedures, as applicable.

                                       1

On May __, 2022, the Bankruptcy Court entered the Bid Procedures Order [Docket No. __], thereby approving the Bid Procedures.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO ONE OR MORE OF THE CONTRACTS OR LEASES REFERRED TO HEREIN.**

**POTENTIAL ASSUMED/ASSIGNED CONTRACTS[2]**

Attached as <u>Schedule A</u> is a schedule of all Potential Assumed/Assigned Contracts that <u>may</u> be assumed and assigned to the Successful Bidder, listing the counterparties to such contracts (the "<u>Contract Counterparties</u>") and the amount, if any, proposed to be paid to cure any monetary defaults under the Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Amounts</u>").[3]  The Successful Bidder reserves the right to revise these schedules in accordance with its Purchase Agreement and the Bid Procedures at any time prior to the closing of the applicable Sale Transaction (the "<u>Closing</u>").

To the extent that any Transferred Contract is determined by an order of the Bankruptcy Court, or as agreed to between the Debtor and the applicable Contract Counterparty, not to be an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, the Debtor shall instead sell, assign, and transfer to the Successful Bidder all of the Debtor's right, title, and interest in, to and under such Transferred Contracts pursuant to section 363 of the Bankruptcy Code.  Prior to any such sale and transfer of a Transferred Contract, the Successful Bidder shall cure any monetary defaults or pay other amounts due under such Transferred Contract which are capable of being cured or paid as if such Transferred Contract had been subject to section 365 of the Bankruptcy Code.

IF YOU AGREE WITH THE ASSUMPTION AND ASSIGNMENT OF YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S) AND/OR PROPOSED CURE AMOUNTS LISTED IN **SCHEDULE A** WITH RESPECT TO YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.

IF YOU DISAGREE WITH THE ASSUMPTION AND ASSIGNMENT OF YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S) AND/OR THE PROPOSED CURE AMOUNTS LISTED IN **SCHEDULE A** WITH RESPECT TO YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S), YOU MUST OBJECT TO THE PROPOSED CURE AMOUNTS NO LATER THAN **JUNE __, 2022 AT 4:00 P.M. (PACIFIC TIME)** (the "<u>Cure/Assignment Objection Deadline</u>").

---

[2] The presence of any contract or lease on Exhibit A hereto does not constitute an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that such contract or lease will be assumed and/or assigned by the Debtor.

[3] For avoidance of doubt, the Debtor reserves all rights to remove any executory contract or unexpired lease from the Potential Assumed/Assigned Contract and Cure Schedule prior to Closing of any Sale, in which instance such executory contract or unexpired lease will not be a Transferred Contract.

Objections to a proposed Cure Amount with respect to any Potential Assumed/Assigned Contracts (a "Cure Objection") must be: (i) made in writing and filed on the docket for the chapter 11 cases no later than the Cure/Assignment Objection Deadline; (ii) state the basis of such Cure Objection with specificity, including, without limitation, the Cure Amount alleged to be due to such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the following, so as to be actually received by them on or before the Cure/Assignment Objection Deadline (1) (a) the Debtor, c/o Armory Consulting Co., Attn: James Wong, 3943 Irvine Blvd #253, Irvine, CA 92602 (jwong@armoryconsulting.com); (b) proposed special counsel to the Debtor: Steptoe & Johnson LLP, Attn: Jeffrey Reisner, Esq. (jreisner@Steptoe.com), Kerri Lyman (klyman@steptoe.com), Joshua Taylor (jrtaylor@steptoe.com), 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071; (c) the Debtor's investment bankers Stout, Attn: (_____); the (2) (a)the Lender, c/o Paladin, Attention: Allen Soong (asoong@paladinmgmt.com); (b) counsel to Lender, Otterbourg P.C., Attn: Andrew M Kramer, Esq. (akramer@otterbourg.com) and Pauline McTernan, Esq. (pmcternan@otterbourg.com), 230 Park Avenue, 30th Floor, New York, New York 10169-0075 and Fox Rothschild LLP, Attn: Keith Owens (kowens@foxrothschild.com) and Nicholas Koffroth (nkoffroth@foxrothschild.com), and (3) the Committee, Brinkman Law Group, P.C., Attn: Daren Brinkman (dbrinkman@brinkmanlaw.com), 543 Country Club Drive, Suite B, Wood Ranch, CA 93065  and (viii) any other party that has filed a request for notices with the Court (collectively, the "Notice Parties").

