STEPTOE & JOHNSON LLP
Jeffrey M. Reisner (State Bar No. 143715)
jreisner@steptoe.com
Kerri A. Lyman (State Bar No. 241615)
klyman@steptoe.com
Joshua R. Taylor (*admitted pro hac vice*)
jtaylor@steptoe.com
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9423
Facsimile: (213) 439-9599

*Special Counsel to the*
*Debtor and Debtor in Possession*

FILED & ENTERED

JUN 27 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli  DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BETTER 4 YOU BREAKFAST, INC.,<br><br>        Debtor and Debtor-in-<br>        Possession. | Case No. 2:22-bk-10994-BB<br><br>Chapter 11-<br><br>**ORDER APPROVING MOTION FOR ENTRY OF AN ORDER: (A) APPROVING ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES AND (C) GRANTING RELATED RELIEF**<br><br>Hearing Date/Time:<br>Hearing:    June 22, 2022<br>Time:      10:00 a.m.<br>Courtroom: 1539<br>          255 E. Temple Street<br>          Los Angeles, CA 90012 |

This matter came before the Court on the motion [Docket No. 233] (the "Motion") of Better 4 You Breakfast, Inc. (the "Debtor") as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105(a), 363, 365, 503,

and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1 and 6004-1 of the Local Rules for the Bankruptcy Court for the Central District of California (the "<u>Local Rules</u>") for entry of an order (this "<u>Sale Order</u>") (a) approving the proposed sale of the Acquired Assets (as defined in the Asset Purchase Agreement) (the "<u>Sale</u>"), free and clear of all Interests (as defined herein) (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities); (b) authorizing the Debtors to enter that certain Asset Purchase Agreement, dated as of June 17, 2022 by and between Revolution Foods PBC (the "<u>Purchaser</u>") and the Debtor (in substantially the form attached as **<u>Exhibit 1</u>** *to the Notice of Cancellation of Auction and Designation of Successful Bidder* [Dkt. No. 353] , and as it may be amended, modified, or supplemented in accordance with the terms hereof and thereof, the "<u>Asset Purchase Agreement</u>");[1] (c) authorizing the assumption and assignment of the contracts and leases identified on the scheduled attached hereto as **<u>Exhibit A</u>** (as such schedule may be modified from time to time, the "<u>Assumption Schedule</u>," and the contracts and leases identified thereon, the "<u>Assigned Contracts</u>"); and (d) granting certain related relief; and the Court having entered an order (the "<u>Bidding Procedures</u>") approving certain dates, deadlines, and procedures to market and conduct a sale of the substantially all of the Debtor's assets, a process to conduct an auction ("<u>Auction</u>") or alternatively to cancel the Auction in certain circumstances, and granting related relief [Docket No. 278] (the "<u>Bidding Procedures Order</u>"); the Auction having been cancelled in accordance with the Bidding Procedures Order; and this Court having conducted a hearing on the Sale on June 22, 2022 (the "<u>Sale Hearing</u>"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement or, if not defined therein, in the Motion.

it appearing that no other or further notice of the Motion is required; and all parties in interest have been heard, or having had the opportunity to be heard, regarding the Motion, the Asset Purchase Agreement, and this Sale Order; and this Court having reviewed and considered the Motion and all objections thereto, and the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing and any other hearing related to the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and shareholders, and other parties in interest; and upon the entire record of the Sale Hearing and the Chapter 11 Case, and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[2]

A.      The Debtor has articulated good and sufficient reasons for the Court to (i) authorize the Sale of the Acquired Assets free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities), (ii) authorize the assumption, assignment, and/or transfer of the Assigned Contracts, and (iii) grant the other relief set forth in this Sale Order.

B.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.  The Purchaser has acted in good faith and in compliance with the terms of the Bidding Procedures Order.  In accordance with the Bidding Procedures, the Debtors determined that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bidding Procedures).

C.      The consideration provided by the Purchaser is expected to provide sufficient proceeds to satisfy all claims in full and is anticipated to provide a recovery for the Debtor's equityholders who have agreed to proceed with the Sale to the Purchaser.

---

[2]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Notice of the Sale**

D.    Actual written notice of the Sale Hearing, the Motion, the Sale, and the assumption, assignment, and/or transfer of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested persons entitled to receive such notice, including, but not limited to, the following parties: (i) all entities known to have asserted any Interest in or upon any portion of the Debtor's assets; (ii) all federal, state, and local regulatory authorities or recording offices that are reasonably known to regulate any part of the business of the Debtor; (iii) the Internal Revenue Service and all state and local taxing authorities in states in which the Debtor is reasonably known to have tax liability; (iv) counsel to the official committee of unsecured creditors in the Chapter 11 Case (the "Committee"); (v) the parties included on the Debtor's list of its twenty (20) largest unsecured creditors; (vi) all parties who have made the appropriate filings requesting notice of all pleadings in the Chapter 11 Case; (vii) the U.S. Trustee; (viii) Valley National Bank as successor to Bank Leumi USA (the "Secured Lender"); (xi) all other known creditors of the Debtor; (xii) all counterparties to executory contracts and unexpired leases with the Debtor which are to be assumed and assigned pursuant to 11 U.S.C. § 365 or otherwise (the "Contract Counterparties"), and (xiii) the California Department of Education and the California Attorney General.

E.    As evidenced by the affidavits of service previously filed with this Court: (i) due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the assumption, assignment, and/or transfer of the Assigned Contracts, this Sale Order, and the Sale has been provided to all parties in interest; (ii) such notice was, and is, good, sufficient, and appropriate under the circumstances of this Chapter 11 Case, provided a fair and reasonable opportunity for parties in interest to object and to be heard with respect thereto, and was provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014, and the applicable Local Rules; and (iii) no other or further notice with respect to such matters is necessary or shall be required.    The Sale Notice and the Bidding Procedures Order were also posted on the Court's website in compliance with the Local Rules of the Bankruptcy Court for the Central District of California.

**Business Judgment**

F.    The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Asset Purchase Agreement and all related documents (collectively, the "Transaction Documents"), including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts (collectively, the "Transactions") pursuant to sections 363 and 365 of the Bankruptcy Code or otherwise, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtor's business judgment and is in the best interests of the Debtor, its estate, and its creditors.  Such business reasons include, but are not limited to, the facts that: (i) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (ii) the Asset Purchase Agreement presents the best opportunity to realize the value of the Debtor on a going concern basis and avoid decline and devaluation of the Debtor's business; and (iii) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, recoveries to creditors or other stakeholders may be substantially diminished.

**Good Faith of the Purchaser; No Collusion**

G.    The Purchaser is not an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of the Debtor.

H.    The Purchaser is purchasing the Acquired Assets in good faith and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to paragraph 29 below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the Transactions in that, *inter alia*: (i) the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (ii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (iii)  the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors or controlling stockholders exists between the

5

Purchaser and the Debtor; and (vii) the negotiation and execution of the Asset Purchase Agreement and the other Transaction Documents were at arms' length and in good faith.

I.      Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the other Transaction Documents, or the consummation of the Transactions, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

**Highest and Best Offer**

J.      The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets, and will provide value for the Debtor's estate that is equal to or greater than that which would be provided by any other available alternative.  The Debtor's determination, in consultation with the Committee and the Secured Lender, that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

K.      The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of this Chapter 11 Case.

L.      Approval of the Motion and the Asset Purchase Agreement, and the prompt consummation of the Transactions contemplated thereby, is in the best interests of the Debtor, its creditors, its estate, its shareholders, and all other parties in interest.

**No Fraudulent Transfer; Not a Successor**

M.      The Asset Purchase Agreement and the other Transaction Documents were not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under applicable Law, and none of the Parties to the Asset Purchase Agreement or any of the other Transaction Documents are consummating the Transactions with any fraudulent or otherwise improper purpose.  The Purchase Price for the Acquired Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair

6

consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws.

N.      Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities, the Purchaser shall have no liability, responsibility, or obligations of any kind or nature whatsoever for any Interest of or against the Debtor, or otherwise related to the Acquired Assets, by reason of the transfer of the Acquired Assets to the Purchaser.  The Purchaser shall not be deemed, as a result of any action taken in connection with the Transactions: (i) to the greatest extent permitted under applicable law, to be a successor (or other such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or (ii) to have, *de facto* or otherwise, merged or consolidated with or into the Debtor.  The Purchaser is not acquiring or assuming any Interest, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities.

**Validity of Transfer**

O.      The Debtor has validly authorized the execution and delivery of the Asset Purchase Agreement, the sale of all Acquired Assets to the Purchaser, and the assumption of all Assumed Liabilities by the Purchaser.  Subject to the entry of this Sale Order, the Debtor has full corporate power and authority (i) to perform all of its obligations under the Asset Purchase Agreement and the other Transaction Documents, and the Debtor's prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Transactions.  The Asset Purchase Agreement and the other Transaction Documents, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action. No further consents or approvals are required for the Debtor to consummate the Transactions or otherwise perform its obligations under the Asset Purchase Agreement or the other Transaction Documents, except as otherwise expressly set forth in the Asset Purchase Agreement or applicable Transaction Documents.

P.      As of the Closing Date, the transfer of the Acquired Assets to the Purchaser, including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts, will be a legal, valid, and effective transfer thereof, and will vest the Purchaser with all

7

right, title, and interest of the Debtor in and to the Acquired Assets, free and clear of all Interests accruing or arising any time prior to the Closing Date (except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Liens), with all such Interests to attach to the proceeds of the Sale as set forth in paragraph 8 of this Sale Order.

### Section 363(f) Is Satisfied

Q.      The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Transactions if the sale of the Acquired Assets, including the assumption, assignment, and/or transfer of the Assigned Contracts, to the Purchaser were not free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities), or if the Purchaser, or any of its Affiliates or Subsidiaries, would, or in the future could, be liable for any of such Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).

