# TERMINATION AND RELEASE AGREEMENT

This Termination and Release Agreement ("Release Agreement") is made and entered into as of the __ day of June 2022, by and between Valley National Bank, as successor by merger to Bank Leumi USA ("Secured Lender"), Better 4 You Breakfast, Inc. ("B4YB" or the "Debtor"), Balance Foods LLC ("Balance"), Moreno Bros. Distributing LLC ("Moreno" and together with Balance, the "Subsidiaries"), Capital Stone Equity Fund I, LP ("Capital Stone"), 20715 Avalon, LLC ("Avalon"), Robert Douglas Spiro, Jr. ("Spiro"), Spiro and Diana Castillo Spiro, as Trustees of the Spiro Revocable Trust (the "Spiro Trust"), RDS Ventures, LLC ("RDS," and collectively with B4YB, Balance, Moreno, Capital Stone, Avalon, Spiro, and the Spiro Trust, the "Debtor Defendants").  The parties to this Release Agreement shall each be referred to herein as a "Party" and collectively as the "Parties."

**WHEREAS**, Secured Lender and Avalon entered into a loan agreement dated as of April 3, 2019, pursuant to which the Secured Lender extended financial accommodations to Avalon through two Promissory Notes, each dated as of April 3, 2019 with one note in the original principal amount of $7,150,000 and the other note in the original principal amount of $1,700,000;

**WHEREAS**, Spiro indirectly owns approximately 34.42% of Avalon, is a voting member through his interests in RDS, is the Manager of Avalon and has represented that he is authorized to execute and deliver this Release Agreement on Avalon's behalf;

**WHEREAS**, B4YB executed and delivered an unlimited Continuing Guaranty, dated the 3rd day of April, 2019, in favor of the Secured Lender, pursuant to which B4YB unconditionally guaranteed to pay the Secured Lender an amount equal to any and all of Avalon's obligations to the Secured Lender;

**WHEREAS**, the Secured Lender and B4YB entered into a Letter Agreement, dated August 16, 2019 (as the same has been amended, modified, extended, renewed, restated or replaced) and all other agreements, guaranties, documents, notes, instruments, and Uniform Commercial Code filings executed and/or delivered to or for the benefit of the Secured Lender (collectively, the "Loan Documents"), pursuant to which the Secured Lender extended financial accommodations to B4YB through a $12.5 million revolving line of credit and $6.75 million term loan on the terms stated therein;

**WHEREAS**, in connection with the Loan Documents, Spiro and the Spiro Trust executed and delivered to the Secured Lender an absolute, unconditional and limited written guaranty of payment and performance with respect to any and all of B4YB's obligations to the Secured Lender;

**WHEREAS**, in connection with the Loan Documents, Balance, Moreno and Capital Stone executed and delivered to the Secured Lender an absolute, unconditional and unlimited written guaranty of payment and performance with respect to any and all of B4YB's obligations to the Secured Lender;

**WHEREAS**, on January 4, 2022, the Secured Lender filed an action against the Debtor Defendants in the Superior Court of the State of California, County of Los Angeles, Case No. 22STCV00052 ("State Court Action"), seeking, among other things, a preliminary injunction and

money judgment against the Debtor Defendants (the "Secured Lender's Claims"), and the Secured Lender obtained an order appointing a receiver (the "Receiver") for the Subsidiaries in the State Court Action;

WHEREAS, the Debtor Defendants other than B4YB filed a cross-complaint against the Secured Lender in the State Court Action (the "Cross-Claims");

WHEREAS, on February 24, 2022, B4YB filed a voluntary petition for relief under chapter 11 of the United States Code in the Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), Case No. 2:22-bk-10994-BB (the "Bankruptcy Case");

WHEREAS, in connection with the Bankruptcy Case, B4YB has agreed to enter into an Asset Purchase Agreement (the "APA") for the sale of substantially all of its assets (the "Sale") which, among other things, will provide for the indefeasible payment in full in cash at closing of all obligations owed the Secured Lender in an amount to be set forth in a payoff letter to be delivered by Secured Lender to B4YB, in form and substance reasonably acceptable to B4YB, prior to closing,[1] which payment shall constitute satisfaction of the Secured Lender's claims with respect to the Debtor Defendants (the "Secured Lender Payment");

WHEREAS, the Parties wish to settle, compromise, and release all disputes, including those concerning the subject of the State Court Action and the Adversary Proceeding, without any admission of liability or admission as to the merit or lack of merit of any claim or defense of any Party;

NOW THEREFORE, it is hereby stipulated and agreed by and between the undersigned Parties upon the foregoing premises and in consideration of the promises, mutual covenants and agreements set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged as follows:

1. **Effective Date**. This Release Agreement shall be effective upon the occurrence (the date of such occurrence, the "Effective Date") of all of the following: (i) entry by the Bankruptcy Court of an order approving the Debtor's entry into the APA and this Release Agreement in substantially the form attached hereto as **Exhibit 1** (the "Sale Order"), (ii) closing on the Sale as described in the APA, (iii) execution of this Release Agreement by each of the Parties, and (iv) the receipt by the Secured Lender of the Secured Lender Payment.

