Bradford J. Sandler (*pro hac vice application to be submitted*)
Shirley S. Cho (CA Bar No. 192616)
Cia H. Mackle (*pro hac vice application to be submitted*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: bsandler@pszjlaw.com
scho@pszjlaw.com
cmackle@pszjlaw.com

Attorneys for CRG Financial LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>BETTER 4 YOU BREAKFAST, INC.,<br><br>Debtor. | Case No.: 2:22-bk-10994-BB<br><br>Chapter 11<br><br>**CRG FINANCIAL LLC'S OBJECTION TO DEBTOR'S PROPOSED CHAPTER 11 PLAN DATED DECEMBER 6, 2022 AND DEBTOR'S PROPOSED PLAN MODIFICATION PURSUANT TO 11 U.S.C. § 1127(A), RULE 3019(A)**<br><br>Plan Confirmation Hearing<br>Date:    December 14, 2022<br>Time:   2:00 p.m.<br>Place:   Courtroom 1539<br>           255 E. Temple Street<br>           Los Angeles, CA  90012<br><br>Zoom<br>Meeting ID: 161 6109 0855<br>Pass Code:   148508 |

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE SHERI BLUEBOND, THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

CRG Financial LLC ("CRG"), holder of claim number 11, 27, 38, 45, 106, 110, 111, and 112 (the "Claims"), objects to the confirmation of the *Debtor's Proposed Chapter 11 Plan Dated*

DOCS_LA:346384.4 15973/001

*December 6, 2022* [Docket No. 656] ("Amended Plan") and the *Debtor's Proposed Plan Modification Pursuant to §1127(a), Rule 3019(a)* [Docket No. 654].

# I.
# PRELIMINARY STATEMENT

After voting had already occurred on the court-approved plan [Docket No. 597] (the "Original Plan"), the Debtor, without approval from this Court or re-soliciting the creditor body, has amended their proposed Plan ("Amended Plan") by alleging Class 1 general unsecured creditors will be unimpaired, when, in fact, they remain very much impaired. The Debtor's actions are wrongful and in direct contravention of the Bankruptcy Code and Ninth Circuit law. Neither the Original Plan nor the Amended Plan is confirmable for at least the following several reasons:

(i) The General Unsecured Claims remain impaired under the Amended Plan because it does not leave "unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. 1124(1). Instead, the Amended Plan provides that General Unsecured Claims will only "likely" receive payment in full (*there is no specific plan provision requiring payment in full*), and such payment will <u>not</u> include any postpetition interest (which should be at the default contractual or state law rates), and will not be made, inexplicably, for at least 120 days after confirmation.

(ii) It is clear under the Ninth Circuit's recent ruling, *In re PG&E Corp.*, 46 F.4th 1047 (9th Cir. 2022), that in a solvent debtor case such as here were equity is purportedly "in the money", General Unsecured Claims must receive interest at the contract rate or applicable state law rate before interest holders can receive anything. The failure to provide not only certainty of full payment, but also the required rate of interest under Ninth Circuit law, renders the Class 1 creditors impaired and makes the Amended Plan fatally flawed.

(iii) The Amended Plan does not provide adequate means for its implementation under section 1129(a)(5) and the Debtor has not presented any evidence of feasibility for full payments to be made, including default interest, after plan confirmation. Presumably, the Debtor has imposed a minimum four-month delay in plan effectiveness to advance specious arguments that creditors with valid claims are not creditors of the estate because a third party had agreed to pay their claims,

2

DOCS_LA:346384.4 15973/001

although those claims were not released and have not yet been paid. Until the Claims are fully satisfied, they remain valid claims against the estate.

(iv)    The Debtor impermissibly and substantively modified the Original Plan under section 1127(a) of the Bankruptcy Code by improperly classifying Class 1 (General Unsecured Claims) as unimpaired, when they are actually still impaired by the proposed treatment, and the Debtor should be required to re-solicit the voting creditors.

