CHRISTOPHER CELENTINO (SBN 131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (SBN 201654)
yosina.lissebeck@dinsmore.com
TAYLOR F. DUNCAN (SBN 353158)
taylor.duncan@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Ste 800
San Diego, California 92101
Tel: (619) 400-0500
Fax: (619) 400-0501

Special Counsel to Chapter 7 Trustee,
Carolyn A. Dye

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Better 4 You Breakfast, Inc.,<br><br>Debtor. | Chapter 7<br><br>Case No. 2:22-bk-10994-BB<br><br>**NOTICE OF MOTION AND CHAPTER 7 TRUSTEE CAROLYN A. DYE'S MOTION FOR ORDER APPROVING GOOD FAITH COMPROMISE OF CONTROVERSY BY AND BETWEEN (A) THE CHAPTER 7 TRUSTEE, CAROLYN A. DYE, AND (B) SAGUARO FINANCE, LLC AND MICHAEL HARAND PURSUANT TO FED. R. BANKR. P. 9019 AND CCP § 877; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF CAROLYN A. DYE**<br><br>Date: September 30, 2026<br>Time: 10:00 a.m.<br>Judge: Honorable Sheri Bluebond<br>Place: Courtroom 1539<br>255 E. Temple Street<br>Los Angeles, California 90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL INTERESTED PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD, IF ANY:**

**PLEASE TAKE NOTICE** that on September 30, 2026, at 10:00 a.m., in Courtroom 1539 of the United States Bankruptcy Court located on the 15th Floor of the Edward R. Roybal Federal Building and Courthouse located at 255 E. Temple Street, Los Angeles, California, the Honorable Sheri Bluebond, United States Bankruptcy Judge for the Central District of California (the "Bankruptcy Court"), will hold a hearing to consider the Motion for Order Approving Good Faith Compromise of Controversy by and between (A) the Chapter 7 Trustee, Carolyn A. Dye and (B) Saguaro Finance, LLC and Michael Harand ("Motion") filed by Carolyn A. Dye, solely in her capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Better 4 You Breakfast, Inc. ("Debtor") in the above-captioned bankruptcy case ("Case"). Through the Motion, Trustee seeks an order that does the following:

1) Approves the Settlement Agreement ("Settlement Agreement") by and between Trustee, on the one hand, and Saguaro Finance, LLC ("Saguaro") and Michael Harand ("Harand") (collectively, "Saguaro Parties"), on the other hand, a copy of which is attached to the Motion as Exhibit A.

2) Authorizes Trustee to settle all claims and controversies between Trustee and the Saguaro Parties (collectively, "Parties") on the terms set forth in the Settlement Agreement.

3) Determines that the Settlement Agreement was made in good faith in an arm's-length transaction in accordance with Federal Rule of Bankruptcy Procedure 9019, Cal. Civ. Proc. Code § 877.6, and applicable bankruptcy law.

4) Authorizes the Parties to perform the terms of the Settlement Agreement, including granting the releases contemplated in the Settlement Agreement.

5) Reserves jurisdiction in the Bankruptcy Court to determine all disputes and other matters arising out of and/or relating to the interpretation and enforcement of the Settlement Agreement.

6) Determines that adequate notice of the Motion was given.

The Motion is made pursuant to Fed. R. Bankr. P. 9019 and CCP § 877.6 on the grounds that the proposed settlement is in the best interests of the Estate and made in good faith. As more fully described in the Motion, Trustee asserts that the Saguaro Parties received unauthorized transfers totaling $94,375.00. The relevant transfers were unauthorized under the plain language of the Debtor's Chapter 11 plan of reorganization that was confirmed prior to the Court converting this Case to one under Chapter 7.

The Parties desire to avoid the costs of litigating the claims as they relate to the transfers and to further facilitate the prompt payment of funds to the Estate in light of the Settlement Agreement reached by the Parties. As a result, Trustee seeks Bankruptcy Court approval to enter into the Settlement Agreement, the salient terms of which are summarized[1] as follows:[2]

1. Within ten (10) business days following the date on which the Bankruptcy Court enters an order approving the Settlement Agreement, Saguaro shall pay $66,000.00 ("Settlement Payment") to Trustee on behalf of the Estate.

2. The Saguaro Parties each reasonably agree to cooperate with Trustee with respect to documents and communications related to the transfers.

3. The Parties shall release claims, causes of action, and suits related to the transfers and/or the Case which occurred or accrued at any time prior to the Court entering an order approving the Settlement Agreement.

In light of the reasonable belief that the costs of litigating the disputes concerning the transfers would outweigh the potential benefit to the Estate, and the Parties desiring to come to a resolution to facilitate prompt payment, Trustee believes that the execution and approval of the Settlement Agreement is in the best interests of the Estate and its creditors, and should be approved forthwith as a reasonable exercise of the authority granted to Trustee by this Bankruptcy Court. The Estate receives the benefit of an agreed-upon payment and cooperation, which provide the otherwise completely administratively insolvent case with funds. As such, the settlement will inure to the

[1] The Settlement Agreement contains multiple and additional terms, and this summary is provided for ease of reference only. To the extent of a discrepancy between this summary and the Settlement Agreement itself, the Settlement Agreement shall control.

[2] Capitalized terms used herein and not defined herein are as defined in the Settlement Agreement.

benefit of the Estate and creditors. As part of the Motion, the Trustee is seeking a good faith determination as to the Saguaro Parties.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon (a) the Notice of Motion, (b) the attached Memorandum of Points and Authorities ("Memorandum"), (c) the Declaration of Carolyn A. Dye ("Dye Declaration"), (d) the entire record of this Case, and (e) any other evidence properly presented to the Bankruptcy Court in support of this Motion.

**PLEASE TAKE FURTHER NOTICE that, pursuant to Local Rule 9013-1(f), any opposition to this Motion (including a memorandum of points and authorities and evidence in support thereof) must be filed with the Clerk of the Bankruptcy Court and be served upon the United States Trustee, Trustee, and the Judge at the addresses set forth below no later than fourteen (14) days prior to the hearing on this Motion.**

**For Service on Trustee**
Christopher Celentino, Esq.
Taylor F. Duncan, Esq.
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101

**For Service on the Hon. Sheri Bluebond**
Hon. Sheri Bluebond
United States Bankruptcy Judge
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

**For Filing with the Court**
Clerk's Office
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

**For Service on the Office of the United States Trustee**
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

**PLEASE TAKE FURTHER NOTICE that, pursuant to Local Rule 9013-1(h), the failure to file and serve a timely response to this Motion may be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in this Motion.**

Dated: September 3, 2026

DINSMORE & SHOHL LLP

By: */s/ Taylor Duncan*
Christopher Celentino
Yosina M. Lissebeck
Taylor F. Duncan
Special Counsel to the Chapter 7 Trustee,
Carolyn A. Dye

# TABLE OF CONTENTS

I. INTRODUCTION .......... 7
II. RELEVANT BACKGROUND .......... 7
III. SUMMARY OF SETTLEMENT TERMS .......... 10
IV. STANDARD FOR APPROVAL OF SETTLEMENT .......... 11
A. Approval Under Bankruptcy Rule 9019 .......... 11
1. Probability of Success .......... 13
2. Difficulties with Collection .......... 13
3. Complexities of Litigation .......... 14
4. Interests of Creditors .......... 14
B. Approval Under CCP §§ 877 et seq. .......... 15
V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## Cases

*Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003) ........ 12

*In re A & C Properties*, 784 F.2d at 1381 ........ 12

*In re Blair*, 538 F.2d 849, 851–52 (9th Cir. 1976) ........ 12

*In re New York, New Haven and Hardford R.R. Co.*, 632 F.2d 955, 959 (2d Cir. 1980) ........ 12

*In re Nucorp Energy Securities Litigation,* 661 F. Supp. 1403 (S.D.Cal.1987) ........ 16, 17

*In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983) ........ 12

*In re Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982) ........ 12

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1383 (9th Cir. 1986) ........ 11

*Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 (1986) ........ 11

*Matter of Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984) ........ 12

*Motorcycle Association v. Superior Court,* 20 Cal. 3d 578 (1978) ........ 16

*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.,* 38 Cal. 3d 488 (1985) ........ 16, 17

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988) ........ 12

## Rules

California Code of Civil Procedure §§ 877 ........ 15, 16, 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this Motion, Carolyn A. Dye, the duly appointed Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Better 4 You Breakfast, Inc. ("Debtor") seeks the Court's approval of a good faith settlement agreement executed by and between Trustee on the one hand and Saguaro Finance, LLC ("Saguaro") and Michael Harand ("Harand"), an individual, all on the other hand (Saguaro and Harand collectively, "Saguaro Parties") pursuant to Fed. R. Bankr. P. 9019 and CCP § 877.6 for the complete resolution of all controversies between Trustee and the Saguaro Parties, a true and correct copy of which is attached as **Exhibit A** to the Declaration of Carolyn A. Dye ("Settlement Agreement").

The Settlement Agreement provides, as more fully discussed herein, that: (i) Saguaro shall pay, within ten (10) business days of the Court entering an order approving the Settlement Agreement, $66,000.00 ("Settlement Payment") to Trustee on behalf of the Estate, (ii) the Saguaro Parties shall reasonably cooperate with Trustee with respect to documents and communications related to the Transfers (defined below), and (iii) Trustee and the Saguaro Parties (collectively, "Parties") shall provide releases with respect to any and all claims as more fully outlined below.

In Trustee's sound business judgment, she believes approving the Settlement Agreement is in the best interests of the Estate and its creditors because it will prevent the Estate from incurring further costs related to any litigation involving the Transfers (defined below), provides immediate funds to the otherwise administratively insolvent Estate, and provides for cooperation from the Saguaro Parties which will aid the Estate in recovering further unauthorized transfers from other persons. [Dye Decl., ¶ 16]. Trustee also seeks a good faith determination as to the Saguaro Parties as the Settlement Agreement was made in good faith in an arm's-length transaction in accordance with Federal Rule of Bankruptcy Procedure 9019, Cal. Civ. Proc. Code § 877.6. [Dye Decl., ¶ 12].

## II. RELEVANT BACKGROUND

On February 24, 2022, Debtor filed a voluntary Chapter 11 Petition.

At no point during the Case was Saguaro employed by the Debtor as a professional of the Estate. [Dye Decl., ¶ 4].

On January 27, 2023, Debtor filed a Chapter 11 Plan of Reorganization. [Dk. 732] ("Plan"). An order confirming Debtor's Plan was entered on January 30, 2023. [Dk. 737].

At all relevant times, a creditor of the Estate, Intrepid Investment Bankers, LLC ("Intrepid"), held a claim against the Estate – though it was previously a disputed claim by Debtor. [Claim 82-1, Claim 82-2]. As the claim was disputed, the amount of Intrepid's claim was required to have been placed in a segregated reserve account until fully and finally resolved. [Dk. 732, Article I.D.4.].

Intrepid's claim was deemed allowed as of March 6, 2025, when the Court entered a judgment, in Adv. Case No. 2:23-ap-01301-BB,[3] in favor of Intrepid. [Adv. Dk. 158] ("Judgment"). Under the terms of Debtor's Plan, Debtor had 15 to 30 days to pay Intrepid's allowed claim in full. Debtor failed to do so, and Intrepid's claim has continued to accrue interest. [*See* Dk. 913].

As a creditor of the Estate remained unpaid, no payments or distributions to or on behalf of any of the Debtor's insiders was permissible under the terms of the Plan. [*See* Dk. 732, Section II, B, D.3. – 4.]. The Plan was clear that insiders were not entitled to payment "until and unless" all general unsecured creditors are paid in full. [*Id*. at Section II. B.].

As a result of Debtor's failure to pay Intrepid's claim, on May 14, 2025, Intrepid filed its Motion to Compel Payment of Allowed Claim Pursuant to Confirmed Plan of Reorganization. [Dk. 913] ("Motion to Compel"). On June 17, 2025, the Court entered an Order Granting the Motion to Compel. [Dk. 937]. The Order Granting the Motion to Compel provided, *inter alia*, that upon written request from the Successor Disbursing Agent (Ms. Dye, who is now the Chapter 7 Trustee), "any parties that received any distributions from assets of the Debtor, the reorganized debtor or the estate that remained after distributions were made to or reserved for unsecured creditors" were directed, jointly and severally, to disgorge any such distributions to the extent necessary to satisfy Intrepid's claim in full. [*Id*.]

On July 11, 2025, the Court entered an Order Vacating Final Decree and Converting Chapter 11 Case to One Under Chapter 7. [Dk. 944]. On July 14, 2025, Ms. Dye was appointed as the Chapter 7 Trustee.

---

[3] Any reference to a docket entry in the Adversary Case No. 2:23-ap-01301-BB shall be referenced as "Adv. Dk. __."

As of the filing of this Motion, Intrepid's claim remains unpaid. [*See* Dks. 771, 774, 806; Dye Decl., ¶ 9].

On July 10, 2026, Trustee filed a *Motion For (1) Court's Issuance of Disgorgement and Turnover Order For Funds Disbursed in Violation of Plan Confirmation Order Pursuant to Court's Inherent Authority And 11 U.S.C. § 542(a); (2) Clarification of Order Vacating Final Decree and Converting Chapter 11 Case to One Under Chapter 7 at Postconfirmation Scheduling and Case Management Conference in a Chapter 11 Case and (3) Relief From Order Pursuant to Federal Rules of Civil Procedure 60(a), 60(b), and 60(d) and 11 U.S.C. § 105(a)* filed on July 10, 2026 [Dk. 993] ("Disgorgement Motion"). As it relates to the Saguaro Parties, the Disgorgement Motion sought an order requiring Saguaro to disgorge amounts disbursed by Debtor to Saguaro in violation of the Plan. [Dye Decl., ¶ 11]. A hearing on the Disgorgement Motion was set for August 5, 2026. [*Id.*].

On July 24, 2026, Trustee filed a stipulation to continue the Disgorgement Motion hearing as to Saguaro to August 26, 2026, at 10:00 a.m. as Trustee and the Saguaro Parties (collectively, "Parties") engaged in settlement discussions, reached a settlement agreement in principle, and needed time to finalize the agreement. [Dk. 1003; Dye Decl., ¶ 12]. The Settlement Agreement was made in good faith in an arm's-length transaction as required under Fed. R. Bankr. P. 9019 and CCP § 887.6. [Dye Decl., ¶ 12]. The Court approved the stipulation and continued the hearing as to Saguaro to August 26, 2026. [Dk. 1006].