Any other objections to the assumption and assignment of any of the Potential Assumed/Assigned Contracts (an "Assignment Objection") (other than on the basis of the Cure Amount) must: (i) be made in writing and filed on the docket for the chapter 11 cases no later than **JUNE __, 2002 at 4:00 p.m. (Pacific Time)** (*i.e.* the Cure/Assignment Objection Deadline); (ii) state the basis of such Assignment Objection with specificity and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the Notice Parties so as to be actually received by such parties on or before the Cure/Assignment Objection Deadline.

If you file a Cure Objection or Assignment Objection satisfying the requirements herein, the Debtor and the Successful Bidder, as applicable, will confer with you in good faith to attempt to resolve any such Cure Objection or Assignment Objection without Bankruptcy Court intervention.  If the applicable parties determine that the Cure Objection or Assignment Objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall resolve such objections at the Sale Hearing or such other date designated by the Bankruptcy Court.

If the Debtor, Successful Bidder, or Backup Bidder, in accordance with the Bid Procedures, identify additional executory contracts or unexpired leases that they wish to add to or remove from the Potential Assumed/Assigned Contract and Cure Schedule (each an "Additional Contract"), the Debtor shall, within two calendar days, or as soon as reasonably practicable, of the Debtor's, Successful Bidder's, or Backup Bidder's making such a determination, send an Additional Assumption and Assignment Notice to the applicable Contract Counterparties to such Additional Contracts.  To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtor may, in their sole discretion, reject such an unassigned executory

3

contract or unexpired lease to the extent permitted by law following the Closing. In no event will the Successful Bidder be responsible for any unassigned executory contracts or unexpired leases.

Objections from any Contract Counterparty to an Additional Contract (an "Additional Potential Assignment Objection") must: (i) be made in writing and filed on the docket by the later of (a) the Cure/Assignment Objection Deadline and (b) seven (7) calendar days after the Debtors file and serve the Additional Assumption and Assignment Notice (as applicable, the "Additional Potential Assignment Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty; (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (iv) be served upon the Notice Parties so as to be actually received by them on or before the Additional Potential Assignment Objection Deadline.

If a timely Additional Potential Assignment Objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such Additional Potential Assignment Objection at a hearing to be held (i) on or before seven (7) calendar days from the timely filing of the Additional Potential Assignment Objection; (ii) at the Cure/Assignment Hearing; or (iii) such other date designated by the Court. If such Additional Contract is a Transferred Contract, unless the Bankruptcy Court orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned, or assigned, as the case may be, to the Successful Bidder or the Backup Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

**IF YOU FAIL TO TIMELY FILE AND PROPERLY SERVE A CURE OBJECTION OR ASSIGNMENT OBJECTION AS PROVIDED HEREIN (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY RIGHT TO ASSERT A CURE OBJECTION, ASSIGNMENT OBJECTION, OR ADDITIONAL POTENTIAL ASSIGNMENT OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, SUCH POTENTIAL ASSUMED/ASSIGNED CONTRACT OR ADDITIONAL POTENTIAL ASSUMED/ASSIGNED CONTRACT, AS APPLICABLE, ON THE TERMS SET FORTH IN THIS ASSIGNMENT NOTICE AND THE PURCHASE AGREEMENT TO BE ENTERED INTO WITH THE SUCCESSFUL BIDDER, (II) YOU WILL HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF, OR SALE AND TRANSFER OF, THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, ITS TRANSFERRED CONTRACT, AS THE CASE MAY BE, WITHOUT THE NECESSITY OF OBTAINING ANY FURTHER ORDER OF THE BANKRUPTCY COURT, AND (III) YOU WILL BE BARRED AND ESTOPPED FOREVER FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE SUCCESSFUL BIDDER, OR THE BACKUP BIDDER THAT ANY ADDITIONAL CURE AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, MUST BE SATISFIED, UNDER SUCH TRANSFERRED CONTRACT.**

The Debtor's assumption and assignment, or sale and transfer, of a Transferred Contract is subject to approval by the Bankruptcy Court, and consummation of the closing of the Sale. If there

is no closing, the Transferred Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtor.