R.      The Debtor may sell or otherwise transfer the Acquired Assets free and clear of all Interests because one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtor, its estate, or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had immediately prior to consummation of the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

S.      As used in this Sale Order, the term "Interest" includes all of the following, in each case to the extent against or with respect to the Debtor or in, on, or against or with respect to any of the Acquired Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of

the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever (including equity interests), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of setoff (except for setoffs validly exercised prior to the Petition Date), rights of use or possession, subleases, leases, condition sale arrangements, or any similar rights; (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised prior to the Petition Date, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtor or any other Person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity, or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or the Purchaser's interest in the Acquired Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended,

"ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state Law, (i) state discrimination Laws, (j) state unemployment compensation Laws or any other similar state Laws, (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors (including the California Labor Code § 203 or otherwise, or civil penalties under the California Labor Code § 2698, *et seq.*) or (l) the WARN Act (29 U.S.C. §§ 2101, *et seq.*) or any state or other Laws of similar effect; (viii) any bulk sales or similar Law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or business of the Debtor prior to the Closing; (x) any unexpired and executory contract or unexpired lease to which the Debtor is a party that is not an Assigned Contract; (xi) any other Excluded Liabilities under the Asset Purchase Agreement; and (xii) Interests arising under or in connection with any acts, or failures to act, of the Debtor or any of the Debtor's predecessors, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities Laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

10

T.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Liens, and without limiting the nature or scope of paragraph Q above, the transfer of the Acquired Assets, including the assumption, assignment, and/or transfer of the Assigned Contracts, to the Purchaser will not subject the Purchaser or its Affiliates or subsidiaries to, or subject any Acquired Asset to or provide recourse for, any Interest whatsoever with respect to the operation or condition of the Business or any of the Acquired Assets prior to the Closing or with respect to any facts, acts, actions, omissions, circumstances, or conditions existing, occurring or accruing with respect thereto prior to the Closing Date.

**Assumption, Assignment, and/or Transfer of the Assigned Contracts**

U.    The assumption, assignment, and/or transfer of the Assigned Contracts to the Purchaser pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement, is in the best interests of the Debtor and its estate, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

V.    The Debtor has or will have as of the Closing Date: (i) cured, or provided adequate assurance that the Purchaser will cure, any default existing prior to or immediately following the Closing Date with respect to the Assigned Contracts, within the meaning of and as required by sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of and as required by section 365(b)(1)(B) of the Bankruptcy Code.  The respective amounts set forth on the Assumption Schedule are the sole amounts necessary under sections 365(b)(1)(A), 365(b)(1)(B), and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assigned Contracts, except to the extent otherwise agreed by the Debtor and the applicable Contract Counterparty in writing or determined by order of this Court; provided, further, notwithstanding anything to the contrary herein, the Purchaser's and the Debtor's respective obligations with respect to payment of such Cure Amounts shall be as set forth in the Asset Purchase Agreement.

W.    The promise of the Purchaser to perform the obligations first arising under the Assigned Contracts after their assumption, assignment, and/or transfer to the Purchaser constitutes

11

adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Contract Counterparties to such Assigned Contracts. Any objections to the foregoing, the determination of any Cure Amount, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assigned Contracts to the Purchaser are hereby overruled on the merits or otherwise treated as set forth in paragraph 2 below. Those non-Debtor parties to the Assigned Contracts who did not object to the assumption, assignment, or transfer of their applicable Assigned Contract, or to their applicable Cure Amount, are deemed to have consented thereto for all purposes of this Sale Order.

X.     Pursuant to the Asset Purchase Agreement, (i) with respect to any Contract disclosed by the Debtor to the Purchaser on Schedule 2.9(a) to the Asset Purchase Agreement, the Purchaser may add or remove such Contract from the Assumption Schedule on or before 5:00 p.m. (prevailing Eastern Time) on the day before the Closing Date (the "Designation Deadline"), or (ii) with respect to any other Contract (each, a "Previously Omitted Contract"), the Purchaser may add or remove such Contract from the Assumption Schedule during the pendency of the Debtor's Chapter 11 Case, provided that such modification must be made within thirty (30) calendar days after the Purchaser's receipt of notice of the existence of such Contract, as set forth in such sections. Such modification rights include, but are not limited to, the right of the Purchaser to designate a Contract for assumption by the Debtor and assignment to the Purchaser, as well as for exclusion from the Sale as an Excluded Contract. The Purchaser would not have agreed to the Transactions without such modification rights. The notice and opportunity to object provided to Contract Counterparties to such Assigned Contracts and to other parties in interest in the Bidding Procedures Order or this Sale Order, as applicable, fairly and reasonably protect any rights that such Contract Counterparties and other parties in interest may have with respect to such Contracts.

## Compelling Circumstances for an Immediate Sale

Y.     To maximize the value of the Acquired Assets and to preserve the viability of the Business to which the Acquired Assets relate, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence

in consummating the Sale. The Sale must be approved and consummated promptly in order to preserve the viability of the Business as a going concern. Accordingly, there is cause to eliminate the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents.

Z.      Given all of the circumstances of this Chapter 11 Case and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed transfer of the Acquired Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment, is in the best interests of the Debtor, its estate, and its creditors, and should be approved.

AA.      The consummation of the Transactions is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

BB.      The Sale does not constitute a *de facto* plan of reorganization or liquidation.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.   The Motion, and the relief requested therein, are granted and approved, and the Transactions contemplated thereby and by the Asset Purchase Agreement and the other Transaction Documents are approved, in each case as set forth in this Sale Order.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing, or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

### Approval of Asset Purchase Agreement; Binding Nature

3.      The Asset Purchase Agreement and the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

13

4.     The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement, including (a) the assumption of the Assumed Liabilities and (b) the payment of cash in the amount of the Closing Date Payment, is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable Law, and the Transactions may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

5.     Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtor is authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Sale and the other Transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents, and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of its obligations as contemplated by the Asset Purchase Agreement and the other Transaction Documents without further notice to or order of this Court.  The Transactions authorized herein shall be of full force and effect, regardless of the Debtor's standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

6.     This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors, all holders of equity interests in the Debtor, all holders of any claim(s) (whether known or unknown) against the Debtor, any holders of Interests against, in, or on all or any portion of the Acquired Assets, all non-Debtor parties to the Assigned Contracts, the Purchaser, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in this Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of this Chapter 11 Case in any and all circumstances, including, without limitation, after the closing of the Transactions, confirmation or consummation of a chapter 11 plan, conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the dismissal of this Chapter 11 Case for any reason.

**Transfer of Acquired Assets Free and Clear of Interests; Injunction**

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtor is authorized and directed to transfer the Acquired Assets, including but not limited to the Assigned Contracts, to the Purchaser on the Closing Date in accordance with the Asset Purchase Agreement and the other Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets, and the Purchaser shall take title to and possession of such Acquired Assets free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).

8.      All such Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities) have been unconditionally released, discharged, and terminated in, on, or against the Acquired Assets.  The provisions of this Sale Order authorizing and approving the transfer of the Acquired Assets free and clear of Interests shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

9.      Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons holding Interests (other than the Permitted Liens and Assumed Liabilities) are hereby forever barred, estopped, and permanently enjoined from asserting their respective Interests against the Purchaser or any of its Affiliates or Subsidiaries and each of their respective property and assets, including, without limitation, the Acquired Assets.  On and after the Closing Date, the Purchaser shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge, and terminate such Interests in, on, and against the Acquired Assets as provided for herein, or to record or otherwise

appropriately effectuate such release, discharge, and termination, as such Interests may have been recorded or may otherwise exist. On and after the Closing Date, and without limiting the foregoing, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order. This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code ("UCC") for the Purchaser to file UCC termination statements with respect to all security interests in or liens on the Acquired Assets.

10.    On and after the Closing, the Persons holding an Interest (other than a Permitted Lien or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Acquired Assets, as such Interests may have been recorded or otherwise filed. The Purchaser may, but shall not be required to, file a copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All Persons that are in possession of any portion of the Acquired Assets on the Closing Date shall promptly surrender possession thereof to the Purchaser at the Closing.

11.    The transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement and the other Transaction Documents does not require any consents other than specifically provided for in the Asset Purchase Agreement or the other Transaction Documents.

12.    This Sale Order is and shall be binding upon and govern the acts of all Persons (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal and local officials) who may be required by operation of Law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any lease.  Each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the Asset Purchase Agreement, or any Transaction Document.

### Assigned Contracts and Cure Payments

13.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtor's assumption, assignment, and/or transfer to the Purchaser of the Assigned Contracts are hereby authorized and approved in full, subject to the terms set forth below.  The Debtor's authority to assume, assign, and/or transfer to the Purchaser the executory contracts and unexpired leases set forth on the version of the Assumption Schedule attached to this Sale Order as Exhibit A shall extend only to 5:00 p.m. (prevailing Eastern Time) on the day before the Closing Date or such later date as provided in Section 2.9 of the Asset Purchase Agreement (for the avoidance of doubt, with respect to any such contract or lease for which the cure amount has not yet been determined, the date that is five Business Days after the date that the Purchaser has received notice of the cure amount with respect to such contract or lease is determined).  In accordance with Section 2.9(c)(i) of the Asset Purchase Agreement, during the pendency of the Debtor's chapter 11 case, in the event that the Debtor determines that one of its executory contracts or unexpired leases is not set forth on Exhibit A to this Sale Order (such contract or lease, an "Omitted Contract"), the Debtor shall notify the Purchaser promptly and the Purchaser shall have thirty (30) calendar dates following such notice to designate such contract for assumption and assignment to the Purchaser.  If the Purchaser designates an Omitted Contract for assumption and assignment in accordance with the prior sentence, the Debtor and the Purchaser shall follow the procedures set forth in Section 2.9(c)(ii) with respect to such Omitted Contract (including the provisions therein requiring the Purchaser to seek an expedited hearing before the Court to resolve any objection with respect to the assumption and assignment of such Omitted Contract).  Subject to the terms of the Asset Purchase Agreement, the Purchaser shall pay all Cure Amounts to the applicable Contract Counterparties to the Assigned Contracts on the later of (a)

the Closing Date or (b) the date agreed by the Debtor or Purchaser and the applicable Contract

Counterparty or otherwise ordered by the Court.

14.    The Debtor is authorized and empowered to, and upon the Closing shall, assume, assign, and/or transfer each of the Assigned Contracts to the Purchaser free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).  The payment of the applicable Cure Amounts (if any), shall, pursuant to section 365 of the Bankruptcy Code and other applicable Law, (x) effect the cure of all defaults existing thereunder as of the Closing Date and (y) compensate for any actual pecuniary loss to such Contract Counterparty party resulting from such default.  Accordingly, on and as of the Closing Date, other than such payment or reservation, neither the Debtor nor the Purchaser shall have any further liabilities or obligations to the non-Debtor parties to the Assigned Contracts with respect to, and the Contract Counterparties to the Assigned Contracts shall be forever enjoined and barred from seeking, any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose, accrued, or were incurred at any time on or prior to the Closing Date on account of the Debtor's cure or compensation obligations arising under section 365 of the Bankruptcy Code.  The Purchaser has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of section 365(f) of the Bankruptcy Code.