2. **Mutual Releases and Covenant Not to Sue**.

    a. **Releases by Secured Lender**. Upon the Secured Lender's receipt of the Secured Lender Payment, the Secured Lender, on behalf of itself, its subsidiaries, anyone who may bring a claim on its behalf (including derivative claims,) its directors, officers, managers,

---

[1] The amount due the Secured Lender as of May 31, 2022 is $18,943,196.28, together with interest, fees, costs, and expenses, which have accrued since that date and continue to accrue through the date of the closing of the Sale, estimated to be an additional $334,000.

2

employees, partners, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, fully, finally, unconditionally, irrevocably and completely releases and forever discharges the Debtor Defendants and each of their predecessors, successors, assigns, their respective directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, of and from any and all claims, causes of action, litigation claims, and any other debts, obligations, rights, suits, damages, actions, remedies, judgments and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing, in law or at equity, whether for tort, contract or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstance existing or taking place prior to or on this date, relating to the Acquired Assets (as defined in the APA), the Subsidiaries, the State Court Action, the Loan Documents, the liens and obligations arising under the Loan Documents, the CC Order (as defined in the Sale Order), the Secured Lender's Claims, the Cross-Claims, and the Bankruptcy Case.  Upon the Effective Date, (i) the Secured Lender shall release to Avalon the sum of $20,827.48 that is currently on deposit at the Secured Lender in an Avalon account, and (ii) the Secured Lender shall execute documents reasonably necessary to assist Avalon in the release of approximately $55,000 being held by First American Title Insurance Company ("First Am") pursuant to its First Am File Number NCS-935414-E-SA1 (jp) and the releases herein shall not eliminate such obligations.

        b.    **Releases by the Debtor Defendants**.  Upon the Secured Lender's receipt of the Secured Lender Payment, each of the Debtor Defendants, on behalf of themselves, their subsidiaries, anyone who may bring a claim on their behalf (including derivative claims and any claims asserted on behalf of the Debtor's estate by any official committee of unsecured creditors), their respective directors, officers, managers, employees, partners, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, each fully, finally, unconditionally, irrevocably and completely release and forever discharge the Secured Lender and each of its predecessors, successors, assigns, their respective directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future) and each of their respective heirs, successors, and assigns, of and from any and all claims, causes of action, litigation claims, including without limitation, any so-called "lender liability" claims or defenses, and any other debts, obligations, rights, suits, damages, actions, remedies, judgments and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing, in law or at equity, whether for tort, contract or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstance existing or taking place prior to or on this date, relating to the Acquired Assets, the Subsidiaries, the State Court Action, the Loan Documents, the liens and obligations arising under the Loan Documents, the CC Order, the Secured Lender's Claims, the Cross-Claims, the Adversary Proceeding, and the Bankruptcy Case.

      c.  Each respective Party acknowledges that it is familiar with Section 1542 of the California Civil Code ("Section 1542"), which states as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties' waiver of all rights and benefits afforded by Section 1542 is done with the respective Party's understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of any and all liability as provided for in the releases contained herein, the Parties expressly acknowledge that the releases contained herein are intended to include in their effect, without limitation, all claims that the Parties know or suspect to exist against the other respective Parties and their respective directors, officers, managers, employees, partners, affiliates, agents, representatives, attorneys, consultants, and accountants (past, present or future). This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542.

      d.  **Covenant Not to Sue**. The Parties shall not file suit, demand arbitration, or otherwise assert a claim in any form or forum relating to any released claim; provided however that nothing contained herein shall prevent any Party from bringing action to enforce any term of this Release Agreement. Except as provided in the immediately preceding sentence, in the event a claim or action is asserted in breach of this covenant not to sue, this Release Agreement shall constitute a complete and absolute defense to such claim.

    3.  **Non-disparagement**. The Secured Lender, on the one hand, and the Debtor Defendants, on the other hand, each agrees that it, he, or they, as applicable, shall not make or publish any statements, written or verbal, that defame or disparage the personal or business reputation, practices, or conduct of the Debtor Defendants, on the one hand, or the Secured Lender, on the other hand. Notwithstanding the foregoing, nothing in this Release Agreement shall preclude either the Secured Lender or Debtor Defendants from (i) making truthful statements as may be required by applicable law, regulation or legal process, and (ii) enforcing this Release Agreement.

    4.  **No Admissions**. By agreeing to this Release Agreement and performing all of the obligations and keeping all of the covenants contained herein, each Party does not admit any liability for or the validity of any of the other Party's allegations in the State Court Action or any lack of merit to any of its allegations against the other Party in the State Court Action.