(v)    As a *de facto* new plan in terms of treatment of General Unsecured Claims, the Debtor is required to provide 28 days' notice to creditors under FRBP 2002 for objections to the Amended Plan, which the Debtor has not done.

In short, only days before the confirmation hearing, after Class 1 has presumably voted against and rejected the Debtor's Original Plan (which, would then fail for lack of an impaired consenting, non-insider voting class under section 1129(a)(10) of the Bankruptcy Code), the Debtor now seeks to jam through a facially and fatally deficient plan that contravenes Ninth Circuit law and the Bankruptcy Code. The Court, if and to the extent that it considers the confirmation of the Amended Plan, should summarily reject the Amended Plan, or in the alternative, allow Class 1 General Unsecured Claims holders to vote on the Amended Plan.

## II.
## BACKGROUND

The Debtors' Original Plan was filed on October 17, 2022 [Docket No. 597], and CRG was solicited to vote on the terms of the Original Plan. CRG timely voted its Claims to **reject** the Original Plan on December 5, 2022. ***One day*** after votes were received on the Original Plan, the Debtors filed the Amended Plan on December 6, 2022, a mere week before the confirmation hearing set for the Original Plan. The Amended Plan substantively modifies the Original Plan such that the only voting class, Class 1 – General Unsecured Claims, is now purportedly unimpaired. *See* Docket No. 656.

The Debtor should be required to disclose the voting results of the Original Plan to this Court and to creditors.

3

DOCS_LA:346384.4 15973/001

On December 6, 2022, CRG was appointed to the Official Committee of Unsecured Creditors (the "Committee") and retained counsel. *See Amended Notice of Appointment and Appointment of Committee of Creditors Holding Unsecured Claims* [Docket No. 653].

### III.
### OBJECTION

**A.  Class 1 (General Unsecured Claims) is Impaired by the Amended Plan and Entitled to Vote on It, and By Unjustifiably Disenfranchising Unsecured Creditors a Week Before the Confirmation Hearing, the Debtor Has Proposed the Amended Plan in Bad Faith**

Regardless of the Debtor's label that Class 1 (which includes CRG's Claims) is unimpaired, the class of general unsecured creditors ("GUCs") is clearly impaired by the Amended Plan based on controlling Ninth Circuit authority and other well-established case law.

First, putting aside for the moment the issue of the appropriate postpetition interest rate for GUCs, the Amended Plan fails to even unequivocally provide for the full payment of GUCs:

> **Class 1 – General Unsecured Claims** …. Your claims is [sic] *likely*, but not guaranteed to be paid in full (100% of what is owed) without interest or an amount which you agree to accept. You will not receive more than you are owed. The *actual* percentage you are paid could be lower depending on the total funds available after the payment of Administrative Claims and the total amount of the unsecured claims which are 'allowed'. If the total amount of General Unsecured Claims is more than expected or if the amount available is less than expected, the percentage will be lower. This Class of creditors is NOT 'impaired' and therefore NOT entitled to vote on this Plan.

*See* Amended Plan, I.B, p. 2 (emphases in original).

Thus, it would not even be a breach of the Amended Plan if it turns out that GUCs are not paid in full through the Plan and are left holding the proverbial bag. In short, the Amended Plan is aspirational only, and in the Debtor's view, GUCs will get whatever they get ultimately under the Amended Plan in plain contravention of section 1124(1), months down the road. The Amended Plan does not provide adequate means for its implementation under section 1129(a)(5).