On August 17, 2026, Trustee filed a second stipulation to continue the Disgorgement Motion hearing as to Saguaro to October 28, 2026 at 10:00 a.m. as the Parties executed the Settlement Agreement and the Parties needed sufficient time to have this Motion filed, served, and adjudicated, and otherwise comply with the Settlement Agreement. [Dk. 1031; Dye Decl., ¶13]. On August 19, 2026, the Court approved the second stipulation and continued the hearing as to Saguaro to October 28, 2026. [Dk. 1033].

If the Court approves this Motion, and the Saguaro Parties otherwise comply with the monetary terms of the Settlement Agreement, Trustee will withdraw the Disgorgement Motion as it relates to Saguaro, only. [Dye Decl., ¶ 14].

As at all relevant times a general unsecured creditor of the Estate remained unpaid, no interest holder of Debtor was entitled to receive any distribution from Debtor. [Dk. 732, Article I.B.; Article I.B., Section D; Dye Decl., ¶ 9]. However, in violation of the Plan, payments were made to or on behalf of insiders in an amount estimated to be $5,394,438.97 pursuant to records obtained by Ms. Dye from Mr. Wong, the original disbursing agent under the Plan. [Dk. 1034; Dye Decl., ¶¶ 6-7]. Of the $5,394,438.97, Trustee asserts that Saguaro unauthorizedly received, on behalf of the insiders, $94,375.00 as follows:

1. $50,000 on 4/25/2023
2. $8,000 on 7/1/2023
3. $8,000 on 7/20/2023
4. $5,000 on 1/3/2024
5. $1,687.50 on 2/12/2024
6. $1,687.50 on 3/26/2024
7. $20,000 on 5/7/2024

(1-7 collectively, “Transfers”) [Dk. 1034; Dye Decl., ¶ 7].

As a result of the Debtor’s violations of the Plan, including the distributions by the Debtor of funds to and for the benefit of insiders, and including those to Saguaro, Trustee asserts that Saguaro is jointly and severally liable, and must disgorge the Transfers received. [Dye Decl., ¶ 11].

The Parties, as a result of good faith and arm’s-length negotiations, have now agreed to settle all controversies between them pursuant to the Settlement Agreement, a true and correct executed copy of which is attached hereto as **Exhibit A**. [Dye Decl., ¶ 15, Exhibit A].

## III. SUMMARY OF SETTLEMENT TERMS

Subject to Court approval and on the terms set forth in the Settlement Agreement, Trustee is settling claims of the Estate against the Saguaro Parties as well as any potential claims of the Saguaro Parties against the Estate and seeks a good faith determination as to the Saguaro Parties. The salient terms of the good faith Settlement Agreement are as follows:

/ / /

/ / /

| | |
|---|---|
| Effective Date | The date on which the Bankruptcy Court enters an order approving the Settlement Agreement. ¶ 1.3. |
| Monetary Terms | Saguaro shall pay, within ten (10) business days following the Effective Date, $66,000.00 to Trustee on behalf of the Estate. ¶ 2.1. |
| Non-Monetary Terms | The Saguaro Parties each reasonably agree to cooperate with Trustee with respect to documents and communications related to the Transfers. ¶ 3.1. |
| Releases | The Parties shall release claims, causes of action, and suits related to the Transfers and/or the above-captioned bankruptcy case ("Case") which occurred or accrued at any time prior to the Effective Date. ¶¶ 4.1-4.3. |

The foregoing is a summary of the salient terms of the Settlement Agreement. The actual terms of the Settlement Agreement are as set forth on Exhibit A to the Declaration of Carolyn A. Dye attached hereto. [Dye Decl., ¶ 15, Exhibit A]. Interested parties are encouraged to read the Settlement Agreement. Any conflict between this summary and the terms of the Settlement Agreement shall be controlled by the Settlement Agreement.

## IV. STANDARD FOR APPROVAL OF SETTLEMENT

### A. Approval Under Bankruptcy Rule 9019

The authority to approve a trustee's compromise of a controversy is set forth in Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, which provides in relevant part that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "A court may approve a compromise or settlement only when it is 'fair and equitable.'" *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1383 (9th Cir. 1986), cert. denied sub nom.; *Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 (1986) (citation omitted). In determining whether a proposed settlement is fair and equitable, courts in the Ninth Circuit consider the following factors:

(a) [t]he probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d at 1381.

Even when considering these factors, the bankruptcy court has "great latitude in approving compromises and settlements." *Id; Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988). A court "is not to decide the numerous questions of law and fact . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983) (citation omitted). A "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken. *In re Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849, 851–52 (9th Cir. 1976). This discretion is based upon the premise that the "law favors compromise and not litigation for its own sake..." *In re A&C Properties*, 784 F.2d at 1381; *see also In re New York, New Haven and Hardford R.R. Co.*, 632 F.2d 955, 959 (2d Cir. 1980) (generally, courts favor compromises as "'a normal part of the process or reorganization'").

Moreover, a bankruptcy court generally gives deference to a trustee's business judgment in deciding whether to settle a matter. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). A court should not substitute its own judgment for the judgment of the trustee. *Matter of Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984).

In this instance, Trustee is exercising her business judgment to settle all issues between the Estate and the Saguaro Parties. [Dye Decl., ¶¶ 15-16]. All of the factors enumerated by the Ninth Circuit weigh in favor of the compromise. Thus, approval of the Settlement Agreement is warranted, is in the best interests of the creditors, and is fair and equitable.

Trustee's Settlement Agreement is fair, equitable, and reasonable, given the particular circumstances of this case and for the reasons provided below. The *A & C* factors weigh in favor

of approval of the Settlement Agreement. Therefore, the Court should approve the Settlement Agreement.

**1. Probability of Success**

This factor weighs in favor of approving the Settlement Agreement as, while Trustee believes she would prevail in litigation, uncertainties always exist especially where, as here, discovery has not been completed.

From review of the docket, it is evident that Debtor did not employ Saguaro as a professional pre-confirmation of the Plan. Nonetheless, the Plan did authorize Debtor to employ and compensate professional persons without further order of the Court on such terms as the parties may agree. [Dk. 732, Article V., Section G]. Thus, while Trustee believes that if Saguaro performed services, if any, on behalf of the insiders, and received payment for any such alleged services, if any, unauthorizedly from the insiders through Debtor, there remains the uncertainty in litigation that the Saguaro Parties could assert that at least some of any alleged services were performed on behalf of the Debtor and so they were entitled to, and authorized to receive, at least some portion of the Transfers. [Dye Decl., ¶ 19]. Resolving those issues would require discovery, document review, witness testimony, and potentially expert analysis regarding the nature and value of any services performed, all of which would prove costly to the Estate. [*Id*.].

By obtaining a prompt payment equal to approximately 70% of the Transfers, the Estate avoids immediate litigation expense and collection delay while obtaining a substantial recovery without further administrative depletion. [*Id*. at ¶¶ 18-19].