The inclusion of any document on the list of Potential Assumed/Assigned Contracts or Transferred Contracts shall not constitute or be deemed to be a determination or admission by the Debtor or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

Any Cure Objection or Assignment Objection shall not constitute an objection to any of the other relief requested in the Sale Motion to be approved by the Sale Order (*e.g.*, the sale of the Assets by the Debtor to the Successful Bidder free and clear of all Encumbrances other than assumed liabilities). Parties wishing to object to the other relief requested in the Motion (excluding the Bid Procedures) must timely file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bid Procedures Order.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas and/or in accordance with the Bid Procedures Order. Parties in interest are encouraged to monitor the electronic court docket available at https://cases.stretto.com/carbonlite/.

This Notice is subject to the full terms and conditions of the Bid Procedures and Bid Procedures Order, which shall control in the event of any conflict. The Debtor encourages parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

# __SCHEDULE A__

Schedule of Potential Assumed/Assigned Contracts

| No. | Contract Counterparty | Contract/Lease Debtor Party | Contract/Lease Title | Date of Contract/Lease | Cure Amount |
|---|---|---|---|---|---|
| 1. | [X] | [X] | [X] | [X] | $[X] |

1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): <u>MOTION TO APPROVE BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBT-OR'S ASSETS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) APPROVING CERTAIN BID PROTECTIONS IN CONNECTION WITH THE DEBTOR'S ENTRY INTO A POTENTIAL STALKING HORSE AGREEMENT; (D) SCHEDULING THE AUCTION AND SALE HEARING; (E) AP-PROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>May 10, 2022</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>May 11, 2022</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>May 11, 2022</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

BY OVERNIGHT MAIL:
Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/10/2022 | Melissa Hernandez | /s/ Melissa Hernandez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Shraddha Bharatia    notices@becket-lee.com
- Daren Brinkman    office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- Eryk R Escobar    eryk.r.escobar@usdoj.gov
- Mark D Hurwitz    mhurwitz@lsl-la.com, dsmall@lsl-la.com,narutunyan@lsl-la.com
- Raffi Khatchadourian    raffi@hemar-rousso.com
- Nicholas A Koffroth    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- David S Kupetz    David.Kupetz@lockelord.com, dperez@sulmeyerlaw.com; dperez@ecf.courtdrive.com; dkupetz@ecf.courtdrive.com
- Peter W Lianides    plianides@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- Mark Romeo    romeolaw@msn.com
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com; zshechtman@ecf.inforuptcy.com
- David A Tilem    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;TilemDR69450@notify.bestcase.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com


**TO BE SERVED BY UNITED STATES MAIL**

Armory Consulting Co.
3943 Irvine Blvd., #253
Suite 1150
Irvine, CA 92602

Banner Fruit Company
Attn: Kevin Sommerfeld
PO Box 2971
South San Francisco, CA 94083

Pauline McTernan
Otterbourg, P.C.
230 Park Ave
New York, NY 10169

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**CORE SERVICE LIST:**

**LIST OF CREDITORS WHO HAVE THE 20 LARGEST UNSECURED CLAIMS:**

Wild Fresh Produce
PO Box. 32658
Los Angeles, CA 90032

Rockview
PO Box 668
Downey, CA 90241

Bestway Sandwiches
1530 1st St.
San Fernando, CA 91340

Enterprise
333 City Blvd. W 1008
Orange, CA 92868

Art Saballa
US Foods, Inc.
File 6993
Los Angeles, CA 90074-6993

Analisa Angeles
Compwest Insurance Company
PO Box 101563
Pasadena, CA 91189-1563

P & R Paper Supply Company, Inc.
P.O. Box 590
Redlands, CA 92373

Ignacio Martinez
Sysco Los Angeles, Inc.
20701 East Currier Road
Walnut, CA 91789

Analisa Angeles
Philadelphia Indemnity
Insurance Co.
PO Box 70251
Philadelphia, PA 19176