15.    To the extent any provision in any Assigned Contract assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of control" provision) (a) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption or assignment, or (b) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (i) the commencement of this Chapter 11 Case, (ii) the insolvency or financial condition of the Debtor at any time before the closing of this Chapter 11 Case, (iii) the Debtor's assumption or assumption and assignment (as applicable) of such Assigned Contract, or (iv) the consummation of the Transactions, then such provision shall be deemed modified so as to not entitle the Contract Counterparty thereto to prohibit, restrict, or condition such assumption or assignment, to modify or terminate such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without

limitation, any such provision that purports to allow the applicable Contract Counterparty thereto to recapture such Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.    All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

16.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Assigned Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtor in and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order.  Upon and as of the Closing, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and, accordingly, the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

17.    The Assigned Contracts will remain in full force and effect, and upon the payment of the applicable Cure Amount or reservation of the Alleged Cure Claim, if any, no default shall exist, or be deemed to exist, under the Assigned Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.    The rights of the Purchaser to modify the Assumption Schedule (a) with respect to any Contract disclosed by the Debtor to the Purchaser on Schedule 2.9(a) to the Asset Purchase Agreement, on or before the Designation Deadline, or (b) with respect to Previously Omitted Contracts, during the pendency of the Debtor's Chapter 11 Case, provided that such modification must be made within thirty (30) calendar days after the Purchaser's receipt of notice of the existence of such Contract, are hereby approved.  Notwithstanding anything in this Sale Order to the contrary, on the date any such Contract is assumed, assigned, and/or transferred to the

Purchaser, such Contract shall thereafter be deemed an Acquired Asset and an Assigned Contract for all purposes under this Sale Order and the Asset Purchase Agreement.

19.    If the Purchaser designates a Previously Omitted Contract as an "Assigned Contract" in accordance with the Asset Purchase Agreement, (a) the Asset Purchase Agreement (and the applicable schedules thereto) shall be deemed amended to include (i) such Previously Omitted Contract as an Assigned Contract and (ii) all Cure Amounts and other Liabilities related to such Previously Omitted Contract as Assumed Liabilities and (b) the Debtor shall file and serve a Notice (the "Previously Omitted Contract Notice") on the Contract Counterparties to such Previously Omitted Contract notifying such Contract Counterparties of the Debtor's intention to assign and Purchaser's intention to assume such Previously Omitted Contract, including the proposed Cure Amount.  The Contract Counterparties to such Previously Omitted Contract shall have seven (7) calendar days from the date of such Previously Omitted Contract Notice to file and serve on the Debtor and the Purchaser an objection to the assumption of its Contract.  If the Contract Counterparties, the Debtor, and the Purchaser are unable to reach a consensual resolution with respect to a timely served objection, the Debtor will seek an expedited hearing before this Court to seek approval of the assumption and assignment of such Previously Omitted Contract.  If no objection is timely served on the Debtor and the Purchaser, then such Previously Omitted Contract shall be deemed assumed by the Debtor and assigned to the Purchaser, or transferred by the Debtor to the Purchaser, as applicable, pursuant to this Sale Order.  The Debtor and the Purchaser shall execute, acknowledge, and deliver such other instruments and take commercially reasonable efforts as are reasonably practicable for the Purchaser to assume the rights and obligations under such Previously Omitted Contract, including with respect to payment of the applicable Cure Amount (if any).

20.    All Contract Counterparties to the Assigned Contracts shall be deemed to have consented to such assumption, assignment, and/or transfer under section 365(c)(1)(B) of the Bankruptcy Code or otherwise and the Purchaser shall enjoy all of the Debtor's rights, benefits, and privileges under each such Assigned Contract as of the applicable date of such assumption,

assignment, and/or transfer without the necessity to obtain any non-Debtor party's written consent to the assumption, assignment, and/or transfer thereof.

21.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

22.     The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

**Additional Injunction; No Successor Liability**

23.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities, all Persons are forever prohibited and permanently enjoined from (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding), to collect, recover, or setoff (except for setoffs validly exercised prior to the Petition Date) any Interest, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an Interest, (c) creating, perfecting, or enforcing any Interest, (d) asserting any setoff (except for setoffs validly exercised prior to the Petition Date, or right of subrogation of any kind with respect to an Interest, in each case as against the Purchaser, any of its affiliates or subsidiaries, any of their respective current and former officers, directors, managers, members, partners, managed funds, affiliates, agents, advisors, professionals, and representatives (collectively, the "Representatives"), or any of their respective property or assets, including the Acquired Assets, or (e) taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Sale Order.  Notwithstanding the foregoing, nothing in this paragraph shall prevent (x) the Debtor from pursuing an action against the Purchaser arising under the Asset Purchase Agreement or the Transaction Documents on account of any material breach thereof by the Purchaser, or (y) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state,

21

and other federal, state and local officials from properly exercising their police and regulatory powers.

24.    The Transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents do not cause there to be, and there is not (a) a consolidation, merger, or *de facto* merger of the Purchaser, on the one hand, with or into the Debtor or the Debtor's estate, on the other hand, or vice versa, (b) a substantial continuity between the Purchaser, on the one hand, and the Debtor or the Debtor's estate, on the other hand, (c) a common identity between the Purchaser, on the one hand, and the Debtor or the Debtor's estate, on the other hand, or (d) a mere continuation of the Debtor or its estate, on the one hand, with the Purchaser, on the other hand.

25.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities, the transfer of the Acquired Assets, including, without limitation, the assumption, assignment, and/or transfer of any Assigned Contract, to the Purchaser shall not cause or result in, or be deemed to cause or result in, the Purchaser or any of its Representatives having any liability, obligation, or responsibility for, or any Acquired Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor liability, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment, setoff (except for setoffs validly exercised prior to the Petition Date), or otherwise.

26.    For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser of individuals previously employed by the Debtor, (a) the Purchaser shall not have any obligations or liabilities to any employee of the Debtor or in respect of any employee benefits owing to any employee of the Debtor by the Debtor or by any plan or program administered by the Debtor or for the benefit of the Debtor's employees, and (b) any obligations of the Purchaser to any such Person shall be expressly limited to (i) those obligations expressly agreed upon by the Purchaser (if any) with such Person, and (ii) those obligations explicitly assumed by the Purchaser (if any) under the Asset Purchase Agreement.

27.     Except to the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets on account of the filing of this Chapter 11 Case.

28.     Subject to the terms of the Asset Purchase Agreement, the other Transaction Documents (as applicable), and this Sale Order, the Purchaser and the Debtor shall be authorized to take all actions necessary and proper to effectuate the transfer of any benefit plans from the Debtor to the Purchaser (or any other properly designated Person) in a manner consistent with the Asset Purchase Agreement and the other Transaction Documents (as applicable).

## Good Faith

29.     The Transactions contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and other Transactions approved by this Court shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment, and/or transfer of the Assigned Contracts), unless such authorization and such sale are duly stayed pending such appeal.    The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.

## Other Provisions

30.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 Case (including any order dismissing this Chapter 11 Case), (b) any subsequent chapter 7 case into which this chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

31.     The Asset Purchase Agreement constitutes a "plan of reorganization" of Debtor and Purchaser for purposes of Sections 368, 354 and 356 of the Internal Revenue Code of 1986, and

the transactions contemplated by the Asset Purchase Agreement and subsequent actual or deemed distribution of the Equityholder Distribution (as defined in the Asset Purchase Agreement) to the shareholders of the Debtor are intended to constitute a G Reorganization (as defined in the Asset Purchase Agreement).

32.     The Deposit of the Purchaser shall be applied to the Purchase Price for the Sale.  If the Purchaser fails to consummate the Sale because of a breach or failure to perform on the part of the Purchaser, then Debtor and its estate shall be entitled to retain the Deposit of the Purchaser to the extent set forth in the Asset Purchase Agreement.

33.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  Accordingly, the Debtor is authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

34.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

35.     No bulk sales Law or any similar Law of any state or other jurisdiction applies in any way to the Transactions.

36.     All payment or reimbursement obligations of the Debtor owed to the Purchaser pursuant to the Asset Purchase Agreement or the other Transaction Documents shall be paid in the manner provided therein, without further notice to or order of this Court.  All such obligations shall constitute allowed administrative claims against the Debtor, with first priority administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code.  Until satisfied in full in cash, all such obligations shall continue to have the protections provided in this Sale Order, and shall not be discharged, modified, or otherwise affected by any chapter 11 plan for the Debtor.

37.     As soon as reasonably practicable following the Closing Date, the Debtor is authorized and directed to change the (a) name of the Debtor to a name that was not included as part of the Acquired Assets and (b) caption of this Chapter 11 Case to reflect such name, provided

that the Debtor shall follow any procedures set forth in the Local Rules regarding any changes to be made to the caption of this Chapter 11 Case to the extent applicable.

38.    The Asset Purchase Agreement and the other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, on notice to the Secured Lender and the Committee (until it is dissolved), without further notice to or order of this Court; provided, that any such modification, amendment, or supplement shall not have a material adverse effect on the Debtor's ability to satisfy claims of its creditors unless approved by order of this Court upon a motion on notice; provided, further, that the Debtor and Purchaser may extend the Closing Date and the date set forth in Section 8.1(b) of the Asset Purchase Agreement without further order of the Court (but subject to the terms of the Asset Purchase Agreement and the Secured Lender's rights under the CC Order (as defined herein)).

39.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (a) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the other Transaction Documents, any amendments thereto, and any waivers and consents given thereunder, (b) compel delivery of the Acquired Assets to the Purchaser, (c) enforce the injunctions and limitations of liability set forth in this Sale Order, and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

40.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

41.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents.

42.    The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.  To the extent that this Sale Order is inconsistent with any prior order or pleading, the

Motion, the Asset Purchase Agreement, or any Transaction Document, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of the Asset Purchase Agreement or any Transaction Document, on the one hand, and any prior pleading (including the Motion), on the other hand, the terms of the Asset Purchase Agreement or the applicable Transaction Documents shall govern, as applicable.