5. **Binding Effect**. This Release Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns, officers, agents, servants, and employees.

6. **No Prior Assignment, Transfer, or Encumbrance**. Each of the Parties represents and warrants that it owns the rights, demands, claims, or causes of action which are the subject of this Release Agreement (including, without limitation, claims released by this Release Agreement), and that it has not assigned or transferred to any other person or entity or otherwise encumbered all or any part of such rights, demands, claims, or causes of action. Each of the Parties further represents that it is not aware of any active lawsuit or proceeding that has been brought by one Party against the other, other than those proceedings referenced in this Release Agreement.

7. **Survival of Representations and Warranties**. The representations and warranties made in this Release Agreement shall survive the execution and consummation of this Release Agreement.

8. **Integration**. This Release Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof; all prior agreements, contracts, negotiations, representations, and discussions, if any, pertaining to this matter are hereby merged into this Release Agreement. Other than as stated in this Release Agreement, the Parties acknowledge and agree that no promise or inducement has been offered for this Release Agreement and no other promises or agreements shall be binding unless reduced to writing and signed by the Parties.

9. **Waiver and Modification**. No provision of this Release Agreement may be modified, amended or waived unless pursuant to a writing, signed by the Parties. Waiver of any one provision herein shall not be deemed a waiver of any other provision herein.

10. **Counterparts**. This Release Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original but which together shall be deemed to constitute one and the same Release Agreement. Facsimile and .pdf signatures exchanged by email shall have the same force and effect as original signatures.

11. **Governing Law, Jurisdiction, and Venue**. The Parties consent and submit to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the Central District of California or the Superior Court for the State of California, County of Los Angeles, over any actions or proceedings arising out of or relating to this Release Agreement, including, without limitation, with respect to the enforcement of this Release Agreement, as the case may be. This Release Agreement and all claims and disputes arising out of or relating to this Release Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of California.

12. **Severability**.  If a provision of this Release Agreement is or becomes illegal, invalid or unenforceable for any reason, the legality, validity and/or enforceability of any and all other provisions of this Release Agreement shall not be affected and said provisions shall remain in full force and effect.

13. **Mutual Drafting**.  The Parties agree that this Release Agreement has been drafted with the assistance of counsel for each signatory.  Because each of the Parties has had input into the contents of this Release Agreement, the Parties agree that, for purposes of construction, each Party shall be deemed to have been an author of the Release Agreement.

14. **Enforcement**.  The Parties to this Release Agreement may seek enforcement of any term, covenant, right, or obligation in this Release Agreement as permitted by law and/or in equity, including temporary, preliminary, and permanent injunctive relief.  In the event of litigation arising out of an alleged breach of the Release Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

15. **Consultation with Counsel**.  The Parties acknowledge that each of them has consulted with, or had the opportunity to consult with, legal counsel of his, her or its own selection about this Release Agreement.  The Parties each understand how this Release Agreement will affect his, her or its legal rights and voluntarily enters into this Release Agreement with such knowledge and understanding.

**THE PARTIES, AND EACH OF THEM, ACKNOWLEDGE THAT THEY HAVE READ THIS RELEASE AGREEMENT AND THAT THEY FULLY KNOW, UNDERSTAND AND APPRECIATE ITS CONTENTS AND THAT THEY SIGN THIS RELEASE AGREEMENT AND MAKE THE AGREEMENT PROVIDED FOR VOLUNTARILY AND OF THEIR OWN FREE WILL ON THEIR OWN BEHALF OR AS DULY AUTHORIZED REPRESENTATIVES OF THEIR RESPECTIVE PARTIES.**

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**AGREED TO AND ACCEPTED:**

VALLEY NATIONAL BANK,
As Successor By Merger to Bank Leumi USA

By _____     Date: _____

Name: _____

Title: _____

BETTER 4 YOU BREAKFAST, INC.

By _____     Date: _____

Name: _____

Title: _____

BALANCE FOODS, LLC

By _____     Date: _____

Name: _____

Title: _____

MORENO BROS. DISTRIBUTING, LLC

By _____     Date: _____

Name: _____

Title: _____

CAPITAL STONE EQUITY FUND I, LP

By _____     Date: _____

Name: _____

Title: _____

20715 AVALON, LLC

By _____     Date: _____

Name: _____

Title: _____

_____     Date: _____

ROBERT DOUGLAS SPIRO, JR.

_____     Date: _____

ROBERT DOUGLAS SPIRO, JR.
as Trustee of the Spiro Revocable Trust

_____   Date: _____

DIANA CASTILLO SPIRO,
as Trustee of the Spiro Revocable Trust


RDS VENTURES, LLC


By _____   Date: _____

Name: _____

Title: _____