Second, the Amended Plan fails to provide any postpetition interest, which should be interest at the applicable default contractual rates (or as otherwise provided under state law), and thus, Class 1 is indisputably impaired and entitled to vote on the Amended Plan. The Ninth Circuit Court of Appeals recently made clear that, "creditors of a solvent debtor who are designated as unimpaired

4

DOCS_LA:346384.4 15973/001

must receive postpetition interest on their claim" because "creditors of a solvent debtor enjoy an equitable right to contractual or state law default postpetition interest before allocation of surplus value from a bankruptcy estate"; "[a] failure to compensate creditors according to this equitable right as part of a bankruptcy plan results in impairment." *Ad Hoc. Comm. of Holders of Trade Claims v. PG&E (In re PG&E Corp.)*, 46 F.4th 1047, 1059, 1060, 1061, 1064 (9th Cir. 2022).[1]

As the Ninth Circuit has ruled, the Debtor is not allowed "to have its cake and eat it too" by proposing to pay claimants no interest, "while depriving them of the statutory protections that impaired creditors enjoy." *Id.* at 1061. "Rather, a more sensible reading of the Code gives solvent debtors a choice: compensate creditors in full pursuant to the solvent-debtor exception or designate them as impaired claimants entitled to the full scope of the Code's substantive and procedural protections." *Id.*

Third, the Amended Plan inexplicably delays plan effectiveness at least 120 days after confirmation, and by doing so, further impairs unsecured creditors, stringing them along for months.

> **Effective date:** This Plan becomes effective (Effective Date) (1) *not less than 120 days after entry of an Order on the Court's docket confirming Debtor's Plan* (the 'Confirmation Date') and (2) on the 20th calendar day after the later of: (a) the entry on the Court's Docket of a final and not appealable Order determining the amount of any claim in favor of Veronica Ortiz; and (b) the entry on the Court's Docket of a final and not appealable Order determining the amount of any claim asserted in a class proof of claim that includes Ms. Ortiz as a member of the class.

*See* Amended Plan, p. 1 (emphasis added).[2]

By baselessly, unilaterally delaying plan effectiveness for at least four months (potentially for the Debtor to have more time to obtain the requisite cash to pay all creditors with interest or assert claim objections), the Amended Plan further impairs Class 1 General Unsecured Claims. *See, e.g., In re Central European Industrial Development Co.*, 288 B.R. 572, 577 (Bankr. N.D. Cal.

---

[1] *Accord, In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006); *In re Ultra Petroleum Corp.*, 2020 WL 6276712, at *22 (Bankr. S.D. Tex. Oct. 26, 2020).

[2] It appears that the Debtor has already settled its disputes with Ms. Ortiz and the other similar class members and is in the process of seeking court approval (first by the state court and then by the Bankruptcy Court), and thus, the Ortiz matter is likely not a factor that would delay plan effectiveness as substantially as the Debtor proposes. *See* 11/18/22 *Stipulation to Continue Dates Pending State Court Approval of Settlement Between Veronica Ortiz and Debtor* [Docket No. 617].

DOCS_LA:346384.4 15973/001

2003) ("If the court were to confirm such a plan next week Lehman still would have to wait an indefinite time, possibly years, before the plan could become effective. The court cannot see how this would leave Lehman's rights 'unaltered' or would otherwise leave Lehman unimpaired under 11 U.S.C. § 1124. To begin with, the 1994 amendments to Section 1124 deleted the text that used to provide for payment on the effective date as one of the ways to leave a class unimpaired. Moreover, even cases decided before the 1994 amendments refused to sanction an open-ended gap between confirmation and the effective date. . . . Debtors' delayed and uncertain payment would unacceptably place all the risk on Lehman."); *In re Somerset Props. SPE, LLC*, Case No. 10-09210, 2012 Bankr. LEXIS 3867, *13, 2012 WL 3644737 (Bankr. E.D.N.C. Aug. 23, 2012) (payment delay of thirty days constitutes impairment); *In re Premiere Network Servs.*, 2005 Bankr. LEXIS 2298, at *13, *14, *16, *17-18 (Bankr. N.D. Tex. July 1, 2005) ("Courts that have taken the approach that the effective date should be close to confirmation have cited the importance of the effective date to confirmation"; "the outside date [for plan effectiveness] should not be established in an effort to buy time to comply with the other provisions of section 1129" (citation omitted); "Although the present Plan proposes to pay claimants required to be paid on the effective date, extending and creating uncertainty as to the effective date forces these priority claimants to subsidize the proposed joint Plan and bear the risks of failure."); *In re Yates Dev.*, 258 B.R. 36, 42-43 (Bankr. M.D. Fla. 2000) (debtor's unilateral ability to delay plan effective date for extended period and under certain conditions was unreasonable effective date and impaired creditor's claim and rights; creditor improperly "forced to bear all of the risk of the delay" and thus plan failed to comply with section 1123(a)(5) (plan must have adequate means of implementation); "Some courts hold that a plan's effective date should be on or close to the date on which a confirmation order is entered. [citations omitted] Other courts have held that an effective date which occurs around the date a confirmation order becomes final is acceptable. [citations omitted]"); *In re Krueger*, 66 B.R. 463, 465 (Bankr. S.D. Fla. 1986) (plan effective date would be four months in the future, effectively delaying payment in full of tax claim; "This defeats the purpose of the statutory requirement that the taxing authority receive the equivalent of immediate full payment in cash. The debtor's proposal requires the taxing authorities to partially subsidize the debtor's plan. An effective