For the foregoing reasons, this factor weighs in favor of approving the compromise between the Parties.

**2. Difficulties with Collection**

This factor weighs in favor of approving the Settlement Agreement. Given the case posture, Trustee lacks access to financial information regarding Saguaro and cannot determine with certainty the cost, timing, and likelihood of collecting any judgment. The Settlement Agreement eliminates those uncertainties and converts a disputed claim into an immediate cash recovery.

/ / /

Trustee is unaware of the financial condition of Saguaro. [Dye Decl., ¶ 20]. Such information would be unavailable to Trustee until after entry of judgment. Therefore, it may be extremely difficult to collect any judgment against Saguaro. [*Id.*]

Difficulty in collection will be alleviated by the Settlement Agreement through a consensual payment from Saguaro to Trustee on behalf of the Estate.

Accordingly, this factor weighs in favor of approving the Settlement Agreement.

**3. Complexities of Litigation**

This factor weighs in favor of approving the Settlement Agreement. While the underlying legal dispute is relatively straightforward, the complexities in this instance may arise in connection with determining the extent Saguaro may be required to disgorge the Transfers based on for whose benefit work was performed. [Dye Decl., ¶ 21].

Ultimately, the Settlement Agreement eliminates the need to potentially litigate any further complex legal issues. For the foregoing reasons, this factor weighs in favor of approving the Settlement Agreement.

**4. Interests of Creditors**

The paramount interests of creditors weighs heavily in favor of approving the Settlement Agreement. The Estate is currently administratively insolvent and the monetary terms of the Settlement Agreement will provide the Estate with immediate funds. [Dye Decl., ¶ 22]. These funds will provide Trustee with the ability to continue to pursue disgorgement from other persons or entities that received unauthorized transfers and/or pursue claims against those who orchestrated the violations of the Plan. [*Id.*].

In addition to the monetary consideration, Trustee is obtaining the Saguaro Parties' agreement to cooperate regarding documents and communications concerning the Transfers and related transactions. Trustee believes such cooperation may assist ongoing investigations and recovery efforts directed toward additional recipients of improper distributions and therefore provides material value to the Estate beyond the Settlement Payment itself. [*Id.* at ¶ 23].

/ / /

/ / /

For these reasons, Trustee believes that the Settlement Agreement is in the best interests of the creditors and provides the Estate with funds to continue actions to benefit creditors of the Estate. [Dye Decl., ¶ 16].

On balance, all four of the *A & C Properties* factors weigh in favor of approving the Settlement Agreement. Continued proceedings with respect to Saguaro would only cost the Estate more in litigation fees and diminish any recovery if successful on the merits. Thus, it is Trustee's business judgment that the Settlement Agreement is in the best interests of the Estate's creditors as it will provide immediate funds to the otherwise administratively insolvent Case, and will provide for cooperation from the Saguaro Parties which Trustee anticipates and expects will aid in efforts to pursue further recoveries from other persons who received unauthorized transfers from the Debtor. [Dye Declaration, ¶ 16].

Accordingly, the Court should find that the Settlement Agreement is fair, equitable, and in the best interests of the Estate.

**B. Approval Under CCP §§ 877 *et seq*.**

Trustee also requests that the Court approve the Settlement Agreement as a good faith settlement under California Code of Civil Procedure §§ 877 et seq. and bar any other claims against the Saguaro Parties relating to the claims involved in and resolved by the Settlement Agreement.

California law expressly creates a procedure whereby a non-settling defendant's right to contribution or indemnification under state law may be extinguished prior to trial. Section 877 of the California Code of Civil Procedure provides that:

> [w]here a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort [¶] (a) it shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) it

> shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasor.

*In re Nucorp Energy Securities Litigation*, 661 F. Supp. 1403, 1410 (S.D. Cal. 1987). Under *Nucorp*, this substantive right granted by the California legislature is available to California litigants in federal court cases.

Section 877.6 creates a procedure that allows a party settling an action before judgment to obtain the court's determination that the settlement is in good faith. Section 877 in turn provides that a good faith settlement extinguishes the contribution rights among the non-settling defendants, and reduces any eventual judgment the plaintiff may win against the non-settling defendants by the amount of the partial settlement. Together, sections 877 and 877.6 permit a settling defendant, upon a finding that a partial settlement is in good faith, to "buy his peace" and remove himself from litigation without fear of future contribution or indemnification claims by non-settling joint tortfeasors. *Id.*

In *Motorcycle Association v. Superior Court,* 20 Cal. 3d 578 (1978), the California Supreme Court construed section 877(b) to permit a good faith settlement to bar not only a non-settling defendant's right to contribution, but also his right to partial or comparative indemnity. *Id.* at 604. The California legislature subsequently codified this holding in section 877.6 of the California Code of Civil Procedure, which provides, in pertinent part, that "[a] determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Thus, sections 877 and 877.6 together permit a settling tortfeasor, upon a finding that a partial settlement is in good faith, to "buy his peace" and extricate himself from pending litigation without fear of future contribution or indemnification claims by non-settling joint tortfeasors.

The California Supreme Court defined good faith as that term is used in sections 877 and 877.6. In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates,* 38 Cal. 3d 488 (1985), the court noted that a finding of good faith requires the trial court to inquire "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of the comparative

liability for the plaintiff's injuries." *Id.* at 499.

Here, the Parties engaged in good faith, arms' length negotiations, free from collusion or any undue influence and thereafter reached the Settlement Agreement. [Dye Decl., ¶ 24]. The Settlement Agreement was entered into by Trustee using her business judgment and in good faith. [*Id*. at ¶ 15]. The Settlement Payment is also in a reasonable range of Saguaro's proportional share of liability as they will be disgorging approximately 70% of funds unauthorizedly received. [*Id*. at ¶ 18].

In light of the matters set forth above, Trustee asserts that the Bankruptcy Court can find and determine that the settlement is a "good faith settlement" within the meaning of California Code of Civil Procedure §§ 877 and 877.6, applying the *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.,* 38 Cal. 3d 488 (1985) and *In re Nucorp Energy Securities Litigation,* 661 F. Supp. 1403 (S.D.Cal.1987) decisions, and bar any other person or entities from making claims against the Saguaro Parties or the Estate for indemnity, contribution or otherwise arising out of the matters being compromised.

## V. CONCLUSION

Based on the foregoing reasons, Trustee believes that the circumstances of this case warrant the approval of the Settlement Agreement as fair and reasonable in satisfaction of the Ninth Circuit factors in *A & C Properties* and a finding of good faith within the meaning of CCP §§ 877 and 877.6. Trustee respectfully requests that the Court enter an order granting the relief requested in this Motion and such other relief the Court deems just and proper.

Dated: September 3, 2026 DINSMORE & SHOHL LLP

By*:* */s/ Taylor Duncan*
Christopher Celentino
Yosina M. Lissebeck
Taylor F. Duncan
Special Counsel to the Chapter 7 Trustee,
Carolyn A. Dye

**DECLARATION OF CAROLYN A. DYE**

I, CAROLYN A. DYE, declare:

1. I am the Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Better 4 You Breakfast, Inc. ("Debtor") in the above-captioned bankruptcy case ("Case"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2. I submit this Declaration in support of the *Motion for Order Approving Good Faith Compromise of Controversy by and between (A) the Chapter 7 Trustee, Carolyn A. Dye, and (B) Saguaro Finance, LLC and Michael Harand Pursuant to Fed. R. Bankr. P. 9019 and CCP § 877* ("Motion").[4]

3. On February 24, 2022, Debtor filed a voluntary Chapter 11 petition. [Dk. 1].

4. From a review of the docket, at no point during the Case was Saguaro employed by Debtor as a professional of the Estate.