Me Gusta Gourmet Foods
13752 Van Nuys Blvd.
Pacoima, CA 91331

ZSF - Banner Fruit Co.
PO Box 2971
South San Francisco, CA 94083

J & J Snack Foods Corp.
PO Box 845054
Los Angeles, CA 90084-5054

Global Food Solutions
PO Box 11115
Hauppauge, NY 11788

Ernest Packaging Solutions
5777 Smithway St
Commerce, CA 90040

Meza Construction
2550 E. 55th St.
Huntington Park, CA 90255

Good Taste Bakery
8702 Woodley Ave.
North Hills, CA 91343

Caldwell Fresh Foods
4035 E 52nd St.
Maywood, CA 90270

ZNV-Meadow Gold-Las Vegas (MG)
6350 E. Centennial Pkwy.
Las Vegas, NV 89115

Tuscany Cheese LLC
6850 Artesia Blvd.
Buena Park, CA 90620

Pueblo Trading Company, Inc
PO Box 11508
Newport Beach, CA 92658

**SECURED CREDITORS:**

Alliance Funding
c/o Brian Knox
17542 17th Street, Suite 200
Tustin, CA 92780

Ascentium Capital, LLC
LLC, 23970 Hwy 59 N., 2nd Fl
Kingwood, TX 77339-1535

Bank Leumi USA
350 Madison Ave.
New York, NY 10017

CT Corporation
Bank Leuimi USA
579 Fifth Avenue
New York, NY 10017

CNG Transportation, LLC
3951 Medford Street
Los Angeles, CA 90063

Crown Credit Company
40 S. Washington St
New Bremen, OH 45869

CT Corporation System
330 N. Brand Blvd., Suite 700
Attn SPRS
Glendale, CA 91203

Dedicated Funding, LLC,
860 E. 4500 S. Ste 312
Salt Lake City, UT 84107

Financial Pacific Leasing
3455 S. 344th Way #300
Federal Way, WA 98001

Financial Pacific Leasing, Inc.
PO Box 4568
Federal Way, WA 98063

Gisella Melendez
Wolters Kluwer Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

Hitachi Capital America Corp.
7808 Creekridge Circle, Ste 250
Minneapolis, MN 55439

JP Morgan Chase Bank, NA
Loan Processing, Middle Market Serv
10 South Dearborn, Floor L2, Suite
Chicago, IL 60603-2300

Leumi Bank
555 W. 5th Street, Suite 3300
Los Angeles, CA 90013

Marlin
330 Fellowship Rd
Mt. Laurel, NJ 08054

Mitsubishi HC
Leasing-Hitachi Capital
7808 Creekridge Circle, Suite 250
Edina, MN 55439

National Funding, Inc.
9820 Town Centre Drive, Suite 200
San Diego, CA 92121

NCS UCC Services Group
c/o Mary Cowan
PO Box 24101
Cleveland, OH 44124

Pawnee Equipment Leasing
654 Amherst Road Suite 320
Sunderland, MA 01375

Pawnee Leasing Corp.
3801 Automation Way, Suite 207
Fort Collins, CO 80525

Raymond Leasing
22 S Canal St
Greene, NY 13778

Raymond Leasing Corp
Corp. Headquarters,
PO Box 130
Greene, NY 13778

Samson Horus, LLC
400 Rella Blvd. Suite 165-101
Suffern, NY 10901

State of California
Employment Development Dept.
Lien Group, MIC 92G
PO Box 826880
Sacramento, CA 94280-0001

Susquehanna Commercial Finance, Inc
2 Great Valley Parkway, Ste 300
Malvern, PA 19355

TCF
BB&T Commercial Equipment Capital
2 Great Valley Parkway, Ste. 300
Malvern, PA 19355

TCF Equipment Finance
a division of TCF National Bank
11100 Wayzata Blvd., Ste 801
Hopkins, MN 55305

US Foods, Inc.
15155 Northam St.
La Mirada, CA 90638

US Foods
c/o Brian Shaw, Esq. - Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606