### Global Settlement

43.    In accordance with the terms of the *Order Approving Stipulation to (I) Amend and Extend the Order Authorizing Further Use of Cash Collateral on an Interim Basis; (II) Authorize Continued Use of Cash Collateral; and (III) Grant Related Relief* [Dkt. 212], which was amended by the *Order Extending Authorization to Use Cash Collateral on an Interim Basis and Granting Related Relief* [Dkt. 293] which was entered on May 27, 2022 (as amended, the "CC Order"), the Debtor acknowledged and agreed that (i) all of the pre-petition Obligations (as defined in the CC Order) that are due and owing the Secured Lender are due and owing without offset, defense or counterclaim, and (ii) the Obligations are fully secured by the Liens granted in favor of the Secured Lender against all of the pre-petition Collateral (as defined in the CC Order), which are valid, binding, enforceable, non-avoidable, and properly perfected.

44.    The Secured Lender timely filed its Proof of Claim (Claim No. 67) ("POC 67"). The Secured Lender asserted claims arising from loans, advances, credit and financial accommodations to the Debtor pursuant to the terms of a Letter Agreement, dated as of August 16, 2019 by and between the Debtor and Secured Lender (as the same has been amended, modified, extended, renewed, restated or replaced) and all other agreements, guaranties, documents, notes, instruments, and Uniform Commercial Code filings executed and/or delivered to or for the benefit of the Secured Lender (collectively, the "Loan Documents").

45.    The Secured Lender shall have an allowed claim in an amount equal to the pre-petition Obligations set forth in POC 67, together with all accrued interest, fees, costs and expenses (including professionals' fees), through the date of the Closing.

46.    Prior to the commencement of this case, on January 4, 2022, the Secured Lender filed a state court proceeding, Case No. 22STCV00052 ("State Court Action"), asserting certain

claims against (i) the Debtor, (ii) the Debtor's subsidiaries, Balance Foods LLC and Moreno Bros. Distributing LLC (the "<u>Subsidiaries</u>"), and (iii) Capital Stone Equity Fund I, LP, 20715 Avalon, LLC, Robert Douglas Spiro, Jr. ("<u>Spiro</u>"), Spiro and Diana Castillo Spiro, as Trustees of the Spiro Revocable Family Trust, and RDS Ventures, LLC (collectively, the "<u>Additional Parties</u>" and collectively with the Debtor and Subsidiaries, the "<u>Debtor Defendants</u>"). The Debtor Defendants other than B4YB filed a cross-complaint against the Secured Lender. In the State Court Action, the Secured Lender obtained an order appointing a receiver for the Subsidiaries (the "<u>Receiver</u>").

47.    On June 10, 2022, the Committee filed an adversary proceeding, Case No. 2:22-bk-01127-BB, in the Bankruptcy Court against the Secured Lender ("<u>Adversary Proceeding</u>"), seeking, among other things, avoidance of allegedly unperfected liens and preferential transfers and disallowance of the Secured Lender's claim in the Bankruptcy Case (the "<u>Committee Claims</u>").

48.    To effectuate the Purchaser's acquisition of the Acquired Assets (as defined in the Asset Purchase Agreement), including the Debtor's membership interests in the Subsidiaries, and as additional consideration and a condition to Secured Lender's consent to the Sale, the Secured Lender and the Debtor Defendants (collectively, the "<u>Settlement Parties</u>"), have entered into the release agreement (the "<u>Release Agreement</u>") attached hereto as **Exhibit B**. The Release Agreement is approved in all respects and is binding on the Settlement Parties. The Debtor's execution and delivery of the Release Agreement is approved, *nunc pro tunc* to the date thereof, together with any other documents and pleadings being executed and delivered in connection therewith.

49.    Within three (3) business days following entry of this Sale Order, the Secured Lender shall prepare and deliver to the Settlement Parties all pleadings that are reasonably necessary to (a) dismiss the State Court Action with prejudice as to all parties, (b) terminate the receivership in the State Court Action, and (c) effectuate the settlement provided for in the Release Agreement with respect to the State Court Action (collectively, the "<u>Receivership Termination Documents</u>"). The Settlement Parties shall execute the Receivership Termination Documents within one (1) business day following delivery by the Secured Lender. The Secured Lender shall

hold the fully executed Receivership Termination Documents in escrow pending the Closing (as defined in the Asset Purchase Agreement).  Within three (3) business days following receipt of the Secured Lender Payment (as defined in the Release Agreement), the Secured Lender shall file the Receivership Termination Documents in the State Court Action, and take such action as may be required or appropriate, including action that the Receiver may reasonably request, to terminate the Receivership and to discharge the Receiver in the State Court Action.

50.    At Closing, the Purchaser, on the Debtor's behalf, shall remit the Secured Lender Payment to the Secured Lender in cash.  The indefeasible payment in full of the Secured Lender Payment shall be in full and final satisfaction of all amounts owed to Secured Lender.

51.    In consideration of the foregoing, and as additional consideration for the Secured Lender's consent, the Adversary Proceeding is hereby dismissed with prejudice as of the date of the Secured Lender Payment and:

A.    The Committee, on behalf of itself and anyone who may bring a claim on its behalf (including derivative claims), its directors, officers, managers, employees, partners, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns (the "Committee Releasors"), fully, finally, unconditionally, irrevocably and completely releases and forever discharges the Secured Lender and each of its predecessors, successors, assigns, directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns ("Secured Lender Committee Releasees"), of and from any and all claims, causes of action, litigation claims, including without limitation, any so-called "lender liability" claims or defenses, and any other debts, obligations, rights, suits, damages, actions, remedies, judgments and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing, in law or at equity, whether for tort, contract or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstance existing or taking place prior to or on this date, relating to the Obligations, the Loan Documents, the Liens

28

(as those terms are defined in the CC Order), the CC Order, this bankruptcy proceeding, the Adversary Proceeding, and the Committee Claims.

B.    Each of the Committee Releasors and the Secured Lender Committee Releasees acknowledges that it is familiar with Section 1542, which states as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

C.    The Committee Releasors' waiver of all rights and benefits afforded by Section 1542 is done with the Committee Releasors' understanding and acknowledgement of the significance of such a specific waiver of Section 1542.  Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of any and all liability by the Committee Releasors in favor of the Secured Lender Committee Releasees, the Committee Releasors expressly acknowledge that this Order is intended to include in its effect, without limitation, all claims that the Committee Releasors know or suspect to exist against the Secured Lender Committee Releasees and their respective directors, officers,  managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants. This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542.

D.    To the fullest extent permitted by law, the Committee agrees that it shall not directly or indirectly initiate, maintain, voluntarily participate in, support, proceed upon, take any economic interest in or otherwise benefit from, or knowingly encourage another person to or permit, support or assist any of its affiliates to initiate, maintain, voluntarily participate in, support, proceed upon, take any economic interest in or otherwise benefit from any claims released by it pursuant to paragraph 51 of this Order.

**Resolution of Objections**

52.     With respect to the Objection filed by US Foods, Inc. [Dkt. No. 340], Debtor will, in accordance with PACA Order [Dkt No. 210][3] file the required Declaration (as defined in the PACA Order) at or prior to Closing and Debtor shall pay $139,336.20 to US Foods, Inc. in accordance with the PACA Order upon receipt of the sale proceeds.

53.     With respect to the objection of Pawnee Leasing Corporation [Dkt 327], to the extent that the leases with Pawnee Leasing Corporation are assumed and assigned, the cure amount shall be $26,564.68 as of June 9, 2022.

54.     With respect to the objection of Smithway Associates, Inc. ("Smithway") [Dkt. No. 343], to the extent that the lease with Smithway and PSIF (as defined immediately below) is assumed and assigned, the cure amount shall be $322,855.01.

55.     Notwithstanding anything to the contrary herein or in Exhibit A, with respect to the objections of PSIF Smithway, L.P. ("PSIF") [Dkt Nos. 271, 310, 341 & 360], the Debtor shall neither assume nor assign the lease with PSIF until (i) the parties file a stipulation providing that the Debtor and PSIF have agreed upon terms for assumption and assignment of such lease, or (ii) further order of the Court authorizing assumption and/or assignment of such lease. Notwithstanding anything to the contrary herein, and for the avoidance of doubt, PSIF's objections are preserved until satisfaction of the conditions in the foregoing sentence.

56.     Notwithstanding anything to the contrary herein or in Exhibit A, with respect to the objection of Aetna Life Insurance Company ("Aetna") [Dkt. No. 328], the Debtor shall neither assume nor assign the contract with Aetna until (i) the parties file a stipulation providing that the Debtor and Aetna have agreed upon terms for assumption and assignment of such contract, or (ii) further order of the Court authorizing assumption and/or assignment of such contract.

57.     Notwithstanding anything to the contrary herein or in Exhibit A, with respect to the objection of Philadelphia Indemnity Company ("Philadelphia") [Dkt. No. 335], the Debtor shall not assume the Commercial General Liability Policy (with endorsements) PHPK2342697, which

---

[3] Order Granting Debtor's Motion for Leave to Pay PACA Claims and Claims Entitled to Administrative Priority Under 11 U.S.C. § 503(b)(9) [Dkt No. 210] ("PACA Order").

includes additional commercial auto, property, professional liability, and sexual/physical abuse coverage, and a Commercial Umbrella Liability Insurance PHUB790799 (collectively, the "Policies"), with Philadelphia until (i) the parties file a stipulation providing that the Debtor and Philadelphia have agreed upon terms for assumption and assignment of such Policies, or (ii) further order of the Court authorizing assumption and/or assignment of such Policies. Nothing in this Order obligates Philadelphia to provide coverage under the Policies to the Purchaser.  In the event the Policies are rejected (the "Rejection") or not assumed prior to June 28, 2022, Philadelphia shall have an allowed priority administrative claim, calculated as of June 28, 2022, in the amount of $143,330.73 (the "Philadelphia Administrative Claim"), with the Philadelphia Administrative Claim to be paid, on or prior to June 28, 2022 from (i) the proceeds of the Sale, or (ii) pursuant to the Order Extending Authorization to Use Cash Collateral on an Interim Basis and Granting Related Relief, and the "Budget" attached thereto entered May 27, 2022 [Dkt. No. 293] (collectively, the "Cash Collateral Order").  In the event of Rejection, Philadelphia shall have a further claim for any Rejection damages allowable in connection with the Policies. Notwithstanding anything to the contrary herein, and for the avoidance of doubt, Philadelphia objections are preserved until satisfaction of the conditions in this paragraph, and Philadelphia reserves all of its rights under the Policies, including the right to payment, on an administrative priority basis, for premiums for all periods during which the Policies are in force after June 28, 2022.  The outside deadline to assume or reject the Policies shall be in accordance with paragraph 13 herein.