6

DOCS_LA:346384.4 15973/001

date deferred beyond the interval essential for liquidation (not more than 45 days in this instance) is unreasonable.").

Any alteration in a creditor's legal, *equitable* or contractual rights renders the creditor impaired under section 1124(1) of the Bankruptcy Code. *In re PG&E Corp.*, 46 F.4th at 1060-61 (citing *In re L&J Anaheim Assocs.*, 995 F.2d 940, 942 (9th Cir. 1993)). In sum, the proposed treatment under the Amended Plan renders GUCs impaired by not paying them in full their principal balance, but also by denying them contractual or the default state rate of interest, and by significantly delaying their payment. To compound the problem, the Debtor, in bad faith, only a week before the confirmation hearing, has proposed a drastically modified plan that, without any legal or factual basis, deems the GUCs class as unimpaired and takes away their rights to vote on the Amended Plan. Class 1 is indisputably impaired and entitled to vote on the Amended Plan.

**B.    The Debtor Has Not Proven the Amended Plan is Feasible and Should Be Required to Subordinate Insiders' Claims Pending the Committee's Investigation**

The Debtor is representing to this Court and creditors that this is a solvent case because equity is proposed to receive a distribution, so it is the Debtor's burden to prove that the Amended Plan adheres to the absolute priority waterfall, which it has not done. The Amended Plan may not be feasible given the volume of unpaid administrative, priority and general unsecured claims in this case. The Debtor has scheduled over $8.3 million in general unsecured claims (Docket No. 72, Schedule F, p. 171), and has substantially less than that in cash (Docket No. 616, Oct. 2022 Monthly Operating Report, p. 2).

The unpaid pre-petition principal amount of the Claims held by CRG alone is $408,178.00, of which $96,692.25 is entitled to priority or administrative claim status and $311,486.74 is a general unsecured claim[3]:

| | |
|---|---|
| 503(b)(9) Amount: | $27,350.00 |
| 503(b)(1) Amount: | $69,342.25 |
| General Unsecured Amount: | $311,486.74 |
| **Total:** | **$408,178.00** |

---

[3] These claim amounts do not include default interest, which CRG is entitled to receive as a holder of Class 1 General Unsecured Claims against this solvent Debtor.

7

DOCS_LA:346384.4 15973/001

Pursuant to section 502(a) of the Bankruptcy Code, the Claims are deemed allowed unless a party in interest objects and, as such, they enjoy *prima facie* validity under Bankruptcy Rule 3001(f) ("**Evidentiary Effect.** A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). *See also Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).