5. On January 27, 2023, Debtor filed its Plan, which was confirmed by the Court on January 30, 2023.

6. The Plan appointed James Wong ("Wong") and Armory Consulting Co. as the Disbursing Agent. On August 19, 2026, the *Declaration of James Wong Regarding Interim Order re: Chapter 7 Trustee's Motion for Disgorgement and Clarification of Order [Dk. 993]* was filed as Docket No. 1034 ("Wong Declaration"). The Wong Declaration authenticated a check register which he created and maintained in connection with disbursements he made in his capacity as Disbursing Agent ("Check Register"). The Wong Declaration also authenticated bank account statements for the bank accounts of Debtor which disbursed funds during his time as Disbursing Agent ("Account Statements"). Wong provided those same documents to me upon request. I have reviewed and analyzed the Check Register and Account Statements (collectively, "Records").

7. From review of the Records, I understand that Saguaro received the following Transfers, totaling $94,375.00, from Debtor, which were not authorized under my understanding of the plain terms of the Plan:

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

a. $50,000 on 4/25/2023

b. $8,000 on 7/1/2023

c. $8,000 on 7/20/2023

d. $5,000 on 1/3/2024

e. $1,687.50 on 2/12/2024

f. $1,687.50 on 3/26/2024

g. $20,000 on 5/7/2024

8. On July 11, 2025, the Court entered an Order Vacating Final Decree and Converting Chapter 11 Case to One Under Chapter 7. [Dk. 944]. On July 14, 2025, I was appointed as the Chapter 7 Trustee.

9. From reviewing and analyzing the docket as a whole, and reviewing the Debtor's books and records, I understand that one of the principal reasons the Case was converted to one under Chapter 7 was because Intrepid was not timely paid its allowed claim, as required under the terms of the Plan, and Debtor otherwise did not have sufficient cash on hand to pay the Intrepid Claim. As of the filing of this Motion, Intrepid's claim remains unpaid.

10. On July 10, 2026, I filed a *Motion For (1) Court's Issuance of Disgorgement and Turnover Order For Funds Disbursed in Violation of Plan Confirmation Order Pursuant to Court's Inherent Authority And 11 U.S.C. § 542(a); (2) Clarification of Order Vacating Final Decree and Converting Chapter 11 Case to One Under Chapter 7 at Postconfirmation Scheduling and Case Management Conference in a Chapter 11 Case and (3) Relief From Order Pursuant to Federal Rules of Civil Procedure 60(a), 60(b), and 60(d) and 11 U.S.C. § 105(a)* filed on July 10, 2026 [Dk. 993] ("Disgorgement Motion"). The Disgorgement Motion seeks, *inter alia*, an order directing those who received unauthorized payments from the Debtor, as more fully described in the Disgorgement Motion itself, to disgorge such payments. From review of the Records, unauthorized payments were made by the Debtor in an amount estimated to be $5,394,438.97.

11. As it relates to the Saguaro Parties, the Disgorgement Motion sought an order requiring Saguaro to disgorge amounts disbursed by Debtor to Saguaro in violation of the Plan, the Transfers totaling $94,375.00. A hearing on the Disgorgement Motion was set for August 5, 2026.

12. On July 24, 2026, I filed a stipulation to continue the Disgorgement Motion hearing as to Saguaro to August 26, 2026, at 10:00 a.m. as I and the Saguaro Parties engaged in settlement discussions, reached a settlement agreement in principle, and needed time to finalize the agreement. [Dk. 1003]. The Settlement Agreement was made in good faith in an arm's-length transaction. The Court approved the stipulation and continued the hearing as to Saguaro to August 26, 2026. [Dk. 1006].

13. On August 17, 2026, I filed a second stipulation to continue the Disgorgement Motion hearing as to Saguaro to October 28, 2026, at 10:00 a.m. as I and the Saguaro Parties executed the Settlement Agreement and needed sufficient time to have this Motion filed, served, and adjudicated, and otherwise comply with the Settlement Agreement. [Dk. 1031]. On August 19, 2026, the Court approved the second stipulation and continued the hearing as to Saguaro to October 28, 2026. [Dk. 1033].

14. If the Court approves this Motion, and the Saguaro Parties otherwise comply with the monetary terms of the Settlement Agreement, I will withdraw the Disgorgement Motion as it related to Saguaro, only.

15. Using my business judgment, and in good faith, I entered into the Settlement Agreement by and between myself in my capacity as Chapter 7 Trustee, on the one hand, and the Saguaro Parties on the other hand. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A**.

16. In my business judgment, I believe that the Settlement Agreement is in the best interests of the Estate and its creditors as it will prevent the Estate from incurring further costs related to any litigation or recovery of funds involving the Transfers, will provide immediate funds to the otherwise administratively insolvent Case, and will provide for cooperation from the Saguaro Parties which I anticipate and expect will aid me in my efforts to pursue further recoveries from other persons who received unauthorized transfers from the Debtor.

17. The Settlement Agreement will resolve all claims and controversies arising in connection with the Transfers.

/ / /

18. The Settlement Agreement will also provide funds to the otherwise administratively insolvent Estate. The Settlement Payment is also within a reasonable range of Saguaro's proportional share of liability as Saguaro will be disgorging approximately 70% of funds it received without authorization. These funds will benefit the Estate and its Creditors as it will provide the Estate with funds to continue to pursue the recovery of unauthorized transfers made by Debtor to other persons.

19. While I believe that if Saguaro performed services, if any, on behalf of the insiders, and received payment for any such alleged services, if any, unauthorizedly from the insiders through Debtor, there remains the uncertainty in litigation that the Saguaro Parties could assert that at least some of any alleged services were performed on behalf of the Debtor and so they were entitled to, and authorized to receive, at least some portion of the Transfers. Resolving those issues would require discovery, document review, witness testimony, and potentially expert analysis regarding the nature and value of any services performed, all of which would prove costly to the Estate. The Settlement Agreement avoids immediate litigation expense and collection delay while obtaining a substantial recovery without further administrative depletion.

20. Given the case posture, I lack access to financial information regarding Saguaro and cannot determine with certainty the cost, timing, and likelihood of collecting any judgment. The Settlement Agreement eliminates those uncertainties and converts a disputed claim into an immediate cash recovery.

21. While the underlying legal dispute is relatively straightforward, the complexities in this instance may arise in connection with determining the extent Saguaro may be required to disgorge the Transfers based on for whose benefit work was performed. Ultimately, the Settlement Agreement eliminates the need to potentially litigate any further complex legal issues.

22. As noted, the Estate is currently administratively insolvent, and the monetary terms of the Settlement Agreement will provide the Estate with immediate funds. These funds will provide the ability to continue to pursue disgorgement from other persons or entities that received unauthorized transfers and/or pursue claims against those who orchestrated the violations of the Plan.