US Small Business Administration
10737 Gateway West, #300
El Paso, TX 79935

Vernon Capital
383 Kingston Ave , Suite 343,
Brooklyn, NY 11213

Vernon Capital
c/o Kaminski Law, PLLC
8 Spruce Street, 25J
New York, NY 10038

Vox Funding
14 E 44th St 4th Floor
New York, NY 10017

Fox Capital Group Inc.
140 Broadway 46th Fl
New York, NY 10005

**INTERESTED PARTIES:**

P & R Paper Supply Company, Inc.
Attn: Cindi Chadwick
P.O. Box 590
Redlands, CA 92373

Jeff Kaplan
CRG Financial LLC
100 Union Avenue, Suite 240
Cresskill, NJ 07626

Ann Doederlein
Albie's Food Products, LLC
1534 O'Rourke Blvd.
Gaylord, MI  49735

A&M Cold Storage LLC
AMC Trailer Leasing LLC
PO BOX 86
Minster, OH 45865

The Fruit Guys
21 Airport Blvd., Ste H South
South San Francisco, CA 94080

Luis Martinez
15222 Rayen St #18
North Hills, CA 91343

InterCrate, Inc.
PO Box 10349
USPS – 4026 E. Jensen Ave.
Fresno, CA 93745

Bradley Robert Hegemier
BRH SUPPLY
17472 Apex Circle
Huntington Beach, CA 92647

Jonathan Saucedo
11734 Eldridge Ave
Lake View Terrace, CA 91342

Los Angeles Cold Storage
400 South Central Ave.
Los Angeles, CA 90013

ATLAPAC TRADING COMPANY, INC.
14700 Marquardt Avenue
Santa Fe Springs, CA  90670

American Reclamation, Inc.
c/o Clinton L. Hubbard, Esq.
LAW OFFICES OF CLINTON L. HUBBARD
2030 Main Street, Suite 1200
Irvine, California 92614

Triumph Business Capital
651 Canyon Drive, Suite 105
Coppell, TX 75034

Attention: Megan Haller
Get Fresh Sales
6745 S. Escondido Street
Las Vegas, Nevada 89119

Charles S. Stahl, Jr.
Swanson, Martin & Bell, LLP
2525 Cabot Drive, Suite 204
Lisle, IL 60532

Wendy L. Slavkin, Esq.
LAW OFFICES OF WENDY L. SLAVKIN
11707 Sunset Boulevard, Suite 24
Los Angeles, CA 90049

Howard Rosenberg
2520 Sunset Blvd
Los Angeles, CA 90026

NextGen
7165 Bermuda Rd.
Las Vegas, Nevada 89119

Veronica Ortiz
c/o Danielle E. Montero, Esq.
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Blvd., Suite #200
Beverly Hills, CA 90211

**UNITED STATES TRUSTEE:**

Eryk R. Escobar
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

**ATTORNEY FOR CREDITOR COMMITTEE:**

Daren R. Brinkman
Brinkman Law Group, PC
543 Country Club Dr, Ste B
Simi Valley, CA 93065-7696

**RETURNED MAIL:**

Capitol Corporate Services, Inc.
455 Capitol Mall Complex, Ste 217
Sacramento, CA 95814

Amur Equipment Finance, Inc.
308 N. Locust St., Suite 1
Grand Island, NE 68801

Axis Capital
Amur Equipment Financial
308 N. Locust St
Grand Island, NE 68801a

Cogency Global Inc.
1325 J Street, Suite 1550,
Sacramento, CA 95814

Corporation Service Company
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
P.O. Box 2576
Springfield, IL 62706

Corporation Service Company
c/o Pawnee Leasing Corp.
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
c/o Financial Pacific Leasing, Inc.
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
c/o National Funding, Inc.
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
c/o Susquehanna Commercial Finance
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
c/o TCF Equipment Finance
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
c/o Amur Equipment Finance, Inc.
801 Adlai Stevenson Dr.
Springfield, IL 62706

Corporation Service Company
c/o US Small Business Administration
801 Adlai Stevenson Dr.
Springfield, IL 62706

Samson Horus
Steven Markowitz Jr
90 John Street,
New York, NY 10038

Opus Bank
131 W. Commonwealth Ave.
Fullerton, CA 92832

Vox Funding LLC
132 E 43rd Street Suite 311
New York, NT 10017