58.    Notwithstanding anything to the contrary herein or in Exhibit A, with respect to the objection of CompWest [Dkt. No. 344], the CompWest policy will not be assumed by Debtor absent further order of the Court after further notice and hearing.

59.    Notwithstanding anything to the contrary herein or in Exhibit A, with respect to the objection of Archdiocese of Los Angeles Education & Welfare Corporation to Proposed Cure Amount ("Archdiocese") [Dkt. No. 365], the Debtor shall neither assume nor assign the contract with Archdiocese until (i) the parties file a stipulation providing that the Debtor and Archdiocese

have agreed upon terms for assumption and assignment of such contract, or (ii) further order of the Court authorizing assumption and/or assignment of such contract.

60.     The Debtor and Purchaser have agreed that Section 8.4 of the APA shall be void and Purchaser and Seller shall have no rights pursuant to Section 8.4 of the APA nor shall Seller be in default of any obligation or Purchaser have any right to terminate the APA as a result of the lack of Bankruptcy Court approval of the Break-Up Fee.

61.     Prior to the Closing Date, Debtor shall establish a segregated interest-bearing account with a United States FDIC insured financial institution ("Claims Disbursement Account") wherein the cash proceeds of the Sale shall be deposited. Debtor's Chief Restructuring Officer, James Wong, shall have signatory authority over the Claims Disbursement Account and shall hold such funds as property of the estate in accordance with the Bankruptcy Code and US Trustee guidelines.  Debtor shall not use the funds in the Claims Disbursement Account other than in accordance with the Bankruptcy Code, including Section 363 thereof, and there shall be no distribution to pre-petition unsecured claim or equity holders without further order of the Court or confirmation of a plan that so provides. Nothing in this Order authorizes a distribution to equity holders at this time of any of the consideration to be received by Debtor pursuant to the Sale. Any distribution or disbursement from the Claims Disbursement Account to prepetition unsecured claim or equity holders can only be made pursuant to further order of the Court or as otherwise provided in a confirmed plan. For the avoidance of doubt, the estimated values of different categories of claims in the Asset Purchase Agreement shall not be binding on the Estate or its Creditors as a limit on the value or nature of such claims.  The Debtor will take reasonable steps to obtain a bond that covers the Claims Disbursement Account.

62.     With respect to proceeds of the Sale other than cash, including the Purchaser Preferred Stock, (collectively, the "Non-Cash Proceeds"), Debtor shall hold such Non-Cash Proceeds as property of the estate in accordance with the Bankruptcy Code and US Trustee guidelines.  Nothing in this Order authorizes a distribution to equity holders at this time of any of the consideration, including the Non-Cash Proceeds, to be received by Debtor pursuant to the Sale. Any distribution or

disbursement of the Non-Cash Proceeds to prepetition unsecured claims or equity holders can only
be made pursuant to further order of the Court or as otherwise provided in a confirmed plan.

63.    To the extent required with respect to the objections of PSIF, Aetna, Philadelphia,
and Archdiocese set forth in paragraphs 55, 56, 57, and 59, a further hearing is scheduled for July
6, 2022 at 10:00 a.m. (PT).

64.    In light of paragraph 60, the *Motion to (I) Approve a Break-Up Fee in Connection
with the Sale of Substantially All of the Debtor's Assets, (II) Approve the Break-Up Fee as an
Administrative Expense, and (III) Grant Related Relief* [Dkt No. 357] is denied.

###

Date: June 27, 2022

Sheri Bluebond
United States Bankruptcy Judge

## TERMINATION AND RELEASE AGREEMENT

This Termination and Release Agreement ("Release Agreement") is made and entered into as of the __ day of June 2022, by and between Valley National Bank, as successor by merger to Bank Leumi USA ("Secured Lender"), Better 4 You Breakfast, Inc. ("B4YB" or the "Debtor"), Balance Foods LLC ("Balance"), Moreno Bros. Distributing LLC ("Moreno" and together with Balance, the "Subsidiaries"), Capital Stone Equity Fund I, LP ("Capital Stone"), 20715 Avalon, LLC ("Avalon"), Robert Douglas Spiro, Jr. ("Spiro"), Spiro and Diana Castillo Spiro, as Trustees of the Spiro Revocable Trust (the "Spiro Trust"), RDS Ventures, LLC ("RDS," and collectively with B4YB, Balance, Moreno, Capital Stone, Avalon, Spiro, and the Spiro Trust, the "Debtor Defendants").  The parties to this Release Agreement shall each be referred to herein as a "Party" and collectively as the "Parties."

**WHEREAS**, Secured Lender and Avalon entered into a loan agreement dated as of April 3, 2019, pursuant to which the Secured Lender extended financial accommodations to Avalon through two Promissory Notes, each dated as of April 3, 2019 with one note in the original principal amount of $7,150,000 and the other note in the original principal amount of $1,700,000;

**WHEREAS**, Spiro indirectly owns approximately 34.42% of Avalon, is a voting member through his interests in RDS, is the Manager of Avalon and has represented that he is authorized to execute and deliver this Release Agreement on Avalon's behalf;

**WHEREAS**, B4YB executed and delivered an unlimited Continuing Guaranty, dated the 3rd day of April, 2019, in favor of the Secured Lender, pursuant to which B4YB unconditionally guaranteed to pay the Secured Lender an amount equal to any and all of Avalon's obligations to the Secured Lender;

**WHEREAS**, the Secured Lender and B4YB entered into a Letter Agreement, dated August 16, 2019 (as the same has been amended, modified, extended, renewed, restated or replaced) and all other agreements, guaranties, documents, notes, instruments, and Uniform Commercial Code filings executed and/or delivered to or for the benefit of the Secured Lender (collectively, the "Loan Documents"), pursuant to which the Secured Lender extended financial accommodations to B4YB through a $12.5 million revolving line of credit and $6.75 million term loan on the terms stated therein;

**WHEREAS**, in connection with the Loan Documents, Spiro and the Spiro Trust executed and delivered to the Secured Lender an absolute, unconditional and limited written guaranty of payment and performance with respect to any and all of B4YB's obligations to the Secured Lender;

**WHEREAS**, in connection with the Loan Documents, Balance, Moreno and Capital Stone executed and delivered to the Secured Lender an absolute, unconditional and unlimited written guaranty of payment and performance with respect to any and all of B4YB's obligations to the Secured Lender;

**WHEREAS**, on January 4, 2022, the Secured Lender filed an action against the Debtor Defendants in the Superior Court of the State of California, County of Los Angeles, Case No. 22STCV00052 ("State Court Action"), seeking, among other things, a preliminary injunction and

1

money judgment against the Debtor Defendants (the "<u>Secured Lender's Claims</u>"), and the Secured Lender obtained an order appointing a receiver (the "<u>Receiver</u>") for the Subsidiaries in the State Court Action;

   **WHEREAS**, the Debtor Defendants other than B4YB filed a cross-complaint against the Secured Lender in the State Court Action (the "<u>Cross-Claims</u>");

   **WHEREAS**, on February 24, 2022, B4YB filed a voluntary petition for relief under chapter 11 of the United States Code in the Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>"), Case No. 2:22-bk-10994-BB (the "<u>Bankruptcy Case</u>");

   **WHEREAS**, in connection with the Bankruptcy Case, B4YB has agreed to enter into an Asset Purchase Agreement (the "<u>APA</u>") for the sale of substantially all of its assets (the "<u>Sale</u>") which, among other things, will provide for the indefeasible payment in full in cash at closing of all obligations owed the Secured Lender in an amount to be set forth in a payoff letter to be delivered by Secured Lender to B4YB, in form and substance reasonably acceptable to B4YB, prior to closing,[1] which payment shall constitute satisfaction of the Secured Lender's claims with respect to the Debtor Defendants (the "<u>Secured Lender Payment</u>");

   **WHEREAS**, the Parties wish to settle, compromise, and release all disputes, including those concerning the subject of the State Court Action and the Adversary Proceeding, without any admission of liability or admission as to the merit or lack of merit of any claim or defense of any Party;

   **NOW THEREFORE**, it is hereby stipulated and agreed by and between the undersigned Parties upon the foregoing premises and in consideration of the promises, mutual covenants and agreements set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged as follows:

   1. **<u>Effective Date</u>**.  This Release Agreement shall be effective upon the occurrence (the date of such occurrence, the "<u>Effective Date</u>") of all of the following:  (i) entry by the Bankruptcy Court of an order approving the Debtor's entry into the APA and this Release Agreement in substantially the form attached hereto as **<u>Exhibit 1</u>** (the "<u>Sale Order</u>"), (ii) closing on the Sale as described in the APA, (iii) execution of this Release Agreement by each of the Parties, and (iv) the receipt by the Secured Lender of the Secured Lender Payment.