Under the terms of the *Asset Purchase Agreement by and between Better 4 You Breakfast, Inc. as Seller and Revolution Foods, PUBC, as Purchaser* approved by the Court pursuant to that sale order at Docket No. 399 (the "APA"), the Purchaser agreed to "timely perform and discharge ... ***all*** Liabilities with respect to Assumed Trade Payables" under section 2.3. The Claims are Assumed Trade Payables under the APA and remain outstanding against the Debtors' estate, almost half a year since the closing. The only communication on the Claims was a request by Mr. Castillo (Debtor's insider) perhaps on behalf of the Purchaser to "purchase" the Claims at a 50% discount.[4]

Simply because the Debtor agreed with a third party that the third party would pay the Claims does not change the fact that the Claims are claims against the *Debtor's estate* as defined under section 101(5) of the Bankruptcy Code until paid in full. Both the Debtor and the Purchaser have espoused that the assumption of Assumed Liabilities by the Purchaser somehow serves to negate the estates' liability, but CRG, as the Claims holder, never agreed to release the Debtor in favor of the APA purchaser. And while CRG appreciates that it now has recourse to the Purchaser for payment under a third party beneficiary theory, the Debtor still remains the primary obligor to CRG. *Beatrice Co. v. State Bd. of Equalization*, 6 Cal. 4th 767, 782-783, 863 P.2d 683, 693 (1993) ("An agreement to assume liabilities is a contractual promise to perform the obligations of another. If supported by consideration, it is enforceable notwithstanding the continuing primary liability of the promisee for the same obligation."). Let us assume a hypothetical situation that CRG were to only receive 80% payment of the Claims from the Purchaser. It necessarily follows, that CRG would still hold a remaining claim against the Debtor's estate for the 20% unpaid balance of its

---

[4] *See Declaration of Robert Axenrod in Support of Committee's FRBP 2004 Motion for: (A) Oral Examination of Insider of Debtor and Revolution Foods PBC; and (B) Production of Documents* [Docket No. 645, Ex. B].

Claims. The liability that the Debtor has to holders of Assumed Trade Payables was not absolved by the fact of the sale.

The sale order expressly states in multiple places that the Purchaser takes the purchased assets free and clear of claims pursuant to section 363(f) of the Bankruptcy Code *subject to* and always *excluding* the Assumed Liabilities as follows: "Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets, and the Purchaser shall take title to and possession of such Acquired Assets free and clear of all Interests (**except as** expressly set forth in the Asset Purchase Agreement **with respect to** the Permitted Liens and **Assumed Liabilities**)." *See* Sale Order at ¶ 7 (emphasis added) [Docket No. 399]. This makes sense since the APA is a contract only between the Debtor and the Purchaser. So if the Purchaser ultimately fails to actually timely discharge and satisfy the Assumed Liabilities, including payment of **_all_** Assumed Trade Payables as it contractually agreed to do under Section 2.3 of the APA, then the Debtor's estate expressly retains the ability to sue the Purchaser for a breach of the APA since the estates' liabilities will not have been satisfied and there will have been a failure of consideration.

Ultimately, CRG is agnostic as to who pays the Claims and will accept payment of its Claims from either the Debtor or the Purchaser. However, until the Claims are paid in full, which includes interest, they remain Claims against the *Debtor's* estate, and are classified under Class 1, and like all GUCs, must receive default contractual or applicable state law interest under the Plan before equity holders may receive any recovery under the absolute priority rule.

The Amended Plan should not be confirmed for several other reasons as well:

(i) As noted, the Debtor must prove, and has not proven, that the Amended Plan is feasible – specifically that, as of the confirmation hearing, the Debtor has or will likely have sufficient cash to pay many millions of dollars in outstanding claims.[5] *See, e.g., In re Premiere Network Servs.*, 2005 Bankr. LEXIS 2298, at *13, *14, *16 (Bankr. N.D. Tex. July 1, 2005) ("Feasibility is mandatory, and must be determined at the confirmation hearing. The certainty of the

---

[5] It should be noted that, under the Amended Plan Article II, the Debtor's contracts and leases (not previously rejected or assumed) would be automatically rejected no earlier than 30 days after the Confirmation Date (not the Effective Date) and the applicable creditors would then have 30 days to file rejection claims. The Debtor has not given any indication of the magnitude of potential rejection claims, and whether it has or will have adequate cash to pay all such claims as well, with interest.