23. In addition to the monetary consideration, the Saguaro Parties have agreed to cooperate regarding documents and communications concerning the Transfers and related transactions. I believe such cooperation may assist ongoing investigations and recovery efforts directed toward additional recipients of improper distributions and therefore provides material value to the Estate beyond the Settlement Payment itself.

24. The Settlement Agreement was reached after good faith, arms' length negotiations, free from collusion or any undue influence. I sincerely believe settling the claims as set forth above is in the best interests of the Estate's creditors because it guarantees finality to any litigation involving the Saguaro Parties and provides the Estate with the Settlement Payment and cooperation from the Saguaro Parties, which in turn should permit me to continue to pursue further recoveries from additional persons.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3rd day of September 2026.

Carolyn A. Dye

# EXHIBIT A

# SETTLEMENT AGREEMENT

This settlement agreement ("Agreement") is made by and between Saguaro Finance LLC, a California limited liability company ("Saguaro") and Michael Harand, an individual ("Harand"), all on the one hand; and Carolyn A. Dye, solely in her capacity as chapter 7 trustee (the "Trustee") of the Better 4 You Breakfast bankruptcy estate ("B4YB" or "Debtor"), on the other hand. Saguaro, Harand, and Trustee are hereinafter referred to collectively as the "Parties."

## RECITALS

WHEREAS, on February 24, 2022, B4YB filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). On January 30, 2023, the Court entered its order [Dkt. No. 737] confirming B4YB's Plan of Reorganization filed January 27, 2023 in the Bankruptcy Case [Dkt. No. 732] (the "Plan"). The Plan became effective on March 31, 2023 [Dkt. No. 737, Plan Order, ¶ 3].

WHEREAS, the Plan provides that any interest holders of the Debtor "will receive whatever assets exist in the estate after the payment in full of all General Unsecure Claims. In other words, this holding Interests will receiving [sic] nothing until and unless those holding General Unsecured Claims are paid in full." (Plan, Article I, ¶ B).

WHEREAS, the Plan further provides that "[t]hose holding interests in the Debtor will share in whatever funds and other assets remain after satisfaction in full of all other claims according to their relative interest in the Debtor." (Plan, Article I. ¶ B, Section D).

WHEREAS, at all relevant times, a general unsecured creditor of Debtor, Intrepid Investment Bankers LLC, has held a claim against the Debtor which to date has not been paid in full.

WHEREAS, post-confirmation of the Plan, Saguaro the following payments from Debtor on behalf of the insiders totaling $94,375.00:

1. $50,000 on 04/25/2023
2. $8,000 on 07/01/2023
3. $8,000 on 07/20/2023
4. $5,000 on 01/03/2024
5. $1,687.50 on 02/12/2024
6. $1,687.50 on 03/26/2024
7. $20,000 on 05.0/7/2024 (collectively, "Transfers").

WHEREAS, it is Trustee's position that the Transfers were unauthorized under the terms of the confirmed Plan.

WHEREAS, the Parties desire to resolve all disputes between them arising from or relating to the Transfers and to avoid the costs and uncertainties of litigation.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the approval of the Bankruptcy Court, the Parties agree as follows:

1. BANKRUPTCY COURT APPROVAL AND EFFECTIVE DATE
   1.1 Bankruptcy Court Approval: This Agreement is subject to approval by the United States Bankruptcy Court for the Central District of California. The Trustee will file a motion seeking approval of this Agreement within thirty (30) days of execution of this Agreement by all Parties.

1.2 Cooperation: The Parties agree to cooperate in good faith to obtain Bankruptcy Court approval of this Agreement and to execute any supplementary documents and take any additional actions reasonably necessary to effectuate the terms of this Agreement.

1.3 Effective Date: The "Effective Date" of this Agreement shall be the date on which the Bankruptcy Court enters an order approving this Agreement.

2. MONETARY TERMS

2.1 Payment Terms: Saguaro shall pay, within ten (10) business days following Effective Date, $66,000.00 to Trustee.

3. NON-MONETARY TERMS

3.1 Saguaro and Harand Cooperation. Saguaro and Harand each agree to reasonably cooperate with Trustee to (a) produce all records relating to any communications with any insider of B4YB or their agents directly relating to the Transfers and (b) provide sufficient description of the purpose and nature of the Transfers ((a) and (b) collectively "Cooperation"). Any such requests for Cooperation by Trustee shall be made at mutually convenient times and in a manner that reasonably accommodates time for production and cooperation. Trustee shall not make any such requests for Cooperation with less than 5 business days' notice to respond, unless otherwise mutually agreed. Nothing in this paragraph shall be construed to limit or modify any obligation of Saguaro or Harand to comply with applicable law, subpoena, or court order.

4. RELEASES

4.1 Trustee Releases: Except for the obligations arising out of this Agreement, the Trustee, on behalf of the B4YB bankruptcy estate and all of its predecessors, successors, assigns, attorneys, officers, directors, employees, agents, and representatives, hereby irrevocably and unconditionally releases and forever discharges Saguaro and Harand, and all of their predecessors, successors, assigns, attorneys, officers, directors, employees, agents, and representatives, from any and all claims, actions, causes of action, suits, debts, sums of money, attorneys' fees, costs, expenses, accounts, covenants, controversies, agreements, promises, damages, grievances, and demands whatsoever, whether presently known or unknown, at law or in equity, by contract, tort, pursuant to statute, or otherwise, arising from or relating to the Transfers or any matters, acts, omissions, events, conduct, or occurrences at any time prior to the Effective Date in connection with the Bankruptcy Case.

4.2 Saguaro and Harand Releases: Except for the obligations arising out of this Agreement, Saguaro and Harand, on behalf of themselves and their predecessors, successors, assigns, attorneys, officers, directors, employees, agents, and representatives, hereby irrevocably and unconditionally release and forever discharge the Trustee, the B4YB bankruptcy estate, and all of their predecessors, successors, assigns, attorneys, officers, directors, employees, agents, and representatives, from any and all claims, actions, causes of action, suits, debts, sums of money, attorneys' fees, costs, expenses, accounts, covenants, controversies, agreements, promises, damages, grievances, and demands whatsoever, whether presently known or unknown, at law or in equity, by contract, tort, pursuant to statute, or otherwise, arising from or relating to the Bankruptcy Case or any matters, acts, omissions, events, conduct, or occurrences at any time prior to the Effective Date in connection with the Bankruptcy Case.

4.3 California Civil Code Section 1542 Waiver: Each Party acknowledges that it is familiar with Section 1542 of the California Civil Code, which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

With respect to the claims being released pursuant to this Section 4, each Party acknowledges that it is releasing unknown claims and waives all rights it has or may have under California Civil Code Section 1542 or any similar state or local statute or ordinance under applicable law or other common law principle of similar effect.

4.4 Preservation of Agreement Rights: Nothing herein is intended to, or shall be construed to, release, waive, or otherwise affect the Parties' rights and obligations under this Agreement.