   2. **<u>Mutual Releases and Covenant Not to Sue</u>**.

    a. **<u>Releases by Secured Lender</u>**.  Upon the Secured Lender's receipt of the Secured Lender Payment, the Secured Lender, on behalf of itself, its subsidiaries, anyone who may bring a claim on its behalf (including derivative claims,) its directors, officers, managers,

---

[1] The amount due the Secured Lender as of May 31, 2022 is $18,943,196.28, together with interest, fees, costs, and expenses, which have accrued since that date and continue to accrue through the date of the closing of the Sale, estimated to be an additional $334,000.

employees, partners, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, fully, unconditionally, irrevocably and completely releases and forever discharges the Debtor Defendants and each of their predecessors, successors, assigns, their respective directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, of and from any and all claims, causes of action, litigation claims, and any other debts, obligations, rights, suits, damages, actions, remedies, judgments and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing, in law or at equity, whether for tort, contract or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstance existing or taking place prior to or on this date, relating to the Acquired Assets (as defined in the APA), the Subsidiaries, the State Court Action, the Loan Documents, the liens and obligations arising under the Loan Documents, the CC Order (as defined in the Sale Order), the Secured Lender's Claims, the Cross-Claims, and the Bankruptcy Case.  Upon the Effective Date, (i) the Secured Lender shall release to Avalon the sum of $20,827.48 that is currently on deposit at the Secured Lender in an Avalon account, and (ii) the Secured Lender shall execute documents reasonably necessary to assist Avalon in the release of approximately $55,000 being held by First American Title Insurance Company ("First Am") pursuant to its First Am File Number NCS-935414-E-SA1 (jp) and the releases herein shall not eliminate such obligations.

        b.  **Releases by the Debtor Defendants**.  Upon the Secured Lender's receipt of the Secured Lender Payment, each of the Debtor Defendants, on behalf of themselves, their subsidiaries, anyone who may bring a claim on their behalf (including derivative claims and any claims asserted on behalf of the Debtor's estate by any official committee of unsecured creditors), their respective directors, officers, managers, employees, partners, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, each fully, finally, unconditionally, irrevocably and completely release and forever discharge the Secured Lender and each of its predecessors, successors, assigns, their respective directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, of and from any and all claims, causes of action, litigation claims, including without limitation, any so-called "lender liability" claims or defenses, and any other debts, obligations, rights, suits, damages, actions, remedies, judgments and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing, in law or at equity, whether for tort, contract or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstance existing or taking place prior to or on this date, relating to the Acquired Assets, the Subsidiaries, the State Court Action, the Loan Documents, the liens and obligations arising under the Loan Documents, the CC Order, the Secured Lender's Claims, the Cross-Claims, the Adversary Proceeding, and the Bankruptcy Case.

     c.  Each respective Party acknowledges that it is familiar with Section 1542 of the California Civil Code ("<u>Section 1542</u>"), which states as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties' waiver of all rights and benefits afforded by Section 1542 is done with the respective Party's understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of any and all liability as provided for in the releases contained herein, the Parties expressly acknowledge that the releases contained herein are intended to include in their effect, without limitation, all claims that the Parties know or suspect to exist against the other respective Parties and their respective directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future). This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542.

     d.  **Covenant Not to Sue**. The Parties shall not file suit, demand arbitration, or otherwise assert a claim in any form or forum relating to any released claim; provided however that nothing contained herein shall prevent any Party from bringing action to enforce any term of this Release Agreement. Except as provided in the immediately preceding sentence, in the event a claim or action is asserted in breach of this covenant not to sue, this Release Agreement shall constitute a complete and absolute defense to such claim.

     3.  **Non-disparagement**.  The Secured Lender, on the one hand, and the Debtor Defendants, on the other hand, each agrees that it, he, or they, as applicable, shall not make or publish any statements, written or verbal, that defame or disparage the personal or business reputation, practices, or conduct of the Debtor Defendants, on the one hand, or the Secured Lender, on the other hand. Notwithstanding the foregoing, nothing in this Release Agreement shall preclude either the Secured Lender or Debtor Defendants from (i) making truthful statements as may be required by applicable law, regulation or legal process, and (ii) enforcing this Release Agreement.

     4.  **No Admissions**. By agreeing to this Release Agreement and performing all of the obligations and keeping all of the covenants contained herein, each Party does not admit any liability for or the validity of any of the other Party's allegations in the State Court Action or any lack of merit to any of its allegations against the other Party in the State Court Action.

5.    **Binding Effect**.  This Release Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, officers, agents, servants, and employees.

6.    **No Prior Assignment, Transfer, or Encumbrance**.  Each of the Parties represents and warrants that it owns the rights, demands, claims, or causes of action which are the subject of this Release Agreement (including, without limitation, claims released by this Release Agreement), and that it has not assigned or transferred to any other person or entity or otherwise encumbered all or any part of such rights, demands, claims, or causes of action.  Each of the Parties further represents that it is not aware of any active lawsuit or proceeding that has been brought by one Party against the other, other than those proceedings referenced in this Release Agreement.

7.    **Survival of Representations and Warranties**.  The representations and warranties made in this Release Agreement shall survive the execution and consummation of this Release Agreement.

8.    **Integration**.  This Release Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof; all prior agreements, contracts, negotiations, representations, and discussions, if any, pertaining to this matter are hereby merged into this Release Agreement.  Other than as stated in this Release Agreement, the Parties acknowledge and agree that no promise or inducement has been offered for this Release Agreement and no other promises or agreements shall be binding unless reduced to writing and signed by the Parties.

9.    **Waiver and Modification**.  No provision of this Release Agreement may be modified, amended or waived unless pursuant to a writing, signed by the Parties.  Waiver of any one provision herein shall not be deemed a waiver of any other provision herein.

10.    **Counterparts**.  This Release Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original but which together shall be deemed to constitute one and the same Release Agreement.  Facsimile and .pdf signatures exchanged by email shall have the same force and effect as original signatures.

11.    **Governing Law, Jurisdiction, and Venue**.  The Parties consent and submit to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the Central District of California or the Superior Court for the State of California, County of Los Angeles, over any actions or proceedings arising out of or relating to this Release Agreement, including, without limitation, with respect to the enforcement of this Release Agreement, as the case may be.  This Release Agreement and all claims and disputes arising out of or relating to this Release Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of California.

12.     **Severability**.  If a provision of this Release Agreement is or becomes illegal, invalid or unenforceable for any reason, the legality, validity and/or enforceability of any and all other provisions of this Release Agreement shall not be affected and said provisions shall remain in full force and effect.

13.     **Mutual Drafting**.  The Parties agree that this Release Agreement has been drafted with the assistance of counsel for each signatory.  Because each of the Parties has had input into the contents of this Release Agreement, the Parties agree that, for purposes of construction, each Party shall be deemed to have been an author of the Release Agreement.

14.     **Enforcement**.  The Parties to this Release Agreement may seek enforcement of any term, covenant, right, or obligation in this Release Agreement as permitted by law and/or in equity, including temporary, preliminary, and permanent injunctive relief.  In the event of litigation arising out of an alleged breach of the Release Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

15.     **Consultation with Counsel**.  The Parties acknowledge that each of them has consulted with, or had the opportunity to consult with, legal counsel of his, her or its own selection about this Release Agreement.  The Parties each understand how this Release Agreement will affect his, her or its legal rights and voluntarily enters into this Release Agreement with such knowledge and understanding.

**THE PARTIES, AND EACH OF THEM, ACKNOWLEDGE THAT THEY HAVE READ THIS RELEASE AGREEMENT AND THAT THEY FULLY KNOW, UNDERSTAND AND APPRECIATE ITS CONTENTS AND THAT THEY SIGN THIS RELEASE AGREEMENT AND MAKE THE AGREEMENT PROVIDED FOR VOLUNTARILY AND OF THEIR OWN FREE WILL ON THEIR OWN BEHALF OR AS DULY AUTHORIZED REPRESENTATIVES OF THEIR RESPECTIVE PARTIES.**

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**AGREED TO AND ACCEPTED:**

VALLEY NATIONAL BANK,
As Successor By Merger to Bank Leumi USA

By _____          Date: _____


Name: _____

Title: _____


BETTER 4 YOU BREAKFAST, INC.


By _____          Date: _____


Name: _____

Title: _____


BALANCE FOODS, LLC


By _____          Date: _____


Name: _____

Title: _____

MORENO BROS. DISTRIBUTING, LLC

By _____        Date: _____


Name: _____

Title: _____


CAPITAL STONE EQUITY FUND I, LP

By _____        Date: _____


Name: _____

Title: _____


20715 AVALON, LLC

By _____        Date: _____

Name: _____

Title: _____

_____        Date: _____

ROBERT DOUGLAS SPIRO, JR.