9

DOCS_LA:346384.4 15973/001

plan's implementation is required to be in place at the time of the confirmation hearing." (citation omitted)).

(ii)    Relatedly, to adequately protect CRG and other GUCs in case the Debtor later files claims objections, the disputed claims reserve under the Amended Plan must reserve in full for all unpaid claims with the requisite postpetition interest at the contractual or default state rate of 7%, whichever is higher. Cal. Const., Art. XV § 1.

Absent these requirements being satisfied, the Amended Plan should be rejected by the Court.

## IV.
## JOINDER

CRG joins in the Committee's objection and all other objections to the Original Plan and/or the Amended Plan to the extent not inconsistent herewith.

## V.
## CONCLUSION

WHEREFORE, the Court should deny confirmation of the Amended Plan and grant such other and further relief as may be just and appropriate, including CRG's attorney's fees for having to file the instant Objection to the Amended Plan, and terminate the Debtor's exclusive right to file and solicit a plan of reorganization.

Dated: December 12, 2022				PACHULSKI STANG ZIEHL & JONES LLP

						By    */s/ Shirley S. Cho*
						       Bradford J. Sandler
						       Shirley S. Cho
						       Cia H. Mackle

						Attorneys for CRG Financial LLC

10

DOCS_LA:346384.4 15973/001

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*): **CRG FINANCIAL LLC'S OBJECTION TO DEBTOR'S PROPOSED CHAPTER 11 PLAN DATED DECEMBER 6, 2022 AND DEBTOR'S PROPOSED PLAN MODIFICATION PURSUANT TO 11 U.S.C. § 1127(A), RULE 3019(A)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 12, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **December 12, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA OVERNIGHT DELIVERY**
The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 12, 2022 | Nancy H. Brown | /s/ Nancy H. Brown |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:346431.1 15973/001

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Shraddha Bharatia**    notices@becket-lee.com
- **Daren Brinkman**    office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- **Mason S Byrd**    sbyrd@mckoolsmithhennigan.com, LMorrin@mckoolsmithhennigan.com;storm-byrd-1750@ecf.pacerpro.com
- **Lisa R Chandler**    lisa.chandler@ipfs.com
- **Shirley Cho**    scho@pszjlaw.com
- **Michael G D'Alba**    mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com
- **Eryk R Escobar**    eryk.r.escobar@usdoj.gov
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Fredric Glass**    fglass@fairharborcapital.com
- **Michael S Greger**    mgreger@allenmatkins.com, kpreston@allenmatkins.com
- **Mark D Hurwitz**    mhurwitz@lsl-la.com, dsmall@lsl-la.com,narutunyan@lsl-la.com
- **Ori Katz**    okatz@sheppardmullin.com, lsegura@sheppardmullin.com
- **Gerald P Kennedy**    gerald.kennedy@procopio.com, kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- **Raffi Khatchadourian**    raffi@hemar-rousso.com
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Peter W Lianides**    plianides@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Kerri A Lyman**    klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com;nmorneault@Steptoe.com;mhernandez@steptoe.com;aodonnell@steptoe.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbnlawyers.com
- **Jeffrey M. Reisner**    jreisner@steptoe.com, #-FirmPSDocketing@Steptoe.com;klyman@steptoe.com;nmorneault@Steptoe.com
- **Liz Riddle**    liz.riddle@cdtfa.ca.gov
- **Mark Romeo**    romeolaw@msn.com
- **Anthony J Rothman**    anthony@arothmanlaw.com
- **Najah J Shariff**    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- **Zev Shechtman**    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Nancy R Thomas**    nthomas@mofo.com, nancy-thomas-4464@ecf.pacerpro.com
- **David A Tilem**    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;TilemDR69450@notify.bestcase.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Brett D Watson**    bwatson@cozen.com, daynasmith@cozen.com
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:346431.1 15973/001