5. REPRESENTATIONS

5.1 Authority and Ownership Representations: Each Party represents, certifies, and warrants to the other Parties that, subject to obtaining necessary approvals of the Bankruptcy Court: (i) it has obtained all necessary consents to enter into this Agreement; (ii) no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement; (iii) it has the sole right and exclusive authority to execute this Agreement and to release the claims as set forth herein; (iv) the individual signing below on behalf of the Party is the duly authorized agent of the Party, granted express authority by the Party to enter into and be bound by this Agreement; and (v) no portion of any claim, right, action, or cause of action that has been released by the Party has been assigned or transferred by or for the Party in any manner.

5.2 Due Process and Understanding Representations: Each Party represents, certifies, and warrants to the other Parties that it: (i) has had an opportunity to read all of this Agreement; (ii) has been given a fair opportunity to, and has been advised to, discuss and negotiate the terms of this Agreement by and through its legal counsel; (iii) has been given a reasonable time to consider the Agreement; (iv) understands the provisions of this Agreement; (v) has had ample opportunity to seek and has received advice from an attorney of its own choosing regarding this Agreement; (vi) has determined that it is in its best interests to enter into this Agreement; (vii) has not been influenced to sign this Agreement by any statement or representation not contained in this Agreement; and (viii) enters into this Agreement knowingly and voluntarily without coercion, duress, or fraud.

6. NO ADMISSION OF LIABILITY

This Agreement shall not be used as an admission of liability or wrongdoing by any Party except as may be necessary to enforce the terms and conditions of this Agreement. No person reading this Agreement shall construe or understand it to suggest that any Party had or conceded any liability to any other Party.

7. GENERAL PROVISIONS

7.1 Bankruptcy Court Approval: This Settlement Agreement is subject to approval by the United States Bankruptcy Court for the Central District of California. The Court retains jurisdiction over any disputes arising from the interpretation, implementation, or enforcement of this Agreement.

7.2 Integration Clause: This Agreement constitutes a single, integrated written contract expressing the full and entire agreement between the Parties with respect to the subject hereof and supersedes any prior representations, promises, or warranties made by any Party and supersedes any prior understandings or written or oral agreements between the Parties.

7.3 Binding Agreement: Upon approval of this Agreement by the Bankruptcy Court, this Agreement, and all of its terms and provisions, shall be applicable to, binding upon, and inure to the benefit of and be enforceable by the respective heirs, legal representatives, successors, transferees, trustees, assigns, and licensees of the Parties.

7.4 Modification and Amendment: No provision of this Agreement may be altered, modified, supplemented, changed, or terminated except by virtue of a writing signed by all of the Parties and approved by the Bankruptcy Court to the extent the Bankruptcy Court's approval is required.

7.5 Costs and Fees: Each Party shall bear its own costs, expenses, and attorneys' fees arising out of, or in any way related to, the matters covered in this Agreement. However, the prevailing Party in any action for violation of, or to enforce, this Agreement shall be entitled to recover its reasonable costs, expenses, and attorneys' fees incurred in that action.

7.6 Governing Law: This Agreement shall in all respects be interpreted, enforced, and governed by the United States Bankruptcy Code and Rules, where applicable, and under the laws of the State of California, without regard to or application of conflict of laws rules.

7.7 Venue: Any action, suit, or proceeding to enforce or defend any obligation under this Agreement shall be brought in the United States Bankruptcy Court for the Central District of California.

7.8 Severability: If any provision of this Agreement is held to be prohibited by or invalid or unenforceable under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity or unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

7.9 Counterparts: The Parties agree that counterparts of this Agreement if signed and dated by the Parties shall be effective and treated as if a single, unitary document had been signed by all of the Parties. The Parties agree that electronic, photocopies, or fax copies of original signatures shall be effective and binding in lieu of originals.

7.10 Notices: Any written notice to any Party required by this Agreement shall be delivered by email as follows:

To Trustee:
Carolyn A. Dye, Chapter 7 Trustee
Attn: Taylor Duncan
taylor.duncan@dinsmore.com

To Saguaro:
Saguaro Finance LLC
Attn: Michael Harand
mjh1967@sbcglobal.net

To Harand:
Michael Harand
mjh1967@sbcglobal.net

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

SAGUARO FINANCE LLC

[signature]
Name: MICHAEL J. HARAND
Title: MANAGING MEMBER
Date: 8/3/26

MICHAEL HARAND, an individual

[signature]
Michael Harand
Date: 8/3/26

CAROLYN A. DYE, SOLELY IN HER CAPACITY AS CHAPTER 7 TRUSTEE OF THE B4YB BANKRUPTCY ESTATE

____________________________
Carolyn A. Dye, Chapter 7 Trustee
Date: ____________________

APPROVED AS TO FORM:

DINSMORE & SHOHL LLP

____________________________
By: ________________________
Christopher Celentino
Taylor Duncan
Attorneys for Carolyn A. Dye, Chapter 7 Trustee

7.9 Counterparts: The Parties agree that counterparts of this Agreement if signed and dated by the Parties shall be effective and treated as if a single, unitary document had been signed by all of the Parties. The Parties agree that electronic, photocopies, or fax copies of original signatures shall be effective and binding in lieu of originals.

7.10 Notices: Any written notice to any Party required by this Agreement shall be delivered by email as follows:

To Trustee:
Carolyn A. Dye, Chapter 7 Trustee
Attn: Taylor Duncan
taylor.duncan@dinsmore.com

To Saguaro:
Saguaro Finance LLC
Attn: Michael Harand
mjh1967@sbcglobal.net

To Harand:
Michael Harand
mjh1967@sbcglobal.net

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

SAGUARO FINANCE LLC

______________________________
Name: ______________________
Title: ______________________
Date: ______________________

MICHAEL HARAND, an individual

______________________________
Michael Harand
Date: ______________________

CAROLYN A. DYE, SOLELY IN HER CAPACITY AS CHAPTER 7 TRUSTEE OF THE B4YB BANKRUPTCY ESTATE

______________________________
Carolyn A. Dye, Chapter 7 Trustee
Date: 8/3/26

APPROVED AS TO FORM:

DINSMORE & SHOHL LLP

By: ______________________
Christopher Celentino
Taylor Duncan
Attorneys for Carolyn A. Dye, Chapter 7 Trustee

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 655 West Broadway, Suite 800, San Diego, CA 92101

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND CHAPTER 7 TRUSTEE CAROLYN A. DYE'S MOTION FOR ORDER APPROVING GOOD FAITH COMPROMISE OF CONTROVERSY BY AND BETWEEN (A) THE CHAPTER 7 TRUSTEE, CAROLYN A. DYE, AND (B) SAGUARO FINANCE, LLC AND MICHAEL HARAND PURSUANT TO FED. R. BANKR. P. 9019 AND CCP § 877; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF CAROLYN A. DYE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 3, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On September 3, 2026September 3, 2026August 12, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 3, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**John-Patrick M. Fritz, Esq. - jpf@lnbyg.com**
**Howard J. Steinberg, Esq. - steinbergh@gtlaw.com**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| September 3, 2026 | Wendy A. Yones | /s/ Wendy A. Yones |
| *Date* | *Printed Name* | *Signature* |

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Attorneys for American Express
  Shraddha Bharatia - notices@becket-lee.com