_____        Date: _____

ROBERT DOUGLAS SPIRO, JR.
as Trustee of the Spiro Revocable Trust

_____        Date: _____

DIANA CASTILLO SPIRO,
as Trustee of the Spiro Revocable Trust


RDS VENTURES, LLC


By _____        Date: _____


Name: _____

Title: _____

**<u>Exhibit 1</u>**

**Sale Order**

# EXHIBIT A

## [Assumption Schedule]

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Crown Credit Company,<br>40 S. Washington St.,<br>New Bremen, OH 45869 | Crown Equipment Corporation,<br>40 S. Washington St.,<br>New Bremen, OH 45869<br>Gisella Melendez,<br>800-331-3282<br>Wolters Kluwer Lien Solutions,<br>P.O. Box 29071,<br>Glendale, CA 91209-9071,<br>800-331-3282 | Leased equipment, all equipment leased from Crown | $1,716.71 |
| Pawnee Leasing Corp.,<br>3801 Automation Way,<br>Suite 207,<br>Fort Collins, CO 80525<br><br>Alliance Funding Group<br>17542 17th Street<br>Suite 200<br>Tustin, CA 92780 | Corporation Service Company,<br>801 Adlai Stevenson Dr.,<br>Springfield, IL 62706 | Leased equipment, lease dated 7/17/19 with Alliance Funding Group | $26,564.68* |
| Corporation Service Company,<br>801 Adlai Stevenson Dr.,<br>Springfield, IL 62706<br><br>Alliance Funding Group<br>17542 17th Street<br>Suite 200<br>Tustin, CA 92780 | Ascentium Capital, LLC,<br>23970 Hwy 59 N., 2nd Fl,<br>Kingwood TX 77339-1535 | Leased equipment, lease dated 7/1/16 with Alliance Funding Group | $417.23 |
| Financial Pacific Leasing, Inc.,<br>3455 S. 344th Way, Ste 300,<br>Federal Way, WA 98001<br><br>Alliance Funding Group<br>17542 17th Street<br>Suite 200<br>Tustin, CA 92780 | Corporation Service Company,<br>801 Adlai Stevenson Dr.,<br>Springfield, IL 62706 | Leased equipment, lease dated 7/19/16 with Alliance Funding Group | $0.00 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | | Leased equipment, lease dated 8/11/16 with Alliance Funding Group | $748,118.00** |
| | | | |
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | | Leased equipment, lease dated 8/31/16 with Alliance Funding Group | $0.00 |
| | | | |
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | | Leased equipment, lease dated 11/3/16 with Alliance Funding Group | $0.00 |
| | | | |
| Pawnee Leasing Corp., 3801 Automation Way, Suite 207, Fort Collins, CO 80525<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 1/19/17 with Alliance Funding Group | $0.00 |
| | | | |
| Pawnee Leasing Corp., 3801 Automation Way, Suite 207, Fort Collins, CO 80525<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 3/29/17 with Alliance Funding Group | $0.00 |
| | | | |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Susquehanna Commercial Finance, Inc., 2 Great Valley Parkway, Ste 300, Malvern, PA 19355<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 4/7/17 with Alliance Funding Group | $12,579.07*** |
| Pawnee Leasing Corp., 3801 Automation Way, Suite 207, Fort Collins, CO 80525<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 3/29/17 with Alliance Funding Group | $0.00 |
| Susquehanna Commercial Finance, Inc., 2 Great Valley Parkway, Ste 300, Malvern, PA 19355<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 5/5/2017 with Alliance Funding Group | $0.00 |
| TCF Equipment Finance, a division of TCF National Bank, 11100 Wayzata Blvd., Ste 801, Minnetonka, MN 55305<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 5/25/17 with Alliance Funding Group | $0.00 |
| Susquehanna Commercial Finance, Inc., 2 Great Valley Parkway, Ste 300, Malvern, PA 19355<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 6/7/17 with Alliance Funding Group | $0.00 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| | | | |
| Susquehanna Commercial Finance, Inc., 2 Great Valley Parkway, Ste 300, Malvern, PA 19355<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 6/12/17 with Alliance Funding Group | $0.00 |
| | | | |
| Susquehanna Commercial Finance, Inc., 2 Great Valley Parkway, Ste 300, Malvern, PA 19355<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 6/7/17 with Alliance Funding Group | $0.00 |
| | | | |
| TCF Equipment Finance, a division of TCF National Bank, 11100 Wayzata Blvd., Ste 801, Minnetonka, MN 55305<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 9/15/17 with Alliance Funding Group | $0.00 |
| | | | |
| Pawnee Leasing Corp., 3801 Automation Way, Suite 207, Fort Collins, CO 80525<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 12/12/17 with Alliance Funding Group | $0.00 |
| | | | |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Financial Pacific Leasing, Inc., 3455 S. 344th Way, Ste 300, Federal Way, WA 98001<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 1/17/18 with Alliance Funding Group | $0.00 |
| Financial Pacific Leasing, Inc., PO Box 4568, Federal Way, WA 98063 | Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 | Leased equipment, lease #001-1184529-906 dated 2/9/18 with Financial Pacific Leasing, Inc. | $0.00 |
| Raymond Leasing Corp., Corp. Headquarters, PO Box 130, Greene, NY 13778 | Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 | Leased equipment, specified equipment related to Master Lease Schedule No. 34083 | $13,906.88 |
| Pawnee Leasing Corp., 3801 Automation Way, Suite 207, Fort Collins, CO 80525<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 4/11/18 with Alliance Funding Group | $0.00 |
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Hitachi Capital America Corp., 7808 Creekridge Circle, Ste 250, Edina MN 55439 | Leased equipment, lease dated 6/22/18 with Alliance Funding Group | $48,937.84 |
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Hitachi Capital America Corp., 7808 Creekridge Circle, Ste 250, Edina MN 55439 | Leased equipment, lease dated 9/25/18 with Alliance Funding Group | $0.00 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | v\ Hitachi Capital America Corp., 7808 Creekridge Circle, Ste 250, Edina MN 55439 | Leased equipment, lease dated 12/18/18 with Alliance Funding Group | $0.00 |
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | | Leased equipment, lease dated 4/1/19 with Alliance Funding Group | $0.00 |
| Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | | Leased equipment, lease dated 6/25/19 with Alliance Funding Group | $0.00 |
| Amur Equipment Finance, Inc., 308 N. Locust St., Suite 100, Grand Island, NE 68801 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | OMNI lDXE-DWX, equipment financed under Contract 948535 | $101,945.90 |
| Pawnee Leasing Corp., 3801 Automation Way, Suite 207, Fort Collins, CO 80525<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 7/10/19 with Alliance Funding Group | $0.00 |
| Amur Equipment Finance, Inc., 308 N. Locust St., Suite 100, Grand Island, NE 68801 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Specified equipment financed under Contract 948816 | $0.00 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| CT Corporation System, 330 N. Brand Blvd., Suite 700, Attn SPRS, Glendale, CA 91203 | Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 | Leased equipment, lease dated 7/26/19 | $0.00 |
| | | | |
| Dedicated Funding, LLC, 860 E. 4500 S. Ste 312, Salt Lake City, UT 84107 | Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 | Specifically identified equipment purchased from Restaurant Depo on 8/5/19 | $0.00 |
| | | | |
| Corporation Service Company, P.O. Box 2576, Springfield, IL 62708<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 4/28/21 with Alliance Funding Group | $0.00 |
| | | | |
| Corporation Service Company, P.O. Box 2576, Springfield, IL 62708<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 6/14/21 with Alliance Funding Group | $0.00 |
| | | | |
| Corporation Service Company, P.O. Box 2576, Springfield, IL 62708<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 6/29/21 with Alliance Funding Group | $0.00 |
| | | | |
| The Huntington National 1405 Xenium Lane N (PCC180) Plymouth, MN 55441 | | Leased equipment, lease | $0.00 |
| | | | |
| Corporation Service Company, P.O. Box 2576, Springfield, IL 62708<br><br>Alliance Funding Group 17542 17th Street Suite 200 Tustin, CA 92780 | Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62706 | Leased equipment, lease dated 7/29/21 with Alliance Funding Group | $0.00 |
| | | | |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Ed Kuwan<br>PO Box 281616<br>San Francisco, CA 94128-1616 | | Lease for 370 Adrian Rd Millbrae, CA 94030 San Mateo County, California Commercial Kitchen, Processing, and Distribution Center 21,691square feet comprising of offices, production areas, loading docks, commercial kitchen, dry and refrigerated storage, restrooms, breakroom, and parking. | $0.00 |
| Pure Essence Laboratories, Inc.<br>155 S Sandhill Rd, St 400<br>Las Vegas, NV 89118 | | Lease for 155 S Sandhill Rd, St 400 Las Vegas, NV, 89118 Clark County, Nevada Warehouse and Distribution Center. 7,064 comprising of offices, restrooms, open warehouse space, and refrigeration unit. | $0.00 |
| Smithway Associates, Inc.<br>5743 Smithway St.<br>Los Angeles, CA 90040 | | Lease of 5743 Smithway St. Commerce, CA 90040 Los Angeles County, California Commercial Kitchen, Processing, and Distribution Center Approximately 65,000 square feet comprising of offices, production areas, loading docks, commercial kitchen, dry and refrigerated storage, restrooms, breakroom, and parking. | $322,855.01****<br><br>****Assumption and assignment solely upon satisfaction and compliance with paragraphs 54 and 55 of the Sale Order |
| Heartland School Solutions<br>One Heartland Way<br>Jeffersonville, IN 47130 | | Nutrikids software | $0.00 |
| Fishbowl<br>580 East Technology Ave.<br>Suite C2500<br>Orem, UT 84097 | | Inventory Software | $0.00 |
| Fidelis Information Systems Corp<br>11305 Four Points Drive<br>Suite 1-185<br>Austin, TX 78726 | | Nevada Processor Link For Food Manufacturers | $0.00 |
| Revolution Foods<br>985 3rd St.,<br>Oakland, CA 94607 | | Mutual Nondisclosure Agreement date on or about February 11, 2022 | $0.00 |
| Compass Group USA, Inc.<br>2400 Yorkmont Road<br>Charlotte, NC 28217 | | Confidentiality Agreement Dated February 21, 2022. | $0.00 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Whitson's Food Service (Bronx) LLC 1800 Motor Parkway Islandia, NY 11749 | | Confidentiality and Non-Disclosure Agreement dated January 5, 2022 | $0.00 |
| Aetna Life Insurance Company Lockbox 911408 PO Box 31001-1408 Pasadena, CA 91110-1408 | | Medical/dental insurance policies | Assumption and assignment solely upon satisfaction and compliance with paragraph 56 of the Sale Order |
| Philadelphia Insurance Companies PO Box 70251, Philadelphia, PA 19176-0251 | | Liability insurance | Assumption and assignment solely upon satisfaction and compliance with 57 of the Sale Order |
| Alliance College Ready Public Schools Attn: Tiffany Wilson 5101 Santa Monica Blvd Ste 8, PMB 271 Los Angeles, CA 90029 | | Food Service Management Company Agreement | $0 |
| Citizen of the World Attn: Gloria Leung 5371 Wilshire Blvd Los Angeles, CA 90036 | | Food Service Management Company Agreement | $0 |
| Ednovate Attn: Megan Thomsen 350 S. Figueroa St., Suite 250 Los Angeles, CA 90071 | | Food Service Management Company Agreement | $0 |
| Green Dot Public Schools Attn: Darren Alexander 1149 South Hill Street, Suite 600 Los Angeles, CA 90015 | | Food Service Management Company Agreement | $0 |
| High Tech Los Angeles Attn: Nelly Tirado 17111 Victory Blvd Van Nuys, CA 91406 | | Food Service Management Company Agreement | $0 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| ISANA Academies<br>Attn: John Vargas<br>3417 W. Jefferson Blvd<br>Los Angeles, CA 90018 | | Food Service Management Company Agreement | $0 |
| Libertas College Prep<br>Attn: Lara Montes<br>5101 S. Western Ave<br>Los Angeles, CA 90062 | | Food Service Management Company Agreement | $0 |
| Los Angeles Leadership Academy<br>Attn: Marina Pilyavskaya<br>2670 Griffin Ave<br>Los Angeles, CA 90031 | | Food Service Management Company Agreement | $0 |
| Multicultural Learning Center<br>Attn: Saira Salazar-Martinez<br>7510 Desoto Ave<br>Canoga Park, CA 91303 | | Food Service Management Company Agreement | $0 |
| Schools in Action<br>Attn: Besy Monterroza<br>5261 1/2 East Beverly Blvd<br>Los Angeles, CA 90022 | | Food Service Management Company Agreement | $0 |
| SOAR Charter Academy<br>Attn: Kristen Kraus<br>198 Mill St<br>San Bernardino, CA 92408 | | Food Service Management Company Agreement | $0 |
| STEM Public Schools<br>Attn: Eric Barlow<br>3200 W Adams Blvd.<br>Los Angeles, CA 90018 | | Food Service Management Company Agreement | $0 |
| The Foundation for Hispanic Education<br>Attn: Martin Farfan<br>14271 Story Rd<br>San Jose, CA 95127 | | Food Service Management Company Agreement | $0 |
| Value Schools<br>Attn: Erika Coronel<br>680 Wilshire Pl, Ste 315<br>Los Angeles, CA 90005 | | Food Service Management Company Agreement | $0 |
| Amethod Public Schools<br>Attn: Evelia Villa<br>2101 Livingston St<br>Oakland, CA 94606 | | Vended Meals Agreement | $0 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Arise High School<br>Attn: Elvira Eniguez<br>3301 E 12th St<br>Oakland, CA 94601 | | Vended Meals Agreement | $0 |
| Aspire Public Schools<br>Attn: Michael Wimbish<br>1001 22nd Avenue<br>Oakland, CA 94606 | | Vended Meals Agreement | $0 |
| CalCreative Charter School<br>Attn: Michelle Jones<br>2709 Media Center Dr<br>Los Angeles, CA 90065 | | Vended Meals Agreement | $0 |
| CIVICA Charter Academy<br>Attn: Jennifer<br>        Lindemon<br>1501 E Carey Ave<br>North Las Vegas, NV<br>        89030 | | Vended Meals Agreement | $0 |
| Coalition for Better<br>Schools<br>Attn: Chris Kang<br>2110 Story Rd @250<br>San Jose, CA 95122 | | Vended Meals Agreement | $0 |
| Compton Unified School<br>District<br>Attn: Larry Shields<br>501 S. Santa Fe Avenue<br>Compton, CA     90221 | | Vended Meals Agreement | $0 |
| Coral Academy of Science<br>Las Vegas<br>Attn: Janice Peake<br>8965 S. Eastern Ave.  #280<br>Las Vegas, NV 89123 | | Vended Meals Agreement | $0 |
| Doral Academy of Nevada<br>Attn: Gena Richardson<br>610 Crossbridge Dr<br>Las Vegas, NV 89138 | | Vended Meals Agreement | $0 |
| Education for Change<br>Attn: Tavita Robles<br>333 Hegenberger Rd<br>Oakland, CA 94621 | | Vended Meals Agreement | $0 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Elite Public Schools<br>Attn: Dr. Ramona Bishop<br>100 Whitney Ave<br>Vallejo, CA 94589 | | Vended Meals Agreement | $0 |
| | | | |
| GALS Charter School<br>Attn: Jennifer McCloskey<br>4220 S. Maryland Pkwy<br>Las Vegas, NV 89012 | | Vended Meals Agreement | $0 |
| | | | |
| Ideal Program Services<br>Attn: Laura Okunubi<br>3970 W Martin Luther King Bld.<br>Los Angeles, CA 90008 | | Vended Meals Agreement | $0 |
| | | | |
| Imagine Mountain View<br>Attn: Loretta McDonald<br>6610 Grand Montecito Pkwy<br>Las Vegas, NV 89149 | | Vended Meals Agreement | $0 |
| | | | |
| Invictus Leadership Academy<br>Attn: Dr. LaTonya Derbigny<br>9920 Compton Ave.<br>Los Angeles, CA 90002 | | Vended Meals Agreement | $0 |
| | | | |
| James Jordan Middle School<br>Attn: Victor Albores<br>7911 Winnetka Avenue<br>Winnetka, CA 91306 | | Vended Meals Agreement | $0 |
| | | | |
| LEAP Healthy Meals<br>Attn: Ryan Taylor<br>6060 W Manchester Ave, Suite 203<br>Los Angeles, CA 90045 | | Vended Meals Agreement | $0 |
| | | | |
| Lifeline Charter School<br>Attn: Tinia Cortez<br>225 S. Sante Fe Ave<br>Compton, CA      90221 | | Vended Meals Agreement | $0 |
| | | | |
| Manzanita Charter Middle School<br>Attn: Martin W Coyne Jr<br>461 33rd St<br>Richmond, CA 94804 | | Vended Meals Agreement | $0 |
| | | | |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Mark West Unified School District<br>Attn: Renee Loeza<br>305 Mark West Springs Rd<br>Santa Rosa, CA 95404 | | Vended Meals Agreement | $0 |
| Mater Academy of Nevada<br>Attn: Juanita Anzorena<br>3900 E. Bonanza Rd<br>Las Vegas, NV 89110 | | Vended Meals Agreement | $0 |
| New Academy of Sciences & Arts<br>Attn: Eddie Castro<br>379 Loma Dr<br>Los Angeles, CA 90017 | | Vended Meals Agreement | $0 |
| New Millenium Secondary School<br>Attn: Samantha Navarro<br>1301 West 182nd St.<br>Gardena, CA 90248 | | Vended Meals Agreement | $0 |
| Oakland Unity<br>Attn: William    Nee<br>6038 Brann St<br>Oakland, CA 94605 | | Vended Meals Agreement | $0 |
| Palm Lane Charter School<br>Attn: Lizette Sifuentes<br>1646 W. Palm Lane<br>Anaheim, CA 92802 | | Vended Meals Agreement | $0 |
| Palmdale Aerospace Academy<br>Attn: Rebecca    Zapata<br>3300 East Palmdale Blvd<br>Palmdale, CA    93550 | | Vended Meals Agreement | $0 |
| Pinecrest Academy of Nevada<br>Attn: Lora Flitten<br>225 Grand Cadence Dr<br>Las Vegas, NV 89015 | | Vended Meals Agreement | $0 |
| Port of Los Angeles High School<br>Attn: George    Mora<br>250 W 5th St<br>San Pedro, CA 90731 | | Vended Meals Agreement | $0 |