- Attorneys for America's Factors, Inc., Mexilink Inc. and the Official Creditor's Committee
  Daren Brinkman - firm@brinkmanlaw.com, 7764052420@filings.docketbird.com

- Attorneys for Archdiocese of Los Angeles Education & Welfare Corporation
  Mason S Byrd - sbyrd@mckoolsmithhennigan.com, LMorrin@mckoolsmithhennigan.com; storm-byrd-1750@ecf.pacerpro.com

- Attorneys for IPFS Corporation
  Lisa R Chandler - lisa.chandler@ipfs.com

- Attorneys for CRG Financial LLC
  Shirley Cho - scho@pszjlaw.com

- Attorneys for Veronica Ortiz & other Class Members
  Michael G D'Alba - mgd@lnbyg.com

- Carolyn A Dye, Chapter 7 Trustee
  trustee@cadye.com, c197@ecfcbis.com; atty@cadye.com

- Attorneys for the United States Trustee (LA)
  Eryk R Escobar - eryk.r.escobar@usdoj.gov

- Attorneys for Los Angeles County Treasurer & Tax Collector
  Oscar Estrada - oestrada@ttc.lacounty.gov

- Attorneys for Better 4 You Breakfast, Inc. and Felahy Employment Lawyers, APC
  Allen B Felahy - afelahy@felahylaw.com, fnourian@felahylaw.com; ksalazar@felahylaw.com; ealonso@felahylaw.com

- Attorneys for Intrepid Investment Bankers LLC
  Eric J Fromme - eric.fromme@afslaw.com, yvonne.li@afslaw.com

- Attorneys for Fair Harbor Capital, LLC
  Fred Glass - fglass@fairharborcapital.com

- Attorneys for Dundon Advisors, LLC, April Kimm
  Michael S Greger - mgreger@allenmatkins.com, kpreston@allenmatkins.com

- Attorneys for
  David S. Hagen - davidhagenlaw@gmail.com; LawOfficesofDavidSHagenCA1@jubileebk.net

- Attorneys for Bank Leumi USA
  Mark D Hurwitz - mhurwitz@lsl-la.com, dsmall@lsl-la.com, narutunyan@lsl-la.com

- Attorneys for the United States Trustee (LA)
  Michael Jones - michael.jones4@usdoj.gov

- Attorneys for Compwest Insurance Company
  Ori Katz - okatz@sheppardmullin.com, lsegura@sheppardmullin.com
- Attorneys for Philadelphia Indemnity Insurance Company
  Gerald P Kennedy - gerald.kennedy@procopio.com, kristina.terlaga@procopio.com; calendaringbankruptcy@procopio.com
- Attorneys for Pawnee Leasing Corporation
  Raffi Khatchadourian - raffi@hemar-rousso.com
- Attorneys for Bank Leumi USA, Valley National Bank,
  Nicholas A Koffroth - nkoffroth@foxrothschild.com, khoang@foxrothschild.com; ca.dkt@foxrothschild.com
- Courtesy NEF
  David S Kupetz - david.kupetz@troutman.com, mylene.ruiz@troutman.com
- Attorneys for PSIF Smithway L.P. and Penwood Real Estate Investment Mgmt, LLC
  Peter W Lianides - plianides@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- Attorneys for City of Los Angeles Office of Finance
  Wendy A Loo - wendy.loo-smart@lacity.org
- Attorneys for Better 4 You Breakfast, Inc.
  Kerri A Lyman - klyman@steptoe.com, #-FirmPSDocketing@Steptoe.com; nmorneault@Steptoe.com; mhernandez@steptoe.com; aodonnell@steptoe.com
- Attorneys for the United States Trustee (LA)
  Noreen A Madoyan - Noreen.Madoyan@usdoj.gov
- Attorneys for Ryder Truck Rental, Inc.
  Tania M Moyron - tania.moyron@dentons.com, kathryn.howard@dentons.com; carrie.rice@dentons.com; DOCKET.GENERAL.LIT.LOS@dentons.com
- Attorneys for Smithway Associates, Inc.
  Alan I Nahmias - anahmias@mbn.law, jdale@mbn.law
- Attorneys for Intrepid Investment Bankers LLC
  Samuel A Newman - sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com; laefilingnotice@sidley.com
- Attorneys for Better 4 You Breakfast, Inc. and Steptoe & Johnson LLP
  Jeffrey M. Reisner - jreisner@steptoe.com, #-FirmPSDocketing@Steptoe.com; klyman@steptoe.com; nmorneault@Steptoe.com
- Attorneys for California Dept. of Tax & Fee Administration
  Liz Riddle - liz.riddle@cdtfa.ca.gov
- Attorneys for Spectra 360, Inc.
  Mark Romeo - romeolaw@msn.com
- Attorneys for Stout Capital, LLC
  Anthony J Rothman - anthony.rothman@csbk.com

- Attorneys for Argo Partners
  Benjamin Ruzow - benjamin@argopartners.net

  Ryan D. Saba – rsaba@rosensaba.com

- United States Attorney's Office
  Najah J Shariff - najah.shariff@usdoj.gov, caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov

- Attorneys for Veronica Ortiz & other Class Members
  Zev Shechtman - Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com; hannah.richmond@saul.com; LitigationDocketing@saul.com

- Attorneys for Better 4 You Breakfast, Inc.
  Randy S Snyder - rsnyder@rsslegal.com

- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov

- Attorneys for US Foods, Inc.
  Brett D Watson - bwatson@cozen.com, daynasmith@cozen.com; brett-watson-0991@ecf.pacerpro.com

- Attorneys for Interested Party
  Larry D Webb - Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

- Attorneys for Intrepid Investment Bankers LLC
  Sharon Z. Weiss - sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com, sharon-weiss-7104@ecf.pacerpro.com

**SERVED BY UNITED STATES MAIL:**

Honorable Sheri Bluebond
United States Bankruptcy Court
Edward R. Roybal Federal Building & Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

Aetna Life Insurance Company and Affiliated Entities
c/o Payam Khodadadi, Esq.
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Armory Consulting Co.
3943 Irvine Blvd. #253, Suite 1150
Irvine, CA 92602

Banner Fruit Company
Attn: Kevin Sommerfeld
PO Box 2971
South San Francisco, CA 94083

California Dept. of Tax & Fee Administration
Collections Support Bureau, MIC: 55
PO Box 942879
Sacramento, CA 94279-0055

Pauline McTernan
Otterbourg, P.C.
230 Park Ave
New York, NY 10169

Danielle Montero
Lavi & Ebrahimian, LLP
8889 W. Olympic Blvd. Ste. 200
Beverly Hills, CA 90211

Farbod Nourian
Felahy Trial Lawyers
500 North Brand Blvd., Suite 1160
Glendale, CA 91203

Better 4 You Breakfast, Inc.
5743 Smithway, #103
Los Angeles, CA 90040-1548

Capital Stone Equity Fund 1, LP
C/O Robert Douglas Spiro Jr.
12027 Otsego Street
Valley Village, CA 91607

Robert Spiro
12027 Otsego Street
Valley Village, CA 91607

Saguaro Finance LLC
Attn: Michael J. Harand, Agent
17804 Cape Jasmine Road
Canyon Country, CA 91387

Steven Holguin
4117 Ivy Russell Way
Las Vegas, NV 89115