| **CREDITOR NAME** | **ALSO NOTIFY** | **Description of Contract/Lease** | **Cure Amount** |
|---|---|---|---|
| Public Safety Academy<br>Attn: Gina Friars<br>1482 E Enterprise Dr.<br>San Bernardino, CA 92408 | | Vended Meals Agreement | $0 |
| Roseland Public Schools<br>Attn: Patty Gallagher<br>1691 Burbank Ave<br>Roseland, CA      95407 | | Vended Meals Agreement | $0 |
| SLAM Academy<br>Attn: Kendra      Thornton<br>6630 Surrey St<br>Las Vegas, NV 89119 | | Vended Meals Agreement | $0 |
| Somerset Academy of Nevada<br>Attn: Lauren Kohut-Rost<br>4650 Losee Road<br>Las Vegas, NV 89081 | | Vended Meals Agreement | $0 |
| Sunrise Middle School<br>Attn: Teresa      Robinson<br>1149 E Julian<br>San Jose, CA 95116 | | Vended Meals Agreement | $0 |
| Temecula Valley Charter School<br>Attn: Allen Neuenschwander<br>35755 Abelia St<br>Temecula, CA      92596 | | Vended Meals Agreement | $0 |
| Todays Fresh Start Charter School<br>Attn: Magda Robles<br>4514 Crenshaw Blvd.<br>Los Angeles, CA 90043 | | Vended Meals Agreement | $0 |
| Voices College Bound Language Academies<br>Attn: Lizzette Ramirez<br>6840 Via del Oro Suite 160<br>San Jose, CA 95119 | | Vended Meals Agreement | $0 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Vox Collegiate of Los Angeles<br>Attn: Carol Caro<br>1100 W. Manchester Ave<br>Los Angeles, CA 90044 | | Vended Meals Agreement | $0 |
| YPI Charter Schools<br>Attn: Diana Gamez<br>9400 Remick St<br>Pacoima, CA 91331 | | Vended Meals Agreement | $0 |
| TEAM Charter Schools<br>Attn: David Vargason<br>540 East Main St<br>Stockton, CA 95202 | | Vended Meals Agreement | $0 |
| ICEF Public Schools<br>Attn: Behzad Sadeghi<br>3855 W Slauson Ave<br>Los Angeles, CA 90043 | | Food Service Management Company Agreement | $0 |
| TEACH Public Schools<br>Attn: Enrique Robles<br>1846 W. Imperial Hwy<br>Los Angeles, CA 90047 | | Food Service Management Company Agreement | $0 |
| TEACH Las Vegas<br>Attn: Andrea Moore<br>4660 North Rancho Road<br>Las Vegas, NV 89130 | | Vended Meals Agreement | $0 |
| Archdiocese of Los Angeles<br>Attn: Lilia Chavez<br>3424 Wilshire Blvd<br>Los Angeles, CA 90010 | | Food Service Management Company Agreement | Assumption and assignment solely upon satisfaction and compliance with Paragraph 59 of the Sale Order. |
| Camino Nuevo Charter Academies<br>Attn: Esperanza Bacilio<br>3435 W. Temple Street<br>Los Angeles, CA 90026 | | Food Service Management Company Agreement | $0 |
| Partnership to Uplift Communities<br>Attn: Rosa Arrington<br>1405 North San Fernando Blvd, Ste 303<br>Burbank, CA 91504 | | Food Service Management Company Agreement | $0 |

| CREDITOR NAME | ALSO NOTIFY | Description of Contract/Lease | Cure Amount |
|---|---|---|---|
| Resolute Academy<br>Attn: Natasha Barriga<br>1265 E 112th St<br>Los Angeles, CA 90059 | | Food Service Management Company Agreement | $0 |
| Cabrillo Unified School District<br>Attn: Jesus Contreras<br>498 Kelly Ave<br>Half Moon Bay, CA 94019 | | Vended Meals Agreement | $0 |
| Intellectual Virtues Academy<br>Attn: Phoenice    Hurtado<br>1637 Long Beach Blvd.<br>Long Beach, CA 90813 | | Vended Meals Agreement | $0 |
| Invictus Academy of Richmond<br>Attn: Gautam Thapar<br>7150 Portola Dr<br>El Cerrito, CA    94530 | | Vended Meals Agreement | $0 |
| Kairos Public Schools<br>Attn: Jared Austin<br>129 Elm St<br>Vacaville, CA    95688 | | Vended Meals Agreement | $0 |
| Newark Unified School District<br>Attn: Mary Sayers<br>37370 Birch St, Building A<br>Newark, CA 94560 | | Vended Meals Agreement | $0 |
| The Accelerated School<br>Attn: Vincent Shih<br>116 E. Martin Luther King Blvd<br>Los Angeles, CA 90011 | | Vended Meals Agreement | $0 |

* represents total amount owed to Pawnee Leasing Corporation on all leases, other entries are listed at $0.00.
** represents total amount owed to Alliance Funding Group on all leases, other entries are listed at $0.00.
*** represents total amount owed to Susquehanna Commercial Finance, Inc., on all leases, other entries are
listed at $0.00.

## **EXHIBIT B**

**Release Agreement**